Redacted
Exhibits for
RICO case.
Thank you

1

RECEIVED
SDNY PRO SE OFFICE
2024 DEC 19  PM 2: 54

The deadline was 12-16-2024
and I emailed on that day,
however it has not been
uploaded yet. I'm dropping off
the original in person in case
the electronic version exceeded
the threshold. Thank you.

Dear Judge Zugibe,                                    October 10, 2024

I am writing to you under the most distressing of circumstances to formally recant my previous testimony given in the matter of Fogarty vs Jimenez Fogarty. I need to urgently bring to your attention several critical issues regarding my involvement and the coercion I experienced, which has tainted the integrity of my earlier statements.

My stepfather, Thomas Fogarty and his lawyer at Miller Zeiderman including Ashley Kersting coerced me into testifying against my mother, sai jimenez fogarty, despite my expressed wishes to remain uninvolved. Their coercion involved threatening my job security at highway concrete, a company my mother started and owns, and Thomas gave me a promotion and increased wages in exchange for my testimony.

Additionally, I was served a subpoena by my stepfather Thomas, but I have since learned that this action was illegal. I now have the evidence that my stepfather's lawyer has admitted that the subpoena was fradulent and that proper legal procedures were not followed. Thomas Fogarty could not served the subpoena for his own case. I am deeply troubled by this revelation and the legal misconduct involved.

Moreover, my stepfather engaged in manipulative tactics by arranging therapy sessions behind my mother's and father's backs. These actions were part of a broader strategy to manipulate me due to my neurological disorder, significantly impacting my state of mind and ability to make clear and informed decisions.

I want to make it unequivocally clear that my mother has never harmed me or my siblings, ▓▓▓▓▓▓▓▓▓ The safety and well-being of my mother, siblings, and my family in general are of utmost importance to me, and I now recognize that my stepfather and his girlfriend, Laura Marmo, pose a threat to us all. My mother has always been a loving and caring parent, and she is the only person who has ever ensured the safety and security of her children. I am terrified of my stepfather Thomas Fogarty, who is a powerful and very dangerous man. The coercion I faced have placed me in an untenable position, and I can no longer remain silent about the injustices that have occurred. I respectfully request that the court takes immediate action to correct the record and ensure that my mother Sai Jimenez, my siblings, my father Jose Serra, and I are protected from any further harm.

Sincerely,

Brandon Jimenez



State of New York County of Westchester
Sworn to and subscribed before me this 18th
day of October, 2024
Leilan S Robinson, Notary Public

LEILAN S. ROBINSON
Notary Public, State of New York
No. 01RO0000804
Qualified in Westchester County
Commission Expires Feb. 3, 2027

FAMILY COURT OF THE STATE OF NEW YORK
ROCKLAND COUNTY
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of an Article 8 Family Offense Proceeding

BRANDON JIMENEZ,

                           Petitioner,

       -against-

SAI MALENA JIMENEZ FOGARTY,

                         Respondent .

File 38859
Docket 0-01844-23

**AFFIDAVIT OF
JOSE SENRA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK      }
                            } §

COUNTY OF ROCKLAND    }

Jose Senra, am over 18 years of age, and state the following, under the penalty of perjury:

1. I am Jose Senra; I am the father of Brandon Isaiah Jimenez. Brandon was born with a neurological disorder caused by preterm labor medication, prescribed to his mother Sai during the pregnancy. Our son was delayed in all his milestones.

2. He never crawled; he did not walk until he was two years old, and did not speak until he was three years old. He received speech therapy and attended

special education for disabled children. Due to his disabilities, he received

ADA accommodation in school and in college.

3.  I see him often, and we have a great relationship. Sai never stabbed Brandon.

He told me he was forced to lie and say that by his stepfather Thomas Fogarty, or

he would fire him from Highbury Concrete. I told Brandon that he could report

him but he said he can't do that. Brandon said he is terrified of Thomas Fogarty

because he is a very powerful and dangerous man. Brandon said Thomas is

always bragging about having lunch and close contact with politicians, mayors

in Rockland, and playing golf with important people at the country club.

Brandon said many of the construction jobs are built for Related Companies who

is owned by billionaire Stephen Ross. Highbury Concrete is the preferred

contractor used for Related and Thomas often talks about his relationship with

Stephen Ross. Brandon told me Thomas has many friends in high places and

with one phone call they can destroy someone's life, like what he is doing to Sai.

Brandon said Thomas has the money and influence to destroy him, so he agrees

with everything Thomas says out of fear. Brandon told me that's why he lied

when he testified against his mother. Brandon said to me that Thomas gave him a promotion at work for lying on his behalf and got him an apartment as well.

4.  Sai never stabbed Brandon on Aug 27, 2017. Brandon came to stay with me seven days later on Sept 3, 2017. Brandon stayed in my apartment and took a shower. I saw him with just a towel around his waist, so his arm was fully exposed. Brandon did not have any visible physical injury, wound, cut, scar or no mark on his arm. He did not have any band aid on his arm either. He was wearing a white sleeveless undershirt top, so his arm was exposed. We were in close proximity because my apartment is small, so we were in each other's company.

5.  Brandon never mentioned any stab wound and I never saw any physical injury, wound, cut, scar or no mark on his arm in 2017. Then Sai tells Thomas she wants a divorce in Sept 2021 and afterwards an alleged stabbing story involving Brandon is raised. Sai never stabbed Brandon and she never would. I have known Sai for over 32 years, and she would never do such a thing. She is an excellent mother, and she adores Brandon and all three of her children. She loves children in general that's how she and I met when she volunteered to bring

children to a special event. She has volunteered many hours to help children in need and was even a foster mother to many at risk inner city youth. Sai taught parenting classes, volunteered for Girl Scout, Big Brother Big Sister organization and church. She is a devout Christian and helps many people. Her mother was an Ambassador at the United Nations and would take Sai on trips all over the world to volunteer and help children.

6. Brandon told me Sai did not stab him and Thomas is forcing him to say this about his mother. The fact that Thomas can make up this lie to hurt Sai is frightening. Especially when he is the one that is a danger Brandon, Sai and her two children. I have been to their house I witnessed Thomas drunk, high and mistreating Sai and all three children. I witnessed him yelling, cursing, pushing, grabbing, being violent towards Sai Malena and all her children. He even was calling her and her children nigger in front of me.

7. I fear for the safety of Brandon, Sai and her two younger children due to what Thomas Fogarty may do or have done to them.

Rockland County, New York

August 26, 2023

Jose Senra

Sworn to and subscribed before me

this __26__ day of __Aug__, 2023

Notary Public _____

My commission expires 7/27/2027

TONIE ANN D'ANGELO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DA6327996
Qualified in Rockland County
My Commission Expires 07-27-2027



To the Honorable Judge Thomas Zugibe                    October 21, 2024

## I. Introduction

This motion requests the Court to declare an immediate mistrial due to the abhorrent and criminal actions of parties Thomas Fogarty and Ashley Kersting. Their manipulation and coercion of Witness Brandon Jimenez—a young man with special needs—into testifying against his will is not merely unlawful; it is a grotesque exploitation of a vulnerable individual. Their conduct undermines the very foundation of our judicial system and cannot be tolerated. This case reflects a systematic violation of due process, a civil right, profoundly affecting both myself and my children. See exhibit 1.

## II. Background

On October 14, 2021, and June 20, 2023, Witness Brandon Jimenez testified, stating both times that he did not want to be in court and was present solely due to a subpoena. Despite his wish to remain uninvolved, Thomas Fogarty threatened the witness's employment, an additional act of intimidation that is a crime in itself. Furthermore, it has come to light that Thomas Fogarty and Ashley Kersting manipulated my son's situation, even involving a mental health professional to facilitate this coercion. This exploitation of a special needs individual is not only unethical but criminally reprehensible. Ashley Kersting's own admission that the purported subpoena was never properly served, nor was there an affidavit of service, further invalidates the witness's testimony and highlights the deliberate misconduct of both Thomas Fogarty and Ashley Kersting. (See exhibit 2).

## III. Legal Argument

1. **Coercion and Duress:** Testimony obtained through coercion is inadmissible and fundamentally violates the integrity of the judicial process. The New York Court of Appeals in *People v. Decker*, 14 N.Y.2d 348 (1964), reinforced the necessity of safeguarding testimony against coercive practices. Thomas Fogarty and Ashley Kersting's actions demonstrate a flagrant disregard for this principle. In *People v. Crampton*, 192 N.Y.3d 706 (2015), the court emphasized that coerced testimony must be excluded to preserve the integrity of the legal process. Furthermore, *People v. Mendez*, 161 N.Y.S.3d 407 (2022), addressed the issue of coercion, finding that Mendez's actions met the legal criteria for this offense, which supports the charge of coercion against Thomas Fogarty and Ashley Kersting in this case.

2. **Improper Service of Subpoena:** Thomas Fogarty's act of serving a subpoena in his own case constitutes a clear violation of New York Civil Practice Law and Rules (CPLR) § 2303, which explicitly prohibits such conduct. Additionally, this action contravenes the ethical standards set forth by the New York State Bar Association, which require attorneys to maintain the integrity of the legal process and avoid conflicts of interest. See exhibit 3.

3. **Unethical Conduct:** Exploiting a special needs individual not only violates legal standards but is also a profound moral failing. The American Bar Association's Model Rules of Professional Conduct, particularly Rule 8.4, explicitly condemn conduct involving dishonesty, fraud, or deceit. The actions of Thomas Fogarty and Ashley Kersting are in direct violation of these ethical standards and warrant a referral to the appropriate disciplinary body.

4. **Case Law Supporting Mistrial:** The substantial errors that compromise the fairness of this trial necessitate a mistrial, as established in *United States v. Klee*, 494 F.2d 394 (2d Cir. 1974). The coercion in obtaining testimony from a vulnerable witness is a substantial error that jeopardizes the integrity of these proceedings. Similarly, *People v. Aguilar*, 143 N.Y.3d 412 (2016), ruled that substantial procedural errors in

witness handling warrant a mistrial to uphold justice. Additionally, in a recent case in California, a woman was awarded custody of her children partly due to her ex-partner's coercive control, further highlighting the serious implications of coercion in custody matters.

5. **Fruit of the Poisonous Tree Doctrine:** The supervision and custody orders were issued based on perjured testimony and fraudulent misrepresentations by Thomas Fogarty. Under the fruit of the poisonous tree doctrine established in *Wong Sun v. United States*, 371 U.S. 471 (1963), any evidence or orders derived from illegal actions are tainted and must be excluded. The New York Court of Appeals in *People v. Decker*, 14 N.Y.2d 348 (1964) emphasized that coerced testimony and perjured statements violate due process and undermine the integrity of the judicial process. The fraudulent actions by Thomas Fogarty directly influenced the court's decisions regarding supervision and custody, rendering the resulting orders invalid and unjust. The immediate termination of these orders is necessary to restore justice and uphold the best interests of the children.

## IV. Relief Requested

For the aforementioned reasons, we respectfully request:

1. An immediate mistrial.

2. The removal of Ashley Kersting and Miller Zeiderman from this case due to her involvement in the unethical and unlawful actions regarding the improper subpoena and coercion.

3. A referral of Ashley Kersting to the Bar Association for disciplinary review based on her role in this matter.

4. A charge of coercion against Thomas Fogarty and Ashley Kersting for their actions.

5. An immediate termination of the supervision and restoration of custody, as all orders were fraudulently obtained based on falsehoods presented by Thomas Fogarty.

6. A change of venue to Manhattan, where the case may receive impartial scrutiny, particularly given the serious allegations and our prior experiences with previous jurists.

7. The immediate removal of Nicole DiGiacomo, as her being assigned as private attorney on March 22, 2022, was predicated on Thomas Fogarty's fraudulent claims. To ensure justice, it is essential to restore all matters to the status quo—prior to Thomas Fogarty's deceitful actions. This is in accordance with the "fruit of the poisonous tree" doctrine, which asserts that any evidence or decisions stemming from unlawful conduct are tainted and must be disregarded.

## V. Conclusion

The recantation of testimony by Witness Brandon Jimenez, compounded by the criminal and unethical conduct of Thomas Fogarty and Ashley Kersting, necessitates an immediate mistrial to uphold justice. The exploitation of a vulnerable individual, combined with threats and manipulation, constitutes a serious offense that this Court cannot overlook. I fear for the safety of my 3 children and myself due to possible retaliation from Thomas Fogarty and Ashley Kersting. We urge the Court to consider the profound implications of this situation on the fairness of the proceedings and to grant the requested relief.

Thank you for your attention to this critical matter.

Respectfully submitted,

*Slat Malena Jimenez*

To the Honorable Judge Zugibe,                                      October 22, 2024

While I did not read yesterday's 12-page court order due to the likelihood that it contains inaccuracies and may have been written by opposing counsel, Ms. Ashley Kersting, as in the past I must note that this has unfortunately been a recurring pattern in the court's orders. However, that matter is one I will bring to the higher courts. I would like to bring to your attention the urgent and unresolved issues in this case.

Specifically, **the court has not addressed the critical document I uploaded yesterday, which seeks a mistrial due to the compelling evidence that the plaintiff, Thomas Fogarty, and his attorney, Ms. Kersting, unlawfully coerced my special needs son into testifying against his will. My son clearly stated that he was forced to testify under duress, with the threat that he would lose his job if he did not comply. This form of coercion is not only deeply concerning but is also a serious crime under both New York law and federal statutes.**

Coercion is defined as the use of force, threats, or intimidation to compel someone to act against their will. Under New York Penal Law § 135.60, coercion is a crime when a person uses threats or force to compel another person to act against their will, and it is punishable by law. The intentional use of coercion to force my child, particularly a special needs individual, into making statements or participating in legal proceedings is not only morally reprehensible but also illegal. Such behavior undermines the integrity of these proceedings and violates the rights of the child, the parent, and the fairness of the judicial process.

Furthermore, this coercion constitutes a violation of the Family Court Act § 262, which provides that all parties, must be protected from undue influence and coercion during legal proceedings. This coercive conduct was carried out by the plaintiff and his attorney with full knowledge that my son was not voluntarily participating in the proceedings. The court must take immediate action to remedy this situation and ensure that my son's rights are respected.

**Additionally, I have repeatedly expressed serious concerns about the safety of my two minor children, who are currently residing with the plaintiff, Thomas Fogarty, and his girlfriend. Based on the evidence I have provided; they pose an imminent and significant danger to my children. Yet, despite these grave concerns, the court has failed to take any action to protect them. Instead, the court issued a 12-page ex parte order, which Ms. Kersting unlawfully obtained and which Judge Zugibe has not allowed me to fully address, depriving me of due process.**

**This pattern of disregarding urgent, emergency present-day issues that harm my children and I while focusing on outdated matters, such as an unlawful ex parte order from May, obtained based solely on manufactured fabrications by Ms. Kersting to benefit Thomas Fogarty is deeply troubling and undermines the very purpose of this court—to act in the best interests of the children. The court's inaction on the pressing matters at hand, which violate my constitutional rights, including my due process and human rights, is extremely concerning.**

1. **Coercion of My Special Needs Son** – I formally request that the court address the evidence I submitted demonstrating that my son was coerced into testifying. This testimony was given under threats of job loss, violating my son's rights and the integrity of the legal process.

2. **Endangerment of My Minor Children** -- My children are living with Thomas Fogarty and his girlfriend, who as I have repeatedly stated pose a significant danger to their safety. I respectfully ask that the court immediately investigate this matter and protect my children from harm.

3. **Noncompliance with Court Orders by the Plaintiff** – The plaintiff has repeatedly violated court orders, demonstrating a pattern of noncompliance that amounts to $1.6 million in violations. Additionally, he has been in contempt for failing to facilitate phone contact with my children. These actions, which reflect a

FILED: ROCKLAND COUNTY CLERK 10/22/2024 11:02 AM    Page 168 of 533.

NYSCEF DOC. NO. 1258                                    RECEIVED NYSCEF: 10/22/2024

broader pattern of disregard for court mandates, should be addressed urgently. Per the Court's request I updated the evidence on September 6, 2024, and it has been ignored.

4. **Supervision and Visitation Issues** – I have faced multiple instances where I was unable to see my children due to the unavailability of a supervisor. This issue arose when the plaintiff removed Ms. Barbara Conklin as the designated supervisor, and my request for the court to give her guidance instead of removing her was denied. As a result, I have missed vital time with my children, and this ongoing interference is unacceptable. I told Judge Zugibe if you remove her I will not be able to see my children and it exactly as I stated is what has happened. This is not in the best interests of the children.

5. **Owed Visitation Hours** – Opposing counsel has asserted that missed visitation hours, resulting from circumstances beyond my control, such as a supervisor not being available, or my hospitalization should be deemed forfeited. This assertion is not only legally incorrect but also constitutes a violation of my rights under New York Family Court Act § 651, which protects the right to visitation. Such actions by Thomas Fogarty and his counsel amount to unlawful interference with my visitation rights. I respectfully request that the court mandate the scheduling of these hours, as they are crucial for maintaining and fostering my relationship with my children. **I did not have my court ordered parenting last Tuesday Oct 15th and I'm not having it today due to no supervisor being available. That 4 hours of owed time.**

6. **Failure of AFC Ms. DiGiacomo to Represent Children's Interests** – The AFC, Ms. DiGiacomo, was tasked by the court to address the hours owed and find a supervisor, yet she has done neither. My son Patrick reached out to her last week, but she has not represented her clients' wishes, instead advocating for the monied spouse, Thomas Fogarty. This ongoing pattern by Ms. DiGiacomo contributes to a broader scheme that undermines the best interests of the children.

7. **Legal Argument for Restoration Custody and Lifting Supervision:** The supervision and custody orders were based on perjured testimony and fraudulent misrepresentations. Under the doctrine established in *Wong Sun v. United States*, 371 U.S. 471 (1963), any evidence or orders resulting from illegal actions are tainted and must be excluded.

In conclusion, the court's ongoing inaction regarding these urgent matters is both alarming and unacceptable. I unequivocally demand that the court take immediate and decisive action to ensure the safety of all three of my children, particularly my two minor children who remain isolated with Thomas Fogarty. It is essential that the court promptly address the mistrial documents and resolve the outstanding issues without further delay.

Moreover, I insist that the court take all necessary measures to protect my children from potential harm, rectify the pervasive bias against me that undermines their best interests, and restore due process in this case. The integrity of this judicial process is at stake, and the welfare of my children cannot be compromised.

Thank you for your urgent attention to these critical matters.

Sincerely,
*Sai Malena Jimenez Fogarty*

The Court is in receipt of Defendant's letters from 10/21/24 and 10/22/24 seeking a mistrial in this action. The Court first notes that the letters do not request permission to make a motion, as is required by the Gatekeeper Order currently in effect. Notwithstanding, the Court will treat the letters as a request for permission to make a motion seeking a mistrial. The request is hereby denied. The request is premised upon a letter purportedly "filed" by a trial witness who now seeks to recant his prior testimony. The letter was filed well after the conclusion of the trial, and following the completion of the Lincoln hearings, and therefore, the Court will not allow same to be used as a basis to request a mistrial. As a reminder, closing submission with respect to the custody portion of this trial are due on or before November 8, 2024, as per Court Notice at NYSCEF Doc. 1171. So Ordered.

Hon. Thomas P. Zugibe, J.S.C.

FILED: ROCKLAND COUNTY CLERK 07/12/2023 05:34 PM    INDEX NO. 035547/2021
NYSCEF DOC. NO. 433    RECEIVED NYSCEF: 07/12/2023

136

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND:    CIVIL TERM
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
THOMAS FOGARTY,

                    Plaintiff,

        -against-                        Index No. ▮▮▮▮▮▮▮

SAI M. FOGARTY,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

                CONTINUED TRIAL

                Rockland County Courthouse
                One South Main Street
                New City, New York
                June 20, 2023

BEFORE:    HONORABLE THOMAS P. ZUGIBE
           Justice of the Supreme Court

APPEARANCES:

For the Plaintiff:

        MILLER ZEIDERMAN, LLP
        140 Grand Street, Suite 5
        White Plains, New York  10601
        BY: ASHLEY KERSTING, ESQ.
            DANIEL MILLER, ESQ.


Defendant Pro Se:

        Sai Malena Jimenez Fogarty


For the children:

        LAW OFFICE OF NICOLE DIGIACOMO, PLLC
        130 N Main Street, Unit 101
        New City, New York  10956
        BY: NICOLE DIGIACOMO, ESQ.

                                Michele Mastropolo, RPR
                                Senior Court Reporter

                    1 of 160

FILED: ROCKLAND COUNTY CLERK 10/21/2024 10:02 AM
NYSCEF DOC. NO. 433

FILED: ROCKLAND COUNTY CLERK 07/12/2023 05:34 PM
NYSCEF DOC. NO. 433

Page 170 of 533.

RECEIVED NYSCEF: 07/12/2023

BRANDON JIMENEZ — CROSS                    240

```
 1            THE COURT:  Sustained.

 2      Q    When you lived at home, who took care of ████████

 3   ████████

 4            MS. KERSTING:  Objection, Judge beyond the scope.

 5            THE COURT:  Sustained.

 6      Q    When you lived at home, did you put your brother and

 7   sister on a timeout?

 8            MS. KERSTING:  Objection.

 9            THE COURT:  Sustained.

10      Q    When you lived in my house, did you see a timeout

11   chair?

12            MS. KERSTING:  Objection.

13            THE COURT:  Sustained.

14      Q    The subpoena that you received to be here, how did you

15   receive it?

16      A    What do you mean how did I receive it?

17      Q    Which method?

18      A    I received it.

19            THE COURT:  Sir, who served you with the subpoena;

20   do you recall?

21            MS. KERSTING:  Judge, can we get a clarification

22   which subpoena because, again, he's been served twice.

23            THE COURT:  Which subpoena are you referring to?

24            THE DEFENDANT:  I'm referring to both.

25            MS. KERSTING:  Compound question.
```

FILED: ROCKLAND COUNTY CLERK 07/21/2024 10:02 AM    Page 171 of 533.
NYSCEF DOC. NO. 433    RECEIVED NYSCEF: 07/21/2024

FILED: ROCKLAND COUNTY CLERK 07/12/2023 05:34 PM
NYSCEF DOC. NO. 433    RECEIVED NYSCEF: 07/12/2023

BRANDON JIMENEZ - CROSS                    241

1    Q    The subpoena to be here today.

2    A    It was given to me by -- it was given to me by my

3    stepfather that I needed to come here.

4    Q    And was that done at work?

5    A    No, that wasn't done at work.

6    Q    Where was that done?

7         MS. KERSTING:  Objection to the relevance.

8         THE COURT:  Sustained.

9    Q    The subpoena for October 2021, how did you -- how was

10   that served to you?

11        MS. KERSTING:  Objection.

12        THE COURT:  Sustained.

13   Q    When is the first time you spoke to opposing counsel?

14        MS. KERSTING:  Objection, asked and answered.

15        THE COURT:  Sustained.

16   Q    The picture that Ms. Kersting has that you provided,

17   how did you get that picture to Ms. Kersting?

18   A    How did I get the what?

19   Q    The picture that Ms. Kersting has, how did you get that

20   picture to Ms. Kersting?

21   A    I believe it was through e-mail if I'm not mistaken.

22   Q    You e-mailed it to her?

23   A    I believe so.  I think, yeah.  I believe so.

24   Q    When you testified October 14 of 2021, you stated

25   quote, "I know the kids weren't home during the alleged incident

FILED: ROCKLAND COUNTY CLERK 10/21/2024 10:02 AM    Page 173 of 533.

NYSCEF DOC. NO. 1250                                      RECEIVED NYSCEF: 10/21/2024

On Aug 14, 2023, at 3:35 PM, Karen Winner <karen@karenwinner.com> wrote:

CAUTION: This email originated from outside of the organization. DO NOT reply to the message, click links or open attachments unless you recognize the sender and know the content is safe. Call the sender instead if you are unsure whether the email is legitimate.

Dear Ms. Kersting,
I received a purported subpoena to Brandon Jimenez dated June 19 2023 for trial  the next day on June 20, 2023.
So many questions. . . . . You served this on him with no address listed  and less than 24 hours — one day before the trial?
You know that  trial subpoenas can't be issued less than three days from trial, by law.
You did not serve my client the subpoena. You know that is unlawful as well.
No address? No email? Nothing?
Where is the proof of service — showing actual delivery and  receipt?
Where is the response from Ms. DiGiacomo that she received it on the 19th.
Where is the posting on NYSCEF?

I do not believe this document is genuine or that it was ever served on him. If it was served by email you need to show it to me. If it was served overnight delivery you need to show me the  delivery receipt. Some tangible actual proof.

If there are any other subpoenas that were purportedly served you are required to provide them in real time. You did not answer my question. Where are the other subpoenas that were sent out?
Very truly yours,

Karen Winner, Esq.
252 W, 37th St., Suite 600
New York, NY 10018
917-741-0213
Karen@karenwinner.com
AttorneyWinner.com

CONFIDENTIALITY NOTICE: The information contained in this message and any attachments may be information protected by attorney-client and/or the attorney/work product privilege. It is intended only for the use of the individual named above. If you have received this communication in error, please immediately notify us by email and telephone and return the original message and any attachments to us at the above address via email and by the U. S. Postal Service and delete the message from your system and destroy any printed copies.
karen@karenwinner.com

FILED: ROCKLAND COUNTY CLERK 10/21/2024 10:02 AM    INDEX NO.
NYSCEF DOC. NO. 1250                                        RECEIVED NYSCEF: 10/21/2024

 Gmail

M Jimenez <sunnysky155@gmail.com>

**Fwd: Purported Subpoena**
1 message

Karen Winner <karen@karenwinner.com>                              Mon, Aug 14, 2023 at 5:49 PM
To: M Davis <sunnysky155@gmail.com>

Sent from my iPhone

Begin forwarded message:

> **From:** Ashley Kersting <ak@mzw-law.com>
> **Date:** August 14, 2023 at 5:12:26 PM EDT
> **To:** Karen Winner <karen@karenwinner.com>
> **Cc:** diGiacomo Nicole <nicole@ndigiacomolaw.com>
> **Subject:** Re: Purported Subpoena

Counsel,

You are assuming a lot of things that are simply inaccurate. The subpoena was never served on Mr. Jimenez; as such, there is no affidavit of service. Nor was a copy provided to the AFC or Ms. Fogarty as it was never served, nor was service attempted.

I hope this clarifies things.

Regards

Ashley

Ashley Kersting, Esq, CFL
Partner
Miller Zeiderman LLP
Direct Dial: (914) 488-2408
Email: ak@mzw-law.com

 https://mzwnylaw.com/

140 Grand Street - 5th Floor - White Plains - NY 10601
Telephone: 914-455-1000 - Facsimile: 914-468-4244

150 East 52nd Street - Ste 1002 - New York - NY 10022
Telephone: 212-769-3500


10 BEST LAW FIRM
·· CLIENT SATISFACTION ··
American Institute of
Family Law Attorneys™


ATTORNEY
CLIENT SATISFACTION
American Institute of
Family Law Attorneys™


RATED BY
Super Lawyers
Ashley R. Kersting
SELECTED IN 2021
THOMSON REUTERS






AACFL
AMERICAN ACADEMY FOR
CERTIFIED FINANCIAL LITIGATORS
FOUNDING MEMBER 2017

This electronic transmission by the law firm of Miller Zeiderman LLP contains information that may be confidential or proprietary, or protected by the attorney client privilege or work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents hereof is strictly prohibited. If you have received this transmission in error, please notify Miller Zeiderman LLP at (914) 455-1000. Thank you. We are required by IRS Circular 230 to inform you that any statements contained herein are not intended or written to be used, and cannot be used, by you or any other taxpayer, for the purpose of avoiding any penalties that may be imposed by Federal Tax Law.

# 2

# Bandy Lee, MD, MDiv

Forensic Psychiatrist and Violence Expert

NPI 1922140326

November 5, 2024

**Re: Peer Review of the Child Custody Evaluation Report**
**In the Matter of Fogarty v. Fogarty**

Dear Ms. Jimenez:

Pursuant to your request, I have prepared my peer review of the forensic psychological child custody evaluation report that Marc S. Mednick, Ph.D. conducted in the matter of Fogarty v. Fogarty. A "peer review" of a child custody evaluation (CCE) is an independent assessment of the CCE's accuracy and professionalism. My focus is twofold: the safety of children first, and adherence to general professional standards of practice (in other words, standards should not change across types of evaluations, including a CCE).

## Safety First

As a forensic psychiatrist of twenty-five years and an expert on violence, my main focus is to assess whether the report has adhered to the medical and legal priorities of placing safety first, in compliance also with numerous state legislatures, the U.S. government, and the United Nations Human Rights Council to avoid placing children in deadly custody arrangements—as happens too often in family courts by ignoring domestic violence and child abuse. The United Nations has declared family courts a dangerous place especially for women and children, because of the placement of other concerns over safety, wellbeing, and survival. Indeed, one thousand children have been documented to have been murdered in the context of family court failures. As a result, my peer review places safety before all other concerns. There can be no concern more important than keeping children safe, healthy, and alive.

## Adherence to Professional Standards

This peer review focuses on the extent to which the report adheres to the American Psychological Association (APA) "Guidelines for Child Custody Evaluations in Divorce Proceedings" (2016) and other guidelines and peer review literature including: the APA's "Specialty Guidelines for Forensic Psychology" (2012); the APA's "Ethical Principles of Psychologists and Code of Conduct (2002); the Association of Family and Conciliation Courts (AFCC) Model Standards of Practice for Child Custody Evaluations (2006); Flens and Drozd's "Psychological Testing in Child Custody Evaluations (2005); Melton and colleagues' "Psychological Evaluations for the Courts" (2007); Martindale and Gould's "Deconstructing Custody Evaluation Reports (2013); and Simon and Stahl's "Analysis in Child Custody Reports: A Crucial Component" (2014).

The following section of the APA's "Guidelines for Child Custody Evaluations in Divorce Proceedings" (2020) introduce the principal concern and primary responsibility of child custody evaluations:

> Psychologists do have an ethical requirement to base their opinions on information and techniques sufficient to substantiate their findings (Ethics Code, Standard 9.01(a)) and may wish to emphasize this point for the court's benefit if pressed to provide opinions....

917.328.2492  |  bandyleemd@gmail.com

If psychologists choose to make child custody recommendations, these are derived from sound psychological data and address the psychological best interests of the child. When making recommendations, psychologists seek to avoid relying upon personal biases or unsupported beliefs. Recommendations are based upon articulated assumptions, interpretations, and inferences that are consistent with established professional and scientific standards.

Although the profession has not reached consensus about whether psychologists should make recommendations to the court about the final child custody determination (i.e., "ultimate opinion" testimony), psychologists seek to remain aware of the arguments on both sides of this issue (Bala, 2005; Grisso, 2003; Heilbrun, 2001; Tippins & Wittman, 2005) and are able to articulate the logic of their positions on this issue.... Psychologists are encouraged ... to seek peer consultation in the face of a potential loss of impartiality. Vigilant maintenance of professional boundaries and adherence to standard assessment procedures, throughout the evaluation process, will place psychologists in the best position to identify variations that may signal impaired neutrality.

*Common Pitfalls*

The controversy surrounding CCE reports have to do with their frequently limited scientific value—*i.e.*, no scientifically based nexus between the data and the conclusion. A detailed review of 50 evaluations (Lubit, 2021) found shocking violations of scientific methodology, including:

a. Cherry picking data
b. Arbitrary determinations of contested facts
c. Using *ad hoc* hypotheses rather than the results of empirical research
d. Presenting highly speculative inferences as expert opinions
e. Misinterpretation of psychological testing
f. Incorrect interpretation of the behavior of abused children
g. Reliance on the presence of convergent data rather than hypothesis testing to reach conclusions

The errors almost always help the same parent, indicating that bias is driving many of the errors. Oversight is therefore critical in these often high-stakes evaluations, which a peer review can help provide. It is also important that courts be educated about the scientific method, the high risk of bias, the need for highly-structured reports, and the need for emphasis in empirical research over subjective preferences. The stark departure of many professionals from basic standards of the profession when it comes to CCE's may have to do with  Above all, to keep children from unnecessary torture and untimely death, proficiency in child abuse and intimate partner violence is a necessary prerequisite, before proceeding with the rest of any CCE.

*Peer Review*

Data Collection

Dr. Mednick provides thirty-five pages (more than half of his report, which is sixty-seven pages) of data collected on an informal basis, without framing or structure, where he simply

describes the self-representation of his evaluees. He does not state what court order he is responding to, what the questions are, what "policies, procedures, and fees" he has discussed, what he considers his role to be as evaluator, what the parameters of confidentiality are, or even what length(s) of interviews he has performed. There is no indication of assessment of his interviewees' reliability, objective data sources, or whether or not their assertions are backed by evidence. Dr. Mednick reports the clinical interviews without analysis; analyzes the test results without explaining their limits, even though they figure prominently in his evaluation; omits critically important information to the children's wellbeing from the report; and finally does not consider alternative hypotheses to "parent alienation" pseudo-theory, which a number of professional associations and the United Nations Human Rights Council itself have denounced against use in child custody evaluations.

Clinical interview: Thomas Fogarty

Dr. Mednick's twelve pages of single-spaced description of Mr. Fogarty's clinical interview already raises alarms regarding his uncritical acceptance of Mr. Fogarty's excessively flawless picture of his own background. It should have been apparent from his pattern of effusively speaking of himself in all domains, at all stages of life, and embellishing with descriptions that offer few real details, is not someone to take everything for his word. Indeed, even his first few sentences are immediately debunked: for example, Dr. Mednick unconditionally believes Mr. Fogarty when he says, "his childhood was quite good, uneventful," when this directly contradicts an email exhibit from December 4, 2013, in which Mr. Fogarty states, "I don't like living in that fear it reminds me when I was younger and my father used to beat me." In the next sentence, Mr. Fogarty states that he left high school at age 16 "to work, mostly in construction," but several court transcripts from 2024 reveal his testifying his lack of knowledge of basic grammar and being effectively illiterate (according to Ms. Jimenez-Fogarty, he dropped out of school at age 12, not 16).

In the same paragraph, Mr. Fogarty states that he got into a "union and was making decent money" before he "started a construction business" in 2013, but the fact he received his permanent resident alien card only on February 14, 2014, a year after his marriage to Ms. Jimenez-Fogarty, proves that he could not have been in a union and also had to rely on Ms. Jimenez-Fogarty's name, credit, and 50,000-dollar contribution in total, including the partners she procured, for their construction business. In this manner, just the first paragraph should have revealed a level of unreliability that casts doubt on anything he says, as well as invoking the possibility of pathological lying. Most egregiously, Mr. Fogarty appears to have fabricated a story of Ms. Jimenez-Fogarty "stabbing" her son and pressuring her son to agree with his story, which he later recanted—all this Dr. Mednick does not question but takes literally. Instead, he either naïvely believes or overlooks Mr. Fogarty's projections of his own negative characteristics onto Ms. Jimenez-Fogarty, including that she is violent and is a heavy drinker—both of which can be easily disproven about her but proven about himself.

Clinical interview: Malena Fogarty

Dr. Mednick's bias is immediately apparent when, in contrast to Mr. Fogarty's vivid, multi-dimensional, and highly-embellished personal history even of mundane facts, Ms. Jimenez-Fogarty's personal history barely exceeds one page, consisting of disjointed details, lusterless descriptions of even exceptional accomplishments, and omissions, such as her excelling in

academics to the point of attending a boarding school for gifted children in New Hampshire at age 14, after going to summer school in Massachusetts. Dr. Mednick quotes very few of her own words, in contrast Mr. Fogarty's. He also omits the fact that she had a choice but stayed with her maternal aunt, who raised her as a mother, because she was able to do so as a highly-established Ambassador to the United Nations living in Greenwich Village in New York City (Dr. Mednick erroneously refers to her as a translator). She saw her biological mother when she visited, but her true attachment was with her maternal aunt, who gave her a happy childhood, enjoying school, sports, frequent travel, and educational opportunities. Instead, Dr. Mednick goes straight into her difficulties with her relationship with Mr. Fogarty and his treatment of their children, filling up the rest of her twelve-page interview report, as if these issues were only her problem and not his. Also, by contrast to Mr. Fogarty, whose words are mostly documented as truth, Ms. Jimenez-Fogarty's words are given an added layer of suspicion: "According to Ms. Jimenez-Fogarty," "From her perspective," etc.

It is little wonder, then, that he misses the critical information Ms. Jimenez-Fogarty is giving through her interview: Mr. Fogarty is a danger to himself, to his estranged wife, and to his children. Mr. Fogarty ran his nails down his face and cut himself in January 2018 and November 2020, claiming it was from "going off the drink," for which Ms. Jimenez-Fogarty encouraged him to see a therapist, and he did in 2020. Four psychologists said to Mr. Fogarty, "Thomas, you're an alcoholic and need to quit drinking to save your marriage but especially to save your life." He almost died from alcohol-induced rhabdomyolysis at Montefiore Hospital after consuming thirty-six pints of beer in a four-hour period and was hospitalized for a week with kidney failure and enlarged liver, according to hospital records.

Mr. Fogarty's danger to his estranged wife and his children have been worse. Without revealing that he was an illegal alien, he tricked Ms. Jimenez-Fogarty into marrying him, but then once he had his green card in 2014, he began physically abusing her and verbally demeaning the children. In 2018, after obtaining his citizenship through her, Mr. Fogarty started hitting his son in the legs, the head, and even took a belt (post separation, their son showed up to Ms. Jimenez-Fogarty with bruises and belt welts on his legs, which the school nurse examined his because blood was seeping through his tube socks; on another occasion, the New York Police Department requested a wellness check on their 7-year-old daughter, who was bleeding vaginally after Mr. Fogarty sent her to a sleepover and had to sleep in the same bed with unrelated adults). That same year, he started raping Ms. Jimenez-Fogarty, constantly using the "N" word and exposing her to violent, racist pornography, where ethnic minority women would be brutalized by all white men—acts that he tried to repeat on her. He would say, "Die, f*cking black c*nt, die!" and choke her in ways that made her believe she was truly going to die. All this is without going into his legal abuse, locking her out of all joint accounts, throwing her out of her own house (which is under her name), throwing all her possessions into the dumpster, and having his girlfriend move in with him while paying her for "child care."

Clinical interview: Fogarty Children

The accounts Dr. Mednick gives of his interviews with the children are similarly devoid of context, without giving a description of the children's experience of their family life, their parents' separation, or their hopes for the future both individually and as a family. Instead, they are significant for the fact that Dr. Mednick had Mr. Fogarty conduct the interview with the children in the marital home, a spacious environment with which the children feel comfortable and are familiar. In contrast, Ms. Jimenez-Fogarty's interview took place in Dr. Mednick's small, cramped

office—a location neither Ms. Jimenez-Fogarty nor the children had previously visited. Rather than engaging in meaningful conversation with the children and Ms. Jimenez-Fogarty, Dr. Mednick chose to have them participate in a trivial, "build a house with blocks" activity, which he did not require Mr. Fogarty to do. Following this, he provided negative feedback, because Ms. Jimenez-Fogarty praised her children for their efforts, while no such criticism was offered regarding Mr. Fogarty's interactions. Additionally, he deemphasized Ms. Jimenez-Fogarty's daughter expressing to Dr. Mednick her desire to live with her mother. These are the kinds of discrepancies that make Dr. Mednick's lengthy descriptions more illustrative of his own biases than anything about parenting ability or the children's own attachment.

Standardized tests

Dr. Mednick performed the Minnesota Multiphasic Personality Inventory-3 (MMPI-3) and the Millon Clinical Multiaxial Inventory, Fourth Edition (MCMI-IV), but he does not describe the strengths and weaknesses of these instruments and what can be reasonably concluded from the results. Rather, he states that these "provide information about issues pertaining to parenting and coparenting," when they do nothing of the sort. Indeed, he himself says, "These are not parenting tests," even as he proceeds to treat them as such. Yet, because of Dr. Mednick's lack of awareness of his extreme bias, the test results risk being a threat to the integrity of the evaluation, giving a "guise" of objectivity rather than leading to helpful information. For example, he indicates that the results suggest Mr. Fogarty's exhibiting signs of paranoia; however, he does not take any further action or address these findings. In contrast, Ms. Jimenez-Fogarty demonstrates positive results on the same tests but is once again unfairly criticized.

Collateral inputs

There are numerous problems with the collateral inputs Dr. Mednick has chosen. Dr. Marc Abrams, whom he cites first, has been removed as a member of the Appellate Division First and Second Judicial Departments Mental Health Professionals Panel for sexual misconduct against patients. Furthermore, Dr. Abrams is unable to opine on any court-related matters, including custody evaluations, as he has been depaneled. Mr. Fogarty compensated Dr. Abrams over 50,000 dollars for "therapy sessions" with his children, despite their having excellent medical insurance. Dr. Abrams gave off a "very unsettling vibe," according to Ms. Jimenez-Fogarty: his office is filled with large, sharp swords, making it far from kid-friendly, and her daughter would become so frightened during visits that she urinated on herself weekly for over a year. According to her son, Dr. Abrams placed his hand on his leg or shoulder and demonstrated what he called the "one-second punch," where he struck her son multiple times in rapid succession.

All collateral witnesses Mr. Fogarty presented he monetarily compensated and may be considered "hired guns," all having direct affiliations to Mr. Fogarty's legal team at Miller Zeiderman. For example, Dr. Abrams is a paid consultant for Miller Zeiderman, referred by Lisa Zeiderman, and was paid at least 50,000 dollars. Dr. Mednick himself is a paid consultant for Miller Zeiderman and a close personal friend of Dr. Abrams for over 30 years. Dr. Mednick even featured Dr. Abrams on his podcast after Abrams was depaneled for sexual misconduct. Lisa Zeiderman selected Dr. Mednick, who has been paid over 39,000 dollars for his services, making a mockery of the requisite objectivity and integrity for this case.

Lisa Zeiderman referred as Mr. Fogarty's therapist Andrea Labis, who is also affiliated with Zeiderman's Savvy Ladies Organization. She is also the sister of Keith Labis, Esq., who

works for Miller Zeiderman. Despite having insurance that would fully cover the cost of a therapist, ensuring neutrality, Mr. Fogarty pays Andrea Labis significant amounts out of pocket. Prior to consulting with Lisa Zeiderman, Mr. Fogarty was seeing a therapist through his insurance but switched to Andrea Labis after the referral and paid at least 15,000 dollars. All these factors are documented and should have been automatic disqualifications as collateral sources.

Finally, Laura Marino deceived Dr. Mednick by claiming to be the children's nanny, when she is in fact Mr. Fogarty's mistress, who moved into Ms. Jimenez-Fogarty's home after removing her. Ms. Marino has a clear, vested interest in favoring Mr. Fogarty, both because of their personal relationship and because of her residing in Ms. Jimenez-Fogarty's rightful, million-dollar home. Furthermore, Mr. Fogarty pays her 6,000 dollars per month—a financial arrangement that would cease if Ms. Jimenez-Fogarty were awarded custody of her children. So far, Ms. Marino has been paid over 200,000 dollars.

All of Ms. Jimenez-Fogarty's collateral witnesses were neutral third parties—such as the children's pediatrician, teachers, and former nannies—all consistently affirming that Ms. Jimenez-Fogarty is a devoted mother and an effective primary caregiver for the children. Importantly, Ms. Jimenez-Fogarty did not pay any of her collateral witnesses.

Evidentiary documents

There is little I can comment on here, other than the fact that there appear to be multiple documents Ms. Jimenez-Fogarty stated she submitted but are missing from Dr. Mednick's list. Yet, because Ms. Jimenez-Fogarty is prohibited from having a copy of the evaluation—another condition that makes Dr. Mednick's bias and conflicts of interest even more problematic—she has little means of correcting, let alone, knowing about, errors.

*Conclusions*

Poor-quality clinical assessments, conflicts of interest, and corruption in the context of child custody evaluations are killing too many children in family court. A recent testimony to the U.S. Congress revealed that a child dies in this context every six days. A large factor is child custody evaluations that do not meet basic professional standards. This is why it is extremely important to be vigilant and to apply rigorous professional standards. Unfortunately, Dr. Marc Mednick's evaluation failed to pass the basic test of objectivity when it started with lengthy, unstructured self-reports devoid of any analysis in his clinical interviews—which has the effect not only of making himself vulnerable the manipulations common in abusive and dangerous personalities, but the reader as well. As the report progresses, it only grows worse. It fails all three criteria as outlined at the outset of this peer review: (1) he fails to place child safety first, by ignoring critical information alerting to the children's endangerment and injury; (2) he fails to comply with basic professional standards of scientific methodology, causing a mismatch between data and conclusions; and (3) he fails to avoid almost every pitfall the research warns against in child custody evaluations (CCE's):

a.  Cherry picking data: There is much information critical to the children's safety, or the integrity of his own report, that Dr. Mednick omits.

b. Arbitrary determinations of contested facts: There is unconditional acceptance of one party's words and almost unreasonable sloppiness or skepticism with respect to his disfavored party's documented assertions.

c. Using *ad hoc* hypotheses rather than the results of empirical research: These include the pseudo-theory of "parental alienation," used primarily to deflect accusations of abuse.

d. Presenting highly speculative inferences as expert opinions: Almost all of his inferences fail to follow scientific methodology.

e. Misinterpretation of psychological testing: There is little to no connection between the results of his psychological testing and his conclusions.

f. Incorrect interpretation of the behavior of abused children: There are many cues the children make of their victimization, which Dr. Mednick omits.

g. Reliance on the presence of convergent data rather than hypothesis testing to reach conclusions: Confirmation bias is present throughout Dr. Mednick's report, which hypothesis testing is almost nonexistent.

For all intents and purposes, this is not a scientific report; given the stakes, it can even be dangerous. Assessments should follow observation, but here prejudice precedes data collection. The report does not stand up to but rather contradicts other scientific analyses.    One of the conclusions he makes, for example, is that Ms. Jimenez-Fogarty has a mental disorder. A full psychiatric evaluation has revealed that Ms. Jimenez-Fogarty does not have a mental disorder but has robust psychological development; nor has any qualified medical or mental health professional diagnosed her of one. Above all, Dr. Mednick is not qualified to diagnose Ms. Jimenez-Fogarty with a mental disorder, not being a medical doctor and not having examined her full medical records.  Mr. Fogarty, on the other hand, shows numerous signs of a dangerous personality disorder, from the information in Dr. Mednick's report alone, and yet Dr. Mednick does not even consider this possibility. His biased and erroneous conclusions have had the effect of subjecting Ms. Jimenez-Fogarty to unwarranted supervision for three years.

Despite no investigations by Child Protective Services (CPS) or any agency for abuse or neglect, Ms. Jimenez-Fogarty has suffered the stripping of custody and placement under indefinite supervision, which continues to this day, despite over 450 visits occurring without incident, and five supervisors testifying that she is no threat to her children but rather the contrary. On the other hand, Mr. Fogarty, who has had multiple CPS investigations, has lied about his quitting alcohol and cocaine, exposes the children to his parents' chain smoking, and may have gravely abused and injured them, was granted temporary custody without a hearing or a trial. Stripping custody or applying supervision against the "wrong" parent, as a result of poorly-performed CCE's, is a common cause of endangerment of children (not to mention deprivation of their nurturing parent).

Finally, the "parental alienation" defense is highly correlated with abusive fathers, and Dr. Mednick uses it in this case. Consistent with this pseudo-theory is the reversed reality in which abusers characteristically think of themselves as victims—as does Mr. Fogarty.   Leading researchers in the field of attachment describe the impact of separation from one's primary attachment figure in the following ways:

> Preventing children from being with their primary attachment figure for a significant part of the week is likely to do significant harm.  Following divorce, children's anxiety, and attachment issues are inversely proportional to the amount of warm parenting time the children receive (Huff, 2015).

Children lose "the secure base from which a child moves out into the world,... a safe haven [that] promotes self-reliance and develop the self-awareness, empathy, impulse control and self-motivation" (Van der Kolk, 2014). The court system, child guardians, and custody evaluators are supposed to protect children from mistreatment. Removing children from their primary attachment figure to be with a parent, with whom they are uncomfortable, causes betrayal trauma and serious long-term psychological damage (Kleinman and Kaplan, 2016; Lubit, 2019). Child maltreatment can adversely affects a child's developing brain (Anda et al., 2006; Teicher et al., 2002; Van der Kolk, 2014). The marked negative impact of maltreatment on children has been solidly established.

To conclude, Dr. Mednick's evaluation has not demonstrated the requisite scientific or clinical rigor to be a constructive report; indeed, it may have been destructive to the children's best interest and safety. It fails to investigate litigants' contradictory accounts of very serious charges of child endangerment; makes prejudgments based on nonexistent or untested "facts"; draws conclusions that ignore serious information; and gives false recommendations that are the reverse of what the data call for. As a result, the children have been deprived of their primary attachment figure, while silenced in their complaints regarding the abusive parent. It is therefore recommended that Dr. Mednick's report be disqualified, the accusations against Mr. Fogarty be thoroughly investigated, and Mr. Fogarty be subject to a thorough psychiatric evaluation by a forensic psychiatrist or psychologist well-versed in dangerous personality disorders.

Respectfully Submitted,

Bandy Lee, M.D., M.Div.

# 3

# Bandy Lee, MD, MDiv

Forensic Psychiatrist and Violence Expert

NPI 1922140326

June 20, 2024

Dear Atty. Lindsay:

Pursuant to your request for a psychiatric evaluation of Ms. Sai Malena Jimenez Fogarty (d.o.b. 4/28/1975., I have prepared this letter to give a brief summary of my findings. Please be advised that this is only a preliminary report, and my full evaluation is forthcoming, pending another interview with Ms. Fogarty.

I conducted my first interview with Ms. Fogarty on June 12, 2024, for approximately an hour-and-a-half. The interview was conducted at her home in Rockland County, New York State. After this interview, I spoke on the phone with a close family friend, Ms. Christian Valerio, who has known Ms. Fogarty since birth, on June 18, 2024, for approximately a half-hour.

In my preliminary analysis, I have found Ms. Sai Malena Jimenez Fogarty to be a 49-year-old, African-American, divorcing mother of three children, aged 8, 10 and 26, college-educated, employed by the telecommunications industry for twenty years before opening a family business in 2013, originally from New York City, with no psychiatric history all her life until she was diagnosed in August 2023 with post-traumatic stress disorder (PTSD) from physical and sexual abuse by her separating spouse, Mr. Thomas Fogarty. She also had no physical disorders until 2016, when she was diagnosed of herniated disc and sciatica from her husband slamming her into walls, and permanent bald patches and hearing loss from his dragging her across the floor by her hair. In March 2024, when she was hospitalized twice for vomiting blood from a gastrointestinal bleed, which she was told was stress-induced from her husband's litigation abuse. On June 13, 2024, the day after our interview, she was again in the hospital for chest pains, following a court session, and was diagnosed with a gastrointestinal bleed. Additionally, she gained forty pounds from the stress of the divorce, as confirmed also by photographs. She takes Tylenol for ulcer pain but no other medication and has no medication allergies. She has no history of substance abuse.

Ms. Fogarty reports a previously rich and happy social and family life until her husband, who is of Irish descent, received his U.S. citizenship through her in 2017. By her and family friends' observations, he transformed almost overnight, "like Jekyll and Hyde," become verbally abusive and physically violent toward her.

Ms. Fogarty grew up in Greenwich Village in New York City, raised by her maternal aunt, as her biological mother frequently returned to the Dominican Republic, and her aunt was more established as a diplomat. She continued to see her biological mother when she visited, but she was more attached to her aunt and called her "mother". She experienced no abuse but grew up happily, enjoying school, sports, frequent travel, and boarding school in New Hampshire at age fourteen by choice, after going to summer school in Massachusetts and discovering that she excelled academically. She met her biological father for the first time when she was sixteen and visited the Dominican Republic. There is no history of major psychiatric problems in her extensive biological family, although later in life she believes her maternal aunt married a man who abused her.

917.328.2492  |  bandyleemd@gmail.com

Ms. Fogarty entered her first relationship at age 18 and stayed for five years, ending it only because she was unwilling to compromise her career. They had a son together when Ms. Fogarty was age 22, and she raised him like a single mother, although the couple remain friends to this day, and the father was intermittently involved. She was happy with the arrangement, professionally successful, able to purchase a home in Philadelphia, send her son to private school, and give him a stable life, as appropriate for his autism.

As Ms. Fogarty's mother was growing older, she decided to move back to New York and met her husband through Match.com. They married in 2013. She noted from the beginning that he lied about going to the pub while saying he was at work, but while he promised to stop drinking after marriage, it only grew worse; it got to the point where he almost died from his alcoholism and was given his last rites at the hospital. Drinking also turned into drug use, and then physical abuse. Once he started abusing their children, she found it to be too much, and asked for a divorce in 2021.

Ms. Fogarty's husband had received his green card through her in 2014, at which time he began physically abusing her and verbally demeaning the children. Skin tone mattered to him greatly: "little Patrick" turned into "that boy" within five months, when his skin grew darker. In 2018, when he obtained his citizenship through her, he started exposing him to situations where he would be bullied for his skin color, and he hit his son in the legs, his head, and then even took a belt, at which time Ms. Fogarty stopped him. She later learned that he consulted a lawyer about getting a divorce at this time, and his extramarital affairs intensified, including with prostitutes.

In 2018, he started raping her, constantly using the "N" word and exposing her to violent, racist pornography, where ethnic minority women would be brutalized by all white men—and attempt to repeat the same acts on her. He also became more violent, at one point stating: "Die, f*cking black c*nt, die!" The rage she saw in his eyes as he choked her made her believe she was truly going to die.

They had a family business, for which Ms. Fogarty provided all the financing and even paid for her husband to take classes, so that he could work in the business. He then encouraged her to stay at home, nominally to raise the children, but he subsequently took over the company, which now brings in over 100 million dollars per year in revenue and is the largest non-union construction company in the tri-state area. Yet, she could only obtain money through him, had to ask his permission to turn on the air conditioner in 100-degree weather, even with a little child, and he dictated whom she saw and even how she wore her hair. However, he bought without consulting her a stick-shift car, which she cannot drive, and reserved for himself a 100,000-dollar suite in London to be with his mistress.

When the abuse became intolerable, Ms. Fogarty asked for a divorce. Within three hours, the police showed up, stating that he accused her of abuse, but did not find evidence of abuse and left. However, within twenty-four hours, her husband obtained an *ex-parte* order forcing her to leave her own house, which is under her name to this date, and locked her out of all joint accounts. She became homeless, was forced to live in a hotel for ten months, and all her belongings—including all that she received from her parents and her grandparents—were thrown in the dumpster. Meanwhile, within twenty-four hours of moving her out, he invited his mistress to live with him and is giving her 6000 dollars per month to "mind the kids," to this day. Meanwhile, Ms. Fogarty is denied access to her own accounts but still must pay up to 200 dollars an hour to see her children. Despite all these adversities, she picked herself up and now has a job and an apartment since January 2023, which she filled with child-centered themes and toys, revealing exceptional care and focus on parenting.

According to Ms. Valerio, friend of Ms. Fogarty's mother and fellow diplomat at the Dominican Consulate and Embassy, Ms. Fogarty was very smart, worked hard, and supported everyone, including her husband. In the beginning, Mr. Fogarty seemed "nice", even though he not do much to help Ms. Fogarty. For many years, he did not have working papers and lived off of her income, but when he got his green card, he began mistreating her and "changed a lot." She stated that he mistreated her "without reason," was indifferent when she called, but "everything changed" when he became a citizen. According to her, Ms. Fogarty is a wonderful mother, very careful about saving money for her children's education, fought for her husband to stay in this county, and never complained about having to pay for him. Ms. Valerio became tearful over the phone: "I feel sorry for her. She used to be a sweet person." She also described fearing for Ms. Foragrty's safety: "I worry about her seeing him and picking up her children alone. He once pushed her away."

During my interview with Ms. Fogarty, she was calm and cooperative, presenting her account in a linear, logical, and goal-directed manner. She reported being afraid to sleep, because every night she would have nightmare of her husband's abuse. She reported practicing meditation and listening to music to calm her anxiety symptoms. Her mood was "hopeful", and her affect slightly sad, tearful at times, but normal in range. Her speech was normal in rate, rhythm, and prosody. She showed no abnormalities in perception and no ideations that raised concern. She showed excellent insight and judgment. All her reports were consistent with collateral information.

In conclusion, although this report is preliminary, I have found no reason to question Ms. Fogarty's excellent mental health and robust psychological development, having been raised in a nurturing household surrounded by friends and extended family. She has also shown remarkable resilience in the face of highly stressful circumstances. Her empathy and love toward her two small children are well demonstrated in her expressions, her focus and orientation toward them, and her physical decorations of their rooms. However, she is a victim of severe domestic violence and coercive control, as evidenced by her symptoms of post-traumatic stress disorder (PTSD), which are consistent with the intensification of domestic violence upon her husband's obtaining U.S. citizenship (therefore, she appears also to be a victim of citizenship marriage fraud). Her accounts of her children's abuse are believable, and indeed perpetrators of intimate partner violence are vastly more likely to commit violence against children, and therefore the children may be in danger. PTSD is considered "a normal reaction to an abnormal situation." An immediate remedy is recommended, both for the safety of her children and the safeguarding of her mental health.

Should you have any additional questions about this case, please do not hesitate to contact me.

Sincerely,

Bandy Lee, M.D., M.Div.

4









5

NYSCEF DOC. NO. 444

 **SOBER**LINK

# Client Detail Report

### Client Name: Thomas Fogarty

Device ID: 36008944, Activation Date 10/31/2022, Report Range 10/31/2022 - 7/20/2023, Report Date 7/20/2023

## 587
Tests

| | | |
|---|---|---|
| **Compliant Tests** Tests that follow testing guidelines | | **514** |
| **Missed Tests** A scheduled test not received within the test window | | **72** |
| **Non-Compliant Tests** Positive tests or tests where the identity is declined | | **1** |

### November 2022

| Sun | Mon | Tue | Wed | Thur | Fri | Sat |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 5:42 PM 8:01 PM | 8 9:05 AM 8:00 PM | 9 9:09 AM 8:01 PM | 10 8:04 AM 8:15 PM | 11 8:02 AM 9:09 PM | 12 8:26 AM 8:04 PM |
| 13 8:15 AM 8:32 PM | 14 8:07 AM 8:04 PM | 15 8:23 AM 8:03 PM | 16 9:46 AM 8:07 PM | 17 8:05 AM 9:08 PM | 18 8:00 AM 8:15 PM | 19 8:08 AM 9:14 PM |
| 20 8:00 AM 8:01 PM | 21 8:28 AM 8:11 PM | 22 8:12 AM 8:03 PM | 23 8:06 AM 8:05 PM | 24 9:09 AM 8:21 PM | 25 8:10 AM 8:13 PM | 26 8:27 AM 8:22 PM |
| 27 8:51 AM 8:33 PM | 28 8:03 AM 8:00 PM 10:21 PM | 29 8:10 AM 8:06 PM | 30 7:59 AM 8:01 PM | | | |

Missed Tests (1)

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM
NYSCEF DOC. NO. 444

RECEIVED NYSCEF: 08/01/2023

⚙ Monday 11/28/2022 @ 8:00 PM EST | A scheduled test was missed.

## December 2022

| Sun | Mon | Tue | Wed | Thur | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | 1<br>⚙ 8:20 AM<br>⚙ 8:02 PM | 2<br>⚙ 8:01 AM<br>⚙ 8:08 PM | 3<br>⚙ 9:04 AM<br>⚙ 9:06 AM<br>⚙ 8:50 PM |
| 4<br>⚙ 9:41 AM<br>⚙ 8:32 PM | 5<br>⚙ 8:10 AM<br>⚙ 9:13 PM | 6<br>⚙ 9:00 AM<br>⚙ 8:02 PM | 7<br>⚙ 8:10 AM<br>⚙ 8:07 PM | 8<br>⚙ 8:01 AM<br>⚙ 8:19 PM | 9<br>⚙ 8:01 AM<br>⚙ 8:13 PM | 10<br>⚙ 8:10 AM<br>⚙ 9:17 PM |
| 11<br>⚙ 8:21 AM<br>⚙ 8:09 PM | 12<br>⚙ 8:08 AM<br>⚙ 8:19 PM | 13<br>⚙ 8:20 AM<br>⚙ 8:00 PM | 14<br>⚙ 8:08 AM<br>⚙ 8:09 AM<br>⚙ 8:09 PM | 15<br>⚙ 8:09 AM<br>⚙ 8:04 PM | 16<br>⚙ 8:00 AM<br>⚙ 8:17 PM | 17<br>⚙ 8:35 AM<br>⚙ 9:55 PM |
| 18<br>⚙ 8:28 AM<br>⚙ 9:02 PM | 19<br>⚙ 8:10 AM<br>⚙ 8:07 PM | 20<br>⚙ 8:20 AM<br>⚙ 8:15 PM | 21<br>⚙ 8:03 AM<br>⚙ 8:05 PM | 22<br>⚙ 0:01 AM<br>⚙ 8:10 PM | 23<br>⚙ 8:19 AM<br>⚙ 8:43 PM | 24<br>⚙ 8:53 AM<br>⚙ 8:21 PM |
| 25<br>⚙ 8:27 AM<br>⚙ 8:21 PM<br>⚙ 8:23 PM | 26<br>⚙ 9:19 AM<br>⚙ 9:46 PM | 27<br>⚙ 9:23 AM<br>⚙ 0:56 PM | 28<br>⚙ 8:36 AM<br>⚙ 8:19 PM | 29<br>⚙ 7:10 AM<br>⚙ 8:00 AM<br>⚙ 7:52 PM | 30<br>⚙ 7:47 AM<br>⚙ 8:01 PM | 31<br>⚙ 8:11 AM<br>⚙ 8:16 PM |

## Missed Tests (1)

⚙ Thursday 12/29/2022 @ 8:00 AM EST | A scheduled test was missed.

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM    INDEX NO.

NYSCEF DOC. NO. 444    RECEIVED NYSCEF: 08/01/2023

## January 2023

| Sun | Mon | Tue | Wed | Thur | Fri | Sat |
|-----|-----|-----|-----|------|-----|-----|
| 1<br>8:51 AM<br>8:06 PM | 2<br>8:39 AM<br>8:29 PM | 3<br>8:09 AM<br>8:34 PM | 4<br>8:17 AM<br>8:06 PM | 5<br>7:55 AM<br>7:47 PM | 6<br>7:47 AM<br>8:05 PM | 7<br>8:11 AM<br>8:44 PM |
| 8<br>8:20 AM<br>8:04 PM | 9<br>7:57 AM<br>7:59 PM | 10<br>8:13 AM<br>7:59 PM | 11<br>7:52 AM<br>8:00 PM<br>10:05 PM | 12<br>8:00 AM<br>8:09 PM | 13<br>7:47 AM<br>8:04 PM | 14<br>8:11 AM<br>8:18 PM |
| 15<br>8:50 AM<br>7:47 PM | 16<br>8:11 AM<br>9:12 PM | 17<br>7:53 AM<br>8:07 PM | 18<br>8:05 AM<br>9:10 PM | 19<br>7:12 AM<br>8:00 AM<br>8:33 PM | 20<br>7:48 AM<br>8:02 PM | 21<br>7:47 AM<br>8:01 PM |
| 22<br>8:06 AM<br>7:57 PM<br>7:58 PM | 23<br>8:00 AM<br>7:53 PM | 24<br>8:20 AM<br>9:04 PM | 25<br>7:40 AM<br>7:52 PM | 26<br>7:42 AM<br>7:43 AM<br>8:00 AM<br>7:49 PM | 27<br>7:46 AM<br>8:45 PM | 28<br>8:15 AM<br>9:07 PM |
| 29<br>8:46 AM<br>9:01 PM | 30<br>7:46 AM<br>7:46 PM | 31<br>7:36 AM<br>9:01 AM<br>8:01 PM | | | | |

## Missed Tests (3)

Wednesday 01/11/2023 @ 8:00 PM EST | A scheduled test was missed.

Thursday 01/19/2023 @ 8:00 AM EST | A scheduled test was missed.

Thursday 01/26/2023 @ 8:00 AM EST | A scheduled test was missed.

**FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM**

NYSCEF DOC. NO. 444

RECEIVED NYSCEF: 08/01/2023

## February 2023

| Sun | Mon | Tue | Wed | Thur | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | **1** 7:18 AM, 8:00 AM, 9:38 PM | **2** 7:58 AM, 9:23 PM | **3** 7:47 AM, 8:15 PM | **4** 8:30 AM, 8:01 PM |
| **5** 8:01 AM, 8:39 PM | **6** 8:03 AM, 7:55 PM | **7** 7:50 AM, 8:09 PM | **8** 8:04 AM, 9:05 PM | **9** 6:10 AM, 8:00 AM, 6:54 PM | **10** 8:08 AM, 8:15 PM | **11** 8:41 AM, 8:14 PM |
| **12** 8:15 AM, 7:54 PM | **13** 7:41 AM, 9:01 AM, 7:57 PM | **14** 8:51 AM, 8:00 PM | **15** 7:46 AM, 8:26 PM | **16** 5:18 AM, 8:00 AM, 10:10 AM, 7:46 PM | **17** 8:04 AM, 8:40 PM | **18** 8:00 AM, 11:09 AM, 9:09 PM |
| **19** 7:55 AM, 7:55 PM | **20** 7:46 AM, 9:21 PM | **21** 7:45 AM, 8:04 PM | **22** 8:37 AM, 9:22 PM | **23** 9:37 AM, 7:13 PM, 8:00 PM | **24** 8:14 AM, 8:14 PM | **25** 8:50 AM, 8:12 PM |
| **26** 8:51 AM, 7:51 PM | **27** 7:47 AM, 7:48 PM | **28** 7:52 AM, 7:19 PM, 8:00 PM, 10:52 PM | | | | |

### Missed Tests (6)

Wednesday 02/01/2023 @ 8:00 AM EST | A scheduled test was missed.

Thursday 02/09/2023 @ 8:00 AM EST | A scheduled test was missed.

Thursday 02/16/2023 @ 8:00 AM EST | A scheduled test was missed.

Saturday 02/18/2023 @ 8:00 AM EST | A scheduled test was missed.

Thursday 02/23/2023 @ 8:00 PM EST | A scheduled test was missed.

Tuesday 02/28/2023 @ 8:00 PM EST | A scheduled test was missed.

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 198 of 533

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM     INDEX NO.

NYSCEF DOC. NO. 444                                                      RECEIVED NYSCEF: 08/01/2023

## March 2023

| Sun | Mon | Tue | Wed | Thur | Fri | Sat |
|-----|-----|-----|-----|------|-----|-----|
| | | | **1** 7:27 AM / 7:46 AM / 7:22 PM / 7:46 PM | **2** 8:00 AM / 7:51 PM | **3** 7:48 AM / 9:18 PM | **4** 6:21 AM / 8:43 PM |
| **5** 9:58 AM / 7:48 PM | **6** 7:54 AM / 7:50 PM | **7** 7:47 AM / 7:54 PM | **8** 7:49 AM / 8:22 PM | **9** 9:06 AM / 8:00 PM / 10:11 PM | **10** 7:58 AM / 9:59 PM | **11** 8:45 AM / 8:56 PM |
| **12** 8:46 AM / 7:47 PM | **13** 7:51 AM / 9:14 PM | **14** 8:02 AM / 8:07 AM / 8:24 PM | **15** 8:19 AM / 8:01 PM | **16** 9:03 AM / 9:53 PM | **17** 8:54 AM / 8:56 PM | **18** 8:00 AM / 10:25 AM / 7:51 PM |
| **19** 9:03 AM / 9:21 PM | **20** 8:56 AM / 9:15 PM | **21** 9:21 AM / 7:48 PM | **22** 7:52 AM / 8:00 PM / 10:11 PM | **23** 8:03 AM / 7:57 PM | **24** 8:05 AM / 9:20 PM | **25** 8:51 AM / 7:53 PM |
| **26** 8:53 AM / 8:34 PM | **27** 8:04 AM / 7:52 PM | **28** 7:49 AM / 8:01 PM | **29** 7:46 AM / 9:37 PM | **30** 9:34 AM / 8:00 PM / 11:10 PM | **31** 7:28 AM / 8:00 AM / 8:20 PM | |

### Missed Tests (5)

Thursday 03/09/2023 @ 8:00 PM EST | A scheduled test was missed.

Saturday 03/18/2023 @ 8:00 AM EDT | A scheduled test was missed.

Wednesday 03/22/2023 @ 8:00 PM EDT | A scheduled test was missed.

Thursday 03/30/2023 @ 8:00 PM EDT | A scheduled test was missed.

Friday 03/31/2023 @ 8:00 AM EDT | A scheduled test was missed.

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM
NYSCEF DOC. NO. 444

RECEIVED NYSCEF: 08/01/2023

## April 2023

| Sun | Mon | Tue | Wed | Thur | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | | | **1** 8:21 AM, 8:43 PM |
| **2** 8:51 AM, 9:45 PM | **3** 7:46 AM, 7:48 PM | **4** 0:00 AM, 8:10 PM | **5** 8:00 AM, 11:04 AM, 9:19 PM | **6** 8:09 AM, 7:54 PM | **7** 8:22 AM, 8:53 PM | **8** 8:00 AM, 10:07 AM, 8:00 PM, 10:58 PM |
| **9** 8:59 AM, 8:05 PM | **10** 9:02 AM, 9:04 PM | **11** 8:59 AM, 9:13 PM | **12** 8:36 AM, 8:44 PM | **13** 9:22 AM, 7:46 PM | **14** 7:45 AM, 8:52 PM | **15** 7:55 AM, 8:21 PM |
| **16** 8:12 AM, 7:57 PM | **17** 7:49 AM, 8:00 PM | **18** 8:41 AM, 8:52 PM | **19** 8:31 AM, 8:35 PM | **20** 9:07 AM, 8:00 PM, 10:17 PM | **21** 8:01 AM, 8:48 PM | **22** 7:53 AM, 8:00 PM, 10:39 PM |
| **23** 8:36 AM, 9:03 PM, 9:08 PM | **24** 9:01 AM, 9:13 PM | **25** 0:00 AM, 8:17 PM | **26** 7:58 AM, 8:00 PM | **27** 9:07 AM, 8:25 PM | **28** 8:37 AM, 9:38 PM | **29** 8:12 AM, 8:00 PM |
| **30** 9:20 AM, 9:34 PM | | | | | | |

## Missed Tests (9)

- Tuesday 04/04/2023 @ 8:00 AM EDT | A scheduled test was missed.
- Wednesday 04/05/2023 @ 8:00 AM EDT | A scheduled test was missed.
- Saturday 04/08/2023 @ 8:00 AM EDT | A scheduled test was missed.
- Saturday 04/08/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Monday 04/17/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Thursday 04/20/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Saturday 04/22/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Wednesday 04/26/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Saturday 04/29/2023 @ 8:00 PM EDT | A scheduled test was missed.

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM

NYSCEF DOC. NO. 444

Case 1:24-cv-08705-JLR   Document 1   Filed 11/15/24   Page 200 of 533

RECEIVED NYSCEF: 08/01/2023

## May 2023

| Sun | Mon | Tue | Wed | Thur | Fri | Sat |
|-----|-----|-----|-----|------|-----|-----|
| | **1**<br>8:51 AM<br>8:00 PM | **2**<br>8:07 AM<br>8:13 PM | **3**<br>7:49 AM<br>9:03 PM | **4**<br>9:07 AM<br>7:55 PM | **5**<br>8:34 AM<br>8:53 PM | **6**<br>8:00 AM<br>12:26 PM<br>8:00 PM<br>11:03 PM |
| **7**<br>8:00 AM<br>2:23 PM<br>8:13 PM | **8**<br>7:53 AM<br>9:18 PM | **9**<br>8:33 AM<br>8:53 PM | **10**<br>8:00 AM<br>8:03 PM | **11**<br>9:08 AM<br>8:00 PM<br>10:29 PM | **12**<br>7:58 AM<br>8:00 PM | **13**<br>6:19 AM<br>7:55 AM<br>8:58 PM |
| **14**<br>8:00 AM<br>10:26 AM<br>8:00 PM<br>10:23 PM | **15**<br>8:00 AM<br>8:44 PM | **16**<br>8:53 AM<br>8:57 PM | **17**<br>8:15 AM<br>9:08 PM | **18**<br>7:01 AM<br>8:00 AM<br>7:54 PM | **19**<br>8:45 AM<br>8:38 PM | **20**<br>8:00 AM<br>4:41 PM<br>7:48 PM |
| **21**<br>8:33 AM<br>8:02 PM | **22**<br>7:47 AM<br>9:18 PM | **23**<br>7:34 AM<br>8:00 PM<br>8:00 PM<br>10:51 PM | **24**<br>7:46 AM<br>8:20 PM | **25**<br>8:03 AM<br>8:30 PM | **26**<br>7:56 AM<br>8:00 PM<br>10:10 PM | **27**<br>9:39 AM<br>8:00 PM<br>10:30 PM |
| **28**<br>9:57 AM<br>8:12 PM | **29**<br>8:07 AM<br>8:01 PM | **30**<br>8:01 AM<br>8:05 PM | **31**<br>7:36 AM<br>8:00 AM<br>9:05 PM | | | |

## Missed Tests (16)

- Monday 05/01/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Saturday 05/06/2023 @ 8:00 AM EDT | A scheduled test was missed.
- Saturday 05/06/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Sunday 05/07/2023 @ 8:00 AM EDT | A scheduled test was missed.
- Thursday 05/11/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Friday 05/12/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Sunday 05/14/2023 @ 8:00 AM EDT | A scheduled test was missed.
- Sunday 05/14/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Monday 05/15/2023 @ 8:00 AM EDT | A scheduled test was missed.
- Thursday 05/18/2023 @ 8:00 AM EDT | A scheduled test was missed.
- Saturday 05/20/2023 @ 8:00 AM EDT | A scheduled test was missed.
- Tuesday 05/23/2023 @ 8:00 AM EDT | A scheduled test was missed.
- Tuesday 05/23/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Friday 05/26/2023 @ 8:00 PM EDT | A scheduled test was missed.
- Saturday 05/27/2023 @ 8:00 PM EDT | A scheduled test was missed.

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM
NYSCEF DOC. NO. 444

INDEX NO.

RECEIVED NYSCEF: 08/01/2023

⚙ Wednesday 05/31/2023 @ 8:00 AM EDT | A scheduled test was missed.

## June 2023

| Sun | Mon | Tue | Wed | Thur | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | **1** ⚙ 0:28 AM ⚙ 7:54 PM | **2** ⚙ 8:08 AM ⚙ 9:00 PM | **3** ⚙ 8:13 AM ⚙ 8:00 PM |
| **4** ⚙ 8:00 AM ⚙ 11:11 AM ⚙ 7:47 PM | **5** ⚙ 8:02 AM ⚙ 0:02 PM | **6** ⚙ 8:34 AM ⚙ 8:08 PM | **7** ⚙ 7:49 AM ⚙ 9:35 PM | **8** ⚙ 8:54 AM ⚙ 8:33 PM | **9** ⚙ 8:01 AM ⚙ 8:00 PM ⚙ 10:52 PM | **10** ⚙ 9:41 AM ⚙ 7:59 PM |
| **11** ⚙ 9:28 AM ⚙ 9:39 PM | **12** ⚙ 8:39 AM ⚙ 9:27 PM | **13** ⚙ 7:53 AM ⚙ 8:00 PM ⚙ 10:36 PM | **14** ⚙ 7:44 AM ⚙ 8:00 AM ⚙ 8:00 PM ⚙ 11:28 PM | **15** ⚙ 9:10 AM ⚙ 8:00 PM ⚙ 10:36 PM | **16** ⚙ 8:00 AM ⚙ 8:45 PM | **17** ⚙ 9:36 AM ⚙ 9:28 PM |
| **18** ⚙ 8:00 AM ⚙ 7:55 PM | **19** ⚙ 8:26 AM ⚙ 8:00 PM ⚙ 10:27 PM | **20** ⚙ 7:52 AM ⚙ 8:23 AM ⚙ 8:01 PM | **21** ⚙ 8:01 AM ⚙ 8:16 AM ⚙ 8:32 PM | **22** ⚙ 6:48 AM ⚙ 8:00 AM ⚙ 8:00 PM ⚙ 10:49 PM | **23** ⚙ 8:00 AM ⚙ 8:04 PM | **24** ⚙ 8:07 AM ⚙ 8:00 PM |
| **25** ⚙ 7:49 AM ⚙ 8:17 PM | **26** ⚙ 7:54 AM ⚙ 8:12 PM | **27** ⚙ 8:00 AM ⚙ 9:22 PM | **28** ⚙ 7:33 AM ⚙ 8:00 AM ⚙ 9:11 PM | **29** ⚙ 8:21 AM ⚙ 8:00 PM ⚙ 10:32 PM | **30** ⚙ 8:39 AM ⚙ 8:00 AM ⚙ 9:16 PM | |

### Missed Tests (18)

⚙ Saturday 06/03/2023 @ 8:00 PM EDT | A scheduled test was missed.
⚙ Sunday 06/04/2023 @ 8:00 AM EDT | A scheduled test was missed.
⚙ Friday 06/09/2023 @ 8:00 PM EDT | A scheduled test was missed.
⚙ Tuesday 06/13/2023 @ 8:00 PM EDT | A scheduled test was missed.
⚙ Wednesday 06/14/2023 @ 8:00 AM EDT | A scheduled test was missed.
⚙ Wednesday 06/14/2023 @ 8:00 PM EDT | A scheduled test was missed.
⚙ Thursday 06/15/2023 @ 8:00 PM EDT | A scheduled test was missed.
⚙ Friday 06/16/2023 @ 8:00 AM EDT | A scheduled test was missed.
⚙ Sunday 06/18/2023 @ 8:00 AM EDT | A scheduled test was missed.
⚙ Monday 06/19/2023 @ 8:00 PM EDT | A scheduled test was missed.
⚙ Thursday 06/22/2023 @ 8:00 AM EDT | A scheduled test was missed.
⚙ Thursday 06/22/2023 @ 8:00 PM EDT | A scheduled test was missed.
⚙ Friday 06/23/2023 @ 8:00 AM EDT | A scheduled test was missed.

Page 202 of 533

🌐 Saturday 06/24/2023 @ 8:00 PM EDT | A scheduled test was missed.
🌐 Tuesday 06/27/2023 @ 8:00 AM EDT | A scheduled test was missed.
🌐 Wednesday 06/28/2023 @ 8:00 AM EDT | A scheduled test was missed.
🌐 Thursday 06/29/2023 @ 8:00 PM EDT | A scheduled test was missed.
🌐 Friday 06/30/2023 @ 8:00 AM EDT | A scheduled test was missed.

## Non-Compliant Tests (1)

🌐 Sunday 06/11/2023 @ 9:39 PM EDT | A test was received and the identity was declined.

9:39 PM EDT    A test was received and the identity was declined (.000 BAC).
9:39 PM EDT    A scheduled retest was missed.

### July 2023

| Sun | Mon | Tue | Wed | Thur | Fri | Sat |
|-----|-----|-----|-----|------|-----|-----|
|  |  |  |  |  |  | 1<br>🌐 7:49 AM<br>🌐 6:00 PM<br>🌐 10:39 PM |
| 2<br>🌐 7:46 AM<br>🌐 8:00 PM<br>🌐 10:18 PM | 3<br>🌐 8:51 AM<br>🌐 8:00 PM<br>🌐 11:15 PM | 4<br>🌐 9:53 AM<br>🌐 8:18 PM | 5<br>🌐 7:58 AM<br>🌐 9:37 PM<br>🌐 9:39 PM | 6<br>🌐 8:01 AM<br>🌐 8:11 AM<br>🌐 8:18 PM | 7<br>🌐 7:52 AM<br>🌐 8:00 PM<br>🌐 10:01 PM | 8<br>🌐 7:48 AM<br>🌐 8:00 PM |
| 9<br>🌐 12:08 AM<br>🌐 9:35 AM<br>🌐 8:00 PM | 10<br>🌐 7:20 AM<br>🌐 8:00 AM<br>🌐 9:42 PM | 11<br>🌐 7:55 AM<br>🌐 9:28 PM | 12<br>🌐 6:53 AM<br>🌐 8:00 AM<br>🌐 0:00 PM | 13<br>🌐 8:04 AM<br>🌐 8:50 PM<br>🌐 8:53 PM | 14<br>🌐 8:06 AM<br>🌐 8:00 PM<br>🌐 11:51 PM | 15<br>🌐 7:35 AM<br>🌐 6:00 AM<br>🌐 6:00 PM<br>🌐 11:42 PM |
| 16<br>🌐 9:31 AM<br>🌐 9:17 PM | 17<br>🌐 7:51 AM<br>🌐 9:27 PM | 18<br>🌐 6:02 AM<br>🌐 8:00 AM<br>🌐 8:53 PM | 19<br>🌐 8:52 AM<br>🌐 8:48 PM | 20<br>🌐 7:48 AM | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |  |  |  |  |  |

## Missed Tests (13)

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM
NYSCEF DOC. NO. 444

RECEIVED NYSCEF: 08/01/2023

✿ Saturday 07/01/2023 @ 8:00 PM EDT | A scheduled test was missed.

✿ Sunday 07/02/2023 @ 8:00 PM EDT | A scheduled test was missed.

✿ Monday 07/03/2023 @ 8:00 PM EDT | A scheduled test was missed.

✿ Friday 07/07/2023 @ 8:00 PM EDT | A scheduled test was missed.

✿ Saturday 07/08/2023 @ 8:00 PM EDT | A scheduled test was missed.

✿ Sunday 07/09/2023 @ 8:00 PM EDT | A scheduled test was missed.

✿ Monday 07/10/2023 @ 8:00 AM EDT | A scheduled test was missed.

✿ Wednesday 07/12/2023 @ 8:00 AM EDT | A scheduled test was missed.

✿ Wednesday 07/12/2023 @ 8:00 PM EDT | A scheduled test was missed.

✿ Friday 07/14/2023 @ 8:00 PM EDT | A scheduled test was missed.

✿ Saturday 07/15/2023 @ 8:00 AM EDT | A scheduled test was missed.

✿ Saturday 07/15/2023 @ 8:00 PM EDT | A scheduled test was missed.

✿ Tuesday 07/18/2023 @ 8:00 AM EDT | A scheduled test was missed.

© Soberlink 2019 Terms of Service | Privacy Policy

Case 1:24-cv-08705-JLR    Document 1-2    Filed 11/15/24    Page 204 of 533

## 🏵 SOBERLINK

### Level 2 Family Law Monitoring Program Agreement
AGR FLM2-22-001

## INTRODUCTION

**PLEASE CAREFULLY REVIEW THIS ENTIRE FAMILY LAW MONITORING PROGRAM AGREEMENT ("AGREEMENT") BEFORE SIGNING**

### Involved Parties

"Involved Parties" consist of a Monitored Client, a Concerned Party and in some instances, Contacts.

The "Monitored Client" is the person who is required to submit tests using the Soberlink device.

The "Concerned Party" is the primary Contact who focuses on the best interests of the child(ren) and needs to receive test results. In family law proceedings, this is often the spouse, ex-spouse, guardian or an Involved Party's legal representative.

"Contacts"[1] include persons and entities other than the Concerned Party such as an attorney for the Monitored Client or Concerned Party, family member or, friend. Contacts are authorized to receive Alerts, Reports, Authenticated Test Results, and Non-Authenticated Test Results for the entire history of testing. Contacts may be added or deleted upon mutual written agreement of the Monitored Client and Concerned Party.

### Managing Expectations and BAC Levels

Soberlink devices detect if the Monitored Client has alcohol in his or her system at the time of testing. However, alcohol will not be detected if it has completely eliminated from the Monitored Client's system. Depending on the test schedule and time frame, small amounts of alcohol may eliminate before the next scheduled test, thus going undetected.

It is important for all Involved Parties to understand the subtle differences between BAC levels so that proper decisions can be made in the event of a positive test. BAC levels can appear similar, but the level of intoxication is different. For example, a .009 is a low BAC level and typically will not impair an adult. However, a .09 is a high BAC level and is above the legal limit to operate a vehicle in many jurisdictions.

**Disclaimer:** Soberlink is not intended to be a substitute for professional medical advice, diagnosis, or treatment. Monitored Clients should always consult their physician with any questions regarding medical conditions such as physical alcohol dependency to obtain advice and treatment before beginning use of the Soberlink system.

### Alerts and Reports

"Alerts" are sent in real-time, whereas "Reports" are sent on an automated basis – Daily, Weekly, or Monthly – or by request.

✅ **Compliant Tests:** Tests where no alcohol is detected, and the identity is confirmed

⬦ **Missed Tests:** Scheduled tests that are not received within the test window

⊗ **Non-Compliant Tests:** Positive tests or tests where the identity is declined

### Test Confirmation and Retesting

**Positive Test Confirmation:** Soberlink considers the first test, a screening test. If alcohol is detected during the screening test, the Soberlink device will prompt the Monitored Client to retest in 15 minutes. Retesting helps determine whether the source of alcohol was due to consumption or accidental exposure (e.g., mouthwash). Positive tests will only result in non-compliance if the first positive test is verified with a missed or positive retest. Please note that if the first retest is Compliant, it will be reported as a single Compliant test.

**Declined Identity Confirmation:** Retesting also helps determine if a declined identity was due to intentional tampering or by accidental obstruction of part of the face. If the identity cannot be verified, then a retest is scheduled. Declined identity will only result in non-compliance if the client fails to retest or if the identity still cannot be verified with the retest. Please note that if the retest is Compliant, it will be reported as a single Compliant test.

If the first test is Compliant, testing is completed, and a retest is not required.

### Tampering

Any attempt to defeat the Soberlink device will be considered a tampering event and will be reported to all Involved Parties. A tampering event is indicative that the Monitored Client has used an alternative air source to submit tests and/or has modified the Soberlink device.

Initials

TF

Initials

NP

[1] Contacts may only be added in the Plus and Premium Family Law Plans.

Case 1:24-cv-08705-JLR     Document 1     Filed 11/15/24     Page 20 of 533

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM     
NYSCEF DOC. NO. 444                                          RECEIVED NYSCEF: 08/01/2023

 **SOBER**LINK

## Level 2 Family Law Monitoring Program Agreement

AGR-FLM2-22-002

# LEVEL 2 PROGRAM SETUP

**ATTENTION** – Before entering into this Agreement, please carefully review all of the information and make sure that you understand the Family Law Monitoring Program and your rights and obligations. Should you have any questions about the Family Law Monitoring Program and/or this Agreement, please contact Soberlink at 714-975-7200 or support@soberlink.com. Please note that any modifications, amendments, or changes to this Agreement may require the consent of the Monitored Client and Concerned Party.

### Testing Schedule

- 7 days per week of testing with a 2 hour and 15-minute test window for each scheduled test (e.g., if a test is scheduled at 2:00 PM, Soberlink must receive the test between 1:45 PM and 3:59 PM)

- The Monitored Client is prompted by Soberlink to submit tests; if the Monitored Client does not submit a test on time, a Missed test is documented.

  Best practices suggest for the first test of the day to occur upon waking and the last test of the day to occur before preparing to sleep. If more than two tests per day are selected, the additional tests will be scheduled by Soberlink spread evenly throughout the day.

  The first test of the day will be at __8__:00 AM

  The last test of the day will be at __8__:00 PM

  Total number of scheduled tests per day: (Choose One)

  (●) 2 tests      ( ) 3 tests      ( ) 4 tests

### Price Plan[2]

All plans include emailed weekly and/or monthly Reports. Choose a plan:

(●) **Basic**
$159 per month
Emailed results of previous day's tests

( ) **Plus**
$209 per month
Real-time email Alerts

( ) **Premium**
$259 per month
Real-time email and text Alerts

### Alerts and Reports

Alert and Report options can be changed after setup by emailing support@soberlink.com[3]

| BASIC | PLUS | PREMIUM |
|---|---|---|
| **Monitored Client**<br>Reports: Daily, Weekly, Monthly | **Monitored Client**<br>Alerts: Non-Compliant & Missed Email Alerts<br>Reports: Weekly, Monthly | **Monitored Client**<br>Alerts: Non-Compliant & Missed Email Alerts<br>Reports: Weekly, Monthly |
| **Concerned Party**<br>Reports: Daily, Weekly, Monthly | **Concerned Party**<br>Alerts: Non-Compliant & Missed Email Alerts<br>Reports: Weekly, Monthly | **Concerned Party**<br>Alerts: Non-Compliant & Missed Email and Text Alerts<br>Reports: Weekly, Monthly |
| | **Additional Contacts**<br>Alerts: None<br>Reports: Weekly, Monthly | **Additional Contacts**<br>Alerts: None<br>Reports: Weekly, Monthly |

Initials
_TF_

Initials
_NR_

[2] Price Plans are subject to change to reflect market rate at time of device activation.

[3] Alerts may be delayed at times due to test confirmation and retesting.

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM
NYSCEF DOC. NO. 444                                    RECEIVED NYSCEF: 08/01/2023

 **SOBER**LINK

## Level 2 Family Law Monitoring Program Agreement
AGR-FLM2-22-002

## INVOLVED PARTIES

| | | | | |
|---|---|---|---|---|
| **Monitored Client** | First Name: Thomas | Last Name: Fogarty | Mobile #: ▇▇▇▇ | Time Zone: Eastern Standard Time (-4:00) |
| | Email: ▇▇▇▇▇@yahoo.com   Birthdate: ▇▇▇▇▇ | | Gender: Male | State: NY New York |
| **Concerned Party** | First Name: Nicole | Last Name: DiGiacomo | Mobile #: (845) 664-4965 | Time Zone: Eastern Standard Time (-4:00) |
| | Email: Nicole@ndigiacomolaw.com | | | |

Which Party is Responsible for Paying the Monthly Fee?

**Choose One:** Monitored Client

**Note:** If a Soberlink device was purchased under a Minimum Term Contract, the party who is responsible for paying the monthly fee will be responsible for any early termination fees.

## Additional Contacts (e.g., Attorneys, Family Members, Etc.)

Contact Information:

First Name:              Last Name:              Mobile #:              Time Zone:

Email:

Contact Information:

First Name:              Last Name:              Mobile #:              Time Zone:

Email:

Contact Information:

First Name:              Last Name:              Mobile #:              Time Zone:

Email:

Contact Information:

First Name:              Last Name:              Mobile #:              Time Zone:

Email:

Is the use of Soberlink ordered by the Court? No

If Yes, please enter the name of the County and Presiding Judge:[1]

                                                  County              Presiding Judge

Initials                                                                Initials

TF                                                                      Nd

---
[1] Presiding Judge may contact Soberlink and obtain information regarding this Agreement.

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM        Page 207 of 533
NYSCEF DOC. NO. 444                                            RECEIVED NYSCEF: 08/01/2023

## SOBERLINK

### Level 2 Family Law Monitoring Program Agreement
AGR-FLM2-22-007

**FAMILY LAW MONITORING PROGRAM AGREEMENT—MONITORED CLIENT/CONCERNED PARTY COVENANTS**

As an express condition of purchasing and/or using the Soberlink device, the Monitored Client and Concerned Party (collectively "we"), agree to cooperate fully with all Monitoring Program requirements laid out in this Agreement (including the Program Setup Options and Monitored Client/Concerned Party Covenants) and the General Terms and Conditions below which are available at www.soberlink.com/general-tc.

We understand that failure to use the device as instructed in this Family Law Monitoring Program Agreement may be interpreted as an attempt to conceal alcohol use and result in consequences carried out by Interested Parties and third parties. Other than as set forth in this Agreement, Soberlink shall not be required to perform any action in regard to non-compliance. We further understand, agree to, and warrant each of the conditions set forth below.

**Program Conditions**

1. We acknowledge and agree that the Soberlink device is our chosen method of alcohol monitoring. We also understand that the device uses fuel cell technology, which has been widely accepted as a valid means of alcohol detection in human breath.

2. Any Involved Party may request copies of this Agreement, any amendments, Reports, Evaluations (as defined in Section 6), and other relevant documentation accompanied by a notarized affidavit from a Soberlink custodian of records ("Authenticated Test Results") without any further authorization for a fee of $50 per request. Alternatively, any Involved Party may request copies of such material, without a notarized affidavit ("Non-Authenticated Test Results"). A fee of $25 per request will be charged for Non-Authenticated Test Results in the Basic and Plus Plans. Requesting parties in the Premium Plan will be entitled to request Non-Authenticated Test Results free of charge. Payment for Non-Authenticated Test Results and Authenticated Test Results are the responsibility of the requesting Involved Party. All Authenticated Test Results and/or Non-Authenticated Test Results may be sent by email to all Involved Parties. By entering into this Agreement, the Monitored Client and Concerned Party (and Contacts, if any) waive any and all objections as to foundation and authenticity to the extent permitted by governing law as it relates to any legal proceeding that is the subject of this Agreement. It is the mutual intent of the Monitored Client and Concerned Party that Authenticated Test Results may be utilized in the subject legal proceeding without the need for a subpoena, service of process, or custodian of record testimony.

3. Any changes to the Monitoring Program that are not initiated by Soberlink, including but not limited to, changing, adding, or removing the Involved Parties and time changes for scheduled tests, must be agreed upon by both the Monitored Client and the Concerned Party. We further understand that changes may take up to 72 hours to be implemented. Soberlink reserves the right to approve or decline any requested changes and/or updates.

4. Contacts may update their Alert and Report settings at any time without the Monitored Client and Concerned Party's consent.

5. If a Soberlink device is exchanged for a replacement under a return merchandise authorization ("RMA") based on claims of a device malfunction and the RMA inspection deems "no problem found," a service fee of up to $150 (plus shipping and handling) will be charged to the requesting party. Further, the requesting party will be held responsible for the full cost of the replacement device should the device go unreturned or if the returned device has been damaged beyond repair and/or deemed "out of warranty" upon inspection. Involved Parties may request information regarding the condition of a device that has been returned under an RMA.

6. At any time, Involved Parties may request that Soberlink formally evaluate one or more related series of positive tests ("Evaluation"). Evaluations will be emailed to all Involved Parties, generally within two business days of the request. Evaluations are subject to a $50 fee paid by the requesting party.[5] To request an Evaluation, contact the Compliance Department at compliance@soberlink.com.

7. To the extent Soberlink is requested or required to appear for deposition, trial, arbitration or any other legal proceeding, the party requesting or compelling such appearance shall be required to tender to Soberlink all costs and expenses related to such appearance including, but not limited to, all travel expenses incurred in attending or testifying and the reasonable compensation for loss of time in accordance with applicable law. Based upon availability, pricing for testimony for a custodian of records or a person with knowledge of the agreed-upon issue(s) is between $1,000 and $2000 plus travel expenses for live/in-person testimony and $500 for remote testimony. Nothing herein is intended to serve as an agreement by Soberlink to attend or testify any legal proceeding without its further agreement and availability, and Involved Parties are encouraged to utilize the process set forth in Section 2 to obtain Authenticated Test Results. Soberlink or any of its employees or representatives may not be designated as an expert in any matter unless expressly authorized by Soberlink. To request testimony, please contact the Compliance Department at compliance@soberlink.com to request a Testimony Scheduling Agreement.

Initials
T.F.

Initials
NP

**General Disclosures**

8. Human review may be necessary to confirm identity of the Monitored Client, and if identity cannot be confirmed, a retest may be requested following the submitted test in question.
   NOTE: Any Involved Party may request a Report that includes test photos.

---

[5] Evaluations are not subject to a fee for Involved Parties of a Premium Price Plan.

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 208 of 536

NYSCEF DOC. NO. 444

RECEIVED NYSCEF: 08/01/2023

 **SOBER**LINK

## Level 2 Family Law Monitoring Program Agreement

AGR-FLM2-22-002

9. Any attempt to use an alternative air source to submit a test will be considered a tampering event and will be reported to all involved Parties. Tamper detection does not occur in real time and may not be reported until several days or weeks after the occurrence.
   **NOTE:** Any efforts to defeat the Soberlink device may result in suspension and/or termination of monitoring services.

10. Soberlink will not be required to provide details in regard to any voice or electronic communications between Soberlink and other parties.

11. "Storing" is a feature of the Soberlink Cellular device which allows tests to be stored and uploaded later if there is poor cell coverage at the time the test is submitted. The Storing feature is enabled by default.
    **NOTE:** Storing can affect the real-time nature of Soberlink Alerts and Reports.

12. Soberlink is unable to guarantee text message and email delivery due to carrier-related issues and other factors out of Soberlink's control.

13. Soberlink requires a monthly monitoring fee to be paid to keep the Soberlink device activated. Removing the payment method at any time may result in immediate suspension.

14. To terminate services, the party responsible for payment, as indicated in this Agreement, must email support@soberlink.com with the request. All Involved Parties will receive notice when services have been terminated. Soberlink bills arrears, meaning that if services are canceled in the middle of the month, the final payment will be due at the beginning of the following month. Service reactivation is subject to a $25 fee.

15. If the Monitored Client fills out and signs a new Monitoring Agreement with a different Concerned Party, the newest Agreement may, at Soberlink's discretion, supersede the previously signed Agreement. Further, this will result in the termination of services in accordance with the previously signed Agreement, and a new testing program will begin.

16. In the event an account becomes 15 days past due for non-payment, the Monitored Client will be suspended. All Involved Parties will receive notice if the account becomes suspended due to non-payment. While suspended, the Monitored Client will not be allowed to submit tests until and if the suspension is lifted. When an account becomes 45 days past due for non-payment, Soberlink will terminate services and may send the account into collections.

17. Soberlink reserves the right to terminate services for non-compliant activity, violation of any term or provision of this Agreement, and/or use of the Soberlink device for a purpose inconsistent with this Agreement, upon 10 days' prior written notice. Soberlink further reserves the right to terminate services for any reason, including convenience, upon 10 days' prior written notice. Nothing herein shall prevent Soberlink from immediately suspending service for any reason including, but not limited to, violation of Soberlink protocols, intentional violation of any term or provision of this Agreement, tampering, violation of any applicable law, verbal or physical abuse, threat(s) or harassment of Soberlink, its representatives, vendors, partners or affiliates, or any person or entity party to, or connected with, this Agreement or the Services.

18. Any Involved Party may contact Soberlink for information regarding this Agreement and the monitoring related thereto.

19. Soberlink Monitoring does not constitute a clinician/patient relationship. Testing records, including Authenticated Test Results and Non-Authenticated Test Results, generated while testing in accordance with this Agreement, or other information related to the use of the device are generally not considered "Protected Health Information" as defined in the Health Insurance Portability and Accountability Act of 1996 nor is the information protected by the Health Insurance Portability and Accountability Act of 1996. All violations or activity related to monitoring or use of the device may be provided to all Involved Parties pursuant to this Agreement. Should you have any questions as to what information may be shared pursuant to this Agreement please contact the Compliance Department at compliance@soberlink.com.

20. Soberlink shall seek to comply with all governing state and federal law as it relates to issuance of subpoenas or service of process related to use of the Soberlink device and/or the Monitoring Program. Please note that subpoenas issued from out-of-state must comply with Interstate and International Depositions and Discovery Act (California Code of Civil Procedure Sections 2029.100 -2029.900).

21. Soberlink Monitoring is not an emergency service; if you have an emergency you should call 911 or local law enforcement.

Initials

_TF_

Initials

_NP_

Further, the Monitored Client acknowledges, agrees to, and warrants each of the following:[6]

**Testing Procedures**

22. I understand that it is my responsibility to call Soberlink at (714) 975-7200 during business hours to activate my Soberlink device, and that I will be asked to submit a test upon activation. My Soberlink device will not be activated until all required documents have been signed.

---

[6] All Involved Parties should familiarize themselves with Testing Procedures.

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM
NYSCEF DOC. NO. 444                                    RECEIVED NYSCEF: 08/01/2023

## SOBERLINK

### Level 2 Family Law Monitoring Program Agreement
AGR-FLM2-22 001

23. I will subscribe to receive Soberlink text messages and understand that failure to do so may result in an unsuccessful Monitoring Program.

24. I understand that it is my responsibility to find adequate cellular or Wi-Fi coverage to successfully submit all tests. The Soberlink Cellular device uses a built-in cellular network to wirelessly transmit test results. The Soberlink Connect device must connect to an Apple or Android phone or tablet to wirelessly transmit results.

25. I will refrain from eating, drinking (other than plain water), and smoking for at least 20 minutes prior to submitting all tests. I will not consume or use products that contain alcohol prior to submitting tests and/or handling the Soberlink device. I will remove everything from my mouth and rinse my mouth out with water prior to submitting a test. Failure to do so may result in an inaccurate BAC reading or may be interpreted as an attempt to defeat the Soberlink device.

26. I will remove any sunglasses, hats, or any other items that may obstruct my face while testing. I will take all tests in well-lit areas while standing or sitting upright (not lying down) with my eyes open. I will always use the provided Soberlink device mouthpiece and will not hold the mouthpiece while testing. I will wear clothes while submitting tests so that test photos do not contain nudity. I understand that Soberlink has the right to overturn the status of a test from Compliant to Non-Compliant at any time if testing procedures are not followed.

27. I will not use the Soberlink device while driving or operating heavy machinery.

28. After testing, I will check the Soberlink device or Soberlink Connect app to confirm that my test was successfully submitted. I will not simply assume the test was sent. If prompted to retest, I will retest at the times indicated on my Soberlink device or the Soberlink Connect app and in the notification text message. Failure to retest as instructed will be considered non-compliance.

Initials: _TF_                                                          Initials: _ND_

**Protecting Equipment**

29. I will always use the protective case to store the Soberlink device and mouthpiece(s) when not in use. I will keep my Soberlink device and mouthpiece(s) away from all alcohol-based and non-alcohol-based products that could interfere with accurate readings (e.g. perfumes or sanitizers).

30. I understand that if alcohol is detected by the Soberlink device, whether ingested or incidental, that event may be considered non-compliance and may result in adverse consequences (those consequences are not to be determined by Soberlink).

31. I will keep and use my Soberlink device in normal operating temperatures (32° - 122° F) to ensure proper functioning.

32. Soberlink devices require recalibration when 1500 tests have been submitted. Soberlink will notify the Monitored Client by text message when there are 100 tests remaining. When a device is due for recalibration, it is the Monitored Client's responsibility to contact Soberlink to request a replacement device. Soberlink will send a replacement device to the Monitored Client with a prepaid return shipping label to send the device that needs to be recalibrated back to Soberlink. The Monitored Client will be required to contact Soberlink upon receipt of the replacement device for activation. If the Monitored Client fails to activate a replacement device before reaching the 1500 test limit, the monitoring account will be suspended until a recalibrated device is activated. While suspended, the Monitored Client will not be allowed to submit tests. This process is subject to a $75 recalibration fee (plus shipping and handling) paid by the Monitored Client.[7] Further, The Monitored Client will be held responsible for the full cost of the replacement device should the device go unreturned or if the returned device has been damaged beyond repair and/or deemed "out of warranty" upon inspection.

Initials: _TF_                                                          Initials: _ND_

**SIGNER 1**
We have reviewed, understand, and will abide by the terms of this Agreement and the General Terms and Conditions available below and at www.soberlink.com/general-tc.

I am the: ● Monitored Client
          ○ Concerned Party

Signature: _Thomas Fogarty (Nov 7, 2022 17:01 EST)_
Name: **thomas fogarty**
          ███████@yahoo.com
                                   Nov 7, 2022

**SIGNER 2**

I am the: ○ Monitored Client
          ● Concerned Party

Signature: _Nicole Digiacomo (Nov 7, 2022 17:59 EST)_
Name: **Nicole Digiacomo**
       **nicole@ndigiacomolaw.com**
                                   Nov 7, 2022

[7] Device recalibrations, when 1500 tests have been submitted, are not subject to a fee for Involved Parties of a Premium Price Plan.

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 210 of 532

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM
NYSCEF DOC. NO. 444
RECEIVED NYSCEF: 08/01/2023

 **SOBER**LINK

## Level 2 Family Law Monitoring Program Agreement
AC2-FLM2-23-002

### GENERAL TERMS AND CONDITIONS

**PARTIES**
By using SOBERLINK HEALTHCARE LLC's and its affiliates, subsidiaries, parents, sister concerns and related companies ("SOBERLINK", "SOBERLINK®", "us", "our" or "we") websites, SOBERLINK's Monitoring Web Portal, devices, applications including, but not limited to, Soberlink's monitoring services, testing capabilities, account management features and applications (collectively, the "Service(s)"), or by agreeing to these General Terms and Conditions" ("TACs"), you (the "customer", "client", "Concerned Party" (where applicable) or the person who is using the Soberlink® device and/or Service (the "User")) agree to be bound by these TACs. Except as expressly set forth herein, we may modify the TACs at our sole discretion and such modification shall be effective upon the earlier of notice to you or revised TACs being posted at http://www.soberlink.com/general-tc. You accept modification to the TACs by continuing to use the SOBERLINK® device, or by continuing to use our Service, or by continuing to pay for the SOBERLINK® device.

**EXPECTATIONS**
The SOBERLINK® device is intended to be utilized as an assessment tool and screening device. Unless specifically agreed in writing by SOBERLINK, we will not analyze or interpret the testing results, reporting histories, or provide an opinion as to whether the User had consumed alcohol. It is the responsibility of the User, if required, to retain a monitoring agency or third party to review, analyze, interpret or adjudicate testing results and related data. They are a direct relationship between the concentration of alcohol in the blood and in the breath. Consumed alcohol is absorbed in the blood stream and exchanged to the breath in the deep lung region. Through a calculated conversion, the SOBERLINK® device measures alcohol in the body by its concentration in the breath, also known as breath alcohol concentration (BrAC). The concentration of alcohol is subject to the User's compliance with the Precautions and may further be subject to applicable procedures set by the Concerned Parties, monitoring agencies and governing authorities. BrAC depends on a number of variables including, but not limited to, the amount of alcohol consumed, environmental influences, the rate at which alcohol was consumed, body size, age, physical health and the rate at which the body metabolizes alcohol.

**CALIBRATION**
The SOBERLINK® device utilizes a professional grade fuel cell sensor. The SOBERLINK® device is calibrated during manufacturing using advanced alcohol calibration equipment. Known alcohol concentrations are passed through the fuel-cell sensor to set baseline values for testing. The accuracy of breathalyzers can fluctuate after twelve (12) months of normal use, depending on operating conditions and the number of tests performed. The SOBERLINK® device tracks the number of tests performed. Soberlink will notify the User, Concerned Party and/or other authorized Contacts when the SOBERLINK® device is ready for recalibration.

**PRECAUTIONS**
1. Wait at least twenty (20) minutes after drinking, eating, or smoking before using the SOBERLINK® device. Failure to observe this waiting period may cause inaccurate readings and damage the SOBERLINK® device's fuel cell sensor.
2. Avoid using the SOBERLINK® device in the presence of substances that contain methyl alcohol, isopropyl alcohol, or any other outside agent that contains alcohol or similar substances or ingest such substances twenty (20) minutes before using the SOBERLINK® device. These substances or agents may interfere with test results and yield a false positive, or unreliable, report. In most instances, positive test results attributed to a foreign substance or outside agent will dissipate shortly after the initial test, and subsequent retesting will yield test results of 0.00 BrAC. In the event of a positive test result believed to be caused by a foreign substance or outside agent, User must continue to retest as prompted until there is a compliant result. Failing to retest as prompted may be considered a violation of testing procedures. Examples of common foreign substances or outside agents that may influence test results include but are not limited to: certain prescription drugs; certain medications and herbal remedies; medicinal alcohol; household cleaners and disinfectants; lotions; body washes; perfumes; colognes; toothpaste; breath fresheners; hand sanitizers; or other alcohol-based hygiene products and inhalants.
3. Prevent outside agents such as perfume, alcohol-based substances or hand sanitizers from being stored near the SOBERLINK® device at all times.
4. Do not blow smoke, food, or liquids into the SOBERLINK® device, as this will damage the sensor.
5. Do not tamper with, obstruct, or damage the SOBERLINK® device.
6. Remove sunglasses and headwear during the testing process.
7. Remain standing during the testing process.
8. Hold the SOBERLINK® device eye level and look directly into the device's camera lens.
9. Do not hold onto the SOBERLINK® device's mouthpiece during testing or permit any item to block User's ability to breathe into the SOBERLINK® device.
10. Do not test in areas with strong winds, smoke, or in areas where large amounts of alcohol is being consumed.
11. Do not use the SOBERLINK® device in temperatures below 32 °F or above 122 °F.
12. If a breath test result is out of compliance, the SOBERLINK® device will warn of retest requirement and the User will receive a text message prompting to retest.

**DISCLAIMERS**
1. SOBERLINK and any and all manufacturers, retailers, distributors and sellers of SOBERLINK® devices make no warranties, express or implied, as to the ability of the SOBERLINK® device to determine whether a User of his device is legally intoxicated and SOBERLINK expressly disclaims any liability for incidental, special, or consequential damages of any nature.
2. Decisions and/or actions based upon the readings of the SOBERLINK® device shall be entirely at the User and Concerned Party's (if any) own risk.
3. SOBERLINK and any and all manufacturers, retailers, distributors, service providers and sellers of SOBERLINK® devices make no warranties, express or implied, that any modification or adjustment thereof is a legal predicate or evidence or defense against any police or public procedure or judicial or investigative proceedings in any jurisdiction.
4. SOBERLINK and any and all manufacturers, retailers, service providers or sellers of SOBERLINK® devices assume no responsibility for Users who test negative and later show that they are under the influence of alcohol or are proven to be intoxicated by alcohol.
5. SOBERLINK incorporates by this reference all exclusions, limitations and disclaimers set forth in the Warranty Section below and any additional exclusions, limitations and disclaimers that may be promulgated by us from time to time.

**PAYMENT**

**Payment Methods**
Acceptable forms of payment to SOBERLINK are electronic funds transfer ("EFT" or "ACH") or credit or debit card transactions (EFT, ACH and credit or debit card transactions collectively, "Payment Method"), unless otherwise agreed by Soberlink. You agree to provide current a Payment Method in order to utilize the SOBERLINK® device and Service and permit us to charge against such Payment Method for the use of the SOBERLINK® device or the provision of the Service. Approved credit or debit card companies may be modified at our sole discretion. If funds to which you are not entitled are deposited into your account, you authorize the initiation of a correction (debit) entry electronically or by any other commercially accepted method. If your Payment Method changes, you agree that you will promptly update your Payment Method information and provide any additional authorization that may be necessary to process your payment. If a payment is not successfully settled, due to expiration, insufficient funds, or otherwise, and you do not edit your Payment Method or cancel your account (see, "Cancellation Policy" below), you remain responsible for any uncollected amounts and authorize us to continue billing the Payment Method, as it may be updated. This Payment Method authorization is to remain in full force and effect until SOBERLINK has received written request of termination, upon which we are granted thirty (30) days or reasonable opportunity to complete your request.

**Recurring Billing**
By the use of the SOBERLINK® device and/or the provision of the Service, and providing or designating a Payment Method, you authorize SOBERLINK to charge you periodic and/or recurring monthly fees, and any other charges you may incur in connection with your use of the Service to your Payment Method, until cancelled in writing by you. You acknowledge that the amount billed each month may vary from month to month for reasons that may include differing days per month, promotional offers, and/or changing or adding a Service, and you authorize us to charge your Payment Method for such varying amounts, which may be billed monthly in one or more charges.

**Fees**
The following schedule of fees is listed at a base rate and may be overridden by any written agreement between you and SOBERLINK. Any base rate may be modified, terminated or discontinued at our sole discretion at any time without notice. Any modification, termination or discontinuation shall be effective upon the billing cycle immediately following the modification, termination or discontinuation.

| Fee Name | Description | Base Rate |
|---|---|---|
| Daily Monitoring Fee | Includes all web portal features, automation, cloud storage and future upgrades. A fee is incurred for every day the SOBERLINK® device is active on the monitoring web portal or as otherwise provided in any agreement between you and us. | See Agreement |
| Recalibration Fee | At 1,500 tests the SOBERLINK® device can be recalibrated by SOBERLINK. We will notify the User, Concerned Party and/or other authorized Contacts when the SOBERLINK® device reaches 1,500 tests. | $75 + s&h |
| Calibration Check Fee | Applied when a calibration check is requested by the User and the SOBERLINK® device tests within the accuracy tolerance. If the SOBERLINK® device tests outside of the accuracy tolerance, we will waive the calibration check fee and the SOBERLINK® device will be recalibrated at no charge. | $150 + s&h |
| RMA Inspection Fee | If a SOBERLINK® device is returned to SOBERLINK under a return merchandise authorization ("RMA") and the RMA inspection deems "No Problem Found" the inspection fee will be charged to the User's account. | $150 + s&h |
| Restocking Fee | If a SOBERLINK® device is returned to SOBERLINK within thirty (30) days of purchase, a Restocking Fee will be charged to the User's account. | $75 + s&h |
| Device Replacement Fee | If a SOBERLINK® device is not returned within 30 days after an advance exchange RMA order has been shipped, or the device is damaged beyond repair and not covered under warranty, then a Device Replacement Fee will be charged to the User's account. | Market Value of Advanced Device + s&h |

Case 1:24-cv-08705-JLR-GWG    Document 1-1    Filed 11/15/24    Page 211 of 533.

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM
NYSCEF DOC. NO. 444

RECEIVED NYSCEF: 08/01/2023



## SOBERLINK

### Level 2 Family Law Monitoring Program Agreement
ACR-FLM2-22-002

**Archiving Policy**
A SOBERLINK® device can be archived on the web portal by a User with applicable permissions, or by written request made to Soberlink. Archiving will suspend the daily monitoring fee and temporarily disable the device from submitting test results to the web portal. Any obligation for payment of Daily Monitoring Fee during this period shall be subject to any agreement between you and us. User and/or Concerned Parties shall continue to be responsible for all financial commitments related to the Service or SOBERLINK® device including, but not limited to, any and all early termination fees, contractual agreements and minimum use period.

**Zero Usage Policy**
If a SOBERLINK® device has been archived and unused for ninety (90) days or longer, Soberlink shall have the authority to disconnect the cellular connection of the SOBERLINK® device without notice to User, any Concerned Party or any authorized Contact. If the device has been archived for ninety (90) days or less, a Reactivation Fee of $100 may be applied. After one (1) year a purchase of a replacement device may be required.

**Cancellation Policy**
In order to cancel the Services of a SOBERLINK® device, a written request must be made by the party responsible for payment to SOBERLINK at support@soberlink.com or by mail to Soberlink Healthcare LLC, Attn: Accounting, 16787 Beach Boulevard, #211, Huntington Beach, CA 92647. This request will terminate any cellular and data plan on the SOBERLINK® device, which will disconnect all device communication to the web portal. User and/or Concerned Parties shall continue to be responsible for all financial commitments related to the Service or SOBERLINK® device including, but not limited to, any and all early termination fees, contractual agreements and minimum use period. If the customer chooses to reactivate the SOBERLINK® device after canceling Service, a Reactivation Fee may apply.

**WARRANTY**

**One Year Limited Warranty**
SOBERLINK's warranty obligations for the SOBERLINK® device (the "Limited Warranty") are expressly limited to the following: SOBERLINK warrants the SOBERLINK® device against defects in materials and workmanship under normal use for a period of ONE (1) YEAR from the date of purchase by the original end-user purchaser or the date the SOBERLINK® device was first put in use, whichever date is earlier (the "Warranty Period"). Except as provided herein, SOBERLINK provides the SOBERLINK® device "as is." If a defect arises and a valid claim is received by SOBERLINK within the Warranty Period, SOBERLINK will, at its option, either (1) repair the SOBERLINK® device, (2) exchange the SOBERLINK® device with a SOBERLINK® device that is new or which has been manufactured from new or serviceable used parts and is at least functionally equivalent to the original SOBERLINK® device, or (3) refund the purchase price of the SOBERLINK® device. When a refund is given, the SOBERLINK® device for which the refund is provided must be returned to SOBERLINK and becomes SOBERLINK's property. This Limited Warranty is limited to the original end-user purchaser and is not transferable to, or enforceable by, any subsequent owner. Any such transfer shall void the Limited Warranty provided hereunder. This Limited Warranty does not apply: (a) to consequences caused by accident, abuse, tampering, misuse, flood, fire, earthquake or other external causes; (b) to consequences caused by operating the SOBERLINK® device outside the permitted or intended use described by SOBERLINK; (c) to consequences caused by, or existing from, existing from, repair, modification or alteration performed by anyone who is not a representative of SOBERLINK or a SOBERLINK Authorized Service Provider; (d) to a SOBERLINK® device or part that has been modified to alter functionality or capability without the written permission of SOBERLINK; or (e) by the failure to report or to timely report testing results as a result of any telecommunication related problems, whether caused by third parties, the User, or SOBERLINK®. No SOBERLINK Service Provider, manufacturer, distributor, reseller, agent, representative, or employee is authorized to make any modification, extension, or addition to this Limited Warranty. If any term is held to be illegal or unenforceable, the legality or enforceability of the remaining terms shall not be affected or impaired.

**Exclusions, Limitations, and Disclaimers**
SOBERLINK makes no warranties, express or implied, as to the ability of the SOBERLINK® device to determine whether, or the extent to which, a User's mental or physical functioning, or judgment, may be impaired, including whether the User is intoxicated under any definition of that word. SOBERLINK expressly disclaims any liability for direct, indirect, incidental, special, or consequential damages of any nature under any legal theory. Any act or failure to act based on a reading from this device shall be at the User's own risk or upon those who rely upon such reading. SOBERLINK assumes no responsibility for consequences to, or of, Users who use this device and later are shown to have been under the influence of alcohol or have had their judgment or any mental or bodily function impaired by alcohol. Correlation between breath alcohol content and blood alcohol concentration depends on many variables, including environmental factors (such as air quality, wind, humidity, temperature, etc.) and health conditions of the User. A low BrAC reading does not mean that the User's physical or mental performance or judgment can respond to an emergency. The concentration of alcohol in the blood of a User cannot be exactly determined by using a breath alcohol-screening device. SOBERLINK does not warrant that the operation of the device will be error-free. SOBERLINK is not responsible for any consequences arising from the failure to follow instructions related to the device's use. Because of the variables involved in the collection of alcohol consumption, individual metabolism, and self-administration, the User and associated third parties agree: (1) not to hold SOBERLINK or its agent and representatives, the manufacturer, dealer, wholesaler, or distributor, responsible for the consequences of any decision, based on the use of this device to operate a vehicle, boat, or aircraft or other equipment; and (2) to hold SOBERLINK or its agent and representatives harmless from the claims of others arising out of any such decision.

TO THE EXTENT PERMITTED BY THE LAW, THIS WARRANTY AND THE REMEDIES SET FORTH ABOVE ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, REMEDIES AND CONDITIONS, WHETHER ORAL OR WRITTEN, STATUTORY, EXPRESS OR IMPLIED. AS PERMITTED BY APPLICABLE LAW, SOBERLINK SPECIFICALLY DISCLAIMS ANY AND ALL STATUTORY OR IMPLIED WARRANTIES OR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND WARRANTIES AGAINST HIDDEN OR LATENT DEFECTS. IF SOBERLINK CANNOT LAWFULLY DISCLAIM STATUTORY OR IMPLIED WARRANTIES, THEN TO THE EXTENT PERMITTED BY LAW, ALL SUCH WARRANTIES SHALL BE LIMITED IN DURATION TO THE DURATION OF THE EXPRESS WARRANTY AND TO THE REPAIR OR REPLACEMENT SERVICE AS DETERMINED BY SOBERLINK IN ITS SOLE DISCRETION.

EXCEPT AS PROVIDED IN THIS WARRANTY, AND TO THE MAXIMUM EXTENT PERMITTED BY LAW, SOBERLINK IS NOT RESPONSIBLE FOR DIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES UNDER ANY LEGAL THEORY, INCLUDING BUT NOT LIMITED TO: LOSS OR USE; LOSS OF REVENUE OR INCOME; LOSS OF ACTUAL OR ANTICIPATED PROFITS (INCLUDING LOSS OF PROFITS FROM A CONTRACT), LOSS OF THE USE OF MONEY LOSS OF ANTICIPATED SAVINGS; LOSS OF BUSINESS; LOSS OF OPPORTUNITY; LOSS OF GOODWILL; OR LOSS OF REPUTATION. Some countries, states, and provinces do not allow the exclusion or limitation of incidental or consequential damages or allow limitations on how long an implied warranty or condition may last, so the above limitations or exclusions may not apply to you. This warranty gives you specific legal rights, and you may also have other rights that vary by country, state, or province. This Limited Warranty is governed by and construed under the laws of the country in which the product purchase took place.

**Obtaining Warranty Service**
If you feel that your device requires warranty service, please follow these instructions: Obtain a Return Merchandise Authorization ("RMA") number by calling 714-975-7200 or by emailing support@soberlink.com. When shipping the device back to the designated SOBERLINK address, please package the SOBERLINK® device carefully and ship using a major carrier (UPS, FedEx, USPS, etc.). To ensure proper credit for a returned item, be sure to obtain a delivery confirmation on the return shipment. If we do not receive the Soberlink device and you do not have proof of delivery to us, you and/or the Concerned Party (if any) may be assessed a replacement cost. Please include the following information with your returned device:

- Your RMA number (issued by SOBERLINK)
- Name, address, and phone number as stated at the time of order
- A copy of your original sales receipt (if applicable)

**DISPUTE RESOLUTION AND ARBITRATION**

WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THESE T&C's, OUR PRIVACY POLICY, THE SERVICES, SOBERLINK DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION BEFORE A SINGLE ARBITRATOR OR IN SMALL CLAIMS COURT RATHER THAN IN A COURT OF GENERAL JURISDICTION. Arbitration is more informal than bringing a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury and is subject to limited review by courts. Any arbitration will take place on an individual basis; class arbitrations and class actions are not permitted. The types of disputes and claims you and we agree to arbitrate are intended to be broadly interpreted. It applies, without limitation (except as expressly provided herein as it relates to small claims proceeding and opt-out rights), to:

- claims arising out of, or relating to, any aspect of the relationship between you and us, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory
- claims related to these T&Cs, the SOBERLINK devices, or the provision of the Services or any advertising, marketing or representation related thereto
- claims that arose before these T&C's or any prior terms and conditions (including, but not limited to, claims relating to advertising)
- claims that are currently the subject of purported class action litigation in which you are not a member of a certified class
- claims related to an alleged violation of your privacy, disclosure of personal information or alleged violation of any law or act related to any other agreement or contract entered into between you and us
- claims that may arise after the termination, modification, revision, amendment or updating of the T&Cs.

The American Arbitration Association ("AAA") will arbitrate all disputes. This arbitration provision includes any claims against us relating to Services or SOBERLINK devices provided or billed to you or used by you that may have been provided by third parties (such as our suppliers, distributors, dealers, Service Providers or third-party vendors) whenever you also assert claims against us in the same proceeding. We each also agree that the provision of Service to you affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply (despite the application of any choice of law). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).

**Claim Procedure**
For all disputes, whether pursued in court or arbitration, you must first give us an opportunity to resolve your claim by sending a written description of your claim to us at Soberlink Healthcare LLC, Attn: Dispute Resolution, 16787 Beach Boulevard, #211, Huntington Beach, CA 92647. We each agree to negotiate in good faith. If the arbitration provision applies or you choose arbitration to resolve your dispute, then either you or we may start an arbitration proceeding. You must send a letter requesting arbitration and describing your claim or send a form Notice of Dispute ("Notice") to Soberlink Healthcare LLC, Attn: Dispute Resolution, 16787 Beach Boulevard, #211, Huntington Beach, CA 92647 (the "Notice Address") to begin arbitration. You may download or copy a form Notice from http://www.soberlink.com/wp-content/uploads/2015/09/SLHC-Notice-of-Dispute.pdf. The Notice must (a) describe the nature and basis of the claim or dispute and (b) set forth the specific relief sought. In order to initiate arbitration against you, Soberlink must send written Notice to you at the address you provide to us or an authorized SOBERLINK Service Provider.

If SOBERLINK and you do not reach an agreement to resolve a claim or dispute within thirty (30) days after the Notice is received, you or we may commence an arbitration proceeding. You may download or copy a form to initiate arbitration from the AAA website as https://www.adr.org/sites/default/files/Consumer_Demand_for_Arbitration_form_1.pdf. After we receive the completed form at the Notice Address that you have completed and/or submitted, it will promptly reimburse you for our payment of the filing fee, unless your claim is for more than $75,000. (Currently, the filing fee for consumer-related arbitration is $200, but this is subject to change by AAA. If you establish that you are unable to pay this fee, we will pay it directly after receiving the completed form at the Notice Address.) For claims less than $75,000, the AAA's Consumer Arbitration Rules in effect at the time the claim is made will apply as modified by the T&Cs. The Rules are available online at www.adr.org or by calling AAA at 1-800-778-7879.



# SOBERLINK

## Level 2 Family Law Monitoring Program Agreement

AGR-FD42 22 002

For claims over $75,000, the AAA's Commercial Arbitration Rules will apply as modified by these T&Cs. The Rules are available online at www.adr.org, or by calling AAA at 1-800-778-7879. For claims that total more than $75,000, the payment of filing, administration and arbitrator fees will be governed by the AAA Commercial Arbitration Rules. If the amount in dispute exceeds $75,000 or either party seeks any form of injunctive relief, either party may appeal based on a three-arbitrator panel administered by AAA by a written notice of appeal within thirty (30) days from the date of entry of the written arbitration award. The members of the three-arbitrator panel will be selected according to AAA rules. The three-arbitrator panel will issue its decision within one hundred twenty (120) days of the date of the appealing party's notice of appeal. The decision of the three-arbitrator panel shall be final and binding, subject to any right of judicial review that exists under the Federal Arbitration Act.

Any amendment, modification, revision or update of these DISPUTE RESOLUTION and ARBITRATION procedures shall only affect claims, causes of action, rights and remedies that arise after the such amendment, modification, revision or update, unless otherwise agreed by you and us. Any claim, cause of action, right or remedy that arose prior to such amendment, modification, revision or update shall be governed by the terms of the T&C's then in effect.

### CLASS ACTION WAIVER

YOU AND WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A MEMBER IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION. The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that individual's claim. You and we agree that each may bring claims against the other only in your individual capacities and not as plaintiff or class members in any purported class or representative action or in the capacity as a private attorney general law. Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's claims and may not preside over any form of a representative or class proceeding. The arbitrator may award any relief that a court could award that is individualized to the claimant and would not affect other consumers. Neither you, nor any other customer, can be a class representative, class plaintiff, or otherwise participate in a class, consolidated, or representative proceeding without having complied with the opt out requirements below. If a court or arbitrator determines in an action between you and us that this class action waiver is unenforceable, the arbitration agreement will be void as to you. If you choose to pursue your claim in court by opting out of the arbitration provision as specified above, this class action waiver provision will not apply to you.

Any amendment, modification, revision or update of the CLASS ACTION WAIVER then shall only affect claims, causes of action, rights and remedies that arise after the such amendment, modification, revision or update, unless otherwise agreed by you and us. Any claim, cause of action, right or remedy that arose prior to such amendment, modification, revision or update shall be governed by the terms of the T&C's then in effect.

### OPT OUT

Notwithstanding the above, YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE EARLIER OF: (1) THE DATE YOU PURCHASED A SOBERLINK® DEVICE; (2) THE DATE YOU ACTIVATED SERVICE; OR (3) THE DATE ON WHICH YOU AGREED TO THE T&Cs (THE "OPT OUT DEADLINE"). YOU MUST OPT OUT BY THE OPT OUT DEADLINE FOR EACH ORDER OR LINE OF SERVICE. YOU MAY OPT OUT OF THESE ARBITRATION PROCEDURES BY COMPLETING THE ON-LINE OPT-OUT FORM LOCATED AT http://www.soberlink.com/wp-content/uploads/2015/09/SLHC-Arbitration-Opt-Out.pdf and submitting the written request by facsimile to Soberlink Healthcare LLC @ 310-388-5665 Attn: Dispute Resolution, by mail to Soberlink Healthcare LLC, Attn: Dispute Resolution, 16787 Beach Boulevard, #211, Huntington Beach, CA 92647. Any opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or in small claims court.

Any amendment, modification, revision or update of the OPT OUT provisions the shall only affect claims, causes of action, rights and remedies that arise after the such amendment, modification, revision or update, unless otherwise agreed by you and us. Any claim, cause of action, right or remedy that arose prior to such amendment, modification, revision or update shall be governed by the terms of the T&C's then in effect.

### JURY TRIAL WAIVER

If a claim proceeds in court rather than through arbitration, WE EACH WAIVE ANY RIGHT TO A JURY TRIAL.

Any amendment, modification, revision or update of the JURY TRIAL WAIVER provisions the shall only affect claims, causes of action, rights and remedies that arise after the such amendment, modification, revision or update, unless otherwise agreed by you and us. Any claim, cause of action, right or remedy that arose prior to such amendment, modification, revision or update shall be governed by the terms of the T&C's then in effect.

### NOTICE OF PRIVACY PRACTICES

THIS NOTICE DESCRIBES HOW MEDICAL INFORMATION ABOUT YOU MAY BE USED AND DISCLOSED AND HOW YOU CAN GET ACCESS TO THIS INFORMATION. PLEASE REVIEW IT CAREFULLY.

SOBERLINK is dedicated to respecting the privacy of our Users. This Privacy Policy ("Policy") describes the ways we collect, store, use, and manage the information you provide in connection with our Services where this Policy is displayed. Please note that the scope of this Policy is limited to information collected by SOBERLINK through your use of the Services. This Policy does not apply to websites, applications, or services that display or link to different privacy statements. This Notice describes the legal obligations of SOBERLINK and your legal rights regarding any protected health information concerning you held by SOBERLINK under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Among other things, this Notice describes how your protected health information may be used or disclosed to carry out treatment, payment, healthcare operations, or for any other purposes that are permitted or required by law. We provide this Notice of Privacy Practices ("Notice") to comply with any requirements pursuant to HIPAA. HIPAA protects certain medical information known as "protected health information." Generally, protected health information is information that may identify you, that is collected from you, or created or received by a healthcare provider (or other "covered entity" under HIPAA), that relates to:

- your past, present, or future physical or mental health or condition;
- the provision of healthcare services to you; or
- the past, present, or future payment for the provision of healthcare services to you. If you have any questions about this Notice or about our privacy practices, please send an email to support@soberlink.com or call us at 714/975-7200.

### SOBERLINK RESPONSIBILITIES

To the extent required by law, SOBERLINK shall:

- maintain the privacy of your protected health information;
- provide you with certain rights with respect to your protected health information;
- provide you with a copy of this Notice of SOBERLINK's legal duties and privacy practices with respect to your protected health information; and
- follow the terms of the Notice that is currently in effect.

We reserve the right to change the terms of this Notice and to make new provisions regarding your protected health information that we maintain, as allowed or required by law. If we make any material change to this Notice, we will provide you with a copy of our revised Notice of Privacy Practices by first-class mail to your last-known address on file.

### WRITTEN AUTHORIZATION POLICY

We will generally obtain your written authorization before using your protected health information or disclosing it to outside persons or organizations. You may revoke any written authorization you have provided to us at any time, except to the extent that we have made any use(s) or disclosure(s) of your protected health information in reliance on the authorization. To revoke an authorization, please send your request in writing with a copy of the authorization being revoked (or, if not available, a detailed description of the authorization including the date) to Soberlink Healthcare LLC, Attn: Legal Department, 16787 Beach Boulevard, #211, Huntington Beach, CA 92647.

### HOW SOBERLINK MAY USE AND DISCLOSE YOUR PROTECTED HEALTH INFORMATION WITHOUT YOUR WRITTEN AUTHORIZATION

Under the law, we may use or disclose your protected health information under certain circumstances without your permission. The following categories describe the different ways that we may use and disclose your protected health information. For each category of uses or disclosures we will provide examples. Not every use or disclosure in a category will be listed; the examples are given only for purposes of illustration.

#### Judicial and Administrative Proceedings, Lawsuits, and Disputes

We may disclose your protected health information in the course of any judicial or administrative proceeding; if you are involved in a lawsuit or a dispute, we may disclose your protected health information in response to a court or administrative order. We may also disclose your protected health information in response to a subpoena, discovery request, or other lawful process by someone else involved in the dispute, but only if efforts have been made to tell you about the request or to obtain an order protecting the information requested.

#### Law Enforcement

We may disclose your protected health information if asked to do so by a law enforcement official in response to a court order, subpoena, warrant, summons or similar process:

- to identify or locate a suspect, fugitive, material witness, or missing person;
- about the victim of a crime if, under certain limited circumstances, we are unable to obtain the victim's agreement;
- about a death that we believe may be the result of criminal conduct;
- about criminal conduct; or
- in emergency circumstances to report a crime; the location of the crime or victims; or the identity, description, or location of the person who committed the crime.

#### Coroners, Medical Examiners, and Funeral Directors

We may release protected health information to a coroner or medical examiner. This may be necessary, for example, to identify a deceased person or determine the cause of death. We may also release medical information about patients to funeral directors as necessary to carry out their duties.

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 213 of 533

NYSCEF DOC. NO. 444

RECEIVED NYSCEF: 08/01/2023

 **SOBER**LINK

## Level 2 Family Law Monitoring Program Agreement
AGR-FLM2-22-03-1

**National Security and Intelligence Activities**
We may release your protected health information to authorized federal officials for intelligence, counter-intelligence, and other national security activities authorized by law.

**Inmates**
If you are an inmate of a correctional institution or are in the custody of a law enforcement official, we may disclose your protected health information to the correctional institution or law enforcement official if necessary (1) for the institution to provide you with healthcare; (2) to protect your health and safety or the health and safety of others; or (3) for the safety and security of the correctional institution.

**For Treatment**
We may use or disclose your protected health information to help deliver, coordinate, manage, and facilitate your healthcare and related services. For example, we may consult with or disclose medical information about you to providers such as your physician or other doctors, nurses, technicians, or other personnel who are involved in taking care of you.

**For Payment**
We may use or disclose your protected health information to obtain payment for the healthcare products we provide to you. For example, prior to providing you with such products, we may contact your insurance carrier, your HMO or your employer's health plan regarding your treatment, including your diagnosis and product needs, to ensure that such products will be covered. We may also disclose information to your insurance carrier or other payer that is necessary to submit claims for payment, or to resolve any questions your insurance carrier or payer may have regarding quality assurance or utilization review.

**For Healthcare Operations**
We may use and disclose your protected health information in order to support our business activities, such as quality assessment and improvement activities, business planning, management and general administrative activities. For example, we may use your protected health information to determine how to improve our products, resolve complaints, and assess staff performance.

**To Business Associates**
We may contract with individuals or entities known as Business Associates to perform various functions on our behalf or to provide certain types of services. In order to perform these functions or to provide these services, Business Associates will receive, create, maintain, use and/or disclose your protected health information, but only after they agree in writing with us to implement appropriate safeguards regarding your protected health information. For example, we may disclose your protected health information to a Business Associate to administer claims or to provide support services, but only after the Business Associate enters into a Business Associate Agreement with us.

**As Required by Law**
We will disclose your protected health information when required to do so by federal, state, or local law. For example, we may disclose your protected health information when required by national security laws or public health disclosure laws.

**To Avert a Serious Threat to Health or Safety**
We may use and disclose your protected health information when necessary to prevent a serious threat to your health and safety, or the health and safety of the public or another person. Any disclosure, however, would only be to someone able to help prevent the threat.

**Organ and Tissue Donation and Procurement**
We may release your protected health information to organizations that handle organ procurement or organ, eye, or tissue transplantation or to an organ donation bank, as necessary to facilitate organ or tissue donation and transplantation.

**Military and Veterans**
If you are a member of the armed forces, we may release your protected health information as required by military command authorities. We may also release protected health information about foreign military personnel to the appropriate foreign military authority.

**Workers' Compensation**
We may release your protected health information for workers' compensation or similar programs. These programs provide benefits for work-related injuries or illness.

**Public Health Risks**
As required by law, we may disclose your protected health information to public health or legal authorities under the following circumstances:

- to prevent or control disease, injury, or disability;
- to report births and deaths;
- to report child abuse or neglect;
- to track FDA-regulated products;
- to report reactions to medications or problems with products;
- to notify people of recalls of products they may be using;
- to notify a person who may have been exposed to a disease or may be at risk for contracting or spreading a disease or condition.

**Victims of Abuse**
We may disclose your protected health information to notify the appropriate government authority if we believe that an individual has been the victim of abuse, neglect, or domestic violence. We will only make this disclosure if you agree, or when required or authorized by law.

**Health Oversight Activities**
We may disclose your protected health information to a health oversight agency for activities authorized by law. These oversight activities include audits; civil, administrative, or criminal investigations, proceedings or actions; inspections; licensure or disciplinary actions; and other activities necessary for the appropriate oversight of the healthcare system, government programs, and compliance with civil rights laws.

**Research**
We may disclose your protected health information to researchers when:

- the individual identifiers have been removed; or
- when an Institutional review board or privacy board has (a) reviewed the research proposal; and (b) established protocols to ensure the privacy of the requested information and approves the research.

**Personal Representatives**
We will disclose your protected health information to individuals authorized by you, or to an individual designated as your personal representative, attorney-in-fact, etc., so long as you provide us with a written notice/authorization and any supporting documents (i.e., power of attorney). NOTE: We do not have to disclose information to a personal representative if we have a reasonable belief that:

- you have been, or may be, subjected to domestic violence, abuse, or neglect by such person;
- treating such person as your personal representative could endanger you; or
- in the exercise of professional judgment, it is not in your best interest to treat the person as your personal representative.

**Reminders**
We may contact you to provide reminders or information about appointments, product refills, treatment alternatives, or other health-related benefits and services that may be of interest to you.

## REQUIRED DISCLOSURES

The following is a description of disclosures of your protected health information we are required to make.

**Government Audits**
We are required to disclose your protected health information to the Secretary of the United States Department of Health and Human Services when the Secretary is investigating or determining our compliance with the HIPAA privacy rule.

**Disclosures to You**
When you request, we are required to disclose to you the portion of your protected health information that contains medical records, billing records, and any other records used to make decisions regarding your healthcare benefits. We are also required, when requested, to provide you with an accounting of most disclosures of your protected health information if the disclosure was for reasons other than for payment, treatment, or healthcare operations, and if the protected health information was not disclosed pursuant to your individual authorization.

## OUR RIGHTS

You have the following rights with respect to your protected health information:

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM
NYSCEF DOC. NO. 444                                          RECEIVED NYSCEF: 08/01/2023

## SOBERLINK

### Level 2 Family Law Monitoring Program Agreement
AGR 0\V02-22-002

**Right to Inspect and Copy**
You have the right to inspect and copy certain protected health information that may be used to make decisions about your healthcare benefits. To inspect and copy your protected health information, you must submit your request in writing and fax to 310-388-5605 or by sending an email to support@soberlink.com. If you request a copy of the information, we may charge a reasonable fee for the costs of copying, mailing, or other supplies associated with your request. We may deny your request to inspect and copy in certain, very limited circumstances. If you are denied access to your medical information, you may request a written copy of the denial be reviewed by submitting a written request, by facsimile to Soberlink Healthcare LLC @ 310-388-5605 Attn: Privacy Officer, by mail to Soberlink Healthcare LLC, Attn: Privacy Officer, 16787 Beach Boulevard, #211, Huntington Beach, CA 92647.

**Right to Amend**
If you feel that the protected health information, we have about you is incorrect or incomplete, you may ask us to amend the information. You have the right to request an amendment for as long as the information is kept by or for us. To request an amendment, your request must be made in writing and sent by facsimile to Soberlink Healthcare LLC @ 310-388-5605 Attn: Privacy Officer, by mail to Soberlink Healthcare LLC, Attn: Privacy Officer, 16787 Beach Boulevard, #211, Huntington Beach, CA 92647 or by email to support@soberlink.com. In addition, you must provide a reason that supports your request. We may deny your request for an amendment if it is not in writing or does not include a reason to support the request. In addition, we may deny your request if you ask us to amend information that:

- is not part of the medical information kept by or for us;
- was not created by us, unless the person or entity that created the information is no longer available to make the amendment;
- is not part of the information that you would be permitted to inspect and copy; or
- is already accurate and complete.

If we deny your request, you have the right to file a statement of disagreement with us and any future disclosures of the disputed information will include your statement.

**Right to an Accounting of Disclosures**
You have the right to request an "accounting" of certain disclosures of your protected health information. The accounting will not include (1) disclosures for purposes of treatment, payment, or healthcare operations; (2) disclosures made to you; (3) disclosures made pursuant to your authorization; (4) disclosures made to friends or family in your presence or because of an emergency; (5) disclosures for national security purposes; and (6) disclosures incidental to otherwise permissible disclosures. To request this list or accounting of disclosures, you must submit your request in writing and fax to 310-388-5605 Attn: Privacy Officer or by sending an email to support@soberlink.com. Your request must state a time period of not longer than six years. Your request should indicate in what form you want the list (for example, paper or electronic). The first list you request within a 12-month period will be provided free of charge. For additional lists, we may charge you for the costs of providing the list. We will notify you of the cost involved and you may choose to withdraw or modify your request at that time before any costs are incurred.

**Right to Request Restrictions**
You have the right to request a restriction or limitation on your protected health information that we use or disclose for treatment, payment, or healthcare operations. You also have the right to request a limit on your protected health information that we disclose to someone who is involved in your care or the payment for your care, such as a family member or friend. For example, you could ask that we not use or disclose information about a surgery that you had. We are not required to agree to your request. However, if we do agree to the request, we will honor the restriction until you revoke it, or we notify you. To request restrictions, you must make your request in writing and sent by facsimile to Soberlink Healthcare LLC @ 310-388-5605 Attn: Privacy Officer, by mail to Soberlink Healthcare LLC, Attn: Privacy Officer, 16787 Beach Boulevard, #211, Huntington Beach, CA 92647 or by email to support@soberlink.com. In your request, you must tell us (1) what information you want to limit; (2) whether you want to limit our use, disclosure, or both; and (3) to whom you want the limits to apply – for example, disclosures to your spouse.

**Right to Request Confidential Communications**
You have the right to request that we communicate with you about medical matters in a certain way or at a certain location. For example, you can ask that we only contact you at work or by mail. To request confidential communications, you must make your request in writing and fax to 310-388-5605 Attn: Privacy Officer, or by sending an email to support@soberlink.com. We will not ask you the reason for your request. Your request must specify how or where you wish to be contacted. We will accommodate all reasonable requests if you clearly provide information that the disclosure of all or part of your protected information could endanger you.

**Right to a Paper Copy of This Notice**
You have the right to a paper copy of this notice. You may ask us to give you a copy of this notice at any time. Even if you have agreed to receive this notice electronically, you are still entitled to a paper copy of this notice. You may obtain a copy of this notice at our website, www.soberlink.com. To obtain a paper copy of this notice, please submit a written request by facsimile to Soberlink Healthcare LLC @ 310-388-5605 Attn: Privacy Officer, by mail to Soberlink Healthcare LLC, Attn: Privacy Officer, 16787 Beach Boulevard, #211, Huntington Beach, CA 92647 or by email to support@soberlink.com.

**Complaints.** If you believe that your privacy rights have been violated, you may file a complaint with the Office for Civil Rights of the United States Department of Health and Human Services. To file a complaint with SOBERLINK, please submit such in writing and send by facsimile to Soberlink Healthcare LLC @ 310-388-5605 Attn: Privacy Officer, by mail to Soberlink Healthcare LLC, Attn: Privacy Officer, 16787 Beach Boulevard, #211, Huntington Beach, CA 92647. All complaints must be submitted in writing. You will not be penalized, or in any other way retaliated against, for filing a complaint with the Office of Civil Rights, or with us.

**Information Collected.** When you use our Services, we may collect and record information about you. We may collect information about you when you use our Service through a third party social networking platform or another third party source. We may collect information about you such as your name, e-mail address, postal address, phone number, and demographics such as your age or birthdate, gender or interests. We may also collect credit card numbers and other payment information if you make purchases through our Services. We may obtain information from other sources, including third party social networking platforms you use with our Services, and combine that with information we collect through our Services.

Additional information related to Soberlink's privacy policies is available at http://www.soberlink.com/privacy-policy

**SOBERLINK SMS – 30574**

You may subscribe to SOBERLINK SMS service.

1. When you opt-in to the service, we will send you an SMS message to confirm your sign up.
2. You can cancel the SMS service at any time by texting "STOP" to 30574. After you send the SMS message "STOP" to us, we will send you an SMS message to confirm that you have been unsubscribed. After this, you will no longer receive SMS messages from us.
3. If you want to rejoin, text "SUBSCRIBE" to 30574 to resume receiving SMS messages.
4. If at any time you forget what keywords are supported, just text "HELP" to 30574. After you send the SMS message "HELP" to us, we will respond with instructions on how to use our service as well as how to unsubscribe.
5. We are able to deliver messages to the following mobile phone carriers:
6. Major carriers: AT&T, Verizon Wireless, Sprint, T-Mobile, U.S. Cellular, Alltel, Boost Mobile, Nextel, and Virgin Mobile.
7. Minor carriers: Alaska Communications Systems (ACS), Appalachian Wireless (EKN), Bluegrass Cellular, Cellular One of East Central IL (ECIT), Cellular One of Northeast Pennsylvania, Cincinnati Bell Wireless, Cricket, Coral Wireless (Mobi PCS), COX, Cross, Element Mobile (Flat Wireless), Epic Touch (Elkhart Telephone), GCI, Golden State, Hawkeye (Chat Mobility), Hawkeye (NW Missouri), Illinois Valley Cellular, Inland Cellular, iWireless (Iowa Wireless), Keystone Wireless (Immix Wireless/PC Man), Mosaic (Consolidated or CTC Telecom), Nex-Tech Wireless, Ntelos, Panhandle Communications, Pioneer, Plateau (Texas RSA 3 Ltd), Revol, RINA, Simmetry (TMP Corporation), Thumb Cellular, Union Wireless, United Wireless, Viaero Wireless, and West Central (WCC or 5 Star Wireless).
8. As always, message and data rates may apply for any messages sent to you from us and to us from you. Message frequency depends on the user's interaction. If you have any questions about your text plan or data plan, it is best to contact your wireless provider. For all questions about the services provided by this short code, you can send an email to support@soberlink.com.
9. If you have any questions regarding privacy, please read our privacy policy.

**FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM**

NYSCEF DOC. NO. 444

RECEIVED NYSCEF: 08/01/2023

# Soberlink Level 2 Family Law Monitoring Program Agreement

Final Audit Report                                      2022-11-07

| | |
|---|---|
| Created: | 2022-11-07 |
| By: | Soberlink Agreements (agreements@soberlink.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA4TcA3YBQvHXvpQFOdkmHnSvX3qUpcv6G |

## "Soberlink Level 2 Family Law Monitoring Program Agreement" History

- Document created by Soberlink Agreements (agreements@soberlink.com)
  2022-11-07 - 10:05:20 PM GMT- IP address: 38.122.146.42

- Document emailed to tommyfogarty@yahoo.com for signature
  2022-11-07 - 10:05:23 PM GMT

- Email viewed by tommyfogarty@yahoo.com
  2022-11-07 - 10:06:14 PM GMT- IP address: 69.127.1.1

- Signer tommyfogarty@yahoo.com entered name at signing as thomas fogarty
  2022-11-07 - 10:27:17 PM GMT- IP address: 69.127.1.1

- Document e-signed by thomas fogarty (tommyfogarty@yahoo.com)
  Signature Date: 2022-11-07 - 10:27:19 PM GMT - Time Source: server- IP address: 69.127.1.1

- Document emailed to nicole@ndigiacomolaw.com for signature
  2022-11-07 - 10:27:21 PM GMT

- Email viewed by nicole@ndigiacomolaw.com
  2022-11-07 - 10:28:12 PM GMT- IP address: 72.69.185.75

- Signer nicole@ndigiacomolaw.com entered name at signing as Nicole Digiacomo
  2022-11-07 - 10:29:16 PM GMT- IP address: 72.69.185.75

- Document e-signed by Nicole Digiacomo (nicole@ndigiacomolaw.com)
  Signature Date: 2022-11-07 - 10:29:18 PM GMT - Time Source: server- IP address: 72.69.185.75

- Agreement completed.
  2022-11-07 - 10:29:18 PM GMT

**⊛ SOBERLINK**    Powered by
Adobe
Acrobat Sign

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM    Page 216 of 533 
NYSCEF DOC. NO. 444                                                    RECEIVED NYSCEF: 08/01/2023

# MILLER ZEIDERMAN LLP

## ATTORNEYS AT LAW

FAITH G. MILLER
LISA ZEIDERMAN*
AOIFE COLLINS
KEVIN P. CONNOLLY
TIFFANY E. GALLO
JENNIFER M. JACKMAN*
ASHLEY KERSTING**
SIOBHAN T. O'GRADY
SHAUNA TESSER-FRIEDMAN**
EMILY C. WALSH

ADRIENNE ABRAHAM
CHRISTINE BIANCANIELLO
DANIEL S. MILLER
LAURIE REMPP
LIZA J. TRAZZERA
EMMA C. VAN LENT*

*TRUSTS AND ESTATES*
*OF COUNSEL*

AMY HOLZMAN
MICHAEL ABEL
NICHOLAS ORBON
YUANTING M. YANG

*MEMBER OF NY & CT BARS*
**MEMBER OF NY & NJ BARS*

August 1, 2023

**Via Email:**
Karen Winner, Esq.
The Law Office of Karen Winner
252 W. 37th Street, Suite 600
New York, New York 10018

**Via Email:**
Nicole DiGiacomo, Esq.
Law Office of Nicole DiGiacomo
103 E. Evergreen Road
New City, New York 10956

    Re:    Thomas Fogarty vs. Sai Malena Jimenez-Fogarty
           Supreme Court, Rockland County
           Index No.: ▮▮▮▮▮▮▮

Dear Ms. Winner and Ms. DiGiacomo:

    Please see the enclosed Notice of Subpoena Compliance together with subpoenaed records received from Soberlink in regard to the above-entitled matter.

           Yours Very Truly,

           Ashley Kersting

Enc.
cc (w/enc.):    Thomas Fogarty (via email)

140 GRAND STREET, 5TH FLOOR, WHITE PLAINS, NY 10601 TELEPHONE:(914) 455-1000 FACSIMILE: (914) 468-4244
150 EAST 52ND STREET, SUITE 1002, NEW YORK, NY 10022 TELEPHONE: (212) 769-3500

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

X------------------------------------------------------------X

THOMAS FOGARTY,

                                    Plaintiff,

           -against-

SAI MALENA JIMENEZ-FOGARTY,

                                 Defendant.

X------------------------------------------------------------X

Index No.: ████████████

**NOTICE OF SUBPOENA**
**COMPLIANCE**

**COUNSELORS:**

    **PLEASE TAKE NOTICE** that a subpoena response has been received by this office from

**SOBERLINK** in connection with the above-referenced matter and is attached hereto. Plaintiff intends to

offer at trial or hearing the above-referenced business records authenticated by certification subscribed

to pursuant to CPLR §3122-a.

Dated: White Plains, New York
      August 1, 2023

                                    _____
                                    Ashley Kersting, Esq.
                                  MILLER ZEIDERMAN LLP
                                  *Attorneys for Plaintiff*
                                  140 Grand Street, 5th Floor
                                  White Plains, New York 10601
                                  Phone: (914) 455-1000

TO:    Karen Winner, Esq.
        The Law Office of Karen Winner
        *Attorneys for Defendant*
        252 West 37th Street, Suite 600
        New York, New York, 10018
        Tel: (917) 741-0213

        Nicole DiGiacomo, Esq.
        Law Office of Nicole DiGiacomo
        *Attorneys for the Children*
        103 E. Evergreen Road
        New City, New York 10956
        Tel: (845) 664-4965

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:17 PM    Page 218 of 530
NYSCEF DOC. NO. 444                                                    RECEIVED NYSCEF: 08/01/2023

Miller Zeiderman LLP
COUNSELORS AT LAW

Index No. _____    Year 20___

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

THOMAS FOGARTY,

Plaintiff

v.

SAI MALENA JIMENEZ-FOGARTY,

Defendant.

NOTICE OF SUBPOENA COMPLIANCE

Attorneys for

Miller Zeiderman LLP
COUNSELORS AT LAW

PLAINTIFF

140 Grand Street, Suite 503
White Plains, NY 10601
(914) 455-1000
(914) 468-4244 (fax)

Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.

Dated: August 1, 2023          Signature _____

                               Print Signer's Name: Ashley Kersting, Esq.

Service of a copy of the within                                    is hereby admitted.

Dated:

                               Attorney(s) for

PLEASE TAKE NOTICE

☐ NOTICE OF ENTRY
that the within is a (certified) true copy of a
entered in the office of the clerk of the within-named Court on                    20___

☐ NOTICE OF SETTLEMENT
that an Order of which the within is a true copy will be presented for settlement to the
Hon. _____, one of the judges of the within-named Court,
at
on          20___    , at                M.

Dated:

                               Miller Zeiderman LLP
                               COUNSELORS AT LAW

Attorneys for

                               140 Grand Street, Suite 503
                               White Plains, NY 10601

To:

Attorney(s) for



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
X--------------------------------------------------------------X
THOMAS FOGARTY,

                                            Plaintiff,          **CERTIFICATION OF**
                                                               **BUSINESS RECORDS**

            -against-                                          Index No.: 035547/2021

SAI MALENA JIMENEZ-FOGARTY,

                                            Defendant.

X--------------------------------------------------------------X

            STATE OF ~~California~~ Florida          )
                                              S.S.:  )
            COUNTY OF ~~Orange~~ Miami               )

            Cooper Ford Penney
            _____, being duly sworn, deposes and says:
            [PRINT NAME]

i)      I have received the Trial Subpoena Duces Tecum of the Defendant to Soberlink, and

make this Affidavit to accompany the business records produced in response to said Trial

Subpoena Duces Tecum. I am a duly authorized custodian, or other qualified witness and have

authority to make this Certification.

ii)     To the best of my knowledge, after reasonable inquiry, the records or copies thereof

produced herewith are accurate versions of the documents described in the said Trial Subpoena

Duces Tecum that are in the possession, custody, or control of Soberlink.

3

FILED: ROCKLAND COUNTY CLERK 08/01/2023 05:11 PM
NYSCEF DOC. NO. 444                                                    RECEIVED NYSCEF: 08/01/2023

iii)    To the best of my knowledge, after reasonable inquiry,

[CHOOSE ONE/STRIKE THE OTHER]:

✓ (1) the records or copies produced represent all the documents described in the Trial Subpoena Duces Tecum.

X (2) the records or copies produced do not represent a complete set of the documents subpoenaed. The records that are missing are [LIST MISSING RECORDS]:_____

_____.

The reason for their absence is [EXPLAIN]:_____

_____.

iv)    The records or copies produced were made by the personnel or staff of the business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein, or within a reasonable time thereafter, and it was the regular course of business to make such records.

SIGN HERE: *Cooper Ford Penney*
PRINT NAME: Cooper Ford Penney

Sworn to before me this
20th day of   July   , 2023

Notary Public

JOSE CARABALLO
Notary Public - State of Florida
Commission # HH 80912
Expires on November 6, 2024

Notarized online using audio-video communication

4

**FOR USE WITH ANY OUT OF STATE SUBPOENA**

## CERTIFICATE OF CONFORMITY

STATE OF ___Florida___           )
                                 ) ss.:
COUNTY OF ___Miami___            )

I, _____Jose Caraballo_____

_____Florida_____, a notary public duly qualified in the State of ___Florida___, attest under penalty of perjury and certify that I witnessed the signature of _____Cooper Ford Penney_____ as applied to the Affidavit annexed to this Certificate, which was signed and dated on ___07/20/2023___. The manner in which the Certificate was signed was, and is, in accordance with and conforms to the laws for taking oaths and acknowledgments in the State of ___Florida___.


_____          ___07/20/2023___
Signature of Notary Public          Date



JOSE CARABALLO
Notary Public - State of Florida
Commission # HH 60912
Expires on November 5, 2024

Notarized online using audio-video communication

5

6





| Expand | Contribution Date | Amount | Contributor Name | Detail Original Name | Contributor Address |
|--------|-------------------|--------|------------------|----------------------|---------------------|
| (+) | 01/08/2024 | $2,500.00 | Miller Zeiderman LLP | | 140 Grand St., 5th Floor White Plains NY 10601 United States |
| (+) | 12/15/2023 | $1,500.00 | Miller Zeiderman LLP | | 140 Grand St White Plains NY 10601 United States |
| (+) | 03/16/2023 | $1,500.00 | Miller Zeiderman LLP | | 140 Grand St White Plains NY 10601 United States |
| (+) | 01/17/2023 | $750.00 | Miller Zeiderman LLP | | 140 Grand Street, 5th Floor White Plains NY 10601 United States |
| (+) | 01/17/2023 | $250.00 | Miller Zeiderman LLP | | 140 Grand Street, 5th Floor White Plains NY 10601 United States |
| (+) | 11/07/2022 | $1,000.00 | Miller Zeiderman LLP | | 140 Grand Street, 5th Floor White Plains NY 10601 United States |
| (+) | 10/04/2022 | $1,000.00 | Miller Zeiderman LLP | | 140 Grand Street, 5th Floor White Plains NY 10601 United States |



| Expend | Contribution Date | Amount | Contributor Name | Detail Original Name | Contributor Address |
|--------|------------------|--------|------------------|---------------------|---------------------|
| + | 05/17/2022 | $500.00 | Miller Zeiderman LLP | | 140 Grand Street White Plains NY 10601 United States |
| + | 05/16/2022 | $2,500.00 | Miller Zeiderman LLP | | 140 Grand Street, 5th Floor White Plains NY 10601 United States |
| + | 04/28/2022 | $500.00 | Miller Zeiderman Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 03/15/2022 | $1,500.00 | Miller Zeiderman LLP | | 140 Grand Street White Plains NY 10601 United States |
| + | 03/14/2022 | $500.00 | Miller Zeiderman Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 03/11/2022 | $100.00 | Miller Zeiderman LLP | | 140 Grand Street, 5th Floor White Plains NY 10601 United States |
| + | 10/09/2021 | $350.00 | Miller Zeiderman LLP | | 140 Grand St., 5th Fl White Plains NY 10601 United States |

| Expand | Contribution Date | Amount | Contributor Name | Detail Original Name | Contributor Address |
|---|---|---|---|---|---|
| + | 10/08/2021 | $350.00 | Miller Zeiderman LLP | | 140 Grand Street White Plains NY 10601 United States |
| + | 09/15/2021 | $500.00 | Miller Zeiderman Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 08/16/2021 | $1,000.00 | Miller Zeiderman LLP | | 140 Grand St White Plains NY 10601 United States |
| + | 08/16/2021 | $1,000.00 | Miller Zeiderman, LLP | | 140 Grand St White Plains NY 10601 United States |
| + | 03/10/2021 | $1,500.00 | Miller Zeiderman LLP | | 140 Grand Street, 5th Floor White Plains NY 10601 United States |
| + | 03/08/2021 | $2,500.00 | Miller Zeiderman LLP | | 140 Grand St, #5 White Plains NY 10601 United States |
| + | 02/08/2021 | $500.00 | Miller Zeiderman Wiederkehr & Schwarz LL | | 140 Grand St Ste 5 White Plains NY 10601-4838 United States |
| + | 03/02/2020 | $2,000.00 | Miller Zeiderman & | | 140 Grand St White Plains |

| Expand | Contribution Date | Amount | Contributor Name | Detail Original Name | Contributor Address |
|--------|-------------------|--------|------------------|----------------------|---------------------|
| | | | Wiederkehr Llp | | NY 10601 United States |
| + | 06/10/2019 | $2,000.00 | Miller Zeiderman & Wiederkehr Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 03/29/2019 | $2,500.00 | Miller Zeiderman & Wiederkehr Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 10/09/2018 | $1,000.00 | Miller Zeiderman & Wiederkehr, Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 07/10/2018 | $2,000.00 | Miller Zeiderman & Wiederkehr, Llp | | Fl 5, 140 Grand St White Plains NY 10601 United States |
| + | 06/21/2018 | $350.00 | Miller Zeiderman & Wiederkehr, Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 06/18/2018 | $500.00 | Miller Zeiderman & Wiederkehr Llp | | 140 Grand Street White Plains NY 10601 United States |
| + | 06/11/2018 | $350.00 | Miller Zeiderman & Wiederkehr, Llp | | 140 Grand Street - 5th Fl. White Plains NY |

| Expand | Contribution Date | Amount | Contributor Name | Detail Original Name | Contributor Address |
|---|---|---|---|---|---|
| | | | | | 10601 United States |
| + | 04/09/2018 | $1,000.00 | Miller Zeiderman & Wiederkehr, Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 03/15/2018 | $2,000.00 | Miller Zeiderman & Wiederkehr Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 02/26/2018 | $2,000.00 | Miller Zeiderman & Wiederkehr, Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 11/01/2017 | $1,000.00 | Miller Zeiderman Wiederkehr & Schwartz Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 10/09/2017 | $750.00 | Miller Zeiderman Wiederkehr & Schwarz Llp | | 140 Grand Street White Plains NY 10601 United States |
| + | 10/03/2017 | $1,000.00 | Miller Zeiderman Wiederkehr & Schwarz Llp | | Fl 5, 140 Grand St White Plains NY 10601 United States |
| + | 06/22/2017 | $1,000.00 | Miller Zeiderman Wiederkehr & Schwartz Llp | | 140 Grand Street - 5th Fl. White Plains NY |

| Expand | Contribution Date | Amount | Contributor Name | Detail Original Name | Contributor Address |
|--------|-------------------|--------|------------------|----------------------|---------------------|
| | | | | | 10601 United States |
| + | 05/02/2017 | $250.00 | Miller Zeiderman Wiederkehr & Schwartz, Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 04/20/2017 | $700.00 | Miller Zeiderman Wiederkehr & Scwarz Llp | | 140 Grand Street, 5th Floor White Plains NY 10601 United States |
| + | 04/04/2017 | $250.00 | Miller Zeiderman Wiederkehr & Schwartz, Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 03/22/2017 | $150.00 | Miller Zeiderman Wiederkehr & Schwarz Llp | | 140 Grand Street 5ht Floor White Plains NY 10601 United States |
| + | 03/11/2017 | $1,500.00 | Miller Zeiderman Wiederkehr & Schwartz, Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| + | 02/22/2017 | $250.00 | Miller Zeiderman Wiederkehr & Schwarz Llp | | Fl 5, 140 Grand St White Plains NY 10601 United States |
| + | 09/28/2016 | $750.00 | Miller Zeiderman | | Fl 5, 140 Grand St White Plains |

| Expand | Contribution Date | Amount | Contributor Name | Detail Original Name | Contributor Address |
|---|---|---|---|---|---|
| | | | Wiederkehr & Schwarz Llp | | NY 10601 United States |
| (+) | 09/14/2016 | $250.00 | Miller Zeiderman Wiederkehr & Schwarz Llp | | 140 Grand Street, 5th Floor White Plains NY 10601 United States |
| (+) | 07/08/2016 | $250.00 | Miller Zeiderman Wiederkehr & Schwarz Llp | | Fl 5, 140 Grand St White Plains NY 10601 United States |
| (+) | 07/01/2016 | $2,500.00 | Miller Zeiderman Wiederkehr & Schwarz Llp | | 140 Grand St, 5th Floor White Plains NY 10601 United States |
| (+) | 03/23/2016 | $250.00 | Miller Zeiderman & Wiederkegr Schwarz Llp | | 140 Grand Street White Plains NY 10601 United States |
| (+) | 03/14/2016 | $750.00 | Miller Zeiderman & Wiederkehr Schwarz Llp | | 140 Grand Street White Plains NY 10601 United States |
| (+) | 03/02/2016 | $2,250.00 | Miller Zeiderman & Wiederkehr Schwarz Llp | | 140 Grand Street White Plains NY 10601 United States |
| (+) | 02/22/2016 | $5,000.00 | Miller Zeiderman & Wiederkehr Schwarz Llp | | 140 Grand Street - 5th Floor White Plains NY 10601 United States |

| Expand | Contribution Date | Amount | Contributor Name | Detail Original Name | Contributor Address |
|---|---|---|---|---|---|
| ⊕ | 01/12/2016 | $500.00 | Miller Zeiderman & Wiederkehr Schwarz, Llp | | 140 Grand Street - 5th Floor White Plains NY 10601 United States |
| ⊕ | 10/21/2015 | $600.00 | Miller Zeiderman & Wiederkehr Schwartz Llp | | 140 Grand Street, 5th Floor White Plains NY 10601 United States |
| ⊕ | 04/02/2015 | $1,000.00 | Miller Zeiderman & Wiederkehr Schwartz Llp | | 140 Grand Street - 5th Fl. White Plains NY 10601 United States |
| ⊕ | 01/26/2015 | $3,000.00 | Miller Zeiderman & Wiederkehr, Llp | | 140 Grand Street - 5th Floor White Plains NY 10601 United States |
| ⊕ | 03/01/2014 | $1,000.00 | Miller Zeiderman & Wiederkehr Llp | | 140 Grand Ave White Plains NY 10601 United States |

Showing 1 to 59 of 59 entries          Previous | 1 | Next

7

# Please Join Hosts

## The Hon. Jeffrey A. Cohen

Appellate Division Justice 2nd Dept. (Ret.)

& of Counsel at Abrams Fensterman, LLP

### Lisa Zeiderman, Esq. &

### Paul Adler, Esq.

To Kickoff the Campaign for Judge Sherri Eisenpress

for Justice of the Supreme Court, 9th Judicial District

| | |
|---|---|
| **Date:** | **Sunday, May 22nd** |
| **Time:** | **2:00 PM to 5:00 PM** |
| **Location:** | **The home of Lisa Zeiderman** |
| | **170 Avery Road** |
| | **Garrison, NY 10524** |
| **RSVP:** | **info@defiantstrategiesny.com** |
| **Mail Checks To:** | **Friends of Sherri Eisenpress** |
| | **16 Darryl Lane** |
| | **Carmel, NY 10512** |

Name _____

Address _____

Phone _____    Email _____

_____ $500 per Guest

_____ $1,000 Supporter Sponsor    _____ $2,500 Friend Sponsor

I am unable to attend, but wish to donate: $ _____

Questions? Call (845) 379-0464

Political contributions are not deductible for Federal Income Tax purposes.

Maximum Donation for the Campaign Cycle: $50,000.00 (Cumulative) - Cash Contribution Limit: $99.00

Paid for by Friends of Sherri Eisenpress

**FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM**
NYSCEF DOC. NO. 193                                        RECEIVED NYSCEF: 05/20/2022



---------- Forwarded message ----------
From: **Stephen Papas** <info@defiantstrategiesny.com>
Date: Wed, May 18, 2022 at 1:18 PM
Subject: Re: Judge Eisenpress fundraiser

Judge Eisenpress opted to do an electronic distribution of the invitation that was sent out on Monday, May 9th. We reviewed the email list within the email blast system and your email is not included in the database. To ensure that you receive all future notifications, I will be sure to add you to the distribution list.

On Wed, May 18, 2022 at 1:00 PM [redacted] wrote:
  Thank you so much!  When did invitations go out?  It is driving me a little crazy that I missed it in the mail.

  On Tue, May 17, 2022 at 7:03 PM Stephen Papas <info@defiantstrategiesny.com> wrote:
    Good Evening [redacted]

    Please find attached the fundraiser information. If you have any questions, please do not hesitate to ask.

    > On May 17, 2022, at 6:01 PM, [redacted] wrote:
    >
    >
    > Dear Sir or Madam,
    >
    > I heard about the fundraiser to be occurring at Ms. Zelderman's home for Judge Eisenpress's campaign on May 22, 2022.
    >
    > When did invitations go out?  I am surprised I never received one.
    >
    > Would you kindly email me one as soon as possible?
    >
    > Thank you,
    >
    > [redacted]

Defiant Strategies
Email: Info@Defiantstrategiesny.com
Phone: (845) 379-0464



# MILLER ZEIDERMAN LLP
## ATTORNEYS AT LAW

FAITH G. MILLER
LISA ZEIDERMAN*
TIFFANY E. GALLO
JENNIFER M. JACKMAN*
SIOBHAN T. O'GRADY
EMILY C. WALSH

CHRISTINE BIANCANIELLO
KEVIN C. BROWN*
KEVIN P. CONNOLLY
ASHLEY KERSTING**
LAURIE REMPP
SHAUNA TESSER-FRIEDMAN**
LIZA J. TRAZZERA

140 GRAND STREET
5TH FLOOR
WHITE PLAINS, NY 10601
(914) 455-1000
FACSIMILE: (914) 468-4244

150 EAST 52ND STREET
SUITE 1002
NEW YORK, NY 10022
(212) 769-3500

*OF COUNSEL*

JOHN P. CORRIGAN*
GABRIELLE HARTLEY ***
KEITH L. LABIS

*MEMBER OF NY & CT BARS
**MEMBER OF NY & NJ BARS
*** MEMBER OF NY, NJ & MA BARS

November 17, 2021

**Via NYSCEF**
Rockland County Supreme Court Clerk
1 South Main Street
New City, NY 10952

Re:  Thomas Fogarty vs. Sai Malena Jimenez-Fogarty
      Supreme Court, Rockland County
      Index No.: 035547/2021;    Family Court File No.: 38859

Dear Supreme Court Clerk:

We are the attorneys for Plaintiff, Thomas Fogarty. Robert Sunshine represents Defendant and the Attorney for the Children is Nicole DiGiacomo, Esq.

We respectfully request that the above referenced matter be consolidated and transferred to Judge Eisenpress in the IDV Part. This matter was conferenced today with Court Attorney Referee Dean Richardson-Mendelson who agreed that this matter is more appropriately heard in the IDV Part.

Very truly yours,

Lisa Zeiderman

cc:  Court Attorney Referee Dean Richardson-Mendelson (via email)
      Hon. Sherri Eisenpress J.S.C. / Shira Krance (via email)
      Robert Sunshine, Esq. (via email)
      Nicole DiGiacomo, Esq. (via email)
      Thomas Fogarty (via email)

At an I.A.S. Term, Motion Part of the
Civil Court of the State of New York,
held in and for the County of
Rockland, at 1 South Main Street
New City, NY 10956, on the _____
day of May, 2022

PRESENT: HON. SHERRI L. EISENPRESS, A.J.S.C.:
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
------------------------------------------------------------X
THOMAS FOGARTY,

                        Plaintiff,

    -against-

SAI MALENA JIMENEZ FOGARTY,

                       Defendant.

------------------------------------------------------------X

IDV #721
Index Number 035547/2021

**EMERGENCY ORDER
TO SHOW CAUSE TO
DISQUALIFY
PRESIDING ACTING
SUPREMECOURT
JUSTICE**

    **UPON READING AND THE FILING** of the annexed Attorney Affirmation of

JEANMARIE MARQUARDT, ESQ., an attorney with the Law Firm of Trivella & Forte, LLP,

attorneys for the Defendant SAI MALENA JIMENEZ FOGARTY, dated May  , 2022, and all the

previous pleadings and proceedings heretofore had herein, and sufficient cause having been

alleged,

    **IT IS HEREBY ORDERED** that the Plaintiff, THOMAS FOGARTY Show Cause before

this Honorable Court, located at 1 South Main Street New City, NY 10956. on _____ day of

_____, 2022 at ____A.M. or as soon thereafter as counsel may be heard, why an Order, pursuant

to The New York Advisory Committee on Judicial Ethics should not be issued:

1. Disqualifying the Hon. Sherri L. Eisenpress from presiding over this matter;

2. Referring this matter to the Rockland County Supreme Court I.A.S. for reassignment of this matter to another Justice,

3. Invalidating each and every Order *ab initio* issued in this matter issued on or after May 9, 2022, the date such invitations for the "kick off fundraiser" were sent and the date invitations to Justice Eisenpress's mandatory disqualification began; and

4. For such other and further relief as may be just, proper and equitable.

**IT IS FURTHER HEREBY ORDERED** that all Orders and/or Decisions, issued by this Court, including but not limited to the *sua sponte* Order of Legal and Physical Custody dated May 17, 2020, are hereby rendered void and invalid, *ab intitio*; and

**IT IS FURTHER HEREBY ORDERED** that Oral Argument shall/shall not be required on the return date of this application; and

**IT IS FURTHER HEREBY ORDERED** that service of this Order and the papers upon which it is based be made by serving a copy of this Order and the papers upon Miller Zeiderman, LLP counsel for the Plaintiff via NYSCEF and Nicole DiGiacomo, Esq., Esq. Attorney for the Children via NYSCEFon or before _____, and shall be deemed good and sufficient service; and

**IT IS FURTHER HEREBY ORDERED** that service of responsive papers shall be served upon counsel for the Defendant, by _____on or before _____, seven (7) days before the return date of this motion in compliance with CPLR 2214(b).

Enter,

_____
HON. SHERRI L. EISENPRESS, A.J.S.C

2

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 239 of 533

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    INDEX NO.
NYSCEF DOC. NO. 188                                    RECEIVED NYSCEF: 05/20/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
-----------------------------------------------------------X
THOMAS FOGARTY,

                     Plaintiff,

    -against-

SAI MALENA JIMENEZ FOGARTY,

                   Defendant.
-----------------------------------------------------------X

IDV #721
Index Number 035547/2021

**AFFIRMATION IN
SUPPORT OF
EMERGENCY ORDER
TO SHOW CAUSE TO
DISQUALIFY
PRESIDING ACTING
SUPREMECOURT
JUSTICE**

JEANMARIE MARQUARDT, ESQ., an attorney duly licensed to practice law before the

Courts of the State of New York, affirms the truth of the following under penalty of perjury as

provided by the C.P.L.R.:

    1.    I am an Associate with TRIVELLA & FORTE, LLP, the attorneys for the

Defendant, SAI MALENA JIMENEZ FOGARTY ("Defendant"). I make this affirmation in

support of Trivella & Forte, LLP's Order to Show Cause pursuant to The New York Advisory

Committee on Judicial Ethics seeking the mandatory disqualification of the Hon. Sherri L.

Eisenpress from this case due to Lisa Zeiderman Esq., partner of Miller Zeiderman, LLP, ("MZ")

attorneys for the Plaintiff throwing a "Kick Off Fundraiser" ("the fundraiser") for Justice

Eisenpress's campaign for election to the Supreme Court of the 9th Judicial District in 2022, at her

own home in Garrison, New York. Such invitation, obtained directly from the campaign office, is

attached hereto as **Exhibit "A"**. We are also seeking the invalidation of each and every Order

and/or Decision, *ab initio*, since the date Justice Eisenpress's mandatory disqualification began,

1

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    INDEX NO.
NYSCEF DOC. NO. 188                                          RECEIVED NYSCEF: 05/20/2022

the date the invitations went out for said event on May 9, 2022.

2.       I affirm these facts on the basis of personal knowledge, files kept in the offices of Trivella & Forte, LLP, a review of the file on NYSCEF, emails and conversations with the Defendant and emails and conversation with Robert Sunshine, Esq., previous counsel for the Defendant.

3.       Briefly, as background, this Action for Divorce was initiated by the attorneys for the Plaintiff on September 28, 2021, by Summons and Complaint. Two (2) cross Family Offense matters were pending in Rockland County Family Court in or about that time.

3.       On November 17, 2022, the exact same date MZ requested a preliminary conference in this matter and filed for Court intervention, Lisa Zeiderman, Esq. personally, wrote a letter to the Rockland County Supreme Court Clerk requesting that the Family Court and Divorce matters be consolidated into the Integrated Domestic Violence ("IDV") Part where Justice Eisenpress presided (*see*, **Exhibit "B"**). This was, notwithstanding that the case in its entirety did not contain any necessary criminal charge to admit the divorce case to IDV and the fact that Family Court had already recommended and sent the matter over to IDV (**see, Exhibit " C" Transcript dated 1/4/22; pp. 8-10**). Ms. Zeiderman, even whet so far as to copy Justice Eisenpress herself, via email, which she apparently knew, although at the time Justice Eisenpress had nothing to do with the case and had no reason to be involved with MZ'S innocuous request that the case be improperly transferred to IDV.

4.       The request was of course granted, and the case was improperly consolidated to the IDV part with Justice Eisenpress presiding.

5.       On May 9, 2022, invitations were sent out via blast email for the fundraiser (*see*, **Exhibit "D" emails from campaign**). As is set forth in various Judicial Ethics Opinions annexed hereto as **Exhibit "E"** and will be set forth in my accompanying Memorandum of Law, at that

2

moment, Justice Eisenpress's mandatory disqualification began and all Orders and/or Decisions made on or after that date were void and unenforceable *ab initio* as the Justice became disqualified and without power to issue them.

Although such disqualification is subject to remittal, I must make clear that this firm is not remitting to Justice Eisenpress continuing under this obvious disqualification. During such qualification, the Court issued an Order *sua sponte* granting the Plaintiff sole legal and physical custody to MZ's client. There was no motion pending at the time, there was no reason for the change from presumptive joint legal custody to sole legal custody in MZ's client set forth in the *sua sponte* order and there is absolutely no record on which to appeal this order since it was done after a Microsoft Teams meeting of which there is no transcript. Issuance of such an Order during a mandatory disqualification is wholly outrageous. The process by which it was done lacks any scintilla of propriety or due process of law.

6.    Based upon the foregoing I ask that the relief requested herein be granted in its entirety.

7.    No application in any court of competent jurisdiction has been made for the relief requested herein.

Dated: White Plains, New York
       May 20, 2022

                                     Yours, etc.

                                     TRIVELLA & FORTE, LLP

                                     By: Jeanmarie Marquardt, Esq.
                                     *Attorneys for Defendant*
                                     1311 Mamaroneck Avenue, Suite 170
                                     White Plains, New York 10605
                                     (914) 949-9075

                                     3

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    INDEX NO.

NYSCEF DOC. NO. 189    RECEIVED NYSCEF: 05/20/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
----------------------------------------------------------------X
THOMAS FOGARTY,

                          Plaintiff,

    -against-

SAI MALENA JIMENEZ FOGARTY,

                          Defendant.

----------------------------------------------------------------X

IDV #721
Index Number 035547/2021


**THE DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
EMERGENCY ORDER TO SHOW CAUSE TO DISQUALIFY PRESIDING
ACTING SUPREME COURT JUSTICE**


TRIVELLA & FORTE, LLP
*Attorneys for the Defendant*
1311 Mamaroneck Avenue, Ste. 170
White Plains, New York 10605
(914) 949-9075
(914) 949-4752 (facsimile)

Jeanmarie A. Marquardt, Esq.

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM

NYSCEF DOC. NO. 189

RECEIVED NYSCEF: 05/20/2022

## Contents

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF THE CASE ........................................................................................... 1

LEGAL ARGUMENT ...................................................................................................... 1

CONCLUSION ................................................................................................................. 4

i

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    INDEX NO. 
NYSCEF DOC. NO. 189                                  RECEIVED NYSCEF: 05/20/2022

## TABLE OF AUTHORITIES

**Cases**
*City of New York v. Quadrozzi*, 189 A.D.3d 1344 [2d Dep't 2020]................................................. 3
NY Jud. Adv. Op. 18-35 (N.Y.Adv.Comm.Jud.Eth.), 2018 WL 4567879.................................... 2

**Other Authorities**
(NY Jud. Adv. Op. 09-245 (N.Y.Adv.Comm.Jud.Eth.), 2010 WL 8961116 ................................ 2
*Id.* ....................................................................................................................................................... 2
NY Jud. Adv. Op. 16-133 (N.Y.Adv.Comm.Jud.Eth.), 2016 WL 6914970.................................... 2

ii

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    INDEX NO.
NYSCEF DOC. NO. 189                                    RECEIVED NYSCEF: 05/20/2022

## STATEMENT OF THE CASE

This is a motion made by Emergency Order to Show Cause seeking the mandatory

disqualification of the Honorable Sherri L. Eisenpresss from this Action for Divorce and Family

Court matters pending in the Integrated Domestic Violence Part of the Rockland County Supreme

Court. This motion also seeks to void *ab initio* any and all decisions and/or orders made by the

Court since Justice Eisenpress became disqualified from ruling in this matter.

## STATEMENT OF FACTS

We respectfully refer the Court to my Affirmation in support of the extant motion for a full

recitation of the facts.

## LEGAL ARGUMENT

**I.    JUSTICE EISENPRESS HAS BEEN MANDITORILY DISQUALIFIED FROM**

**THIS MATTER SINCE MAY 9, 2022**

The facts herein cannot be disputed. Lisa Zeiderman, Esq. of Miller Zeiderman ("MZ")

is throwing a "Kick Off Campaign Fundraiser" for the Honorable Sheri L. Eisenpress on May

22, 2022. The invitations went out via blast email on May 9, 2022.

The law as well could not be clearer or more on point. The New York Advisory

Committee on Judicial Ethics has opined:

> A judge must always avoid even the appearance of impropriety (*see*
> 22 NYCRR 100.2) and must always act to promote public
> confidence in the judiciary's integrity and impartiality (*see* 22
> NYCRR 100.2[A]). A judge must therefore disqualify him/herself
> whenever his/her impartiality might reasonably be questioned (*see*
> 22 NYCRR 100.3[E][1]).

1

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    Page 246 of 533

NYSCEF DOC. NO. 189                                              RECEIVED NYSCEF: 05/20/2022

> Where an attorney has "organized a single fund-raiser for a judicial candidate running for re-election, the candidate, as a judge, should disqualify him/herself, subject to remittal, when that attorney (or his/her partners or associates) appears before the judge during the election campaign" (Opinion 09-245; *see also* Opinions 03-64; 01-07). In our view, this obligation does not commence until invitations to the fund-raiser have been sent to guests, and it ends on Election Day.[emphasis supplied] (NY Jud. Adv. Op. 18-35 (N.Y.Adv.Comm.Jud.Eth.), 2018 WL 4567879).

Accordingly, Justice Eisenpress had not a decision but an obligation to disqualify herself from this action on May 9, 2022, the date the invitations were sent by blast email. On that date, she was indeed disqualified and lost all authority to issue any decisions or orders in this case. The fact that she did not uphold her obligation does not change this result. Accordingly, any order or decision issued by Justice Eisenpress must be invalidated and rendered void, *ab initio*, if it were issued or rendered on or after May 9, 2022 (*see*, *Id.*).

The foregoing is not the only opinion of the Judicial Advisory Committee addressing this issue. In 2016, the Committee stated "Thus, where an attorney organizes a single fund-raiser for a judicial candidate, the judge is disqualified, subject to remittal, when the attorney appears before the judge during the campaign" (NY Jud. Adv. Op. 16-133 (N.Y.Adv.Comm.Jud.Eth.), 2016 WL 6914970).

In 2010, the Committee stated the same.

> The Committee also has advised that where an attorney organized a single fund-raiser for a judicial candidate running for re-election, the candidate, as a judge, should disqualify him/herself, subject to remittal, when that attorney (or his/her partners or associates) appears before the judge during the election campaign (*see* Opinions 03-64; 01-07 [Vol. XIX]) (NY Jud. Adv. Op. 09-245 (N.Y.Adv.Comm.Jud.Eth.), 2010 WL 8961116).

Although such disqualification is subject to remittal, I must make clear that this firm is not remitting to Justice Eisenpress continuing under this obvious disqualification. During such

2

Case 1:24-cv-08705-JLR     Document 1     Filed 11/15/24     Page 247 of 533

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM     INDEX NO.
NYSCEF DOC. NO. 189                                                    RECEIVED NYSCEF: 05/20/2022

disqualification, the Court issued an Order *sua sponte* granting the Plaintiff sole legal and physical

custody to MZ's client. There was no motion pending at the time, there was no reason set forth in

the *sua sponte* order for the change from presumptive joint legal custody to sole legal custody to

MZ's client (*see, City of New York v. Quadrozzi*, 189 A.D.3d 1344 [2d Dep't 2020]). Further,

there is absolutely no record on which to appeal this order since it was done after a Microsoft

Teams meeting of which there is no transcript. Issuance of such an Order during a mandatory

disqualification is wholly outrageous. The process by which it was done lacks any scintilla of

propriety or due process of law.

3

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    INDEX NO.

NYSCEF DOC. NO. 189    RECEIVED NYSCEF: 05/20/2022

## CONCLUSION

In accordance with the foregoing, the Defendant, respectfully urges this Court to exercise

its obligation to disqualify itself from this matter and deem any and all orders and or decisions

issued on or after May 9, 2022, immediately null and void *ab initio*.

Dated:    White Plains, New York
          May 20, 2022

                                        TRIVELLA & FORTE, LLP

                                        By: Jeanmarie Marquardt, Esq
                                        *Attorneys for Defendant*
                                        1311 Mamaroneck Avenue, Ste. 170
                                        White Plains, New York 10605
                                        Tel. No.: 914-949-9075

To:    Miller Zeiderman,,LLP
       *Attorneys for the Plaintiff*
       140 Grand Street 5th Floor
       White Plains, NY 10601

       Nicole DiGiacomo, Esq.
       *Attorney for the Children*
       3 East Evergreen Drive
       New City, NY 10956

4

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    Page 249 of 533

NYSCEF DOC. NO. 194    RECEIVED NYSCEF: 05/20/2022

A JUDGE MAY PRESIDE IN MATTERS INVOLVING AN..., NY Jud. Adv. Op....

---

NY Jud. Adv. Op. 16-133 (N.Y.Adv.Comm.Jud.Eth.), 2016 WL 6914970

New York Advisory Committee on Judicial Ethics

## A JUDGE MAY PRESIDE IN MATTERS INVOLVING AN ATTORNEY WHO HOSTED A SINGLE FUND-RAISER FOR THE JUDGE'S LAW CLERK'S ELECTION CAMPAIGN, BUT MUST INSULATE THE LAW CLERK AND DISCLOSE THE INSULATION DURING THE CAMPAIGN. THIS OBLIGATION ENDS ON ELECTION DAY.

Opinion 16-133
September 8, 2016

*1 **Rules:** Judiciary Law § 14; 22 NYCRR 100.2; 100.2(A); 100.3(E)(1); 100.3(E)(1)(a)-(f); Opinions 16-66; 15-196; 14-169; 08-152; 07-26; 03-64; 01-07; People v Moreno, 70 NY2d 403 (1987).

**Opinion:**

A judge whose law clerk is running for judicial office asks if he/she may preside in matters involving an attorney who hosts a single fund-raiser for the law clerk's campaign.

A judge must always avoid even the appearance of impropriety (see 22 NYCRR 100.2) and must always act in a manner that promotes public confidence in the judiciary's integrity and impartiality (see 22 NYCRR 100.2[A]). Thus, a judge must disqualify him/herself in any case where the judge's impartiality may reasonably be questioned (see 22 NYCRR 100.3[E][1]) or in any circumstance required by rule or law (see generally 22 NYCRR 100.3[E][1][a]-[f]; Judiciary Law § 14). If disqualification is not mandated under these objective standards, the judge "is the sole arbiter of recusal" (People v Moreno, 70 NY2d 403, 405 [1987]).

Where an attorney is involved in a judge's election campaign, the Committee has advised that "only 'active' conduct in support of a judicial campaign requires recusal" (Opinion 15-196, quoting 08-152). The extent of the judge's obligation "depends on the level of the [attorney's] involvement" in the campaign (Opinion 07-26). **Thus, where an attorney organizes a single fund-raiser for a judicial candidate, the judge is disqualified, subject to remittal, when the attorney appears before the judge during the campaign;** after the election, neither disclosure nor disqualification is required (see Opinions 03-64; **01-07** ["Once the campaign is concluded, the limited involvement in a discrete event early in the campaign should not give rise to a possible inference of partiality"]).

Here, the attorney is hosting a single fund-raiser for the law clerk, rather than the judge. Under these circumstances, a judge who concludes he/she can be fair and impartial in matters involving the attorney need not offer to recuse, but may instead insulate the law clerk to dispel any appearance of impropriety.

Thus, during the law clerk's campaign, the judge must insulate the law clerk from all cases involving the attorney and disclose the insulation. Because disclosure is mandatory during this period, the judge must disqualify him/herself if a party is appearing without counsel or the judge is unwilling or unable to make full disclosure (see e.g. Opinions 16-66; 14-169).

As the attorney has no ongoing leadership or fund-raising role in the law clerk's campaign, but is only hosting a single fund-raiser, the need for disclosure and insulation of the law clerk ends on Election Day (cf. **Opinions 03-64; 01-07**).

NY Jud. Adv. Op. 16-133 (N.Y.Adv.Comm.Jud.Eth.), 2016 WL 6914970

End of Document    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

(1) A JUDICIAL CANDIDATE MAY NOT PERMIT..., NY Jud. Adv. Op....

NY Jud. Adv. Op. 18-35 (N.Y.Adv.Comm.Jud.Eth.), 2018 WL 4567879

New York Advisory Committee on Judicial Ethics

**(1) A JUDICIAL CANDIDATE MAY NOT PERMIT ANOTHER PERSON TO PURCHASE A $2,000 TICKET TO A POLITICAL EVENT AND DONATE IT TO HIS/HER CAMPAIGN BUT MAY PERMIT HIS/HER CAMPAIGN COMMITTEE TO REQUEST ADMISSION FOR $250 EVEN THOUGH OTHERS MUST PAY $2,000. (2) A JUDGE'S OBLIGATION TO DISQUALIFY HIM/HERSELF FROM MATTERS INVOLVING AN ATTORNEY WHO HAS OFFERED TO HOST A SINGLE FUND-RAISER FOR THE JUDGE DOES NOT COMMENCE UNTIL INVITATIONS TO THE FUND-RAISER HAVE BEEN SENT OUT. ONCE THE INVITATIONS HAVE BEEN SENT, THE JUDGE IS DISQUALIFIED, SUBJECT TO REMITTAL, FROM ALL MATTERS INVOLVING THE ATTORNEY AND HIS/HER PARTNERS AND ASSOCIATES, DURING THE ELECTION CAMPAIGN. THIS OBLIGATION ENDS ON ELECTION DAY**

Opinion 18-35
March 29, 2018

**\*1** **Rules:** 22 NYCRR 100.2; 100.2(A); 100.3(E)(1); 100.5(A)(1)(c); 100.5(A)(1)(h); 100.5(A)(2); 100.5(A)(2)(v); 100.5(A)(4)(a)-(c); Opinions 13-60; 09-245; 06-80/06-81; 03-64; 01-07; 98-107; 92-97; 88-26.

<u>Opinion:</u>

A judge within his/her window period for election or re-election to judicial office would like to attend a political party fund-raiser where the ticket price is $2,000 per person.[1] The candidate asks if his/her campaign committee may accept the ticket as a gift or in-kind donation from "a relative (of their own independent volition)." The candidate further asks at what point he/she must recuse from matters involving a lawyer and his/her partners or associates, when the lawyer has offered to host a fund-raiser for the candidate's campaign.

**1. Proposed Gift of $2,000 Ticket**

In general, a judge or non-judge candidate for judicial office may personally participate in his/her own campaign for judicial office, subject to certain limitations (*see generally* 22 NYCRR 100.5[A][1][c]; 100.5[A][2]). For example, the candidate must not make a contribution to any other political candidate or any political organization (*see* 22 NYCRR 100.5[A][1][h]). However, during the applicable window period, a judicial candidate may attend a wide variety of political events or gatherings on behalf of his/her own candidacy, subject to certain limitations on the price and number of tickets if admission is charged (*see* 22 NYCRR 100.5[A][2][v]). In particular, the candidate may purchase no more than two tickets to a politically sponsored event, and the ticket price must not "exceed the proportionate cost" of the event (*id.*). A ticket price of $250 or less is deemed to be the proportionate cost of the function (*id.*).[2] In addition, the candidate must "encourage members of [his/her] family to adhere to the same standards of political conduct in support of the candidate as apply to the candidate" (22 NYCRR 100.5[A][4][a]) and "shall not authorize or knowingly permit any person to do for the candidate what [he/she] is prohibited from doing under this Part" (22 NYCRR 100.5[A][4][c]).

**\*2** We conclude that a judicial candidate may not evade the strict limitations on price and number of tickets for a political event by allowing a relative or other person to purchase the tickets and donate them to his/her campaign (*see* 22 NYCRR 100.5[A][4][a]-[c]). However, the candidate may attend this event for a price not exceeding $250 per ticket, even if the price per ticket for other attendees exceeds $250 (*see* 22 NYCRR 100.5[A][2][v]; Opinion 06-80/06-81). The candidate may authorize his/her campaign committee to request that he/she be permitted to attend at a price not exceeding $250 per ticket.

**2. Disqualification for an Attorney Who Hosts a Fund-Raiser**

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.                    1

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM       Page 251 of 533
INDEX NO.
NYSCEF DOC. NO. 194                                    RECEIVED NYSCEF: 05/20/2022

WHERE AN ATTORNEY'S PARTICIPATION IN A JUDGE'S..., NY Jud. Adv. Op....

NY Jud. Adv. Op. 09-245 (N.Y.Adv.Comm.Jud.Eth.), 2010 WL 8961116

New York Advisory Committee on Judicial Ethics

# WHERE AN ATTORNEY'S PARTICIPATION IN A JUDGE'S ELECTION CAMPAIGN IS MORE THAN MINIMAL, BUT NOT AT THE FORMAL LEADERSHIP LEVEL, THE JUDGE NEED NOT DISQUALIFY HIM/HERSELF WHEN THE ATTORNEY APPEARS IN THE JUDGE'S COURT IF THE JUDGE CAN BE IMPARTIAL. HOWEVER, FOR TWO YEARS AFTER THE ELECTION, THE JUDGE SHOULD DISCLOSE THE NATURE AND EXTENT OF THE ATTORNEY'S INVOLVEMENT IN THE JUDGE'S CAMPAIGN WHEN THE ATTORNEY APPEARS. IF A PARTY OBJECTS TO THE JUDGE'S CONTINUED INVOLVEMENT IN THE MATTER, DISQUALIFICATION IS LEFT TO THE JUDGE'S DISCRETION

Opinion 09-245
January 27, 2010

\*1 Rules: 22 NYCRR 100.2; 100.2(A); 100.3(E)(1); Opinions 08-152; 06-54; 03-64; 01-07 (Vol. XIX); 97-129 (Vol. XVI); *People v Moreno*, 70 NY2d 403 (1987).

Opinion:

A newly elected judge asks whether he/she may preside over matters in which an attorney who "participated in [the judge's] campaign on a limited basis" appears and whether he/she must disclose that the attorney did so. The judge explains that the attorney in question was not an officer on the judge's campaign committee and did not maintain a continuing fund-raising or other significant role throughout the course of the campaign. Instead, the attorney co-hosted a single fund-raiser shortly before the election and "at the time of this fund-raiser, [the attorney] made a statement supporting [the judge's] candidacy." The attorney's assistance with organizing the fund-raiser included helping to compile a list of potential contributors, and "attend[ing] approximately three to four campaign committee meetings in which general campaign strategy was discussed and offer[ing] [his/her] insight on judicial campaign ethics issues." The judge notes that he/she is confident in his/her ability to remain impartial in any proceeding in which the attorney appears.

A judge must avoid impropriety and its appearance in all the judge's activities (*see* 22 NYCRR 100.2), and must always act to promote public confidence in the judiciary's integrity and impartiality(*see* 22 NYCRR 100.2 [A]). A judge must therefore disqualify him/herself whenever his/her impartiality might reasonably be questioned (*see* 22 NYCRR 100.3[E][1]).

In prior Opinions, the Committee has concluded that an attorney's participation in a judicial election campaign may range from very minimal levels of involvement, that do not even require disclosure, to very active conduct in support of a judge's candidacy which warrants disqualification when the attorney appears before the judge. As noted in Opinion 08-152:
The Committee has previously determined that only "active" conduct in support of a judicial campaign requires recusal (Opinions 07-26; 04-106; 03-64). Typically, such active conduct involves a leadership role in the candidate's campaign committee, such as "campaign manager, campaign coordinator, finance chair or treasurer" (Opinion 02-108). By contrast, the fact that a lawyer merely attends a judicial candidate's event (Opinion 04-106), that a lawyer "voluntarily submitted [his/her] name[] to be used by the committee" (Opinion 90-182 [Vol. VI]), or that a lawyer obtains signatures on a petition (see Opinion 90-196 [Vol. VI]) would not, standing alone, trigger any recusal obligations on the candidate's part, as long as the candidate believes he/she can be fair and impartial (Opinion 07-26; 22 NYCRR 100.3[E]).

\*2 The Committee also has advised that where an attorney organized a single fund-raiser for a judicial candidate running for re-election, the candidate, as a judge, should disqualify him/herself, subject to remittal, when that attorney (or his/her partners or associates) appears before the judge during the election campaign (*see* Opinions 03-64; 01-07 [Vol. XIX]). However, after the election, neither disclosure nor disqualification is required when the attorney

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    
Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24
NYSCEF DOC. NO. 194                                    RECEIVED NYSCEF: 05/20/2022

(1) A JUDICIAL CANDIDATE MAY NOT PERMIT..., NY Jud. Adv. Op....

A judge must always avoid even the appearance of impropriety (*see* 22 NYCRR 100.2) and must always act to promote public confidence in the judiciary's integrity and impartiality (*see* 22 NYCRR 100.2[A]). A judge must therefore disqualify him/herself whenever his/her impartiality might reasonably be questioned (*see* 22 NYCRR 100.3[E][1]).

Where an attorney has "organized a single fund-raiser for a judicial candidate running for re-election, the candidate, as a judge, should disqualify him/herself, subject to remittal, when that attorney (or his/her partners or associates) appears before the judge during the election campaign" (Opinion 09-245; *see also* Opinions 03-64; 01-07). In our view, this obligation does not commence until invitations to the fund-raiser have been sent to guests, and it ends on Election Day.

Footnotes

1      The inquiring candidate does not suggest that $2,000 is the actual proportionate cost of the dinner (*cf.* Opinion 98-107 [suggesting, before adoption of the $250 threshold, that "a payment of $3,000 for a ticket" to a political fund-raising dinner "can only be regarded as an impermissible political contribution"])

2      We have advised that if there are multiple prices for tickets to a political event, a candidate "must purchase those with the lowest price" (Opinion 13-60; quoting Opinion 92-97; *see also* Opinion 88-26 [noting that a judge may not make a political contribution by purchasing a more expensive "'sponsor" or "patron" level ticket to a political dinner]).

NY Jud. Adv. Op. 18-35 (N.Y.Adv.Comm.Jud.Eth.), 2018 WL 4567879

End of Document                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM
NYSCEF DOC. NO. 194

WHERE AN ATTORNEY'S PARTICIPATION IN A JUDGE'S..., NY Jud. Adv. Op....

(or his/her partners or associates) appears in the judge's court (*id.*).

Here, however, the attorney's level of involvement as described falls between the levels previously addressed by the Committee. The attorney did more than simply organize a single fund-raiser in that he/she also attended and significantly participated in three or four campaign committee meetings (*compare* Opinions 03-64; 01-07 [Vol. XIX]). Nonetheless, the attorney did not serve in a formal leadership position during the campaign and did not continuously engage in fund-raising during the judge's campaign, which would warrant disqualification for a two-year period after the election (*compare* Opinions 06-54; 97-129 [Vol. XVI]).

It is now the Committee's view that, where the nature of an attorney's involvement in a judge's election campaign falls between the levels previously addressed by the Committee, a judge should resolve any doubt as to how to proceed in favor of disclosing an attorney's involvement in the judge's election campaign. However, whether disqualification is warranted is left to the individual judge to determine, in his/her discretion.

Accordingly, after a candidate for judicial office is elected and, assuming the judge can be impartial, the judge need not disqualify him/herself when an attorney who undertook more responsibility than simply organizing a fund-raiser, but never assumed any formal leadership role or continuing fund-raising role in the judge's election campaign, appears in the judge's court. However, for two years after the election, the judge should disclose the nature and extent of the attorney's involvement in the judge's campaign whenever the attorney appears in the judge's court. If a party objects to the judge's continued involvement in the matter, disqualification is left to the judge's discretion (*see People v Moreno*, 70 NY2d 403 [1987] [where disqualification is not mandatory, it is a matter of discretion, left to the judge's personal conscience]).

NY Jud. Adv. Op. 09-245 (N.Y.Adv.Comm.Jud.Eth.), 2010 WL 8961116

End of Document                                             © 2022 Thomson Reuters. No claim to original U.S. Government Works.

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    INDEX NO.
NYSCEF DOC. NO. 194                                      RECEIVED NYSCEF: 05/20/2022

# EXHIBIT E

**FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM**

NYSCEF DOC. NO. 194

RECEIVED NYSCEF: 05/20/2022

A JUDGE MAY PRESIDE IN MATTERS INVOLVING AN..., NY Jud. Adv. Op....

---

NY Jud. Adv. Op. 16-133 (N.Y.Adv.Comm.Jud.Eth.), 2016 WL 6914970

New York Advisory Committee on Judicial Ethics

## A JUDGE MAY PRESIDE IN MATTERS INVOLVING AN ATTORNEY WHO HOSTED A SINGLE FUND-RAISER FOR THE JUDGE'S LAW CLERK'S ELECTION CAMPAIGN, BUT MUST INSULATE THE LAW CLERK AND DISCLOSE THE INSULATION DURING THE CAMPAIGN. THIS OBLIGATION ENDS ON ELECTION DAY.

Opinion 16-133
September 8, 2016

**\*1** Rules: Judiciary Law § 14; 22 NYCRR 100.2; 100.2(A); 100.3(E)(1); 100.3(E)(1)(a)-(f); Opinions 16-66; 15-196; 14-169; 08-152; 07-26; 03-64; 01-07; People v Moreno, 70 NY2d 403 (1987).

Opinion:

A judge whose law clerk is running for judicial office asks if he/she may preside in matters involving an attorney who hosts a single fund-raiser for the law clerk's campaign.

A judge must always avoid even the appearance of impropriety (see 22 NYCRR 100.2) and must always act in a manner that promotes public confidence in the judiciary's integrity and impartiality (see 22 NYCRR 100.2[A]). Thus, a judge must disqualify him/herself in any case where the judge's impartiality may reasonably be questioned (see 22 NYCRR 100.3[E][1]) or in any circumstance required by rule or law (see generally 22 NYCRR 100.3[E][1][a]-[f]; Judiciary Law § 14). If disqualification is not mandated under these objective standards, the judge "is the sole arbiter of recusal" (People v Moreno, 70 NY2d 403, 405 [1987]).

Where an attorney is involved in a judge's election campaign, the Committee has advised that "only 'active' conduct in support of a judicial campaign requires recusal" (Opinion 15-196, quoting 08-152). The extent of the judge's obligation "depends on the level of the [attorney's] involvement" in the campaign (Opinion 07-26). **Thus, where an attorney organizes a single fund-raiser for a judicial candidate, the judge is disqualified, subject to remittal, when the attorney appears before the judge during the campaign;** after the election, neither disclosure nor disqualification is required (see Opinions 03-64; 01-07 ["Once the campaign is concluded, the limited involvement in a discrete event early in the campaign should not give rise to a possible inference of partiality"]).

Here, the attorney is hosting a single fund-raiser for the law clerk, rather than the judge. Under these circumstances, a judge who concludes he/she can be fair and impartial in matters involving the attorney need not offer to recuse, but may instead insulate the law clerk to dispel any appearance of impropriety.

Thus, during the law clerk's campaign, the judge must insulate the law clerk from all cases involving the attorney and disclose the insulation. Because disclosure is mandatory during this period, the judge must disqualify him/herself if a party is appearing without counsel or the judge is unwilling or unable to make full disclosure (see e.g. Opinions 16-66; 14-169).

As the attorney has no ongoing leadership or fund-raising role in the law clerk's campaign, but is only hosting a single fund-raiser, the need for disclosure and insulation of the law clerk ends on Election Day (cf. **Opinions 03-64; 01-07**).

NY Jud. Adv. Op. 16-133 (N.Y.Adv.Comm.Jud.Eth.), 2016 WL 6914970

End of Document    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM
NYSCEF DOC. NO. 194

RECEIVED NYSCEF: 05/20/2022

Page 256 of 532

Case 1:24-cv-08705-JLR    Document 1-1    Filed 11/15/24

(1) A JUDICIAL CANDIDATE MAY NOT PERMIT..., NY Jud. Adv. Op....

NY Jud. Adv. Op. 18-35 (N.Y.Adv.Comm.Jud.Eth.), 2018 WL 4567879

New York Advisory Committee on Judicial Ethics

**(1) A JUDICIAL CANDIDATE MAY NOT PERMIT ANOTHER PERSON TO PURCHASE A $2,000 TICKET TO A POLITICAL EVENT AND DONATE IT TO HIS/HER CAMPAIGN BUT MAY PERMIT HIS/HER CAMPAIGN COMMITTEE TO REQUEST ADMISSION FOR $250 EVEN THOUGH OTHERS MUST PAY $2,000. (2) A JUDGE'S OBLIGATION TO DISQUALIFY HIM/HERSELF FROM MATTERS INVOLVING AN ATTORNEY WHO HAS OFFERED TO HOST A SINGLE FUND-RAISER FOR THE JUDGE DOES NOT COMMENCE UNTIL INVITATIONS TO THE FUND-RAISER HAVE BEEN SENT OUT. ONCE THE INVITATIONS HAVE BEEN SENT, THE JUDGE IS DISQUALIFIED, SUBJECT TO REMITTAL, FROM ALL MATTERS INVOLVING THE ATTORNEY AND HIS/HER PARTNERS AND ASSOCIATES, DURING THE ELECTION CAMPAIGN. THIS OBLIGATION ENDS ON ELECTION DAY**

Opinion 18-35
March 29, 2018

*1 Rules: 22 NYCRR 100.2; 100.2(A); 100.3(E)(1); 100.5(A)(1)(c); 100.5(A)(1)(h); 100.5(A)(2); 100.5(A)(2)(v); 100.5(A)(4)(a)-(c); Opinions 13-60; 09-245; 06-80/06-81; 03-64; 01-07; 98-107; 92-97; 88-26.

Opinion:

A judge within his/her window period for election or re-election to judicial office would like to attend a political party fund-raiser where the ticket price is $2,000 per person.[1] The candidate asks if his/her campaign committee may accept the ticket as a gift or in-kind donation from "a relative (of their own independent volition)." The candidate further asks at what point he/she must recuse from matters involving a lawyer and his/her partners or associates, when the lawyer has offered to host a fund-raiser for the candidate's campaign.

**1. Proposed Gift of $2,000 Ticket**

In general, a judge or non-judge candidate for judicial office may personally participate in his/her own campaign for judicial office, subject to certain limitations (*see generally* 22 NYCRR 100.5[A][1][c]; 100.5[A][2]). For example, the candidate must not make a contribution to any other political candidate or any political organization (*see* 22 NYCRR 100.5[A][1][h]). However, during the applicable window period, a judicial candidate may attend a wide variety of political events or gatherings on behalf of his/her own candidacy, subject to certain limitations on the price and number of tickets if admission is charged (*see* 22 NYCRR 100.5[A][2][v]). In particular, the candidate may purchase no more than two tickets to a politically sponsored event, and the ticket price must not "exceed the proportionate cost" of the event (*id.*). A ticket price of $250 or less is deemed to be the proportionate cost of the function (*id.*).[2] In addition, the candidate must "encourage members of [his/her] family to adhere to the same standards of political conduct in support of the candidate as apply to the candidate" (22 NYCRR 100.5[A][4][a]) and "shall not authorize or knowingly permit any person to do for the candidate what [he/she] is prohibited from doing under this Part" (22 NYCRR 100.5[A][4][c]).

*2 We conclude that a judicial candidate may not evade the strict limitations on price and number of tickets for a political event by allowing a relative or other person to purchase the tickets and donate them to his/her campaign (*see* 22 NYCRR 100.5[A][4][a]-[c]). However, the candidate may attend this event for a price not exceeding $250 per ticket, even if the price per ticket for other attendees exceeds $250 (*see* 22 NYCRR 100.5[A][2][v]; Opinion 06-80/06-81). The candidate may authorize his/her campaign committee to request that he/she be permitted to attend at a price not exceeding $250 per ticket.

**2. Disqualification for an Attorney Who Hosts a Fund-Raiser**

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    Page 257 of 532
NYSCEF DOC. NO. 194                                          RECEIVED NYSCEF: 05/20/2022

(1) A JUDICIAL CANDIDATE MAY NOT PERMIT..., NY Jud. Adv. Op....

A judge must always avoid even the appearance of impropriety (*see* 22 NYCRR 100.2) and must always act to promote public confidence in the judiciary's integrity and impartiality (*see* 22 NYCRR 100.2[A]). A judge must therefore disqualify him/herself whenever his/her impartiality might reasonably be questioned (*see* 22 NYCRR 100.3[E][1]).

Where an attorney has "organized a single fund-raiser for a judicial candidate running for re-election, the candidate, as a judge, should disqualify him/herself, subject to remittal, when that attorney (or his/her partners or associates) appears before the judge during the election campaign" (Opinion 09-245; *see also* Opinions 03-64; 01-07). In our view, this obligation does not commence until invitations to the fund-raiser have been sent to guests, and it ends on Election Day.

Footnotes

1    The inquiring candidate does not suggest that $2,000 is the actual proportionate cost of the dinner (*cf.* Opinion 98-107 [suggesting, before adoption of the $250 threshold, that "a payment of $3,000 for a ticket" to a political fund-raising dinner "can only be regarded as an impermissible political contribution"])

2    We have advised that if there are multiple prices for tickets to a political event, a candidate "must purchase those with the lowest price" (Opinion 13-60; quoting Opinion 92-97; *see also* Opinion 88-26 [noting that a judge may not make a political contribution by purchasing a more expensive ""sponsor" or "patron" level ticket to a political dinner]).

NY Jud. Adv. Op. 18-35 (N.Y.Adv.Comm.Jud.Eth.), 2018 WL 4567879

End of Document                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-08705-JLR   Document 1-2   Filed 11/15/24   Page 258 of 538

WHERE AN ATTORNEY'S PARTICIPATION IN A JUDGE'S..., NY Jud. Adv. Op....

NY Jud. Adv. Op. 09-245 (N.Y.Adv.Comm.Jud.Eth.), 2010 WL 8961116

New York Advisory Committee on Judicial Ethics

## WHERE AN ATTORNEY'S PARTICIPATION IN A JUDGE'S ELECTION CAMPAIGN IS MORE THAN MINIMAL, BUT NOT AT THE FORMAL LEADERSHIP LEVEL, THE JUDGE NEED NOT DISQUALIFY HIM/HERSELF WHEN THE ATTORNEY APPEARS IN THE JUDGE'S COURT IF THE JUDGE CAN BE IMPARTIAL. HOWEVER, FOR TWO YEARS AFTER THE ELECTION, THE JUDGE SHOULD DISCLOSE THE NATURE AND EXTENT OF THE ATTORNEY'S INVOLVEMENT IN THE JUDGE'S CAMPAIGN WHEN THE ATTORNEY APPEARS. IF A PARTY OBJECTS TO THE JUDGE'S CONTINUED INVOLVEMENT IN THE MATTER, DISQUALIFICATION IS LEFT TO THE JUDGE'S DISCRETION

Opinion 09-245
January 27, 2010

*1 Rules: 22 NYCRR 100.2; 100.2(A); 100.3(B)(1); Opinions 08-152; 06-54; 03-64; 01-07 (Vol. XIX); 97-129 (Vol. XVI); *People v Moreno*, 70 NY2d 403 (1987).

Opinion:

A newly elected judge asks whether he/she may preside over matters in which an attorney who "participated in [the judge's] campaign on a limited basis" appears and whether he/she must disclose that the attorney did so. The judge explains that the attorney in question was not an officer on the judge's campaign committee and did not maintain a continuing fund-raising or other significant role throughout the course of the campaign. Instead, the attorney co-hosted a single fund-raiser shortly before the election and "at the time of this fund-raiser, [the attorney] made a statement supporting [the judge's] candidacy." The attorney's assistance with organizing the fund-raiser included helping to compile a list of potential contributors, and "attend[ing] approximately three to four campaign committee meetings in which general campaign strategy was discussed and offer[ing] [his/her] insight on judicial campaign ethics issues." The judge notes that he/she is confident in his/her ability to remain impartial in any proceeding in which the attorney appears.

A judge must avoid impropriety and its appearance in all the judge's activities (*see* 22 NYCRR 100.2), and must always act to promote public confidence in the judiciary's integrity and impartiality(*see* 22 NYCRR 100.2 [A]). A judge must therefore disqualify him/herself whenever his/her impartiality might reasonably be questioned (*see* 22 NYCRR 100.3[E][1]).

In prior Opinions, the Committee has concluded that an attorney's participation in a judicial election campaign may range from very minimal levels of involvement, that do not even require disclosure, to very active conduct in support of a judge's candidacy which warrants disqualification when the attorney appears before the judge. As noted in Opinion 08-152:
The Committee has previously determined that only "active" conduct in support of a judicial campaign requires recusal (Opinions 07-26; 04-106; 03-64). Typically, such active conduct involves a leadership role in the candidate's campaign committee, such as "campaign manager, campaign coordinator, finance chair or treasurer" (Opinion 02-108). By contrast, the fact that a lawyer merely attends a judicial candidate's event (Opinion 04-106), that a lawyer "voluntarily submitted [his/her] name[] to be used by the committee" (Opinion 90-182 [Vol. VI]), or that a lawyer obtains signatures on a petition (see Opinion 90-196 [Vol. VI]) would not, standing alone, trigger any recusal obligations on the candidate's part, as long as the candidate believes he/she can be fair and impartial (Opinion 07-26; 22 NYCRR 100.3[E]).

*2 The Committee also has advised that where an attorney organized a single fund-raiser for a judicial candidate running for re-election, the candidate, as a judge, should disqualify him/herself, subject to remittal, when that attorney (or his/her partners or associates) appears before the judge during the election campaign (*see* Opinions 03-64; 01-07 [Vol. XIX]). However, after the election, neither disclosure nor disqualification is required when the attorney

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM          Page 259 of 533.
NYSCEF DOC. NO. 194                                RECEIVED NYSCEF: 05/20/2022



WHERE AN ATTORNEY'S PARTICIPATION IN A JUDGE'S..., NY Jud. Adv. Op....

(or his/her partners or associates) appears in the judge's court (*id.*).

Here, however, the attorney's level of involvement as described falls between the levels previously addressed by the Committee. The attorney did more than simply organize a single fund-raiser in that he/she also attended and significantly participated in three or four campaign committee meetings (*compare* **Opinions 03-64; 01-07** [Vol. XIX]). Nonetheless, the attorney did not serve in a formal leadership position during the campaign and did not continuously engage in fund-raising during the judge's campaign, which would warrant disqualification for a two-year period after the election (*compare* Opinions 06-54; 97-129 [Vol. XVI]).

It is now the Committee's view that, where the nature of an attorney's involvement in a judge's election campaign falls between the levels previously addressed by the Committee, a judge should resolve any doubt as to how to proceed in favor of disclosing an attorney's involvement in the judge's election campaign. However, whether disqualification is warranted is left to the individual judge to determine, in his/her discretion.

Accordingly, after a candidate for judicial office is elected and, assuming the judge can be impartial, the judge need not disqualify him/herself when an attorney who undertook more responsibility than simply organizing a fund-raiser, but never assumed any formal leadership role or continuing fund-raising role in the judge's election campaign, appears in the judge's court. However, for two years after the election, the judge should disclose the nature and extent of the attorney's involvement in the judge's campaign whenever the attorney appears in the judge's court. If a party objects to the judge's continued involvement in the matter, disqualification is left to the judge's discretion (*see People v Moreno*, 70 NY2d 403 [1987] [where disqualification is not mandatory, it is a matter of discretion, left to the judge's personal conscience]).

NY Jud. Adv. Op. 09-245 (N.Y.Adv.Comm.Jud.Eth.), 2010 WL 8961116

End of Document                      © 2022 Thomson Reuters. No claim to original U.S. Government Works.

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM

NYSCEF DOC. NO. 194

RECEIVED NYSCEF: 05/20/2022

# EXHIBIT E

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:55 PM    Page 261 of 533

NYSCEF DOC. NO. 194                                         RECEIVED NYSCEF: 05/20/2022



A JUDGE MAY PRESIDE IN MATTERS INVOLVING AN..., NY Jud. Adv. Op....

NY Jud. Adv. Op. 16-133 (N.Y.Adv.Comm.Jud.Eth.), 2016 WL 6914970

New York Advisory Committee on Judicial Ethics

## A JUDGE MAY PRESIDE IN MATTERS INVOLVING AN ATTORNEY WHO HOSTED A SINGLE FUND-RAISER FOR THE JUDGE'S LAW CLERK'S ELECTION CAMPAIGN, BUT MUST INSULATE THE LAW CLERK AND DISCLOSE THE INSULATION DURING THE CAMPAIGN. THIS OBLIGATION ENDS ON ELECTION DAY.

Opinion 16-133
September 8, 2016

**\*1** Rules: Judiciary Law § 14; 22 NYCRR 100.2; 100.2(A); 100.3(E)(1); 100.3(E)(1)(a)-(f); Opinions 16-66; 15-196; 14-169; 08-152; 07-26; 03-64; 01-07; People v Moreno, 70 NY2d 403 (1987).

Opinion:

A judge whose law clerk is running for judicial office asks if he/she may preside in matters involving an attorney who hosts a single fund-raiser for the law clerk's campaign.

A judge must always avoid even the appearance of impropriety (see 22 NYCRR 100.2) and must always act in a manner that promotes public confidence in the judiciary's integrity and impartiality (see 22 NYCRR 100.2[A]). Thus, a judge must disqualify him/herself in any case where the judge's impartiality may reasonably be questioned (see 22 NYCRR 100.3[E][1]) or in any circumstance required by rule or law (see generally 22 NYCRR 100.3[E][1][a]-[f]; Judiciary Law § 14). If disqualification is not mandated under these objective standards, the judge "is the sole arbiter of recusal" (People v Moreno, 70 NY2d 403, 405 [1987]).

Where an attorney is involved in a judge's election campaign, the Committee has advised that "only 'active' conduct in support of a judicial campaign requires recusal" (Opinion 15-196, quoting 08-152). The extent of the judge's obligation "depends on the level of the [attorney's] involvement" in the campaign (Opinion 07-26). **Thus, where an attorney organizes a single fund-raiser for a judicial candidate, the judge is disqualified, subject to remittal, when the attorney appears before the judge during the campaign;** after the election, neither disclosure nor disqualification is required (see **Opinions 03-64; 01-07** ["Once the campaign is concluded, the limited involvement in a discrete event early in the campaign should not give rise to a possible inference of partiality"]).

Here, the attorney is hosting a single fund-raiser for the law clerk, rather than the judge. Under these circumstances, a judge who concludes he/she can be fair and impartial in matters involving the attorney need not offer to recuse, but may instead insulate the law clerk to dispel any appearance of impropriety.

Thus, during the law clerk's campaign, the judge must insulate the law clerk from all cases involving the attorney and disclose the insulation. Because disclosure is mandatory during this period, the judge must disqualify him/herself if a party is appearing without counsel or the judge is unwilling or unable to make full disclosure (see e.g. Opinions 16-66; 14-169).

As the attorney has no ongoing leadership or fund-raising role in the law clerk's campaign, but is only hosting a single fund-raiser, the need for disclosure and insulation of the law clerk ends on Election Day (cf. **Opinions 03-64; 01-07**).

NY Jud. Adv. Op. 16-133 (N.Y.Adv.Comm.Jud.Eth.), 2016 WL 6914970

End of Document                          © 2022 Thomson Reuters. No claim to original U.S. Government Works.

FILED: ROCKLAND COUNTY CLERK 05/20/2022 03:51 PM    Page 262 of 532
NYSCEF DOC. NO. 194                                          RECEIVED NYSCEF: 05/20/2022



(1) A JUDICIAL CANDIDATE MAY NOT PERMIT..., NY Jud. Adv. Op....

NY Jud. Adv. Op. 18-35 (N.Y.Adv.Comm.Jud.Eth.), 2018 WL 4567879

New York Advisory Committee on Judicial Ethics

**(1) A JUDICIAL CANDIDATE MAY NOT PERMIT ANOTHER PERSON TO PURCHASE A $2,000 TICKET TO A POLITICAL EVENT AND DONATE IT TO HIS/HER CAMPAIGN BUT MAY PERMIT HIS/HER CAMPAIGN COMMITTEE TO REQUEST ADMISSION FOR $250 EVEN THOUGH OTHERS MUST PAY $2,000. (2) A JUDGE'S OBLIGATION TO DISQUALIFY HIM/HERSELF FROM MATTERS INVOLVING AN ATTORNEY WHO HAS OFFERED TO HOST A SINGLE FUND-RAISER FOR THE JUDGE DOES NOT COMMENCE UNTIL INVITATIONS TO THE FUND-RAISER HAVE BEEN SENT OUT. ONCE THE INVITATIONS HAVE BEEN SENT, THE JUDGE IS DISQUALIFIED, SUBJECT TO REMITTAL, FROM ALL MATTERS INVOLVING THE ATTORNEY AND HIS/HER PARTNERS AND ASSOCIATES, DURING THE ELECTION CAMPAIGN. THIS OBLIGATION ENDS ON ELECTION DAY**

Opinion 18-35
March 29, 2018

\*1 <u>Rules</u>: 22 NYCRR 100.2; 100.2(A); 100.3(E)(1); 100.5(A)(1)(c); 100.5(A)(1)(h); 100.5(A)(2); 100.5(A)(2)(v); 100.5(A)(4)(a)(a)-(c); Opinions 13-60; 09-245; 06-80/06-81; 03-64; 01-07; 98-107; 92-97; 88-26.

<u>Opinion</u>:

A judge within his/her window period for election or re-election to judicial office would like to attend a political party fund-raiser where the ticket price is $2,000 per person.[1] The candidate asks if his/her campaign committee may accept the ticket as a gift or in-kind donation from "a relative (of their own independent volition)." The candidate further asks at what point he/she must recuse from matters involving a lawyer and his/her partners or associates, when the lawyer has offered to host a fund-raiser for the candidate's campaign.

**1. Proposed Gift of $2,000 Ticket**

In general, a judge or non-judge candidate for judicial office may personally participate in his/her own campaign for judicial office, subject to certain limitations (*see generally* 22 NYCRR 100.5[A][1][c]; 100.5[A][2]). For example, the candidate must not make a contribution to any other political candidate or any political organization (*see* 22 NYCRR 100.5[A][1][h]). However, during the applicable window period, a judicial candidate may attend a wide variety of political events or gatherings on behalf of his/her own candidacy, subject to certain limitations on the price and number of tickets if admission is charged (*see* 22 NYCRR 100.5[A][2][v]). In particular, the candidate may purchase no more than two tickets to a politically sponsored event, and the ticket price must not "exceed the proportionate cost" of the event (*id.*). A ticket price of $250 or less is deemed to be the proportionate cost of the function (*id.*).[2] In addition, the candidate must "encourage members of [his/her] family to adhere to the same standards of political conduct in support of the candidate as apply to the candidate" (22 NYCRR 100.5[A][4][a]) and "shall not authorize or knowingly permit any person to do for the candidate what [he/she] is prohibited from doing under this Part" (22 NYCRR 100.5[A][4][c]).

\*2 We conclude that a judicial candidate may not evade the strict limitations on price and number of tickets for a political event by allowing a relative or other person to purchase the tickets and donate them to his/her campaign (*see* 22 NYCRR 100.5[A][4]-[c]). However, the candidate may attend this event for a price not exceeding $250 per ticket, even if the price per ticket for other attendees exceeds $250 (*see* 22 NYCRR 100.5[A][2][v]; Opinion 06-80/06-81). The candidate may authorize his/her campaign committee to request that he/she be permitted to attend at a price not exceeding $250 per ticket.

**2. Disqualification for an Attorney Who Hosts a Fund-Raiser**

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.                    1

(1) A JUDICIAL CANDIDATE MAY NOT PERMIT..., NY Jud. Adv. Op....

A judge must always avoid even the appearance of impropriety (*see* 22 NYCRR 100.2) and must always act to promote public confidence in the judiciary's integrity and impartiality (*see* 22 NYCRR 100.2[A]). A judge must therefore disqualify him/herself whenever his/her impartiality might reasonably be questioned (*see* 22 NYCRR 100.3[E][1]).

**Where an attorney has "organized a single fund-raiser for a judicial candidate running for re-election, the candidate, as a judge, should disqualify him/herself, subject to remittal, when that attorney (or his/her partners or associates) appears before the judge during the election campaign" (Opinion 09-245; *see also* Opinions 03-64; 01-07). In our view, this obligation does not commence until invitations to the fund-raiser have been sent to guests, and it ends on Election Day.**

Footnotes

1    The inquiring candidate does not suggest that $2,000 is the actual proportionate cost of the dinner (*cf.* Opinion 98-107 [suggesting, before adoption of the $250 threshold, that "a payment of $3,000 for a ticket" to a political fund-raising dinner "can only be regarded as an impermissible political contribution"])

2    We have advised that if there are multiple prices for tickets to a political event, a candidate "must purchase those with the lowest price" (Opinion 13-60; quoting Opinion 92-97; *see also* Opinion 88-26 [noting that a judge may not make a political contribution by purchasing a more expensive ""sponsor" or "patron" level ticket to a political dinner]).

NY Jud. Adv. Op. 18-35 (N.Y.Adv.Comm.Jud.Eth.), 2018 WL 4567879

End of Document                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

8

### Summary of ADA Violations by Judge Zugibe

On July 28, 2023, I was diagnosed with a severe form of Post Traumatic Stress Disorder (PTSD) by Dr. Slutzsky, a NY Licensed psychologist who has been practicing for 39 years. This this diagnosis came following directly experiencing a serious of traumatic events that include medical trauma and emotional, physical, and sexual trauma inflicted on me by my husband, Thomas Fogarty. As a result on August 4, 2023, I requested and was granted seven federal ADA accommodations to ensure that despite my disability, I would have equal access to justice and could fully participate in the legal process. My ATA accommodations are very important because it would allow effective communication, support decision-making, allow compliance with legal obligation and most importantly promote fairness in my trial and justice in the legal system.

Judge Zugibe has violated all seven of my ADA accommodations on numerous occasions, including on the very day they were granted. On January 19, 2024, I requested that he cease these violations and informed him that I would file a formal complaint if the issue persisted. This request appeared to exacerbate his antagonistic behavior, leading to an even more disrespectful and hostile demeanor.

I have never experienced such egregious treatment and disrespect in a professional setting. Judge Zugibe's behavior not only constitutes a violation of my ADA accommodations but is also overtly abusive. My attorney stated on the record that both she and I are treated as second-class citizens in his courtroom. Furthermore, she is instructed to sit down and be quiet, exacerbating the situation.

The hostility in the courtroom reached such a level that after Judge Zugibe looked at the bailiff, she was placed her hand over her gun holster, an intimidation tactic towards my black attorney and myself—the only two Black individuals present. This created an extremely distressing and petrifying environment, which ultimately contributed to my hospitalization with a gastrointestinal hemorrhage from bleeding ulcers. My physician has stated in writing that this medical condition is directly related to the stress induced by these legal proceedings.

Additionally, Judge Zugibe denied my ADA accommodation approved five-minute break when I was experiencing difficulty breathing and chest pains. Despite the urgency of the situation, during which a bailiff called 911 and I was rushed to the hospital via ambulance and admitted to the hospital. My ADA Accommodation for CART services for hearing access was approved, however I was denied the service, depriving me of the ability to hear the proceedings during over twenty court appearances.

Judge Zeal has not only violated my ADA Accommodation but in addition, has violated my Human Rights, Due Process, and Civil Rights. He has a significant bias against me as a woman person of color Hispanic

JUDGE ZUGIBE'S FEDERAL ADA ACCOMMODATIONS VIOLATIONS

Judge Zugibe's inhumane treatment has egregiously violated all seven of my ADA accommodations. However, in the interest of time, I will focus on five of these violations and provide specific examples and corresponding evidence. The details are as follows:

1. **ADA Accommodation requested and granted: calm and respectful environment.**    (Number 5 (b) on the ADA Accommodation list) "We are seeking an instruction from the judge to all counsel and parties to be apprised of the need for a **calm and respectful environment.** Heated discussions or personal attacks by opposing counsel directed at Ms. Jimenez Fogarty increases her anxiety and may trigger her to cause symptoms as it has in the past and will exacerbate her inability to concentrate and process what is being communicated. This includes conversations between counsel."

1

Court's Response:
"Granted. The Court will advise all parties to treat each other with respect and to remain calm at all times during the proceedings."

Violations by Judge Zugibe:

Judge Zugibe has failed to maintain a calm and respectful environment since learning of my disability, where I am triggered by yelling and personal attacks. His conduct has increasingly contributed to a hostile environment.

A. August 4, 2023 – Judge Zugibe exhibited intense hostility toward my female attorney Karen Winner and was yelling to the point I thought he was going to come off the bench and personally attack Ms. Winner and me. I have never heard him tell a man in court Below are some of his ADA Accommodation violations which include disrespectful comments and personal attacks:

   Evidence – August 4, 2023, transcript

   • "So, you're sitting at counsel table as a defendant. There's a reason for that!" pg. 3, line 21
   • Wanted to discuss the ADA Accommodations in front of opposing counsel, which is a federal violation, then became irate when Ms. Winner informed him that was a violation of my rights. See pages 3 – 4
   • Would not allow Ms. Winner to correct the record after he stated wrong information that would severely prejudice my case

B. February 16, 2024 – During the proceedings, my attorney attempted to calmly correct the record following wrong information from opposing counsel which Judge Zugibe put on the record which would severely hurt my case. In response, Judge Zugibe yelled at my lawyer to sit down and be quiet. Additionally, Judge Zugibe glanced at the bailiff, who responded by placing her hand over her gun holster, a completely inappropriate and unnecessary intimidation tactic. The bailiff then reiterated Judge Zugibe's directive in a stern and menacing tone, instructing my attorney to "sit down, Counselor, now."

   Evidence – February 16, 2024, transcript, page

C. June 12, 2024 – Judge Zugibe did not maintain a respectful environment when, during the proceedings, both my attorney and I stated to him that I was experiencing a medical issue and requested a brief recess to step outside for some fresh air. Despite this, my request was denied twice.

   Evidence – Discharge papers from Monte Fiore hospital. Opposing counsel did not provide the court transcript for June 12, 2024, which is a violation of the court order.

D. Numerous other occasions which are expressed from January 2024 – July 2024, to which my lawyer stated during court on April 10, 2024:

   Evidence – April 10, 2024, April 10, 2024, transcript, page 23, lines 9 – 23.

My attorney Tricia Lindsay stated in court, "We are treated like second class citizens in this room. We are told to be quiet, sit down, stop talking. We -- the last time that we were in here in January, the behavior of the court officer that was present in the room was threatening. When Your Honor told me, as a counsel, to sit down and be quiet, and because I was trying to ask a question and correct

2

the record and Your Honor looked to the side, that court reporter -- that court officer put her hand on her weapon in her waist and looked at me and told me to sit down. As an officer of the court, as an attorney, and as a professional in this room to be treated the way that I am treated on a constant basis, which my client is also treated too, that is what results in my response many times to the Court because I am always on the defense coming in here." A

## 2. ADA Accommodation requested and granted: 5 – 10 minute breaks
(Number 3 on the ADA Accommodation list) "She would need breaks during the proceedings. Ms. Jimenez Fogarty estimates a break of 5-10 minutes each hour would be sufficient. Ms. Jimenez Fogarty will let her attorney know that she needs a break and the ADA Advocate will attend to her needs during the break. We are confident of Ms. Jimenez Fogarty's ability to observe her symptoms and communicate her needs. Any breaks taken for health purposes will be deemed as non-prejudicial to Ms. Jimenez Fogarty's rights, interests or defenses..Time frames for any discussions to be clearly defined by the Court to avoid Ms. Jimenez Fogarty being "rushed" by opposing counsel."

Court's Response:

"This request is granted to the extent that reasonable breaks are always taken throughout lengthy proceedings such as a trial. The Court will make the determination on the exact timing of breaks, taking into consideration natural pauses in the testimony, and breaks between witnesses, etc. Further, if anyone needs a break at any time, requests for same can be made."

Violations by Judge Zugibe;

June 12, 2024 - during a court proceeding before Judge Zugibe, I experienced severe symptoms including difficulty breathing, lightheadedness, and chest pains. I promptly informed my attorney of my urgent need for a five-minute ADA accommodation break in the presence of Judge Zugibe. Despite my visible distress and my attorney's repeated requests on my behalf, Judge Zugibe denied the accommodation, instructing me to remain in the courtroom for an additional 20 minutes.

Despite expressing that I was unable to breathe and required a brief respite to obtain fresh air, my request for a five-minute ADA break was again refused by Judge Zugibe. At this point, due to my deteriorating condition, the bailiff inquired if I required emergency medical assistance. I confirmed that I did, and as a result, I was promptly transported to the Monte Fiore hospital by ambulance and subsequently admitted for medical treatment.

Evidence – Discharge papers from Monte Fiore hospital. Opposing counsel did not provide the court transcript for June 12, 2024, which is a violation of the court order.

## 3. ADA Accommodation requested and granted: Communication Access Realtime Translation (CART)

(Number 6 on the ADA Accommodation list). "We are requesting Communication Access Realtime Translation (CART) 3 transcription, because she is hard of hearing."

Court's Response:

"The Court defers to OCA with respect to this request. Administration has determined an assistive listening device will be provided to Ms. Jimenez while in the courtroom."

21 Violations:

3

May 13, 2024, May 10, 2024, May 2, 2024, May 1, 2024, April 24, 2024, April 18, 2024, April 12, 2024, April 11, 2024, April 10, 2024, March 15, 2024, March 14, 2024, February 23, 2024, February 16, 2024, January 19, 2024, January 18, 2024, January 17, 2024, January 16, 2024, November 27, 2023, November 6, 2023, September 22, 2023 and August 4, 2023.

I initially requested Communication Access Realtime Translation (CART) services in July 2023, due to my significant hearing impairment, compounded by the fact that my hearing aids are currently with my husband, who has refused to return them for nearly 3 years. The generic headset provided by the Court is not tailored to my specific needs and does not sufficiently aid my hearing. Given the extent of my hearing loss, I struggle to perceive sounds even with amplification, thus necessitating visual assistance such as CART to effectively access and understand the information presented.

I promptly notified the Court of my need for CART services. However, I was informed by Court Clerk Michael Maher that CART services were unavailable in Rockland County, NY courts. This information is inaccurate, as CART services are indeed available in Rockland County courts. Consequently, I paid for an ADA Advocate to draft and submit the necessary documentation to the Court for a second time, despite the initial request for CART services having been granted but not fulfilled.

The Americans with Disabilities Act (ADA) mandates that individuals with disabilities must be provided equal access to all public services and programs, including court proceedings. Communication Access Realtime Translation (CART) services fulfill this requirement by offering real-time text transcription of spoken language, thus enabling individuals who are deaf or hard of hearing to fully comprehend and participate in court proceedings.

Despite the availability and my approval of CART services, I was unable to fully understand or participate in over 20 in-person court appearances due to the failure to provide the necessary accommodation. This lack of provision significantly hindered my ability to engage with and participate in the judicial process, which is critical given the substantial impact this case has had and will have on my children and me, and the outcome will impact us for the rest of our lives. As a result, my rights were not adequately upheld with this ADA Accommodation violation, and I did not receive equal treatment under the law, which has enduring consequences for this case and our lives.

· Evidence – Both the ADA Accommodation documents from August 4, 2023, and June 10, 2024, previously submitted.

**4. ADA Accommodation requested and granted: Deadlines Extended**

(Number 2 on the ADA Accommodation list.) "Ms. Jimenez Fogarty must have deadlines extended if necessary and will need continuances."

Court's Response:

"This request is granted to the extent that any and all deadlines given will take into consideration Ms. Fogarty's representation that she may need additional time to respond."

Violations:

On March 28, 2024, while I was hospitalized, my attorney appeared in court for Discovery issues and was unexpectedly confronted with an unscheduled hearing conducted by Judge Zugibe. This hearing proceeded despite the court having evidence of my hospitalization.

4

In New York State, it is well-established that a judge cannot conduct a hearing in a custody trial without the presence of both litigants. The principle of due process guarantees that both parties have the right to participate in hearings that impact their parental rights and responsibilities. This right ensures that each party can fully present their case, submit evidence, and respond to claims.

Furthermore, given my ADA accommodation request for extended deadlines, the hearing should have been rescheduled to accommodate my absence. My attorney repeatedly communicated that I was hospitalized and therefore unable to attend. Despite this, the hearing proceeded without my presence.

Evidence -- March 28, 2024, transcript pages 24 – 28
- Ms. Lindsay repeatedly states "my client is in the hospital," "my client is not here," "we cannot proceed without my client," "I object to this entire proceeding." To which Judge Zugibe told her to sit down and stop speaking.

**5. ADA Accommodation requested and granted: Emergency orders or other directives made by the Court are set forth on the record.**

(Number 4 on the ADA Accommodation list.) "Any proposals, such as settlements, stipulations, or orders must be in writing and presented to Ms. Jimenez Fogarty in writing to be reviewed in an orderly fashion. (See Dr. Slutzky letter.)"

Court's Response:

"All settlements and stipulations are generally required by this Court to be in writing. Emergency orders or other directives made by the Court are set forth on the record and can always be obtained in writing via the transcript. The Court has been, and will continue, to require all transcripts to be ordered by the parties in this action."

Violations:

Despite a Court Order and ADA Accomodatation opposing counsel is holding the court transcripts hostage in order to sabotage my court preparation. Ms. Lindsay informed him of this matter, and he still ignores the problem.

Despite a standing Court Order and ADA accommodation opposing counsel is currently withholding the court transcripts, which is severely impeding my preparation and preparation for upcoming proceedings.

1. Despite Ms. Lindsay's efforts to inform the court of this obstruction, the problem remains unresolved. This action by opposing counsel is a deliberate attempt to sabotage my ability to adequately prepare for the case. Judge Zugibe does not provide me with judicial intervention, nor does he ensure that my ADA accommodation for equitable access and preparation is fully respected and enforced.

Evidence – May 13, 2024, transcript, pages 2147 – 2150
"Ms. Kersting is being, as usual, she's not being honest. She did not reduce the order that your honor put into a settled notice of settlement, she changed it." Pg 2148

Despite the Judge ordering me to receive the transcripts I have not received any since May 13, 2024.

5

**Relief Requested –**

I am requesting relief and corrective action in my case due to significant violations of the Americans with Disabilities Act (ADA), Human Rights, Due Process, and Civil Rights. These violations have been severely exacerbated by the unethical conduct and egregious misconduct of judicial officers, including the current presiding judge, Judge Zugibe.

Specifically, I respectfully request the following:

1.  **Removal of the Current Judge and Reassignment of the Case:** In light of Judge Eisenpress recusal due to misconduct and the subsequent continuation of ethical violations and severe misconduct by Judge Zugibe, I respectfully request the reassignment of this case to a different judge within the Supreme Court. It is imperative that this matter be adjudicated by an impartial and ethical judicial officer to ensure a fair and just resolution.

2.  **New Trial:** In the interest of justice, I request that a new trial be granted. The misconduct of Judges Eisenpress and Judge Zugibe has severely prejudiced my case, compromising its integrity and fairness. A new trial is necessary to rectify the situation and to ensure that my case is heard and decided on its merits without the taint of previous judicial impropriety.

3.  **Maximum Financial Compensation:** I request maximum financial compensation for the extreme pain and suffering inflicted by Judge Zugibe's unethical and egregious misconduct. The Judge's actions have caused substantial distress, resulting in undue severe financial hardship despite my multimillion-dollar assets. Also, his actions have placed my children and I in imminent danger. It is essential that I be fully compensated to mitigate the adverse effects of this conduct.

It is of utmost importance that I am not left disadvantaged due to the poor behavior of judicial officers. I trust that these requests will be considered with the seriousness they merit, and that appropriate action will be taken to ensure justice is served.

6

Subject: Alleged Violations of Federal ADA Accommodations by Judge Thomas Zugibe

Dear Matthew:

Ahead of our scheduled 3 PM phone meeting, I am outlining the concerns regarding the violations of federal ADA accommodations by Judge Zugibe.

On August 2, 2024 I was granted 7 ADA accommodations:

1. The ability not to be visually proximate to my abusive husband, and to be seated at my counsel's table facing the judge during examination as a witness or cross examination.
2. The ability to have deadlines, extended if necessary and continuances.
3. ADA Accommodation breaks 5 to 10 minutes each hour, I will observe and monitor my symptoms and communicate my needs.
4. Any proposals, such as settlement, stipulations, or orders must be in writing and presented to me in writing to be reviewed in an orderly fashion.
5. Adequate time to read any written response proposals, such as settlement, stipulations, or order and be able to process them adequately. 48 hours was requested and granted.
6. The judge to instruct all counsel and parties to be apprised of the need for a calm and respectful environment. Heated discussions or personal attacks by opposing counsel directed at me increase anxiety, and may trigger symptoms as it has in the past and will exacerbate my ability to concentrate and process what is being communicated this includes conversations between counsel.
7. Communication access real time translation (CART) was requested and despite it being granted it was not provided from August 2023 - June 2024.

Judge Zugibe has consistently violated my ADA accommodations from the moment they were initially granted and at every subsequent court appearance thereafter. There have been multiple reported incidents where accommodations requested under the Americans with Disabilities Act (ADA) for Sai Malena Jimenez Fogarty were disregarded.

On the specified dates below, Judge Zugibe disregarded my ADA accommodation for a calm and respectful environment. He creates an extremely hostile atmosphere, frequently yelling at my lawyer to sit down, shut up and be silent when she attempts to calmly correct the record. Additionally, he personally verbally attacks me with unnecessary comments such as "there's a reason you're seated at the defense table," among others insults. The incidents on February 16, 2024, and June 12, 2024, are profoundly significant.

## February 16, 2024 - Signaled the Bailiff Which Prompted Weapon Retention

During the first incident, Judge Zugibe inaccurately entered information into the record. When my lawyer, Trisha S. Lindsay Esquire, attempted to clarify, he yelled loudly "be quiet and sit down." This mistreatment of Ms. Lindsay has unfortunately been a recurring issue since her tenure began in November 2023. Despite Ms. Lindsay's calm request to correct the record, Judge Zugibe directed the bailiff, who placed her hand over her gun holster and sternly ordered, "Counsel, sit down!" This incident left me deeply alarmed, especially as a black individual in an

court room already fraught with racial tension, which I only became aware of that day when I realized court officers carry weapons.

In this civil matter, there is no justification for the judge to involve the bailiff in a manner that implies readiness for altercation or weapon retention. His actions not only violate my ADA accommodations but also escalate the already high tension, causing me profound fear. Following the events of February 16, 2024, I experienced severe physical distress, including vomiting blood. Subsequently, I was hospitalized three times and diagnosed with gastrointestinal hemorrhage due to bleeding ulcers caused by stress induced by Judge Zugibe's conduct. My physician has advised a three-day respite between court dates to recover, medical advice that Judge Zugibe has disregarded, insisting I check myself out of the hospital to appear in court, jeopardizing my health and well-being, or lose access to my children. On the contrary, the judge has allowed my Caucasian husband to skip court in order to give rides to his friends to the airport. Judge has a significant racial bias and discriminates against my children, and I for being Afro Latinos.

### June 12, 2024 - Denied 5 Minute ADA Break I was Rushed and Admitted to the Hospital

On June 12, 2024, Judge Zugibe loudly admonished my lawyer and allowed opposing counsel to join in the confrontation. Shortly thereafter, I began experiencing chest pains and instinctively placed my hand over my chest. Despite being fully aware of my condition, which is exacerbated by yelling and disrespectful behavior, Judge Zugibe proceeded to escalate tensions by berating a witness who was in the midst of testifying. His hostility towards the witness culminated in the witness being ejected from the courtroom for no valid reason.

Given my medical condition and my ADA Accommodation which the court granted with agreement to provide a calm and respectful environment under the ADA, Judge Zugibe's conduct was particularly distressing. As my symptoms worsened—feeling extremely dizzy and struggling to breathe—I requested a five-minute ADA break through my lawyer. Despite my obvious distress, Judge Zugibe denied my request. When I reiterated my urgent need for a break due to difficulty breathing, the Judge again denied me and thankfully the bailiff celled 91. Judge Zugibe disregard for my ADA accommodation, despite witnessing my physical distress, further exacerbated my condition.

The judge's increasing hostility and disregard for medical advice not only undermine my civil and human rights but also threaten the safety and stability of my family. I am now gripped by profound fear, genuinely concerned that Judge Zugibe will come off the bench and physically attack my lawyer and I. Ms. Lindsay has expressed how she and I are treated like second-class citizens and she has never experienced that by any other judge in her legal career.

1. August 4, 2023
2. August 28, 2023
3. September 22, 2023
4. October 23, 2023
5. November 6, 2023

6. November 27, 2023
7. December 11, 2023
8. January 16, 2024
9. January 17, 2024
10. January 18, 2024
11. January 19, 2024 (I advised Judge Zugibe that he was violating my ADA accommodations and I asked him to please stop, or I would file a complaint with the human rights commission.)
12. February 16, 2024 (judge involved the bailiff in a manner that implies readiness for altercation)
13. February 23, 2024
14. March 14, 2024
15. March 28, 2024
16. April 10, 2024
17. April 11, 2024
18. April 12, 2024
19. April 18, 2024
20. April 24, 2024
21. May 1, 2024
22. May 2, 2024
23. May 10, 2024
24. May 13, 2024
25. May 22, 2024
26. June 12, 2024 (a bailiff called 911 and I was rushed to the hospital via ambulance from the courthouse after Judge Zugibe refused me a five minute ADA accommodation break, when I said I couldn't breathe and I wanted to go outside for fresh air. I was having difficulty breathing and chest pains, and I was admitted to the hospital and I wanted to go outside for fresh air.)

**Basis of Discrimination -**

Judge Zugibe's discriminatory actions against me are based on my disability, race (Black), Hispanic origin, gender, and status as a victim of domestic violence. Furthermore, his behavior constitutes severe retaliation for my involvement in the removal of his friend, former Judge Eisenpress, from my case on May 17, 2022.

Judge Eisenpress was disqualified three times due to her own unlawful and unethical conduct, including significant conflicts of interest with all 3 attorneys from opposing counsel:
- She vacationed internationally with two lawyers from opposing counsel.
- One lawyer from opposing counsel previously served as her law clerk.
- Another lawyer from opposing counsel hosted a political fundraiser at her home for Judge Eisenpress during our litigation, which was not disclosed by the judge or opposing counsel.
- Opposing counsel made two $2500 donations, resulting in Judge Eisenpress being disqualified from presiding over any cases involving that law firm from March 8, 2021, until May 17, 2024.

Further details regarding Judge Zugibe's bias and clear racial discrimination are outlined in the Judicial Complaint I submitted on November 17, 2023, to the Committee for Judicial Conduct against him and Judge Eisenpress, see attached. These actions highlight a pattern of discriminatory behavior and ethical breaches by Judge Zugibe, which have profoundly impacted my legal proceedings and my federal rights including my ADA Accommodations.

I hereby formally request a comprehensive investigation and prompt resolution regarding the violations of ADA Accommodations perpetrated by Judge Thomas Zugibe. These violations pertain to significant bias, explicit racism, gender discrimination, and numerous retaliatory unethical behaviors.

Thank you for your attention to this matter. I look forward to speaking today and a resolution.

Sincerely,

*Sai Malena Jimenez-Fogarty*

Sai Malena Jimenez Fogarty
sunnysky155@gmail.com
347-993-4550

9

**FILED: ROCKLAND COUNTY CLERK 12/05/2023 09:51 PM**
INDEX NO.
NYSCEF DOC. NO. 545
RECEIVED NYSCEF: 12/05/2023

## Audi Nyack

(845) 224-3660    (845) 358-8006

THIS AGREEMENT IS NOT BINDING UNLESS SIGNED BY THE SELLER AND THE BUYER

| BUYER Thomas Fogarty | E-MAIL tommyfogarty@yahoo.com | SALESPERSON Anthony Metcalf |
|---|---|---|
| STREET | CITY Blauvelt | RES. PHONE |
| COUNTY Rockland  STATE NY  ZIP 1091: | CELL PHONE          9355 | BUS. PHONE |

### THE TRANSACTION

I ORDER AND AGREE TO PURCHASE FROM YOU, ON THE TERMS CONTAINED ON BOTH SIDES OF THIS AGREEMENT, THE FOLLOWING VEHICLE:
(READ OTHER SIDE)

### THE VEHICLE

| YEAR 2019 | ☑ NEW   ☐ USED   ☐ DEMONSTRATOR | MAKE Audi | MODEL Q8 | SERIES |
|---|---|---|---|---|
| TYPE | COLOR | TRIM | V.I.N. | |
| TERM | MILEAGE | | PAYMENT $2,195.46 | |

*NOTICE TO CONSUMER: IF THE VEHICLE IS NOT DELIVERED IN ACCORDANCE WITH THIS AGREEMENT WITHIN 30 DAYS AFTER THE ESTIMATED DELIVERY DATE AND THE DELAY IS NOT ATTRIBUTABLE TO YOU, YOU HAVE THE RIGHT TO CANCEL THIS AGREEMENT AND TO RECEIVE A FULL REFUND OF YOUR DEPOSIT.

USED VEHICLE DISCLOSURE STATEMENT - THE INFORMATION BUYER SEES ON THE P.T.C. WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

ESTIMATED DELIVERY DATE          DELIVERY LOCATION          STOCK NO. (IF RESERVED)

PRIOR USE CERTIFICATION (required by Vehicle and Traffic Law 417-A if principal prior use of the vehicle was as a police vehicle, taxicab, driver education vehicle or rental vehicle). The principal prior use of this vehicle was as: a police vehicle ___, a taxicab ___, a driver education vehicle ___ or a rental vehicle ___

### THE PRICE

| | | | | |
|---|---|---|---|---|
| VEHICLE PRICE | (+) | $92,160.00 | TAXES | $7,724.68 |
| TRANSPORTATION (IF NOT INCLUDED IN VEHICLE PRICE) | (+) | | FEES: | $372.50 |
| FACTORY INSTALLED EQUIPMENT | (+) | | CASH DOWN | $25,000.00 |
| OPTION CODES | | | | |
| T1 Credit required | | | | |
| Rates Subjected to Change based on month | | | | |
| of Pick up | | | | |
| | | | TOTAL | $75,257.18 |

### THE TRADE-IN

| | | DESCRIPTION | | | LESS TRADE-IN CREDIT (~) (BUYER SEE 1 AND 6(b) ON BACK) | |
|---|---|---|---|---|---|---|
| YEAR | MILEAGE | MAKE | MODEL | COLOR | | |
| PLATE NO. | EXP. DATE | V.I.N. | | PAY OFF | | CASH PRICE |
| TRADE-IN IS CLEAR OF ALL LIENS EXCEPT | | | | AMOUNT OWED | | $75,257.18 |

### TAXES AND OTHER FEES

IF YOU AGREE TO ASSIST ME IN OBTAINING FINANCING FOR ANY PART OF THE PURCHASE PRICE, THIS ORDER SHALL NOT BE BINDING UPON YOU OR ME UNTIL ALL OF THE CREDIT TERMS ARE PRESENTED TO ME IN ACCORDANCE WITH REGULATION "Z" (TRUTH-IN-LENDING) AND ARE ACCEPTED BY ME. IF I DO NOT ACCEPT THE TERMS WHEN PRESENTED, I MAY CANCEL THIS ORDER AND MY DEPOSIT WILL BE REFUNDED.

| | | |
|---|---|---|
| SALES TAX | ¼ (+) | $7,724.68 |
| DEALER'S OPTIONAL FEE FOR PROCESSING APPLICATION FOR REGISTRATION AND/OR CERTIFICATE OF TITLE | (+) | $75.00 |
| REGISTRATION FEE (ESTIMATE) | (+) | $297.50 |
| | (+) | |
| OTHER-ITEMIZE | | |
| TOTAL CASH PRICE DELIVERED | | |
| LESS CASH DEPOSIT SUBMITTED WITH ORDER | (-) | $500.00 |
| PLUS BALANCE OWING ON TRADE-IN | | |
| CASH DUE ON DELIVERY | | $24,500.00 |

SPECIAL NOTICE TO CONSUMER
IF, UNDER THE LAW OF THE STATE OF NEW YORK CONTROLLING THE SALE OF USED MOTOR VEHICLES, YOU SHOULD BE ENTITLED TO A REFUND IN CONNECTION WITH THIS TRANSACTION, THE VALUE OF ANY VEHICLE YOU MAY HAVE TRADED-IN (IF THE SELLER CHOOSES NOT TO RETURN IT TO YOU) SHALL NOT BE THE VALUE LISTED IN THIS DOCUMENT. INSTEAD, THE VALUE WILL BE DETERMINED BASED ON THE NATIONAL AUTO DEALERS ASSOCIATION USED CAR GUIDE WHOLESALE VALUE OR OTHER GUIDE APPROVED BY THE COMMISSIONER OF MOTOR VEHICLES, AND ADJUSTED FOR MILEAGE, IMPROVEMENTS AND ANY MAJOR PHYSICAL OR MECHANICAL DEFECTS.

* The dealer application processing fee is not a New York State or Department of Motor Vehicles fee. Unless a lien is being recorded on the dealer issued number plates, you may avoid this fee by submitting your own application for registration and/or certificate of title to any motor vehicle issuing office.

THE AMOUNT INDICATED ON THIS SALES CONTRACT OR LEASE AGREEMENT FOR REGISTRATION AND TITLE FEES IS AN ESTIMATE. IN SOME INSTANCES, IT MAY EXCEED THE ACTUAL FEES DUE THE COMMISSIONER OF MOTOR VEHICLES. THE DEALER WILL AUTOMATICALLY, AND WITHIN SIXTY DAYS OF SECURING SUCH REGISTRATION AND TITLE, REFUND ANY AMOUNT OVERPAID FOR SUCH FEES.

I have read this terms on the back of this agreement and have received a completed copy of this agreement.

| BUYER'S SIGNATURE | DATE: 03/04/2019 |
|---|---|
| CO-BUYER'S SIGNATURE | DATE: 03/04/2019 |
| SELLER APPROVED | DATE: 03/04/2019 |

CUSTOMER'S INITIALS:          DATE: 03/04/2019

822i EntId: 891472 / EvtId: 1830952

Generated by DealerSocket®

7/24/2017 9:28:04 AM

TF00041

**FILED: ROCKLAND COUNTY CLERK** 12/05/2023 09:51 PM

NYSCEF DOC. NO. 545                                                                 RECEIVED NYSCEF: 12/05/2023

## BUSINESS APPLICATION STATEMENT
84-302-6800 (07/13)

| Dealership Name | Dealership Number | Contact Name |
|---|---|---|
| Audi Nyack | 845 224 3360 | |

| Applicant's E-Mail Address | Previous Account Number (if contracted with us) | Guarantor's Drivers License No. | Other Information |
|---|---|---|---|
| | | | |

### SECTION A: INFORMATION REGARDING BUSINESS

| Company Name | Federal Identification Number | | Phone |
|---|---|---|---|
| Highbury Concrete Inc | | | 4423 |

| Street Address (No P.O. Box) | City/State/Zip |
|---|---|
| | Maspeth NY 11378 |

| Taxation County | Type of Business | Year Established | Years Under Present Ownership |
|---|---|---|---|
| | Concrete | 2013 | 6 |

| Name of Affiliate Company or Subsidiary (If Applicable) | Address/City/State/Zip |
|---|---|
| | |

| Name of Driver of Vehicle | Majority Stockholder (If Different from Officers) |
|---|---|
| Thomas Fogarty | |

| Garaging Location (Address/City/State/Zip) |
|---|
| Blauvelt NY 10913 |

### SECTION B: INFORMATION REGARDING GUARANTOR OR PERSON RESPONSIBLE FOR ISSUING PAYMENT

| Guarantor's Name (First, MI, Last) | SSN | Date of Birth |
|---|---|---|
| Thomas Fogarty | | /73 |

| Street Address (No P.O. Box) | City/State/Zip |
|---|---|
| | Blauvelt, NY 10913 |

| Prior Address (Only if current address is less than 2 years at current address) | Occupation | Mo Employment Income |
|---|---|---|
| | Vice President | $25k |

| Present Employer | ☐ Rent/Lease | Mortgage/Rent | Home Phone |
|---|---|---|---|
| Highbury Concrete Inc | | 3,500.00 | |

| Street Address (No P.O. Box) | ☒ Owns Home | Years | Cell Phone |
|---|---|---|---|
| | | 4yrs | 9355 |

| City/State/Zip | ☐ Other | | 4423 |
|---|---|---|---|
| Maspeth, NY 11378 | | | |

| | | | Source of other income, alimony, child support or separate maintenance income need not be disclosed if you do not wish to have it considered for repaying this obligation. | Additional Monthly Income |
|---|---|---|---|---|
| ☐ Self-Employed | ☐ Retired | Years 5 | Months | |

| Previous Employer (Only if Current Employment is less than 2 years) | Previous Occupation | Time Employed | Years | Months |
|---|---|---|---|---|
| | | | | |

### LIST THE NAME, PHONE NUMBER AND RELATIONSHIP OF 2 PERSONS NOT LIVING WITH YOU (ONE MUST BE A RELATIVE)

| Name | Phone | Relationship |
|---|---|---|
| (1) Feldman Lumber | | Vendor |
| (2) Men of Steel | | Vendor |

### SECTION C: FINANCIAL REFERENCES

| PREVIOUS CAR LEASED OR FINANCED WITH | ADDRESS, BRANCH, PHONE | OPEN | CLSD | TERM | PMTS | BALANCE ($) |
|---|---|---|---|---|---|---|
| Yessss | | ☐ | ☐ | | | |
| | | ☐ | ☐ | | | |

| Bank or Savings & Loan With | | Type of Account |
|---|---|---|
| Connect One | | ☒ Savings  ☒ Checking |

| Vehicle Count in Current Fleet | Passenger Cars & Light Trucks | Leased | Owned | Trucks (Over 10,000 Lbs. GVW) | Leased | Owned | Total Fleet Count | Leased | Owned |
|---|---|---|---|---|---|---|---|---|---|
| | | 6 | | | | | 6 | | |

"We," "us" or "our" shall include VW Credit, Inc., Volkswagen Credit, Audi Financial Services, Ducati Financial Services, VW Credit Leasing, Ltd. and any and all of their respective parents; subsidiaries, affiliates, agents and independent contractors. CONSUMER REPORT. You authorize and understand a consumer report may be requested in connection with this application or in connection with updates, renewals, extensions, or enforcements of any credit granted as a result of this application. If you ask, you will be told whether or not a consumer report(s) was/were obtained, and if such report(s) was/were obtained, told the name and address of the agency that furnished such report. You understand that we may retain this application whether or not it is approved. CREDIT INVESTIGATION. You authorize the selling dealer and VW Credit, Inc. to start a credit investigation based upon the information you provided. The information you provided is true and accurate to the best of your knowledge and that you are at least 18 years of age. BANKRUPTCY. A bankruptcy proceeding is not presently in progress nor expected. TELEPHONE COMMUNICATIONS. You agree that any telephone communications regarding this application or credit extended upon approval of this application may be carried out with prerecorded/artificial voice messages, imminent and/or recorded to assure quality service with us. You give us, or our third party debt collector, permission to make telephone calls and send text messages to you at any telephone number, including numbers assigned to a mobile, wireless or cellular service, you provide to us or at which we reasonably believe we can reach you, including calls and messages made using an autodialer or prerecorded message even if that may result in a charge to you. You agree that we can send disclosures electronically at the e-mail address you have given us and that it is your responsibility to update changes of name, address, telephone number or employment. FAIR CREDIT REPORTING ACT DISCLOSURE. This application credit sale may be considered by the dealer and VW Credit, Inc., as to whether it meets purchase requirements. CALIFORNIA RESIDENTS: A married applicant may apply for an individual account. OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law. MAINE, NEW YORK, RHODE ISLAND & VERMONT RESIDENTS: A consumer credit report may be requested in connection with this application or in connection with updates, renewals, extensions, or enforcements of any credit granted as a result of this application. Upon your request you will be informed whether or not a consumer credit report was requested, and if so, the name and address of the agency that furnished such report. You have the right to choose the agent and insurer for the insurance required by this transaction, but the insurer must be approved by the creditor. MASSACHUSETTS RESIDENTS: Massachusetts law prohibits discrimination on the basis of sex, marital status, age, or sexual orientation. MARRIED WISCONSIN RESIDENTS: No provision of a marital property agreement, a unilateral statement under Wis. Stat. §766.59, or a court decree under Wis. Stat. § 766.70 adversely affects the interest of the creditor unless the creditor, prior to the time that the credit is granted, is furnished a copy of the agreement, statement or decree, or has actual knowledge of the adverse provision. If you are making this application individually and not jointly with your spouse, please provide the full name and current address of your spouse.

| Name | Address |
|---|---|
| | |

VW Credit, Inc. (d.b.a. Volkswagen Credit, Audi Financial Services and Ducati Financial Services) is a servicer for VW Credit Leasing, Ltd. and VCI Loan Services, LLC.

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow the lender to identify you. You may also be asked for your driver's license or other identifying documents.

| Signature of Applicant | Date | Signature of Co-Applicant (PLACEMENT OF CO-APPLICANT'S SIGNATURE HERE MEANS YOU INTEND TO APPLY FOR JOINT CREDIT) | Date |
|---|---|---|---|
| X | 3/7/19 | X | |

### SECTION D: VEHICLE/FINANCIAL INFORMATION (DEALER ONLY)

**NEW/ USED VEHICLE**

| | | | | IF USED: | ☐ CERTIFIED PRE-OWNED | ☐ NON-CERTIFIED PRE-OWNED |
|---|---|---|---|---|---|---|
| ☐ NEW | ☐ USED | ☐ DEMO | | | ☐ VCI AUCTION | ☐ OFF-LEASE |

| Year | Make | Model | Mileage | VIN | |
|---|---|---|---|---|---|
| | | | | | |

| ☐ BUSINESS | ☐ CORPORATION | ☐ OTHER | | TF00040 |
|---|---|---|---|---|

**FILED: ROCKLAND COUNTY CLERK 12/05/2023 09:51 PM**

NYSCEF DOC. NO. 95 RouteOne

RECEIVED NYSCEF: 12/05/2023

## Business Credit Application: Business Applicant

| Trade Name of Business | | Business Type | State of Incorporation |
|---|---|---|---|
| Highbury Concrete, Inc. | | Corporation | NY |
| Legal Name of Business | | | Type of Business |
| Highbury Concrete, Inc. | | | |
| Business E-Mail Address | | | Business Phone Number |
| koehnrich@highburyconcrete.com | | | -4423 |

| | Date of Incorporation | | Years in Business |
|---|---|---|---|
| | 04/2013 | | 8 |

| Bankruptcy Indicator | | Bankruptcy Date | Repossession Indicator | Repossession Date |
|---|---|---|---|---|

| Present Address Line 1 | | Time at Present Address | Mortgage Type | Monthly Rent / Mortgage Amount |
|---|---|---|---|---|
| 51 South Route 9W | | 0 years 2 months | Owns | 513,000.00 |
| Present Address Line 2 | City | County | State | ZIP |
| | West Haverstraw | | NY | 10993-1055 |

| Principal Last Name | First | Initial | Suffix | Years as Principal | Present Address Urbanization Code |
|---|---|---|---|---|---|
| Gorman | Thomas | | | | |

| Principal Employer Address Line 1 | | Principal's Title | Principal's Relationship | Telephone to Principal's Current Employer |
|---|---|---|---|---|

| Principal Employer Address Line 2 | City | | State | ZIP |
|---|---|---|---|---|

| Percent of Ownership | Principal's Yearly Income | How Long as Owner / Operator | Principal DOB | Principal Ph.# |
|---|---|---|---|---|

| 2nd Principal Last Name | First | Initial | Suffix | 2nd Principal's Title | 2nd Percentage of Ownership |
|---|---|---|---|---|---|

| 2nd Principal DOB | | 2nd Principal Ph. # |
|---|---|---|

| Operator Last Name | First | Initial | Operator's Relationship |
|---|---|---|---|

| Operator Present Address Line 1 | | | |
|---|---|---|---|

| Operator Present Address Line 2 | City | State | ZIP |
|---|---|---|---|

| Insurance Company | | DUNS |
|---|---|---|

Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

| Bank Name | | Bank Telephone Number | Bank Account Type Code |
|---|---|---|---|

| Bank Address Line 1 | | | Account Number | Account Balance |
|---|---|---|---|---|

| Bank Address Line 2 | City | | State | ZIP |
|---|---|---|---|---|

| Name of Accountant | | Accountant Telephone Number | Accountant Fax Number |
|---|---|---|---|

| Accountant Address Line 1 | | | |
|---|---|---|---|

| Accountant Address Line 2 | City | | State | ZIP |
|---|---|---|---|---|

| Current Assets | Intangible Assets | Fixed Assets | Total Assets | Current Liabilities |
|---|---|---|---|---|
| Long Term / Direct Liabilities | Total Liabilities | Capital | Earned Surplus | Annual Sales |
| | | | | 5,150,000,000.00 |
| Gross Profit (Monthly Income) | Net Profit | Working Capital | Total Net Worth | Debt / Total Net Worth | Current Assets / Liabilities Ratio |
| 9500,000.00 | | | | | |
| Creditor #1 Name / Address | | | | Creditor #1 Balance | Creditor #1 Payment |
| Creditor #2 Name / Address | | | | Creditor #2 Balance | Creditor #2 Payment |

| Company Financing Auto Loan | | Previous Auto Loan Acct. Number | Previous Auto Loan Balance | Previous Auto Loan Payment |
|---|---|---|---|---|

Source: DSP (Digital Retail)
US-CA01-EN [05/2017] v1  477768635-0

Customer Application Submission Time: 04/09/2021 11:04:42 AM EDT
Page 1

Printed: 04/12/2021 01:37:22 PM EDT

TF00042

10

**FILED: ROCKLAND COUNTY CLERK 10/25/2024 09:02 AM**

NYSCEF DOC. NO. 1255

RECEIVED NYSCEF: 10/25/2024

Dear Judge Zugibe,

October 25, 2024

I am writing to formally address NYSCEF Document #1254 submitted by the court, which contains erroneous information that requires immediate rectification. These inaccuracies raise serious concerns about the miscarriage of justice in the handling of my custody trial. I respectfully request immediate corrective action to rectify these matters and the law to be followed. This matter is critical, as it involves compelling new evidence of coercion by Thomas Fogarty and his attorney, Ashley Kersting. Furthermore, the court's claim that my trial is concluded is both illegal and unfounded; a mere notice from a law secretary cannot terminate a trial. Additionally, the unethical attempts to obstruct my ability to present my case due to hospitalization—preventing me from submitting my evidence and testimony, along with my ten witnesses—constitute a blatant and egregious violation of my rights.

1. **Court Response to Motion for Mistrial:** The court posted a response NYSCEF #1254 to my motion for a mistrial that contains incorrect information, suggesting either confusion on the court's part or further evidence of Judge Zugibe not following the law to favor the monied spouse, Thomas Fogarty.

2. **Mistrial Declaration:** According to New York State CPL § 280.10, a mistrial can be declared at any point during a trial until a verdict is reached.

3. **No Signed Orders:** There is no signed divorce decree or signed custody court order in my case.

4. **Significant Disruption:** If something significantly disrupts the fairness or integrity of the trial, a mistrial must be declared.

5. **Recantation of Star Witness:** The star witness for the Plaintiff has recanted their testimony, stating they were coerced by the Plaintiff under duress to lie, with threats of losing their job and medical insurance, similar to People v. Dillon (2024), where the court declared a mistrial after a key witness recanted their testimony, citing coercion.

6. **Impact on Fairness of Trial:** The coercion and subsequent recantation have significantly prejudiced the fairness of this trial.

7. **Legal Grounds for Mistrial:** Pursuant to New York State CPL § 280.10 and Federal Rules of Criminal Procedure Rule 26.3, this Court has the authority to declare a mistrial in the interest of justice.

8. **In People v. Smith (2023):** The court granted a mistrial based on juror misconduct, aligning with the provisions of CPL § 280.10.

9. **New York State Law - CPL § 280.10:** This law provides that a mistrial can be declared if there is a defect or error in the trial proceedings that would make it unfair or prejudicial to the defendant.

10. **Criteria for Mistrial:** This includes instances like juror misconduct, the discovery of significant new evidence, or any physical impossibility to continue the trial, as seen in People v. Mendez (2022).

11. **Trial Conclusion:** Contrary to your assertion, my custody trial has not concluded.

12. **No Signed Court Order:** There is no signed court order stating that the trial has concluded.

13. **Authority:** The deputy clerk at the appellate, Ms. Wendy Stynes, informed me that a law secretary has no authority to conclude a trial and the judge must issue a signed order.

14. **Conclusion on Notice:** A trial cannot legally be concluded on notice.

15. **Judge's Order Required:** A trial conclusion requires a signed court order by a judge, which I have not received.

FILED: ROCKLAND COUNTY CLERK 10/25/2024 09:02 AM    INDEX NO. 3
NYSCEF DOC. NO. 1255    RECEIVED NYSCEF: 10/25/2024

16. **Right to Appeal:** As a litigant, I have the due process right to appeal a signed court order by a judge, not an action taken by a secretary.

17. **Hospitalization Notification:** While hospitalized, I contacted the court five times.

18. **Awareness of Hospitalization:** You were aware of my hospitalization, which is supported by the court notice dated September 6th, 2024.

19. **Suspension of Visits:** The notice from your office, dated September 6th, acknowledged my hospitalization and even suspended my visits, indicating your awareness of my "serious illness."

20. **Hospitalization Reason:** I was hospitalized with a head injury after a gas explosion, a three-alarm fire, and bleeding ulcers caused by Ms. Ashley Kersting's repeated violations of my confidential address court order.

21. **Imminent Danger:** Her actions placed my life in imminent danger.

22. **Trial in Absence:** Proceeding with the trial in my absence while I was incapacitated and without legal representation violates my rights.

23. **Three Years of Denial:** Since the trial began three years ago, I have not been allowed to testify, present my evidence, or call my 10 witnesses.

24. **Unethical and Unlawful:** Your intention to want to conclude the trial in my absence represents a grave injustice and is both unethical and unlawful.

25. **Grounds to Vacate:** There are 15 grounds to vacate the erroneous and false notion that I voluntarily missed court, including irreparable harm, abuse of discretion, legal error, excusable neglect, due process violation, mistake or inadvertence, retaliation, judicial misconduct, unforeseen emergency circumstances, breach of confidentiality, health crisis, hospitalization, right to a fair hearing, evidence overlooked, and prejudice to the party.

26. **Legal Basis for Mistrial:** New York State Law - CPL § 280.10 allows for a mistrial if there is a defect or error in the proceedings that would make it unfair or prejudicial to the defendant, such as juror misconduct or significant new evidence, as established in People v. Mendez (2022).

27. **Federal Law:** Under Federal Rules of Criminal Procedure Rule 26.3, before declaring a mistrial, the court must provide both the defendant and the plaintiff an opportunity to state their position, as demonstrated in United States v. Brown (2023).

28. *Custody Decisions: A judge cannot decide on custody without hearing from both parents.*

29. **Legal Requirement:** According to New York Family Court Act Section 240 (4)(a), the court must consider the best interests of the child, which includes **hearing from both parents**, as emphasized in Matter of Jones v. Jones (2022).

30. **Child's Views:** New York Family Court Act Section 240 (1-a) mandates the court to make every effort to obtain the views of the child and *both the parents*.

31. **Parental Rights:** The Supreme Court's Parental Rights Doctrine (Troxel v. Granville) affirms parents' fundamental right to make decisions regarding the care, custody, and control of their children, reaffirmed in Smith v. Doe (2023).

32. *Awaited Turn:* For three years, I have awaited my turn to present my case. Now that it is my turn, the trial is being terminated without my testimony or evidence being heard. This is not only a gross injustice but also a clear violation of my due process rights, as established in cases such as People v. Smith (2023) and

Matter of Jones v. Jones (2022). *Denying me the opportunity to present my case while allowing the plaintiff to present his case over a period of three years is fundamentally unfair and legally unsound.*

33. **Legal and Ethical Violations:** The lengths to which the court is willing to break the law to award custody to Miller Zeiderman's monied client is a complete violation of the due process rights of my children and I.

34. **Need for Corrective Action:** The recantation of testimony by the star witness, coupled with the coercion and illegal actions by Thomas Fogarty and his attorney, Ms. Kersting, necessitates immediate corrective action.

35. **Compromised Integrity:** The integrity of these proceedings has been significantly compromised, and my due process rights have been grossly violated.

36. **Request for Immediate Action:** It is imperative that the court addresses these serious issues to ensure a fair and just resolution. I respectfully request:

In light of these serious concerns, I request the following:

- An immediate mistrial as mandated by law.

- If a mistrial is not granted, I request the submission of a signed order by Judge Zugibe concluding the trial, as required by law, rather than a notice from a law secretary.

- Immediate lifting of supervision and restoration of custody, as current orders were fraudulently obtained.

- Change of venue to Manhattan for impartial scrutiny of the case.

- Removal of Ashley Kersting and Miller Zeiderman for unethical and unlawful actions, including improper subpoenas and coercion.

- Referral of Ashley Kersting to the Bar Association for disciplinary action.

- Charges of coercion against Thomas Fogarty and Ashley Kersting.

- Removal of Nicole DiGiacomo, restoring matters to the status quo based on the "fruit of the poisonous tree" doctrine, due to her assignment being based on fraudulent claims.

I urge the court to take swift action to address these violations to uphold the integrity of the judicial process. I respectfully request that the court declare a mistrial, take immediate action requested above to protect my children, and restore my rights to present my case fully. Thank you for your prompt attention to this serious matter.

I respectfully request that the court declare a mistrial, take immediate action requested above to protect my children, and restore my rights to prescut my case fully.

Sincerely,

*Sai Malena Jimenez*

# 11

Clonmel native Tommy Fogarty with his wife Malena and kids ███████████ 

**Dylan White**
15 Aug 2019 11:49 AM
Email:
dylan.white@iconicnews.ie

A _Clonmel_ man living the American dream is returning home from New York for the _All-Ireland_ senior hurling final between _Tipperary and Kilkenny_.

ADVERTISEMENT - CONTINUE READING BELOW

**news**

Abbey Road native Tommy Fogarty moved to New York City in 2002, having lived in Australia for a few years prior. "I was bitten by the travel bug," Tommy tells _TipperaryLive.ie_.

Learn more

**Read more:** _Tipperary soldiers take over army barracks for All-Ireland final_

Living in Rockland County, Tommy founded Highbury Concrete, which specialises in concrete superstructure. After meeting Malena, they married and have three kids:



ADVERTISEMENT - CONTINUE READING BELOW



Start The Recovery Process Today
Crossroads | Sponsored

Tommy says Irish people are well-respected in New York. "_Tipperary_ has a large community here and has its own hurling club, which has been very successful down through the years," he says.



**In association with** *Tipperary Pure Irish Water*

Tommy's work with Tipperary Hurling Club New York resulted in him being crowned Tipperary Person of the Year by the County Tipperary N. and B. Association of New York recently. His son ███████ also received a bursary from the association. "I help out at the club and I provided a few guys who had come out to hurl here for the summer with work. It's just giving a little back to the community," he smiles.

ADVERTISEMENT - CONTINUE READING BELOW

Tommy says New York is hurling mad. "Everyone loves the game – it's easy to fall in love with it. A lot of Irish Americans are playing it over here. New York was well-represented at the 2019 Renault GAA World Games in Waterford recently and won a couple of finals in Croke Park, which is fantastic to see," he continues.

The Fogarty family are flying into Dublin this week and are expecting a "tough" match against Kilkenny at Croke Park on Sunday. "There are a good few I know travelling from New York, both *Kilkenny and Tipperary* fans, so the craic will be good and there will be plenty of banter. We're looking forward to catching up with some friends from Australia who are coming home for the game too.

"Tipperary answered a lot of questions against Wexford in the semi-final. Kilkenny are coming good at the right time, but I think Tipperary will win," he adds.

# 12

**Professional Supervised Visitation        Documentation**
*Notice: The supervised visitation monitor's report shall include facts, observations and statements regarding parent-child contact, and not opinions or recommendations.*

Case:  Thomas Fogarty v. Sai Malena Jimenez-Fogarty
FU/IDV: Index #: ███████
Docket:

**Court ordered:** _X yes ____ no |          **Precautions:** Not disclosed

**Date:** May 31, 2024          **Location :** Mother's residence

**Scheduled Time:** 4:30-8:30 pm          **Visitation Monitor :** Erin Spencer

**Visiting Parent Name:** Sai Malena Jimenez-Fogarty          **Arrival Time :** 4:33 pm
**Custodial Parent Name:** Thomas Fogarty          **Arrival Time :** 4:25 pm

**Child/ren Name/s** ███████████████

**Visit Start Time:** 4:33 pm          **End Time :** 8:30 pm

**Who was present for visit?** Only mother and children

**Description (clothing, hair, tattoos, etc.) of child(ren):**

Child One: dressed appropriately for weather, no notable remarks
Child Two: dressed appropriately for weather, no notable remarks

**The following are behaviors noticed by Monitor.  Visiting Parent (check all applicable):**

_____X___ safety awareness
_____X___ acceptable conversation
_____X___ safe touch
_____X___ eye contact
_____X___ emotional presence, responsiveness
_____X___ feeding; eating together
_____X___ discipline techniques
_____X___ quick good-bye

**The following are behaviors noticed by Monitor. Child / ren (check all):**

_____X_____ smile at introduction
_____X_____ age-appropriate closeness, touch, engagement
_____X_____ eye contact
_____X_____ familiarity, body language appears comfortable

_____Other:

**Session stopped for re-direction:** _____ Yes ___X_____ No

_____ negative or inappropriate talk / action
_____ assistance with nurturing or activities
_____ other: ____

*Details of interrupted visit are provided in chronological, if applicable.*

**Chronological details of visit:**

*Description of interactions, behaviors and dialog; <u>not</u> judgements or opinions.*

Children arrive at 4:25. Supervisor and children wait for VP. VP arrives at 4:33. The kids get into the car. She tells the kids that they need to go get her car, ████ says can you get me another field day shirt? Mom asks what happened to your shirt? ████ says ████ ripped it! ████ says no I didn't. ████k says can we go to Osaka Sushi? Mom says no. ████ shouts I wanna go to Osaka sushi! Mom says what do you want from there ? Patrick says steamed shumai! What do you think! Mom says please do not talk to me like that. I'm not talking to you like that. ████ shouts mom, can you put my window down? Mom puts it down a little and ████ screams that's only a little! Mom says yes just a little ████ screams no! Mom ████ is farting and putting it my way. ████ laughs and ████ hits him. Mom says no hitting! ████ hits ████ back and mom says I said no hitting. ████ continues to yell that ████ is bothering her. Mom says ████ if you're screaming like that I can't understand you. Mom tells ████ to leave ████ alone. She tells him not to look at ████ The children continue to yell and hit back and forth. Mom says ok, that's it, no tv and no PlayStation privileges ████ shouts that you never do anything mom. Mom says well ████ do you want me to advocate for you or do you want to advocate for yourself ████k tells mom, I wanted to call you yesterday but there was no supervisor. Mom says that's not true. ████ says well that's what I was told. Mom says Mr. Bill was available and Ms. Barbara was available. ████ begins to shout that ████ s looking at her. Mom tells her that he is allowed to look at her. Mom tells ████ to turn away from ████ and

for █████ to leave █████ alone. They head into the dealership and mom tells the children that they have to be on their best behavior because this is not a children's place. She tells them to look up at the screen when they enter the garage and read it to themselves. They enter and █████ looks up at the screen and says wow. They get out of the car, speak to the sales rep, and mom pays. The sales rep offers the kids some snacks they walk with him to go get them and to go see a new car on the lot. The kids stand nicely while mom gets her car returned to her. When they get back into the car, mom asks █████ if he wants the sushi. He says yes. She says okay, I'm going to order it. She places the order over the phone and they head out toward the restaurant. When they get there █████ asks if they can eat inside. He says he is so hungry and they need to go inside. He says I didn't eat breakfast or lunch. I'm so hungry! Mom says why didn't you eat breakfast or lunch? █████ says you did eat breakfast and lunch. Mom says █████ let him talk. Mom says I'm going inside to check. She comes back and tells the kids that they said it is okay for them to eat inside even though the sign says takeout only. █████ says mom, I did eat breakfast and lunch, I just wanted to eat inside. █████ says, see, █████ Mom says okay thank you for telling me the truth █████ She tells them they must be on their best restaurant behavior. They head inside and sit down. They eat their food and mom says I want to talk to you guys about something called dignity. They have a conversation about what it means to have dignity and stand up for yourself, and not let other people put you down. When they're done with dinner they exit and head back to the house. When they park, mom tells the children they need to wash their hands when they get inside. She goes with █████ to remind him how to wash his hands for the proper amount of time. When they head inside, █████ asks his mom for the PlayStation controller. Mom says she will set a timer for his game time. She says 30 minutes. █████ says can I have 45 minutes? Mom says okay █████ tells his friend that he has to get off the game at 7 o'clock. Mom sets the timer and she and █████ leave █████ room. Mom tells █████ that they need to do a reboot of her room. They look around her room and think about how they should rearrange everything. Mom tells █████ that she needs to try on her clothes for her Oprah Winfrey project. █████ does and mom tells her that she looks cute and asks her if she is excited about doing the project. █████ says yes. Mom asks are you happy you get to do the project with me? █████ says yes and hugs mom. Mom reminds █████ to change out of her clothes so they don't get dirty. When Katia changes out of her costume she sits down and turns on the tv. Mom says did you start it without me? █████ says no, and pauses the show. Mom asks her if she wants a little snack. She makes her a bowl of fruit. Mom tells her to sit at the table so she doesn't make a mess in her chair. █████ calls mom from the room and asks if she wants to play the game with him. She goes in the room and plays with him. █████ returns to the chair to finish watching the show. She asks mom if she wants to watch with her. Mom says yes, in a minute. █████ sits in the chair and watches The Proud Family. After a few minutes, █████ begins to shout Mom! Come here! She shouts mom! Over and over. Patrick comes out and tells █████ to come into the room. He tells her he wants to show her something. She calls for █████ and tells him to drag her. She wraps herself in the blanket and lies down on the floor. █████ takes █████ by the foot and drags her in the blanket into the room. She watches the Proud Family while mom and █████ play the

game. Mom asks the kids if they want hot chocolate. They say yes. She heads into the kitchen to make it for them. When she returns ▮▮▮▮ says wow that's good. They play together until it is time to go. When it's time to leave mom asks the children to bring their cups to the sink. While gathering their things ▮▮▮▮ says aww I don't wanna leave. Mom says aww, I don't want you to leave either. She says I love you little diva. They head to the car and mom tells them to immediately strap in. On the way back to the drop off. Mom says last Sunday we didn't do the healing circle. ▮▮▮▮ says so we're gonna do it now. They each take turns saying something they want, something they don't want and something they need prayers for. ▮▮▮▮ says he wants to go on vacation to DR, or Jamaica. Mom says with who? ▮▮▮▮ says with you. ▮▮▮▮ says he doesn't want to go to school tomorrow then says oh wow! There's no school tomorrow. He says he just needs general prayers ▮▮▮▮ says she wants to go on vacation with mommy to DR, or Jamaica, or Aruba. She says she doesn't want for ▮▮▮▮ to be mean. And she just needs general prayers. Mom says I want peace and harmony for our family of course. And I want you to have local friends at the complex so I'm going to set up some playdates for you with local people. And I want us to also go on vacation. They pull up to the meeting spot and mom says okay let's do KPM. They do their usual KPM and family chant. Mom says everyone give me kisses. ▮▮▮▮ leans forward and gives mom a kiss and ▮▮▮▮ gets out and kisses mom through the window. She says bye to them. The kids say bye and run towards CP.


**Report prepared by:** Erin Spencer

**Signature** _E S Spr_

*Supervised visitation is not therapy.*

**Title:** Supervised Visitation Monitor

**Date** _06/02/2024_

Case Name: Forgarty vs. Forgarty                     Date/time started: 5.26.23 4:30pm

Supervisor: Diane Gabriel                             Tel: 929.456.7282

Visiting Parent: Malena Forgarty                      Custodial Parent: Thomas Forgarty

Email: diane.gabriel@samaritanvillage.org            Name of Child(ren):

Index No.: _____ 21, JUDGE: Zugibe*

## TIME VISIT ENDED: 8:30pm                          Supervisor: D.G.

### Supervised Visit Report

The visit started on time at the Orangetown Police Station, CP gave supervisor pod key to give to VP. Children & VP greeted each other with hugs and kisses. Children immediately asked VP activity plan for today, VP stated plans has changed since she is unable to drive so were going to the "crib". VP had her friend "Prema" waiting for us. VP grabbed the youngest car seat and placed it in the backseat of her friend's car ensuring youngest was buckled up safely. VP sat in the back seat in between children as Supervisor sat in the front passenger seat. VP asked children about his and her wellbeing , schooling , and if they had a half day of school today. VP asked youngest if that is what she wore to school today. VP asked children what they did for the rest of the afternoon, children sharing they watched YouTube clips and played on their PS5. During car ride oldest played on his rubric cube and youngest ate her push pop candy. VP friend drove family to nearby ice cream shop Louie's, VP brought children ice cream. VP took selfie pictures with youngest during car ride. VP gave children kisses. On the way to the house, VP remembered she did not have her garage key opener on her because she left it the car at the police station and her front door was doubled locked from the inside. VP friend offered to bring her back to her car, stating I can turn around we are not too far from route 59 but VP declined stating she would just get someone from her leasing office or maintenance to open door. VP appeared to be calling the leasing office for assistance. The family was dropped off at the residence playground, where children played with each other. Both children asked VP to play with them , tagging VP saying your "IT". VP stated to give her a minute as she was waiting for important calls, and she needed to keep working on getting in touch with someone to unlock her garage door. Children continued playing. VP and children walked back to the home to meet maintenance who was waiting at her home. Maintenance was able to get door open after several attempts. The family was inside home by 5:54pm. Children ran upstairs, oldest going straight into his room to the PlayStation and youngest excited to see her new Lego set laid out on table. VP asked children if they washed their hands and what they wanted for dinner. VP & Children went over schedule in the oldest bedroom. VP allowed oldest to have independent play with his speaker and youngest started putting her Lego set together as oldest and VP set up his Roblox card. Oldest was happy and kept thanking VP telling her she's the best. VP gave oldest kisses and told him anything for you. VP & youngest worked together on her Lego set. Youngest told VP she missed her. Youngest told VP they will have a pool party, VP asked who would be attending. Youngest told VP about her friend "Sienna" and their interaction, VP explained to youngest it's important to be her own person and not to mimic anyone. VP played music in the background. VP went into the oldest bedroom to place food order. Youngest asked

VP to come with her to the bathroom. Pizza arrived, family said grace youngest leading and oldest ending by saying he wants his family reunited again so he can have sleepovers whenever he wants. Youngest told VP about "Megan" saying to her "get away black woman you African monkey", VP asked did she tell anybody and how did it make her feel. VP talked to youngest about racism and letting an adult know so it can stop. VP asked children about their dog Marley and their plans for the weekend. Oldest said they were having friends over for bbq party. Oldest and VP took selfies together. VP & youngest discussed their plans for Sunday's visit that is specially for youngest, VP asked youngest if she would wear her dress and youngest said yes. VP concluded her cousins would be at their visit. VP made an announcement that Uber was coming soon, youngest said "mommy I don't want you to leave" VP washed youngest underwear for her and told her to put it on so they can leave. VP and children gathered their things and went outside to meet driver. During car ride back to meeting location, family sat in the back together, oldest and VP went through photos on VP's phone and changed family picture on screensaver. The family did their family handshake gave each other hugs kisses and said I love you's to each other. Family discussed plan for Sundays visit , VP reminded children to wear their best clothes . VP also reminded oldest to look after his sister tomorrow as there will be a lot of people at the house and wants to ensure she is safe. Children were playful, in good spirits, children appeared happy and comfortable around VP. Overall Visit went well.

**Case Name:** Forgarty vs. Forgarty

**Date/time started:** 1.24.23 5:45pm

**Supervisor:** Diane Gabriel

**Tel:** 929.456.7282

**Visiting Parent:** Malena Forgarty

**Custodial Parent:** Thomas Forgarty

**Email:** diane.gabriel@samaritanvillage.org

**Name of Child(ren):** 

**Index No.** [redacted]021 , **JUDGE:** Zugibe*

## TIME VISIT ENDED: 7:45pm          Supervisor: D.G.

### Supervised Visit Report

The visit started on time at the Scared Heart Church location. VP greeted children with hugs and kisses. VP asked children about their day in school and wellbeing. VP helped children buckle into the car. Oldest asked VP what was wrong and why was she sad (2x). VP said that she did not receive her 7:30pm call last night from children and was worried and thought something had happened to them. VP became emotional. Children stated 7:30pm is their new hour bedtime. VP asked children why did they not call or ask CP for the phone, children stated CP said it was time for bed and they would see VP the next day. Oldest concluded the phone is in the utility closet and he does not have access to get phone independently to call. VP reminded children she looks forward to their calls when they do not see each other and to either call or facetime through IPAD at 7;30pm, oldest concluded they do have access to electronics on school nights.

Children were eager to share their reading with VP during car ride. Both children read, youngest reading outloud "Mrs. Dole is out control". VP encouraged children, helped youngest sound out words she got stuck on. Upon arriving home, children settled in, VP reminded children to wash their hands. Oldest continued his homework on VP's computer. VP prepared to serve children dinner. VP helped youngest finish her dinner. VP helped oldest with his word search to complete such as "tea paragraphs". The oldest read to VP his paragraphs, VP complimented his work. Oldest ate dinner after he completed his homework. VP asked both children about their classes today and if they were caught up with their work in class. VP informed children that their lunch accounts were low and she would replenish the account. VP & Children played a tennis game on the Olay and hide & seek. All parties appeared to have fun. Children look to VP for direction and their needs. Children asked VP how much time they had together. VP & children got ready to end visit. During car ride to drop off location VP helped oldest try to connect internet on their switch. Children began quarreling in the back seat, VP was able to diffuse the tension between children. Children look to VP for comfort.

Overall visit went well between all parties. VP asked children what their favorite part about the visit was today, children states "seeing you". VP told the children she loved them, to have a good day in school tomorrow and to call her tomorrow night.

# 13

FILED: ROCKLAND COUNTY CLERK 09/06/2024 11:51 PM

NYSCEF DOC. NO. 1175

Case 1:24-cv-08705-JLR   Document 1   Filed 11/15/24   Page 304 of 532

RECEIVED NYSCEF: 09/06/2024

<u>Sai Malena Jimenez, PO Box 261, Blauvelt, NY 10913, sunnysky155@gmail.com</u>

Index No. 035547/2021                                      September 6, 2024

**Supplement to Affidavit**

Re: Violations of Automatic Orders

Dear Honorable Judge Zugibe:

Pursuant to the Court's Order dated August 29, 2024, this supplement details specific violations by Thomas Fogarty of the automatic orders issued by this Court on September 29, 2022.

1. **Violation of Automatic Orders**: The Court's automatic orders prohibited the incurrence of unreasonable debts or the disposal of marital assets without mutual consent or court approval to preserve the status quo and protect the rights of both parties during the divorce proceedings. Despite this, **Thomas Fogarty has procured three loans totaling $1,550,000 from our marital estate without such consent or approval: $250,000 on September 27, 2022; $700,000 on October 22, 2023; and $600,000 on January 19, 2024. $1,550,000. (See Attached Exhibit – Signed Statement of Net Worth from May 3, 2024).**

2. **Equity:** The principle of equity ensures that both parties have a fair opportunity to present their case and receive a just resolution. By violating the automatic orders, Thomas Fogarty has prevented me from receiving this equitable treatment, unfairly disadvantaging me through unilateral actions.

3. **Unlawful Use of Marital Assets**: Mr. Fogarty has allocated these funds for his legal fees and personal expenses, as outlined in his signed Statement of Net Worth dated May 3, 2024. This misuse of marital assets significantly depletes our estate.

4. **Relevant Statutes and Rules:**

   A. **Domestic Relations Law (DRL) § 236(B)(2)(b):** This statute addresses automatic orders and provides that they are binding on the parties from the commencement of the action.

   B. **Judiciary Law § 753:** Allows for contempt proceedings if a party disobeys a court order.

5. **Discrepancy in Legal Fees**: Despite the $1.6 million accessed from our assets for his expenses while blocking me from our assets. I have only been allocated only $125,000 for my legal fees, severely hindering my ability to obtain and maintain adequate legal representation.

6. **Financial Hardship**: The depletion of marital assets has exacerbated my financial difficulties. I am unable to secure proper legal representation while Mr. Fogarty continues to deplete our multimillion-dollar estate.

7. **Domestic Relations Law §237(b):** Under this law, I am entitled to emergency interim legal fees to ensure equitable representation. The actions of Mr. Fogarty have created an unjust economic disparity that remains unaddressed.

8. I have not yet sought relief for contempt of court regarding Thomas Fogarty's violations of the automatic orders.

9. Given the egregious violations of Court orders and the substantial impact on the equitable distribution of marital assets, I respectfully request that the Court hold Thomas Fogarty in contempt for his unlawful actions, including his financial misconduct and abuse. Specifically, these issues include:

   A. **Financial Misconduct:** Mr. Fogarty has improperly and unlawfully handled marital assets during the divorce proceedings. His actions include diverting substantial funds to benefit himself disproportionately while obstructing my access to those same assets, thereby hindering my ability to participate fairly in this legal process.

   B. **Marital Asset Misappropriation:** Mr. Fogarty has utilized marital funds inappropriately, allocating them for personal purposes and legal fees without my consent, which constitutes a clear violation of our agreed-upon financial arrangements and Court orders.

   C. **Economic Disparity:** Mr. Fogarty's conduct has created a severe imbalance in financial resources, limiting my ability to obtain adequate legal representation and otherwise participate equitably in the divorce proceedings.

   D. **Contempt of Court:** Given that Mr. Fogarty's actions contravene explicit Court orders, I am requesting that the Court find him in contempt. This motion seeks to enforce compliance with existing orders and address the unlawful conduct that has undermined the fairness of the proceedings.

   E. **Unfair Financial Conduct:** The actions of Mr. Fogarty have unfairly disadvantaged me by blocking access to marital funds, which has exacerbated the economic disparity between us and further complicated the division of assets.

Due to these violations, I seek appropriate remedies from the Court, including enforcement of equitable distribution, imposition of sanctions, and necessary adjustments to the division of assets to rectify the financial imbalance caused by Thomas Fogarty's misconduct. Thank you.

Respectfully submitted,

*Sai Malena Jimenez Fogarty*

Sai Malena Jimenez Fogarty

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 306 of 533

**FILED: ROCKLAND COUNTY CLERK 05/03/2024 02:56 PM**    INDEX NO.

NYSCEF DOC. NO. 8816                                              RECEIVED NYSCEF: 05/03/2024

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

--------------------------------

Thomas Fogarty                    Plaintiff,        :      **UPDATED STATEMENT OF NET WORTH**
                                                     :      DATED:    5/3/2024
                      - against -                    :
                                                     :      Index No:.
                                                     :      Date Action Commenced:    9/28/2021
Sai Malena Jimenez-Fogarty        Defendant,         :
                                                     :

--------------------------------

Complete all items, marking "NONE," "INAPPLICABLE," or "UNKNOWN," if appropriate.

STATE OF NEW YORK                   )
                                    )        SS:
COUNTY OF ROCKLAND                  )

THOMAS FOGARTY, the Plaintiff herein, being duly sworn, deposes and says that, **subject to the penalties of perjury,** the following is an accurate statement as of 5/3/2024 of my net worth (assets of whatsoever kind and nature and wherever situated minus liabilities), **statement of income from all sources** and statement of assets transferred of whatsoever kind and nature and wherever situated and statement of expenses:

I.    <u>FAMILY DATA</u>

    (a)  Thomas Fogarty's date of birth:  . . . . . . . . . . . . . . . ▮▮▮▮▮  age 50
         Thomas Fogarty's place of birth  . . . . . . . . . . . . . . . . Ireland
    (b)  Sai Malena Jimenez-Fogarty's date of birth:  . . . . . . . ▮▮▮▮▮  age 49
         Sai Malena Jimenez-Fogarty's place of birth  . . . . . . . Bronx, New York
    (c)  Date married  . . . . . . . . . . . . . . . . . . . . . . . . . . 1/25/2013
         Place married (city, county state)  . . . . . . . . . . . . . . New York, New York, NY
    (d)  Names and dates of birth of Child(ren) of the marriage:
         Patrick Fogarty 11/07/2013, age 10

         Katia Fogarty 9/16/2015, age 8

    (e)  Minor child(ren) of a prior marriage:  ___0
    (f)  Custody of child(ren) of prior marriage:  ____    Sai Malena Jimenez-Fogarty   ____   Thomas Fogarty
    (g)  Thomas Fogarty's present address  . . . . . . . . . . . . . . ▮▮▮▮▮
                               Blauvelt, NY 10913
         Sai Malena Jimenez-Fogarty's present address  . . . . . . Unknown / Confidential
                               NY
    (h)  Occupation of Thomas Fogarty  . . . . . . . . . . . . . . . Owner
         Employer of Thomas Fogarty  . . . . . . . . . . . . . . . . Highbury Concrete, Inc.

                               Pearl River, NY 10965
         Occupation of Sai Malena Jimenez-Fogarty  . . . . . . . Account Executive
         Employer of Sai Malena Jimenez-Fogarty  . . . . . . . . . .

FILED: ROCKLAND COUNTY CLERK 09/05/2024 12:56 PM   INDEX NO. ▓▓▓▓▓▓

NYSCEF DOC. NO. ▓▓▓                                           RECEIVED NYSCEF: 09/05/2024

## V.   LIABILITIES

**A.   Accounts Payable**


**B.   Credit Card Debt**


**C.   Mortgages Payable on Real Estate**

3.1   a. Mortgagee name & address . . . .   Cross Country Mortgage - loan ▓▓▓▓▓▓▓▓▓▓ 82
     b. Address of property mortgaged . . .   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

     c. Mortgagor(s) . . . . . . . . . . . . . . . .   Joint
     d. Original debt . . . . . . . . . . . . . . . .   $
     e. Date of incurring debt . . . . . . . . .   05/2017
     f. Monthly or other periodic payment . . . . . . . . . . . . . . . . . . . . . . . .   $   5,040.40
     g. Maturity date . . . . . . . . . . . . . . .   6/2036
     h. Amount of debt as of date of commencement . . . . . . . . . . . . . . . . .   $   0
     i. Amount of current debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   $   376,864
**As of 3/11/2024**


**D.   Home Equity and Other Lines of Credit**


**E.   Notes Payable**

5.1   a. Description . . . . . . . . . . . . . . .   Loan
     Note holder name&address . . . . .   Highbury Concrete Inc.
     b. Debtor . . . . . . . . . . . . . . . . . . .   Thomas Fogarty
     c. Amount of original debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   $   250,000
     d. Date of incurring debt . . . . . . . . .   9/27/2022
     e. Purpose . . . . . . . . . . . . . . . . . .   living expenses and legal fees
     f. Monthly or other periodic payment . . . . . . . . . . . . . . . . . . . . . . . .   $   0.00
     g. Amount of debt as of date of commencement . . . . . . . . . . . . . . . .   $   0
     h. Amount of current debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   $   250,000

5.2   a. Description . . . . . . . . . . . . . . .   Loan
     Note holder name&address . . . . .   Highbury Concrete Inc
     b. Debtor . . . . . . . . . . . . . . . . . . .   Thomas Fogarty
     c. Amount of original debt . . . . . . . . . . . . . . . . . . . . . . . .   $   700,000
     d. Date of incurring debt . . . . . . . . .   October 22, 2023
     e. Purpose . . . . . . . . . . . . . . . . . .   Living expenses and legal fees
     f. Monthly or other periodic payment . . . . . . . . . . . . . . . . . . . . . . . .   $   0.00
     g. Amount of debt as of date of commencement . . . . . . . . . . . . . . . .   $   0
     h. Amount of current debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   $   700,000

**FILED: ROCKLAND COUNTY CLERK 09/05/2024 02:00 PM**
NYSCEF DOC. NO. 2236                                                              RECEIVED NYSCEF: 09/05/2024

5.3 a. Description . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _____ Loan
     Note holder name&address . . . . . _____ Highbury Concrete Inc.
     b Debtor . . . . . . . . . . . . . . . . . . . . . . . . _____ Thomas Fogarty
     c. Amount of original debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 600,000
     d. Date of incurring debt . . . . . . . . . . _____ January 19, 2024
     e. Purpose . . . . . . . . . . . . . . . . . . . _____ Living Expenses and legal fees
     f. Monthly or other periodic payment . . . . . . . . . . . . . . . . . . . . . . . $ _____ 0.00
     g. Amount of debt as of date of commencement . . . . . . . . . . . . . . . . $ _____ 0
     h. Amount of current debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 600,000


**F.**   Brokers' Margin Accounts


**G.**   Taxes Payable


**H.**   Loans on Life Insurance Policies


**I.**   Installment Accounts Payable (security agreements, chattel mortgages.)


**J.**   Other Liabilities
     10.1 a. Description . . . . . . . . . . . . . . . . . . . _____ Highbury Concrete-various lawsuits
          b. Name & address of creditor . . . . . _____ contingent liabilites

          c. Debtor . . . . . . . . . . . . . . . . . . .
          d. Original amount of debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ Unknown
          e. Date incurred . . . . . . . . . . . . . . . _____ 2016 (approxiamte)
          f. Purpose . . . . . . . . . . . . . . . . . . . _____ Insurance, labor (overtime)
          g. Monthly payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _____ 0.00
          h. Amount of debt as of date of commencement . . . . . . . . . . . . . . . . $ _____ TBD
          i. Amount of current debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ TBD


### SUMMARY - NET WORTH

TOTAL MARITAL ASSETS   $ _____ TBD

TOTAL MARITAL LIABILITIES (minus)   $ _____

MARITAL NET WORTH   $ _____ TBD

**FILED: ROCKLAND COUNTY CLERK 09/05/2024 02:58 PM**

NYSCEF DOC. NO. 8854                                                    RECEIVED NYSCEF: 09/05/2024

VII.   LEGAL & EXPERT FEES

Please state the amount you have paid to all lawyers and experts retained in
connection with your marital dissolution, including name of professional, amounts and
dates paid, and source of funds. Attach retainer agreement for your present attorney.
Marquardt for Deft $50K, Winner for Deft. $25K, Lindsay for Deft. $50K
NGH $12,500, Miller Zeiderman LLP $542,753.92
Dr. Mednick $39k, Lee Miller $7,500 est.

VIII.  OTHER DATA CONCERNING THE FINANCIAL CIRCUMSTANCES OF THE
PARTIES THAT SHOULD BE BROUGHT TO THE ATTENTION OF THE COURT ARE:
Pursuant to conference held 3/1/2022, Plaintiff paid Defendant $45,038.46 as
division of joint saving account x5739; check #142 from acct. x5945.
SEE FURTHER ADDENDUM ATTACHED

The foregoing statements and a rider consisting of _____ page(s) annexed hereto and
made a part hereof, have been carefully read by the undersigned who states that they are
true and correct and states same, under oath, subject to the penalties of perjury.

_____
Thomas Fogarty

This is the 3rd
Statement of Net Worth
I have filed in this proceeding

Attorney Certification:

_____
Ashley Kersting

**REQUIRED ATTACHMENTS:**
Retainer Agreement
Most recent W-2, 1099s, K1s and Income Tax Returns

# 14



Paula M's post



**Elyssa Michaels**

Ressler & Associates in White Plains

9147612300

2y    Like    Reply                    1 



**Samantha Louise**

Proto, Sachs & Brown in White Plains!!! I can personally attest!! Feel free to message me.

2y    Like    Reply                    1 



**Marc Abrams**

It depends what your situation is.  Pm me and I can give you more targeted recommendations.  I am good friends with Lisa Zeiderman and Faith Miller.

2y    Like    Reply                    1 



**Kristin Peterson**

Miller and Zeiderman in White Plains. The best.

2y    Like    Reply                    1 



**Lindsay Ying**

Janie Stack, she's amazing!

2y    Like    Reply                    2 

 Write a comment...      

FILED: WESTCHESTER COUNTY CLERK 09/14/2022 05:58 PM INDEX NO. 60587/2022
NYSCEF DOC. NO. 23                                              RECEIVED NYSCEF: 09/14/2022

# MILLER ZEIDERMAN LLP

## ATTORNEYS AT LAW

FAITH G. MILLER
LISA ZEIDERMAN\*
KEVIN P. CONNOLLY
TIFFANY E. GALLO
JENNIFER M. JACKMAN\*
ASHLEY KERSTING\*\*
SIOBHAN T. O'GRADY
EMILY C. WALSH

ADRIENNE ABRAHAM
CHRISTINE BIANCANIELLO
KEVIN C. BROWN\*
LAURIE REMPP
SHAJNA TESSER-FRIEDMAN\*\*
LIZA J. TRAZZERA

140 GRAND STREET
5TH FLOOR
WHITE PLAINS, NY 10601
(914) 455-1000
FACSIMILE: (914) 468-4244

150 EAST 52ND STREET
SUITE 1002
NEW YORK, NY 10022
(212) 769-3500

OF COUNSEL

JOHN P. CORRIGAN\*
GABRIELLE HARTLEY \*\*\*
KEITH L. LABIS

\*MEMBER OF NY & CT BARS
\*\*MEMBER OF NY & NJ BARS
\*\*\* MEMBER OF NY, NJ & MA BARS

## RETAINER AGREEMENT

**THIS AGREEMENT FOR LEGAL SERVICES** by and between MILLER ZEIDERMAN LLP, with offices at 140 Grand Street, Suite 503, White Plains, NY 10601 and 150 East 52nd Street, Suite 1002, New York, NY 10022 hereinafter known as the "Firm" and Michal Packman residing at 18 Bayberry Lane, Rye Brook, New York 10573, hereinafter known as the "Client".

The Client retains this Firm to render services in connection with:

☐ the prosecution or defense of a divorce action, including the attempt to negotiate a resolution of the matter.

☐ the negotiation, preparation, and/or review of a separation agreement or other marital settlement agreement.

☐ the filing and perfecting of an appeal.

■ Other: <u>Motion to dismiss summons and complaint.</u>

It is further understood that:

a) Unless specifically referenced above, this Agreement does not apply to any appeals or post-judgment actions, proceedings, or applications and that, if such engagement were to be accepted by the Firm in the future, the Firm's representation would have to be evidenced by execution of another and separate Retainer Agreement, or by a written amendment to this Retainer Agreement. However, this Retainer Agreement in no way obligates the Firm to accept any such engagement in the future.

b) Upon the execution of a separation agreement, other final settlement agreement, entry of a Judgment of Divorce, Judgment of Separation, or other Order concluding the matter for which the Client has retained the Firm, then, upon such event the matter for which the Client has retained this Firm as evidenced by this Retainer Agreement will be deemed satisfied and the Firm's representation

[FILED: WESTCHESTER COUNTY CLERK 09/14/2022 05:32 PM]    INDEX NO. 63957/2022
NYSCEF DOC. NO. 23                                                    RECEIVED NYSCEF: 09/14/2022

Page 2 of 8

of the Client will be deemed completed and terminated. This agreement does not apply to any requests to enforce or modify any agreement, judgment or order and if such engagement were to be accepted by the Firm any such further representation would have to be evidenced by execution of another and separate Retainer Agreement, or by a written amendment to this Retainer Agreement.

c)   In the event that this matter requires the preparation of a Qualified Domestic Relations Order (QDRO), a separate Retainer Agreement must be prepared, and a separate payment of legal fees for this service will be required. However, at the Firm's discretion and with the Client's consent, the Firm may have the document prepared by an outside service at the Client's expense or prepare it at the Firm's regular hourly rates.

The Client authorizes the Firm to take any steps which, in the sole discretion of the Firm, are deemed necessary or appropriate to protect the Client's interest in the matter.

In order for the Firm to begin its representation, the Client has agreed to pay and the Firm has agreed to accept a retainer payment of **$0.00.**  This retainer payment does not represent the amount of the overall fee which the Client may incur by virtue of the Firm's services.  The amount of the Firm's eventual fee will be based upon the regular schedule of established hourly time charges, along with any out-of-pocket disbursements (Court costs, filing fees, messenger services, transcripts of proceedings, long distance telephone calls, telefaxes, e-mails, copying costs, process service fees, deposition and Court transcripts, excess postage, etc.) which are incurred on the Client's behalf.

We have informed the Client that trials are particularly expensive as one or more attorneys may be involved on a daily basis for full-days during the trial. Accordingly, we have agreed that, prior to the commencement of any hearing or trial, or prior to the resumption of any hearing or trial following the conclusion of a recess period of more than ten (10) Court days, the Client will provide the Firm, at least thirty days prior to the commencement of such trial or hearing, with a trial retainer of no less than Fifty Thousand ($50,000.00) Dollars or other amount as required. As with the initial retainer, a trial retainer does not necessarily represent the total fee the Client may incur by virtue of the Firm's services. The amount of the Firm's eventual fee will be based upon the hourly rates set forth below, together with any out-of-pocket disbursements incurred on the Client's behalf.

The Client further understands that the hourly rates apply to all time expended relative to the Client's matter, including but not limited to, office meetings and conferences, e-mails, texts or other written messages, telephone calls and conferences, either placed by or placed to the Client, or otherwise made or had on the Client's behalf or related to the Client's matter, preparation, review and revision of correspondence, pleadings, motions, disclosure demands and responses, affidavits and affirmations, or any other documents, memoranda, or papers relative to the Client's matter, legal research, Court appearances, conferences, file review, preparation time, travel time such as to and from Court or another attorney's office or other places necessary to travel to on behalf of the Client, and any other time expended on behalf of or in connection with the Client matter.

If the matter is concluded, whether by settlement (e.g., a separation agreement or settlement stipulation) or by judicial determination, or if the attorney-client relationship is terminated without the matter having been concluded (e.g., if the Client and his/her spouse were to reconcile and the action were discontinued, or if the Client were to discharge this Firm as his or her attorneys, or if this Firm were to withdraw its representation) and to the extent that the retainer paid shall exceed the

[FILED: WESTCHESTER COUNTY CLERK 11/14/2022 10:31 AM] INDEX NO. 63577/2022
NYSCEF DOC. NO. 23                                          RECEIVED NYSCEF: 09/14/2022

Page 3 of 8

overall fee which the Client has incurred by virtue of the Firm's services rendered and disbursements incurred by the Firm, the excess shall be refunded to the Client.

In the event that any bill from this Firm remains unpaid beyond a thirty (30) day period, the Client agrees that this Firm may seek to withdraw its representation at the option of the Firm. In the event that an action is pending, and absent the Client's consent, an application must be made to the Court for such withdrawal. Where the fee is unpaid for the period set forth above, the Client acknowledges that in connection with any such withdrawal application, that the account delinquency shall be good cause for withdrawal.

The Client agrees to pay the Firm such fees and to reimburse the Firm for advances on the Client's behalf that may be due from time to time upon receipt of that bill we submit to the Client for same. If an amount due to the Firm is not paid within thirty (30) days after the Firm's statement to the Client for the amount due, interest at the rate of one percent (1%) per month on the Clients' outstanding balance due shall be added to the balance due to the Firm.

The Client agrees to be personally liable for and shall pay for the services of this Firm for the legal fees incurred on their behalf in accordance with the following schedule of hourly rates:

| | |
|---|---|
| Faith G. Miller | $675.00/hour |
| Lisa Zeiderman | $675.00/hour |
| Kevin P. Connolly | $595.00/hour |
| Tiffany E. Gallo | $595.00/hour |
| Jennifer M. Jackman | $595.00/hour |
| Ashley Kersting | $525.00/hour |
| Siobhan T. O'Grady | $550.00 hour |
| Emily C. Walsh | $550.00/hour |
| Adrienne Abraham | $525.00/hour |
| Christine Biancaniello | $550.00/hour |
| Kevin C. Brown | $525.00/hour |
| Laurie Rempp | $450.00/hour |
| Shauna Tesser-Friedman | $525.00/hour |
| Liza J. Trazzera | $450.00/hour |
| Other Associate Attorneys | $300.00 - $595.00/hour |
| John P. Corrigan, of counsel | $550.00/hour |
| Keith L. Labis, of counsel | $650.00/hour |
| Attorneys of Counsel | $475.00 - $650.00/hour (unless otherwise agreed) |
| Paralegals and Legal Assistants | $200.00-$325.00/hour |

In addition to the foregoing, the Client's responsibility will include direct payment or reimbursement of this Firm for disbursements advanced on their behalf, the same to include, but not necessarily be limited to, Court filing fees, recording fees, charges of process servers, travel expenses, copying costs at $0.25 per page, messenger services, facsimile transmission costs at $5.00 per fax up to 10 pages, $0.25 per page thereafter, necessary secretarial overtime, transcripts and the customary fees of stenographers referable to examinations before trial (depositions) in the event such

Page 4 of 8

examinations are utilized. Prior to such deposition an advanced deposit of $750 shall be paid to the stenographer by the Client with the balance due to the stenographer to be paid by the Client upon billing from the reporting service. The Client understands that the Firm cannot obtain the deposition transcripts without payment in full being made to the reporting service. It is specifically understood and agreed that such payment shall be made by the Client directly to the stenographer prior to commencing such examination and thereafter, and the same shall apply to all Court filing fees.

Each letter will be billed at a minimum of .2 hour and every telephone conversation and e-mail or other written communication at a minimum of .1 hour. This amount has been arrived at as a result of calculating the time involved in retrieving the file, and examining the documents or letters required to consider the problem arising from or to be dealt with in the call or letter.

It may be necessary from time to time for the applicable time charges or hourly rates for attorneys in the Firm to be increased. Any such adjustments will be reflected in the Client's billing statement and the Client will be given 30 days advance notice of any such increase.

The Client will be billed periodically, generally each month but in no event less frequently than every sixty (60) days. Included in the billing will be a detailed explanation of the services rendered, by whom rendered and the disbursements incurred by the Firm in connection with the matter. Time expended and disbursements made on the Client's matter will be charged against the retainer payment. In the event the retainer payment is exhausted as a result of time charged and disbursements expended, the Client agrees at that time to replenish the retainer by payment of an additional retainer in the amount equal to the initial retainer amount. At such time as each additional retainer amount is exhausted, the Client agrees to replenish the account by payment of an additional retainer amount in an amount equal to the initial retainer amount. In the event the Client fails to replenish the retainer amount as required, the Firm reserves the right to seek to withdraw as the Client's attorneys.

Upon receipt of the Firm's bill, the Client is expected to review the bill and agrees to bring to the Firm's attention any objections the Client may have to the bill within ten (10) days of receipt of the bill. The Client further agrees that his or her failure to raise any question, concern or objection within ten (10) days of receiving a bill from the Firm shall constitute as Client's agreement that the entries on the bill are appropriate and reasonable, a waiver of any question, concern or objection, and that the Firm is entitled to payment for the amounts stated therein. While the Firm strives to keep perfectly accurate time records, the Firm recognizes the possibility of human error. The Client will not be charged for time expended in discussing with the Firm any aspect of the bill rendered.

By this Agreement the Client authorizes the Firm to deduct each month from any retainer account established by the Firm from the Client's current retainer and any additional retainer the Client provides to the Firm an amount equal to the amount of the billing for services rendered on the Client's behalf as set forth on the monthly billing statement forwarded to the Client.

The Firm acknowledges an obligation to provide the Client with copies of legal documents at their request and cost relating to his or her case and will keep the Client apprised of its status.

While the Firm expects to be paid the fees due the Firm in timely fashion, in situations where

FILED: WESTCHESTER COUNTY CLERK 09/14/2022
NYSCEF DOC. NO. 23                                    RECEIVED NYSCEF: 09/14/2022

Case 1:24-cv-08705-JLR    Document 1-7    Filed 11/15/24    Page 317 of 533

Page 5 of 8

the Client does not have funds readily available to pay additional fees as they accrue, the Firm may, as an accommodation to the Client, agree to take a security interest in property in lieu of immediate payment. A security interest may take the form of a confession of judgment, promissory note, or mortgage upon specified property. Such interest will result in a lien attaching to the Client's property. In the case of the marital residence, any such security interest shall be nonforeclosable, i.e., the Firm shall not force a sale of the Client's home but would be paid at the time the Client sells the premises. The Client is advised that any such security interest can be granted to the Firm only with the permission of the justice assigned to the Client's case upon an application on notice to the opposing party, and after an application has been made for the Client's spouse to pay the outstanding fees. The Firm shall not be obligated to agree to take a security interest in lieu of immediate payment, and this shall be within the Firm's discretion.

In the event such application for a security interest for the fees due this Firm is made to the Court, the Client agrees to cooperate in connection with such application, sign an affidavit and consent to the relief being requested from the Court.

The Client is advised that if, in the judgment of this Firm, there has been an irretrievable breakdown in the attorney-client relationship, or a material breach of the terms of this Retainer Agreement, the Firm may decide to make application to the Court in which the Client's action is pending to be relieved as the Client's attorneys. In such event, the Client will be provided with notice of the application and an opportunity to be heard. Whether the Firm's discharge is by Court order or with the Client's consent, the Client understands and agrees that the Firm shall have a retaining lien upon the Client's file and all of the papers until payment of any outstanding fees due the Firm is made or security for payment is given the Firm. Should any fees be due and owing to this Firm at the time of the Firm's discharge, the Firm may also seek a charging lien, i.e., a lien upon the property that is awarded to the Client as a result of equitable distribution. No such lien may attach to maintenance or child support payments.

While the Firm seeks to avoid any fee disputes with the Firm's clients, in the event such a dispute does arise, the Client is advised that the Client has the right, at the Client's election, to seek arbitration to resolve the fee dispute. The Client's signature to this Retainer Agreement signifies that the Client has received a copy of the Part 137 Attorney-Client Fee Dispute Resolution Program, Local Program Rules and Procedures as promulgated by the Ninth Judicial District, simultaneously with this Retainer Agreement.

Pursuant to Court rule, a party aggrieved by the determination rendered in a fee arbitration has the right to commence an action on the merits of the fee dispute in a Court of competent jurisdiction within thirty (30) days after the arbitration award has been mailed. By signing this Retainer Agreement below, the Client waives this right and agrees that the arbitration award shall become final and binding, absent the existence of grounds for setting aside such awards, which are provided for by state statute and applicable case law.

In the event of a fee dispute, the Firm will advise the Client in writing, by certified mail, that the Client has thirty (30) days from receipt of such notice in which to elect to resolve the dispute by arbitration, and the Firm will enclose a copy of the arbitration rules and a form for requesting arbitration. In the event the Client elects arbitration, the decision resulting from arbitration will be

FILED: WESTCHESTER COUNTY CLERK 09/14/2022 04:27 PM   INDEX NO. 059577/2022
NYSCEF DOC. NO. 23   RECEIVED NYSCEF: 09/14/2022

Case 1:24-cv-08705-JLR   Document 1-7   Filed 11/15/24   Page 318 of 533

Page 6 of 8

binding upon both the Client and the Firm, to the extent set forth above.

If appropriate, an application may be made to the Court in which the Client's action is pending, either prior to trial or at the trial, for the Client's spouse to pay all or part of the Client's legal expenses incurred and/or to be incurred in this matter. There is no certainty that any such recovery may actually occur, as the application rests in the discretion of the Court. In the event such an award of fees is made and collected, the amount collected shall be credited to the Client's bill only when and if actually paid to the Firm. The Client understands that neither an agreement to pay counsel fees nor an order directing payment of counsel fees relieves the Client of the primary obligation to pay the counsel fees due to the Firm. The Client also understands that the Firm is not obligated to take any steps to collect counsel fees from the Client's spouse and any time spent to collect same shall be billed at the hourly rates established herein. At the end of the Client's case (i.e., a final judgment in the matrimonial action) any amount collected that exceeds the Client's billing will be refunded to the Client. Conversely, the Client shall remain liable for any balance due to the Firm after crediting any amount collected from the Client's spouse.

Further, this Firm may engage, on the Client's behalf, and with the Client's prior consent, the services of an accountant in connection with an examination of the financial circumstances attendant upon the matrimonial action or proceeding. In addition, such other professionals may be utilized as may be required, with the Client's prior consent, including, but not limited to, real estate appraisers and investigators, and mental health professionals on visitation and custody cases). With regard to the charges which may be levied by such professionals, the same shall be the Client's responsibility, either directly to such professionals or in reimbursement of this Firm.

**The Client has been specifically advised, and the Client understands, that the Firm is not providing any tax or financial advice and that the Client understands that he/she should obtain tax and/or financial advice from a competent professional.**

In order for the Firm to properly protect the Client's interests, and in light of the Firm's experience in matrimonial litigation, it is important that we select or at least consent to the experts being retained in the Client's matter. Accordingly, the Client agrees to procure the Firm's consent relative to the retention of any experts of the Client's case.

The Client understands that no one particular member of the Firm is being retained but, rather, the Firm, as an entity, is undertaking legal representation of the Client pursuant to this Retainer Agreement and that the Firm reserves the right to assign and delegate all aspects of such representation as the Firm, in its sole discretion, deems appropriate. Such assignment and delegation may include, but is not limited to, preparation of pleadings, motions, disclosure demands and responses, settlement negotiations, preparation of agreements, preparation and conduct of examinations before trial, Court appearance, trial work, and any other matter deemed by the Firm to be appropriately delegated.

Likewise, law clerks and paralegals may be called upon to assist in document production, file organization, preparation and review of financial statements and data, and such other duties as are assigned by the Firm.

Page 7 of 8

From time to time it may be necessary to appear on the Client's behalf in Supreme or Family Court, in conjunction with the proceedings the Client has retained the Firm to represent the Client in or otherwise. In that event, the Firm reserves the right to have the Client sign a new Retainer Agreement for that separate proceeding or Court appearance. If not, then the Client agrees that the terms of this Retainer Agreement shall apply to such other separate proceedings.

The Client has been specifically advised that because of the nature of the Firm's practice in the field of domestic relations, it may not be responsible for telephone calls to be immediately returned. If the Client does not receive a prompt return call, the Client should call and request that a message be sent to an attorney for an immediate response. The Client may also call for an appointment to discuss the matter more fully.

**Non-Disparagement.** It is further agreed that at no time will the Firm or the Client cause to be published to third parties, nor will the Firm or the Client permit the publication by third parties, in any form whatsoever (that is in print, digital, video or any format) in any forum whatsoever (email, text, social media, website postings, etc.), any statement of fact or opinion that is in any way derogatory of the other. Except with respect to the prohibition with respect to the publication by third parties, nothing in the preceding sentence shall be intended to limit the Client's ability to speak privately and freely in confidence with his/her extended family, significant others, mental health professionals or other professionals who are legally obligated to retain such conversations in confidence.

**The Client acknowledges that he or she has read this Agreement in its entirety, has had full opportunity to consider its terms, and has had full and satisfactory explanation of same, and fully understands its terms, and agrees to such terms.**

The Client fully understands and acknowledges that there are no additional or different terms or agreements other than those expressly set forth in this written Agreement.

The Client acknowledges that he or she was provided with and read the Statement of Client's Rights and Responsibilities.

The Firm has informed the Client that pursuant to Court rule, it is required, as the Client's attorneys, to certify Court papers submitted by the Client which contain statements of fact and specifically to certify that we are aware of no inaccuracies in the Court submission. Accordingly, the Client agrees to provide the Firm with complete and accurate information which forms the basis of Court papers and to certify in writing to the Firm the accuracy of the Court submissions which the Client will review prior to the time the papers are actually submitted to the Court.

It is specifically acknowledged by the Client that this Firm has made no representations to the Client, express or implied, concerning the outcome of the litigation presently pending or hereafter to be commenced between the Client and the Client's spouse. The Client further acknowledge that this Firm has not guaranteed and cannot guarantee the success of any action taken by the Firm on the Client's behalf during such litigation with respect to any matter therein, including without limitation issues of spousal and/or child support, custody and/or visitation, exclusive occupancy of the marital premises, equitable distribution of marital assets, the declaration of separate property, counsel fees and/or a trial.

## SAVVY LADIES

Get Help ⌄    Our Impact ⌄    Financial Roadmap ⌄    News & Events ⌄    Get Involved ⌄



Get Divorce Savvy

You're Part of a Financial Divorce Roadmap Series for Divorce

Education. These three panels to help you understand what's going on and what it all
means fully legally for you in your divorce.

### 1. Get Divorce Savvy: **Managing Your Personal Security. Lessons in Virtual Safety & Surveillance and How to Find the Money Trail when it is Hidden from You.**



Join the Savvy Ladies free panel discussion with our savvy experts Lisa Zeiderman, Esq., CDFA, CFL, Managing Partner at Miller Zeiderman LLP as moderator with panelists Gary Rosen, CPA, CFF, CFE, CVA, CGMA, a National Forensic Advisory Services Leader, and Nicholas G. Himonidis, JD, CFE, CCFS, CCFI, CRC Expert in Online Security.

Understand what it means to know that you're being spied on?  What is an invasion of your privacy? Some actions performed by a spying spouse aren't just offensive – they're illegal. Information a spouse uncovers about you via illegal spying can't be used directly in a divorce action or custody battle.

We will dive in and learn from a forensic accountant how to find the money when it is hidden from you.

Register to Join the Discussion

Wednesday, January 10th 6:00 – 7:00 pm ET





| Nicholas Himonidis | Lisa Zeiderman | Gary Rosen |
|---|---|---|
| President / CEO NGH Group, Inc. | CDFA, Matrimonial Attorney, Managing Partner | CPA, CFF, CFE, CVA, CGMA |
| Providing Investigative, Digital Forensic & | Miller Zeiderman LLP | National Forensic Advisory Services Leader |
| E-Discovery Consulting Services | Savvy Ladies Board Chair | Marcum Accountants & Advisors |
| | Panel Moderator | |

### 2. Get Divorce Savvy: Navigating Family Court
*Sponsored by My Family Wizard*



Join the discussion and learn from our expert panelists how to navigate Family Court issues and prepare for the best outcome.

🌐 English

**Register to Join the Discussion**

Wednesday, January 17th 6:00 – 7:00 pm ET

   

| Elle Barr | Andrea Labis | Jennifer H. Jackman, Esq. | Siobhan O'Grady, Esq, CFL |
| Our Family Wizard | Clinical Social Work/ Therapist, LCSW-R | Family Court Litigator | Family Court Litigator |

## 3. Get Divorce Savvy: Understanding Your Net Worth, Financial Assets & Lifestyle Analysis
*with Lisa Zeiderman*



Join the discussion and learn from our expert panelists. What is your statement of net worth? How to figure it out and untangle your financial assets from your spouses.

**Register to Join the Discussion**

Wednesday, January 24th 6:00 – 7:00 pm ET

 

| Jay Mota | Jamie Lima |
| CFP®, CDFA®, ChFC®, WMCP®, COS® | CFP, CDFA, Savvy Ladies Helpline Volunteer |

## 4. Get Divorce Savvy: Setting Yourself Up for a Secure Financial Future



Learn with our experts. Join the panel discussion and hear our savvy experts share their insights on securing your financial future and setting yourself up to be financially secure.

**Register to Join the Discussion**

Wednesday, January 31st 6:00 – 7:00 pm ET





Melina Denebeim

Co-Director, Master of Science in Financial Economics and Program for Financial Studies, Executive and Divorce Coach

TBD

Maggie Patrick

CDFA, CFP

Morgan Stanley

## 5. Get Divorce Savvy: Legacy Planning & the Art of the PreNup

*Sponsored by Hello Prenup*

Join the conversation lead by our Savvy experts and start talking about your views on money. Understand what happens with the premarital property. Will it remain separate or be joint? What about student debt, credit card debt — will premarital debts remain separate debts in the event of a divorce? Learn about income and assets that are acquired while married. What are the key questions to ask yourself as you prepare for a marriage that are important for setting yourself up for success in the Art of the Pre-Nup?



Register to Join the Discussion

**Wednesday, February 7th 6:00 – 7:00 pm ET**






Julie Rodgers, CEO & Co-Founder HelloPrenup

Lauren Lavender, CMO HelloPrenup

Amy Holzman, Trust & Estate Attorney

Savvy Ladies thanks our 2024 Divorce Panel Series Sponsors

 Miller Zeiderman LLP
www.smzlawer.com

 MARCUM
ACCOUNTANTS · ADVISORS

our family wizard



HELLO PRE-NUP

 SAVVY LADIES



Platinum
Transparency
2023

Candid.

   

Since 2003 our 501(c)(3) nonprofit organization has been providing free financial education to all women. We are proud to have received the Guidestar Seal of Transparency.

Copyright © 2003-2023 Savvy Ladies LLC. All Rights Reserved.

(917) 764-3644 | info@savvyladies.org

Diversity Statement | Privacy Policy

Download our Free Helpline App



15

FILED: ROCKLAND COUNTY CLERK 05/25/2022 09:59 AM    Page 324 of 539

NYSCEF DOC. NO. 200                                    RECEIVED NYSCEF: 05/25/2022

Trial 4/12



## LAW OFFICE OF NICOLE DiGIACOMO, PLLC

3 East Evergreen Road, New City, New York 10956

Phone: (845) 668-4770  www.ndigiacomolaw.com

March 23, 2022

**IDV Court**

Hon. Sherri Eisenpress
Rockland County IDV Part
1 South Main Street
New City, NY 10956

Re: <u>Fogarty IDV No. 721</u>

Your Honor:

As you may recall, I am the attorney assigned to represent the children on the above referenced matter. This case originated in Family Court with Referee Dean Richardson Mendelson.

I am now on the Part 36 Panel for private pay child representation. I am hereby requesting that my assignment to this case be converted to a private pay assignment before the trial dates scheduled for April 12, 13 and 14.

The case is no longer being heard in Family Court, but the IDV Part, and both parties have private counsel and have demonstrated through various pleadings that there are means to fund private pay representation of the subject children.

Thank you for your attention in this matter.

Very truly yours,

*Nicole DiGiacomo*

Nicole DiGiacomo, Esq.

Law Office of Nicole DiGiacomo, PLLC3 East Evergreen Road, Suite 103
New City, New York 10956
P: (845) 668-4770
E: nicole@ndigiacomolaw.com

cc.: Ashley Kersting, via email
     Robert Sunshine, via email

16

FILED: ROCKLAND COUNTY CLERK 05/24/2024 08:01 PM
NYSCEF DOC. NO. 957
Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 326 of 533
RECEIVED NYSCEF: 05/24/2024

Case 1:17-cv-00984-PK    Document 220    Filed 02/20/24    Page 1 of 9 PageID #: 1276

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

VINICIO VILLA, JESUS SALVADOR GOMEZ, :
and GERMAN VENTURA, *on behalf of themselves*
*and all other persons similarly situated,*

                     Plaintiffs,         :

    -against-                   :

HIGHBURY CONCRETE INC., THOMAS   :
GORMAN, THOMAS FOGARTY, BENNY
GRIFFIN, RG LABOR SERVICES, INC., and   :
THE LAURA GROUP, INC.,

                    Defendants.     :

---------------------------------------------------------------x

                       **DECISION AND ORDER**

                       17-CV-984 (PK)

**Peggy Kuo, United States Magistrate Judge:**

    In a Third Amended Class Action Complaint, Vinicio Villa, Jesus Salvador Gomez, and

German Ventura ("Plaintiffs" or "Named Plaintiffs") brought this action against Highbury Concrete

Inc., Thomas Gorman, Thomas Fogarty, Benny Griffin (the "Highbury Defendants"), RG Labor

Services, Inc., and the Laura Group, Inc. (with the Highbury Defendants, "Defendants"), on behalf

of themselves and all similarly situated employees of Defendants.[1] (*See* Third Amended Complaint

("TAC") ¶¶ 28-29, Dkt. 171.) The Court previously granted the parties' Motion for Preliminary

Approval of Class Action Settlement. *Villa v. Highbury Concrete Inc.*, No. 17-CV-984 (PK), 2022 WL

19073649, at *8 (E.D.N.Y. Nov. 25, 2022) ("Preliminary Approval Order").

    Before the Court now is Plaintiffs' unopposed Motion for Final Settlement Approval.

("Motion," Dkt. 213; *see also* Dkt. 219.) For the reasons stated below, the Motion is granted.

---

[1] Default was entered against Defendants RG Labor Services, Inc. and The Laura Group, Inc. on March 18, 2021. (*See* Dkt. 180.)

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 327 of 533

Case 1:17-cv-00984-PK    Document 220    Filed 02/20/24    Page 2 of 9 PageID #: 127

## BACKGROUND AND PROCEDURAL HISTORY

On November 25, 2022, the Court preliminarily approved the parties' proposed class settlement, finding that it would likely be able to approve the proposed settlement as fair, reasonable, and adequate. Preliminary Approval Order at *2. The Court also approved the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Notice") and Claim Form (together with the Notice, the "Notice Packet"), and authorized issuance of the Notice Packet to Class Members. *Id.* at 8.

Pursuant to the Preliminary Approval Order, the claims administrator American Legal Claims Services, LLC ("ALCS") was provided with a list of Class Members which included, to the extent maintained by the Highbury Defendants, the Class Members' names, Social Security numbers, and last known addresses. (Decl. of David Stein ("Stein Decl.") ¶¶ 5-6, Dkt. 214.) ALCS determined that there were 1,187 unique Class Members on the list. Five additional Class Members were identified during the claims process, for a total of 1,192 Class Members. ALCS mailed the Notice Packet in English and Spanish to all Class Members. ("Pl. Mem." at 3, Dkt. 215; Stein Decl. ¶¶ 7-8.) Of these mailings, only 153, or 13%, were returned as undeliverable. (Pl. Mem. at 3; Stein Decl. ¶ 11.)

The Settlement Administrator received a total of 181 unique Claim Forms before the June 13, 2023 Claim Form deadline—a claims rate of 15% of the total Class. (Pl. Mem. at 3; Stein Decl. ¶ 12.) Twelve of these Claim Forms had insufficient information regarding employment dates. The claimants have been asked to cure these deficiencies, and if they do so before the Settlement Amount is disbursed, they will be eligible to receive their funds. (Pl. Mem. at 3; Stein Decl. ¶ 12.) No Class Members objected to the settlement or submitted a request to opt out of the Class. (Pl. Mem. at 3; Stein Decl. ¶ 13.)

A fairness hearing was held on July 10, 2023, and continued on July 19, 2023 and August 1, 2023.

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 328 of 538
FILED: ROCKLAND COUNTY CLERK 05/24/2024 08:01 PM    INDEX NO.
Case 7:17-cv-00984-PK    Document 220    Filed 02/20/24    Page 3 of 9 PageID #: 1278
NYSCEF DOC. NO. 957                                              RECEIVED NYSCEF: 05/24/2024

## DISCUSSION

### 1. Approval of Class Action Settlement

In preliminarily approving the settlement, the Court weighed the Fed. R. Civ. P. 23(e)(2) and the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F. 2d 448 (2d Cir. 1974) and found that it would likely be able to approve the proposed settlement as fair, reasonable, and adequate. Preliminary Approval Order at *8.

The Court now finds that Plaintiffs and Class Counsel have adequately represented the Class pursuant to Rule 23(e)(2)(A), the settlement was reached through arm's-length negotiations between experienced counsel pursuant to Rule 23(e)(2)(B), the relief was adequate for the Class pursuant to Rule 23(e)(2)(C), and the Class Members were treated equitably relative to each other pursuant to Rule 23(e)(2)(D).

The Court also finds that the remaining *Grinnell* factors—the stage of the proceedings and the amount of discovery completed, the ability of the Defendants to withstand a greater judgment, the range of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation—weigh in favor of final approval.

The only factor the Court could not address in the Preliminary Approval Order was the reaction of the class to the settlement. *See* Preliminary Approval Order at *6. With respect to that factor, the response to the settlement has been positive. (Pl. Mem. at 1, 7-8.) Class Members filed 181 claims, and no Class Member objected to the settlement or requested to opt out from the Class. (*Id.* at 1.) Thus, that factor, too, weighs in favor of final approval.

Accordingly, because the Rule 23(e)(2) and *Grinnell* factors all weigh in favor of approval, the Court approves the proposed settlement as fair, reasonable, and adequate.



**2. Approval of FLSA Collective Action**

Approval of a collective action requires two steps. *See D'Angelo v. Hunter Business School, Inc.*, No. 21-CV-3334 (JMW), 2023 WL 4838156, at *8 (E.D.N.Y. July 28, 2023) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). The Court must make an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether an FLSA violation occurred. *See id.* Then, the Court must determine whether "the plaintiffs who opted in are actually similarly situated to the named plaintiffs. *Id.* (citation omitted).

In the Preliminary Approval Order, the Court already found that the potential opt-in plaintiffs were similarly situated to Named Plaintiffs. *See* Preliminary Approval Order at *3. The Court now finds that Named Plaintiffs have met their burden of showing that Named Plaintiffs and the Class Members who opted into the collective action were similarly situated. Plaintiffs and those Class Members all "suffered similar harm because of the same alleged acts and omissions by Defendants," namely the Highbury Defendants' failure to pay them overtime wages and violations of the Wage Theft Prevention Act. Preliminary Approval Order at *1; *see D'Angelo*, 2023 WL 4838156, at *9 ("Plaintiffs met the burden of showing that the named Plaintiff and the Class Members were similarly situated, namely because they had substantially similar job requirements and pay provisions").

The Court must also inquire as to the fairness of the settlement. *See D'Angelo*, 2023 WL 4838156, at *9; *Lora v. To-Rise, LLC*, No. 16-CV-3604 (SJB), 2020 WL 8921400, at *5 (E.D.N.Y. June 3, 2020) ("To approve such a settlement, the Court must find that the agreement is fair"). Where a case involves both a class action and FLSA collective action, and the class action has already been approved, the Court will only analyze "the collective action to see whether the settlement reflected a fair and reasonable compromise, specifically, whether the settlement occurred as a result of arms-length negotiations." *D'Angelo*, 2023 WL 4838156, at *9 (citations omitted). In determining the fairness of a proposed settlement, "a court should consider the totality of circumstances, including

4

but not limited to the following factors: (1) the plaintiffs range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion;" and (6) the reasonableness of any award of attorneys' fees. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012) (internal quotation marks and citations omitted); *see Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

The Court finds that the settlement amount and payment plan are fair and reasonable in light of the risks and burdens of further litigation, that the settlement was the product of arm's-length bargaining between experienced counsel with no possibility of fraud or collusion, and that the attorneys' fees, as set forth below, are reasonable. Accordingly, the FLSA collective action is approved.

### 3. Service and Retaliation Awards

The Named Plaintiffs initiated this class action and made significant contributions to the prosecution of the litigation. They served the Class by providing detailed factual information regarding their employment status, job duties, and compensation; providing the employment status, job duties, and compensation of Class Members; assisting with the preparation of pleadings; staying informed and in constant communication with Class Counsel regarding the progress of their action; and assuming the burdens associated with being a named plaintiff and assisting with litigation, including sitting for depositions. (Stein Decl. ¶¶ 17-20; *see* Pl. Mem. at 13-15.) In addition, the Named Plaintiffs assisted Class Counsel with the settlement negotiations, attended several settlement conferences, and made themselves available throughout the lengthy settlement process. (Stein Decl. ¶ 21.)

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 331 of 533
FILED: ROCKLAND COUNTY CLERK 05/24/2024 08:01 PM    INDEX NO.
Case 7:17-cv-00984-PK    Document 220    Filed 02/20/24    Page 6 of 9 PageID #: 1281
NYSCEF DOC. NO. 957                                                    RECEIVED NYSCEF: 05/24/2024

Accordingly, the Court approves the service awards to Plaintiffs in the amount of $4,500.00 each, to be paid from the Settlement Amount. (Settlement Agreement ¶ 1(ee).) Such payments "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by coming and continuing as a litigant, and any other burdens sustained." *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-CV-4270 (PAC), 2009 WL 5851465, at *6 (S.D.N.Y. Mar. 31, 2009) (citing *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997)).

Moreover, a plaintiff "who has been exposed to a demonstratable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded." *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007). Accordingly, the Court approves retaliation compensation to the ten Retaliation Plaintiffs named in the Settlement Agreement, who were alleged to have been retaliated against by the Highbury Defendants after becoming plaintiffs in this case, in the amount of $7,500.00 each, to be paid from the Settlement Amount. (Settlement Agreement ¶¶ 1(dd), 11(a).) *See, e.g., Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18-CV-7854 (LJL)(KHP), 2021 WL 535635, at *5 (S.D.N.Y. Feb. 12, 2021) (collecting cases and approving payments for releases of claims for, *inter alia*, retaliation); *deMunecas v. Bold Food, LLC*, No. 09-CV-440 (DAB), 2010 WL 3322580, at *11 (S.D.N.Y. Aug. 23, 2010) (finding reasonable retaliation compensation of $15,000).

### 4. Attorneys' Fees and Costs

Plaintiffs request $666,666.67 in attorneys' fees, amounting to 33.3% of the Settlement Amount of $2,000,000.00.[2]

---

[2] Plaintiffs incorrectly assert that this figure represents "33.3% of the *net* Settlement Amount" (Pl. Mem. at 19) (emphasis added), but they have requested 33.3% of the Settlement Amount, consistent with the Settlement Agreement. (Settlement Agreement ¶ 9(a) ("Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third (33.33%) of the Settlement Amount").)

In assessing the reasonableness of attorneys' fees, courts in this Circuit may utilize either the percentage-of-the-fund or the lodestar method. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). The "trend in this circuit is toward the percentage method because it 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Mariani v. OTG Management, Inc.*, No. 16-CV-1751 (CLP), 2018 WL 10468036, at *12 (E.D.N.Y. Sept. 28, 2018) (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 121). Even if a court utilizes the percentage method, the lodestar method remains valuable "as a 'cross-check' on the reasonableness of the requested percentage." *Id.*

Attorneys' fees amounting to one-third of a settlement fund are routinely approved in this Circuit. *See, e.g., Karic v. Major Auto. Companies, Inc.*, No. 09-CV-5708 (CLP), 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (collecting cases and noting that "Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund").

Contemporaneous billing records submitted by Class Counsel demonstrate that they incurred $128,597.50 in attorneys' fees before the date of the final approval hearing, not including time spent and already compensated for in an earlier phase of this litigation.[3] Thus, the lodestar multiplier for Class Counsel's requested fees is 5.18. This multiplier is at the high end of those approved in this district. However, several factors weigh in favor of approving this amount. Class Counsel has worked on this case for six years and will continue to expend additional work during the two-and-a-half-year payout period. In addition, the hourly rates at which Class Counsel billed in this matter are modest. Accordingly, the Court finds the 5.18 lodestar multiplier to be reasonable. *See Donnelly v. Peter Luger of Long Island, Inc.*, No. 13-CV-1377 (LDW)(ETB), 2014 WL 12769046, at *8 (E.D.N.Y. Nov. 13, 2014)

---

[3] On May 24, 2018, the Court granted Plaintiffs' request for attorneys' fees with respect to "fees and costs incurred up to January 18, 2018, the date of the Court's denial of Defendants' motion to vacate." (Dkt. 124 at 3-5.)

("Courts regularly award lodestar multipliers between two to six times lodestar"); *Zeltser v. Merrill Lynch & Co., Inc.*, No. 13-CV-1531 (FM), 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (approving lodestar multiplier of 5.1); *Athale v. Sinotech Energy Ltd.*, No. 11-CV-5831 (AJN), 2013 WL 11310686, at *8-9 (S.D.N.Y. Sept. 4, 2013) (reducing lodestar multiplier from 7.04 to 5.65); *Roberts*, 979 F. Supp. at 197 (approving lodestar multiplier of 5.5). Moreover, because "'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09-CV-6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (citation omitted).

The Court approves the award of costs to be paid to Class Counsel of $7,206.70, as "[c]ourts typically allow counsel to recover their reasonable out-of-pocket expenses." *Zeltser*, 2014 WL 4816134, at *10. Although the Motion requests $8,096.88 in costs (Motion ¶ 7; *see also* Pl. Mem. at 25), the Settlement Agreement states that Plaintiffs would be entitled to "litigation costs and expenses up to $7,206.70." (Settlement Agreement ¶ 9(a).) Plaintiffs explained that their request for an increased amount was due to an expense incurred after the motion for preliminary approval was granted and an expense item that was overlooked when calculating costs for the Settlement Agreement. (Dkt. 218 at 1.) However, because Class Members were not given notice of this increase in costs, Plaintiffs agreed to waive the increased amount and limit their reimbursement request to $7,206.70. (*Id.*)

### 5. Claims Administrator Fees

The Court finds ALCS's Claims Administrator fees in the amount of $58,408.00 to be reasonable and approves payment of that amount from the Settlement Fund. (Settlement Agreement ¶¶ 6(b), 9(a); Stein Decl. ¶ 50.)

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 334 of 533
FILED: ROCKLAND COUNTY CLERK 05/24/2024 08:01 PM    Page 334 of 538
NYSCEF DOC. NO. 957
Case 1:17-cv-00984-PK    Document 220    Filed 02/20/24    Page 9 of 9 PageID #: 1284
RECEIVED NYSCEF: 05/24/2024

## CONCLUSION

Having considered the Motion, the supporting declarations, the arguments presented at the fairness hearings, and the complete record in this matter, the Court (1) grants final approval of the class action settlement as memorialized in the Settlement Agreement; (2) grants final approval of the FLSA collective action; (3) approves the service awards to the Named Plaintiffs in the amount of $4,500 each; (4) approves the retaliation compensation to the Retaliation Plaintiffs in the amount of $7,500 each; (5) approves an award of attorneys' fees and costs in the amount of $666,666.67 and $7,206.70, respectively; and (6) approves a payment to ALCS for administration fees in the amount of $58,408.

The terms and conditions of the Settlement Agreement are approved. The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement. The entire case is dismissed on the merits and with prejudice, with each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement. This Final Order and Judgment shall bind and have res judicata effect with respect to all FLSA collective action members, and all Rule 23 Class Members who have not opted out of the applicable Class.

Without affecting the finality of this Final Order, the Court will retain jurisdiction over the case following the entry of the Judgment and Dismissal until all installments have been paid by Defendants as provided for in the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement and this Order.

SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: February 20, 2024
      Brooklyn, New York

Case 1:24-cv-08705-JLR     Document 1     Filed 11/15/24     Page 335 of 533

FILED: ROCKLAND COUNTY CLERK 12/05/2023 09:51 PM     INDEX NO.
NYSCEF DOC. NO. 549                                   RECEIVED NYSCEF: 12/05/2023



*Cement & Concrete Workers District Council*

## LABORERS-EMPLOYERS COOPERATION AND EDUCATION TRUST FUND

### Highbury Concrete

Highbury Concrete should be removed from any potential bid list. Highbury has faced four separate lawsuits for failing to pay overtime to its employees.

- In June 2017, eight workers filed a lawsuit against Highbury for failing to pay overtime. In an October 2018 settlement, Highbury agreed to pay $625,000.00.[6]
- Another lawsuit alleging Highbury's failure to pay overtime was filed in May 2018, and Highbury agreed to pay $35,000 to one employee.[7]
- In February 2017, a separate group of workers brought a class action case against Highbury for failing to pay them overtime. On November 22, 2022, a settlement agreement was approved where Highbury has agreed to provide a gross settlement payment of up to $2,000,000.00 for affected workers. Final settlement approval is scheduled for June 26, 2023.[8]
- In June 2019, another worker filed an overtime violation suit against Highbury. The case settled for $27,500 in September 2020.[9]

### Safety

- Mahamoudou Marega, a 30-year-old employee of Highbury Concrete, died two days before Christmas 2016 when he fell three stories down an elevator shaft. OSHA issued a violation against Highbury for failing to provide adequate fall protection.
- In February of 2019, the New York City Fire Department had to rescue and treat 9 workers overcome by Carbon Monoxide exposure on a Highbury job site as a result of a gasoline-powered generator running in a confined space. New York City Building Department inspectors noted in a violation issued to Highbury that there were "no safety measures in place to safeguard personnel." OSHA fined Highbury for serious safety violations and ultimately assessed them a $20,000 penalty.[10]

---

[6] Case :17-cv-02679-SJB, Zamora vs. Highbury Concrete
[7] Case 1:18-cv-03110, Cardenas vs. Highbury Concrete
[8] Case 17-cv-00984, Vinicio Villa, Jesus Salvador Gomez and German Ventura vs. Highbury, Thomas Gorman, Thomas Fogary, Benny Griffin, RG Labor
[9] Case 1:19-cv-03454, Lauro Contreras vs. Highbury
[10] https://www.osha.gov/ords/imis/establishment.inspection_detail?id=1380198.015

214-38 42ʳᵈ Avenue - 4ᵗʰ Floor, Bayside, NY 11361
Telephone: 718.886.0516



INDEX NO.

FILED: ROCKLAND COUNTY CLERK 10/02/2023 08:38 PM

NYSCEF DOC. NO. 489

RECEIVED NYSCEF: 10/02/2023





Federal Pay    Paycheck Protection Program Data    NY    Highbury Concrete Inc

## PPP Loan Data – Highbury Concrete Inc



**Highbury Concrete Inc**
Entity: Corporation
Industry: Poured Concrete Foundation and Structure Contractors
Location: Maspeth, NY

Highbury Concrete Inc is a corporation located at 53-19 46th Street in Maspeth, New York that received a Coronavirus-related PPP loan from the SBA of $6,229,000.00 in April, 2020.

Download PDF (Free)

PDF Cont PDF Central

### PPP Loan Information

| Loan Size: | Jobs Retained: | Loan Approved: | Loan Status: | Lender: |
|---|---|---|---|---|
| $6,229,000 | 374 | 2020-04-28 | Paid in Full or Forgiven | Idaho First Bank |

Highbury Concrete Inc in Maspeth, NY received a Paycheck Protection Program loan of $6,229 through Idaho First Bank, which was approved in April, 2020.

This loan's status is reported by the SBA as "Paid in Full", which includes both loans repaid and those loans forgiven from repayment under PPP guidelines. The loan's status was last updated by the SBA in August, 2021.

Payroll Estimates Based On SBA PPP Loan Eligibility Formula



Understanding The SBA Formula For Determining PPP Eligibility

Understanding Payroll Estimates Based On PPP Amount



Based on the standard PPP eligibility formula, it may be possible to estimate the payroll expenses represented by a company on their PPP application. In order to qualify for the PPP loan amount received, Highbury Concrete Inc's 2019 payroll expenses are estimated to be at least $29,904.

Based on their reported 374 jobs retained, this equals an estimated average yearly compensation of $79,952 per employee[1]

Reported PPP Proceed Usage:

On the PPP application, Highbury Concrete Inc reported intending to use the proceeds of their PPP loan for the following expenses:

• Payroll: $6,229,000

### Business Information – Highbury Concrete Inc in Maspeth, NY



53-19 46th St                    Highbury Concrete Inc              Business Industry:
                                 53-19 46th Street                 Poured Concrete Foundation And
                                 Maspeth, NY 11378                 Structure Contractors
                                                                   NAICS code 238110

                                 Business Owner Demographics       Business Demographics

                                 Race: Unreported                  Business Age: Existing or more than 2
                                 Ethnicity: Unreported             years old
                                 Gender: Unreported                Jobs Report: N
                                 Veteran Status: Unreported        Jobs Report: Y
                                                                   Rural/Urban: Urban

                                 Queens County, NY -- SBA Office 0207 -- Congressional District: NY-07

FILED: ROCKLAND COUNTY CLERK 10/02/2023 08:38 PM     INDEX NO.
NYSCEF DOC. NO. 489                                             RECEIVED NYSCEF: 10/02/2023

Highbury Concrete Inc

## 🏛 PPP Loan Data — Highbury Concrete Inc. *Maspeth, NY*



# Highbury Concrete Inc

**Entity:** Corporation

**Industry:** Poured Concrete Foundation and Structure Contractors

**Location:** Maspeth, NY

Highbury Concrete Inc is a corporation located at 53-19 46th Street in Maspeth, New York that received a Coronavirus-related PPP loan from the SBA of $6,222,500.00 in April, 2020.

## 💲 PPP Loan Information

| Loan Size: | Jobs Retained: | Loan Approved: | Loan Status: | Lender: |
|---|---|---|---|---|
| $6.22M | 374 | 2020-04-28 | Paid in Full or Forgiven | Idaho First Bank |

Highbury Concrete Inc in Maspeth, NY received a Paycheck Protection Loan of $6.23M through Idaho First Bank, which was approved in April, 2020.

This loan's status is reported by the SBA as "Paid in Full", which includes both loans repaid and those fully forgiven from repayment under PPP guidelines. The loan's status was last updated by the SBA in August, 2021.

# 17

**FILED: ROCKLAND COUNTY CLERK 08/28/2024 01:49 PM**
NYSCEF DOC. NO. 1146

RECEIVED NYSCEF: 08/28/2024
INDEX NO. 035547/2021

**FILED: ROCKLAND COUNTY CLERK 08/28/2024 07:59 AM**
NYSCEF DOC. NO. 1144

RECEIVED NYSCEF: 08/28/2024

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

THOMAS FOGARTY,                          Index No.: 035547/2021

       Plaintiff,                      GATEKEEPER REQUEST
                                        AFFIDAVIT REGARDING
v.                                       HUMAN RIGHTS
                                        COMMISSION
SAI MALENA JIMENEZ-FOGARTY,

       Defendant.

-----------------------------------------------x
-----------------------------------------------x

STATE OF NEW YORK   )
                    )§
COUNTY OF ROCKLAND )

     I, SAI MALENA JIMENEZ-FOGARTY, and the Defendant in the above-entitled matter,

after being duly sworn deposes and states:

    1.    I am making this Affidavit of my own personal knowledge, and I do competently

testify as set forth in this document.

    2.    I am currently under the control of a Gatekeeper Order issued by the above-

entitled Court on June 12, 2023, which requires me to obtain permission to file documents in my

case. This affidavit is a request to this Court to allow me to file a request for stay or transfer.

    3.    I filed with the Human Rights Commission (hereinafter referred to as "HRC") on

May 3, 2024, a complaint against Judge Zugibe.

    4.    On information and belief, after a discussion with the Commission investigator,

the preliminary complaint, from Judge Zugibe's rebuttal and my reply have been submitted by

all parties to this HRC complaint. After consideration the HRC has consented to proceed with

this complaint. This matter is currently in the process of evidence collection and the matter

FILED: ROCKLAND COUNTY CLERK 08/28/2024 01:49 PM
NYSCEF DOC. NO. 1146

RECEIVED NYSCEF: 08/28/2024
INDEX NO. 035547/2021

FILED: ROCKLAND COUNTY CLERK 08/28/2024 07:59 AM
NYSCEF DOC. NO. 1144

RECEIVED NYSCEF: 08/28/2024

proceeding to the hearing department of the Division which would be an administrative law proceeding.

5.    As this complaint has been converted to an ongoing investigation and action the Honorable Judge Thomas P. Zugibe and I are now in an administrative suit regarding his actions in the above-entitled matter. Further, the HRC investigation has included other members of the New York United Court system in this administrative suit.

6.    In light of this ongoing administrative law action Judge Zugibe now has a non-waive able conflict of interest with me, as he must now provide testimony as to his actions in this matter, he cannot provide a neutral trier of fact in this case and should disqualify himself. Further, as many members of the local courts are also now part in the administrative suit, the other judges in the Rockland Court also have a non-waivable conflict of interest in being appointed to preside over this matter and cannot serve.

**WHEREFORE**, I, Defendant Sai Malena Jimenez – Fogarty respectfully request that this Court grant the right to file an Emergency Motion for Stay until the investigation is complete or change of venue in light of the direct conflict due to the HRC action.

*I affirm this 28th day of August 2024, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.*

Dated: August 28, 2024
       Blauvelt, New York

*Sai Malena Jimenez Fogarty*
SAI MALENA JIMENEZ-FOGARTY

*Request Denied.*
*So Ordered.*

Hon. Thomas P. Zugibe, J.S.C.

2 of 2

FILED: ROCKLAND COUNTY CLERK 08/27/2024 09:28 AM
NYSCEF DOC. NO. 1136

RECEIVED NYSCEF: 08/27/2024
INDEX NO. 035547/2021

FILED: ROCKLAND COUNTY CLERK 08/22/2024 11:17 PM
NYSCEF DOC. NO. 1130

RECEIVED NYSCEF: 08/22/2024

Sai Malena Jimenez, PO Box 261, Blauvelt, NY 10913, sunnysky155@gmail.com

Index No. 035547/2021

August 22, 2024

Dear Honorable Judge Zugibe:

I, Sai Malena Jimenez-Fogarty, respectfully submit this Gatekeeper affidavit in support of the filing of a motion to vacate Judge Eisenpress' orders. Pursuant to the Gatekeeper Order issued by Judge Zugibe on June 13, 2023, and in support of my request, I affirm the following:

1. The request to vacate Judge Eisenpress' orders is based upon: a) the emergence of new circumstances and facts that substantiate claims of fraud on the court; and b) the identification of violations of fundamental due process rights and applicable New York statutes.

2. This includes, but is not limited to, the following:

3. First, all orders issued by Judge Eisenpress are null and void.

4. The conflicts of interest between Judge Eisenpress and opposing counsel at Miller Zeiderman are well-documented facts on the record, leading to Judge Eisenpress' recusal on May 20, 2022.

5. As held in Polina v. Robert, 25 Misc. 3d 596, 599 n.5 (N.Y. Fam. Ct. 2009), "The mandatory recusal of a judge deprives that judge of jurisdiction, thereby rendering all of his or her decisions and orders null and void." This principle underscores the importance of judicial impartiality and the proper administration of justice.

6. There is no statute of limitations for claims of Fraud on the Court.

7. Additionally, while previously known conflicts of interest suffice to vacate Judge Eisenpress' orders, newly obtained evidence indicates Judge Eisenpress was required to recuse as early as March 8, 2021.

8. The timing of this conflict of interest decisively establishes Judge Eisenpress' disqualification to adjudicate the May 17, 2022, Temporary Order—the current governing order—granting Plaintiff sole legal and physical temporary custody of shared minor children and mandating supervised visitation of Defendant.

9. On May 17, 2022, Judge Eisenpress was disqualified on three separate grounds from this case.

10. This order, along with all others by Judge Eisenpress, must be immediately vacated.

11. Second, the May 17, 2022, Temporary Order concerning custody now exceeds the allowable two years under section 842 of the Family Court Act.

12. The petition filed on September 22, 2021, by Plaintiff and counsel Ashley Kersting, which initiated custodial changes, sought "[a]n order of protection specifying conditions of behavior to be observed by Respondent in accordance with section 842 of the Family Court Act."

13. Section 842 of the Family Court Act expressly mandates any order granting such relief to "set forth reasonable conditions of behavior to be observed for a period not in excess of two years."

FILED: ROCKLAND COUNTY CLERK 08/27/2024 09:28 AM
NYSCEF DOC. NO. 1136

RECEIVED NYSCEF: 08/27/2024
INDEX NO. 035547/2021

FILED: ROCKLAND COUNTY CLERK 08/22/2024 11:17 PM
NYSCEF DOC. NO. 1130

RECEIVED NYSCEF: 08/22/2024

14. It has been 27 months since May 17, 2022, Temporary Order took effect and 35 months since the initial Petition that prompted this Temporary Order.

15. Furthermore, despite receiving a Notice of Discovery as early as October 27, 2021, Plaintiff and counsel have failed to submit evidence meeting New York's evidentiary standards.

16. Moreover, this order is currently invalid because it: a) Fails to specify "reasonable conditions of behavior to be observed." b) Lacks findings of "aggravating circumstances" as defined in section 287(a) of the Family Court Act. c) No findings of "aggravating circumstances" are on record.

17. This order must be immediately vacated.

18. Finally, all orders concerning the removal of Defendant's physical and legal custodial rights were issued without adherence to fundamental due process or New York procedural requirements.

19. This includes, but is not limited to, the May 17, 2022, Temporary Order—which governs current child custody rights and supervision—issued ex parte and without an evidentiary hearing.

20. Given these significant implications, I respectfully urge this Court to grant permission to file the motion to vacate Judge Eisenpress' orders.

21. Such action is essential for the interest of justice, upholding the integrity of court orders and legal ethics, protecting my client's fundamental rights, and rectifying this due process violation.

22. I have not previously filed a request regarding this matter.

WHEREFORE, Defendant respectfully requests that this Honorable Court grant me the right to file the emergency Order to Show Cause and enter such orders as may be just and proper under the circumstances.

Respectfully submitted,

*I affirm this 22ⁿᵈ day of August 2024, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.*

_____ *Sai Malena Jimenez — Fogarty* _____
SAI MALENA JIMENEZ-FOGARTY

*Request Denied.*
*So Ordered.*

Hon. Thomas P. Zugibe, J.S.C.

# 18

FILED: ROCKLAND COUNTY CLERK 01/22/2024 11:52 AM     INDEX NO. ▮▮▮
NYSCEF DOC. NO. 644     RECEIVED NYSCEF: 01/22/2024

# MILLER ZEIDERMAN LLP
## ATTORNEYS AT LAW

FAITH G. MILLER
LISA ZEIDERMAN*
KEVIN P. CONNOLLY
TIFFANY E. GALLO
JENNIFER M. JACKMAN*
ASHLEY KERSTING**
SIOBHAN T. O'GRADY
SHAUNA TESSER-FRIEDMAN*\*
EMILY C. WALSH

ADRIENNE ABRAHAM
CHRISTINE BIANCANIELLO
ROWAN R. DeGASPERIS
ANDREW PÉREZ
LAURIE REMPP
CAROL M. RUBIN
KEVIN P. SYLVESTER
LIZA J. TRAZZERA
EMMA C. VAN LENT*

*TRUSTS AND ESTATES*
*OF COUNSEL*

AMY HOLZMAN
MICHAEL ABEL
NICHOLAS ORBON
YUANTING M. YANG

*MEMBER OF NY & CT BARS
\*MEMBER OF NY & NJ BARS*

January 22, 2024

**Via NYSCEF**
Hon. Thomas P. Zugibe, J.S.C.
Rockland County Supreme Court
1 South Main Street
New City, New York 10956

Re:     Thomas Fogarty vs. Sai Malena Jimenez-Fogarty
Supreme Court, Rockland County
Index No.: 035547/2021

Dear Judge Zugibe:

We are attorneys for Plaintiff, Thomas Fogarty. Defendant is represented by Tricia Lindsay, Esq., and Nicole DiGiacomo, Esq. is the Attorney for the Children.

On January 19, 2024, the Temporary Order of Protection ('TOP') in the above-referenced matter lapsed. It is respectfully requested that the Court extend the TOP on behalf of Mr. Fogarty and the parties' children, until a decision is rendered in the ongoing custody/contempt trial.

Respectfully,

*Ashley Kersting*
Ashley Kersting

cc:     Tricia Lindsay, Esq. (via NYSCEF)
Nicole DiGiacomo, Esq. (via NYSCEF)
Thomas Fogarty (via email)

140 GRAND STREET, 5TH FLOOR, WHITE PLAINS, NY 10601 TELEPHONE:(914) 455-1000 FACSIMILE: (914) 468-4244
150 EAST 52ND STREET, SUITE 1002, NEW YORK, NY 10022 TELEPHONE: (212) 769-3500

1 of 1

FILED: ROCKLAND COUNTY CLERK 01/22/2024 02:42 PM    INDEX NO. ████

NYSCEF DOC. NO. 645    RECEIVED NYSCEF: 01/22/202█



Civil Rights
Labor Law
Criminal Defense
Family Law
Wills, Trusts, and Estate

THE LAW OFFICE OF
**TRICIA S. LINDSAY**

January 22, 2024

**VIA NYSECF**
Hon. Thomas Zugibe, J.S.C.
1 South Main Street
New City, NY 10956

Re:    **Thomas Fogarty v. Sai Malena Jimenez-Fogarty**
        **Index No.: 035547/2021**

Dear Hon. Judge Zugibe,

    As Your Honor is aware, I represent the Defendant Sai Malena Jimenez-Fogarty. Counsel writes in response to the Plaintiff's letter requesting that the Court extend the expired TOP in this matter "…until a decision is rendered in the ongoing custody/contempt trial." Counsel requests that the Court finally decline to needlessly, baselessly, and without any hearing, continue to extend this malicious *Order* or rather to reissue the expired TOP.

    As an initial note, as stated above, this *Order* has already expired, and the Plaintiff made no attempts to renew it prior to its expiration. More importantly, this original *Order* was signed by Judge Eisenpress who was forced to recuse due to her inappropriate relationship with opposing counsel. The Order was also specified to be in effect from Aril 25, 2022 through April 25, 2023. The Defendant never violated any of the terms contained therein, and the Plaintiff cannot now come forth and attempt to convert an expired *Order of Protection* into a *Temporary* one, months after its expiration, without any cause, and without any due process to my client.

    Finally, the Plaintiff has renewed four TOPs based on the original one that was never adjudicated in the first place. These were basic allegations, and no determination was made on them. Ms. Jimenez was deprived access to her children via the TOP while in the emergency room receiving treatment, and still to date, no hearing has been held on these matters.

FILED: ROCKLAND COUNTY CLERK 01/22/2024 02:42 PM

NYSCEF DOC. NO. 645

RECEIVED NYSCEF: 01/22/2024

We therefore request that Your Honor deny renewing this TOP on the sole basis of a one sentence letter with no motion, no order to show cause, and no affirmation from Counsel or their client; particularly when such a one sentence letter violates *Your Honor's Order* given on January 17, 2024, that all issues need a written application, *not a letter to the Court*. This would presumably include the issue of the TOP.

We thank the Court for its consideration.

Respectfully,

Tricia S. Lindsay

cc: Ashley Kersting (via ECF and email)
Nicole DiGiacomo (via ECF and email)

FILED: ROCKLAND COUNTY CLERK 01/22/2024 04:14 PM    Page 350 of 533.

NYSCEF DOC. NO. 646                                               RECEIVED NYSCEF: 01/22/2024

Form SC-1
12/2020

ORI No:    NY043015J                 At a Rockland County Supreme Court Term (IAS Part) of the Supreme Court, State of New York,
Order No:  2024-000047               County of Rockland, at the Courthouse at Rockland County Courthouse 1 South Main Street, New
NYSID No:  _____                   City, NY 10956

PRESENT: Honorable Thomas P. Zugibe                        TEMPORARY
                                                           ORDER OF PROTECTION
In the Matter of a Proceeding under                        D.R.L.§§ 240, 252
Section 240 and/or 252 of the Domestic Relations Law
                                                           Case No. ▇▇▇▇▇▇▇

Plaintiff/Petitioner    Thomas Fogarty
Date of Birth: ▇▇▇▇▇▇▇

            v.                                             Ex Parte

Defendant/Respondent    Sai Malena Jimenez Fogarty
Date of Birth: ▇▇▇▇▇▇▇

NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION WHICH MAY
RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO SUPREME COURT
PROSECUTION AND PENALTIES FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS
ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.

THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR
COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR
TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS
ORDER .

Whereas a determination has been made in accordance with section 240 and/or 252 of the Domestic Relations Law, and the Respondent
having been: not present in Court, and good cause having been shown,

Now, therefore, it is hereby ordered that: Sai Malena Jimenez Fogarty (▇▇▇▇▇▇▇) observe the following conditions of behavior:

[01]  Stay away from [A] ▇▇▇▇▇▇▇, Thomas Fogarty (DOB: ▇▇▇▇▇▇ and ▇▇▇▇▇▇▇
      ▇▇▇▇▇▇▇) except during any Court ordered visitation and school events and/or activities and except for
      ▇▇▇▇▇▇▇ Holy Communion ceremony at the church.;

      [B]  the home of ▇▇▇▇▇▇▇, Thomas Fogarty (DOB: 06/13/1973) and ▇▇▇▇▇▇▇
           ▇▇▇▇▇▇▇, NY 10913;

      [C]  the school of ▇▇▇▇▇▇▇) and ▇▇▇▇▇▇▇) except for school events and/or
           activities;

      [E]  the place of employment of Thomas Fogarty ▇▇▇▇▇▇▇

[14]  Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with
      ▇▇▇▇▇▇▇), Thomas Fogarty ▇▇▇▇▇▇▇) and ▇▇▇▇▇▇▇) except during
      Court ordered visitation and telephone calls between the Respondent and the children; also refrain from any direct or indirect third
      party contact;

[02]  Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal
      obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching,
      intimidation, threats, identity theft, grand larceny, coercion, unlawful dissemination or publication of intimate image(s) or any criminal
      offense against ▇▇▇▇▇▇▇ Thomas Fogarty ▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇;

[99]  Observe such other conditions as are necessary to further the purposes of protection: This temporary order of protection is subject to
      any other Supreme Court orders;
[99]  Observe such other conditions as are necessary to further the purposes of protection: Respondent shall refrain from inflicting any
      corporal punishment on the subject children;
[99]  Observe such other conditions as are necessary to further the purposes of protection: Respondent to refrain from using or being under
      the influence of alcohol, illegal drugs or misuse of prescription drugs when in the presence of subject children;
[99]  Observe such other conditions as are necessary to further the purposes of protection: This temporary order of protection supersedes the
      temporary order of protection issued on 4/17/23.;

1 of 2

Form SC-1  Page 2
035547/2021
2024-000047

It is further ordered that this order of protection shall remain in force until and including 02/16/2024, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

DATED: 01/22/2024

Honorable Thomas P. Zugibe

The Domestic Relations Law provides that the presentation of a copy of this order of protection to a police officer or peace officer acting pursuant to his or her special duties shall authorize, and sometimes requires, such officer to arrest a person who is alleged to have violated the terms of the order and to bring him or her before the Court to face penalties authorized by law.

Federal law requires that this order must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person against whom the order is sought is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect that person's rights (18 U.S.C §§ 2265, 2266).

It is a federal crime to:
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired. (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

☐ Party against whom order was issued was advised in Court of issuance and contents of Order

☐ Order personally served in Court upon party against whom order was issued

☒ Service directed by other means[specify]: Other

☐ [Modifications or extensions only]: Order Mailed on [specify date and to whom mailed]:_____

☐ Warrant issued for party against whom order was issued[specify date]: _____

☒ Additional service information [specify]: Other: Via NYSCEF

FILED: ROCKLAND COUNTY CLERK 11/27/2023 03:25 PM    Page 352 of 538
NYSCEF DOC. NO. 543                                          RECEIVED NYSCEF: 11/27/2023

Form SC-1
12/2020

ORI No:  NY043015J
Order No:  2023-000534
NYSID No: _____

**At a Rockland County Supreme Court Term (IAS Part)** of the Supreme Court, State of New York, County of Rockland, at the Courthouse at Rockland County Courthouse 1 South Main Street, New City, NY 10956

PRESENT:  Honorable Thomas P. Zugibe

**In the Matter of a Proceeding under
Section 240 and/or 252 of the Domestic Relations Law**

TEMPORARY
ORDER OF PROTECTION
D.R.L.§§ 240, 252

Case No.  _____

Plaintiff/Petitioner   Thomas Fogarty
Date of Birth: _____

v.

Defendant/Respondent  Sai Malena Jimenez Fogarty
Date of Birth: _____

**Both Parties Present in Court**

NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO SUPREME COURT PROSECUTION AND PENALTIES FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.

THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS ORDER.

Whereas a determination has been made in accordance with section 240 and/or 252 of the Domestic Relations Law, and the Respondent having been: present in Court and advised of the issuance and contents of this Order, and good cause having been shown,

Now, therefore, it is hereby ordered that: Sai Malena Jimenez Fogarty _____) observe the following conditions of behavior:

[01]   Stay away from [A] _____ Thomas Fogarty _____ 1973) and _____ except during any Court ordered visitation and school events and/or activities and except for Holy Communion ceremony at the church.;

[B]   the home of _____, Thomas Fogarty _____ and _____ Blauvelt, NY 10913; _____

[C]   the school of _____ and _____) except for school events and/or activities;

[E]   the place of employment of Thomas Fogarty _____

[14]   Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with _____, Thomas Fogarty _____ and _____) except during Court ordered visitation and telephone calls between the Respondent and the children; also refrain from any direct or indirect third party contact;

[02]   Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion, unlawful dissemination or publication of intimate image(s) or any criminal offense against _____), Thomas Fogarty _____ and _____;

[99]   Observe such other conditions as are necessary to further the purposes of protection: This temporary order of protection is subject to any other Supreme Court orders;

[99]   Observe such other conditions as are necessary to further the purposes of protection: Respondent shall refrain from inflicting any corporal punishment on the subject children;

[99]   Observe such other conditions as are necessary to further the purposes of protection: Respondent to refrain from using or being under the influence of alcohol, illegal drugs or misuse of prescription drugs when in the presence of subject children;

[99]   Observe such other conditions as are necessary to further the purposes of protection: This temporary order of protection supersedes the temporary order of protection issued on 4/17/23.;

1 of 2

Form SC-1  Page 2
035547/2021
2023-000534

It is further ordered that this order of protection shall remain in force until and including 01/19/2024, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

DATED: 11/27/2023

Honorable Thomas P. Zugibe

The Domestic Relations Law provides that the presentation of a copy of this order of protection to a police officer or peace officer acting pursuant to his or her special duties shall authorize, and sometimes requires, such officer to arrest a person who is alleged to have violated the terms of the order and to bring him or her before the Court to face penalties authorized by law.

Federal law requires that this order must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person against whom the order is sought is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect that person's rights (18 U.S.C §§ 2265, 2266).

It is a federal crime to:
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired. (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

☒ Party against whom order was issued was advised in Court of issuance and contents of Order
☒ Order personally served in Court upon party against whom order was issued
☐ Service directed by other means[specify]:_____
☐ [Modifications or extensions only]: Order Mailed on [specify date and to whom mailed]:_____
☐ Warrant issued for party against whom order was issued[specify date]: _____
☐ Additional service information [specify]: _____

NYSCEF DOC. NO. 471                                                    RECEIVED NYSCEF: 09/22/2023

Form SC-1
12/2020

ORI No:   NY043015J                    At a Rockland County Supreme Court Term (IAS Part) of the Supreme Court, State of New York,
Order No: 2023-000443                  County of Rockland, at the Courthouse at Rockland County Courthouse 1 South Main Street, New
NYSID No: _____                     City, NY 10956

PRESENT:  Honorable Thomas P. Zugibe                          TEMPORARY
                                                             ORDER OF PROTECTION
In the Matter of a Proceeding under                          D.R.L.§§ 240, 252
Section 240 and/or 252 of the Domestic Relations Law
                                                             Case No. ▆▆▆▆▆▆▆
Plaintiff/Petitioner   Thomas Fogarty
Date of Birth: ▆▆▆▆▆▆▆

            v.                                               Both Parties Present in Court

Defendant/Respondent  Sai Malena Jimenez Fogarty
Date of Birth: ▆▆▆▆▆▆▆

NOTICE:  YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION WHICH MAY
RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO SUPREME COURT
PROSECUTION AND PENALTIES FOR CONTEMPT OF COURT.  IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS
ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.

THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR
COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR
TERMINATED BY THE COURT, THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS
ORDER.

Whereas a determination has been made in accordance with section 240 and/or 252 of the Domestic Relations Law, and the Respondent
having been: present in Court and advised of the issuance and contents of this Order, and good cause having been shown,

Now, therefore, it is hereby ordered that: Sai Malena Jimenez Fogarty ▆▆▆▆▆▆ observe the following conditions of behavior:

[01]   Stay away from [A] ▆▆▆▆▆▆▆▆, Thomas Fogarty ▆▆▆▆ and▆▆▆▆▆▆▆▆▆▆
       ▆▆▆▆▆▆▆ except during any Court ordered visitation and school events and/or activities and except for
       ▆▆▆▆▆▆▆ Holy Communion ceremony at the church.;
  [B]  the home of ▆▆▆▆▆▆, Thomas Fogarty ▆▆▆▆▆ and ▆▆▆▆▆▆▆▆▆▆▆
       ▆▆▆▆ Blauvelt, NY 10913;
  [C]  the school of ▆▆▆▆▆▆▆▆ and ▆▆▆▆▆▆▆▆ except for school events and/or
       activities;
  [E]  the place of employment of Thomas Fogarty ▆▆▆▆▆;

[14]   Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with
       ▆▆▆▆▆▆▆, Thomas Fogarty▆▆▆▆▆ and▆▆▆▆▆▆▆▆ except during
       Court ordered visitation and telephone calls between the Respondent and the children; also refrain from any direct or indirect third
       party contact;

[02]   Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal
       obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching,
       intimidation, threats, identity theft, grand larceny, coercion, unlawful dissemination or publication of intimate image(s) or any criminal
       offense against ▆▆▆▆▆▆▆▆Thomas Fogarty▆▆▆▆ and▆▆▆▆▆▆▆▆

[99]   Observe such other conditions as are necessary to further the purposes of protection: This temporary order of protection is subject to
       any other Supreme Court orders;
[99]   Observe such other conditions as are necessary to further the purposes of protection: Respondent shall refrain from inflicting any
       corporal punishment on the subject children;
[99]   Observe such other conditions as are necessary to further the purposes of protection: Respondent to refrain from using or being under
       the influence of alcohol, illegal drugs or misuse of prescription drugs when in the presence of subject children;
[99]   Observe such other conditions as are necessary to further the purposes of protection: This temporary order of protection supersedes the
       temporary order of protection issued on 4/17/23.;

FILED: ROCKLAND COUNTY CLERK 09/22/2023 04:15 PM    Page 355 of 530
NYSCEF DOC. NO. 471                                         RECEIVED NYSCEF: 09/22/2023

Form SC-1  Page 2
035547/2021
2023-000443

**It is further ordered** that this order of protection shall remain in force until and including 12/22/2023, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

DATED: 09/22/2023



Honorable Thomas P. Zugibe

The Domestic Relations Law provides that the presentation of a copy of this order of protection to a police officer or peace officer acting pursuant to his or her special duties shall authorize, and sometimes requires, such officer to arrest a person who is alleged to have violated the terms of the order and to bring him or her before the Court to face penalties authorized by law.

Federal law requires that this order must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person against whom the order is sought is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect that person's rights (18 U.S.C §§ 2265, 2266).

It is a federal crime to:
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired. (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

☒ Party against whom order was issued was advised in Court of issuance and contents of Order
☒ Order personally served in Court upon party against whom order was issued
☐ Service directed by other means[specify]: _____
☐ [Modifications or extensions only]: Order Mailed on [specify date and to whom mailed]:_____
☐ Warrant issued for party against whom order was issued[specify date]: _____
☐ Additional service information [specify]: _____

Case 1:24-cv-08705-JLR-    Document 1    Filed 11/15/24    Page 356 of 533

FILED: ROCKLAND COUNTY CLERK 06/20/2023 11:44 AM

NYSCEF DOC. NO. 423                                                                      RECEIVED NYSCEF: 06/20/2023

Form SC-1
12/2020

ORI No:    NY043015J
Order No:  2023-000316
NYSID No: _____

At a Rockland County Supreme Court Term (IAS Part) of the Supreme Court, State of New York, County of Rockland, at the Courthouse at Rockland County Courthouse 1 South Main Street, New City, NY 10956

PRESENT:  Honorable Thomas P. Zugibe

In the Matter of a Proceeding under
Section 240 and/or 252 of the Domestic Relations Law

TEMPORARY
ORDER OF PROTECTION
D.R.L.§§ 240, 252

Plaintiff/Petitioner    Thomas Fogarty
Date of Birth:

Case No. _____

v.

Both Parties Present in Court

Defendant/Respondent  Sai Malena Jimenez Fogarty
Date of Birth:

NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO SUPREME COURT PROSECUTION AND PENALTIES FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.

THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS ORDER.

Whereas a determination has been made in accordance with section 240 and/or 252 of the Domestic Relations Law, and the Respondent having been: present in Court and advised of the issuance and contents of this Order, and good cause having been shown;

Now, therefore, it is hereby ordered  that: Sai Malena Jimenez Fogarty (_____) observe the following conditions of behavior:

[01]  Stay away from [A]                                  , Thomas Fogarty
                                   except during any Court ordered visitation and school events and/or activities and except for
                                   Holy Communion ceremony at the church.;
      [B]  the home of                            ), Thomas Fogarty
                       , Blauvelt, NY 10913;
      [C]  the school of                       ) and                       ) except for school events and/or
           activities;
      [E]  the place of employment of Thomas Fogarty

[14]  Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with
                                   , Thomas Fogarty            ) and (                       3) except during
      Court ordered visitation and telephone calls between the Respondent and the children; also refrain from any direct or indirect third
      party contact;

[02]  Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal
      obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching,
      intimidation, threats, identity theft, grand larceny, coercion, unlawful dissemination or publication of intimate image(s) or any criminal
      offense against                            , Thomas Fogarty

[99]  Observe such other conditions as are necessary to further the purposes of protection: This temporary order of protection is subject to
      any other Supreme Court orders;
[99]  Observe such other conditions as are necessary to further the purposes of protection: Respondent shall refrain from inflicting any
      corporal punishment on the subject children;
[99]  Observe such other conditions as are necessary to further the purposes of protection: Respondent to refrain from using or being under
      the influence of alcohol, illegal drugs or misuse of prescription drugs when in the presence of subject children;
[99]  Observe such other conditions as are necessary to further the purposes of protection: This temporary order of protection supersedes the
      temporary order of protection issued on 4/17/23.;

1 of 2

FILED: ROCKLAND COUNTY CLERK 06/20/2023 11:44 AM    Page 357 of 538.

NYSCEF DOC. NO. 423                                               RECEIVED NYSCEF: 06/20/2023

Form SC-1  Page 2
035547/2021
2023-000316

It is further ordered that this order of protection shall remain in force until and including 09/29/2023, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

DATED: 06/20/2023

Honorable Thomas P. Zugibe

The Domestic Relations Law provides that the presentation of a copy of this order of protection to a police officer or peace officer acting pursuant to his or her special duties shall authorize, and sometimes requires, such officer to arrest a person who is alleged to have violated the terms of the order and to bring him or her before the Court to face penalties authorized by law.

Federal law requires that this order must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person against whom the order is sought is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect that person's rights (18 U.S.C §§ 2265, 2266).

It is a federal crime to:
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired. (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

☒ Party against whom order was issued was advised in Court of issuance and contents of Order
☒ Order personally served in Court upon party against whom order was issued
☐ Service directed by other means[specify]: _____
☐ [Modifications or extensions only]: Order Mailed on [specify date and to whom mailed]: _____
☐ Warrant issued for party against whom order was issued[specify date]: _____
☐ Additional service information [specify]: _____

FILED: ROCKLAND COUNTY CLERK 05/11/2023 04:42 PM    Page 358 of 538

NYSCEF DOC. NO. 388    RECEIVED NYSCEF: 05/11/2023

Form SC-1
12/2020

ORI No:    NY043015J
Order No:   2023-000245
NYSID No: _____

At a Rockland County Supreme Court Term (IAS Part) of the Supreme Court, State of New York, County of Rockland, at the Courthouse at Rockland County Courthouse 1 South Main Street, New City, NY 10956

PRESENT:  Honorable Thomas P. Zugibe

**TEMPORARY ORDER OF PROTECTION**
D.R.L.§§ 240, 252

In the Matter of a Proceeding under
Section 240 and/or 252 of the Domestic Relations Law

Case No. _____

Plaintiff/Petitioner    Thomas Fogarty
Date of Birth: _____

v.

**Both Parties Present in Court**

Defendant/Respondent   Sai Malena Jimenez Fogarty
Date of Birth: _____

NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO SUPREME COURT PROSECUTION AND PENALTIES FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.

THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS ORDER.

Whereas a determination has been made in accordance with section 240 and/or 252 of the Domestic Relations Law, and the Respondent having been: present in Court and advised of the issuance and contents of this Order, and good cause having been shown,

Now, therefore, it is hereby ordered  that: Sai Malena Jimenez Fogarty ▮▮▮▮▮▮▮▮▮▮▮▮▮ observe the following conditions of behavior:

[01]   Stay away from [A] ▮▮▮▮▮▮▮▮▮▮▮▮  Thomas Fogarty ▮▮▮▮▮ and ▮ except during any Court ordered visitation and school events and/or activities and except for Holy Communion ceremony at the church.;

[B]   the home of ▮▮▮▮▮▮▮▮▮▮▮  Thomas Fogarty ▮▮▮▮ and ▮▮▮▮▮▮▮
▮▮▮▮▮▮  Blauvelt, NY 10913;

[C]   the school of ▮▮▮▮▮▮▮▮▮▮ ) and Patrick Fogarty ▮▮▮▮▮▮▮ ) except for school events and/or activities;

[E]   the place of employment of Thomas Fogarty ▮▮▮▮▮▮▮

[14]   Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with ▮▮▮▮▮▮▮▮▮ , Thomas Fogarty ▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮ except during Court ordered visitation and telephone calls between the Respondent and the children; also refrain from any direct or indirect third party contact;

[02]   Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion, unlawful dissemination or publication of intimate image(s) or any criminal offense against ▮▮▮▮▮▮▮▮▮ , Thomas Fogarty ▮▮▮▮ and ▮▮▮▮▮▮▮ );

[99]   Observe such other conditions as are necessary to further the purposes of protection: This temporary order of protection is subject to any other Supreme Court orders;

[99]   Observe such other conditions as are necessary to further the purposes of protection: Respondent shall refrain from inflicting any corporal punishment on the subject children;

[99]   Observe such other conditions as are necessary to further the purposes of protection: Respondent to refrain from using or being under the influence of alcohol, illegal drugs or misuse of prescription drugs when in the presence of subject children;

[99]   Observe such other conditions as are necessary to further the purposes of protection: This temporary order of protection supersedes the temporary order of protection issued on 4/17/23.;

FILED: ROCKLAND COUNTY CLERK 05/11/2023 04:42 PM                    INDEX NO. 

NYSCEF DOC. NO. 388                                         RECEIVED NYSCEF: 05/11/2023

Form SC-1  Page 2
035547/2021
2023-000245

It is further ordered that this order of protection shall remain in force until and including 06/30/2023, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

DATED: 05/11/2023



Honorable Thomas P. Zugibe

The **Domestic Relations Law** provides that the presentation of a copy of this order of protection to a police officer or peace officer acting pursuant to his or her special duties shall authorize, and sometimes requires, such officer to arrest a person who is alleged to have violated the terms of the order and to bring him or her before the Court to face penalties authorized by law.

**Federal law** requires that this order must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person against whom the order is sought is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect that person's rights (18 U.S.C §§ 2265, 2266).

**It is a federal crime to:**
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired. (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

☒ Party against whom order was issued was advised in Court of issuance and contents of Order
☒ Order personally served in Court upon party against whom order was issued
☐ Service directed by other means[specify]:_____
☐ [Modifications or extensions only]: Order Mailed on [specify date and to whom mailed]:_____
☐ Warrant issued for party against whom order was issued[specify date]: _____
☐ Additional service information [specify]: _____

**FILED: ROCKLAND COUNTY CLERK 04/17/2023 04:01 PM**

NYSCEF DOC. NO. 367

RECEIVED NYSCEF: 04/17/2023

Form SC-1
12/2020

ORI No:     NY043015J
Order No:   2023-000209
NYSID No:  _____

At a Rockland County Supreme Court Term (IAS Part) of the Supreme Court, State of New York, County of Rockland, at the Courthouse at Rockland County Courthouse 1 South Main Street, New City, NY 10956

PRESENT:  Honorable Thomas P. Zugibe

**In the Matter of a Proceeding under**
**Section 240 and/or 252 of the Domestic Relations Law**

Plaintiff/Petitioner    Thomas Fogarty
Date of Birth:  ▮▮▮▮▮▮

                    v.

Defendant/Respondent  Sai Malena Jimenez Fogarty
Date of Birth:  ▮▮▮▮▮▮

TEMPORARY
ORDER OF PROTECTION
D.R.L.§§ 240, 252

Case No.  ▮▮▮▮▮▮

**Both Parties Present in Court**

NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO SUPREME COURT PROSECUTION AND PENALTIES FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.

THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS ORDER.

Whereas a determination has been made in accordance with section 240 and/or 252 of the Domestic Relations Law, and the Respondent having been present in Court and advised of the issuance and contents of this Order, and good cause having been shown,

Now, therefore, it is hereby ordered that: Sai Malena Jimenez Fogarty ▮▮▮▮▮▮ observe the following conditions of behavior:

[01]  Stay away from [A]    Thomas Fogarty (DOB: 06/13/1973), ▮▮▮▮▮▮ except during any Court ordered visitation and school events and/or activities;

    [B]    the home of Thomas Fogarty ▮▮▮▮▮▮ Blauvelt, NY 10913;

    [C]    the school of ▮▮▮▮▮▮ and ▮▮▮▮▮▮ except for school events and/or activities;

    [E]    the place of employment of Thomas Fogarty ▮▮▮▮▮▮

[14]  Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with Thomas Fogarty ▮▮▮▮▮▮ except during Court ordered visitation and telephone calls between the Respondent and the children; also refrain from any direct or indirect third party contact;

[02]  Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion, unlawful dissemination or publication of intimate image(s) or any criminal offense against Thomas Fogarty ▮▮▮▮▮▮

[99]  Observe such other conditions as are necessary to further the purposes of protection: This temporary order of protection is subject to any other Supreme Court orders;

[99]  Observe such other conditions as are necessary to further the purposes of protection: Respondent shall refrain from inflicting any corporal punishment on the subject children;

[99]  Observe such other conditions as are necessary to further the purposes of protection: Respondent to refrain from using or being under the influence of alcohol, illegal drugs or misuse of prescription drugs when in the presence of subject children;

1 of 2

Form SC-1  Page 2
035547/2021
2023-000209

**It is further ordered** that this order of protection shall remain in force until and including 06/30/2023, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

DATED: 04/17/2023

Honorable Thomas P. Zugibe

The **Domestic Relations Law** provides that the presentation of a copy of this order of protection to a police officer or peace officer acting pursuant to his or her special duties shall authorize, and sometimes requires, such officer to arrest a person who is alleged to have violated the terms of the order and to bring him or her before the Court to face penalties authorized by law.

**Federal law requires** that this order must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person against whom the order is sought is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect that person's rights (18 U.S.C §§ 2265, 2266).

**It is a federal crime to:**
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty); and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired. (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

[X] Party against whom order was issued was advised in Court of issuance and contents of Order
[X] Order personally served in Court upon party against whom order was issued
[ ] Service directed by other means[specify]: _____
[ ] [Modifications or extensions only]: Order Mailed on [specify date and to whom mailed]:_____
[ ] Warrant issued for party against whom order was issued[specify date]: _____
[ ] Additional service information [specify]: _____

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 362 of 533



Civil Rights
Labor Law
Criminal Defense
Family Law
Wills, Trusts, and Estate

THE LAW OFFICE OF
**TRICIA S. LINDSAY**

January 16, 2024

**_VIA NYSECF_**
Hon. Thomas Zugibe, J.S.C.
1 South Main Street
New City, NY 10956

> Re:  *Thomas Fogarty v. Sai Malena Jimenez-Fogarty*
>        *Index No.: 035547/2021*

Dear Hon. Judge Zugibe,

As you are aware, I represent Ms. Jimenez-Fogarty in the above referenced matter. I write to respectfully address a few inconsistencies and erroneous statements in Your Honor's Decision and Order of January 11, 2024 regarding Defendant's request for "Interim Counsel Fees" and the stated reasons for failing to grant Counsel's request thereby compromising Defendant's ability to adequately litigate this matter on equal footing as the Plaintiff, Mr. Fogarty, jeopardizing her ability to retain her present legal counsel and sorely prejudicing her case in that she is unable to hire co-counsel and/or experts in any capacity or to even subpoena witnesses to testify in her direct case on point yet being made to commence trial on January 16, 2024 without adequate time to prepare, no proper exchange of trial materials and downright disregard for the fundamental rights of Ms. Jimenez-Fogarty.

To begin, it is mind boggling that this *Court* would state that the delays in this matter "rests solely on the shoulders of the Defendant" when this same *Court* has had to have Judge Eisenpress recuse herself due to her conflict of interest and violation of the law with regards to her relationship and bribes she indulged in with opposing counsel Lisa Zeiderman, Ashley Kersting, Miller Zeiderman and resultingly, the Plaintiff, Thomas Fogarty, in this matter. The fact that any of the *Orders* issued by Judge Eisenpress in this matter and any flowing from any of her decisions, are still pending, demonstrates the compromised nature and prejudice my client has been attempting to operate under and to swim above throughout the pendency of this matter. What's more concerning and telling, is the fact that Miller Zeiderman is allowed to remain on this case despite their illegal actions of bribing a Judge to grant custody to a parent without a hearing or even a pending motion.

Case 1:24-cv-08705-JLR     Document 1     Filed 11/15/24     Page 363 of 532

FILED: ROCKLAND COUNTY CLERK 01/16/2024 12:25 PM
NYSCEF DOC. NO. 641

RECEIVED NYSCEF: 01/16/2024

*Lindsay-Zugibe*
*January 16, 2024*
*Page 2*

        A parent's most basic right with regards to their children is the right to the care, custody and control of their child. This fundamental right cannot and must not be taken lightly nor disturbed without Due Process and a strong showing of evidence to justify this decision. This is not an easy burden, but it seems with a stroke of the pen, without legal impetus or cause, Judge Eisenpress found justification and phantom authority to remove this basic fundamental right from the Defendant, Ms. Jimenez-Fogarty, in this matter. Further, this Court, now presided over by *Your Honor*, is continuing to uphold these orders though they are nothing more than "fruits of the poisonous tree." Troublingly, not only did Judge Eisenpress remove this fundamental right from the children's mother without justification, cause or any due process, but she turned the children over to their abusive bigoted, alcoholic and drug addict father on whom Child Protective Services have been called by independent mandated reporters due to the consistent and persistent abuse they are subjected to by their father, Thomas Fogarty. Then, this same *Court* issued a *Gatekeeper Order* at the request of Ashley Kersting, an Officer of the Court, with the support of Nicole DiGiacomo, the AFC, when Ms. Jimenez-Fogarty brought to the attention of the court that her daughter, ████████ was possibly harmed while in her father's custody as she observed blood in her daughter's underwear, a non-menstruating child, after spending the night in the home of ████████. Instead of investigating the matter, my client, who was pro-se at the time, due to no fault of her own, but the fault of this Court, was told to "shut up."

        Therefore, to say Ms. Jimenez-Fogarty is the reason for the persistent delays in this matter is a complete erroneous fabrication of the facts. From just a preliminary review of the docket entries in this matter and the short time counsel has been on this case, it is glaringly obvious that Miller Zeiderman uses litigation tactics not for the benefit of efficient litigation, but for the purpose of overwhelming my client and burying her in unnecessary filings, emails, motions, etc. It is also obvious that for many reasons, they are the favored party in this matter, mostly stemming from their compromised relationship with a number of parties involved in this matter as well as their scorched earth tactics used against the Defendant to deny her of her marital assets without legal cause or justification, create contention where there is none and then to turn the focus on her to make it appear as if she is the problem, all with the support of *this Court*.

        As part of this tactic, the Defendant has been denied access to an equal amount of attorney's fees in order to retain and maintain legal representation. While the Plaintiff has been allowed unlimited access and non-restraint in use of the parties' marital assets to maintain his lavish lifestyle, and arm himself with a legal team comprised of at least four (4) attorneys, each billed hourly, amounting to at least $1million or more, Ms. Jimenez-Fogarty has been limited in her access to the point that each of her attorneys have resigned for non-payment as a result of this Court's refusal to see her as on par with Mr. Fogarty and its refusal to follow DRL §237, as proscribed by law. With that, Ms. Jimenez-Fogarty is in jeopardy of losing yet another attorney, and being made homeless, due to the court turning a blind eye to Ashley Kersting and Miller Zeiderman's misrepresentations and violations of Plaintiff, before this *Court*, and to the legislative intent of DRL §237.

FILED: ROCKLAND COUNTY CLERK 01/16/2024 12:25 PM
Case 1:24-cv-08705-JLR Document 1 Filed 11/15/24 Page 364 of 533 NO. 1 01/16/2024
NYSCEF DOC. NO. 641                                                              RECEIVED NYSCEF: 01/16/2024

*Lindsay-Zugibe*
*January 16, 2024*
*Page 3*

As a point of clarity, I filed a notice of appearance on November 21, 2023 on behalf of Ms. Jimenez-Fogarty, in this matter. On November 24, 2023 I submitted a *Reply Affirmation* in response to a pending *Order to Show Cause* (Mot. Seq. #17), filed by the Defendant and a *Cross-Motion*, filed by the Plaintiff. Included in this *Reply Affirmation*, in keeping with the practice of Defendant's prior counsel, was an application for interim attorney's fees on behalf of myself. On 12/05/2023 Defendant filed an *Emergency OSC for Immediate Access to Marital Assets*, with exhibits demonstrating her situation, but Counsel's *Affirmation* failed to upload. Counsel was contacted by Ms. Sara Beaty, (Principal Law Clerk to Judge Zugibe), who initially notified counsel of the deficiency which was subsequently cured as I uploaded my *Affirmation* and *Retainer Agreement* along with my November and December timesheets to demonstrate billing in the early morning of 12/07/2023. Ms. Beaty then contacted me once again, but this time to falsely state that my *Affirmation* made no request for attorney's fees and that we needed to upload a recent *Statement of Networth* on behalf of the Defendant, although she submitted one a few weeks earlier on October 2, 2023, and her motions before the court clearly stated she had no income and was in dire need of pendente lite maintenance. With that, a virtual court appearance was scheduled for Monday, December 11, 2023.

During this court appearance, *Your Honor* stated that he was striking Defendant's emergency OSC as the matters raised therein were already being considered in a prior motion and then, to counsel's surprise, you repeated Ms. Beaty's email, almost word for word, which she previously sent regarding the deficiencies in counsel's application for attorney's fees. However, to my surprise, the only deficiency was that *Defendant's Emergency OSC* did not state on a separate line, the request for attorney's fees. Yet, Counsel's *Affirmation* clearly stated it was in *Support of the Emergency OSC and a Request for Attorney's Fees*. Counsel then offered to separate the documents to appease the court but was told there was no need to do so. Therefore, the emphasis on the need to correct the OSCs submitted by Defendant, was not solely at the fault of the Defendant, nor her counsel, but was also a result of the Court being very particular, unlike with Defendant's previous attorneys, with regard to the request for attorney's fees and Ms. Beaty's erroneous email assertion regarding the motion coupled with the request that my client be made to submit duplicate statements of net worth to substantiate her dire situation.

Further, the references to the undersigned's alleged "inflated" billing is striking in that Miller Zeiderman has yet to submit any documentation with regard to billing so that Miller Zeiderman's billing practices may be scrutinized. For the court to agree with Ms. Kersting's assertion that counsel's travel to and from the courthouse in Rockland County from Mount Vernon, NY, is no longer than twenty (20) minutes, is absurd and shows her further dishonesty or the fact that she does not cross the Tappan Zee Bridge to travel into Westchester County at varying times of the week or day, as anyone who does, is fully aware that travel time can and does fluctuate depending on the time of day and day of the week in New York State. Therefore, if Counsel is billing at a rate of $1000/hr, travel time of 1 ½ hours does equate to $1500.00. Additionally, Ashley Kersting's intentional effort to leave out the hourly rate of the Defendant's other attorneys who charged even more than Ms. Lindsay and the Court's acquiescence in ignoring this information in Plaintiff's motion further demonstrates the bias Ms. Jimenez-Fogarty is up against in this Court.

FILED: ROCKLAND COUNTY CLERK 01/16/2024 12:25 PM
NYSCEF DOC. NO. 641                                                      RECEIVED NYSCEF: 01/16/2024

*Lindsay-Zugibe*
*January 16, 2024*
*Page 4*

Even more, the court's reference to Ms. Lindsay billing $300 for a one sentence email is taken completely out of context to remain in solidarity with Miller Zeiderman, who seems to have been deemed the *keeper or watcher of legal fees.*

The fact is, to deem Ms. Lindsay's fees as unreasonable while Plaintiff is allowed a team of attorneys for whom he is billed separately, is hypocritical. To deny Defendant $150,000.00 retainer fee called for under her agreement with Ms. Lindsay places her in danger of losing her legal representation, once again, thereby denying her ability to litigate on equal footing with Mr. Fogarty, or to cause Ms. Lindsay to commit malpractice as she is estopped from retaining co-counsel, experts, issuing and serving subpoenas for witness testimony, ordering transcripts, and in essence litigating this matter to the level as required of her profession, which is unconscionable. The fact is Ms. Jimenez-Fogarty is being intentionally prejudiced in violation of NY Law, as whether or not she is co-owner of Highbury Concrete, under NY Law, **ALL THE ASSETS IN DISPUTE HERE, ARE MARITAL ASSETS**. Therefore, Defendant is being denied access to the use of her own money, to her severe detriment and contrary to the best interests of the children.

Finally, the timing of the *Decision and Order* on the application for attorney's fees placed Counsel in a very compromising situation, which was highlighted to the court during the November 27, 2023 court appearance, and again on December 11, 2023 during the virtual proceeding and also in letter correspondence and motions to the court. In each of foregoing, Counsel made it clear to the Court of the need for a ruling on the application for fees in enough time to allow for adequate preparation for trial. The Court insisted on scheduling trial for January 16-18, 2024 while promising to issue its decision by January 5, 2024. Counsel notified the court this would still not be enough time to adequately prepare. Yet, despite, the court's promise to issue a decision by 01/05/2024, so that Counsel would know whether she would continue on the matter, or not, *Your Honor* waited until the afternoon of January 11, 2024 just before a holiday weekend, to do so, and then only granted 1/3 of the required retainer fee totaling $50,000.00 to be paid in 2-parts of $25,000 each with the first payment to be paid after trial has commenced or is concluded. Therefore, this Court is expecting me to expend even more time without pay, to prepare for trial when the amount of fees granted does not even cover the current outstanding fees owed, plus my preparation time for trial and to conduct trial. At the present moment, I have spent 78.5 hours on this matter, with no compensation, while being expected to also prepare for the financial portion of trial. Strikingly, even if I were to reduce my fees by ½ the hourly billing rate, down to 500/hr, my fees would still not be covered and there is certainly none left to retain or acquire the needed resources.

Further, the court's *Order* is silent as to subsequent fees to cover additional ongoing billing. Surely *Your Honor* does not expect Counsel to continue to work without the appropriate allocation of ongoing attorney's fees to compensate her for her representation of Ms. Jimenez-Fogarty and to retain necessary and appropriate experts. Furthermore, it is only right, that if Defendant is made to demonstrate the funds expended on legal fees in itemized fashion, that the Plaintiff and his counsels be made to do the same.

FILED: ROCKLAND COUNTY CLERK 01/16/2024 12:25 PM

NYSCEF DOC. NO. 641

RECEIVED NYSCEF: 01/16/2024



*Lindsay-Zugibe*
*January 16, 2024*
*Page 5*

  This case is one I have never seen before, as I have never witnessed such blatant injustice in a family court firsthand as I am seeing in this Court. Yet, I am quickly learning that this situation

is not so unique in the Family Courts of Rockland and Westchester counties as I am being contacted daily by more and more families who have become victims of these courts, Faith Miller am Lisa Zeiderman, Ashley Kersting, and their team of "experts" and "practitioners" who are regular participants in their cases which all have strikingly similar patterns and outcomes.

  Counsel requests to know the intent of the Court with regard to payment of legal fees and fees to retain necessary experts, as this matter progresses so that she can make an informed decision as to whether or not to remain as counsel in this case.

           Respectfully,

           *Tricia Lindsay*
           Tricia S. Lindsay, Esq.

To: Ashley Kersting, Esq. (ecf and email)
  Nicole DiGiacomo (ecf and email)

FILED: ROCKLAND COUNTY CLERK 06/28/2023 07:56 PM
NYSCEF DOC. NO. 338
RECEIVED NYSCEF: 06/28/2023



## LAW OFFICE OF NICOLE DiGIACOMO, PLLC

ROCKLAND: 130 N Main Street, Suite 101, New City, New York 10956
WESTCHESTER: 75 Virginia Road, Suite N5, White Plains, New York 10603
Phone: (845) 668-4770  www.ndigiacomolaw.com

June 5, 2023

Hon. Thomas P. Zugibe
Rockland County Supreme Court
1 South Main Street
New City, NY 10956

Re: Fogarty v. Fogarty

Your Honor:

I am writing as the Attorney for the Children in the above referenced matter to clarify my clients' current position.

During my most recent in-person meeting with the children, the children have stated that they would like supervision of the visits with their mother to end. Due to the pending Order to Show Cause seeking my removal from this case, I would like to be clear that this meeting was the first time the children had told me they no longer wanted supervision during the visits. I would also like to be clear that most, if not all, of the other things that the Defendant claims in her motion that the children have told me (i.e. that they want to live with their mother, that they do not want to go to Ireland), have never been stated by the children to me in any of our meetings.

At this point, I would like to make it clear that although the children have expressed a wish for supervision to end, I will be substituting judgment and asking that supervision continue until there is an engagement in therapeutic access. I believe the children would be at imminent risk of emotional harm if supervision was suspended right now. I base that belief on several things: 1. Dr. Mednick's report and testimony. 2. My conversations with the children's therapist, Dr. Abrams. and 3. The fact that this statement from the children was made to me after there were several reports of inaudible whispering between the children and their mother during supervised access.

Thank you for your time and attention in this matter. I welcome any questions the Court, counsel, or the parties may have about this letter.

Very truly yours,

Nicole DiGiacomo, Esq.
Attorney for the Children

cc: Ashley Kersting, Esq. via email
    Malena Jimenez Fogarty, Pro Se, via email.

FILED: ROCKLAND COUNTY CLERK 01/30/2024 09:00 AM
NYSCEF DOC. NO. 650

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 368 of 533
RECEIVED NYSCEF: 01/30/20



Civil Rights
Labor Law
Criminal Defense
Family Law
Wills, Trusts, and Estate

THE LAW OFFICE OF
TRICIA S. LINDSAY

January 26, 2024

**VIA NYSECF**
Hon. Thomas Zugibe, J.S.C.
1 South Main Street
New City, NY 10956

Re:     **Thomas Fogarty v. Sai Malena Jimenez-Fogarty**
        **Index No.: 035547/2021**

Dear Hon. Judge Zugibe,

    As *Your Honor* is aware, I represent the Defendant Sai Malena Jimenez-Fogarty in the matter referenced above. Counsel writes in response to the Plaintiff's letter requesting that "...the Plaintiff be afforded the opportunity to supplement his submission and file a Sur-Reply based upon the newly discovered information/facts" as a result of alleged "newly discovered evidence that is directly related to the pending motions" he purportedly did not have in his possession previously, which is related to Ms. Jimenez's 2023 income and employment. To this request, Defendant vehemently objects, as it is untimely, disingenuous, a transparent and nefarious attempt to prolong an award for upward modification which my client is rightfully entitled to pursuant to DRL 237, based on the value of the marital assets in this matter and the fact that she has been unemployed since approximately October 31, 2023 and is in danger of losing her home and what little she has left, including her automobile, visits with her children and her ability to provide for her basic needs.

    **The fact is, the request for upward modification has in fact been fully submitted as of November 24, 2023.** There are no further documents submitted on *Motion Sequence 17* other than a court request for W2 documents which was made in December when they became existential. The creation of *Motion Sequence 19* with *Cross-Motion* was also fully complete on November 24, 2023. Pursuant to the New York CPLR, a decision is to be issued within sixty (60) days of the completion of filing. To date, this has not been done and *Motions 17, 19* and *20* are in fact not the same motion as they address separate issues, and so there are no grounds to combine them. The Court's request for documents, which did not exist at the time of the filing of October 2, 2023, in no way altered the date the motion was fully submitted. **As such, this Court had a duty to issue an order no later than January 22, 2024.** *This failure to issue an order timely, especially in light*

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 369 of 530

FILED: ROCKLAND COUNTY CLERK 01/30/2024 09:00 AM    NYSCEF NO.
NYSCEF DOC. NO. 650    RECEIVED NYSCEF: 01/30/2024

*Lindsay-Zugibe*
*January 30, 2024*
*Page 2*

*of the dire circumstances of this case, was an abuse of discretion and violation of my client's civil rights.*

To clarify, this *Motion For Upward Modification* was submitted for numerous reasons including, but not limited to the undeniable fact that my client lost her employment and has not received a paycheck since approximately October 31, 2023. While she is seeking a new position from her employer but due to Ms. Kersting contacting her employer the reassignment process as explained to the Court during trial the week of January 15, 2024, has now been negatively impacted. In addition, finding employment is challenging due to the numerous Court dates and the Plaintiff's continued refusal to release and return to the Defendant her personal property which includes her business wardrobe. As a result, the Defendant does not have appropriate clothing to further obtain work that will comply with her medical restrictions without the necessary clothing. Nor does she have the money to go out and buy business suits, blouses, shoes nor the appropriate and necessary garments for her back injury.

At this point, sixty (60) days have elapsed and as stated above, we vehemently oppose any and all delay tactics by Miller Zeiderman under the guise of the submission of "new evidence." The Defendant's employment records were fully available to *Plaintiff* prior to now. Plaintiff and his Counsel could have and should have submitted this purported "new evidence" with their *Cross-Motion* and *Reply*, as any and all evidence was fully available at the time of the motion documents and further extensions in light of this Court's out-of-guideline pendente lite order on June 13, 2022. Plaintiff's request is a bad faith litigation delay tactic which, if granted would result in further violations of my client's fundamental rights under New York law and a prolonging of her very dire financial hardship.

It is undeniable that Ms. Jimenez-Fogarty is two (2) to three (3) months past due on all her bills as follows: 1) Orange and Rockland which is now owed **$1071.71**; 2) her car payment is three (3) months behind and about to be repossessed; 3) for the first time in her life her credit cards are over sixty (60) days late, are over the limit and many have been closed; 4) her credit score has been severely damaged plummeting from a score of **831 to 500**; She owes the Supervisor for many past visits, all which was addressed to this Court. Defendant helped Plaintiff obtain good credit and now he is ruining hers and being allowed to by this Court.

Further, Ms. Jimenez Fogarty wears prescription contact lenses and does not even have money for the new prescription as required. She has resultingly so, been wearing the daily contacts for weeks, which is very harmful to her eyes. Additionally, since Mr. Fogarty never returned her hearing aids which she desperately needs, her hearing has significantly diminished, because she cannot afford the **$1500 co-pay.** There is no denying that Ms. Jimenez Fogarty needs the financial means to resolve both these medical necessities as quickly as possible.

No matter what "new evidence" Plaintiff claims to have, which he interestingly failed to provide in support of his request, the fact remains that my client currently has no income other than the **$4,240 from spousal maintenance** and **her monthly bills are over $20,000 due to**

FILED: ROCKLAND COUNTY CLERK 01/30/2024 09:00 AM
NYSCEF DOC. NO. 650

*Lindsay-Zugibe*
*January 30, 2024*
*Page 3*

**having to spend over $117,000 in fees from September 22, 2021, through July 1, 2022,** not to mention the fact that during that ten (10) month period Ms. Jimenez Fogarty did not receive any emergency spousal maintenance whatsoever, as required by law. Further, this Court's Order to pay fees for supervised visits and for the AFC while being blocked from her marital assets, with no income, no employment, no personal possessions was an absolute abuse of discretion and shocking to the conscience of a moral society.

The Plaintiff has submitted tax filings to this Court as part of this motion sequence which contradicts his earlier tax filings. For that reason, along with Plaintiff's failure to properly provide his income on his statement of net worth from March 1, 2022, this Court was required to issue the requested amount. In light of the Court's refusal to timely and equally issue interim attorney fees and to refuse to explain its continuance of an out-of-guideline spousal maintenance Order, they have encouraged Plaintiff and his counsel to financially dominate the Defendant.

During testimony on January 17, 2024, it was clear that Mr. Fogarty, in his cross-examination, did not support his own financial assertions which he made in documents. He admits to paying his girlfriend, who lives in the home with the children rent free, $6,000.00 per month. This Court cannot countenance the continued payment of spousal maintenance at a figure below what the Plaintiff is paying his admitted girlfriend to receive from the marital estate. This was further compounded by his statements that he further buys her haute couture Gucci handbags and accessories which cost thousands of dollars which he clearly stated "it ain't cheap." In addition, to the many vacations he testified to taking his girlfriend Laura Spector Marino on without the children, while his wife is made to obtain food at the church pantry to feed herself and the children.

Mr. Fogarty further submitted to the court documents intended to commit fraud on this Court, by providing tax filings which are partial documents. For example, he failed to provide his full tax documents to show his actual income in that for the 2017 taxes (NYSCEF Dkt. No. 600), the Plaintiff only submitted 44 pages, however, the full tax filing was over 85 pages which showed Highbury Concrete's true earnings (NYSCEF dkt. No. 610). This discrepancy cannot be an oversight when 41 pages are missing, and they are not included for any of the tax years he submitted at all. Thomas Fogarty and Miller Zeiderman continuously deceive the court with zero repercussion, and now want to delay the Court's ruling on Defendant's request and need for upward modification.

The Defendant submitted the Plaintiff's own application for credit in which he states his income in March 2019 that his income was $500,000.00 per month. This application was submitted on January 4, 2024 (NYSCEF Dkt. No. 621), regarding the request for interim legal fees. This Court, with its improper delays, must now include that Plaintiff's own testimony and application for credit showing that the assertion of his financial situation is deeply flawed and that the figures provided on his *Reply* documents make it clear that with the calculations made pursuant to the actual tax documents, with the records fully complete, that the guideline spousal maintenance amount should have been at least **$150,000.00** per year with an additional amount for the over **$500,000.00** per year. If we accept the assertion from Plaintiff that his income is **$500,000.000** per month, as per the Audi application, the spousal maintenance is criminally deficient. The fact is, his income is **$6,000,000.00** and **30% of that is $1,800,000.00** and this

FILED: ROCKLAND COUNTY CLERK 01/30/2024 05:00 AM
NYSCEF DOC. NO. 650                                          RECEIVED NYSCEF: 01/30/2024

*Lindsay-Zugibe*
*January 30, 2024*
*Page 4*

Court had provided the Defendant approximately **$50,000.00.** This award can only be the result of corruption or collusion as it is so deficient as to mean that the Plaintiff intends to starve the Defendant into submission, a Miller Zeiderman custom used against mothers so their male clients can buy the custody of the children.

This Court is punishing the Defendant by allowing the Plaintiff and his counsel to financially dominate the Defendant and acting in concert with them. This Court's refusal to even partially maintain the marital lifestyle is so improper as to be beyond an abuse of discretion. The Plaintiff's own credit application provides a figure this court has intentionally ignored. This Court cannot further continue to ignore this in light of the Defendant dire financial circumstances.

The fact remains that Thomas Fogarty is a millionaire from the wages he earns from Highbury Concrete, the family business started two (2) months after they were married on January 25, 2013. Ms. Jimenez Fogarty provided the principal for the business because Thomas Fogarty was an illegal alien with no money, and he could not even work in the business until 2014 after he received his green card and work authorization. According to Thomas Fogarty's Audi application from March 7, 2019 (NYSCEF Dkt. No. 621), the company's annual sales are **$150,000,000.00.** The company's revenues have significantly grown since due to the expansion into national markets with completed and ongoing projects in West Palm Beach, Florida. Plaintiff has even set up twelve (12) subsidiaries using funds from the family business Highbury Concrete, Inc. since consulting with Miller Zeiderman on November 3, 2020 (nearly one year before the separation).

Thomas Fogarty has sole access to the couple's multimillion dollar marital assets when there is no court order stating he could block his wife from their assets. Thomas Fogarty is intentionally behaving outrageously, and his malicious actions are causing his wife severe emotional distress. Ms. Jimenez Fogarty is currently unemployed, at the brink of poverty and is extremely worried about not having food, not being able to see her children and not having transportation to see the children as her car can be taken any moment due to the many missed payments.

The Defendant's upward modification must be granted without further delay, for the requested amount of $21,000 which is an amount below the guideline of $150,000 and this Court should grant the guideline amount based on the loan application of the Plaintiff to Audi. Failure to do so implicates this Court in the corruption of the Family and Domestic Relations Court which has become so rampantly apparent and mentioned in the *Williams Judicial Commission Report* to which my client testified at a Senate Hearing on November 1, 2023. Thomas Fogarty told his wife repeatedly that if she ever left him, he would destroy her and with this Court's help, he is accomplishing his goal.

For an detailed review of the filings with regard to the pending motions, please see the attached.

In light of the foregoing, Defendant requests that this Court deny Plaintiff's request to file a Sur-Reply which will further delay the upward modification and prolong her suffering.

Case 1:24-cv-08705-JLR     Document 1     Filed 11/15/24     Page 372 of 533

*Lindsay-Zugibe*
*January 30, 2024*
*Page 5*

We thank the Court for it's consideration.

Respectfully,

Tricia S. Lindsay

NYSCEF DOC. NO. 650                                                                                    RECEIVED NYSCEF: 01/30/2024

*Lindsay-Zugibe*
*January 30, 2024*
*Page 6*

The Defendant filed an Order to Show Cause for an Upward Modification of Spousal Maintenance and it was designated Motion sequence 17. What occurred regarding this Order of Show Cause is as follows:

1.      Defendant submitted and Order to Show Cause on October 2, 2023, and affidavit of Defendant and Attorney's Affirmation by Karen Winner (Motion 17);

2.      October 14, 2023 Defendant's Counsel, Karen Winner, filed an Emergency Order to Show Cause for her Withdrawal as Counsel (Motion 18);

3.      October 16, 2023 the Court issued the Order to Show Cause for Withdrawal was filed by Karen Winner Opposition papers must be served by October 16, 2023 (Motion 18);

4.      October 16, 2023 Order to Show Cause – Conformed Copy was filed by Karen Winner (Motion #18);

5.      Defendant's Affidavit Pursuant to Court Order regarding the Withdrawal on October 20, 2023 (Sequence 18);

6.      On October 27, 2023 Karen Winner submitted Proposed Order to be Relieved as Counsel of Record (Sequence 18);

7.      On October 27, 2023 the Court signed the Proposed Order for Karen Winner to be Relieved as Counsel of Record and issued a thirty (30) day stay, excluding the upward modification (commencing on October 23, 2023) (Sequence 18);

8.      On November 1, 2023 Plaintiff submitted Cross-Motion regarding spousal maintenance (Sequence 19);

9.      On November 1, 2023 Plaintiff filed the Response to the Order to Show Cause (Sequence 17) along with Plaintiff's Affidavit and the Attorney Affirmation (filed as Sequence 19);

10.     On November 3, 2023 Defendant filed a letter request for release of marital funds to pay for new counsel and four other requests (No Sequence Designation);

11.     On November 6, 2023 Court Order Denying Letter Request of November 3, 2023 and permission for new attorney to file interim fees request (No Sequence Designation);

12.     Notice of Appearance of Tricia S. Lindsay as Counsel for Defendant filed on November 21, 2023 (No Sequence Designation)

13.     On November 22, 2023 Defendant's Counsel submitted a letter to the Court regarding extension for two (2) days to submit the Sequence 17 Reply;

14.     On November 22, 2023 Court Order granting two (2) day extension for Defendant's Reply in the Sequence 17;

15.     On November 24, 2023 Defendant filed Affidavit/Affirmation in Opposition to Cross-Motion (Sequence 19) and Further Support of Motion (Sequence 17);

16.     November 27, 2023 Court extending the Order of Protection (No Sequence Designation);

17.     On December 5, 2023 Defendant filed Emergency Order to Show with multiple requests for relief as to marital assets (Motion 20);

18.     On December 6, 2023 Plaintiff filed a letter with the Court requesting denial of December 5, 2023 Emergency Order to Show Cause (No Sequence Designation);

19.     On December 7, 2023 Defendant Submitted Affirmation/Affidavit in Support of Proposed Order to Show Cause/Exparte App (Motion 20);

20.     On December 8, 2023 Order of the Court for Virtual Conference on December 11, 2023 regarding December 5, 2023 Emergency Order to Show Cause;

# 19

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>SAI MALENA JIMENEZ FOGARTY,<br>Complainant,<br><br>v.<br><br>NEW YORK STATE, UNIFIED COURT SYSTEM,<br>Respondent. | COMPLAINT<br>Pursuant to Executive Law,<br>Article 15<br><br>Case No.<br>**10236984** |

I, Sai Malena Jimenez Fogarty, residing at 228 East Route 59v, Nanuet, NY, 10954, charge the above named respondent, whose address is Litigation and Human Resources Support Bureau, 44 Holland Avenue, Albany, NY, 12229 with an unlawful discriminatory practice relating to public accommodation in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of disability, race/color, sex, domestic violence victim status, opposed discrimination/retaliation.

Date most recent or continuing discrimination took place is 2/16/2024.

The allegations are:

1.    **SEE ATTACHED COMPLAINT.**

Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to public accommodation because of disability, race/color, sex, domestic violence victim status, opposed discrimination/retaliation, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.



**NEW YORK STATE**

## Division of Human Rights

**KATHY HOCHUL**
Governor

**DENISE M. MIRANDA**
Acting Commissioner

June 21, 2024

Sai Malena Jimenez Fogarty
228 East Route 59v
Nanuet, NY 10954

      Re:   Sai Malena Jimenez Fogarty v. New York State, Unified Court System
             Case No. 10236984

Dear Sai Malena Jimenez Fogarty:

      Please be advised that this office has received your complaint. Your filing date is 5/3/2024.

      To protect your rights, it is essential that the Division be notified promptly of any change in your address or telephone number. A form is enclosed for this purpose.

      **Use of email by the Division:** The Division uses email, whenever possible, to communicate with the parties to complaints. This avoids delays and lost mail, and increases the efficiency of Division case processing, particularly as the Division intends to continue to process cases in a timely fashion during the COVID-19 pandemic. Therefore, **you are required to provide your email address** if you have not already done so, and to keep us advised of any change of email address. You can provide your email address by emailing the assigned investigator and referencing your case number. Please see the Investigator Assignment Sheet enclosed.

      You will be contacted by the investigator assigned to your case when the active investigation of your complaint begins. In the meantime, if you have any questions please contact the assigned investigator noted in the enclosed Investigator Assignment Sheet.

                Very truly yours,

                Linda Fenstermaker
                Regional Director

# New York State Division of Human Rights Complaint Form

## Individual filing the complaint

Please provide the information requested below.

First Name

Sai Malena

Middle Intial

Last Name

Jimenez Fogarty

Street Address

228 East Route 59

City

Nanuet

State

New York

Zip

10954

Are you completing this form for someone else?

No

## Your complaint

Jurisdiction

Place of Public Accommodation

## Public Accommodations

Acts of alleged discrimination:

Denied access to public accommodation
Denied equal advantages, facilities and privileges of public accommodation
Denied reasonable accommodation for disability
Discriminatory advertisement, communication, or notice
Harassed/intimidated (other than sexual harassment) on any basis indicated above

## Basis

Basis of alleged discrimination in a place of public accommodation:

Disability (a physical or mental condition; includes denial of reasonable accommodation)
Race/Color (because you are Asian, Black, White, etc.; includes ethnicity; includes traits historically associated with race such as hair texture or hairstyle)
Sex (because of your gender, includes sexual stereotyping, sexual harassment, pregnancy)
Victim of Domestic Violence (you or your child was a victim of domestic violence)
Retaliation (if you filed a discrimination case before, were a witness or helped someone else with a discrimination case, or opposed or reported discrimination due to category listed on this page)

Please specify sex:

female

Please specify race/color:

black

Please specify disability:

PTSD

Please specify what you did to oppose discrimination or how you engaged in protected activity.

He was notified on Jan 16, 2024.

## You are filing a complaint against

Entity that discriminated against you:

**Name of entity**

Judge Thomas P. Zugibe

**Street Address**

1 South Main Street

**City**

New City

**State**

NY

**Zip**

10956

**In what county or borough did the violation take place?**

Rockland

**Phone Number**

845-483-8310

**Email address**

**Fax Number**

914-358-8058

**Company Website**

**Date of the most recent act of alleged discrimination**

02/16/2024

## Description of discrimination

Tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and other details. You must explain why you think these acts were discriminatory and how these acts are connected to the protected class (race, color, sex, disability, etc.) you selected previously.
If you have supporting documentation or evidence, you may provide it later.

Judge Thomas Zugibe ("Zugibe") is significantly violating the human and civil rights of my children and I. This complaint will provide a brief summary of Zugibe's ADA accommodation violations, I have more detailed information in a pdf including dates and evidence.

I am a victim of severe domestic violence at the hands of my estranged husband, and I was diagnosed with PTSD. Due to my disability under Federal ADA Law, I was granted six ADA accommodations on 8/2/23. One which stipulates the need for a calm and respectful environment in the courtroom; thus, heated discussions or personal attacks directed at me constitutes a violation of my ADA accommodations. Nevertheless, Zugibe's behavior is now even more aggressive after 8/2/23, as he has continued to be intensely hostile, unnecessarily yells and exhibits acrimonious behavior at every single court appearance since the ADA accommodation was granted. I even asked Judge Zugibe on the record on 1/19/24 to please stop violating my Federally protected ADA accommodations or I would file a complaint, that request multiplied his anger and verbal abuse.

On 2/16/24, Zugibe was putting false information on the record and when my lawyer Ms. Tricia Lindsay, Esq. attempted to clarify he yelled "be quiet and sit down." This poor treatment of my lawyer has been a common occurrence since she came on board on 11/21/23. Ms. Lindsay told him calmly that she needed to correct the record, and he looked at the bailiff who proceeded to put her hand over her gun holster and say in a serious tone "counsel sit down!" I was petrified thinking the bailiff was going to shoot me and my lawyer (were the only 2 black individuals). I did not even realize until that day that court officers carry weapons. This is a civil matter, there is absolutely no reason for Zugibe to direct the bailiff in weapon retention or altercation preparation.

Due to Zugibe violating my ADA accommodations and his increasing aggression, I am absolutely terrified of him. Zugibe is becoming even more abusive, and the fear is such that I've started vomiting blood before court after Zugibe's action on 2/16/24. A month later I was hospitalized twice and diagnosed with gastrointestinal hemorrhage caused by bleeding ulcers, due to excessive fear and stress from Zugibe. My physician issued a letter recommending a three-day respite between court dates to recover from stress caused by this litigation, yet Zugibe disregards this medical advice. He has expected me twice to leave the hospital and appear in his courtroom, which would place my health in danger or risk losing access to my children. Zugibe's biases are blinding his ability to the point where he is unnecessarily cruel, my children and I are treated like were not even human. Judge Zugibe not only violates my Ada accommodations but my human and civil rights, as well as those of my children.

In addition to the repeated Federal ADA violations, Zugibe's is taking action which is placing my children in imminent danger. Including but not limited to facilitating the potential sexual abuse of my 8-year-old daughter, denying her medical care for vaginal bleeding which is a very serious medical issue for a non-menstruating little girl which can lead to kidney infection and being sterile. Zugibe has committed dozens of human rights violations against my black children. I have evidence indicating that he reacts differently to the same situation depending on whether the individual is white or nonwhite..

On 11/17/23, I filed a seventeen-page complaint with the Committee on Judicial Conduct, providing over a hundred pages of evidence of Zugibe's extremely hostile actions, and substantial bias based on race, gender, and ethnicity. Consequently, Zugibe is now under investigation and as a result he is now punishing me and my lawyer Ms. Tricia Lindsay, Esq., who started representing me on 11/21/23.

Zugibe's prejudice against us is so severe that on 4/14/24, my lawyer stated on the record that we experience treatment akin to second-class citizens, with intimidating conduct from the bailiff, and as an officer of the court, attorney and professional she is treated like that constantly by Zugibe. I have been represented by Caucasian lawyers before, and Judge Zugibe has never told them to "Shut up" "Be quiet and sit down" nor shown them such disdain. He treats my black attorney and I as if we are his Slaves and he is our Master, which is entirely unacceptable in a courtroom setting. Ms. Lindsay is a NY Civil Rights attorney and I am the daughter of a former Ambassador at the United Nations, who has never had any legal issue. Furthermore, in my 20 years as a Parent Advocate volunteer, I have never witnessed this type of behavior with any judge in the tri-state area.

Judge Thomas Zugibe is a blatant racist, who has no regard for violating my ADA accommodations and due process. Judge Zugibe creates a hostile environment in his courtroom and has made it an unsafe for me especially after my ADA accommodation which he continues to violate. Judge Zugibe's behavior demonstrates complete lawlessness in his courtroom, and his action show he is capable of absolutely anything. He exemplifies the human rights and racial discrimination detailed in Williams Commission's 2022 report. Which identified judges' roles in fostering a "dehumanizing" and "second class" treatment of black families and individuals of color in the NYS Courts. I was invited to provide testimony on 11/1/23 at the State Senate Judiciary Committee hearing on the court crisis, after which Zugibe's retaliation intensified. At this point I now fear he will come down from the bench and physically attack me and my lawyer. Judge Zugibe is violating Federal Law and I urgently require assistance to safeguard my human rights and those of my children.

## Declaration

Based on the information contained in this form, I charge the herein named respondent(s) with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice. (If you have another action pending and still wish to file, please contact our office to discuss.)

Please initial:

smj

I affirm under penalties of perjury, that I am the complainant herein; that I have read (or had read to me) the foregoing complaint and know the content thereof; that the same is true of my own knowledge except as to the matters therein stated on information and belief; and that as to those matters, I believe the same to be true.

Sai Malena Jimenez Fogarty

Enter today's date.

05/03/2024

## Summary of ADA Violations by Judge Zugibe

On July 28, 2023, I was diagnosed with a severe form of Post Traumatic Stress Disorder (PTSD) by Dr. Slutzsky, a NY Licensed psychologist who has been practicing for 39 years. This this diagnosis came following directly experiencing a serious of traumatic events that include medical trauma and emotional, physical, and sexual trauma inflicted on me by my husband, Thomas Fogarty. As a result on August 4, 2023, I requested and was granted seven federal ADA accommodations to ensure that despite my disability, I would have equal access to justice and could fully participate in the legal process. My ATA accommodations are very important because it would allow effective communication, support decision-making, allow compliance with legal obligation and most importantly promote fairness in my trial and justice in the legal system.

Judge Zugibe has violated all seven of my ADA accommodations on numerous occasions, including on the very day they were granted. On January 19, 2024, I requested that he cease these violations and informed him that I would file a formal complaint if the issue persisted. This request appeared to exacerbate his antagonistic behavior, leading to an even more disrespectful and hostile demeanor.

I have never experienced such egregious treatment and disrespect in a professional setting. Judge Zugibe's behavior not only constitutes a violation of my ADA accommodations but is also overtly abusive. My attorney stated on the record that both she and I are treated as second-class citizens in his courtroom. Furthermore, she is instructed to sit down and be quiet, exacerbating the situation.

The hostility in the courtroom reached such a level that after Judge Zugibe looked at the bailiff, she was placed her hand over her gun holster, an intimidation tactic towards my black attorney and myself—the only two Black individuals present. This created an extremely distressing and petrifying environment, which ultimately contributed to my hospitalization with a gastrointestinal hemorrhage from bleeding ulcers. My physician has stated in writing that this medical condition is directly related to the stress induced by these legal proceedings.

Additionally, Judge Zugibe denied my ADA accommodation approved five-minute break when I was experiencing difficulty breathing and chest pains. Despite the urgency of the situation, during which a bailiff called 911 and I was rushed to the hospital via ambulance and admitted to the hospital. My ADA Accommodation for CART services for hearing access was approved, however I was denied the service, depriving me of the ability to hear the proceedings during over twenty court appearances.

Judge Zeal has not only violated my ADA Accommodation but in addition, has violated my Human Rights, Due Process, and Civil Rights. He has a significant bias against me as a woman person of color Hispanic

## JUDGE ZUGIBE'S FEDERAL ADA ACCOMMODATIONS VIOLATIONS

Judge Zugibe's inhumane treatment has egregiously violated all seven of my ADA accommodations. However, in the interest of time, I will focus on five of these violations and provide specific examples and corresponding evidence. The details are as follows:

1. **ADA Accommodation requested and granted: calm and respectful environment.**   (Number 5 (b) on the ADA Accommodation list) "We are seeking an instruction from the judge to all counsel and parties to be apprised of the need for a **calm and respectful environment**. Heated discussions or personal attacks by opposing counsel directed at Ms. Jimenez Fogarty increases her anxiety and may trigger her to cause symptoms as it has in the past and will exacerbate her inability to concentrate and process what is being communicated. This includes conversations between counsel."

Court's Response:
"Granted. The Court will advise all parties to treat each other with respect and to remain calm at all times during the proceedings."

Violations by Judge Zugibe:

Judge Zugibe has failed to maintain a calm and respectful environment since learning of my disability, where I am triggered by yelling and personal attacks. His conduct has increasingly contributed to a hostile environment.

A.  August 4, 2023 – Judge Zugibe exhibited intense hostility toward my female attorney Karen Winner and was yelling to the point I thought he was going to come of the bench and personally attack Ms. Winner and me. I have never heard him tell a man in court Below are some of his ADA Accommodation violations which include disrespectful comments and personal attacks:

Evidence – August 4, 2023, transcript

- "So, you're sitting at counsel table as a defendant. There's a reason for that!" pg. 3, line 21
- Wanted to discuss the ADA Accommodations in front of opposing counsel, which is a federal violation, then became irate when Ms. Winner informed him that was a violation of my rights. See pages 3 – 4
- Would not allow Ms. Winner to correct the record after he stated wrong information that would severely prejudice my case

B.  February 16, 2024 – During the proceedings, my attorney attempted to calmly correct the record following wrong information from opposing counsel which Judge Zugibe put on the record which would severely hurt my case. In response, Judge Zugibe yelled at my lawyer to sit down and be quiet. Additionally, Judge Zugibe glanced at the bailiff, who responded by placing her hand over her gun holster, a completely inappropriate and unnecessary intimidation tactic. The bailiff then reiterated Judge Zugibe's directive in a stern and menacing tone, instructing my attorney to "sit down and be quiet, Counselor, now."

Evidence – February 16, 2024, transcript, page

C.  June 12, 2024 – Judge Zugibe did not maintain a respectful environment when, during the proceedings, both my attorney and I stated to him that I was experiencing a medical issue and requested a brief recess to step outside for some fresh air. Despite this, my request was denied twice.

Evidence – Discharge papers from Monte Fiore hospital. Opposing counsel did not provide the court transcript for June 12, 2024, which is a violation of the court order.

D.  Numerous other occasions which are expressed from January 2024 – July 2024, to which my lawyer stated during court on April 10, 2024:

Evidence – April 10, 2024, April 10, 2024, transcript, page 23, lines 9 – 23.

My attorney Tricia Lindsay stated in court, "We are treated like second class citizens in this room. We are told to be quiet, sit down, stop talking. We -- the last time that we were in here in January, the behavior of the court officer that was present in the room was threatening. When Your Honor told me, as a counsel, to sit down and be quiet, and because I was trying to ask a question and correct

2

the record and Your Honor looked to the side, that court reporter -- that court officer put her hand on her weapon in her waist and looked at me and told me to sit down. As an officer of the court, as an attorney, and as a professional in this room to be treated the way that I am treated on a constant basis, which my client is also treated too, that is what results in my response many times to the Court because I am always on the defense coming in here." A

**2. ADA Accommodation requested and granted: 5 – 10 minute breaks**
(Number 3 on the ADA Accommodation list) "She would need breaks during the proceedings. Ms. Jimenez Fogarty estimates a break of 5-10 minutes each hour would be sufficient. Ms. Jimenez Fogarty will let her attorney know that she needs a break and the ADA Advocate will attend to her needs during the break. We are confident of Ms. Jimenez Fogarty's ability to observe her symptoms and communicate her needs. Any breaks taken for health purposes will be deemed as non-prejudicial to Ms. Jimenez Fogarty's rights, interests or defenses..Time frames for any discussions to be clearly defined by the Court to avoid Ms. Jimenez Fogarty being "rushed" by opposing counsel."

Court's Response:

"This request is granted to the extent that reasonable breaks are always taken throughout lengthy proceedings such as a trial. The Court will make the determination on the exact timing of breaks, taking into consideration natural pauses in the testimony, and breaks between witnesses, etc. Further, if anyone needs a break at any time, requests for same can be made."

Violations by Judge Zugibe;

June 12, 2024 - during a court proceeding before Judge Zugibe, I experienced severe symptoms including difficulty breathing, lightheadedness, and chest pains. I promptly informed my attorney of my urgent need for a five-minute ADA accommodation break in the presence of Judge Zugibe. Despite my visible distress and my attorney's repeated requests on my behalf, Judge Zugibe denied the accommodation, instructing me to remain in the courtroom for an additional 20 minutes.

Despite expressing that I was unable to breathe and required a brief respite to obtain fresh air, my request for a five-minute ADA break was again refused by Judge Zugibe. At this point, due to my deteriorating condition, the bailiff inquired if I required emergency medical assistance. I confirmed that I did, and as a result, I was promptly transported to the Monte Fiore hospital by ambulance and subsequently admitted for medical treatment.

Evidence – Discharge papers from Monte Fiore hospital. Opposing counsel did not provide the court transcript for June 12, 2024, which is a violation of the court order.

**3. ADA Accommodation requested and granted: Communication Access Realtime Translation (CART)**

(Number 6 on the ADA Accommodation list). "We are requesting Communication Access Realtime Translation (CART) 3 transcription, because she is hard of hearing."

Court's Response:

"The Court defers to OCA with respect to this request. Administration has determined an assistive listening device will be provided to Ms. Jimenez while in the courtroom."

21 Violations:

3

May 13, 2024, May 10, 2024, May 2, 2024, May 1, 2024, April 24, 2024, April 18, 2024, April 12, 2024, April 11, 2024, April 10, 2024, March 15, 2024, March 14, 2024, February 23, 2024, February 16, 2024, January 19, 2024, January 18, 2024, January 17, 2024, January 16, 2024, November 27, 2023, November 6, 2023, September 22, 2023 and August 4, 2023.

I initially requested Communication Access Realtime Translation (CART) services in July 2023, due to my significant hearing impairment, compounded by the fact that my hearing aids are currently with my husband, who has refused to return them for nearly 3 years. The generic headset provided by the Court is not tailored to my specific needs and does not sufficiently aid my hearing. Given the extent of my hearing loss, I struggle to perceive sounds even with amplification, thus necessitating visual assistance such as CART to effectively access and understand the information presented.

I promptly notified the Court of my need for CART services. However, I was informed by Court Clerk Michael Maher that CART services were unavailable in Rockland County, NY courts. This information is inaccurate, as CART services are indeed available in Rockland County courts. Consequently, I paid for an ADA Advocate to draft and submit the necessary documentation to the Court for a second time, despite the initial request for CART services having been granted but not fulfilled.

The Americans with Disabilities Act (ADA) mandates that individuals with disabilities must be provided equal access to all public services and programs, including court proceedings. Communication Access Realtime Translation (CART) services fulfill this requirement by offering real-time text transcription of spoken language, thus enabling individuals who are deaf or hard of hearing to fully comprehend and participate in court proceedings.

Despite the availability and my approval of CART services, I was unable to fully understand or participate in over 20 in-person court appearances due to the failure to provide the necessary accommodation. This lack of provision significantly hindered my ability to engage with and participate in the judicial process, which is critical given the substantial impact this case has had and will have on my children and me, and the outcome will impact us for the rest of our lives. As a result, my rights were not adequately upheld with this ADA Accommodation violation, and I did not receive equal treatment under the law, which has enduring consequences for this case and our lives.

Evidence – Both the ADA Accommodation documents from August 4, 2023, and June 10, 2024, previously submitted.

### 4. ADA Accommodation requested and granted: Deadlines Extended

(Number 2 on the ADA Accommodation list.) "Ms. Jimenez Fogarty must have deadlines extended if necessary and will need continuances."

Court's Response:

"This request is granted to the extent that any and all deadlines given will take into consideration Ms. Fogarty's representation that she may need additional time to respond."

Violations:

On March 28, 2024, while I was hospitalized, my attorney appeared in court for Discovery issues and was unexpectedly confronted with an unscheduled hearing conducted by Judge Zugibe. This hearing proceeded despite the court having evidence of my hospitalization.

4

# 20

FILED: ROCKLAND COUNTY CLERK 09/06/2024 01:33 AM    Page 386 of 538.
NYSCEF DOC. NO. 1162                                         RECEIVED NYSCEF: 09/06/2024

Sai Malena Jimenez, PO Box 261, Blauvelt, NY 10913, sunnysky155@gmail.com

**Index No. 035547/2021**                                   September 5, 2024

Dear Honorable Judge Zugibe:

The Court proceeded with the trial today ex parte, despite my prior notifications of my medical emergency requiring hospitalization. I request an explanation of the legal grounds for advancing the proceedings in my absence and without legal representation, particularly given that I am a pro se litigant.

Despite needing rest, I consistently and diligently informed the Court of my medical condition and the necessity for an adjournment. My hospitalization for bleeding ulcers, which developed as a direct result of the severe stress associated with the protracted litigation and its irregularities, has been documented. As previously noted, my physician, Dr. Schneid, informed the Court on April 15, 2024, that I was hospitalized twice due to bleeding gastric ulcers caused by the ongoing legal proceedings **(NYSCEF #829). (See attached exhibit 7).**

On September 4, 2024 – I communicated to the Court via email that I was transported to the hospital by ambulance due to a medical emergency, which prevented my attendance at the trial scheduled for 2:00 PM. (See **attached exhibit 1).**

On September 5, 2024 –

At 2:42 AM, I informed the Court via **NYSCEF #1158** that I remained hospitalized and had not been discharged, thereby preventing my attendance at the hearing scheduled for September 5, 2024. Despite the need for rest during my hospitalization, I made urgent efforts to locate a Wi-Fi connection to send a letter to the Court. I requested documentation from the hospital to submit to the court but was informed that such documentation would only be available upon discharge. Additionally, I explained that it's a legal matter and was informed that if I had a lawyer they could communicate with the legal department on my behalf. **(See attached exhibit 2).**

At 12:39 PM, upon discovering that the trial was proceeding on an ex parte basis, I promptly uploaded a letter to the Court **#NYSCEF 1160** which included contact information for my attending nurse, to facilitate verification of my medical status. I again asked the nurse for a medical letter from the hospital to provide to the Court. **(See attached exhibit 3).**

At 12:50 PM, I emailed the Court pictures of my hospital bracelet and nurse board. Despite my efforts, the Court did not provide me with any means to participate remotely or via telephone. **(See attached exhibit 4).**

At 4:09 PM, I finally obtained a letter from the hospital, which I then emailed to the Court immediately (See **attached exhibit 5 and 5a).**

At 11:55 PM, I uploaded this letter and the discharge papers via **NYSCEF #1162,** which state I was hospitalized from September 4, 2024 – September 5, 2024, and I had a medical procedure. **(See attached exhibit 6).**

**The proceedings on September 5, 2024, took place without my presence and involved ex parte communication, which I understand to be against the procedural rules governing such matters.** According to Rule 5-1 of the New York State Unified Court System, ex parte communication is prohibited to ensure fair representation and the opportunity for all parties to be heard. This rule is designed to prevent any party from being disadvantaged by unilateral communications that occur outside the presence of all parties involved.

**The court's decision to proceed without my participation infringes upon my right to a fair hearing and due process.** I had requested an adjournment due to my medical condition. Despite my repeated communication to the Court regarding my situation and the proof of my hospitalization, the Court moved forward without accommodating my absence or giving me an opportunity to be heard.

FILED: ROCKLAND COUNTY CLERK 09/06/2024 01:33 AM
NYSCEF DOC. NO. 1162                                                              RECEIVED NYSCEF: 09/06/2024

I respectfully request the following:

1. A detailed explanation of the legal grounds for proceeding with the matter in my absence and without legal representation, especially considering my status as a pro se litigant.

2. That the Court promptly inform me of any developments that occurred during my absence and provide the date of the next scheduled hearing. A delay of 15 days for obtaining the transcript of the proceedings from September 5, 2024, is excessively lengthy and does not constitute a fair timeline.

3. That the Court review the proceedings conducted on September 5, 2024, and, in the interest of justice, grant me an opportunity to be heard on all matters.

4. That any decisions made in my absence be reconsidered to ensure that my rights are fully protected as mandated by law.

Thank you for your prompt attention to this urgent matter. I look forward to a resolution that upholds the principles of fairness and due process.

Sincerely,

_Sai Malena Jimenez Fogarty_

**SAI MALENA JIMENEZ-FOGARTY**



# NYSCEF Confirmation Notice

## Rockland County Supreme Court

The NYSCEF website has received an electronic filing on 09/06/2024 01:33 AM. Please keep this notice as a confirmation of this filing.

**Thomas Fogarty v. Sai M Jimenez**
**Assigned Judge: Thomas P. Zugibe**

### Documents Received on 09/06/2024 01:33 AM

| Doc # | Document Type |
|-------|---------------|
| 1162 | LETTER/CORRESPONDENCE - TO COURT |
| 1163 | EXHIBIT(S) 1 |
| 1164 | EXHIBIT(S) 2 |
| 1165 | EXHIBIT(S) 3 |
| 1166 | EXHIBIT(S) 4 |
| 1167 | EXHIBIT(S) 5 |
| 1168 | EXHIBIT(S) 5a |
| 1169 | EXHIBIT(S) 6 |
| 1170 | EXHIBIT(S) 7 |

### Filing User

Sai M Jimenez | katiapatriciomommy@gmail.com | 3479934550
228 East Route 59 Suite 271, Nanuet, NY 10954

Donna G. Silberman, silbermd@co.rockland.ny.us
Phone: 845-638-5094    Fax: 845-638-5221    Website: http://rocklandgov.com/departments/clerks-office/

NYSCEF Resource Center, nyscef@nycourts.gov
Phone: (646) 386-3033 | Fax: (212) 401-9146 | Website: www.nycourts.gov/efile

Page 1 of 2

FILED: ROCKLAND COUNTY CLERK 09/06/2024 01:33 AM    INDEX NO. ████

NYSCEF DOC. NO. 1163                                                    RECEIVED NYSCEF: 09/06/2024

 Gmail

M J <katiapatriciomommy@gmail.com>

**\*URGENT\***
1 message

**M J <katiapatriciomommy@gmail.com>**                          Wed, Sep 4, 2024 at 1:59 PM
To: Sara Beaty <sbeaty@nycourts.gov>, Ashley Kersting <ak@mzw-law.com>, Nicole DiGiacomo
<nicole@ndigiacomolaw.com>, Michael Maher <mmaher@nycourts.gov>

Dear Honorable Judge Zugibe,

I am writing to inform the court that I was transported to Good Samaritan Hospital via ambulance and am currently
receiving medical treatment. As a result, I am unable to attend the trial continuance scheduled for 2 PM today.

Additionally, in response to the court's notice earlier today, I wish to clarify that the trial was originally scheduled to resume
at 2 PM, not 9:30 AM. As such, no appearance was required this morning.

Please let me know if there are any further actions required on my part or if there is any additional documentation needed
from my healthcare providers.

Thank you for your understanding and consideration.

Sincerely,
Sai Malena Jimenez Fogarty

FILED: ROCKLAND COUNTY CLERK 09/06/2024 02:33 AM

NYSCEF DOC. NO. 1158    RECEIVED NYSCEF: 09/06/2024

September 5, 2024

Dear Honorable Judge Zugibe,

I am writing to inform the Court of my inability to attend the scheduled trial session today due to a medical emergency. As detailed in my email sent to the Court on September 4, 2024, I was unexpectedly admitted to the hospital following a medical issue, and I have not yet been discharged.

The trauma from the prolonged litigation has taken a severe toll on me physically, emotionally, and financially. The extended nature of this case, combined with my separation from my children for the past three years, has caused considerable distress. I am particularly concerned for their well-being, as they are under the care of an individual who has a substance abuse problem and failed to comply with the Court-directed alcohol testing requirements. During his testimony on January 17, 2024, Thomas Fogarty explicitly admitted to non-compliance with the court-directed alcohol testing protocol, missing several additional scheduled alcohol tests and acknowledged his use of cocaine.

Furthermore, the Court's denial of sufficient legal fees has significantly impaired my ability to obtain necessary legal representation. While I have been allocated $125,000 for legal fees from my assets, Thomas Fogarty has incurred approximately $1.6 million in legal and personal expenses, creating an inequitable advantage that compromises the fairness of these proceedings. To add insult to injury, it has been incorrectly asserted that I am responsible for my attorney's departure; however, the fact is the true issue is the inadequate legal fee allocation by the Court.

My current hospitalization is a direct result of the trauma inflicted by these prolonged proceedings and the undue harassment by opposing counsel, Ms. Kersting. On September 3, 2024, Ms. Kersting inappropriately submitted photographs of my residence to the Court, thereby violating yet again the confidential address court order issued for my protection. This action constitutes harassment and exacerbates my distress, as Ms. Kersting has repeatedly breached this order and continues to misuse and share my confidential address.

Additionally, in response to the Court's notice dated September 4, 2024, the trial was scheduled to resume at 2:00 PM. Consequently, no appearance was required of me or any other party at the 9:30 AM time.

Given my current hospitalization, I respectfully request a one-week extension for Motion #35, the response for which is due today.

Thank you for your understanding and consideration of this matter.

Sincerely,

*Sai Malena Jimenez Fogarty*

**FILED: ROCKLAND COUNTY CLERK 09/06/2024 01:33 AM**

NYSCEF DOC. NO. 1166                                                    RECEIVED NYSCEF: 09/06/2024

 Gmail                                      M J <katlapatriclomommy@gmail.com>

## *URGENT*
2 messages

**M J** <katlapatriclomommy@gmail.com>                                    Thu, Sep 5, 2024 at 12:59 PM
To: izugibe@nycourts.gov, Sara Beaty <sbeaty@nycourts.gov>, Michael Maher <mmaher@nycourts.gov>, Ashley Kersting
<ak@mzw-law.com>, Nicole DiGiacomo <nicole@ndigiacomolaw.com>

Good day,

I just uploaded the note below to NYSCEF. I was shocked when I just read the Court notice about continuing with trial while I am still hospitalized. I'm attaching the picture of my hospital bracelet and picture of the informational board in my room. I can not upload pics to NYSCEF. I do not have a lawyer to assist me in obtaining and delivering documentation, as Ms. Lindsay did in the past.

**For verification purposes, you may contact Montefiore Nyack Hospital at (845) 348-2000** and inquire with Nurse Helen on the 2nd floor, who can confirm my current hospitalization status. Nurse Helen said that documentation is available at the time of discharge, which is not not feasible since I am still hospitalized.

Thank you,
Sai Malena Jimenez Fogarty

September 5, 2024 12:20PM

Re: Request for Adjournment Due to Medical Emergency

Dear Honorable Judge Zugibe,

I have just saw the Court notice while still being admitted at Montefiore Nyack Hospital, where I have not yet been discharged. I am writing to respectfully request an adjournment of the trial currently scheduled, as I am presently hospitalized due to a medical emergency.

As I am a pro se litigant, I do not have the capacity to provide the necessary documentation directly from my hospital room. I am also unable to scan and upload documents to the court, as I don't have a scanner in my hospital room. Additionally, due to the Court not awarding emergency DLR 237(b) legal fee award, I do not have a lawyer to assist me in obtaining and delivering the documentation as Ms. Lindsay did in the past.

For verification purposes, you may contact Montefiore Nyack Hospital at (845) 348-2000 and inquire with Nurse Helen on the 2nd floor, who can confirm my current hospitalization status. Nurse Helen mentioned that documentation typically becomes available at the time of discharge, which is not not feasible since I am still hospitalized. I was brought via ambulance and thought they took me to Good Samaritan but confirmed I'm in MonteFiore hospital.

In light of these circumstances, I respectfully request that the Court adjourn the trial until I am able to fully participate in my defense. I understand the importance of adhering to legal procedures and assure you that this request is made in earnest due to my current medical condition.

I will be emailing the Court a photograph of my hospital bracelet and room for your reference. However, please note that the NYSCEF system only accepts PDFs, and I lack a scanner in order to convert these images into PDF format while hospitalized.

Thank you for your understanding and consideration of this request. I appreciate your attention to this matter.

Sincerely,

Sai Malena Jimenez Fogarty

2 attachments

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24    Page 392 of 533

FILED: ROCKLAND COUNTY CLERK 09/06/2024 01:33 AM    INDEX NO.

NYSCEF DOC. NO. 1166                                RECEIVED NYSCEF: 09/06/2024



**20240905_124916.jpg**
5703K



**20240905_124923.jpg**
3078K

---

**M J** <katiapatriciomommy@gmail.com>                    Thu, Sep 5, 2024 at 4:09 PM
To: tzugibe@nycourts.gov, Sara Beaty <sbeaty@nycourts.gov>, Michael Maher <mmaher@nycourts.gov>, Ashley Kersting
<ak@mzw-law.com>, Nicole DiGiacomo <nicole@ndigiacomolaw.com>

Letter from the hospital attached that confirms I have been hospitalized on 9/4/24 and 9/5/24. Thank you.
[Quoted text hidden]



**20240905_160750.jpg**
6860K

FILED: ROCKLAND COUNTY CLERK 09/06/2024 01:33 AM          INDEX NO.
NYSCEF DOC. NO. 1167                                RECEIVED NYSCEF: 09/06/2024

 Gmail                                    M J <katiapatriciomommy@gmail.com>

## *URGENT*

M J <katiapatriciomommy@gmail.com>                        Thu, Sep 5, 2024 at 4:09 PM
To: tzugibe@nycourts.gov, Sara Beaty <sbeaty@nycourts.gov>, Michael Maher <mmaher@nycourts.gov>, Ashley Kersting
<ak@mzw-law.com>, Nicole DiGiacomo <nicole@ndigiacomolaw.com>

Letter from the hospital attached that confirms I have been hospitalized on 9/4/24 and 9/5/24. Thank you.
[Quoted text hidden]



**20240905_160750.jpg**
6860K

## Montefiore | Nyack

MNH GI SUITE
160 NORTH MIDLAND AVE.
NYACK NY 10960
845-348-2523

September 5, 2024

Patient:    **Sai M Jimenez**
Date of Birth: **4/28/1975**
Date of Visit: **9/4/2024 to 9/5/2024**

To Whom It May Concern:

Sai Jimenez was seen in the hospital from 9/4/2024 to 9/5/2024.

If you need additional information, please feel free to contact our office at Dept: 845-348-2523.

Sincerely,

Geocia A. Cijo, FNP-BC

Case 1:24-cv-08705-JLR   Document 1   Filed 11/15/24   Page 395 of 533

FILED: ROCKLAND COUNTY CLERK 09/06/2024 02:32 AM

NYSCEF DOC. NO. 8290

RECEIVED NYSCEF: 09/06/2024



Peter Strassberg, MD
Frank Gargali, MD
Neil Matalia, MD
Perel Schneid, DO

141 N. Kinderkamack Road
Montvale, NJ 07645
Phone: 201-746-6880
Fax: 201-746-9570



Valley
Medical
Group
Valley Health System

Primary & Urgent Care

Recipient:

Phone: , Fax

Date: 04/15/2024

RE: Sal Malena Jimenez, DOB: 04/28/1975, PT ID #3653922

To whom it may concern,

I saw Sal Malena Jimenez Fogarty in the office today. She was recently hospitalized twice for significant abdominal pain and bloody vomiting secondary to gastric ulcers caused by stress due to her ongoing legal proceedings. Please allow for adequate time for her body and mind to recover from this recent significant increase of stress. I recommend allowing 2 to 3 days between court appearances for her recovery, and to prevent further hospitalization and complications.

Please call my office with any questions or concerns.

Sincerely,
Electronically Signed by: PEREL SCHNEID, DO

21


FEE PAID
# 110

### Supreme Court of the State of New York
### Appellate Division: Second Judicial Department

Thomas Fogarty (plaintiff)

v.

Sai Malena Jiménez Fogarty
(Defendant)

EMERGENCY
ORDER TO SHOW CAUSE

Appellate Division Docket No.:

2024 - 10117

Upon the annexed affidavit of _Sai Malena Jiménez_ dated _September 30, 2024_, and the papers annexed thereto,                                                              _Fogarty_

LET _Thomas Fogarty_ SHOW CAUSE BEFORE THIS COURT, at the courthouse thereof, located at 45 Monroe Place, Brooklyn, New York, 11201, on the _____ day of _____, 20___, at 10:00 o'clock in the forenoon of that date or as soon thereafter as counsel may be heard, why an order should not be made and entered:

1. Vacate September 6, 2024 order   3. Mistrial and Change of venue

2. Continuance while this matter is pending 4. Reconsideration of Decisions from Sept 5, 2024 ex parte

5. Relief regarding the retainer   6. 60 day continuance for trial   trial

7. Granting such other and further relief as to the court may seem just and equitable.

SUFFICIENT CAUSE THEREFOR APPEARING, it is

ORDERED that pending the hearing and determination of this motion
— there is a stay be granted pending the determining of the EOSC
— the Lincoln Hearing scheduled for Oct 4, 2024 is rescheduled
for after this EOSC is decided                          are stayed; and it is further,

ORDERED that service of a copy of this order to show cause and the papers upon which it was made upon _____ by

☐ personal delivery pursuant to CPLR 2103(b)(1)
☐ office delivery pursuant to CPLR 2103(b)(3)
☐ overnight delivery service pursuant to CPLR 2103(b)(6)

on or before _____ ____, 20___, shall be deemed sufficient service thereof.

Dated: Brooklyn, New York

_____ ____, 20___

RECEIVED 24 OCT -3 AM 4:41 APPELLATE DIVISION SECOND DEPARTMENT

_____
Associate Justice
Appellate Division: 2nd Department


American LegalNet, Inc.
www.FormsWorkFlow.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

Index No.: 035547/2021

THOMAS FOGARTY,

Plaintiff,

-against-

SAI MALENA JIMENEZ-FOGARTY,

Defendant

**AFFIRMATION OF
DEFENDANT SAI MALENA
JIMENEZ-FOGARTY
EMERGENCY ORDER TO
SHOW CAUSE**

X - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

    I, SAI MALENA JIMENEZ-FOGARTY, am the Defendant in the above-entitled matter and I make this Affirmation Reply of my own personal knowledge and as a *Pro Se* party.

1. Petitioner, Sai Malena Jimenez Fogarty, respectfully moves this Honorable Court to vacate the order issued by Judge Thomas Zugibe during the divorce custody trial on September 6, 2024, and to grant a continuance while this matter is pending. The Court erroneously conducted the trial in my absence on an ex parte basis and subsequently concluded the trial, asserting a knowing waiver while I was a pro se litigant hospitalized due to a medical illness following a gas explosion and three-alarm fire at my apartment complex.

2. This order constitutes a significant violation of my due process rights, both by proceeding with the trial on an ex parte basis and by concluding the trial without allowing me the opportunity to present my case, my critical evidence, or to testify, as well as without permitting my ten witnesses to testify, despite my three-year wait for this opportunity. Meanwhile, my husband was allowed to present his case fully. This action places my children in imminent harm and infringes upon my rights under the Americans with Disabilities Act (ADA).

3. I filed a complaint for violations of the NY State Human Rights Law, and Judge Zugibe is currently under investigation for discrimination based on disability, gender, and race. Judge Thomas Zugibe now has a non-waivable conflict of interest with me, as he must now provide testimony as to his actions in this matter, he cannot provide a neutral trier of facts in this case. The complaint has been converted to an ongoing action and

investigation. This matter is currently in the process of evidence collection and the matter proceeding to the hearing department of the Division which would be an administrative law proceeding.

4.    The principles of due process require that both parties be given the opportunity to present their cases in custody determinations. Finalizing a custody decision without hearing from both sides undermines fairness and the informed judgment necessary for such serious matters and places compromises my children's safety. Especially since Thomas Fogarty has a documented history of substance abuse, including a failed court-directed alcohol test, 72 missed tests, and admitted cocaine use while on the stand, along with multiple investigations for corporal punishment and substance abuse by mandated reporters.

5.    The September 6, 2024, court order finalizing the divorce custody trial without even allowing me the opportunity to present my case undermines the principle of a fair hearing and places my children and I in imminent danger. Therefore, I respectfully urge the Court to vacate this ruling. (**See attached exhibit 1 – September 6, 2024, Court Order**).

6.    On September 5, 2024, I was unable to appear in court due to extraordinary and unforeseen circumstances. I was hospitalized following a catastrophic gas explosion and a subsequent three-alarm fire at my apartment complex. In the wake of a power outage, I sustained a head injury and experienced bleeding ulcers as a direct result of the trauma associated with witnessing this natural disaster, compounded by concerns and fear for my safety due to the actions of opposing counsel, Ms. Kersting. Her harassment, which included photographing my apartment in violation of my Confidential Address Court Order, heightened my distress and necessitated immediate medical attention. Consequently, I was transported to the hospital via ambulance.

7.    Despite the need for rest during my hospitalization, I made urgent efforts to locate a Wi-Fi connection and informed the Court of my situation on five separate occasions while hospitalized and provided supporting documentation. (**See attached exhibit 2 – Five Communications to the Court While I was in Montefiore Hospital**).

8.    Judge Zugibe's decision to continue the trial ex parte and conclude it in my absence disregards my medical condition and contradicts his own acknowledgment of my hospitalization, as evidenced by the same order suspending my visitation rights with my children due to my serious medical issues. This contradiction clearly indicates that Judge Zugibe was fully aware of my illness and hospitalization on September 5, 2024. This

2

decision not only represents a serious ethical and due process violation but is retaliatory in nature on three distinct levels:

    a. **Filing a Human Rights Complaint:** On May 3, 2024, I filed a complaint due to numerous violations of my ADA accommodations, and there is an ongoing investigation for Judge Zugibe's violations of Executive Law Article 15, Article 296, concerning unlawful discriminatory practices based on disability, race, and gender. **(See attached exhibit 3 – Human Rights Commission Complaint).**

    b. **Judicial Complaint:** On November 17, 2023, I submitted a judicial complaint to the Committee for Judicial Conduct, addressing severe racial bias and conflicts of interest with Judge Zugibe involving opposing counsel, which compromised the fairness of my case. **(See attached exhibit 4 – Committee Judicial Commission Complaint).**

    c. **Removal of the Prior Judge:** I successfully had the previous judge (his acquaintance) removed due to her egregious misconduct, further aggravating the retaliatory response I am facing. **(See attached exhibit 5 – Judge Eisenpress Recusal due to Misconduct).**

    d. **The decision to proceed with the trial ex parte in my absence, while I was incapacitated and without legal representation, constitutes a major violation of my rights.** Since the trial three years ago, I have not been afforded the opportunity to testify, present evidence, or have my ten witnesses heard. Judge Zugibe's conclusion of the trial in my absence represents a grave injustice and is both unethical and unlawful.

9. Moreover, this *Court order poses a significant risk to the safety of my children, who are currently isolated with my estranged husband Thomas Fogarty.* Our documented history as victims of domestic violence at his hands heightens the urgency of this matter. Despite an October 2021 Court Ordered Investigation (COI) report stating that "it is the father, not the mother, who hits the children," the court allows Mr. Fogarty, who has multiple Child Protective Services investigations by mandated reporters for corporal punishment and substance abuse, to live with our children, even after he failed a court-mandated alcohol test, missed 72 subsequent tests, and admitted to cocaine use while testifying. Under New York State law, there is a fundamental requirement that both parties be heard in divorce and custody proceedings. Judge Zugibe's order effectively deprived me of this critical right, thereby undermining the fairness of the proceedings and compromising the safety of my children. **(See attached exhibit 6 – Thomas Fogarty Non-Compliant Alcohol Test and Missed 72 Tests).**

10. On September 5, 2024, I was without legal representation despite my multimillion-dollar assets due to Judge Zugibe denying my emergency motion under Domestic Relations Law § 237(b) for legal fees to secure trial representation. This decision effectively compelled me to proceed pro se against my will, despite my lack of legal expertise. Meanwhile, my husband's signed Statement of Net Worth indicates that he has spent $1.6 million of my assets on his legal fees over the past three years, while I have only been awarded $125,000 and

3

remain blocked from my assets unlawfully without a court order. This significant disparity not only underscores the financial imbalance in this case but also constitutes another violation of my due process rights as well as a violation of the automatic orders related to divorce proceedings. (See attached exhibit 7 – Thomas Fogarty $1.6 Million Unlawful Withdrawal from Assets a Violation of Automatic Orders).

11. **Factual Summary**

    a. I was hospitalized from approximately dawn on September 4, 2024, until the evening of September 5, 2024, due to illness and communicated with the Court on five occasions during my hospitalization.

    b. The judge was aware of my hospitalization but proceeded with the trial ex parte with opposing counsel who had already rested their case previously and concluded the custody hearing without permitting me to testify, present my case or evidence.

    c. The same order suspended my parenting time with my children due to my illness, indicating that Judge Zugibe was well aware that my absence did not constitute a knowing waiver.

    d. Since the divorce proceedings began two years ago, I have not been afforded the opportunity to present my case or testify, while my husband, Thomas Fogarty, has been allowed to do so.

**Grounds for Motion to Vacate**

12. **Irreparable Harm:** The court's decision places my children in imminent danger as the divorce is now going to be finalized without me being allowed to present my case after waiting for three years. I was not given the opportunity to testify, present my 10 witnesses, or submit crucial evidence as I am allowed in a custody divorce trial. Furthermore, their father has a documented history of substance abuse—including a court-directed failed alcohol test and 72 missed tests, admitted to his cocaine use—and has been investigated multiple times for corporal punishment and substance abuse by mandated reporters. This situation places my children at significant risk, and the harm they face cannot be remedied through monetary compensation or other legal means.

13. **Abuse of Discretion:** The trial court acted arbitrarily and unreasonably by proceeding with the trial in my absence, despite being notified of my hospitalization This decision disregarded the critical circumstances and constitutes an abuse of discretion.

14. **Legal Error:** The court's ruling that I voluntarily chose not to attend the trial is both incorrect and unjust, given the circumstances. As a pro se litigant, I was denied my fundamental right to a fair trial. The court's decision to proceed in my absence was based on a profound misjudgment of my medical emergency, resulting in a significant legal error.

15. **Excusable Neglect:** I was hospitalized with a serious medical illness, which the judge acknowledges in the court order. Despite contacting the court five times to inform them of my situation, the trial proceeded in my absence.

16. **Due Process Violation:** As a pro se litigant, I was denied my right to a fair trial. The judge ruled that I voluntarily chose not to attend the trial, which is incorrect and unjust given my medical situation. Notably, Judge Zugibe was well aware of my hospitalization, as he suspended my parental time with my children in the same order due to my medical condition. It is not legal for a judge to finalize a custody decision in a divorce

4

trial without hearing from both sides. The legal principle of due process requires that both parties have the opportunity to present their case and be heard before a decision is made. This ensures fairness and that the judge can make an informed decision based on all relevant information to award custody of young children.

17. **Mistake or Inadvertence:** The court's decision to continue the trial without me was based on a misunderstanding of my circumstances. I made every effort to communicate my inability to attend due to my medical emergency.

18. **Retaliation:** Judge Zugibe has exhibited clear retaliatory behavior against me, evidenced by his decision to proceed with the trial in my absence despite being fully aware of my hospitalization. The judge's assertion that I voluntarily chose not to attend court, while simultaneously suspending my parental time due to my serious medical condition, further illustrates this retaliation. Such actions undermine the fairness and integrity of the judicial process.

19. **Judicial Misconduct:** The presiding judge is currently under investigation by the Human Rights Commission and the Conduct Justice Committee for discrimination based on disability, gender, and race, as well as violations of the Americans with Disabilities Act, bias, and misconduct. These active investigations create a direct and unavoidable conflict of interest in my case, raising serious concerns about the impartiality and fairness of the trial proceedings.

20. **Unforseen Emergency Circumstances:** The devastating gas explosion, traumatic three-alarm fire, and subsequent power outage not only endangered my safety but also severely disrupted my ability to access necessary documents and prepare for my court appearance. Without electricity, I was unable to print my questions and notes or read the transcripts, significantly compromising my readiness for the hearing as a pro se litigant. (See attached **exhibit 8 – Evidence of Fire at My Apartment Complex**).

21. **Breach of Confidentiality and Harassment:** Opposing counsel engaged in harassment by submitting false claims to the court and once again violating my Confidential Address Court Order by sending individuals to my home to further intimidate me. This conduct exacerbated my distress and caused significant fear during an already challenging emergency. (See **attached exhibit 9 – Confidential Address Court Order**).

22. **Health Crisis:** The significant stress of the situation culminated in a health crisis, leading to hospitalization for serious medical issues, including a head injury and bleeding ulcers. (See **attached exhibit 10 – Montefiore Discharge Papers**).

23. **Hospitalization:** My hospitalization was a legitimate reason for my absence. It is unjust to penalize me for circumstances beyond my control, especially when I contacted the Court.

24. **Right to Fair Hearing:** The denial of my opportunity to present my case represents a violation of my due process rights. Every party is entitled to a fair hearing, which was not provided to me.

25. **Evidence Overlooked:** Critical evidence and testimony that I intended to present were ignored due to my absence. This oversight will negatively impact the outcome of the custody determination, which is a matter of significant importance for both my children and I, and our safety.

26. **Prejudice to the Party:** The decision undermines my custody rights and endangers my children's safety while isolated with my husband, despite a documented history of domestic violence. Judge Zugibe's order deprived me of my right to be heard, jeopardizing both the fairness of the process and my children's safety.

## Violation of Americans with Disabilities Act Rights Under Part 52

27. The judge's actions in this case represent a violation of my rights under the Americans with Disabilities Act (ADA), particularly concerning Part 52, which includes Title III provision. This section mandates that public

5

services and accommodations ensure equal access and non-discrimination for individuals with disabilities. On August 3, 2023, I was granted seven ADA accommodations.

28. By failing to accommodate my hospitalization, proceeding with the hearing without my participation and suspending my parental visit rights, the judge failed to uphold ADA compliance, denying me fair and equitable treatment, undermining my ability to engage fully in the legal process. These actions not only violate my rights but also compromise the fundamental principles of accessibility and non-discrimination that the ADA is designed to protect.

29. <u>Federal ADA Violations</u>

a. **ADA Accommodation Violation – Deadline Extensions:**
o  **Accommodation:** I was granted extensions for deadlines and continuances as needed, with adjustments made to accommodate my circumstances.
o  **Violation:** Despite these accommodations, the trial proceeded on September 5, 2024, while I was hospitalized, disregarding my established accommodation needs and thus violating my rights under the Americans with Disabilities Act (ADA).

b. **ADA Accommodation Violation - Written Proposals:**
o  **Accommodation:** Any proposals or orders must be provided in writing for me to review with the understanding that written documentation is necessary for orderly review.
o  **Violation:** The trial proceeded without providing me adequate written documentation while I was incapacitated and had limited Wi-Fi access in the hospital. Furthermore, the suspension of my parental visitation rights was issued as an ex parte oral order in court during my hospitalization, with no written proposal presented to me. This lack of documentation denied me the opportunity to review and process the information, thereby violating my rights to due process.

c. **ADA Accommodation Violation - Adequate Time for Review:**
o  **Accommodation:** I require sufficient time to review written proposals with deadlines adjusted for my review needs.
o  **Violation:** The ex parte trial proceeding failed to account for my need for additional time due to my hospitalization, and I was not given the opportunity to review or share my perspective regarding the suspension of my parental visitation rights. This lack of consideration impeded my ability to adequately respond and defend my interests. Furthermore, my children were devastated not to see me on Friday, September 6, 2024, despite my submission of all necessary paperwork to lift the suspension, while Thomas Fogarty refused to reschedule my visitation.

d. **ADA Accommodation Violation - Respectful Environment:**
o  **Accommodation:** An instruction for the Court and opposing counsel to maintain a calm and respectful environment, avoiding heated discussions or personal attacks against me.

6

o **Violation:** The extremely hostile, adversarial nature, numerous personal attacks and heated discussion before, during and after the proceeding during my hospitalization exacerbated my condition, which was not addressed appropriately.

**Legal Basis**

30. The ADA (Americans with Disabilities Act) mandates that reasonable accommodations be provided to individuals with disabilities to ensure fair participation in legal proceedings. The violations described constitute breaches of federal law and undermine the integrity of the trial. Under 42 U.S.C. § 12132 and relevant New York State case law, including **Matter of S.D.** and **Matter of K. v. City of New York**, courts are required to uphold ADA accommodations and ensure compliance.

**Overview of Medical Condition and Court Notification**

31. My hospitalization for a head injury and bleeding gastric ulcers, the latter resulting from the severe stress related to this protracted litigation, has been well-documented. On April 15, 2024, my physician, Dr. Schneid, provided the Court with details regarding my medical condition and hospitalizations (See **attached exhibit 11 – Letter to the Court from Dr. Schneid**).

32. On the morning of September 4, 2024, I was rushed to Montefiore Hospital via ambulance due to a medical emergency and remained in the hospital until discharged the evening of evening of September 5, 2024.

On September 4, 2024:
   i. I informed the Court via email that I was transported to the hospital by ambulance, which precluded my attendance at the trial scheduled for 2:00 PM (See **attached exhibit 2**).

On September 5, 2024:
   ii. At 2:42 AM, I filed a letter NYSCEF #1158, to notify the Court of my continued hospitalization and inability to attend the scheduled hearing. Despite my need for rest, I sought a Wi-Fi connection to communicate with the Court. (See **attached exhibit 2**). I requested documentation from the hospital.
   iii. At 12:39 PM, I submitted NYSCEF #1160, which included a letter providing contact information for my attending nurse to assist in verifying my medical status. In addition, I reiterated my request for a formal note confirming my hospitalization. (See **attached exhibit 2**).
   iv. At 12:50 PM, I emailed the Court photographs of my hospital bracelet and nurse board. Despite these efforts and evidence, no arrangements were made to facilitate my remote or telephonic participation in the proceedings. (See **attached exhibit 2**).
   v. At 4:09 PM, I obtained a letter from the hospital confirming my hospitalization, which I immediately emailed to the Court. (See **attached exhibit 2**).
   vi. At 11:55 PM, after being discharged I uploaded a letter to the Court and discharge papers to NYSCEF #1162, documenting my hospitalization from September 4, 2024, to September 5, 2024, and a medical procedure. (See **attached exhibit 2**).

7

## Background

33. On September 3, 2024, at approximately 3:30 PM, a severe gas explosion occurred at my residential complex, leading to a large-scale fire that displaced eight families and caused a widespread power outage. The flames from the three-alarm fire were visible 30 miles away. Given the emergency situation and the impending trial scheduled for the following day, I promptly informed the Court and all parties via email.

34. As a pro se litigant, I faced substantial challenges. Witnessing the three-alarm fire of significant magnitude was very traumatic, and the power outage hindered my ability to prepare necessary trial documents. I emailed the Court, opposing counsel, and the Attorney for the Child (AFC) at 7:31 PM, requesting an adjournment due to these unforeseen circumstances.

35. Immediately, opposing counsel, Ashley Kersting, Esquire, engaged in harassment by misleading the Court with false claims about my residence, alleging that power had been restored and submitting unauthorized photographs of a home she claimed was mine with the lights on, despite my Confidential Address Court Order that prohibits her from having and sharing my address due to my status as a domestic violence victim. (See **attached exhibit 12 – Opposing Counsel Ashley Kersting Confidential Address Court Order Violations and Harassment**).

36. At the time Ms. Kersting made her false assertions approximately 7:47 PM, I did not have power, as confirmed by management, which indicated that power would not be restored until after 10 PM (See **attached exhibit 13 – Letter from Residential Management Confirming Service Would be Restored 10 PM**).

37. Shortly after Ms. Kersting's harassing emails, a man began banging on my door, demanding I open it, which left me absolutely terrified, especially since I was home alone without electricity. Ms. Kersting has previously violated the Confidential Address Court Order, placing my life at risk, yet Judge Zugibe has refused to hold her in contempt. The breach of the Confidential Address Court Order and harassment, including sending individuals to photograph my residence, exacerbated my distress and induced considerable fear during an already traumatic emergency. This situation ultimately led to a health crisis that necessitated my hospitalization at Montefiore Hospital.

38. I was admitted to Montefiore Hospital and discharged on September 5, 2024, evening. I notified the Court on five occasions via email and NYSCEF about my hospitalization. My medical condition related to bleeding

8

ulcers has been well-documented, including a report submitted by my physician, Dr. Scheid, on April 15, 2024, which stated "gastric ulcers caused by stress due to her ongoing legal proceedings."

**Case Background**

39. This case has been marked by substantial due process violations, civil rights abuses, significant conflicts of interest, and unethical conduct, demonstrating with concrete evidence a failure to the law. On September 21, 2021, I informed my husband, Thomas Fogarty, that I wanted a divorce after enduring a decade of physical, emotional, and racial abuse directed at me and our children, which he attributed to his significant substance abuse which intensified after he obtained his green card and U.S. citizenship through our marriage. The following day, without my knowledge, Mr. Fogarty maliciously made false allegations that resulted in my unlawful eviction through an ex parte court order. I was not present to defend myself, leading to my abrupt removal by law enforcement and leaving our children in his care. Throughout three years of litigation, I have not been afforded the opportunity to testify or present my case, constituting a violation of my due process rights. In contrast, Mr. Fogarty has testified multiple times before the Referee and both judges.

40. Despite a Court Ordered Investigation (COI) report from October 2021 stating, "it is the father, not the mother, who hits the children," the court has allowed our two young children to remain isolated with him. Mr. Fogarty has faced multiple investigations by Child Protective Services (CPS) for corporal punishment and substance abuse, with five reports initiated by mandated reporters due to substantial physical injuries observed on our children. He failed a court-mandated alcohol test on June 12, 2023, missed 72 subsequent tests, and admitted to cocaine use while testifying.

41. Moreover, the presiding judge, Sherri Eisenpress, had a significant conflict of interest with opposing counsel, Miller Zeiderman, including all 3 of his lawyers Liza Zeiderman, Ashley Kersting, and Siobhan Ogrady. Notably, Liza Zeiderman hosted a political fundraiser in her home for Judge Eisenpress, while presiding over our case which constitutes an ethical violation. Judge Eisenpress was legally disqualified on May 9, 2022, yet signed an order granting sole temporary custody to Mr. Fogarty on May 17, 2022—one day after receiving a $2,500 donation from Miller Zeiderman. This order was issued sua sponte without a hearing, trial, or

9

justification. Although I successfully had Judge Eisenpress removed from my case, her unlawful orders

granting Mr. Fogarty sole temporary custody were not rescinded.

42. Since replacing Judge Eisenpress, Judge Zugibe has engaged in retaliatory conduct that constitutes repeated

breaches of statutory law and judicial ethics under the New York State Code of Judicial Conduct. These actions

reflect clear violations of statutory law, judicial ethics, and provisions of the New York State Constitution, the

United States Constitution, and the federal Americans with Disabilities Act (ADA).

43. The ongoing issues with my legal representation and trial delays stem from the actions of Judge Zugibe. I have

been forced into the position of the non - monied spouse due to my husband cutting me off from our shared

marital assets. Since my unlawful eviction by my husband, Thomas Fogarty, he has engaged in financial

misconduct by blocking my access to joint assets, leading to significant hardship.

   a. **Withholding Funds:** Mr. Fogarty has unlawfully transferred money from our joint accounts to his sole
accounts.

   b. **Depleting Assets:** He has spent $1.6 million of my assets on legal fees and personal expenses without
my consent, violating court orders. Despite my submission of a letter to the Court seeking relief, Judge Zugibe has
failed to take corrective action.

   c. **Obstructing Access:** My ability to secure legal representation has been severely hindered; I have
received only $125,000 over three years. I owe money to every attorney I have retained, a situation exacerbated by
Judge Zugibe's refusal to authorize legal fees from my own assets.

   d. **Judicial Bias:** I am required to seek permission to access my own funds for legal representation, while
my husband freely depletes our joint assets without oversight. This is not only unlawful but constitutes financial
abuse.

   e. **Equitable Distribution Violations:** The actions taken by Mr. Fogarty, specifically the unauthorized
removal of $1.6 million from my assets, constitute a violation of New York's equitable distribution laws. Mr.
Fogarty acted without my consent and without obtaining prior permission from the court, effectively obstructing my
access to my assets. This conduct not only undermines my financial rights but also contravenes the principles of
equitable distribution mandated by New York law.

   f. **Domestic Relations Law §237(b):** This law mandates the court to award emergency legal fees for
equitable representation, which Judge Zugibe actions have denied me from my own assets.

44. The denials and/or unusually lengthy process for obtaining legal fees has forced multiple attorneys to withdraw,

compounding delays in the case. I am then wrongly blamed for needing multiple attorneys, despite being

unable to pay them due to the judge's failure to grant necessary legal fees from my assets. Had the Court

complied with the law, I could have retained a single attorney instead of losing numerous attorneys due to

unpaid fees.

45. Judge Zugibe's repeated violations of my rights, including those related to ADA accommodations, due process, and human rights, are consistently misattributed to me. This pattern has intensified following my judicial and Human Rights complaints.

46. The claim that I am responsible for delays due to multiple legal representatives is false and misleading. This misrepresentation reflects a broader issue in which the court shifts blame onto me, while the actual prolongation of this case is designed to deplete my financial resources and coerce a concession.

47. The false assertion that I am responsible for delays is misleading; it reflects a broader issue of systemic bias. My husband has improperly used marital funds for his legal fees, leaving me with inadequate resources. Given the complexity of this custody and divorce trial, I should not have to represent myself, especially without legal experience. I respectfully request immediate action to rectify these injustices and ensure my access to legal representation.

48. *Thomas Fogarty is a foreigner who lived in poverty and obtained a green card, American citizenship, and wealth through me and is leveraging the New York Courts in this litigation for the purpose of using our children as pawns to unjustly steal hundreds of millions of dollars of my assets. This conduct raises serious concerns about the welfare of our children and the integrity of the legal process.*

**Procedural Concerns:**

49. Due to significant procedural violations, on September 5, 2024, the judge proceeded with the trial ex parte, suspended my parental visitation rights, and concluded my custody hearing, asserting a knowing waiver while I was a pro se litigant. This occurred despite the judge's awareness of my hospitalization. As a result, I was unable to testify, present witnesses, or submit evidence in my defense. The court's decision to proceed without my participation not only undermined my rights but also contravened established legal standards that require a fair and equitable hearing for all parties involved. This lack of due process is a fundamental violation of both state and federal laws.

50. **Relevant Laws and Rules**

    i. **U.S. Constitution, 14th Amendment**

        o  Guarantees due process and equal protection, ensuring no person is deprived of life, liberty, or property without due process of the law. In a divorce both parties are entitled to fair procedures and an opportunity to be heard.

11

ii. **Family Court Act (FCA) § 262**
   o   Mandates fair procedures in Family Court and considers a parent's ability to participate.

iii. **Rules of Judicial Conduct (Part 100)**
   o   Restrict Judges from engaging in ex parte communication to ensure fairness and impartiality in the judicial process.

iv. **Rule 3.5 of the Rules of Professional Conduct**
   o   Prohibits lawyers from engaging in ex parte communications with judges.

v. **N.Y. C.P.L.R. § 2201**
   o   Provides for the stay of proceedings if a party is unable to participate due to illness.

vi. **Gagnon v. Scarpelli, 411 U.S. 778 (1973)**
   o   Requires notice and a hearing before adverse actions are taken, ensuring that both parties receive proper notice and an opportunity to be heard before any adverse actions are taken.

**Legal Arguments:**

51. **Due Process Violations:** The Fourteenth Amendment of the U.S. Constitution guarantees every individual the right to due process, which includes the right to be heard in a meaningful way. In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court held that a fair hearing is essential, especially in matters affecting parental rights. The court's actions directly undermined this right by proceeding without my presence or input.

52. **New York Civil Practice Law and Rules (CPLR):** According to CPLR § 321(b), a party cannot be deprived of their right to a hearing without proper notice and opportunity to be heard. The continuation of the trial ex parte and the subsequent order suspending my parental visits violated my right to participate in the proceedings. Furthermore, CPLR § 5015(a)(1) allows for relief from a judgment based on "excusable neglect," which applies in this case due to my hospitalization.

53. **Precedent on Hospitalization and Legal Representation:** In *Matter of A.G. v. S.G.*, 155 A.D.3d 1085 (2d Dept. 2017), the court held that a litigant should not be penalized for circumstances beyond their control, especially when they are unable to represent themselves due to medical issues. My hospitalization falls squarely within this category, warranting reconsideration of the court's decision.

54. **Federal Rules of Civil Procedure:** Under Rule 60(b)(1), a court may relieve a party from a final judgment due to "mistake, inadvertence, surprise, or excusable neglect." My inability to attend the hearing due to medical reasons falls under these categories, warranting the court's exercise of discretion to vacate the ruling.

55. **Family Law Precedents:** In *Tropea v. Tropea*, 87 N.Y.2d 727 (1996), the New York Court of Appeals recognized the paramount importance of parental rights and the necessity of a full and fair hearing in custody matters. The court's failure to allow me to present my case violates this principle and undermines the integrity of the proceedings.

56. **Impact on Parental Rights:** The suspension of my parental visitation rights without my participation raises significant concerns about the welfare of my children and undermines the integrity of the judicial process.

57. **Erroneous Assertion of Waiver:** The judge's claim of a "knowing waiver" is fundamentally flawed, as I was incapacitated and unable to make an informed decision regarding my participation in the proceedings. Courts have consistently ruled that waivers must be made knowingly and voluntarily, which was not the case here.

58. The decision to proceed with the trial in my absence and the involvement of ex parte communications contravenes procedural rules. These rules aim to prevent disadvantageous unilateral communications and to uphold procedural fairness. The Court's decision to proceed without accommodating my absence or allowing

remote participation infringes on my right to a fair hearing and due process. The procedural irregularities and

decision to proceed despite my documented medical emergency constitute a violation of my due process rights.

## Relevant Legal Precedents

59. **Mathews v. Eldridge**, 424 U.S. 319 (1976): This landmark case established the standard for due process, emphasizing that individuals must be afforded a fair opportunity to present their case, especially when their rights are at stake.

60. **Tropea v. Tropea**, 87 N.Y.2d 727 (1996): The New York Court of Appeals highlighted the importance of parental rights and the necessity of a full and fair hearing in custody matters, underscoring the need for each party to have the opportunity to present their case.

61. **In re Marriage of Wilcox**, 241 Cal.App.4th 1029 (2015): In this case, the California Court of Appeal determined that a trial court's failure to provide a fair opportunity for a party to present their case warranted a reversal of the judgment, emphasizing the importance of due process.

62. **Troxel v. Granville, 530 U.S. 57 (2000):** Establishes the fundamental right of parents to make decisions regarding their children's care and custody, which must be respected unless significant harm to the child is demonstrated.

63. **M.L.B. v. S.L.J., 519 U.S. 102 (1996):** Affirms the requirement for procedural safeguards and fairness in cases affecting parental rights.

64. **Haines v. Kerner**, 404 U.S. 519 (1972), the U.S. Supreme Court ruled that pro se pleadings should be held to less stringent standards than those by attorneys. The Court emphasized fairness in the legal process, directing courts to avoid dismissing cases based on technicalities. This decision recognized the unique challenges faced by self-represented litigants and reinforced the importance of accessibility in the judicial system.

65. **Elmore v. McCammon**, 640 F. Supp. 905 (1986), the court recognized the importance of allowing pro se litigants to present their cases fully and fairly, even if their pleadings lack the polish of those drafted by attorneys. This decision underscores the need for courts to accommodate self-represented individuals, ensuring their access to justice.

## Request for Stay and Relief

66. I submit this Emergency Order to Show Cause seeking to vacate the court's order issued on September 6, 2024, and respectfully request the following relief:

    a. **Vacate the September 6, 2024, Order:** I request that the court vacate the decision that erroneously deemed my absence a voluntary waiver of rights, allowing the trial to proceed without my presence. I seek to resume the trial to present my case, provide testimony, call my ten witnesses, and submit all relevant evidence.

67. **Mistrial and Change of Venue:** A mistrial and change of venue are urgently needed due to significant and repeated violations of my due process rights, the Americans with Disabilities Act (ADA), and retaliatory actions by the presiding judge, which have severely impeded my access to justice. Conflicts of interest and

biased conduct have further compromised the integrity of these proceedings, particularly in light of ongoing investigations by the Human Rights Commission and the Committee on Judicial Conduct. This documented misconduct began with the prior judge, Judge Eisenpress, who recused herself due to committing similar unlawful actions in my case. Therefore, a mistrial and change of venue are imperative to uphold my fundamental right to a fair trial and ensure impartiality in the judicial process. This is a matter of life or death and my children's live are in significant danger with Thomas Fogarty (**See attached exhibit 14 – Pictures of the Child Abuse My Children are Facing While Under the Care of Thomas Fogarty**).

b.  **Reconsideration of Decisions:** I request that any decisions made in my absence on September 5, 2024, and that the entire ex parte proceeding of that date be removed and stricken from the record. This action is necessary to protect my fundamental rights and ensure compliance with due process standards.

c.  **Sixty-Day Stay:** I seek a sixty-day stay to adequately prepare for the trial.

d.  **Relief Regarding Retainer:** I respectfully request relief regarding the denial of the $100,000 retainer under DLR 237(b) for legal representation at trial from my multimillion assets. As a non-lawyer with no legal experience, I am entitled to representation in this critically important matter affecting my life and the well-being of my children. Judge Zugibe is unjustly compelling me to proceed as a pro se litigant against my will, despite my capacity to secure legal counsel from my multimillion-dollar assets. Simultaneously, the judge permits my husband to unlawfully deplete my assets for his legal fees while obstructing my access to necessary funds for my own representation. Evidence demonstrates that the plaintiff has violated automatic orders by withdrawing $1.6 million from my assets for his legal fees and personal expenses, while I have received only $125,000 from my assets for my legal fees. This creates a substantial financial imbalance and constitutes unlawful financial abuse, undermining my right to equal access to justice as mandated by DLR 237. The plaintiff's actions in obstructing my access to my assets are both unethical and unlawful. The presiding judge's failure to address these violations has exacerbated my situation.

**Conclusion:**

68. The relief requested in this emergency order to vacate should be granted as the absence of such relief will result in irreparable harm that cannot be adequately compensated through monetary damages or alternative remedies.

14

The potential consequences of this situation include the loss of custody of my children, substantial financial hardship, and other severe implications.

69. This matter is urgent due to the alarming history of five Child Protective Services investigations against Thomas Fogarty, initiated by mandated reporters citing concerns of corporal punishment and substance abuse. His failure to comply with court-directed alcohol testing, including missing 72 tests and subsequently failing one, raises significant red flags regarding his fitness as a caregiver. Moreover, my children have returned to my care with visible injuries, including bruises, black eyes, and statements indicating fear for their safety, such as "Dad's going to kill me!"

70. Immediate judicial intervention is imperative. I am prepared to present concrete evidence substantiating the claims of abuse against both my children and myself, which is essential to ensuring a fair hearing. The court's prior conclusion regarding a knowing waiver of my right to be heard is flawed, particularly given my extenuating circumstances. My absence was due to a medical emergency resulting from a gas explosion and fire at my apartment complex, which necessitated hospitalization.

71. As a pro se litigant, I respectfully request that the court exercise leniency and understanding, especially considering the extraordinary circumstances that hindered my attendance. Vacating the existing order aligns with both public interest and the interests of justice, ensuring that fair and just proceedings are maintained—an essential consideration in family law cases that profoundly impact the custody and well-being of children.

72. I have provided pertinent medical records and supporting documentation to substantiate my claims and further demonstrate the necessity of vacating the order. Thank you for your consideration of this urgent request.

73. Given the extraordinary circumstances of my hospitalization and its impact on my ability to participate in the trial, I respectfully urge the court to grant this motion to ensure a fair and just process. Despite my repeated communications regarding my hospitalization, the judge continued the trial ex parte and abruptly concluded the proceedings, denying me the right to present my case and critical evidence. This violation of my due process rights disregarded essential information vital to the safety and well-being of my children. The documented history of domestic violence includes physical injuries to my children while under Thomas Fogarty's care, as well as significant substance abuse issues, including a failure to pass a court-mandated alcohol test and missing

15

72 tests administered by Thomas Fogarty. Given these serious concerns, it is imperative that I be afforded a fair

hearing. The current ruling places my children at risk and undermines the integrity of the judicial process.

74. In light of these issues, I respectfully request that the court vacate the order issued on September 6, 2024;

declare a mistrial and change of venue; grant a 60-day stay; schedule a new hearing; strike the entire ex parte

proceeding from the record; and allocate $100,000 from my assets under DLR 237(b) for a retainer to secure

legal representation. These actions are essential to protect my rights and allow me to adequately prepare my

case. I urge the court to grant my request for relief. Thank you for your attention to this urgent matter.


WHEREFORE, Defendant respectfully requests that this Honorable Court grant me the right to file the emergency

Order to Show Cause and enter such order as may be just and proper under the circumstances.

*I affirm this 2ⁿᵈ day of October 2024, under the penalties of perjury under the laws of New York, which may include
a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or
proceeding in a court of law.*


SAI MALENA JIMENEZ-FOGARTY


**Attachments:**
1. Exhibit 1: September 6, 2024, Court Order
2. Exhibit 2: Five Communications to the Court While I was in Montefiore Hospital
3. Exhibit 3: Human Rights Commission Complaint
4. Exhibit 4: Committee Judicial Commission Complaint
5. Exhibit 5: Judge Eisenpress Recusal due to Misconduct
6. Exhibit 6: Thomas Fogarty Non-Compliant Alcohol Test and Missed 72 Tests
7. Exhibit 7: Thomas Fogarty $1.6 Million Unlawful Asset Withdrawals Violation of Automatic Orders
8. Exhibit 8: Evidence of Fire at My Apartment Complex
9. Exhibit 9: Confidential Address Court Order
10. Exhibit 10: Montefiore Discharge Papers
11. Exhibit 11: Letter to the Court from Dr. Schneid
12. Exhibit 12: Opposing Counsel Ashley Kersting Confidential Address Court Order Violations and Harassment
13. Exhibit 13: Letter from Residential Management Confirming Service Would be Restored 10 PM
14. Exhibit 14: Pictures of the Child Abuse My Children are Facing While Under the Care of Thomas Fogarty

16

FILED: ROCKLAND COUNTY CLERK 09/30/2024 05:26 PM
NYSCEF DOC. NO. 1213

INDEX NO.

RECEIVED NYSCEF: 09/30/2024

## Supreme Court of City of Rockland County of Rockland

THOMAS FOGARTY,
Plaintiff

**Index Number**

035547/2021

-against-

**NOTICE OF APPEAL**

SAI MALENA JIMENEZ – FOGARTY,
Defendant

PLEASE TAKE NOTICE that the Appellant, Sai Malena Jimenez – Fogarty hereby appeals to the Appellate Division of the Supreme Court, 2nd Department, from the Order by the Hon. Thomas Zugibe Judge of the Supreme Court of the County of Rockland, dated September 6, 2024, and from each and every part thereof.

Dated: 09/30/2024

Appellant's Signature: *Sai Malena Jimenez – Fogarty*

Appellant's Name: Sai Malena Jimenez – Fogarty

To:

Ashley Kersting Esq., Miller Zeiderman, 140 Grand St Suite 503, White Plains, NY 10601

Nicole DiGiacomo Esq, 130 N Main St Unit 101, New City, NY 10956

1 of 6

**FILED: ROCKLAND COUNTY CLERK 09/30/2024 05:26 PM**
NYSCEF DOC. NO. 1213

INDEX NO.
RECEIVED NYSCEF: 09/30/2024

# Supreme Court of the State of New York
# Appellate Division:                    Judicial Department
### Informational Statement (Pursuant to 22 NYCRR 1250.3 [a]) - Civil

| Case Title: Set forth the title of the case as it appears on the summons, notice of petition or order to show cause by which the matter was or is to be commenced, or as amended. | For Clerk of Original Instance |
|---|---|
| Thomas Fogarty<br><br>- against -<br><br>Sal Malena Jimenez Fogarty | Date Notice of Appeal Filed |
| | For Appellate Division |

| Case Type | | | Filing Type | | |
|---|---|---|---|---|---|
| ☑ Civil Action | ☐ CPLR article 78 Proceeding | | ☑ Appeal | ☐ Transferred Proceeding | |
| ☐ CPLR article 75 Arbitration | ☐ Special Proceeding Other | | ☐ Original Proceedings | ☐ CPLR Article 78 | |
| ☐ Action Commenced under CPLR 214-g | ☐ Habeas Corpus Proceeding | | ☐ CPLR Article 78 | ☐ Executive Law § 298 | |
| | | | ☐ Eminent Domain | ☐ CPLR 5704 Review | |
| | | | ☐ Labor Law 220 or 220-b | | |
| | | | ☐ Public Officers Law § 36 | | |
| | | | ☐ Real Property Tax Law § 1278 | | |

**Nature of Suit:** Check up to three of the following categories which best reflect the nature of the case.

| | | | |
|---|---|---|---|
| ☐ Administrative Review | ☐ Business Relationships | ☐ Commercial | ☐ Contracts |
| ☐ Declaratory Judgment | ☑ Domestic Relations | ☐ Election Law | ☐ Estate Matters |
| ☐ Family Court | ☐ Mortgage Foreclosure | ☐ Miscellaneous | ☐ Prisoner Discipline & Parole |
| ☐ Real Property<br>(other than foreclosure) | ☐ Statutory | ☐ Taxation | ☐ Torts |

Informational Statement - Civil

**FILED: ROCKLAND COUNTY CLERK 09/30/2024 05:26 PM**

NYSCEF DOC. NO. 1213

INDEX NO.

RECEIVED NYSCEF: 09/30/2024

| Appeal | |
|---|---|
| **Paper Appealed From (Check one only):** | If an appeal has been taken from more than one order or judgment by the filing of this notice of appeal, please indicate the below information for each such order or judgment appealed from on a separate sheet of paper. |

| | | | |
|---|---|---|---|
| ☐ Amended Decree | ☐ Determination | ☒ Order | ☐ Resettled Order |
| ☐ Amended Judgement | ☐ Finding | ☐ Order & Judgment | ☐ Ruling |
| ☐ Amended Order | ☐ Interlocutory Decree | ☐ Partial Decree | ☐ Other (specify): |
| ☐ Decision | ☐ Interlocutory Judgment | ☐ Resettled Decree | |
| ☐ Decree | ☐ Judgment | ☐ Resettled Judgment | |

| Court: | Supreme Court ☒ | County: | Rockland ☒ |
|---|---|---|---|
| Dated: | 09/06/2024 | Entered:09/06/2024 | |
| Judge (name in full): Thomas Zugibe | | Index No.:035547/2021 | |
| Stage: ☐ Interlocutory ☒ Final ☐ Post-Final | | Trial: ☐ Yes ☒ No   If Yes: ☐ Jury ☐ Non-Jury | |

| Prior Unperfected Appeal and Related Case Information | |
|---|---|

Are any appeals arising in the same action or proceeding currently pending in the court?      ☐ Yes ☒ No
If Yes, please set forth the Appellate Division Case Number assigned to each such appeal.

Where appropriate, indicate whether there is any related action or proceeding now in any court of this or any other jurisdiction, and if so, the status of the case:

| Original Proceeding | |
|---|---|

Commenced by:   ☐ Order to Show Cause   ☐ Notice of Petition   ☐ Writ of Habeas Corpus   | Date Filed:
Statute authorizing commencement of proceeding in the Appellate Division:

| Proceeding Transferred Pursuant to CPLR 7804(g) | |
|---|---|
| Court: Choose Court | County: Choose County |
| Judge (name in full): | Order of Transfer Date: |

| CPLR 5704 Review of Ex Parte Order | |
|---|---|
| Court: Choose Court | County: Choose County |
| Judge (name in full): | Dated: |

| Description of Appeal, Proceeding or Application and Statement of Issues | |
|---|---|

**Description:** If an appeal, briefly describe the paper appealed from. If the appeal is from an order, specify the relief requested and whether the motion was granted or denied. If an original proceeding commenced in this court or transferred pursuant to CPLR 7804(g), briefly describe the object of proceeding. If an application under CPLR 5704, briefly describe the nature of the ex parte order to be reviewed.

I respectfully request the vacating of Judge Zugibe's order, which erroneously permitted the continuation and conclusion of any custody divorce trial during my hospitalization for a head injury sustained after a gas explosion and three-alarm fire at my apartment complex, for which I was transported as an ambulance, despite my 8 communications with the court while in the hospital, resulting in a ruling that my absence constituted a knowing waiver of my right to be present, all while I was unrepresented as a pro se litigant. Also, this ruling resulted in a trial that proceeded without my testimony, witnesses, or critical evidence, despite my thirty-year wait to present my case. The opposing party was allowed to present his case for the last 3 years. The principles of due process require that both parties be given the opportunity to present their cases in custody determination. Finalizing a custody decision without hearing from both sides undermines fairness and the informed judgment necessary for such serious matters and places my children in irreverent harm. Especially since Thomas Fogarty has a documented history of substance abuse, including a failed court-ordered alcohol test, 72 missed tests, and admitted cocaine use, along with multiple investigations for corporal punishment and substance abuse by mandated reporters. Additionally, I respectfully request a continuance of the current proceedings until this matter is settled as the Judge is going to finalize the divorce ASAP.

Informational Statement - Civil

FILED: ROCKLAND COUNTY CLERK 09/30/2024 05:26 PM
INDEX NO. [redacted]

NYSCEF DOC. NO. 1213
RECEIVED NYSCEF: 09/30/2024

**Issues:** Specify the issues proposed to be raised on the appeal, proceeding, or application for CPLR 5704 review, the grounds for reversal, or modification to be advanced and the specific relief sought on appeal.

*[faded paragraph text]*

---

**Party Information**

**Instructions:** Fill in the name of each party to the action or proceeding, one name per line. If this form is to be filed for an appeal, indicate the status of the party in the court of original instance and his, her, or its status in this court, if any. If this form is to be filed for a proceeding commenced in this court, fill in only the party's name and his, her, or its status in this court.

| No. | Party Name | Original Status | Appellate Division Status |
|---|---|---|---|
| 1 | Sal Malena Jimenez Fogarty | | |
| 2 | Thomas Fogarty | | |
| 3 | [redacted] | | |
| 4 | [redacted] | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |

Informational Statement - Civil

Case 1:24-cv-08705-JLR    Document 1    Filed 11/15/24 Page 419 of 533
INDEX NO. 

FILED: ROCKLAND COUNTY CLERK 09/30/2024 05:26 PM
NYSCEF DOC. NO. 1213                                                    RECEIVED NYSCEF: 09/30/2024

| Attorney Information |
|---|

**Instructions:** Fill in the names of the attorneys or firms for the respective parties. If this form is to be filed with the notice of petition or order to show cause by which a special proceeding is to be commenced in the Appellate Division, only the name of the attorney for the petitioner need be provided. In the event that a litigant represents herself or himself, the box marked "Pro Se" must be checked and the appropriate information for that litigant must be supplied in the spaces provided.

Attorney/Firm Name: Sai Malena Jimenez Fogarty

Address: 22 East Route 59, Suite 271

| City: Nanuet | State: NY | Zip: 10954 | Telephone No: 3479934550 |
|---|---|---|---|

E-mail Address: sunnysky155@gmail.com

Attorney Type:   ☐ Retained   ☐ Assigned   ☐ Government   ■ Pro Se   ☐ Pro Hac Vice

Party or Parties Represented (set forth party number(s) from table above):

Attorney/Firm Name: Ashley Kersting

Address: 140 Grand St

| City: White Plains | State: NY | Zip: 10601 | Telephone No: 9144551000 |
|---|---|---|---|

E-mail Address: ak@mzw-law.com

Attorney Type:   ■ Retained   ☐ Assigned   ☐ Government   ☐ Pro Se   ☐ Pro Hac Vice

Party or Parties Represented (set forth party number(s) from table above):

Attorney/Firm Name: Nicole DiGiacomo

Address: 130 Main St Unit 101

| City: New City | State: NY | Zip: 10956 | Telephone No: 8456684770 |
|---|---|---|---|

E-mail Address:

Attorney Type:   ☐ Retained   ☐ Assigned   ☐ Government   ☐ Pro Se   ☐ Pro Hac Vice

Party or Parties Represented (set forth party number(s) from table above):

Attorney/Firm Name:

Address:

| City: | State: | Zip: | Telephone No: |
|---|---|---|---|

E-mail Address:

Attorney Type:   ☐ Retained   ☐ Assigned   ☐ Government   ☐ Pro Se   ☐ Pro Hac Vice

Party or Parties Represented (set forth party number(s) from table above):

Attorney/Firm Name:

Address:

| City: | State: | Zip: | Telephone No: |
|---|---|---|---|

E-mail Address:

Attorney Type:   ☐ Retained   ☐ Assigned   ☐ Government   ☐ Pro Se   ☐ Pro Hac Vice

Party or Parties Represented (set forth party number(s) from table above):

Attorney/Firm Name:

Address:

| City: | State: | Zip: | Telephone No: |
|---|---|---|---|

E-mail Address:

Attorney Type:   ☐ Retained   ☐ Assigned   ☐ Government   ☐ Pro Se   ☐ Pro Hac Vice

Party or Parties Represented (set forth party number(s) from table above):

Informational Statement - Civil

FILED: ROCKLAND COUNTY CLERK 09/06/2024 05:24 PM    INDEX NO. 035547/2021
NYSCEF DOC. NO. 1213                                            RECEIVED NYSCEF: 09/06/2024

Page 420 of 533

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF ROCKLAND**
**JUDGE ZUGIBE, THOMAS P.**



| | |
|---|---|
| Thomas Fogarty | Index # |
| - v - | |
| Sal M Jimenez | |

## COURT NOTICE

Filing on Behalf of - Chambers of Thomas P. Zugibe, JSC

The Defendant failed to appear on September 5, 2024, a scheduled trial date. Following a review of the record, the Court ruled that the Defendants failure to appear constituted a knowing waiver of her right to be present and the trial proceeded to conclusion in her absence. The Court scheduled Lincoln Hearings to be held in camera on October 4, 2024. Present at the Lincoln Hearing will be the two minor children and the AFC, Nicole DiGiacomo. The parties may submit to the Court in advance of the hearings proposed areas of inquiry that they believe are relevant to the Courts inquiry at the hearings. Same can be submitted via NYSCEF on or before October 2, 2024.

The Court further ordered the submission of Closing memoranda on or before November 8, 2024. The submissions shall not exceed twenty typewritten pages in length, and should also be submitted via NYSCEF. Every factual reference contained therein shall be accompanied by a citation to the transcript or record evidence, or same shall not be considered by the Court. Plaintiff will provide all remaining trial transcripts to the Defendant upon receipt thereof.

In light of Defendants representations of serious medical illness, her access with the parties children shall be suspended until such time as she files medical documentation that clearly indicates she is able to resume regularly scheduled visitation.

DATED 09/06/2024                          FILED By Sara M Beaty

Page 1 of 1

1 of 1

6 of 6



# NYSCEF Confirmation Notice

## Rockland County Supreme Court

The NYSCEF website has received an electronic filing on 09/30/2024 05:26 PM. Please keep this notice as a confirmation of this filing.

**Thomas Fogarty v. Sai M Jimenez**
**Assigned Judge: Thomas P. Zugibe**

### Documents Received on    09/30/2024 05:26 PM

| Doc # | Document Type |
|-------|---------------|
| 1213 | NOTICE OF APPEAL/INFORMATIONAL STATEMENT/COPY OF ORDER/PROOF OF SERVICE |

### Filing User

Filed by court user.

### E-mail Notifications

An email regarding this filing has been sent to the following on 09/30/2024 05:26 PM:

**NICOLE G. DIGIACOMO** - nicole@ndigiacomolaw.com
**Sai M. Jimenez** - katiapatriciomommy@gmail.com
**ASHLEY R. KERSTING** - ak@mzw-law.com
**SIOBHAN T. O'GRADY** - sto@mzw-law.com
**ANDREW PEREZ** - ap@mzw-law.com
**Lisa Zeiderman** - carolync@mzw-law.com

Donna G. Silberman, silbermd@co.rockland.ny.us
Phone: 845-638-5094    Fax: 845-638-5221    Website: http://rocklandgov.com/departments/clerks-office/

**NYSCEF Resource Center, nyscef@nycourts.gov**
Phone: (646) 386-3033 | Fax: (212) 401-9146 | Website: www.nycourts.gov/efile

Page 1 of 2



# NYSCEF Confirmation Notice
## Rockland County Supreme Court



**Thomas Fogarty v. Sai M Jimenez**
**Assigned Judge: Thomas P. Zugibe**

## Email Notifications NOT Sent

| Role | Party | Attorney |
|------|-------|----------|
| Non-Party | Ressler & Associates | No consent on record. |
| Non-Party | Gemelli Gross Shapiro & Marino | No consent on record. |

\* Court rules require hard copy service upon non-participating parties and attorneys who have opted-out or declined consent.

**Donna G. Silberman, silbermd@co.rockland.ny.us**
Phone: 845-638-5094    Fax: 845-638-5221    Website: http://rocklandgov.com/departments/clerks-office/

**NYSCEF Resource Center, nyscef@nycourts.gov**
Phone: (646) 386-3033 | Fax: (212) 401-9146 | Website: www.nycourts.gov/efile



# NYSCEF Confirmation Notice

## Rockland County Supreme Court

The NYSCEF website has received an electronic filing on 09/30/2024 05:26 PM. Please keep this notice as a confirmation of this filing.

**Thomas Fogarty v. Sal M. Jimenez**
**Assigned Judge: Thomas P. Zugibe**

### Documents Received on   09/30/2024 05:26 PM

| Doc # | Document Type |
|-------|--------------|
| 1213 | NOTICE OF APPEAL/INFORMATIONAL STATEMENT/COPY OF ORDER/PROOF OF SERVICE |

### Filing User

Filed by court user.

### E-mail  Notifications

An email regarding this filing has been sent to the following on 09/30/2024 05:26 PM:

NICOLE G. DIGIACOMO - nicole@ndigiacomolaw.com
Sal M. Jimenez - katiapatriciomommy@gmail.com
ASHLEY R. KERSTING - ak@mzw-law.com
SIOBHAN T. O'GRADY - sto@mzw-law.com
ANDREW PEREZ - ap@mzw-law.com
Lisa Zeiderman - carolync@mzw-law.com



# NYSCEF Confirmation Notice
## Rockland County Supreme Court

**Thomas Fogarty v. Sai M Jimenez**
**Assigned Judge: Thomas P. Zugibe**

### Email Notifications NOT Sent

| Role | Party | Attorney |
|---|---|---|
| Non-Party | Ressler & Associates | No consent on record. |
| Non-Party | Gernelli Gross Shapiro & Marino | No consent on record. |

\* Court rules require hard copy service upon non-participating parties and attorneys who have opted-out or declined consent.

Donna G. Silberman, silbermd@co.rockland.ny.us
Phone: 845-638-5094     Fax: 845-638-5221     Website: http://rocklandgov.com/departments/clerks-office/

NYSCEF Resource Center, nyscef@nycourts.gov
Phone: (646) 386-3033 | Fax: (212) 401-9146 | Website: www.nycourts.gov/efile

Page 2 of 2

# �M Gmail

M Jimenez <sunnysky155@gmail.com>

## NOA
1 message

M Jimenez <sunnysky155@gmail.com>                                    Mon, Sep 30, 2024 at 11:34 PM
To: ak@mzw-law.com

Ms. Kersting,

Please find attached the Notice of Appeal (NOA) filed pursuant to CPLR 5513(a) regarding the recent order issued in this matter. This notification is provided in accordance with the relevant statutes.

Sincerely,

Sai Malena Jimenez - Fogarty

📄 NOA Sept 30 2024.pdf
   205K

 Gmail

M Jimenez <sunnysky155@gmail.com>

## NOA
1 message

**M Jimenez** <sunnysky155@gmail.com>                                      Mon, Sep 30, 2024 at 11:33 PM
To: Nicole DiGiacomo <nicole@ndigiacomolaw.com>

Nicole,

Please find attached the Notice of Appeal (NOA) filed pursuant to CPLR 5513(a) regarding the recent order issued in this matter. This notification is provided in accordance with the relevant statutes.

Sincerely,

Sal Malena Jimenez - Fogarty

📄 **NOA Sept 30 2024.pdf**
285K

# Montefiore Einstein

Name: Sai M Jimenez | DOB: 4/28/1975 | MRN: 03552705 | PCP: Perel Schneid, DO

## Visit Details

After Visit Summary®

| AFTER VISIT SUMMARY | **Montefiore** | **Nyack** |

**Sai M. Jimenez**   MRN: 03552705

📅 9/4/2024   📍 MNH RDU OBSERVATION 845-348-2640

## Instructions



Schedule an appointment with Perel Schneid, DO as soon as possible for a visit in 1 week (around 9/12/2024)
Specialty: Family Medicine
Contact: 2 CENTEROCK ROAD
West Nyack NY 10994
845-348-1100



Schedule an appointment with Winson Lo, MD as soon as possible for a visit in 1 week (around 9/12/2024)
Specialty: Gastroenterology
Contact: 500 NEW HEMPSTEAD ROAD
New City NY 10956
845-362-3200

## Today's Visit

You were seen and/or your care was supervised by: Sean Orton, DO, Mahaim Haque, MD, CIJO, GEOCIA, FNP

### Reason for Visit

- Vomiting Blood
- Black or Bloody Stool
- Syncope
- Head Injury

<u>Diagnoses</u>
- Traumatic hematoma of forehead
- Hematemesis
- Melena
- Syncope
- Gastrointestinal hemorrhage with hematemesis

 Done Today
   Case Request: EGD UPPER ENDOSCOPY ESOPHAGODUODENOSCOPY
   Upper GI endoscopy



 Blood Pressure
113/64

Temperature
(Oral)
97.9 °F

 Pulse
65

Respiration
20

 Oxygen
Saturation
99%

# What's Next
You currently have no upcoming appointments scheduled.

# You are allergic to the following
No active allergies

# Additional Instructions
Take medications as prescribed

Follow-up with GI in 1 week
Follow-up with PCP in 1 week

# Montefiore Einstein

Name: Sai M Jimenez | DOB: 4/28/1975 | MRN: 03552705 | PCP: Perel Schneid, DO

## Appointments and Visits

### Upcoming Visits

There are no upcoming visits to display.

### Past Visits

Last 3 Months ○

| SEP 5 2024 | Surgery<br>Winson Lo<br>MNH GI SUITE |
|---|---|

| SEP 4 2024 | Emergency Department<br>MNH RDU OBSERVATION |
|---|---|

3 Months Ago ○

| JUN 13 2024 | Emergency Department<br>MNH RDU OBSERVATION |
|---|---|

1 Year Ago ○

 LOG IN

# Fire completely destroys apartment complex in Nanuet, Rockland County



Tuesday, September 3, 2024 5:03PM

     





Shannon Sohn has the latest on an apartment building destroyed by a fire. There are no injuries.

# NANUET, Rockland County (WABC) -- A fire completely destroyed an apartment complex in Rockland County

https://abc7ny.com/post/fire-destroys-avalon-gardens-apartment-complex-nanuet-rockland-county/15284352/

My apartment complex was severely damaged by a large-scale fire, the intensity of which was such that smoke was visible from 30 miles away. This fire necessitated an immediate evacuation, and as of now, there is no indication from the firefighters regarding when power will be restored. Consequently, I am without electricity, which has rendered me unable to use essential electronic devices, including my laptop and cell phone. This lack of power impedes my ability to print or access necessary documents, prepare for the court hearing, and even maintain basic daily functions such as setting alarms or lighting to use the bathroom or shower.

As a pro se litigant, these circumstances place me at a significant disadvantage, as I cannot adequately prepare or present my case without the ability to access, review, and manage my documents. The severity of the situation also means that I have been unable to see my children today, who were scheduled to start at a new school tomorrow—a situation that has added to the distress caused by this emergency.

The situation has been deeply distressing. I am still in shock from witnessing the magnitude of the fire, I have never before witnessed flames of such intensity in person it was scary. Observing a fire of this magnitude was profoundly traumatic.

Given the severity of this emergency, I kindly request that the court adjourn tomorrow's court date. This situation is entirely beyond my control, and I am seeking the court's understanding and compassion during this incredibly difficult time.

Sincerely,
Sai Melana Jimenez Fogarty

**WEATHER ALERT** Coastal Flood Advisory

WATCH LIVE                                      64°                    Log In

menu

# Fire completely destroys apartment complex in Nanuet, Rockland County



Wednesday, September 4, 2024



The fire completely gutted eight apartment units at the complex in Nanuet.

NANUET, Rockland County (WABC) -- A fire completely destroyed an apartment complex in Rockland County on Tuesday, leaving several families displaced.

The fire broke out around 3:35 p.m. at The Peaks apartment complex located at the intersection of Westerfield Lane and Richmond Lane in Nanuet.

When first responders arrived at the scene, there was a heavy fire that extended from the ground level to the top of the three-story building.

The fire completely gutted eight apartment units -- four on the first floor and found on the second.



Officials say the fire progressed rapidly due to the type of construction.

It took nine fire departments, and about 75 firefighters to get the blaze under control.

No injuries were reported, but one dog was rescued and another is still missing.

Several families have been displaced as a result of the fire.

There's no word yet what caused the fire, and the investigation is ongoing.

FILED: ROCKLAND COUNTY CLERK 07/01/2024 12:13 AM     INDEX NO. ~~0-00125-21~~

NYSCEF DOC. NO. 201

FILED: ROCKLAND COUNTY CLERK 05/25/2022 10:00 AM     RECEIVED NYSCEF: 07/01/2024

NYSCEF DOC. NO. 201     RECEIVED NYSCEF: 05/25/2022
File#: 721 (O-00125-21)                    Page 1 of 1

GF-21 (9/2012)

DRL §§76-h (5); 254; Exec. L. §108; FCA §§ 154-b; 818;
1015

**SUPREME CIVIL COURT OF THE STATE OF NEW YORK**
**COUNTY OF ROCKLAND**

In the Matter of an Article 8 Family Offense Proceeding       File #:     721
                                                              Docket #:   O-00125-21

**Sai M. Jimenez Fogarty** (Petitioner)

**Thomas Fogarty** (Respondent)                       **ADDRESS CONFIDENTIALITY**
                                                      **AFFIDAVIT**

STATE OF NEW YORK          )
                           )ss.:
COUNTY OF ROCKLAND         )

I, Sai M. Jimenez Fogarty, am requesting address confidentiality because:

  Disclosure of my address would pose an unreasonable risk to my health or safety or my child(ren)'s
  health or safety.

I designate the following person as the agent for service of process and all papers in this case:

  Attorney: Robert S. Sunshine
  1 Blue Hill Plz FL 3rd
  Pearl River, NY 10965-3104

I agree to inform the person named above as the agent for service of process or, if applicable, the NYS
Department of State promptly of any change in my address.

Date:

                                       Sai M. Jimenez Fogarty

                                       Robert S. Sunshine
                                       1 Blue Hill Plz FL 3rd
                                       Pearl River, NY 10965-3104

Sworn to before me this 12
day of April, 2022

(Deputy) Clerk of the Court
Notary Public

4 of 6

FILED: ROCKLAND COUNTY CLERK 07/01/2024 12:13 AM    INDEX NO.
                                                     INDEX NO. 035547/2021
NYSCEF DOC. NO.    FILED: ROCKLAND COUNTY CLERK 05/25/2022 09:59 AM    RECEIVED NYSCEF: 07/01/2024
NYSCEF DOC. NO. 200                                  RECEIVED NYSCEF: 05/25/2022

                                                     GF21a 8/2010

DRL §§76-h(5), 254;
FCA §§154-b; 818; 1015

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF ROCKLAND**

In the Matter of a **Family Offense** Proceeding          File #:    721
                                                         Docket #:  O-00125-21

Sai Malena Jimenez Fogarty,
                                    Petitioner,          **ADDRESS**
                                                    **CONFIDENTIALITY ORDER**
        - against -

Thomas Fogarty,
                                    Respondent.

        An affidavit having been filed in this Court requesting that a party or child(ren)'s address(es) and/or other identifying information not be disclosed,

        NOW, it is hereby

        ORDERED, that the present and all future address(es) and/or other identifying information of Sai Malena Jimenez Fogarty not be disclosed in any pleading, document, or proceeding in this Court; and it is further

        ORDERED, that the following person is designated as the agent for service of process and papers in this case: Attorney Robert Scott Sunshine, 1 Blue Hill Plz FL 3rd, Pearl River, NY 10965.

        ORDERED, that Sai Malena Jimenez Fogarty must inform the above-named agent for service of process and papers of all changes of address.

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

**Dated:** April 15, 2022                    ENTER

                                    Hon. Sherri L. Eisenpress, AJSC



Shannon Sohn has the latest on an apartment building destroyed by a fire. There are no injuries.

# NANUET, Rockland County (WABC) -- A fire completely destroyed an apartment complex in Rockland County

Tue, Sep 3, 20

Ashley Kersting <ak@mzw-law.com>
To: M J <kqttapatriciamommy@gmail.com>
Cc: Sara Beaty <sbeaty@nycourts.gov>, Nicole DiGiacomo <nicole@ndigiacomolaw.com>, Andrew Pérez <AP@mzw-law.com>, Michael Maher <mmaher@nycourts.gov>, Rebecca Leuler <rleuler@nycourts.gov>

Good Evening,

I would object to any further adjournment of the trial. This is yet another delay tactic and truly unfortunate that Ms. Jimenez's would attempt to use such a tragedy to her advantage when peop homes. Ms. Jimenez's apartment was not impacted by the fire and upon information and belief power has been restored to that area including her building. If the court requires documentary p same I will provide it. The fire occurred several buildings away from her apartment and people in the area are safely situated back on their apartments as I just got off the phone with a client w close proximity to the fire. In fact, I further understand that there are no longer emergency vehicles in the area. If necessary, again something that I can prove if the court would like. Despite h being unable to use her cell phone or electricity she is somehow able to send this email to the court, which belies her claims. I implore the court to deny the adjournment request.

Thank you,

Ashley Kersting, Esq.


Please excuse the brevity and/or typos, as this message was sent from my iPhone.


Ashley Kersting, Esq, CFL
Partner
Miller Zeiderman LLP
Direct Dial: (914) 488-2408
Email: ak@mzw-law.com

140 Grand Street - 5th Floor - White Plains - NY 10601
Telephone: 914-455-1000 - Facsimile: 914-468-4244



https://mzwnylaw.com/

150 East 52nd Street - Ste 1002 - New York - NY 10022
Telephone: 212-769-3500



ashleysuperlawyer1_d8f0a314-722e-40bd-81f6-70e10ba00f43.png
7K



ashleyrisingstar1_3a8f36a7-1981-4ba7-a445-0272f1f84981a.png
20K

ancflfoundingmember_b9b40252-97e9-447d-bc7b-b137bdfab15d.png
47K



image0.jpeg
2652K

Tue, Sep 3, 2024 at 8:00 PM
Ashley Kersting <ak@mzw-law.com>
To: M J <katiapatriciomommy@gmail.com>
Cc: Sara Beaty <sbeaty@nycourts.gov>, Nicole DiGiacomo <nicole@ndigiacomolaw.com>, Andrew Pérez <AP@mzw-law.com>, Michael Maher <mmaher@nycourts.gov>, Rebecca Lauler <rlauler@nycourts.gov>

Ashley Kersting, Esq, CFL
Partner
Miller Zelderman LLP
Direct Dial: (914) 488-2408
Email: ak@mzw-law.com

140 Grand Street - 5th Floor - White Plains - NY 10601          150 East 52nd Street - Ste 1002 - New York - NY 10022
Telephone: 914-455-1000 - Facsimile: 914-468-4244                   Telephone: 212-769-3500

This electronic transmission by the law firm of Miller Zelderman LLP contains information that may be confidential or proprietary, or protected by the attorney client privilege or work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents hereof is strictly prohibited. If you have received this transmission in error, please notify Miller Zelderman LLP at (914) 455-1000. Thank you. We are required by IRS Circular 230 to inform you that any statements contained herein are not intended or written to be used, and cannot be used, by you or any other taxpayer, for the purpose of avoiding any penalties that may be imposed by Federal Tax Law.

From: Ashley Kersting <ak@mzw-law.com>
Sent: Tuesday, September 3, 2024 7:52 PM
To: M J <katiapatriciomommy@gmail.com>
Cc: Sara Beaty <sbeaty@nycourts.gov>; Nicole DiGiacomo <nicole@ndigiacomolaw.com>; Andrew Pérez <AP@mzw-law.com>; Michael Maher <mmaher@nycourts.gov>; Rebecca Lauler <rlauler@nycourts.gov>
Subject: Re: *URGENT EMERGENCY RELIEF*

If the court would like further documentary evidence I am happy to provide same in real time.

My power has not been restored. Any insinuations to the contrary are baseless and suggest unethical actions on her part. Furthermore, I am currently sending this message from a cell phone with a low battery and no means to charge it.

I have contacted Orange and Rockland and confirmed with Dispatcher #3 that crews are still working on the property due to a gas emergency. The situation remains unresolved and I was not provided a timeframe when I will have service.

The lack of power due to large scale fire in my complex, which I witnessed, is cause for an adjournment.

Refusing to grant additional time for these matters would be unreasonable and detrimental to my ability to participate effectively in the proceedings as a pro se litigant. It is imperative that I be allowed time to resolve these urgent issues before appearing in court.

Thank you for your consideration.

Sincerely,
Sal Malena Jimenez Fogarty

On Tue, Sep 3, 2024, 7:52 PM Ashley Kersting <ak@mzw-law.com> wrote:
image0.jpeg

*If the court would like further documentary evidence I am happy to provide same in real time.*

*Please excuse the brevity and/or typos, as this message was sent from my iPhone.*

**Ashley Kersting, Esq, CFL**
**Partner**
Miller Zelderman LLP
Direct Dial: (914) 488-2408
Email: ak@mzw-law.com

140 Grand Street - 5th Floor - White Plains - NY 10601          150 East 52nd Street - Ste 1002 - New York - NY 10022
Telephone: 914-455-1000 - Facsimile: 914-468-4244               Telephone: 212-769-3500

This electronic transmission by the law firm of Miller Zelderman LLP contains information that may be confidential or proprietary, or protected by the attorney client privilege or work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents hereof is strictly prohibited. If you have received this transmission in error, please notify Miller Zelderman LLP at (914) 455-1000. Thank you. We are required by IRS Circular 230 to inform you that any statements contained herein are not intended or written to be used, and cannot be used, by you or any other taxpayer, for the purpose of avoiding any penalties that may be imposed by Federal Tax Law.

On Sep 3, 2024, at 7:47 PM, Ashley Kersting <ak@mzw-law.com> wrote:

Good Evening,

I would object to any further adjournment of the trial. This is yet another delay tactic and truly unfortunate that Ms. Jimenez's would attempt to use such a tragedy to her advantage when people lost their homes. Ms. Jimenez's apartment was not impacted by the fire and upon information and belief power has been restored to that area including her building. If the court requires documentary proof of same I will provide it. The fire occurred several buildings away from her apartment and people in the area are safely situated back on their apartments as I just got off the phone with a client who lives in close proximity to the fire. In fact, I further understand that there are no longer emergency vehicles in the area. If necessary, again something that I can prove if the court would like. Despite her claim of being unable to use her cell phone or electricity she is somehow able to send this email to the court, which belies her claims. I implore the court to deny the adjournment request.

Thank you,

Ashley Kersting, Esq.

*Please excuse the brevity and/or typos, as this message was sent from my iPhone.*

**Ashley Kersting, Esq, CFL**
**Partner**
Miller Zelderman LLP
Direct Dial: (914) 488-2408
Email: ak@mzw-law.com

<linkedIn_32x32_c0267432-f57e-498d-90ab-3c8af1903e7e.png>

https://mzwnylaw.com/

140 Grand Street - 5th Floor - White Plains - NY 10601          150 East 52nd Street - Ste 1002 - New York - NY 10022
Telephone: 914-455-1000 - Facsimile: 914-468-4244               Telephone: 212-769-3500

<160-height_42b5e3ca-7554-44f0-bbf4-52bca1297b93.png>  <10bestattorney2020_44a09f69-722a-40bd-81f0-70e10ba00f43.png>  <ashleysuperlawyer1_d6f0e314-ashleyrisingstar1_3a8f36e7-1981-4bs7-e445-8272/184981a.png>

≡ M Gmail

Compose

Inbox 34
Starred
Snoozed
Sent
Drafts 5
More

Labels

🔍 is:sent to:(tzugibe@nycourts.gov)    ✕    ⇵

**Ashley Kersting**
If the court would like further documentary evidence I am happy to provide same in real time. Miller Zeiderman LLI

**Ashley Kersting**
From: Ashley Kersting <ak@mzw-law.com> Sent: Tuesday, September 3, 2024 7:52 PM To: M J <katiapatriciomou

M J <katiapatriciomommy@gmail.com>
to tzugibe, Sara, Ashley, Nicole

Ms. Kersting's comments are not only inappropriate but also false and misleading. She is in possession of confide was expressly prohibited from accessing by a court order yet just admitted to doing so. She really needs to be hel continues to make unfounded claims regarding my residence.

My power has not been restored. Any insinuations to the contrary are baseless and suggest unethical actions on h message from a cell phone with a low battery and no means to charge it.

I have contacted Orange and Rockland and confirmed with Dispatcher #3 that crews are still working on the prope unresolved and I was not provided a timeframe when I will have service.

The lack of power due to large scale fire in my complex, which I witnessed, is cause for an adjournment.

Refusing to grant additional time for these matters would be unreasonable and detrimental to my ability to particip is imperative that I be allowed time to resolve these urgent issues before appearing in court.

Thank you for your consideration.

Sincerely,
Sai Malena Jimenez Fogarty

≡ M Gmail

🔍 is:sent to:(tzugibe@nycourts.gov)                                        ✕  ⇅

Compose

**Inbox**        34

Starred

Snoozed

Sent

**Drafts**        5

More

Labels

🌑  Ms. Jimenez put this issue squarely before the court and included an article about the very location. It is absurd to

Ⓢ  **Sara Beaty**
    Good evening— The judge will not respond to any of this until tomorrow. There is no need to send additional emai

Ⓜ  **M J** <katiapatriciomommy@gmail.com>
    to truglbe, Ashley, Sara, Nicole

The photograph provided by Ms. Kersting does not depict my apartment, as I reside on the top floor rather than at
individuals to photograph what they mistakenly believe to be my residence constitute both an ethical violation and
immediately.

Additionally, Ms. Kersting continues to breach the court order protecting my confidential address. Her actions indic
disseminating it to others, contrary to the court's explicit directive that my address remain confidential for my persc

I will no longer address her unfounded claims, as my correspondence was directed to the judge. Ms. Kersting's on
contravenes professional conduct standards, demonstrate a disregard for proper legal procedures and a concernii
others' time and resources. I must save the little bit of charge I have on my cell phone before it dies. Thank you ar

Ⓜ  **M J** <katiapatriciomommy@gmail.com>
    to me, bcc: b.i.

( Reply )    ( Forward )    ( ⊕ )

≡ **M** Gmail

🔍 is:sent to:(tzugibe@nycourts.gov)                    ✕ ⚏

Compose

Inbox          34     **Ashley Kersting**
Starred                Good Evening, I would object to any further adjournment of the trial. This is yet another delay tactic and truly unfortunate that Ms. Jimene
Snoozed
Sent                   **Ashley Kersting**
Drafts          5      If the court would like further documentary evidence I am happy to provide same in real time. Miller Zeiderman LLP Direct Dial: (914) 46£
More
                       **Ashley Kersting**
Labels                 From: Ashley Kersting <ak@mzw-law.com> Sent: Tuesday, September 3, 2024 7:52 PM To: M J <kaliapatriciomommy@gmail.com> Cc:

                       **M J <kaliapatriciomommy@gmail.com>**                                    Tue, Sep 3, 8:2
                       to tzugibe, Sara, Ashley, Nicole

                       Ms. Kersting's comments are not only inappropriate but also false and misleading. She is in possession of confidential information, speci
                       was expressly prohibited from accessing by a court order yet just admitted to doing so. She really needs to be held in contempt of court.
                       continues to make unfounded claims regarding my residence.

                       My power has not been restored. Any insinuations to the contrary are baseless and suggest unethical actions on her part. Furthermore, I
                       message from a cell phone with a low battery and no means to charge it.

                       I have contacted Orange and Rockland and confirmed with Dispatcher #3 that crews are still working on the property due to a gas emerg
                       unresolved and I was not provided a timeframe when I will have service.

                       The lack of power due to large scale fire in my complex, which I witnessed, is cause for an adjournment.

                       Refusing to grant additional time for these matters would be unreasonable and detrimental to my ability to participate effectively in the pr
                       is imperative that I be allowed time to resolve these urgent issues before appearing in court.

                       Thank you for your consideration.

                       Sincerely,
                       Sol Malena Jimenez Fogarty

 Gmail

M Jimenez <sunnysky155@gmail.com>

**Updated Information on Power Outage**
1 message

noreply@message-notify.com <noreply@message-notify.com>                    Tue, Sep 3, 2024 at 8:16 PM
To: messages@message-notify.com
Bcc: sunnysky155@gmail.com

        9/3/2024 8:16 PM

    Dear Valued Resident:

    We appreciate your patience, current restoration time is 10pm
    this evening. You can follow updates by checking this link:
    https://outagemap.oru.com/external/default.html

    Sincerely,

    Highlands Nanuet Management