3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

SAI MALENA JIMENEZ-FOGARTY,           Case No.:1:24-CV-08705-JLR

Plaintiff,

-against-

THOMAS FOGARTY, et al.,

Defendants.

---------------------------------------------------------X

## PLAINTIFF'S MOTION TO DISQUALIFY COLE SCHOTZ P.C. AS COUNSEL FOR DEFENDANT THOMAS FOGARTY

Plaintiff Sai Malena Jimenez-Fogarty ("Plaintiff"), appearing pro se, respectfully moves this Court to disqualify Cole Schotz P.C. ("Cole Schotz") as counsel for Defendant Thomas Fogarty ("Defendant Fogarty"), pursuant to applicable federal law and the Rules of Professional Conduct. Plaintiff states the following grounds for this motion:

### I. Conflict of Interest:

1. **Representation of Family Business:**
   - Cole Schotz represents Highbury Concrete, Inc., a family business and marital asset established April 3, 2013, three months after the Plaintiff and Defendant Fogarty were married on January 25, 2013. Additionally, at that time, Defendant Fogarty was undocumented, and Plaintiff provided the initial capital and credit necessary to start the business. Plaintiff worked at the family business from its inception until around 2018, after the couple's two children became toddlers. **(See Exhibit 1 – Evidence of Cole Schotz representation of Highbury Concrete.)**

- Defendant Fogarty explicitly did not want to hire Mr. Gardner, as he preferred hiring a candidate from Ireland. It was the Plaintiff who ultimately decided to engage Mr. Gardner after thorough research and upon receiving a recommendation from a mutual acquaintance.
- The representation of Highbury Concrete by Cole Schotz creates a substantial conflict of interest, as the same law firm also represents an entity that is a marital asset of both Plaintiff and Defendant Fogarty. Essentially, this law firm works indirectly for the Plaintiff and is paid with funds from the marital asset. This dual representation raises concerns regarding impartiality and potential bias in the legal proceedings.
- **Relevant Law and Case Law:**
    - Rule 1.7 of the ABA Model Rules of Professional Conduct prohibits representation if there is a concurrent conflict of interest.
    - **In re Harris, 152 B.R. 440 (Bankr. E.D. Pa. 1993):** The court disqualified counsel due to a conflict of interest arising from representing both personal and business interests of a party.
    - **Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384 (2d Cir. 1976):** The court emphasized the importance of avoiding conflicts of interest, especially in cases involving closely held businesses.

## II. Violation of the Advocate-Witness Rule:

2. **Anticipated Witness Testimony:**

- The Plaintiff intends to call Brian Gardner as a key witness in this case due to his direct involvement in matters pertinent to the RICO violations alleged against Defendant Fogarty. This includes Mr. Gardner's representation of Defendant Fogarty in **Cardenas v. Highbury Concrete Inc. (1:18-cv-03110) (See Exhibit 1 – Evidence of Cole Schotz representation of Highbury Concrete).**
- Defendant Fogarty allegedly made fraudulent representations regarding Highbury Concrete to the Federal Judge. Despite being fully aware of the falsehoods presented, Mr. Gardner failed to take corrective action, thereby violating his ethical duties as an officer of the court. (See additional information section IV).

- Mr. Gardner's testimony is crucial in establishing the scope of Defendant Fogarty's RICO violations, particularly regarding the fraudulent scheme orchestrated by Fogarty. It will serve to demonstrate Mr. Gardner's knowledge of, and potential complicity in, the fraudulent conduct and racketeering activities, which are central to the Plaintiff's claims of an ongoing enterprise under the RICO statute.
- **Relevant Law and Case Law:**
    - Rule 3.7 of the ABA Model Rules of Professional Conduct, known as the "advocate-witness rule," states that a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness.
    - **Murray v. Metropolitan Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009):** The Second Circuit upheld the disqualification of an attorney who was a necessary witness in the case.
    - **S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp., 69 N.Y.2d 437, 445 (1987):** The court disqualified an attorney to avoid the appearance of impropriety and potential conflict arising from dual roles as advocate and witness.

