**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

.................................................................

SAI MALENA JIMENEZ-FOGARTY,

             Plaintiff,

    -against-

THOMAS FOGARTY, LISA ZEIDERMAN, ASHLEY KERSTING, NICOLE DIGIACOMO, JUDGE SHERRI EISENPRESS, JUDGE THOMAS ZUGIBE, and LAURA MARINO,

             Defendants.

.................................................................

No. 1:24-cv-08705 (JLR) (GWG)

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY COLE SCHOTZ P.C. AS COUNSEL TO DEFENDANT FOGARTY**

---

**COLE SCHOTZ P.C.**
Brian L. Gardner, Esq.
Courtney G. Hindin, Esq.
*Attorneys for Defendant Thomas Fogarty*
1325 Avenue of the Americas
19th Floor
New York, New York 10019
(212) 752-8000

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF RELEVANT FACTS .......................................................................2

      A.    The Underlying Matrimonial Action and Plaintiff's RICO
              Claims in the Current Action ...................................................................2

      B.    Plaintiff's Motion for Disqualification of Cole Schotz as
              Counsel to Mr. Fogarty in this Action .......................................................4

LEGAL ARGUMENT...................................................................................................8

   I.    APPLICABLE LEGAL STANDARDS ...............................................8

   II.    DISQUALIFICATION IS NOT WARRANTED BASED ON
          ALLEGED CONCURRENT OR SUCCESSIVE CONFLICTS OF
          INTEREST...........................................................................................9

      A.    No Concurrent Conflict of Interest Exists .................................................10

      B.    No Successive Conflict of Interest Exists ...................................................12

         1.    Plaintiff is not a former client of Cole Schotz    12

         2.    The prior alleged "legal consultation" is not substantially related to
               the issues in this action    17

         3.    Neither Cole Schotz nor Mr. Gardner had access to any relevant
               privileged and confidential information in the course of alleged
               prior consultation    19

   III.    DISQUALIFICATION IS NOT WARRANTED BASED ON THE
          ADVOCATE-WITNESS RULE ..........................................................20

      A.    Mr. Gardner's Testimony Is Not "Necessary" to Plaintiff's
              Case......................................................................................................21

      B.    Plaintiff Does Not Even Attempt to Demonstrate that Mr.
              Gardner's Anticipated Testimony Is Likely to Substantially
              Prejudice Mr. Fogarty, Nor Could She .....................................................24

      C.    Plaintiff's Request for Disqualification Based on the
              Advocate-Witness Rule Should Not Extend to the Entire
              Firm and Is Premature in any Event .........................................................25

IV.   PLAINTIFF'S ALLEGATIONS OF OTHER MISCONDUCT BY
      COLE SCHOTZ ARE ENTIRELY UNFOUNDED AND DO
      NOT WARRANT DISQUALIFICATION..........................................................27

      A.   Cole Schotz Did Not Assist with any Alleged "Financial
           Misconduct" or "Concealment of Assets" ..................................................28

      B.   Cole Schotz Did Not Assist with any Alleged "Misconduct
           and Violation of Automatic Orders" in the Matrimonial
           Action......................................................................................................30

V.    PLAINTIFF'S FRIVOLOUS MOTION FOR
      DISQUALIFICATION WAS PLAINLY INTENDED TO
      HARASS MR. FOGARTY AND HIS COUNSEL ..............................................31

CONCLUSION.....................................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Vill. of Keesville,*
  2008 WL 3413867 (N.D.N.Y. Aug. 8, 2008) ........................................................13

*Allegaert v. Perot,*
  565 F.2d 246 (2d Cir. 1977) .................................................................................19

*Arista Records LLC v. Lime Grp. LLC,*
  2011 WL 672254 (S.D.N.Y. Feb. 22, 2011) ...........................................................8

*Bd. of Educ. v. Nyquist,*
  590 F.2d 1241 (2d Cir. 1979) ............................................................................8, 9

*Bobal v. Rensselaer Polytechnic Inst.,*
  916 F.2d 759 (2d Cir. 1990) ..................................................................................8

*Calamar Enters., Inc. v. Blue Forest Land Grp., LLC,*
  222 F.Supp.3d 257 (W.D.N.Y. 2016) ...................................................................17

*Catizone v. Wolff,*
  71 F.Supp.2d 365 (S.D.N.Y. 1999) ......................................................................17

*Conigliaro v. Horace Mann School,*
  1997 WL 189058 (S.D.N.Y. Apr. 17, 1997) .........................................................26

*Corrado v. N.Y. State Unified Court Sys.,*
  2014 WL 119407 (E.D.N.Y. Jan. 10, 2014) .........................................................26

*Cresswell v. Sullivan & Cromwell,*
  922 F.2d 60 (2d Cir. 1990) ..................................................................................27

*Decker v. Nagel Rice LLC,*
  716 F.Supp.2d 228 (S.D.N.Y. 2010) ......................................................................8

*Dolenec v. Pressler & Pressler L.L.P.,*
  2014 WL 6632942 (S.D.N.Y. Nov. 24, 2014) ......................................................21

*Donatello v. Cnty. of Niagara,*
  2015 WL 8328845 (W.D.N.Y. Dec. 7, 2015) ........................................................27

*Ello v. Singh,*
  2006 WL 2270871 (S.D.N.Y. Aug. 7, 2006) ........................................................14

*Evans v. Artek Sys. Corp.*,
  715 F.2d 788 (2d Cir. 1983)..................................................................................*passim*

*Exact Invs. LLC v. Vesnaverboth*,
  2022 WL 17782087 (E.D.N.Y. July 18, 2022) .......................................................17

*Fenn & Fenn, Inc. v. MacQueen*,
  1989 WL 58041 (S.D.N.Y. May 19, 1989) ........................................................11, 21

*Finkel v. Frattarelli Bros., Inc.*,
  740 F.Supp.2d 368 (E.D.N.Y. 2010) ...............................................................22, 25

*First Hawaiian Bank v. Russell & Volkening, Inc.*,
  861 F.Supp. 233 (S.D.N.Y. 1994) ...................................................................13, 14

*Frontline Commc'ns Intern. v. Sprint*,
  232 F.Supp.2d 281 (S.D.N.Y. 2002)......................................................................28

*GateGuard, Inc. v. Goldmont Realty Corp.*,
  641 F.Supp.3d 66 (S.D.N.Y. 2022) ........................................................22, 23, 31

*Obeid ex rel. Gemini Real Est. Advisors v. La Mack*,
  2015 WL 7180735 (S.D.N.Y. Nov. 9, 2015) ..........................................................18

*Gershon v. Lurie*,
  2013 WL 12495071 (E.D.N.Y. Dec. 9, 2013) ........................................................26

*Glueck v. Jonathan Logan, Inc.*,
  653 F.2d 746 (2d Cir.1981)......................................................................................9

*Goodwine v. City of New York*,
  2016 WL 379761 (S.D.N.Y. Jan. 29, 2016) .............................................................9

*Gov't of India v. Cook Indus., Inc.*,
  569 F.2d 737 (2d Cir. 1978).....................................................................................18

*GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*,
  644 F.Supp.2d 333 (S.D.N.Y. 2009), *aff'd in part*, 618 F.3d 204 (2d Cir.
  2010) ...................................................................................................................9, 27

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005).................................................................................*passim*

*Intelli-Check, Inc. v. TriCom Card Techs., Inc.*,
  2005 WL 3533153 (E.D.N.Y. Dec. 22, 2005) ........................................................29

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
  126 F.Supp.3d 413 (S.D.N.Y. 2015).................................................................21, 22

*Kubin v. Miller*,
   801 F.Supp. 1101 (S.D.N.Y. 1992) ................................................................14, 15

*Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*,
   542 F.Supp.2d 296 (S.D.N.Y. 2008)................................................................13, 16

*Murray v. Metro. Life Ins. Co.*,
   583 F.3d 173 (2d Cir. 2009)............................................................... *passim*

*Paramount Commc'ns, Inc. v. Donaghy*,
   858 F.Supp. 391 (S.D.N.Y. 1994) ....................................................................24

*Parkins v. St. John*,
   2004 WL 1620897 (S.D.N.Y. July 19, 2004) ............................................. *passim*

*Purgess v. Sharrock*,
   33 F.3d 134 (2d Cir. 1994)..............................................................................8, 21

*Ramey v. Dist. 141, Int'l Ass'n. of Machinists & Aerospace Workers*,
   378 F.3d 269 (2d Cir. 2004)................................................................................26

*Ritchie v. Gano*,
   2008 WL 4178152 (S.D.N.Y. Sept. 8, 2008)......................................................15

*S & S Hotel Ventures Ltd. P'ship v. 777 S. H. Corp.*,
   69 N.Y.2d 437 (1987) ........................................................................................24

*Sea Tow Int'l, Inc. v. Pontin*,
   2007 WL 4180679 (E.D.N.Y. Nov. 19, 2007)....................................................32

*Wachovia Bank, Nat'l Ass'n v. Focus Kyle Grp., LLC*,
   896 F.Supp.2d 330 (S.D.N.Y. 2012)..................................................................21

**Statutes**

18 U.S.C. §§ 1961-1968 ........................................................................................3

**Other Authorities**

N.Y. Rules of Prof. Con., Rule 1.7 ......................................................................10

N.Y. Rules of Prof. Con., Rule 1.13(a).................................................................11

N.Y. Rules of Prof. Con., Rule 1.9 ......................................................................12

N.Y. Rules of Prof. Con., Rule 3.7 ..................................................................20, 26

Defendant Thomas Fogarty respectfully submits this memorandum of law in opposition to the motion to disqualify Cole Schotz P.C. ("Cole Schotz") as counsel filed by Plaintiff Sai Malena Jimenez-Fogarty ("Plaintiff") (ECF Doc. No. 37).

