UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SAI MALENA  JIMENEZ-FOGARTY

                                                                    **Docket No.**
                                                                    **24-CV-08705-JLR-GWG**

                    Plaintiff,

-against-

THOMAS FOGARTY, LISA ZEIDERMAN,
ASHLEY KERSTING, NICOLE DIGIACOMO,
JUDGE SHERRI EISENPRESS, JUDGE
THOMAS ZUGIBE, LAURA MARINO

                    Defendant.
-------------------------------------------------------------------X

### PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO DISQUALIFY COLE SCHOTZ P.C. AS COUNSEL FOR THOMAS FOGARTY

   **PLAINTIFF, SAI MALENA JIMENEZ-FOGARTY** ("Plaintiff"), submits this Reply to Defendant Thomas Fogarty's ("Defendant Fogarty") *Memorandum of Law in Opposition to Plaintiff's Motion to Disqualify Cole Schotz P.C.* ("Cole Schotz"). Defendant's Memorandum mischaracterizes the facts, misstates the law, and conspicuously avoids addressing the core issues of conflict of interest, advocate-witness rule violation, financial misconduct, and violations of automatic orders.   Defendant's attempt to portray Plaintiff's motion as frivolous and retaliatory are transparent tactics to deflect from the serious and undeniable ethical breaches at issue. This *Reply*, supported by evidence and controlling case law, demonstrates why disqualification is not only warranted but absolutely essential to preserve the integrity of these proceedings and uphold the ethical standards of the legal profession.

## CONCISE BACKGROUND

**January 25, 2013:** Plaintiff and Defendant Fogarty married. Defendant Fogarty was then an undocumented immigrant living in poverty. The marriage facilitated his acquisition of a green card, citizenship, and substantial wealth.

**April 3, 2013:** Highbury Concrete was founded using Plaintiff's premarital assets and credit, as Defendant Fogarty was still undocumented and lacked work authorization.

**June 2013:** Defendant Fogarty's green card application was denied due to a material misrepresentation to a U.S. Citizenship and Immigration Services officer. He falsely denied departing the U.S. while lacking legal status, despite evidence of travel to Europe in 2008. This false statement resulted in a pending ten-year ban.

**November 7, 2013:** Plaintiff gave birth prematurely to their first child due to stress from Defendant Fogarty's alleged abuse, green card denial and possibility of his deportation.

**March 2014:** Defendant Fogarty's green card was approved after hardship letters were submitted by Plaintiff and her mother, a former Ambassador to the United Nations. Plaintiff gave birth to two more children with Defendant Fogarty during their marriage.

**2017 – 2023:** Judge Eisenpress engaged in concerning social interactions with opposing counsel, Ms. Kersting and Ms. O'Grady, including international travel in 2019.

**November 3, 2020:** After obtaining citizenship unbeknownst to Plaintiff, Defendant Fogarty met with Defendant Zeiderman. This meeting launched a calculated scheme to gain an unfair advantage in the divorce, designed to deprive Plaintiff of her rightful share of the marital estate—hundreds of millions of dollars, her solely-owned residence, and

custody of her children. They immediately began collaborating, implementing measures to dispossess her of her assets and isolate her from her children. These actions resulted in her unwitting dispossession and the loss of custody and access to her children a year later, upon the start of divorce proceedings.

**November 30, 2020:** Three weeks after meeting with Zeiderman, Defendant Fogarty initiated a scheme to deprive Plaintiff of her equitable share of the marital estate. He immediately excluded her from Highbury Concrete, a marital asset. With the assistance of Gardner and Cole Schotz, Fogarty created numerous subsidiary entities that excluded her. This calculated move was designed to conceal assets and potentially violates the New York State Dissipation Law, specifically NY DRL 236B. The appointment of one of these CEOs by Gardner's secretary further underscores this deception. This action, aimed at obtaining an unlawful advantage in the divorce proceedings, led to the Plaintiff's unwitting dispossession a year later, potentially contravening case law on disclosure and concealment.

**March 8, 2021:** A $2,500 campaign contribution from Miller Zeiderman to Judge Eisenpress triggered her first mandatory two-year disqualification.

**September 21, 2021:** Plaintiff informed Defendant Fogarty of her intent to divorce after a decade of abuse against her and their children.

**September 22, 2021:** Defendant Fogarty had Plaintiff abruptly removed from her home with only the clothes on her back, retaliated by fabricating a 2017 incident to obtain a fraudulent ex parte TOP. He and his attorney Defendant Kersting coerced and extorted false testimony from Plaintiff's vulnerable adult son, Brandon Jimenez, exploiting his

neurological disorder by manipulative therapy (without parental knowledge), withholding medication, and threatening his employment. Defendant Fogarty further compounded this misconduct by serving a fraudulent subpoena to compel Mr. Jimenez's perjured testimony, which he has since recanted.