## III. Financial Misconduct and Concealment of Assets:

3. **Financial Misconduct and Concealment of Assets:**
- On November 3, 2020, one year before the separation and without the Plaintiff's knowledge, Defendant Fogarty secretly consulted with Miller Zeiderman LLP to discuss initiating divorce proceedings against his wife after he received his American citizenship. This consultation occurred despite Defendant Fogarty's prior assurances to cease his alcohol and drug abuse and his promises to change in order to preserve the marriage. His actions, however, were a direct betrayal of these commitments.
- Shortly following this meeting, Defendant Fogarty orchestrated the creation of at least ten separate business entities some with similar names, funded with assets derived from the family business, Highbury Concrete—a marital asset. These entities were intentionally registered under Defendant Fogarty's name, deliberately excluding the Plaintiff. This deliberate action was designed to conceal and shield marital assets from the Plaintiff,

effectively undermining her financial rights. **(See Exhibit 3 – Evidence of Numerous Separate Entities Including Highbury Concrete Construction LLC).**

- The involvement of Kim McEllen from Cole Schotz P.C. in facilitating these unethical and illegal actions further highlights the severity of Defendant Fogarty's financial misconduct. At one point Ms. McEllen, a paralegal at Cole Schotz P.C. was even CEO of one the entities. By aiding in the concealment of marital assets, Cole Schotz P.C. not only acted in contravention of professional ethical standards, but also engaged in conduct designed to prejudice Plaintiff's financial interests in anticipation of divorce proceedings. This coordinated effort to manipulate and conceal assets represents a serious breach of fiduciary duty and underscores the fraudulent nature of Defendant Fogarty's actions. **(See Exhibit 4 – Evidence of Kim McEllen involvement in the Entity of Highbury Concrete Construction LLC).**
- Relevant Law and Case Law:
    - Rule 3.3(a)(1) of the ABA Model Rules of Professional Conduct obligates lawyers to refrain from making false statements of material fact or law to a tribunal.
    - Rule 1.7 of the ABA Model Rules of Professional Conduct prohibits representation if there is a concurrent conflict of interest.
    - **In re Harris, 152 B.R. 440 (Bankr. E.D. Pa. 1993):** The court disqualified counsel due to a conflict of interest arising from representing both personal and business interests of a party.
    - **Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384 (2d Cir. 1976):** The court emphasized the importance of avoiding conflicts of interest, especially in cases involving closely-held businesses.
    - **Murray v. Metropolitan Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009):** The Second Circuit upheld the disqualification of an attorney who was a necessary witness in the case.
    - **S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp., 69 N.Y.2d 437, 445 (1987):** The court disqualified an attorney to avoid the appearance of impropriety and potential conflict arising from dual roles as advocate and witness.

- **Tekni-Plex, Inc. v. Meyner & Landis, 89 N.Y.2d 123, 132 (1996)**: The court highlighted the importance of protecting confidential information obtained during prior representations.
- **Bank of New York v. Berisford Int'l, 190 A.D.2d 622, 624 (N.Y. App. Div. 1st Dep't 1993)**: The court disqualified counsel due to ethical violations and the impact on the integrity of the judicial process.

## IV. Misconduct and Violation of Automatic Orders:

4. **Misconduct and Violation of Automatic Orders:**
   - **Misappropriation of Funds:** Defendant Fogarty misappropriated funds from Highbury Concrete to pay for his personal divorce legal team, Miller Zeiderman LLP, in violation of the automatic orders of the divorce case. This action was taken without Plaintiff's knowledge or court approval.
   - **Wage Theft and Misrepresentation:** Defendant Fogarty misled the Court in federal cases and class action lawsuits against him, including **Cardenas v. Highbury Concrete Inc.** He claimed a lack of financial means to pay employees while simultaneously spending $1.55 million of Highbury Concrete funds on his divorce and receiving a $6.3 million PPP loan on April 28, 2020, which was later forgiven. He failed to pay the employees and, unbeknownst to the Plaintiff, purchased a Cadillac Escalade and other high-priced items for himself.
   - **Highbury Concrete Policy:** Highbury Concrete, Inc. maintains a stringent policy that mandates any transaction exceeding $200,000 must be reviewed and approved by both the company's legal counsel and accountant. Therefore, Defendant Fogarty's withdrawal of $1.55 million from the company accounts would unequivocally require the involvement and oversight of Cole Schotz P.C.
   - **Involvement of Cole Schotz P.C.:** The participation of Cole Schotz P.C. in these actions further underscores the severity of Defendant Fogarty's misconduct. By advising and facilitating unethical and illegal activities, Cole Schotz P.C. acted in direct contravention of professional ethical standards. Their complicity in these actions, designed to prejudice Plaintiff's financial interests, highlights the necessity of their disqualification. The firm's