## PRELIMINARY STATEMENT

Plaintiff's frivolous motion to disqualify Cole Schotz is the latest tactic in her retaliatory harassment campaign against her estranged husband, Thomas Fogarty ("Mr. Fogarty"). That campaign intensified when Plaintiff commenced this action, which is a transparent attempt to relitigate decisions in her pending matrimonial action under the guise of a RICO claim arising out of alleged wrongdoing by Mr. Fogarty, his divorce attorneys, and the family court judges presiding over the matrimonial action. Plaintiff contends that the alleged RICO violations have caused her financial harm and deprived her of her rights without due process.

Although Plaintiff advances a variety of arguments in her motion in an attempt to "see what sticks," she ultimately fails to carry her heavy burden of proving that disqualification is warranted based on any of her specious theories. First, Plaintiff's efforts to establish that Cole Schotz's representation of Mr. Fogarty in this matter presents irreconcilable conflicts of interest utterly fail for several reasons. Plaintiff cannot prove that she ever personally consulted with or was represented by Cole Schotz because those things did not happen, and her claim that they did is an outright fabrication. Moreover, Plaintiff's attempt to establish that Cole Schotz somehow represented her vicariously through its representation of corporate client, Highbury Concrete, Inc., simply because Mr. Fogarty is a part owner of that business (along with two other unrelated individuals) is both legally and factually baseless. Second, Plaintiff's purely speculative contention that Mr. Gardner is a necessary and "key" trial witness in this action does not and cannot justify disqualifying him, much less disqualifying Cole Schotz as a whole. Plaintiff fails to even articulate what specific relevant testimony she would seek to elicit from Mr. Gardner, let alone

that his testimony would be necessary to her case, admissible, unavailable from other witnesses, and likely to substantially prejudice Mr. Fogarty. Accordingly, Plaintiff does not and cannot make the requisite showing for disqualification based on the advocate-witness rule. In fact, separating Mr. Fogarty from his chosen counsel of over a decade, which counsel has already begun investigating and strategizing Mr. Fogarty's defense in this action, would pose a far greater risk of prejudice and harm to his interests than any testimony Mr. Gardner could possibly give. In any event, disqualification based on the advocate-witness rule is clearly premature at this early stage of the litigation (which may very well be dismissed on the pleadings and not proceed to trial at all). Mr. Gardner's continued representation of Mr. Fogarty in pre-trial matters, with other Cole Schotz attorneys available to act as lead trial counsel should the Court find any need for Mr. Gardner's testimony, plainly does not run afoul of the principles underlying the advocate-witness rule. Third, and finally, Plaintiff's defamatory allegations that Cole Schotz has "participated in" or "facilitated" alleged fraudulent conduct, illegal activity, and/or ethical violations, are unsupported by any specific facts, let alone evidence sufficient to meet the "high standard of proof" the Second Circuit requires before it will disqualify a litigant's attorney. The utter lack of proof is unsurprising, of course, as those allegations are blatantly false and beyond the pale.

For these reasons, as well as those detailed below, Plaintiff's baseless motion for disqualification should be denied in its entirety.

## STATEMENT OF RELEVANT FACTS

### A.    The Underlying Matrimonial Action and Plaintiff's RICO Claims in the Current Action

Mr. Fogarty filed an action for divorce from Plaintiff on September 28, 2021, in the Supreme Court of the State of New York, Rockland County, which is styled, *Thomas Fogarty v. Sai Malena Jimenez-Fogarty*, Index No. 035547/2021 (the "Matrimonial Action"). (*See* Plaintiff's

Amended Complaint ("Am. Compl."), ECF Doc. No. 44, ¶ 81).  The Matrimonial Action is currently ongoing.  (*Id.*, ¶ 183).  Mr. Fogarty is represented in the Matrimonial Action by his co-defendants in this case, Lisa Zeiderman and Ashley Kersting of Miller Zeiderman LLP (together, the "Zeiderman Defendants").  (*Id.*, ¶¶ 7-8, 20).

Another co-defendant in this case, Justice Thomas Zugibe ("Judge Zugibe"), is currently presiding over the Matrimonial Action.  (*Id.*, ¶ 11).  On or about May 17, 2022, the court in the Matrimonial Action awarded temporary custody of Plaintiff's and Mr. Fogarty's minor children to Mr. Fogarty, with Plaintiff to have supervised visitation.  (*Id.*, ¶ 96).  After bifurcating the custody portion of the Matrimonial Action from the financial matters, Judge Zugibe concluded the custody portion of the trial on or about September 6, 2024.  (*Id.*, ¶¶ 101, 134).  Judge Zugibe's final decision on custody of the children remains pending.

On November 15, 2024, Plaintiff commenced this action by filing an "Emergency Verified Complaint" purporting to allege violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act under 18 U.S.C. §§ 1961-1968, which Plaintiff claims were carried out in the underlying Matrimonial Action.  (*See* ECF Doc. No. 1).  Plaintiff subsequently filed an Amended Complaint on January 17, 2025 asserting the same RICO claims.  (*See* ECF Doc. No. 44).  The Amended Complaint accuses Defendants – which include Mr. Fogarty, his current romantic partner, the Zeiderman Defendants, the current and former presiding justices in the Matrimonial Action (Judge Zugibe and Justice Sherri Eisenpress, respectively), and Nicole DiGiacomo, the court-appointed attorney for the parties' two minor children in the Matrimonial Action – of all orchestrating an unlawful "'Cash for Kids' enterprise."  (*See generally* Am. Compl.).  Plaintiff claims that the alleged enterprise, "operating within the Rockland County Court system," engaged in various concerted fraudulent and illegal activities in the course of the Matrimonial Action that

purportedly resulted in "Plaintiff losing temporary custody of her children and block[ing] her from her multimillion-dollar assets" without due process. (*Id.*, ¶¶ 1-2, 4). More specifically, Plaintiff claims that in the course of the Matrimonial Action, Mr. Fogarty improperly used alleged marital assets to "fund his legal battles" and compensate the Zeiderman Defendants and obstructed Plaintiff's "access to her own funds," all while Judge Zugibe supposedly refused to enforce the family court's automatic orders and "denied [Plaintiff] access to marital assets." (*Id.*, ¶¶ 2, 125, 136, 147). Plaintiff contends that the alleged enterprise purportedly took such actions "to exploit Plaintiff and her children for financial gain." (*Id.*, ¶ 2).

Although the Matrimonial Action is ongoing and Judge Zugibe has not yet issued a final decision following the custody portion of the trial, Plaintiff requests that this Court "invalidate" orders issued in the Matrimonial Action, "immediately restor[e] Plaintiff's primary custody of her children," and enjoin Defendants from interfering with her "custodial rights and access to her children." (*Id.*, ¶¶ 258, 286, 293). Plaintiff further asks this Court to declare a mistrial in the Matrimonial Action and change the venue of same from the Supreme Court of the State of New York, Rockland County to the Manhattan Supreme Court. (*Id.*, ¶¶ 260, 295, 297). Finally, Plaintiff purportedly seeks a "preliminary and permanent injunction freezing the assets of Defendants Fogarty, Kersting, Zeiderman, DiGiacomo, Marino, Eisenpress, and Zugibe, including all bank accounts, real estate holdings, business assets (including Highbury Concrete, Inc. and its subsidiaries), and any other property in which they have a direct or indirect interest." (*Id.*, ¶ 256).