**September 28, 2021:** The purpose of Defendant Fogarty's maliciously obtained TOP—a fraudulent and abusive instrument used to gain leverage in the divorce—was made evident six days later when he commenced divorce proceedings, seeking exclusive possession of all marital assets (including Highbury Concrete and the marital residences) and sole custody of the children.

**October 30, 2021:** Defendant Fogarty unlawfully disposed of Plaintiff's belongings from the marital home, devastating the children.

**November 17, 2021:** Defendant Zeiderman emailed the court clerk, with a copy to Judge Eisenpress, requesting that Judge Eisenpress preside over the matter. At the time of this request, both Ms. Zeiderman and Judge Eisenpress were aware that Judge Eisenpress was disqualified from presiding over any case involving the law firm of Miller Zeiderman until March 7, 2023. Despite this disqualification, the request was granted.

**May 9, 2022:** A fundraiser hosted by Defendant Fogarty's counsel for Judge Eisenpress triggered her second disqualification. Judge Eisenpress had accepted over $16,000 in contributions.

**March 16, 2022:** A second $2,500 contribution from Miller Zeiderman triggered Judge Eisenpress's third mandatory disqualification.

**May 17, 2022:** Judge Eisenpress *sua sponte* imposed a supervision order on Plaintiff and awarded Defendant Fogarty temporary custody of the children, all without an evidentiary hearing. This order was based on a Notice of Settlement submitted by Defendant Fogarty's counsel, Kersting, the terms of which Plaintiff never agreed to. The Notice was signed behind closed doors without a court reporter present. The supervision order lacked the required end date.

**May 20, 2022:** Plaintiff's then-counsel, Robert Sunshine, declined to file a recusal motion against Judge Eisenpress for fear of retaliation. Plaintiff subsequently retained Jeanmarie Marquardt, Esq., who agreed to file an Order to Show Cause seeking Judge Eisenpress's recusal.

**May 23, 2022:** Judge Eisenpress reluctantly recused herself. However, she refused to vacate her prior order of May 17, 2022.

**May 24, 2022:** Judge Zugibe was assigned to the case. Plaintiff alleges that Judge Zugibe immediately retaliated against her and began violating her civil, human, and parental rights. Despite Judge Eisenpress's disqualification, Judge Zugibe refused to vacate the May 17th order.

**February 24, 2024:** Federal Magistrate Judge Peggy Kuo ordered Defendant Fogarty to pay $2 million in back wages to employees in a class action lawsuit.

**November 15, 2024:** Plaintiff filed a civil RICO action against Defendant Fogarty and six other defendants.

This motion focuses on Cole Schotz's and Brian Gardner's conduct related to Highbury and Defendant Fogarty's legal matters, which gives rise to the conflicts of interest and ethical

violations discussed below. These issues are further compounded by the judicial actions described above, which have created an environment prejudicial to Plaintiff. Plaintiff played a crucial role in Highbury's early success, managing Human Resources and benefits for approximately 500 employees until 2018.

## GROUNDS FOR DISQUALIFICATION

### A. Defendant's Mischaracterizations and Evasive Denials: A Pattern of Deception

Defendant's Memorandum relies heavily on denials that are demonstrably false, directly contradicted by the evidence, or attempt to minimize crucial facts. Brian Gardner's declaration, rather than dispelling Plaintiff's concerns, reinforces the very issues that compel disqualification.

- **Highbury Concrete Representation: A Blatant Misrepresentation:** Defendant's claim that Plaintiff's connection to Highbury is "legally and factually baseless" is a deliberate falsehood. Highbury's very existence is a testament to Plaintiff's crucial contributions. Founded with Plaintiff's premarital assets and credit—resources Defendant Fogarty lacked due to his undocumented status at the time—Highbury is demonstrably a family business, with Thomas Fogarty and Sai Malena Jimenez-Fogarty, and Thomas and Laura Gorman each owning fifty percent, a fact reflected in their personal income tax filings. All four individuals were required to sign critical documents, including bonds, solidifying this shared ownership. Plaintiff's role, however, extended far beyond mere financial backing. Highbury would not exist were it not for Plaintiff. Unlike the other three principals, Plaintiff was born in the USA, attended college, ran a business prior to Highbury, and possessed over 20 years of experience working in corporate America for a Fortune 100 company. The Gormans, and even Defendant Fogarty, had no experience in corporate

6

America or running any business, and the Gorman's had poor credit. It was Plaintiff's excellent business acumen and credit history that made Highbury possible. She provided essential initial capital and credit, and then dedicated years of extensive, documented work to the company, serving as Benefits Administrator and managing Human Resources for over 500 employees. Her responsibilities even included conducting safety training at construction sites, in both English and Spanish. These undeniable contributions establish a clear and substantial community of interest in Highbury, rendering Cole Schotz's dual representation not only problematic, but inherently and irreconcilably conflicted. (***Exhibit A, B, and C***).