involvement in these matters not only compromises the integrity of the legal process but also represents a significant conflict of interest that warrants immediate disqualification.
- **Future Implications:** As this case advances, it is expected that Cole Schotz P.C. will be implicated as a co-defendant due to their involvement in multiple RICO violations.
- **Relevant Law and Case Law:**
    - Rule 3.3(a)(1) of the ABA Model Rules of Professional Conduct obligates lawyers to refrain from making false statements of material fact or law to a tribunal.
    - **In re Goldstein, 430 F.3d 106 (2d Cir. 2005):** The court emphasized the duty of honesty and the severe consequences for misleading the court.
    - **Bank of New York v. Berisford Int'l, 190 A.D.2d 622, 624 (N.Y. App. Div. 1st Dep't 1993):** The court disqualified counsel due to ethical violations and the impact on the integrity of the judicial process.

### V. Prior Consultation with Plaintiff:

5. **Prior Legal Consultation:**
- Plaintiff previously sought advice from Mr. Gardner regarding the potential divorce from Defendant Fogarty during a legal consultation while discussing concerns over Defendant Fogarty's poor investments, and the possible liability. This prior consultation creates a clear conflict of interest, as Mr. Gardner obtained confidential information from Plaintiff during these discussions.
- **Relevant Law and Case Law:**
    - Rule 1.9(a) of the ABA Model Rules of Professional Conduct prohibits representation adverse to a former client in the same or a substantially related matter.
    - **NCK Org. Ltd. v. Bregman, 542 F.2d 128, 133 (2d Cir. 1976):** The court disqualified counsel due to a conflict arising from prior consultations with the opposing party.
    - **Tekni-Plex, Inc. v. Meyner & Landis, 89 N.Y.2d 123, 132 (1996):** The court highlighted the importance of protecting confidential information obtained during prior representations.

- **United States v. Ostrer, 597 F.2d 337, 341 (2d Cir. 1979)**: The court emphasized the need to disqualify counsel to prevent any potential misuse of confidential information received during prior consultations.

**Conclusion:**

For the foregoing reasons, Plaintiff respectfully submits that the continued representation of Defendant Thomas Fogarty by Cole Schotz P.C. presents serious ethical and legal conflicts that cannot be reconciled. The firm's representation of Highbury Concrete, a marital asset, creates an undeniable conflict of interest, compromising the integrity of the legal proceedings. Moreover, the anticipated involvement of Brian Gardner as a necessary witness, coupled with Cole Schotz P.C.'s involvement in the concealment of assets and other fraudulent conduct, further exacerbates the potential for bias and prejudice against the Plaintiff.

The violations of the ABA Model Rules of Professional Conduct, including Rule 1.7 (concurrent conflict of interest), Rule 3.7 (advocate-witness rule), and Rule 3.3 (obligation to refrain from making false statements), are substantial and cannot be ignored. These violations not only undermine the Plaintiff's right to a fair trial, but also threaten the integrity of the judicial process itself.

Additionally, Defendant Fogarty should not be permitted to use marital business assets to cover his personal legal expenses, as this would represent an improper diversion of marital or business resources. Such a request contradicts established case law regarding the protection of assets in divorce proceedings. Allowing Defendant to access these assets for personal legal fees would unfairly deplete the value of the business and disadvantage Plaintiff in the ongoing proceedings. This is especially egregious given that Defendant is unlawfully withholding access to the shared assets without a court order, forcing Plaintiff to proceed pro se without legal representation and with no legal experience.