### B.    Plaintiff's Motion for Disqualification of Cole Schotz as Counsel to Mr. Fogarty in this Action

Shortly before filing her Amended Complaint in this action, on December 19, 2024, Plaintiff filed a motion to disqualify Cole Schotz as counsel to Mr. Fogarty. (*See* Plaintiff's Motion, ECF Doc. No. 34 ("Mot.")). Plaintiff's motion alleges that disqualification is warranted

due to purported successive and concurrent conflicts of interest, her stated need to call Cole Schotz partner, Brian Gardner, Esq., as a fact witness at trial, and various other alleged "misconduct" in which she brazenly claims Cole Schotz participated in violation of the Rules of Professional Conduct. (*Id.*)

Each of Plaintiff's arguments for disqualification arises from Cole Schotz's representation of the construction business in which Mr. Fogarty is a part owner, Highbury Concrete, Inc. ("Highbury"), in various legal matters unrelated to this case. (*Id.*) Highbury is a longtime client of Cole Schotz, and has been represented by Cole Schotz, and Mr. Gardner in particular, for almost a decade. (*See* Declaration of Brian L. Gardner, Esq., in Opposition to Plaintiff's Mot. ("Gardner Decl."), ¶ 4). Mr. Gardner is a commercial litigator and construction services lawyer with extensive experience litigating complex civil, environmental, and white-collar construction criminal matters (having been a former local and federal prosecutor). (*Id.*, ¶ 2). Mr. Gardner is not, and has never been, a matrimonial or family law attorney. (*Id.*, ¶ 3). Over the course of his multi-year representation of Highbury, Mr. Gardner (together with his colleagues at Cole Schotz) has advised Highbury's principals, including Mr. Fogarty and two other individuals who are not parties to this action, on all aspects of the company's business and handled many disputes involving the company, including defending Highbury in certain employee litigation. (*Id.*, ¶ 4).

While at some point during his representation of Highbury, Mr. Gardner became aware that Mr. Fogarty was married, he has never met or spoken with Plaintiff and did not even know her name until he was advised by Mr. Fogarty of the pending Matrimonial Action.[1] (*Id.*, ¶ 6). Mr.

---

[1] On May 9, 2024, Cole Schotz, via Mr. Gardner, sent a letter to Plaintiff's then-counsel in the Matrimonial Action regarding Plaintiff's improper public disclosure of Highbury's confidential financial information in express contravention of a confidentiality agreement entered into in the Matrimonial Action. In response to that letter, neither Plaintiff's former counsel nor (continued...)

5

Fogarty, along with Highbury's two other principals, have always been Mr. Gardner's primary points of contact in connection with his representation of Highbury. (*Id.*, ¶ 5). Mr. Gardner certainly has never represented Plaintiff individually or provided her with any personal legal advice, whether formally or informally. (*Id.*, ¶ 8). Indeed, until this action was filed, Mr. Gardner was unaware of when Plaintiff and Mr. Fogarty married, or of Plaintiff's now claimed involvement in Highbury (*e.g.*, allegedly providing the initial funding for Highbury and/or participating in choice of counsel for Highbury). (*Id.*, ¶¶ 6, 10). It is further undisputed that neither Cole Schotz nor Mr. Gardner have ever entered into any engagement agreement or fee arrangement with Plaintiff individually, nor has Plaintiff ever paid Cole Schotz or Mr. Gardner a fee for legal services. (*Id.*, ¶ 8). Although Plaintiff claims she once sought legal advice from Mr. Gardner regarding a "potential divorce" from Mr. Fogarty during a "legal consultation" concerning Mr. Fogarty's "poor investments" (Mot. at 6), she does not provide any further detail regarding that alleged meeting (*e.g.*, the approximate date or manner of contact), and Mr. Gardner has no recollection whatsoever of same (*see* Gardner Decl., ¶ 8). Mr. Gardner is also absolutely certain that if he *was* approached by Plaintiff for such a consultation, he would have declined it for numerous reasons, including because matrimonial law is well outside his areas of expertise. (*Id.*). Further, it is undisputed that neither Mr. Gardner nor any other attorney at Cole Schotz represents Mr. Fogarty in the underlying Matrimonial Action. (*Id.*, ¶ 9).

Moreover, contrary to Plaintiff's speculative and conclusory allegations in the motion and Amended Complaint, Mr. Gardner did not commit or aid any misconduct or illegal activity in the course of his longstanding representation of Highbury. (*Id.*, ¶ 11). In 2021, Cole Schotz assisted

---

Plaintiff raised any of the items now claimed regarding an alleged prior "consultation" with Mr. Gardner or Plaintiff's alleged role in Highbury. (*See* Gardner Decl., ¶ 10).

6

Highbury with certain corporate reorganization transactions and the creation of additional Highbury-affiliated entities to fill various roles for the company. That work was performed for typical commercial purposes, as Cole Schotz has done for countless other similarly situated corporate clients. (*Id.*, ¶ 12). Notably, following those transactions, Highbury has continued to operate in the same capacity as it did before. (*Id.*). Plaintiff's allegations that the transactions were carried out by Mr. Fogarty and Mr. Gardner as some kind of "concerted effort to conceal assets and defraud Plaintiff" in "anticipation of Defendant Fogarty filing for divorce" (*see* Am. Compl., ¶¶ 75, 148) are absurd and, of course, unsupported by any specific facts or evidence. Indeed, the point of contact for the above-described corporate work was not even Mr. Fogarty individually, but the Highbury ownership as a whole. (Gardner Decl., ¶ 12).

Mr. Gardner also did not engage in any wrongdoing in his representation of Highbury, Mr. Fogarty, and Highbury's co-owner, Thomas Gorman, in litigation brought by Highbury employees alleging wage and hour violations, including the only specific case Plaintiff mentions, *Cardenas v. Highbury Concrete, Inc., et al.*, No. 1:18-cv-03110-PK (E.D.N.Y.) ("*Cardenas*") (*see* Mot. at 2-3, 5). (*See* Gardner Decl., ¶ 14). Notably, *Cardenas* was settled in November 2019, and in December 2019, the settlement was approved by the Honorable Peggy Kuo, U.S.M.J. as "fair and reasonable" pursuant to the standard set forth in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2016). (*Id.*). Plaintiff contends, in purely conclusory fashion, that Mr. Fogarty allegedly made fraudulent representations regarding Highbury to the court in *Cardenas*, and Mr. Gardner "failed to take corrective action, thereby violating his ethical duties as an officer of the court." (*See* Mot. at 2-3). Those speculative and conclusory allegations are patently false, and Mr. Gardner has absolutely no knowledge of *any* misrepresentations made by Mr. Fogarty (or Highbury), whether in *Cardenas* or in any other litigation. (Gardner Decl., ¶ 15).

**LEGAL ARGUMENT**

**I.    APPLICABLE LEGAL STANDARDS**

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted).  Although it is "a matter committed to the sound discretion of the district court," *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994), the Second Circuit has observed that "disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly; (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation," *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764-65 (2d Cir. 1990) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

Indeed, in the Second Circuit such motions are "viewed with disfavor" and, while "any doubts are to be resolved in favor of disqualification, ***the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary***." *Decker v. Nagel Rice LLC*, 716 F.Supp.2d 228, 231-32 (S.D.N.Y. 2010) (emphasis added); *see also Arista Records LLC v. Lime Grp. LLC*, 2011 WL 672254, at *4 (S.D.N.Y. Feb. 22, 2011) ("District courts have broad discretion to disqualify attorneys, but it is a drastic measure that is viewed with disfavor in this Circuit.") (quotation marks and citation omitted).  The Second Circuit has expressly cautioned that "courts must guard against the tactical use of motions to disqualify counsel, . . . particularly motions under the witness-advocate rule," by subjecting them "to fairly strict scrutiny." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (quotation marks and citation omitted).

"In deciding whether counsel should be disqualified, a court may consult the disciplinary rules of the American Bar Association and New York State, but those rules are not binding

authority." *Goodwine v. City of New York*, 2016 WL 379761, at *2 (S.D.N.Y. Jan. 29, 2016)

(citing *Hempstead Video*, 409 F.3d at 132 ("[N]ot every violation of a disciplinary rule will

necessarily lead to disqualification."); *Falk v. Gallo*, 901 N.Y.S.2d 99, 100 (2d Dep't 2010)).

Instead, disqualification is only warranted where an attorney's involvement "poses a significant

risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981); *accord GSI

Com. Sols., Inc. v. BabyCenter, L.L.C.*, 644 F.Supp.2d 333, 336 (S.D.N.Y. 2009), *aff'd in part*,

618 F.3d 204 (2d Cir. 2010); *Nyquist*, 590 F.2d at 1247 ("[W]hen there is no claim that the trial

will be tainted, appearance of impropriety is simply too slender a reed on which to rest a

disqualification order except in the rarest cases.").

For the reasons discussed herein, Plaintiff utterly fails to meet her heavy burden of

establishing that Cole Schotz should be disqualified as counsel to Mr. Fogarty in this matter.