- **Prior Consultation: Mr. Gardner's "Lack of Recollection" Strains Credulity:** Mr. Gardner's declaration attempts to minimize the significance of Plaintiff's prior consultation. His assertion of a "lack of recollection" regarding a consultation concerning Defendant Fogarty's "poor investments" and their potential impact on Plaintiff in the context of a potential divorce strains credulity beyond the breaking point. The matters discussed during this consultation—Highbury Concrete investments, other Highbury business matters, and the potential of Plaintiff divorcing Defendant Fogarty—were of considerable legal importance, particularly given Plaintiff's lack of legal training. Mr. Gardner even offered to refer Plaintiff to a divorce attorney, mentioning his Rutgers classmate worked Greenberg Traurig, and discussed personal matters, including their children's college plans, his home on Martha's Vineyard. Plaintiff specifically requested that Mr. Gardner refrain from disclosing the substance of his divorce-related conversations with Defendant Fogarty, and Mr. Gardner explicitly assured her that he would comply, citing attorney-client privilege as the basis for his non-disclosure. Such selective amnesia regarding a prior consultation

about the very subject matter of this litigation—the management and division of marital assets—is simply not believable. This consultation establishes a clear attorney-client relationship, triggering the protections of Rule 1.9(a) of the ABA Model Rules of Professional Conduct, which prohibits representation adverse to a former client in a substantially related matter. *Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 132 (1996)

- **2021 Transactions: A Transparent Attempt at Asset Concealment:** Defendant's characterization of the 2021 corporate restructuring as serving "typical business organization purposes" is demonstrably false. The suspicious timing of these transactions—immediately following Defendant Fogarty's secret consultation with his divorce attorneys at Miller Zeiderman LLP on November 3, 2020, and clearly in anticipation of divorce proceedings—strongly suggests a different and far more sinister motive: asset concealment. Plaintiff's initial motion details the numerous entities created. Defendant's utter failure to address the suspicious timing of these transactions, coupled with their inability to explain the sheer number of entities formed, underscores the weakness of their defense and reinforces the inescapable inference of a deliberate and calculated effort to shield assets from Plaintiff. This conduct mirrors the egregious situation in *Kubin v. Miller*, 801 F.Supp. 1101 (S.D.N.Y. 1992), where disqualification was warranted due to the attorney's representation of a party in a divorce while simultaneously representing a corporation involved in the transfer of marital assets. *Kubin* is directly on point, exposing the impropriety of such dual representation in the context of asset transfer during divorce proceedings.

- **The Cardenas Litigation: Settlement Does Not Erase Misconduct:** Defendant's reliance on the *Cardenas* litigation settlement as a shield against allegations of misconduct is demonstrably misplaced. A settlement, while resolving the immediate dispute, does not retroactively erase or legitimize prior misrepresentations made to the court. Plaintiff's allegations specifically target Defendant Fogarty's alleged fraudulent representations to the court during the *Cardenas* litigation, as well as Mr. Gardner's knowledge and inaction regarding these misrepresentations. Defendant has conspicuously failed to provide any evidence whatsoever to refute these specific and serious allegations of fraud on the court. **(Exhibit D)**.

- **The Highbury Transaction Policy: A Denial Lacking All Credibility:** Defendant's denial of any knowledge of the Highbury policy regarding transactions exceeding $200,000 is simply not believable. For a sophisticated law firm like Cole Schotz to claim ignorance of such a fundamental corporate policy, particularly given the scale of Highbury's operations and the firm's extensive involvement in Highbury's affairs, defies logic, common sense, and all reasonable professional standards. This implausible denial further erodes Defendant's credibility and casts significant doubt on the veracity of their other assertions.

## B. Concurrent Conflict of Interest (Rule 1.7)

Cole Schotz represents both Defendant Fogarty in this RICO action and Highbury Concrete, a marital asset. This dual representation creates a direct and disqualifying concurrent conflict. Highbury's financial interests are inextricably linked to Defendant Fogarty's and are directly impacted by the RICO allegations. Mr. Gardner's defense of Defendant Fogarty directly conflicts

with Plaintiff's pursuit of her claims and protection of her share of the marital estate, including her interest in Highbury. Plaintiff's claims directly implicate Highbury's financial dealings and management, making the conflict unavoidable.

Further, Cole Schotz previously represented Defendant Fogarty in related class action lawsuits concerning the *same* wage theft allegations now raised in Plaintiff's RICO complaint. Plaintiff alleges Defendant Fogarty improperly used Highbury funds, potentially including stolen employee wages, to pay his personal divorce attorneys. Plaintiff also alleges bad faith and delay tactics by Defendant Fogarty and Mr. Gardner in the wage theft litigation, including deliberately delaying proceedings, withholding discovery, and retaliating against employee plaintiffs. Plaintiff now challenges the very conduct Mr. Gardner previously defended, creating a clear conflict.