In light of these serious ethical breaches and the need to preserve the impartiality of the Court, Plaintiff respectfully requests that this Court disqualify Cole Schotz P.C. from representing Defendant Thomas Fogarty in this matter. Disqualification is not only warranted but is essential to upholding the standards of legal ethics and ensuring that this case proceeds without the taint of

conflicts, misconduct, and undue influence. I affirm this 19th day of December 2024, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

**Respectfully submitted,**

*Sai Malena Jimenez Fogarty*


**Sai Malena Jimenez Fogarty**

# Cardenas v. Highbury Concrete Inc. (1:18-cv-03110)

District Court, E.D. New York



Last Updated: Feb 4, 2022 6:13 p.m.
Assigned To: Peggy Kuo
Citation: Cardenas v Highbury Concrete Inc., 1:18-cv-03110 (E.D.N.Y.)
Date Filed: May 26, 2018
Date Terminated: Dec 19, 2019
Date of Last Known Filing: Dec 19, 2019
Cause: 29:201 Fair Labor Standards Act
Nature of Suit: 710 Labor Fair Standards
Jury Demand: None
Jurisdiction Type: Federal Question

DOCKET ENTRIES  PARTIES AND ATTORNEYS  FJC INTEGRATED DATABASE

## Defendant

**Highbury Concrete Inc.**   REPRESENTED BY   Brian Lee Gardner
(212) 752-8000
Fax: (212) 752-8393
Cole Schotz P.C.
1325 Ave. of the Americas
19th Floor
New York, NY 10019
ATTORNEY TO BE NOTICED
LEAD ATTORNEY

Jason Robert Finkelstein
(212) 752-8000
Cole Schotz P.C.
1325 Ave. of the Americas
Ste. 1900
New York, NY 10019
ATTORNEY TO BE NOTICED

**Thomas Fogarty**   REPRESENTED BY   Brian Lee Gardner
(212) 752-8000
Fax: (212) 752-8393
Cole Schotz P.C.
1325 Ave. of the Americas
19th Floor
New York, NY 10019
ATTORNEY TO BE NOTICED
LEAD ATTORNEY

Jason Robert Finkelstein
(212) 752-8000
Cole Schotz P.C.
1325 Ave. of the Americas
Ste. 1900
New York, NY 10019
ATTORNEY TO BE NOTICED

**Thomas Gorman**   REPRESENTED BY   Brian Lee Gardner
(212) 752-8000
Fax: (212) 752-8393
Cole Schotz P.C.
1325 Ave. of the Americas
19th Floor
New York, NY 10019
ATTORNEY TO BE NOTICED
LEAD ATTORNEY

Jason Robert Finkelstein
(212) 752-8000
Cole Schotz P.C.
1325 Ave. of the Americas
Ste. 1900
New York, NY 10019
ATTORNEY TO BE NOTICED

## Plaintiff

**Roman Cardenas**   REPRESENTED BY   Amit Kumar
(212) 583-7400
Fax: (212) 583-7401
Law Offices of William Cafaro
108 West 39th St.
Suite 602
New York, NY 10018
ATTORNEY TO BE NOTICED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
ALAN FABRE, CHRISTIAN VEGA, and ALDO :
JARA, on behalf of themselves and all other :
persons similarly situated, :
                                                           :         **MEMORANDUM AND ORDER**
                              Plaintiffs,                :         17-CV-984 (CBA)(PK)
                                                           :
                              -against-                  :
                                                          :
HIGHBURY CONCRETE INC., THOMAS :
GORMAN, THOMAS FOGARTY, and BENNY :
GRIFFIN, :
                                                           :
                              Defendants.    :
----------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

       Plaintiffs Alan Fabre, Cristhian Vega, Aldo Jara, Octavio Ruiz, Angel Gonzalez, Fabricio Quito, and Hugo Jimenez ("Plaintiffs") brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL") §§ 650 *et seq.*, against Defendants Highbury Concrete Inc., Thomas Gorman, Thomas Fogarty, and Benny Griffin ("Defendants"). (Compl., Dkt. 1.) Before the Court on referral from the Honorable Carol Bagley Amon is Plaintiffs' Motion for Attorneys' Fees (the "Motion"). (*See* Dkt. 53; February 13, 2018 Order.) For the reasons discussed below, the Motion is granted. Plaintiffs are awarded $25,697.50 in attorneys' fees and $646.74 in costs, for a total of $26,344.24.