## II.   DISQUALIFICATION IS NOT WARRANTED BASED ON ALLEGED CONCURRENT OR SUCCESSIVE CONFLICTS OF INTEREST

The Second Circuit applies different standards to motions for disqualification based on

conflicts of interest depending on whether the conflicting representations are alleged to be

concurrent or successive. *See Hempstead Video*, 409 F.3d at 133. "In cases of concurrent

representation, we have ruled it is 'prima facie improper' for an attorney to simultaneously

represent a client and another party with interests directly adverse to that client. The attorney

'must be prepared to show, at the very least, that there will be no actual or apparent conflict in

loyalties or diminution in the vigor of his representation.'" *Id.* (quoting *Cinema 5, Ltd. v.

Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)). "In cases of successive representation, we

have held that an attorney may be disqualified if: (1) the moving party is a former client of the

adverse party's counsel; (2) there is a substantial relationship between the subject matter of the

counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the

attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Id.* (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).

Applying these standards here, Plaintiff's attempts to establish the existence of both concurrent and successive conflicts of interest supporting disqualification are clearly unavailing.

### A.    No Concurrent Conflict of Interest Exists

As her first purported basis for disqualification, Plaintiff apparently contends that Cole Schotz has a concurrent conflict of interest in its representation of Mr. Fogarty against Plaintiff in this action because it simultaneously represents Highbury (an alleged "marital asset") in other matters. (*See* Mot. at 1-2). Contrary to Cole Schotz's understanding of Highbury's ownership and business structure as the company's longtime counsel, Plaintiff claims that she is a part owner and former employee of Highbury, as well as that Highbury is an alleged "marital asset." (*Id.*) As a result, she contends that Highbury's status as a current client of Cole Schotz should be imputed to her, making her a current client of Cole Schotz as well. (*See, e.g., id.* at 2 (alleging that, due to its representation of Highbury, which is "a marital asset of both Plaintiff and Defendant Fogarty," Cole Schotz "works indirectly for the Plaintiff and is paid with funds from the marital assets")). Based on this preposterous theory, Plaintiff claims that pursuant to Rule 1.7 of the ABA Model Rules of Professional Conduct (the "Model Rules")[2], Cole Schotz cannot represent her adversary, Mr. Fogarty, in this action. (*Id.*)

The Second Circuit has held that when a corporation engages counsel, the "client" in that attorney-client relationship is the corporate entity itself and not any of its individual constituents.

---

[2] The state-specific analogue to Model Rule 1.7 is Rule 1.7 of the New York Rules of Professional Conduct.

*See, e.g.*, *Murray*, 583 F.3d at 177 ("We conclude that plaintiffs were not clients of Debevoise. It is well-settled that outside counsel to a corporation represents the corporation, not its shareholders or other constituents."); *Evans*, 715 F.2d 788 at 792 ("A 'corporate attorney'—whether an in-house lawyer or a law firm that serves as counsel to the company—owes a duty to act in accordance with the interests of the corporate entity itself. [The] client is the corporation.").  As explained by the Second Circuit in *Murray*, this is consistent with both Rule 1.13(a) of the New York Rules of Professional Conduct, which provides that "a lawyer employed or retained by an organization . . . is the lawyer for the organization and not for any of the constituents," and the Restatement (Third) of the Rule Governing Lawyers, § 96 cmt. B, which explains that a lawyer retained by a corporation has an attorney-client relationship with the corporation, but "does not thereby also form a client-lawyer relationship with all or any individuals employed by it or who direct its operations or who have an ownership or other beneficial interest in it, such as shareholders."  *See* 583 F.3d at 177. "Even in the case of a small, closely held corporation, it is well established that being '[c]ounsel to a corporation does not inherently mean also acting as counsel to the individual director-shareholders.'" *Fenn & Fenn, Inc. v. MacQueen*, 1989 WL 58041, at *6 (S.D.N.Y. May 19, 1989) (citations omitted).

Here, there is no concurrent conflict of interest because Cole Schotz indisputably does not represent Plaintiff individually, and Plaintiff did not become the firm's client simply by virtue of her claimed "marital asset" ownership interest in and prior employment with Cole Schotz's corporate client, Highbury.  Plaintiff certainly has proffered no evidence of any attorney-client relationship with Cole Schotz (nor could she), and her argument that as counsel to Highbury, a corporation, Cole Schotz is also necessarily counsel to her as an alleged owner of the corporation is contrary to governing law.  It is worth noting that Plaintiff does not allege to have ever held a

11

management role within Highbury, or to have interacted with Cole Schotz or Mr. Gardner regarding the operations of Highbury at any time, whether in her capacity as an alleged former employee or marital asset owner.  Accordingly, Plaintiff cannot establish a concurrent conflict of interest based on Cole Schotz's simultaneous representation of Mr. Fogarty against Plaintiff in this action and of Highbury in other matters.

### B.    No Successive Conflict of Interest Exists

As an alternative purported basis for disqualification, Plaintiff attempts to establish a conflict of interest based on successive representation of adverse clients purportedly in violation of Model Rule 1.9(a).[3]  Plaintiff contends that she is a former client of Cole Schotz because she allegedly "sought advice" from Mr. Gardner, a member of Cole Schotz, "regarding the potential divorce from Defendant Fogarty" during an unspecified "legal consultation."  (Mot. at 6-7).  Thus, Plaintiff argues that Mr. Gardner and Cole Schotz cannot now represent her adversary in this action (Mr. Fogarty), and disqualification is therefore necessary.  Plaintiff's specious theory fails not only because the alleged "legal consultation" never occurred, but also because she does not (and cannot) establish *any* (let alone all) of the three *Evans* factors used by courts in this Circuit to determine whether disqualification based on successive representations is warranted.

### 1.    Plaintiff is not a former client of Cole Schotz

First, Plaintiff has failed to carry her heavy burden of demonstrating the existence of a prior attorney-client relationship between herself and Cole Schotz.  *See Evans*, 715 F.2d at 791.  "There is no single, well-defined test used to determine whether an attorney-client relationship exists." *Parkins v. St. John*, 2004 WL 1620897, at *4 (S.D.N.Y. July 19, 2004).  Instead, "[c]ourts in the

---

[3] The state-specific analogue to Model Rule 1.9 is Rule 1.9 of the New York Rules of Professional Conduct.

Southern District of New York have identified six factors relevant to determining whether an attorney-client relationship exists[,]" including "1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in one aspect of the matter (*e.g.*, at a deposition); 5) whether the attorney excluded the individual from some aspect of a litigation in order to protect another (or a) client's interest; 6) whether the purported client believes that the attorney was representing him and whether this belief is reasonable." *Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F.Supp.2d 296, 307 (S.D.N.Y. 2008) (quoting *First Hawaiian Bank v. Russell & Volkening, Inc.*, 861 F.Supp. 233, 238 (S.D.N.Y. 1994)).  Applying these factors here, Plaintiff's claim that she formed an attorney-client relationship with Cole Schotz is revealed to be completely false, and, to the extent she is relying on some subjective belief that Cole Schotz was representing her, that belief is plainly unreasonable in light of the objective circumstances.

*First*, Plaintiff presents no evidence that she ever personally retained Cole Schotz, signed a fee arrangement with Cole Schotz, or paid Cole Schotz a fee for any legal services rendered to her.  Nor could she, as none of those things happened.  (*See* Gardner Decl., ¶ 8).  In cases involving similar circumstances, courts in the Second Circuit have denied disqualification motions due to the absence of an attorney-client relationship.  *See, e.g.*, *Adams v. Vill. of Keesville*, 2008 WL 3413867, at *8 (N.D.N.Y. Aug. 8, 2008) (denying disqualification motion based on alleged successive representation where "there was neither a retainer agreement, fee arrangement nor a fee paid"); *Parkins*, 2004 WL 1620897, at *4 (denying disqualification motion based on alleged successive representation where "no fee arrangement was ever entered into, nor did [d]efendants

ever pay [the attorney] any fee"); *First Hawaiian Bank*, 861 F.Supp. at 239 (denying disqualification motion primarily because "no fee arrangement or retainer agreement was made or discussed, no fee was ever requested from or paid by [the movant], and, moreover, [the attorney] appears at no time to have taken direction from [the movant]").

*Second*, Plaintiff and Cole Schotz never entered into any written contract, retainer agreement, or any other type of formal or informal agreement indicating that Cole Schotz had agreed to represent Plaintiff in any legal matters. (*See* Gardner Decl., ¶ 8). Plaintiff does not even attempt to argue otherwise, and, in any event, the evidence belies such a claim. As with the first factor, courts in this Circuit have declined to find an attorney-client relationship sufficient to warrant disqualification where there is no agreement supporting the alleged representation. *See, e.g.*, *Ello v. Singh*, 2006 WL 2270871, at *3 (S.D.N.Y. Aug. 7, 2006) (denying motion to disqualify in part because "[p]laintiff does not maintain, nor could he maintain, that he entered into a formal arrangement with either law firm to provide representation"); *Parkins*, 2004 WL 1620897, at *4 (denying motion to disqualify in part because "[n]either party has introduced evidence of a formalized written contract laying-out the terms of the purported arrangement"); *Kubin v. Miller*, 801 F.Supp. 1101, 1115 (S.D.N.Y. 1992) (denying disqualification based on alleged prior attorney-client relationship with opposing counsel because "there was no written contract between [the plaintiff and opposing counsel] indicating that [opposing counsel] ever accepted employment as [the plaintiff's] attorney").