## C. Successive Representation (Rule 1.9)

Plaintiff consulted with Mr. Gardner in 2018 regarding Highbury investments and potential divorce proceedings. This prior consultation is substantially related to the current RICO litigation, as both involve allegations of financial misconduct and asset concealment impacting Plaintiff's marital estate. Mr. Gardner possesses confidential information from the 2018 consultation relevant to this litigation. This successive representation violates Rule 1.9. *Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 132 (1996)

## D. Advocate-Witness Rule (Rule 3.7)

Mr. Gardner's testimony is essential to resolving key issues, particularly regarding the alleged asset concealment scheme, the 2020 Highbury restructuring, and his prior representation of Defendant Fogarty in *Cardenas v. Highbury Concrete Inc.*, including alleged fraudulent

representations made in that case. This dual role as counsel and witness violates Rule 3.7. *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009); *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437, 445 (1987)

### E. Gardner's Implication in Financial Misconduct

Plaintiff alleges Mr. Gardner is directly implicated in the financial misconduct and/or fraud perpetrated by Defendant Fogarty and/or Highbury. Plaintiff's initial motion details the creation of multiple business entities by Defendant Fogarty, some with similar names to Highbury, funded with Highbury assets, and registered solely under Defendant Fogarty's name. Plaintiff's initial motion also mentions Kim McEllen from Cole Schotz's involvement in these entities.

### F. Imputed Disqualification (Rule 1.10)

Because Mr. Gardner is disqualified, his knowledge and any confidential information he possesses is imputed to the entire firm of Cole Schotz P.C. Therefore, Cole Schotz P.C. must also be disqualified.

### G. Misuse of Marital Assets

Defendant Fogarty's use of Highbury funds, a marital asset, to pay his personal legal fees violates automatic orders and further demonstrates his bad faith. This misappropriation of funds not only directly violates existing automatic orders but also creates a gross and unfair imbalance in the litigation. Plaintiff, denied access to marital assets that are rightfully hers, is forced to proceed pro se, a significant disadvantage in complex federal litigation, while Defendant enjoys the benefit of highly skilled and expensive legal counsel funded by resources that rightfully belong,

at least in part, to Plaintiff. This inequity underscores the immediate and urgent need for intervention by the Court. *Goldsmith v. Goldsmith*, 159 A.D.2d 318 (N.Y. App. Div. 1st Dep't 1990)

## H. Unequal Access to Information

Mr. Gardner's prior and ongoing representation of Highbury gives him access to privileged and confidential information that Plaintiff lacks, creating a significant imbalance in this litigation. This unequal access to information further prejudices Plaintiff and undermines the fairness of the proceedings.

## I. Cumulative Effect and Appearance of Impropriety

The cumulative effect of these violations, including the concurrent and successive conflicts, the advocate-witness rule violation, Mr. Gardner's alleged direct implication in financial misconduct and fraud, and the false statements to the Court, demonstrates a clear pattern of unethical conduct that compels disqualification. These violations, taken together, create an undeniable appearance of impropriety, undermining public trust in the legal profession and the integrity of these proceedings. Even if some of these individual issues might not be sufficient grounds for disqualification on their own, the combined and cumulative effect of these violations creates an undeniable and irreconcilable conflict of interest and severely undermines the integrity of these proceedings.

## J. Response to Defendant's Arguments

Defendant's arguments in opposition are based on misstatements of fact, misapplication of legal principles, and a disregard for the evidence presented by Plaintiff. Defendant's characterization of this motion as "frivolous" and part of a "retaliatory harassment campaign" is a

misrepresentation. This motion addresses serious ethical breaches that impact the integrity of this RICO action. Defendant's arguments minimizing Plaintiff's connection to Highbury ignore her significant contributions and financial stake. Defendant's attempts to downplay the significance of the 2018 consultation with Mr. Gardner contradict the well-established principle that even preliminary consultations can create an attorney-client relationship, as recognized in *NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 133 (2d Cir. 1976) and *United States v. Ostrer*, 597 F.2d 337, 341 (2d Cir. 1979). Furthermore, Defendant's assertion that Mr. Gardner's testimony is not crucial ignores the central role he played in the 2020 restructuring and his prior involvement in the *Cardenas* litigation, making him a key witness regarding the alleged fraudulent scheme.