## PROCEDURAL HISTORY

       Plaintiffs Alan Fabre, Cristhian Vega, and Aldo Jara filed the Complaint on February 22, 2017, alleging that Defendants failed to pay overtime wages as required by the FLSA and NYLL and to provide them with wage notices required by NYLL § 195(3). (*See* Compl. at 2.) The undersigned held an Initial Conference on May 5, 2017 and the parties began discovery. (*See* May 5, 2017 Mins., Dkt. 13.) Over the course of March to July 2017, Octavio Ruiz, Angel Gonzalez, Fabricio Quito,



and Hugo Jimenez consented to join the action as opt-in Plaintiffs. (*See* Dkts. 11, 16, 17, 21.) On July 14, 2017, Plaintiffs filed a motion for collective action certification, which the Court partially granted. (*See* Dkts. 18-20; August 23, 2017 Min. Order, Dkt. 25.)

On August 25, 2017, Defendants submitted a Rule 68 offer of judgment (the "Offer of Judgment") to Plaintiffs for $300,000.00, "inclusive of all wages, benefits, and any and all other monetary damages (including liquidated damages), or other relief of any nature whatsoever, plus reasonable attorney's fees, costs and expenses incurred by Plaintiffs' attorney, to the date of this offer . . . ." (Offer of J. at 1, Dkt. 29-1.) A footnote to this statement indicated that Defendants reserved "the right to litigate the issue of reasonable attorney's fees before this Court." (*Id.* n.1.) The Offer of Judgment specifically named Plaintiffs Alan Fabre, Cristhian Vega, Aldo Jara, Octavio Ruiz, Angel Gonzalez, Fabricio Quito, and Hugo Jimenez. (*Id.*) Those Plaintiffs accepted the Offer of Judgment on September 8, 2017. (Notice of Acceptance with Offer of J., Dkt. 29.)

After the Notice of Acceptance was filed, other plaintiffs continued to opt in to the collective action. (*See, e.g.*, Dkts. 31-33.) On October 2, 2017, Defendants indicated their intent to move to vacate the Offer of Judgment on the ground that "the reason for making this offer was . . . to resolve all claims of all Plaintiffs and opt-in Plaintiffs and to settle the case." (Defs.' Letter Mot. at 1, Dkt. 37.) Plaintiffs responded that the Offer of Judgment only resolved the claims of the Plaintiffs named therein. (*See* Pls.' Resp. at 2, Dkt. 39.) Defendants subsequently moved to enforce the Offer of Judgment as to all Plaintiffs and opt-ins, or to vacate the Notice of Acceptance. (*See* Dkt. 49.) On January 18, 2018, the Court ruled that the Offer of Judgment was "unambiguous in its terms: It is a contract between Defendants and the seven Plaintiffs listed in the Offer of Judgment – Alan Fabre, Cristhian Vega, Aldo Jara, Octavio Ruiz, Hugo Jimenez, Fabricio Quito, and Angel Gonzalez – not between Defendants and the entire class of Plaintiffs." (January 18, 2018 Min. Order.) The Court entered judgment in favor of those seven Plaintiffs and the action continued as

2

to the remaining opt-in plaintiffs. (*Id.*)

On January 31, 2018, Plaintiffs filed the Motion for Attorneys' Fees, seeking only those fees incurred on behalf of the Plaintiffs named in the Offer of Judgment. (*See* Dkts. 53-55; Stein Decl. ¶ 12, Dkt. 54.) The Honorable Carol Bagley Amon referred the Motion to the undersigned. (February 13, 2018 Order.)

Defendants subsequently filed a motion to substitute counsel, which the Court granted on February 12, 2018. (*See* Notice of Consent to Change Attorney, Dkt. 57; February 12, 2018 Order.)