*Third*, there is no evidence of any informal attorney-client relationship whereby Cole Schotz agreed to provide Plaintiff legal services gratuitously. Plaintiff vaguely alleges that she "sought advice" from Mr. Gardner during a "legal consultation," but she presents no specific facts or evidence to support that general allegation, and Mr. Gardner denies the encounter ever

happened. Indeed, before the current litigation, Mr. Gardner does not recall ever meeting or conversing with Plaintiff at all, on any subject. (*See* Gardner Decl., ¶¶ 6-7). He certainly has no recollection of any informal relationship whereby he provided (or agreed to provide) Plaintiff with free legal services. (*Id.*, ¶ 8). Plaintiff's failure to articulate with any level of detail the circumstances giving rise to the claimed "legal consultation," the time, place, and manner of same, and/or the nature of the legal advice purportedly provided to her further highlights the dubious nature of her claim. *See, e.g.*, *Kubin*, 801 F.Supp. at 1115 (finding absence of "any suggestion" of an "informal relationship in which [opposing counsel] performed legal services gratuitously" for the plaintiff as weighing against granting disqualification motion based on alleged successive representation).

    *Fourth*, Plaintiff does not (and cannot) demonstrate that any attorneys at Cole Schotz ever held themselves out as representing Plaintiff in connection with her "potential divorce" from Mr. Fogarty – which she claims to have discussed with Mr. Gardner during the "consultation" – or any other issue, for that matter. It is undisputed that neither Cole Schotz nor Mr. Gardner currently represent, or ever represented, Plaintiff in the pending Matrimonial Action between Plaintiff and Mr. Fogarty. (*See* Gardner Decl., ¶ 9). Mr. Gardner, a commercial litigator and construction attorney, does not even practice matrimonial law or family law, nor does Cole Schotz have a dedicated matrimonial or family law practice. (*Id.*, ¶¶ 2-3). It defies logic and common sense to believe that Mr. Gardner or Cole Schotz would, formally or informally, consult with Plaintiff regarding a matrimonial matter under *any* circumstances, let alone when she is the spouse of one of the owners of an existing corporate client. These facts militate against a finding of any prior attorney-client relationship between Plaintiff and Cole Schotz. *See, e.g.*, *Ritchie v. Gano*, 2008 WL 4178152, at *6 (S.D.N.Y. Sept. 8, 2008) (denying disqualification motion in part because

15

there was no evidence that the attorney "ever appeared in court or claimed to represent an entity known as the Violent Femmes in any court filing associated with this issue or any other").

*Fifth*, no situation has arisen whereby Mr. Gardner has been forced to decide whether to exclude Plaintiff from any aspect of a litigation due to his duty to protect Highbury's and Mr. Fogarty's distinct interests. *See Med. Diagnostic Imaging*, 542 F.Supp.2d at 307. At all times before and during the current litigation, Mr. Gardner has represented **only** Highbury (and, at times, its principals individually, including Mr. Fogarty), **not Plaintiff**, and he does not recall any direct dealings with Plaintiff whatsoever. (*See* Gardner Decl., ¶¶ 5-8).

*Sixth*, even crediting a claim that Plaintiff subjectively believed Mr. Gardner was representing her during the alleged "consultation" (which, again, did not occur), such a belief would be objectively unreasonable under the circumstances. As noted above, neither Mr. Gardner nor Cole Schotz ever explicitly or implicitly held themselves out as Plaintiff's counsel, offered Plaintiff legal services or advice, or performed legal work for Plaintiff, **nor does she attempt to allege otherwise**. As far as Mr. Gardner recalls, he has never met or spoke with Plaintiff directly in any context, and he is confident that he would have remembered speaking to her if it had in fact occurred. (*Id.*, ¶ 6). Mr. Gardner's primary contacts in connection with his longstanding representation of Highbury are, and have always been, Messrs. Fogarty, Gorman, and Griffin, the three owners of Highbury. (*Id.*, ¶ 5).

Moreover, even if Plaintiff and Mr. Gardner *had* conversed directly in the course of his representation of Highbury (which they did not), it still would have been manifestly unreasonable for her to believe Mr. Gardner was acting as her personal attorney with respect to providing legal advice regarding a "potential divorce from Defendant Fogarty." (Mot. at 6). Not only would that have been completely outside the scope of Mr. Gardner's representation of Highbury, but also

completely outside the scope of Mr. Gardner's practice and experience in general. Mr. Gardner does not practice matrimonial law at Cole Schotz, nor does he have any prior experience doing so. (*Id.*, ¶ 3). Rather, the focus of both his current practice and prior experience is construction services and complex commercial and criminal litigation. (*Id.*, ¶ 2). At bottom, notwithstanding that the alleged consultation never actually occurred, the totality of the circumstances made it entirely unreasonable for a person in Plaintiff's position to conclude that Mr. Gardner was serving as her personal counsel in connection with legal issues relating to a potential divorce from her husband. *See, e.g.*, *Exact Invs. LLC v. Vesnaverboth*, 2022 WL 17782087, at *4 (E.D.N.Y. July 18, 2022) ("The unilateral belief of a plaintiff alone does not confer upon him or her the status of a client."); *Calamar Enters., Inc. v. Blue Forest Land Grp., LLC*, 222 F.Supp.3d 257, 264 (W.D.N.Y. 2016) ("Calamar's claims that it believed Phillips Lytle was continuously representing it since 2011-2012, even though no work was performed and no legal bills were rendered, is speculative and unsupported."); *Catizone v. Wolff*, 71 F.Supp.2d 365, 371 (S.D.N.Y. 1999) (finding the plaintiff's belief that the defendant was representing him unreasonable where, among other things, "[t]here is no credible evidence that [the defendant attorney] either affirmatively led [the plaintiff] to believe that he was acting as [the plaintiff's] attorney or knowingly allowed [the plaintiff] to proceed under that misconception").

### 2. The prior alleged "legal consultation" is not substantially related to the issues in this action

Assuming *arguendo* that Plaintiff is a former client of Cole Schotz as a result of the alleged prior "legal consultation" where she claims to have "sought advice from Mr. Gardner regarding the potential divorce," Plaintiff nevertheless fails to establish that the prior consultation and the issues in the current action are substantially related. "In view of the stated concerns of the Second Circuit as to the disruptive effect of motions to disqualify, the potential for their use as tactical

17

devices, and the desirability of honoring a litigant's choice of attorney, the requirement that there be 'a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit' is strictly enforced." *Obeid ex rel. Gemini Real Est. Advisors v. La Mack*, 2015 WL 7180735, at *4 (S.D.N.Y. Nov. 9, 2015). The substantial relationship requirement is satisfied "only upon a showing that the relationship between issues in the prior and present cases is 'patently clear'," that is, "when the issues involved have been 'identical' or 'essentially the same'." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739-40 (2d Cir. 1978) (citations omitted).

Here, Plaintiff's claims revolve entirely around an alleged "Cash for Kids" RICO scheme that she claims Mr. Fogarty, two Rockland County family court judges, and the attorneys for various parties carried out in the underlying Matrimonial Action for the sole purpose of enriching themselves at Plaintiff's expense. (*See generally* Am. Compl.). She contends that, as a result of the alleged scheme, she has been deprived of due process and suffered other harms in the Matrimonial Action, such as loss of custodial rights and access to marital assets. (*Id.*) Plaintiff fails to demonstrate how the alleged RICO scheme is substantially related to any "potential divorce" issues for which she supposedly sought legal advice during the alleged prior consultation. As previously discussed, it is undisputed that neither Mr. Gardner nor Cole Schotz represent Plaintiff in the underlying Matrimonial Action. Temporally, Plaintiff's alleged consultation with Mr. Gardner regarding a "potential divorce" from Mr. Fogarty, presumably years before the Matrimonial Action was even commenced, bears no relationship to the subject matter of the case at hand, namely, the alleged RICO activities Plaintiff claims were carried out during and caused her harm in the Matrimonial Action.

### 3. Neither Cole Schotz nor Mr. Gardner had access to any relevant privileged and confidential information in the course of alleged prior consultation

Finally, assuming *arguendo* that Plaintiff could establish the first two *Evans* factors (she cannot), disqualification would still be unwarranted because Plaintiff fails to present evidence that Mr. Gardner "had access to, or was likely to have had access to, relevant privileged information in the course of the alleged prior representation[]." *Parkins*, 2004 WL 1620897, at *5. To satisfy this third and final *Evans* factor, "it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client." *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977).