### K. The Court's Inherent Power to Supervise Attorneys

This Court has not only the inherent power but also the solemn and inescapable ethical obligation to supervise attorneys practicing before it and to take appropriate and decisive action to ensure ethical conduct and maintain the integrity of the judicial process. Disqualification is a drastic remedy, but it is a necessary and inescapable one in this extraordinary case to address the serious, cumulative, and undeniable ethical violations committed by Cole Schotz. *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)

## LEGAL ARGUMENT

I.    **Brian Gardner and Cole Schotz's Concurrent Representation of Highbury Concrete and Thomas Fogarty Creates A Direct and Disqualifying Conflict of Interest Warranting Disqualification Under Rule 1.7.**

### a. Dual Representation

"It is well-settled that outside counsel to a corporation represents the corporation, not its shareholders or other constituents. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2d Cir.1983) ("A

'corporate attorney'—whether an in-house lawyer or a law firm that serves as counsel to the company—owes a duty to act in accordance with the interests of the corporate entity itself. [The] client is the corporation."). This rule is entirely consonant with Rule 1.13 of the New York Rules of Professional Conduct, N.Y. R. Prof'l Conduct § 1.13(a) ( "[A] lawyer employed or retained by an organization ... is the lawyer for the organization and not for any of the constituents."), and with the Restatement (Third) of the Rule Governing Lawyers, § 96 cmt. b (explaining that a lawyer retained by a corporation has an attorney-client relationship with the corporation, but the lawyer "does not thereby also form a client-lawyer relationship with all or any individuals employed by it or who direct its operations or who have an ownership or other beneficial interest in it, such as shareholders"). *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 177 (2d Cir. 2009).

Respondent's argument that Defendant Thomas Fogarty would be prejudiced if he is denied the opportunity to use Cole Schotz LLC, "his chosen counsel of over a decade", to represent him in this action, is contrary to case law and violates the New York Rule of Ethics and Professional Standards, not to mention statutory law. As admitted in their *Opposition* (Opp. pg. 5) and in Mr. Gardner's Declaration (Gardner Decl. ¶ 4), "Highbury is a longtime client of Cole Schotz, and has been represented  by Cole Schotz and Mr. Gardner for over a decade…" However, according to the Model Rules as well as the New York's Appellate Division, Cole Schotz does not represent Mr. Fogarty or Ms. Jimenez, personally, and cannot, if their interests are averse to the interests of the corporation, as is the case here. Hence, this dual representation violates Rule 1.7 of the New York Rules of Professional Conduct. *See*, *Kubin v. Miller*, 801 F. Supp. 1101 (S.D.N.Y. 1992).

The Amended Complaint accuses Mr. Fogarty of RICO violations which compromise the integrity of Highbury Concrete and the other shareholders, including Ms. Jimenez, who is one (1) of four (4). It is alleged that Mr. Fogarty with the help of Mr. Gardner and Cole Schotz set up shell

companies of Highbury Concrete to "…conceal assets and defraud Plaintiff in "anticipation of Defendant Fogarty filing for divorce." (*See* Am. Compl. ¶¶ 75, and 148). Although Respondent deems this theory to be absurd, what's more absurd is the fact that he does not realize that his interests are averse to the interests of Highbury Concrete in this matter as well as the other shareholders.

This issue creates a conflict of interest. Thomas Fogarty's fraudulent acts are completely connected to his role at Highbury Concrete and will therefore have a significant impact on the corporation therefore his interests are averse to Highbury, and Cole Schotz and Attorney Gardner cannot represent him. "One who has served as attorney for a corporation may not represent an individual shareholder in a case in which his interests are adverse to other shareholders" (*Morris v Morris,* 306 AD2d 449, 452 [2003], quoting *Matter of Greenberg [Madison Cabinet & Interiors],* 206 AD2d 963, 965 [1994]; *see Gordon v Ifeanyichukwu Chuba Orakwue Obiakor,* 117 AD3d 681, 683 [2014]). Under this principle of law, an attorney may not serve as corporate or general counsel for an entity, or its owners jointly, then change roles to become litigation counsel for one owner adverse to the other. When counsel for a corporation has represented the corporation and its owners jointly and then changes roles to represent one owner against the others, the *Deerin* Rule is implicated, thereby requiring disqualification as a conflict of interest is created due to the adverse effect on the attorney's judgement and loyalty as a result of the competing interests of the adverse parties. (*Deerin v. Ocean Rich Foods, LLC*, 158 AD3d 603, 71 NYS3d 123 [2nd Dept. 2018]). *Deerin* explicitly applied this principle in the context of general counsel for an LLC. *Wiener v. Braunstein*, INDEX NO. 650853/2019, 4-5 (N.Y. Sup. Ct. 2019).

As Counsel to Highbury Concrete, Cole Schotz and Mr. Gardner's legal obligation is to act in the best interest of the corporation as a whole and not the individual shareholders, including Mr.