## DISCUSSION

### I. Attorneys' Fees

#### A. *Post-Offer Attorneys' Fees*

Defendants partially oppose the Motion for Attorneys' Fees. (Defs.' Opp'n Mem., Dkt. 65.) Although Defendants do not object to the reasonableness of the requested fees, they argue that Plaintiffs are only entitled to fees up to their acceptance of the Offer of Judgment on September 8, 2017. They contend that any post-offer fees incurred in opposing Defendants' motion to vacate are "outside the terms of the 'deal' and therefore should not be enforced against Defendants." (*Id.* at 3.) Defendants also assert that if fees are granted beyond the date of the offer, their prior counsel, rather than Defendants themselves, are liable for such fees, because the motion to vacate was "triggered by nothing other than Defendants' former attorneys attempting to cover-up and cure their own drafting errors" in the Offer of Judgment. (*Id.* at 5.) Defendants reserve "all rights to pursue a potential professional malpractice claim against prior counsel." (*Id.* at 2.)

Plaintiffs concede that the Offer of Judgment references attorneys' fees "to the date of [the] offer," but maintain that they are entitled to the fees "necessarily incurred" to enforce the Offer of Judgment. (Pls.' Reply Mem. at 3, Dkt. 67.) Plaintiffs analogize these fees to "'fees-on-fees' – fees incurred in preparing a fee application after an offer of judgment is accepted." (*Id.*) Since attorneys'

acts are binding on their clients, Plaintiffs suggest that Defendants could separately seek reimbursement of the post-offer fees from their former counsel rather than contest payment on this Motion. (*Id.* at 5-6.)

The underlying purpose of Rule 68 is "to encourage settlement and avoid litigation" by prompting the parties to balance the costs of litigation against their likelihood of success on the merits. *Marek v. Chesny*, 473 U.S. 1, 5 (1985). The risk-shifting provision under Rule 68(d) exemplifies this purpose, requiring a plaintiff who declines an offer of judgment and ultimately receives a less favorable judgment to pay the costs incurred after the offer. *See* Fed. R. Civ. P. 68(d). Similar to other settlement agreements, Rule 68 offers of judgment "are construed according to ordinary contract principles." *Goodheart Clothing Co., Inc. v. Laura Goodman Enter., Inc.*, 962 F.2d 268, 272 (2d Cir. 1992).

The fees Plaintiffs seek here are not fees-on-fees; rather, they seek fees incurred in enforcing the Offer of Judgment. The agreement is silent as to such fees, simply providing that after Plaintiffs' acceptance, "any party may file the Offer of Judgment" with the Court, and "the Court is authorized to enter judgment in accordance therewith." (Offer of J. at 2.) Plaintiffs complied with this provision. Defendants continued the litigation by filing their motion to vacate. Plaintiffs did not choose to incur these unanticipated expenses—Defendants obligated them to do so. Therefore, as a matter of equity, Plaintiffs are entitled to the fees incurred to defend against Defendants' post-offer challenge.

Defendants present no support for the alternative argument that their prior counsel must pay Plaintiffs' post-offer fees. The Second Circuit has "consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court, or his inability to efficiently manage his caseload." *U.S. v. Cirami*, 535 F.2d 736, 739 (2d Cir. 1976) (collecting cases). Having

selected prior counsel as their representative, Defendants "cannot now avoid the consequences of the acts or omissions of this freely selected agent" in contravention of "our system of representative litigation, in which each party is deemed bound the by the acts of his lawyer-agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962). While Defendants reserve their right to pursue a malpractice claim, that matter is not before the Court.

Accordingly, Plaintiffs are entitled to reasonable attorneys' fees and costs incurred up to January 18, 2018, the date of the Court's denial of Defendants' motion to vacate.

  B. *Reasonable Attorneys' Fees*

Plaintiffs have supplied contemporaneous timesheets and a summary of counsel's qualifications. (Stein Decl.; *id.* Ex. A, Dkt. 54-1; *id.* Ex. B, Dkt. 54-2.) As noted above, Defendants do not challenge the reasonableness of the requested fees. (*See* Defs.' Opp'n Mem. at 3.) Nevertheless, the Court must review the fees for reasonableness. *See Riley v. City of New York*, No. 10-CV-2513 (MKB), 2015 WL 9592518, at *1 (E.D.N.Y. Dec. 31, 2015).