Here, although it is far from clear from her motion papers, Plaintiff appears to contend that Mr. Gardner was privy to confidential information as a result of the alleged prior consultation where Plaintiff purportedly "sought advice" regarding a potential divorce from Mr. Fogarty. Even assuming this consultation occurred, and Mr. Gardner was in some manner acting as Plaintiff's attorney during same, it is beyond dispute that he also represented Highbury at that time, that he established his attorney-client relationship with Highbury long before the alleged "consultation," and that his representation of Highbury and dealings with Mr. Fogarty in connection with same were open and continuous. (*See* Gardner Decl., ¶¶ 4-14). Under such circumstances, Plaintiff should have been aware of Mr. Gardner's continuous representation of Highbury and could not have reasonably expected confidentiality with respect to information disclosed to Mr. Gardner. *See, e.g.*, *Allegaert*, 565 F.2d at 250-51 (denying motion for disqualification where, after a dispute arose between joint venturers, the law firm continued to represent its longstanding and continuous client against the other joint venturer, and the party seeking disqualification did not have a

reasonable expectation that the law firm would remain loyal to its interests at the expense of the firm's primary client); *Parkins*, 2004 WL 1620897, at *5 (denying disqualification motion under similar circumstances). Plaintiff's self-serving and conclusory assertions to the contrary are unavailing. Accordingly, Plaintiff cannot satisfy the third and final *Evans* factor.

As Plaintiff has not established any of the three *Evans* factors, she cannot meet her heavy burden to prove disqualification is warranted based on an alleged successive conflict of interest.

### III.    DISQUALIFICATION IS NOT WARRANTED BASED ON THE ADVOCATE-WITNESS RULE

Next, Plaintiff claims that Cole Schotz should be disqualified from representing Mr. Fogarty in this action because she supposedly intends to call Mr. Gardner as a "key witness" at trial. (Mot. at 2-3). Thus, she argues that Mr. Gardner's representation of Mr. Fogarty would violate the advocate-witness rule set forth in Model Rule 3.7, which provides that a "lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact."[4] (*See id.*). In support of this argument, Plaintiff, in only the vaguest manner, alleges that Mr. Gardner's testimony is "crucial in establishing the scope of Defendant Fogarty's RICO violations, particularly regarding the fraudulent scheme orchestrated by Fogarty" due to Mr. Gardner's supposed "direct involvement in matters pertinent to the RICO violations alleged against Defendant Fogarty." (*Id.*) She contends Mr. Gardner's alleged "involvement" in the RICO violations includes his representation of Mr. Fogarty and Highbury as defendants in an entirely unrelated case brought by Highbury employees alleging wage violations. (*See id.* (citing *Cardenas v. Highbury Concrete, Inc.*, No. 1:18-cv-03110)). More specifically, she claims that in *Cardenas*, Mr. Fogarty "allegedly made fraudulent representations regarding Highbury Concrete

---

[4] The state-specific analogue to Model Rule 3.7 is Rule 3.7 of the New York Rules of Professional Conduct.

to the Federal Judge," and Mr. Gardner was "fully aware of the falsehoods" and "failed to take corrective action." (*Id.* at 2).

"'Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions' based on the witness-advocate rule." *Dolenec v. Pressler & Pressler L.L.P.*, 2014 WL 6632942, at *3 (S.D.N.Y. Nov. 24, 2014) (quoting *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir.1989)). Accordingly, "where only the moving party intends to call the adversary's attorney as a witness, the movant must demonstrate both that the lawyer's testimony is necessary and that there exists a substantial likelihood that the testimony would be prejudicial to the witness-advocate's client." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F.Supp.3d 413, 420 (S.D.N.Y. 2015) (Gorenstein, Mag. J.) (citations and quotation marks omitted). Here, Plaintiff's request for disqualification based on the advocate-witness rule utterly fails, as she does not (and cannot) demonstrate that Mr. Gardner's supposed testimony is either necessary to resolving the issues in this case or likely to prejudice Mr. Fogarty.

### A.  Mr. Gardner's Testimony Is Not "Necessary" to Plaintiff's Case

Disqualification pursuant to the advocate-witness rule is "required only when it is likely that the testimony to be given by counsel is necessary." *Purgess*, 33 F.3d at 144 (citations omitted); *see also Wachovia Bank, Nat'l Ass'n v. Focus Kyle Grp., LLC*, 896 F.Supp.2d 330, 332 (S.D.N.Y. 2012) ("For purposes of considering a disqualification motion, the Court's inquiry does not focus on whether the attorney possesses discoverable knowledge, but rather whether trial of the case will in fact require his testimony.") (citations omitted); *Fenn & Fenn, Inc.*, 1989 WL 58041, at *8 ("[N]o disqualification should occur until it is apparent the attorney's testimony is itself admissible and necessary.") (citation omitted). "When considering the 'necessity' prong of the disqualification inquiry, '[a] court should examine factors such as the significance of the matters,

weight of the testimony, and availability of other evidence.'" *John Wiley & Sons, Inc.*, 126 F.Supp.3d at 421-22 (quoting *Finkel v. Frattarelli Bros., Inc.*, 740 F.Supp.2d 368, 373 (E.D.N.Y. 2010)).

Here, Plaintiff fails to meet her heavy burden to show Mr. Gardner's testimony is necessary to her case. Plaintiff offers no explanation or evidence as to what specific testimony Mr. Gardner would give in this case and presents no non-speculative argument that Mr. Gardner possesses any unique knowledge or information ***relevant*** to the issues in this case, let alone ***necessary*** to their resolution. *See Finkel*, 740 F.Supp.2d at 376 ("Speculation as to the testimony that counsel would give is not sufficient to support a motion to disqualify."); *GateGuard, Inc. v. Goldmont Realty Corp.*, 641 F.Supp.3d 66, 72 (S.D.N.Y. 2022) (Gorenstein, Mag. J.) (denying disqualification motion based on advocate-witness rule where the moving party did not identify the attorney's anticipated testimony in any detail and thus, it was "entirely speculative to assume that any testimony is even relevant to plaintiff's case"). The only "example" of Mr. Gardner's purported knowledge that Plaintiff provides in support of her argument relates to alleged "falsehoods presented" by Mr. Fogarty to a federal court in the *Cardenas* litigation in which Mr. Gardner represented Highbury and Mr. Fogarty against certain Highbury employees. (*See* Mot. at 2-3). Plaintiff does not specify at all what those alleged "falsehoods" are, but contends that Mr. Gardner knowingly "failed to correct" them.[5]

Notwithstanding that Plaintiff offers absolutely no facts or evidence to support these serious allegations of improper and unethical conduct, she appears to contend that they render Mr. Gardner a necessary witness in this action. However, Plaintiff fails to demonstrate how Mr.

---

[5] Mr. Gardner reiterates that he knows of no such "falsehoods." (*See* Gardner Decl., ¶ 15).

Gardner's representation of Highbury and Mr. Fogarty in an employee wage and hour lawsuit commenced in 2018 and resolved in 2019 bears any relation to the issues in this case, which center on alleged racketeering activity in underlying divorce proceedings between Plaintiff and Fogarty that were not commenced until 2021.  Notably, despite Plaintiff's conclusory and speculative claim that Mr. Gardner's testimony regarding the *Cardenas* litigation would be "necessary" at a trial of this matter, the *Cardenas* litigation and Mr. Gardner's alleged involvement therein are not even referenced in the Amended Complaint.  (*See generally* Am. Compl.).  Plaintiff clearly has not sustained her burden of proving the necessity of Mr. Gardner's testimony in this case.  *See, e.g.*, *GateGuard, Inc.*, 641 F.Supp.3d at 73 (finding movant failed to meet "heavy burden" of showing that adversary's attorney must be disqualified based on the advocate-witness rule where, "[i]n the end, all of [the movant's] bases to claim [the lawyer's] testimony is necessary rely on a ***farrago of suspicions and faulty leaps of logic***") (emphasis added).

Plaintiff also fails to explain how Mr. Gardner's testimony would not be unnecessarily cumulative of the testimony of other potential witnesses, including Mr. Fogarty himself.  Although the precise information Plaintiff seeks to elicit from Mr. Gardner is unknown, certainly Mr. Fogarty himself has personal knowledge regarding the broad topics she reference – namely, "the scope of [his own alleged] RICO violations" and the alleged "fraudulent scheme" he supposedly orchestrated.  Plaintiff further fails to explain why any testimony regarding Mr. Fogarty's alleged misrepresentations to the court in *Cardenas* (to the extent it would even be relevant to the issues in this case) could not also be obtained from Mr. Fogarty directly.  As to Mr. Gardner's representation of Mr. Fogarty and Highbury in *Cardenas*, assuming the attorney-client privilege applies, Plaintiff has not demonstrated how disqualifying Mr. Gardner and calling him as a witness

would enable her to obtain information that she could not obtain from Mr. Fogarty directly, as the privilege protects against disclosure by attorneys as well as clients.

**B.**     **Plaintiff Does Not Even Attempt to Demonstrate that Mr. Gardner's Anticipated Testimony Is Likely to Substantially Prejudice Mr. Fogarty, Nor Could She**

With respect to the "prejudice" requirement, the party seeking disqualification "bears the burden of demonstrating how and as to what issues in the case the prejudice [to the witness-advocate's client] may occur and that the likelihood of prejudice occurring is substantial." *Paramount Commc'ns, Inc. v. Donaghy*, 858 F.Supp. 391, 395 (S.D.N.Y. 1994). "Prejudice" in this context means testimony that is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Murray*, 583 F.3d at 178 (citation omitted). A plaintiff cannot sustain her heavy burden of establishing potential prejudice where her motion papers are "vague and conclusory" as to how the attorney's client would be prejudiced should the opposing party call the attorney to testify. *S & S Hotel Ventures Ltd. P'ship v. 777 S. H. Corp.*, 69 N.Y.2d 437, 446 (1987); *see also Paramount Commc'ns, Inc.*, 858 F.Supp. at 398 (holding that "[t]he conjuring of 'perhaps possible' scenarios is inadequate grounds for a demonstration of the need to call an attorney to testify, or a demonstration that such testimony would be prejudicial").

Here, Plaintiff fails to even argue, let alone make a sufficient evidentiary showing, that any testimony from Mr. Gardner in this case would be prejudicial to Mr. Fogarty. While Plaintiff does not articulate with any specificity the factual matters on which she believes Mr. Gardner's testimony is necessary in this case, presumably they relate to his prior representation of Highbury and Mr. Fogarty in employee lawsuits, such as *Cardenas*, as that is the only example she gives. (*See* Mot. at 2-3). Assuming Mr. Gardner could even testify regarding that prior representation without violating the attorney-client privilege, it is simply implausible to believe that such

24

testimony would be inconsistent with Mr. Fogarty's factual positions in this case. Contrary to Plaintiff's speculative and self-serving contentions in her motion and her Amended Complaint, Mr. Gardner is not aware of any fraudulent conduct or other wrongdoing by Mr. Fogarty in connection with the prior employee lawsuits or otherwise. (Gardner Decl., ¶ 15). Thus, any testimony Mr. Gardner could offer would align with Mr. Fogarty's defense of Plaintiff's allegations in this case. *See Finkel*, 740 F.Supp.2d at 377 (considering whether the movant had demonstrated that counsel's testimony would be inconsistent with the client's testimony and prejudicial to client). Plaintiff has not carried her heavy burden of proving that the allegedly necessary testimony she intends to elicit from Mr. Gardner would be likely to prejudice Mr. Fogarty's interests, let alone to a substantial degree.

In fact, the likelihood of substantial hardship and prejudice to Mr. Fogarty if his and his company's trusted counsel of many years is disqualified from defending him against the serious allegations propounded by Plaintiff in this case is far greater than any speculative need for Mr. Gardner's testimony. If Mr. Fogarty is deprived of his long-time chosen counsel, he will have to incur additional burden and expense to secure adequate substitute counsel and fully educate them on the facts underlying this case, which will, in turn, necessarily delay the progress of the matter. In addition, Mr. Fogarty's defense will lack the benefit and value of Mr. Gardner's institutional knowledge of Mr. Fogarty, both professional and personally, gained as a result of their longstanding attorney-client relationship.

    **C.**    **Plaintiff's Request for Disqualification Based on the Advocate-Witness Rule Should Not Extend to the Entire Firm and Is Premature in any Event**

As a final point, even if Plaintiff could make the requisite showing to warrant Mr. Gardner's disqualification based on the advocate-witness rule (which she cannot), that disqualification should not extend to any other lawyers at Cole Schotz. Instead, the Court should

allow another attorney from Cole Schotz to act as trial counsel and permit Mr. Gardner to continue representing Mr. Fogarty in pre-trial matters. *See, e.g.*, *Conigliaro v. Horace Mann School,* 1997 WL 189058, at *4 (S.D.N.Y. Apr. 17, 1997) ("The concerns underlying [the advocate-witness rule] arise out of an attorney's presence at trial. Allowing an attorney to continue his representation pre-trial does nothing to undermine those interests, and protects the clients' right to choose their own counsel.") (citation omitted); *accord Ramey v. Dist. 141, Int'l Ass'n. of Machinists & Aerospace Workers*, 378 F.3d 269, 282-83 (2d Cir. 2004) (noting that the concerns underlying the advocate-witness rule are, for the most part, "absent or, at least, greatly reduced, when [] the lawyer-witness does not act as trial counsel"). Allowing Cole Schotz and Mr. Gardner to continue representing Mr. Fogarty in the pre-trial aspects of this case, and allowing other attorneys from Cole Schotz to act as lead trial counsel should this case even go to trial and Mr. Gardner's testimony be necessary, will significantly lessen the prejudice to and burden on Mr. Fogarty that would result from Mr. Gardner's disqualification at this very early stage of the litigation. *See, e.g.*, *Corrado v. N.Y. State Unified Court Sys.*, 2014 WL 119407, at *2 (E.D.N.Y. Jan. 10, 2014) ("Disqualification under [Rule 3.7](a) applies only when the attorney-witness actually serves as trial counsel.") (citing *Murray*, 583 F.3d at 179).

In fact, disqualification this early in the litigation—particularly given Mr. Fogarty's (and his co-Defendants') plan to seek the full dismissal of Plaintiff's Amended Complaint based on its clear failure to state a claim—would be premature. *See, e.g.*, *Gershon v. Lurie*, 2013 WL 12495071, at *3 (E.D.N.Y. Dec. 9, 2013) (finding that disqualification based on the advocate-witness rule would be premature at early stage of the case where "[d]iscovery has yet to be completed, depositions have not been taken, and it is unclear whether other evidence or testimony can replace [the lawyer's], or what prejudice would be suffered by either party in the event [the

lawyer] were to testify"); *Donatello v. Cnty. of Niagara*, 2015 WL 8328845, at *4 (W.D.N.Y. Dec. 7, 2015) (rejecting as premature the movant's argument that opposing law firm should be disqualified because firm attorneys would be important fact witnesses to an affirmative defense based on their involvement in an internal investigation relating to the plaintiff's claims, as it was "too soon to tell" whether the information they learned in the investigation would be necessary and thus, "[d]isqualification would be far too drastic an action until the case takes further shape during discovery"). In the interests of promoting judicial efficiency and conserving judicial and party resources, Mr. Fogarty submits that, at the very least, the Court should defer ruling on Plaintiff's disqualification motion until Defendants' anticipated motions to dismiss the Amended Complaint are decided and it thus determined whether this action will continue beyond the pleadings.

### IV. PLAINTIFF'S ALLEGATIONS OF OTHER MISCONDUCT BY COLE SCHOTZ ARE ENTIRELY UNFOUNDED AND DO NOT WARRANT DISQUALIFICATION

In her final attempt to convince this Court that Cole Schotz should be disqualified as counsel to Mr. Fogarty, Plaintiff, without any foundation whatsoever, accuses Cole Schotz attorneys and staff of alleged illegal and unethical behavior in connection with their representation of Highbury and Mr. Fogarty in previous matters. (*See* Mot. at 3-6). Putting aside that these outrageous allegations are blatantly false, the Second Circuit has held that even an attorney's violation of disciplinary rules "may not warrant disqualification." *GSI Com. Sols., Inc.*, 618 F.3d at 209. Instead, "[t]he disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72-73 (2d Cir. 1990) (citations omitted). In exercising such power, courts must "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *Hempstead Video*, 409 F.3d at 132 (citations and quotation

marks omitted); *see also Frontline Commc'ns Intern. v. Sprint*, 232 F.Supp.2d 281, 288 (S.D.N.Y. 2002) ("The Second Circuit has clearly and repeatedly held that a violation of the Code of Professional Responsibility should result in disqualification only when the violation taints the integrity of the proceeding before the court."). Here, Plaintiff fails to present any evidence, beyond her own self-serving speculation, that anyone at Cole Schotz engaged in any alleged misconduct or ethical violations, let alone that same would "taint the integrity of th[is] proceeding."

### A.    Cole Schotz Did Not Assist with any Alleged "Financial Misconduct" or "Concealment of Assets"

Appallingly, without a shred of evidence to support her extreme claim, Plaintiff accuses Cole Schotz of facilitating alleged "financial misconduct and concealment of assets" from Plaintiff. (*See* Mot. at 3-4). She speculates that when Cole Schotz provided legal assistance to Highbury in 2021 in connection with Highbury's corporate reorganization (which included the creation of certain new affiliate/subsidiary entities), it was "aiding" Mr. Fogarty's supposed plot to hide marital assets from Plaintiff. (*Id.* at 4). She further contends that Kim McEllen, a corporate paralegal at Cole Schotz, was personally involved in the alleged "coordinated effort to manipulate and conceal assets" because "[a]t one point, Ms. McEllen . . . was even CEO of one [of] the [new Highbury] entities." (*Id.*)

As an initial matter, Mr. Fogarty vehemently denies Plaintiff's accusations of "financial misconduct" and "concealment of [marital] assets," and Mr. Gardner likewise denies that he, or anyone else at Cole Schotz, knowingly assisted with or facilitated same. Moreover, Plaintiff presents no specific facts or evidence to support her wildly speculative theory. Instead, she relies on the general timing of certain distinct events – namely, that Highbury happened to consult Cole Schotz regarding the corporate transactions "one year before [Mr. Fogarty's] separation" from Plaintiff and "shortly following" Mr. Fogarty's supposed "secret[]" consultation with his current

divorce attorneys at Miller Zeiderman LLP (who are also Defendants in this case).  (*See* Mot. at 3-4).  There is no evidence, however, that the timing of those separate events was the result of anything other than pure coincidence.  Plaintiff does not allege any facts to suggest that Ms. McEllen, or anyone else at Cole Schotz involved with the Highbury transactions, knew that Mr. Fogarty was considering separating from Plaintiff at the time the transactions were carried out.  In fact, Cole Schotz was unaware of Mr. Fogarty's separation from his wife until Mr. Fogarty informed Mr. Gardner of same after Mr. Fogarty commenced the Matrimonial Action.  (Gardner Decl., ¶ 13).  Moreover, contrary to Plaintiff's conjecture, Ms. McEllen merely saw to the creation of the new corporate entities at issue; she had no other function with respect to the entities and no substantive role.  (*Id.*).  Nor does Plaintiff allege any facts to indicate that the transactions were carried out for any improper purpose; rather, the more likely inference from the underlying facts and circumstances is that Cole Schotz facilitated the transactions in the ordinary course of business, for legitimate business reasons.  (*See id.*, ¶¶ 12-13).  Notably, each of Highbury's three owners was involved in the transactions, and they had nothing whatsoever to do with Mr. Fogarty's personal divorce proceedings commenced thereafter.  (*Id.*, ¶ 12).

Put simply, the fact that Cole Schotz assisted with the creation of certain new entities for its corporate client, Highbury, after Mr. Fogarty supposedly "secretly consulted" with divorce attorneys regarding a potential separation from Plaintiff, does not support an inference that Cole Schotz conspired with Mr. Fogarty to commit fraud against Plaintiff.  Plaintiff is not entitled to disqualify Mr. Fogarty's chosen counsel based solely on self-serving inferences drawn from disputed facts.  *See, e.g.*, *Intelli-Check, Inc. v. TriCom Card Techs., Inc.*, 2005 WL 3533153, at *9 (E.D.N.Y. Dec. 22, 2005) ("I further note that plaintiff's position on disqualification is based on an adversary's view of the evidence. Plaintiff's counsel has drawn a favorable inference wherever

possible. In effect, plaintiff's application seeks disqualification and sanctions arising out of disputed conduct which is the prerogative of the trier of facts to resolve.").

      **B.**    **Cole Schotz Did Not Assist with any Alleged "Misconduct and Violation of Automatic Orders" in the Matrimonial Action**

Next, Plaintiff alleges that Mr. Fogarty supposedly engaged in certain misconduct and violation of automatic orders in the Matrimonial Action and that Cole Schotz "advis[ed] and facilitat[ed]" these "unethical and illegal activities" in "direct contravention of professional ethical standards." (Mot. at pp. 5-6). Mr. Fogarty's alleged misconduct is claimed to include misappropriating funds from Highbury to pay legal fees, supposedly in violation of the family court's automatic orders, and misleading courts regarding his financial means in employee lawsuits brought against Highbury, including *Cardenas*. (*Id.*) Plaintiff further contends, in purely conclusory fashion and without further explanation, that she "expect[s]" Cole Schotz to be "implicated as a co-defendant in this action due to their involvement in multiple RICO violations." (*Id.* at 6).

Plaintiff's vague allegations regarding Cole Schotz's supposed role in the alleged RICO scheme are, though wildly offensive, wholly speculative and conclusory. She proffers no evidence to support her claims (nor is there any), and her 83-page, 301-paragraph Amended Complaint does not contain a single plausible, non-conclusory factual allegation from which it could be reasonably inferred that Cole Schotz played any part in the alleged RICO scheme. For instance, there are no facts to support Plaintiff's claim that Cole Schotz was involved in the alleged misappropriation of marital funds from Highbury to pay Mr. Fogarty's divorce lawyers, let alone any evidence meeting the requisite "high standard of proof." *See Evans*, 715 F.2d at 791. Rather, that irresponsible contention is based solely on Plaintiff's speculation. Moreover, to the extent Plaintiff's arguments are based on what Plaintiff claims is a Highbury "policy" requiring that any company transaction

exceeding $20,000 be reviewed and approved by outside counsel (*see* Mot. at 5), Mr. Gardner has no knowledge whatsoever of that alleged "policy" despite being Highbury's outside counsel for nearly a decade (*see* Gardner Decl., ¶ 16).  Finally, as discussed in Section III.A. *supra*, Plaintiff's allegations of misconduct in connection with employee lawsuits in which Cole Schotz represented Highbury, including *Cardenas*, fare no better.

At bottom, neither Mr. Gardner nor anyone else at Cole Schotz has engaged in any professional misconduct or illegal activity, and, frankly, Mr. Gardner finds Plaintiff's blatantly false and unsupported allegations of same both unconscionable and harassing, as discussed further in Section V *infra*.  Plaintiff cites absolutely no evidence supporting her claims of misconduct, apart from her own self-serving statements, nor could she.  Such baseless allegations of impropriety in connection with legal work performed on matters entirely unrelated to the RICO claims in this case are plainly insufficient to warrant disqualification.  *See, e.g.*, *GateGuard, Inc.*, 641 F.Supp.3d at 74 (finding movant "certainly has not met its high burden to show disqualification" based on alleged illegal conduct by opponent's attorney where it "failed to provide any evidence that [the attorney] violated any Rules of Professional Conduct" and "the connections drawn by [movant] between this alleged conduct and the issues in this case are virtually non-existent").

## V.    PLAINTIFF'S FRIVOLOUS MOTION FOR DISQUALIFICATION WAS PLAINLY INTENDED TO HARASS MR. FOGARTY AND HIS COUNSEL

Plaintiff's frivolous motion presents a classic example of a litigant manufacturing alleged conflicts of interest and ethical violations as a strategy to harass her adversary and deprive him of his chosen counsel.  Indeed, the true purpose of Plaintiff's disqualification motion is evident from the unconscionable and inflammatory allegations of fraud and misconduct she boldly lodges against Mr. Fogarty and the entire Cole Schotz law firm, without any evidentiary support and based

solely on Plaintiff's illogical and self-serving inferences from alleged facts that are themselves completely baseless. As Plaintiff is doubtless aware, if her motion is granted, it will significantly prejudice Mr. Fogarty, who has a longstanding relationship with Mr. Gardner and Cole Schotz as through their representation of his business, Highbury, and deprive him of his right to freely choose counsel to represent him in this clearly contentious litigation. The Court should not endorse this transparent form of harassment and should deny the motion in full. *See, e.g.*, *Sea Tow Int'l, Inc. v. Pontin*, 2007 WL 4180679, at *6 (E.D.N.Y. Nov. 19, 2007) (denying motion to disqualify in part because plaintiff's "conclusory assertions amount to nothing more than sheer speculation as to the existence of a conflict of interest" and "such assertions merely bolster the argument that this motion is being made solely to achieve a strategic advantage in this litigation").

## <u>CONCLUSION</u>

For all of the foregoing reasons, Mr. Fogarty respectfully requests that the Court deny Plaintiff's frivolous motion to disqualify Cole Schotz, which is riddled with false statements and unfounded accusations, in its entirety. Mr. Fogarty further respectfully requests such additional and further relief as the Court deems just, equitable, and proper.


DATED:       New York, New York          COLE SCHOTZ P.C.
             January 28, 2025

                                         By: */s/ Brian L. Gardner*
                                             Brian L. Gardner, Esq.
                                             Courtney G. Hindin, Esq.
                                             *Attorneys for Defendant Thomas Fogarty*
                                             1325 Avenue of the Americas
                                             19th Floor
                                             New York, NY 10019
                                             (212) 752-8000

32

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

DATED:    New York, New York      COLE SCHOTZ P.C.
             January 28, 2025

By: */s/ Brian L. Gardner*
      Brian L. Gardner, Esq.
      Courtney G. Hindin, Esq.
      *Attorneys for Defendant Thomas Fogarty*
      1325 Avenue of the Americas
      19th Floor
      New York, NY 10019
      (212) 752-8000