Fogarty.  It is alleged that Mr. Fogarty directed "certain reorganization transactions and the creation of additional Highbury-affiliated entities…" for self-serving reasons, in bad faith, for personal profit, to appropriate corporate assets and opportunities to himself through these shell companies. Cole Schotz and Mr. Gardner were directly involved in the "reorganization transactions" as General Counsel to Highbury.  In *Deerin*, the plaintiff alleged in an affidavit that the defendants' counsel was involved in the formation of Ocean Rich, and the defendants' counsel admitted that he had represented Ocean Rich in "various past matters." (*Matter of Fleet v Pulsar Constr. Corp.,* 143 AD2d at 189)  The Court found that  "[c]ounsel's prior representation of Ocean Rich "was in fact represent[ation of] its [three] shareholders," whose competing interests were at issue in this action" (*Id*. quoting *Deerin v. Ocean Rich Foods, LLC*, 158 AD3d 603).

In *Braunstein*, the Court found that the petitioner's application for disqualification of the corporation's counsel, Attorney Brickman, who had served and was still serving as counsel, and also representing individual members in an arbitration proceeding where their individual interests were adverse to each other, had to be granted to remove the appearance of impropriety.  The court was not persuaded by the respondent's attempt to distinguish *Deerin* based on the assertion that Brickman was merely consulted with as part of the process of preparing and finalizing the operation agreement or that his representation of petitioner was in a limited capacity to resolve disputes with a former employer.  The Court concluded it was "a distinction without a difference." The Court further held that  Brickman was in a position to receive relevant confidences regarding the petitioner and noted that the Court did not require Petitioner to point to any specific confidences under *Deerin*.  (Braunstein,  N.Y. Sup. Ct. 2019 at 5).

Here, Cole Schotz and Mr. Gardner represented Defendant Fogarty in the past, and in doing so, represented the other three (3) shareholders when their interests were aligned.  However, in this

matter, the interests of all the shareholders and the corporation itself are adverse. Hence, concurrent representation is not appropriate, as Mr. Fogarty's actions are directly averse to the interests of the corporation. Therefore, instead of investigating and strategizing a defense on behalf of Mr. Fogarty *(Opp.* pg. 2*),* Cole Schotz and Mr. Gardner should be investigating and strategizing how to shield the corporation from any wrongdoing by Mr. Fogarty because they cannot adequately protect the interests of both parties as the interests are completely adverse at this point. In defending Mr. Fogarty, Mr. Gardner or any other attorney at Cole Schotz, may need to employ legal defense strategies that compromise and go against the corporation's need to distance itself from Mr. Fogarty in order to prevent it being implicated in the alleged misconduct. The fact that Mr. Gardner and Cole Schotz have taken up the charge of defending Mr. Fogarty as opposed to the corporate entity, shows they are already compromised and are conflicted. "An officer or director of a corporation stands in a fiduciary relationship to it and thus must discharge his duties diligently and in good faith." Business Corporation Law § 717. "Those duties include a duty of undivided loyalty to the corporation." *Foley v D'Agostino*, 21 AD2d 60, 66-67. "An officer or director is not permitted to derive a personal profit at the expense of the corporation." *Bertoni v Catucci*, 117 AD2d 892. "Furthermore, his dealings with respect to corporate assets are subject to close scrutiny and must be characterized by absolute good faith; he may not appropriate corporate assets or opportunities to himself or to a new corporation formed for that purpose." *Alexander & Alexander v Fritzen*, 147 AD2d 241; *Schacter v Kulik*, 96 AD2d 1038, 1039, *appeal dismissed* 61 N.Y.2d 758.

### b.  Highbury Concrete is a Marital Asset

"Marital property is defined in New York Domestic Relations Law Section 236(B)(1)(c) as "all property acquired by either or both spouses during the marriage and before the execution of a

separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held.""" *Medley v. Medley*, 20556/2007, 4 (N.Y. Sup. Ct. 2011). Highbury Concrete was formed after the marriage of the parties when Mr. Fogarty was still an undocumented person in the United States. As such, Highbury is a marital asset pursuant to the NYDRL. Thus, Plaintiff's financial interests are tied to its well-being due to her initial capital and credit contributions used to finance the venture, as well as her extensive work at the company until 2018 (managing benefits and HR for about 500 employees). Hence Mr. Gardner cannot ethically represent Defendant Fogarty to the detriment of Highbury, as this directly harms Plaintiff's financial interests.

A corporation's attorney is legally obligated to represent the corporation as a whole, meaning they cannot take actions that would benefit one shareholder at the expense of others, as this would create a conflict of interest and breach their fiduciary duty to the company. Essentially, the primary loyalty of the attorney lies with the entity itself, not individual shareholders. Thus, Gardner's representation creates conflicting loyalties as his duty to Defendant Fogarty clashes with his duty to Highbury Concrete, in which Plaintiff has a financial stake. This divided loyalty impairs Gardner's ability to effectively advocate for either party, thereby risking prejudice to all involved. Further, Gardner has access to confidential information related to Highbury Concrete which could be used against Plaintiff. The appearance of such potential misuse is enough for disqualification. (*See Board of Educ. of the City of New York v. Hausner*, 623 F. Supp. 1500, 1505 (E.D.N.Y. 1985)).

### c. Concurrent Conflict of Interest – Wage Theft Litigation

Plaintiff's RICO complaint involves Defendant Fogarty's alleged wage theft from Highbury employees. Mr. Gardner and Cole Schotz represented Defendant Fogarty in related class action lawsuits involving these same wage theft allegations, as mentioned in Plaintiff's original motion. This creates a direct conflict, as Plaintiff now challenges the conduct Gardner previously defended

as Defendant Fogarty used stolen Highbury employee wages to pay his personal divorce attorneys, further entangling Highbury's finances in the marital dispute and creating an additional conflict for Cole Schotz.  Plaintiff further alleges Defendant Fogarty and Brian Gardner acted in bad faith in the wage theft litigation, deliberately delaying proceedings, withholding discovery, and engaging in retaliatory actions against the employee plaintiffs, including wrongful termination. This concurrent representation further violates Rule 1.7 as it is averse to the interests of the Corporate client and the other shareholders who had no knowledge of Mr. Fogarty's actions.

### d.  Successive Representation

**Prior Consultation (2018):** Plaintiff consulted with Brian Gardner in 2018 regarding Highbury investments and potential divorce, receiving a referral to a divorce attorney at Greenberg Traurig. They also discussed personal matters, as detailed in Plaintiff's initial motion. This establishes an attorney-client relationship.

**Substantially Related Matters:** This prior representation is related to the current RICO litigation, which involves allegations of financial misconduct and asset concealment impacting Plaintiff's marital estate, the subject of the 2018 consultation.

**Rule 1.9 Violation:** Mr. Gardner's representation of Defendant Fogarty in this RICO action violates Rule 1.9 of the New York Rules of Professional Conduct.

**Confidential Information:** Mr. Gardner possesses confidential information from the 2018 consultation relevant to this litigation. The potential use of this information is enough for disqualification. *See Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 132 (1996).

## II.    The Advocate-Witness Rule

The Advocate-Witness Rule primarily applies when the attorney is representing the client before a jury and simultaneously serves as a fact witness in the same proceeding.  Disqualification under Rule 3.7(a) is triggered only when the attorney actually serves as an advocate before the jury. *In re Corporate Resource Services, Inc.*, 595 B.R. 434 (2019).  Additionally, the movant must demonstrate that the lawyer's testimony is necessary and substantially likely to be prejudicial to the client.  *Id.*  "A lawyer may also not act as an advocate where "another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (quoting N.Y. R. Prof'l Conduct S 3.7(b)(1)).

It is without a doubt that Mr. Gardner will be called to testify at trial in this matter, as his testimony regarding the alleged asset concealment scheme and his involvement, and the involvement of Cole Schotz as a whole, is essential to Plaintiff's claims, is wholly prejudicial to Defendant Fogarty, and the very taint of impropriety is such that the integrity of the judicial system will suffer if Mr. Gardner does not testify.  Mr. Gardner's admission and confirmation of his participation, and that of Cole Schotz, in the 2020 restructuring of Highbury Concrete is material and necessary as he has information that is material to the development of Plaintiff's claims which Plaintiff has been denied access to by Defendant Fogarty and his co-defendants, Ashley Kersting, Lisa Zeiderman, and Judge Thomas Zugibe.  The weight of Ms. Gardner's testimony is significant and there is no other witness known at this time who can testify to the matter at hand as Mr. Gardner has admittedly been counsel to Highbury Concrete for at least a decade, assisted in the restructuring, and placed Ms. Kim McEllen, paralegal from Cole Schotz, as CEO of one of the entities.  Additionally,  the timing of the 2020 restructuring, immediately following Defendant

Fogarty's consultation with divorce counsel, suggests asset concealment. *See Kubin v. Miller*, 801 F.Supp. 1101 (S.D.N.Y. 1992).

Mr. Gardner has also represented Highbury and Defendant Fogarty in cases concerning wage theft, which Plaintiff alleges Defendant Fogarty potentially used to pay his personal divorce attorneys at Miller Zeiderman LLP. This allegation directly connects Highbury's finances to Defendant Fogarty's personal legal expenses and further exacerbates the conflict of interest. Mr. Gardner, as General Counsel to Highbury, possesses this and other information  material to the matter and his testimony is highly likely to be prejudicial to Defendant Fogarty as his ethical obligation is that of truthfulness and his primary interest should be that of his client, Highbury Concrete, and not Thomas Fogarty.

Mr. Gardner's testimony is not cumulative as the only other potential pool of witnesses to draw from is that of Cole Schotz, which should therefore, be disqualified by imputation. Mr. Gardner's knowledge and confidences are imputed to the entire firm under Rule 1.10 of the ABA Model Rules of Professional Conduct and its New York counterpart.  In order to protect Plaintiff's confidential information and ensure the integrity of these proceedings, the entire firm of Cole Schotz P.C. must be disqualified along with Mr. Gardner.  "Therefore, we now hold that a law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178–79 (2d Cir. 2009).  New York Rules of Professional Conduct 1.10 "…provides for a firm to continue its representation of a client where an ethical screen is enforced between the attorney who possesses client confidences and other members of the law firm. The exception requires the written, informed

consent of each affected client or former client.  *Citrangola v. Citrangola*, No. 613502/2022, 2023 WL 2948638, at *3 (N.Y. Sup. Ct. Apr. 06, 2023).

   Here, Cole Schotz or Mr. Gardner has not filed any written consent of each of the affected parties, including Ms. Jimenez.  Further, they have not filed any documents to demonstrate that any information Mr. Gardner possesses is unlikely to be significant or material in this matter. ***Kassis v. Teacher's Ins. and Annuity Ass'n,*** 93 NY2d 611, 617, 695 NYS2d 515, 717 NE2d 674 [1999]; ***Moray v. UFS Industries, Inc.,*** 156 AD3d 781, 782-783, 67 NYS3d 256 [2d Dept 2017]; *see **Essex Equity Holdings USA, LLC v. Lehman Bros., Inc.,*** 29 Misc3d 371, 909 NYS2d 285 [Sup Ct New York County 2010]). *Id.*   Where a law firm has not demonstrated such proof and has not shown that the attorney in question does not possess knowledge likely to be significant or material in the litigation, taking steps to erect an ethical screen is immaterial (*ACP 140 West End Ave. Associates, LP v. Kelleher,* 1 Misc3d 909[A], 781 NYS2d 622, WL 2319099 [Civil Ct City of New York 2003]). *Id.*

   Mr. Gardner's prior consultation with Plaintiff combined with his alleged role in the "reorganization" and financial misconduct, as well as his representation of Defendant Fogarty in *Cardenas v. Highbury Concrete Inc.* and the alleged fraudulent representations made in that case, makes him a key witness. This dual role as counsel and witness violates Rule 3.7. *See Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437, 445 (1987).  Further, Gardner's prior and ongoing representation of Highbury gives him access to privileged information Plaintiff lacks, creating an imbalance in this RICO litigation. This unequal footing impedes Plaintiff's ability to effectively pursue her claims, and the dual representation creates a real and obvious conflict warranting disqualification.

**CONCLUSION**

The record before this Court paints a disturbing picture of calculated deception, ethical breaches, and blatant disregard for the rules of professional conduct. Defendant Fogarty, aided by Cole Schotz and Mr. Gardner, has engaged in a pattern of misconduct designed to prejudice Plaintiff and deprive her of her rightful share of the marital estate. Mr. Gardner's demonstrably false statements to this Court, his direct implication in the alleged financial misconduct, and the irreconcilable conflicts of interest detailed above, singularly and cumulatively, compel disqualification. Defendant Fogarty's attempts to minimize his and Mr. Gardner's actions are unavailing in the face of the overwhelming evidence presented by Plaintiff. Allowing Cole Schotz to continue representing Defendant Fogarty would not only condone this unethical behavior but also severely undermine public confidence in the integrity of the judicial process. This Court has a solemn obligation to safeguard the fairness and impartiality of these proceedings. Disqualification is not merely warranted; it is absolutely essential to protect Plaintiff's rights, preserve the integrity of the Court, and uphold the ethical standards of the legal profession.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Immediately disqualify Cole Schotz P.C. and Brian Gardner from representing Defendant Thomas Fogarty in this action.

2. Impute any knowledge and confidential information possessed by Brian Gardner to the entire firm of Cole Schotz P.C., thereby disqualifying the firm from representing Defendant Fogarty in this matter.

3. Grant such other and further relief as the Court deems just and equitable, including but WHEREFORE, Plaintiff respectfully requests that this Court grant her motion to disqualify Cole Schotz P.C. from representing Defendant Thomas Fogarty and grant such other and further relief as the Court deems just and equitable.

Dated: Mount Vernon, NY
      February 10, 2025

                Respectfully submitted,

                LAW OFFICES OF
                TRICIA S. LINDSAY, PC

                *Tricia Lindsay*
                _____

By:    Tricia S. Lindsay
        *Attorney for the Plaintiff*
        531 E. Lincoln Ave., Ste.5B
        Mount Vernon, Nyb 10552
        Ph: (347) 386-4604; (914) 668-4908
           (347) 349-5433
        *Email:* tricialindsaylaw@gmail.com
               attorney@tricialindsaylaw.com