The lodestar, "the product of a reasonable hourly rate and the reasonable number of hours required by the case," is "a presumptively reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Scharff v. Cty. of Nassau*, No. 10-CV-4208 (DRH)(GRB), 2016 WL 3166848, at *3 (E.D.N.Y. May 20, 2016), *R&R adopted*, 2016 WL 3172798 (E.D.N.Y. June 6, 2016). To calculate the lodestar, the Court exercises "broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006). The party applying for fees must provide contemporaneous timesheets to document counsel's work, and must support the hourly rates it claims with evidence of counsel's expertise and prevailing market rates. *Riley*, 2015 WL 9592518, at *1.

   i. *Hourly Rate*

To determine a reasonable hourly rate, the district court considers "rates prevailing in the

community for similar services by lawyers of reasonably comparable skill, expertise and reputation." *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994). The "community" is generally the district in which the reviewing court sits. *Scharff*, 2016 WL 3166848, at *4. A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The district court must "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* (emphasis in the original). Those factors include "the attorney's experience and expertise, the novelty and complexity of the issues presented, and the overall success achieved in the case." *Brady*, 455 F. Supp. 2d at 204; *see also Chen v. Cty. of Suffolk*, 927 F. Supp. 2d 58, 71 (E.D.N.Y. 2013). In recent years, courts in this District have awarded hourly rates of $300 to $450 for partners and $100 to $325 for associates. *See, e.g., John v. Demaio*, No. 15-CV-6094 (NGG)(CLP), 2016 WL 7410656, at *1-2 (E.D.N.Y. Dec. 22, 2016); *Finkel v. Athena Light & Power, LLC*, No. 14-CV-3585 (DLI)(PK), 2016 WL 4742279, at *10 (E.D.N.Y. Sept. 11, 2016).

Plaintiffs were represented in this action by partner David Stein and senior associate David Nieporent. (Stein Decl. ¶¶ 1, 7.) Stein, who requests an hourly rate of $375, is a founding partner of Samuel & Stein, a New York firm that specializes in wage-and-hour litigation. (*Id.* ¶¶ 14, 16.) He has practiced law since 1990, and has focused almost exclusively on FLSA and NYLL lawsuits, including federal wage-and-hour collective and class actions, since 2008. (*Id.* ¶ 14.) His hourly rate falls within the range for partners in this District and is reasonable in light of his experience and expertise. Stein appropriately billed at a reduced rate for travel time and tasks that did not require "the expertise of a partner." (*Id.* ¶ 11; *id.* Ex. A at 3, 12.) In addition, for the purpose of this application, he "no-charged" time spent on the claims of opt-in plaintiffs who were not included in

6

the Offer of Judgment. (Stein Decl. ¶ 12; *id.* Ex. A.)

Nieporent requests an hourly rate of $325. (Stein Decl. ¶ 16.) He has practiced law since 2001, focusing on wage-and-hour litigation since 2008, and has second-chaired several trials in federal court. (*Id.* ¶ 15.) His requested hourly rate falls within the range for senior associates in this District and is reasonable given his experience and the level of complexity of this case.

        *ii.*    *Hours Billed*

"[T]he district court should exclude excessive, redundant or otherwise unnecessary hours . . . ." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). "[T]he Court's goal is to conduct a meaningful review of the hours claimed" by each attorney. *Riley*, 2015 WL 9592518, at *3. Here, Plaintiffs' contemporaneous time records show a reasonable amount of time expended on each task, for a total of 78 hours. (Stein Decl. Ex. A.) Counsel did not bill for administrative tasks or engage in "block billing." The time entries do not overlap or otherwise suggest redundancy. The Court finds the hours billed to be reasonable.

Accordingly, the Court awards **$25,697.50 in attorneys' fees.**

## II.   Costs

Plaintiffs also seek $646.74 in costs, for the filing fee in this District ($400.00), service of process ($166.00), travel ($22.00), and the transcript of the pre-motion conference ($58.74). Counsel has provided adequate supporting documentation. (Stein Decl. ¶ 19; *id.* Ex. B.)

Accordingly, the Court awards **$646.74 in costs.**

## CONCLUSION

Based on the foregoing, Plaintiffs' fee application is granted. Plaintiffs are awarded $26,344.24 in attorneys' fees and costs.

Dated: Brooklyn, New York
       May 24, 2018

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge