UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SAI MALENA  JIMENEZ-FOGARTY

                          **Docket No.**
                          **24-CV-08705-JLR-GWG**

        Plaintiff,

-against-

THOMAS FOGARTY, LISA ZEIDERMAN,
ASHLEY KERSTING, NICOLE DIGIACOMO,
JUDGE SHERRI EISENPRESS, JUDGE
THOMAS ZUGIBE, LAURA MARINO

        Defendant.
------------------------------------------------------------------X


**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO
DISQUALIFY COLE SCHOTZ P.C. AS COUNSEL FOR THOMAS FOGARTY**


LAW OFFICES OF
TRICIA S. LINDSAY, PC
*Attorneys for Plaintiff*
531 E. Lincoln Ave., Ste. 5B
Mount Vernon, NY 10552
Ph: (347) 386-460; (914) 668-4908
Fax: (914) 840-1196
Email:  tricialindsaylaw@gmail.com
            attorney@tricialindsaylaw.com

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ……………………………………………...…1

STATEMENT OF FACTS ………………………………………………………1

LEGAL ARGUEMNT …………………………………………………………...5

    I.    Brian Gardner and Cole Schotz's Concurrent Representation
        of Highbury Concrete and Thomas Fogarty Creates A Direct
        and Disqualifying Conflict of Interest Warranting Disqualification
        Under Rule 1.7……………………………………………………………...5

        a.  Dual Representation …....…………………………………..…….....5

        b.  Concurrent Conflict of Interest – Wage Theft Litigation ………..………..…12

    II.    Successive Representation Exists Due to Brian Gardner's
        Consultation with Plaintiff and His Representation of Thomas
        Fogarty and Highbury Concrete Thus Creating Multiple Conflicts
        of Interest……………………………………………………………..….…….13

    III.    Highbury Concrete is a Marital Asset ……………………………….....17

    IV.    Brian Gardner's Representation of Defendant Fogarty Violates
        The Advocate-Witness Rule as He is a Necessary Witness and
        Will be Called to Testify at Trial …………………………………………...19

    V.    Cumulative Effect and Appearance of Impropriety ……………………....24

    VI.    Cole Schotz Is Disqualified Through Imputation ………………………25

    VII.    DEFENDANT'S CHARACTERIZATION OF PLAINTIFF'S MOTION …..…25

CONCLUSION …………………………………………………………………26

# TABLE OF AUTHORITIES

Page(s)

<u>**Cases**</u>

*ACP 140 W. End Ave. Assopciates, LP. v. Kelleher,* 1 Misc. 3d 909(A), 781
    N.Y.S.2d 622 (Civ. Ct. 2003)……………………………………………………...17, 23

*Alexander & Alexander of New York, Inc. v. Fritzen*, 147 A.D.2d 241,
    542 N.Y.S.2d 530 (1989) ................................................................................................ 11

*Bertoni v Catucci*, 117 AD2d 892 ..................................................................................... 10

*Cinema 5, Ltd. v. Cinerama, Inc.* ....................................................................................... 14

<u>*Citrangola v. Citrangola*</u>, 2023 WL 2948638 (N.Y. Sup. Ct. Apr. 06, 2023 ………………17, 25

*Deerin v. Ocean Rich Foods, LLC*, 158 AD3d 603, 71 NYS3d 123
    [2nd Dept. 2018 ……………………………………………………………..8, 9,10, 11, 14

*Essex Equity Holdings USA, LLC v. Lehman Bros., Inc.* ........................................... 17, 23

*Evans v. Artek Sys. Corp*., 715 F.2d 788 (2d Cir.1983)................................................... 5

*Foley v D'Agostino*, 21 AD2d 60 .................................................................................... 10

*Gordon v Ifeanyichukwu Chuba Orakwue Obiakor*,
    117 AD3d 681 [2014] ...................................................................... …8, 12

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*,
    409 F.3d 127 (2d Cir. 2005).......................................................................................... 24

*Hull v. Celanese Corp.* .................................................................................................... 14

*In re Corporate Resource Services, Inc.*,
    595 B.R. 434 (2019) ....................................................................................................... 20

*Kassis v. Teacher's Ins. and Annuity Ass 'n.* ............................................................. 17, 23

*Kubin v. Miller*,
    801 F. Supp. 1101 (S.D.N.Y. 1992 ....................................................6, 7, 8, 21, 22

*Matter of Fleet v Pulsar Constr. Corp.,* 143 AD2d at 189............................................... 9

*Matter of Greenberg [Madison Cabinet & Interiors,*
   206 AD2d 963 [1994] ............................................................................. 7, 8, 12

*Meehan v. Hopps,*
   (1956) 144 Cal.App.2d 284, 301 P.2d] ....................................................... 13

*Moray v. UFS Industries, Inc.* ....................................................................... 17, 22

*Morris v Morris,*
   306 AD2d 449 [2003] ........................................................................... 8, 12, 22

*Murray v. Metro. Life Ins. Co.,*
   583 F.3d 173 (2d Cir. 2009) ............................................................... 20, 22, 23

*NCK Organization Ltd. v. Bregman,*
   542 F.2d 128 (2d Cir. 1976) ...................................................................... 14, 16

*Rizzuto v. De Blasio* ........................................................................................ 21

*S & S Hotel Ventures Ltd. Partnership v. 777 S.H.,*
   69 N.Y.2d 437 (1987) ................................................................................17, 23

*Schacter v Kulik,*
   96 AD2d 1038 ............................................................................................. 11

*See Board of Educ. of the City of New York v. Hausner,*
   623 F. Supp. 1500 (E.D.N.Y. 1985) ............................................................... 12

*Solomon v. WYSE Technology, Inc.,*
   152 F.R.D. (S.D.N.Y. 1993) ......................................................................... 25

*Tekni-Plex, Inc. v. Meyner & Landis,*
   89 N.Y.2d 123 (1996) ............................................................................. 13, 16

## **Statutes**

New York Domestic Relations Law Section 236(B)(1)(c) ........................................ 17

NY DRL 236B ............................................................................................. 2

## **Rules**

New York Rules of Professional Conduct 1.10 ...............................................22
Rule 1.13 of the New York Rules of Professional Conduct .....................................5, 6
Rule 1.7 of the New York Rules of Professional Conduct.............…...................5, 6,13
Rule 1.9 of the New York Rules of Professional Conduct ..................................... 13, 16

**PLAINTIFF, SAI MALENA JIMENEZ-FOGARTY** ("Plaintiff"), submits this *Reply* in further support of her *Motion to Disqualify Cole Schotz P.C.* ("Cole Schotz") *as Counsel for Defendant Thomas Fogarty* ("Defendant Fogarty") pursuant to applicable state and federal law and New York Rules Ethics and Professional Conduct.

## PRELIMINARY STATEMENT

Defendant's Memorandum mischaracterizes the facts, misstates the law, and conspicuously avoids addressing the core issues of conflict of interest, violation of the advocate-witness rule, financial misconduct, and violations of automatic orders. Defendant's attempt to portray Plaintiff's motion as frivolous and retaliatory are transparent tactics to deflect from the serious and undeniable ethical breaches at issue. This *Reply*, supported by evidence and controlling case law, demonstrates why disqualification is not only warranted but absolutely essential to preserve the integrity of these proceedings and uphold the ethical standards of the legal profession.

## STATEMENT OF FACTS

**January 25, 2013:** Plaintiff and Defendant Fogarty married. Defendant Fogarty was then an undocumented immigrant living in poverty. The marriage facilitated his acquisition of a green card, citizenship, and substantial wealth. (Am. Compl. ¶ 64).

**April 3, 2013:** Highbury Concrete was founded using Plaintiff's premarital assets and credit, as Defendant Fogarty was still undocumented and lacked work authorization. (Id. ¶ 66).

**June 2013:** Defendant Fogarty's green card application was denied due to a material misrepresentation to a U.S. Citizenship and Immigration Services officer. He falsely denied departing the U.S. while lacking legal status, despite evidence of travel to Europe in 2008. This false statement resulted in a pending ten-year ban. (Id. ¶ 67).

**November 7, 2013:** Plaintiff gave birth prematurely to their first child due to stress from Defendant Fogarty's alleged abuse, green card denial and possibility of his deportation. (*Id*. ¶ 204).

**March 2014:** Defendant Fogarty's green card was approved after hardship letters were submitted by Plaintiff and her mother, a former Ambassador to the United Nations. Plaintiff gave birth to two more children with Defendant Fogarty during their marriage. (Jimenez Aff. ¶ 5).

**2017 – 2023:** Judge Eisenpress engaged in concerning social interactions with opposing counsel, Ms. Kersting and Ms. O'Grady, including international travel in 2019. (*Id*. ¶ 3).

**November 3, 2020:** After obtaining citizenship unbeknownst to Plaintiff, Defendant Fogarty met with Defendant Zeiderman. This meeting launched a calculated scheme to gain an unfair advantage in the divorce, designed to deprive Plaintiff of her rightful share of the marital estate—hundreds of millions of dollars, her solely-owned residence, and custody of her children. They immediately began collaborating, implementing measures to dispossess her of her assets and isolate her from her children. These actions resulted in her unwitting dispossession and the loss of custody and access to her children a year later, upon the start of divorce proceedings.(Am. Compl. ¶ 75).

**November 30, 2020:** Three weeks after meeting with Zeiderman, Defendant Fogarty initiated a scheme to deprive Plaintiff of her equitable share of the marital estate. He immediately excluded her from Highbury Concrete, a marital asset. With the assistance of Gardner and Cole Schotz, Fogarty created numerous subsidiary entities that excluded her. This calculated move was designed to conceal assets and potentially violates the New York State Dissipation Law, specifically NY DRL 236B. The appointment of one of these CEOs by Gardner's secretary further underscores this deception. This action, aimed at obtaining an unlawful advantage in the divorce proceedings, led

to the Plaintiff's unwitting dispossession a year later, potentially contravening case law on disclosure and concealment. (*Id*. at 90; Jimenez Aff. ¶ 16).

**March 8, 2021:** A $2,500 campaign contribution from Miller Zeiderman to Judge Eisenpress triggered her first mandatory two-year disqualification. (Am. Compl. ¶ 76).

**September 21, 2021:** Plaintiff informed Defendant Fogarty of her intent to divorce after a decade of abuse against her and their children. (*Id*. ¶ 78).

**September 22, 2021:** Defendant Fogarty had Plaintiff abruptly removed from her home with only the clothes on her back, retaliated by fabricating a 2017 incident to obtain a fraudulent ex parte TOP. He and his attorney Defendant Kersting coerced and extorted false testimony from Plaintiff's vulnerable adult son, Brandon Jimenez, exploiting his neurological disorder by manipulative therapy (without parental knowledge), withholding medication, and threatening his employment. Defendant Fogarty further compounded this misconduct by serving a fraudulent subpoena to compel Mr. Jimenez's perjured testimony, which he has since recanted. (*Id*. ¶ 79).

**September 28, 2021:** The purpose of Defendant Fogarty's maliciously obtained TOP—a fraudulent and abusive instrument used to gain leverage in the divorce—was made evident six days later when he commenced divorce proceedings, seeking exclusive possession of all marital assets (including Highbury Concrete and the marital residences) and sole custody of the children.

**October 30, 2021:** Defendant Fogarty unlawfully disposed of Plaintiff's belongings from the marital home, devastating the children. (*Id*. ¶ 81).

**November 17, 2021:** Defendant Zeiderman emailed the court clerk, with a copy to Judge Eisenpress, requesting that Judge Eisenpress preside over the matter. At the time of this request, both Ms. Zeiderman and Judge Eisenpress were aware that Judge Eisenpress was disqualified from

presiding over any case involving the law firm of Miller Zeiderman until March 7, 2023. Despite this disqualification, the request was granted. (*Id*. ¶ 84).

**May 9, 2022:** A fundraiser hosted by Defendant Fogarty's counsel for Judge Eisenpress triggered her second disqualification. Judge Eisenpress had accepted over $16,000 in contributions. (*Id*. ¶ 93).

**March 16, 2022:** A second $2,500 contribution from Miller Zeiderman triggered Judge Eisenpress's third mandatory disqualification. (Jimenez Aff. ¶¶ 3, 5; Am. Compl. ¶ 95).

**May 17, 2022:** Judge Eisenpress *sua sponte* imposed a supervision order on Plaintiff and awarded Defendant Fogarty temporary custody of the children, all without an evidentiary hearing. This order was based on a Notice of Settlement submitted by Defendant Fogarty's counsel, Kersting, the terms of which Plaintiff never agreed to. The Notice was signed behind closed doors without a court reporter present. The supervision order lacked the required end date. (Am. Compl. ¶ 96).

**May 20, 2022:** Plaintiff's then-counsel, Robert Sunshine, declined to file a recusal motion against Judge Eisenpress for fear of retaliation. Plaintiff subsequently retained Jeanmarie Marquardt, Esq., who agreed to file an Order to Show Cause seeking Judge Eisenpress's recusal. (*Id*. ¶ 97).

**May 23, 2022:** Judge Eisenpress reluctantly recused herself. However, she refused to vacate her prior order of May 17, 2022. (*Id*. ¶ 93).

**May 24, 2022:** Judge Zugibe was assigned to the case, and he immediately retaliated against Plaintiff and began violating her civil, human, and parental rights. Despite Judge Eisenpress's disqualification, Judge Zugibe refused to vacate the May 17th order and has continuously and zealously denied her due process under the law while sentencing her children to ongoing mental, physical, emotional and at one point, sexual, abuse without remorse.  (*Id*. ¶ 93).

**February 24, 2024:** Federal Magistrate Judge Peggy Kuo ordered Defendant Fogarty to pay $2 million in back wages to employees in a class action lawsuit. (*Id*. ¶ 153).

**November 15, 2024:** Plaintiff filed a civil RICO action against Defendant Fogarty and six other defendants.(Dkt. No. 1).

This motion focuses on Cole Schotz's and Brian Gardner's conduct related to Highbury Concrete and Defendant Fogarty's legal matters, which gives rise to the conflicts of interest and ethical violations discussed below. These issues are further compounded by the judicial actions described above, which have created an environment prejudicial to Plaintiff. Plaintiff played a crucial role in Highbury Concrete's early success, managing Human Resources and benefits for approximately five hundred (500) employees until 2018.

## **LEGAL ARGUMENT**

I.  **Brian Gardner and Cole Schotz's Concurrent Representation of Highbury Concrete and Thomas Fogarty Creates A Direct and Disqualifying Conflict of Interest Warranting Disqualification Under Rule 1.7.**

   a.  **Dual Representation**

"It is well-settled that outside counsel to a corporation represents the corporation, not its shareholders or other constituents. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2d Cir.1983) ("A 'corporate attorney'—whether an in-house lawyer or a law firm that serves as counsel to the company—owes a duty to act in accordance with the interests of the corporate entity itself. [The] client is the corporation."). This rule is entirely consonant with Rule 1.13 of the New York Rules of Professional Conduct, N.Y. R. Prof'l Conduct § 1.13(a) ( "[A] lawyer employed or retained by an organization ... is the lawyer for the organization and not for any of the constituents."), and with the Restatement (Third) of the Rule Governing Lawyers, § 96 cmt. b (explaining that a lawyer

retained by a corporation has an attorney-client relationship with the corporation, but the lawyer "does not thereby also form a client-lawyer relationship with all or any individuals employed by it or who direct its operations or who have an ownership or other beneficial interest in it, such as shareholders"). *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 177 (2d Cir. 2009).

Defendant's argument that Defendant Thomas Fogarty would be prejudiced if he is denied the opportunity to use Cole Schotz LLC, "his chosen counsel of over a decade", to represent him in this action, (*Opp*. p. 2), is contrary to case law and violates the standards of practice required by the New York's Rules of Professional Conduct,( N.Y. R. Prof'l Conduct § 1.13(a)). As admitted in their *Opposition* (*Opp*. pg. 5) and in Mr. Gardner's Declaration (*See* Gardner Decl. ¶ 4), "Highbury is a longtime client of Cole Schotz, and has been represented  by Cole Schotz and Mr. Gardner for over a decade…" However, according to the Model Rules as well as the New York's Appellate Division, Cole Schotz does not represent Mr. Fogarty or Ms. Jimenez, personally, and cannot, if their interests are averse to the interests of the corporation, as is the case here. Hence, this dual representation violates Rule 1.7 of the New York Rules of Professional Conduct. *See*, *Kubin v. Miller*, 801 F. Supp. 1101 (S.D.N.Y. 1992).

Cole Schotz represents both Defendant Fogarty in this RICO action and Highbury Concrete, a marital asset. This dual representation creates a direct and disqualifying concurrent conflict. Highbury's financial interests are inextricably linked to Defendant Fogarty's finances and are directly impacted by the RICO allegations. Mr. Gardner's defense of Defendant Fogarty conflicts directly with Plaintiff's pursuit of her claims and protection of her share of the marital estate, including her interest in Highbury. Plaintiff's claims therefore directly implicate Highbury's financial dealings and management. Thus, Gardner's representation also directly conflicts with the interest of his client, Highbury Concrete. The conflict is unavoidable. Further, Gardner cannot

represent Defendant Fogarty against Ms. Jimenez, as they are both shareholders and their interests are averse to each other and to Highbury Concrete. "One who has served as attorney for a corporation may not represent an individual shareholder in a case in which his interests are adverse to other shareholders" *Matter of Greenberg [Madison Cabinet & Interiors],* 206 AD2d 963, 965 [1994].

The Amended Complaint accuses Mr. Fogarty of RICO violations which compromise the integrity of Highbury Concrete and the other shareholders, including Ms. Jimenez, who is one (1) of four (4). It is alleged that Mr. Fogarty with the help of Mr. Gardner and Cole Schotz set up multiple shell companies of Highbury Concrete to "…conceal assets and defraud Plaintiff in "anticipation of Defendant Fogarty filing for divorce." (*See* Am. Compl. ¶¶ 75, and 148). Although Defendant deems this theory to be absurd, what's more absurd is the fact that he does not realize that his interests are averse to the interests of Highbury Concrete in this matter as well as the other shareholders.

Defendant's characterization of the 2021 corporate restructuring as serving "typical business organization purposes" is demonstrably false. (*See* Gardner Decl. ¶ 12). The suspicious timing of these transactions—immediately following Defendant Fogarty's secret consultation with his divorce attorneys at Miller Zeiderman LLP on November 3, 2020, clearly in anticipation of divorce proceedings—strongly suggests a different and far more sinister motive: asset concealment. Defendant's utter failure to address this suspicious timing of the numerous entities created, coupled with their inability to explain the sheer number of entities formed, underscores the weakness of their defense, and reinforces the inescapable inference of a deliberate and calculated effort to shield assets from Plaintiff. This conduct mirrors the egregious situation in *Kubin v. Miller,* 801 F.Supp. 1101 (S.D.N.Y. 1992), where disqualification was warranted due to

the attorney's representation of a party in a divorce while simultaneously representing a corporation involved in the transfer of marital assets. *Kubin* is directly on point, exposing the impropriety of such dual representation in the context of asset transfer during divorce proceedings. Furthermore, Thomas Fogarty intentionally failed to disclose the reorganization details to the Plaintiff, despite having previously discussed all aspects of the Highbury Concrete family business, including any changes, from its inception. Unknown to his wife, Thomas Fogarty reorganized the business into separate entities, excluding the Plaintiff and the Fogarty and Gorman families, with the new structure involving only Thomas Fogarty, Thomas Gorman, and Bernard Griffin.

Thomas Fogarty's fraudulent acts are completely connected to his role at Highbury Concrete and will therefore have a significant impact on the corporation therefore his interests are averse to Highbury, and Cole Schotz and Attorney Gardner cannot represent him. "One who has served as attorney for a corporation may not represent an individual shareholder in a case in which his interests are adverse to other shareholders" (*Morris v Morris,* 306 AD2d 449, 452 [2003], quoting *Matter of Greenberg [Madison Cabinet & Interiors],* 206 AD2d 963, 965 [1994]; *see Gordon v Ifeanyichukwu Chuba Orakwue Obiakor,* 117 AD3d 681, 683 [2014]). Under this principle of law, an attorney may not serve as corporate or general counsel for an entity, or its owners jointly, then change roles to become litigation counsel for one owner adverse to the other. When counsel for a corporation has represented the corporation and its owners jointly and then changes roles to represent one owner against the others, the *Deerin Rule* is implicated, thereby requiring disqualification, as a conflict of interest is created due to the adverse effect on the attorney's judgement and loyalty as a result of the competing interests of the adverse parties. (*Deerin v. Ocean Rich Foods, LLC*, 158 AD3d 603, 71 NYS3d 123 [2nd Dept. 2018]).

*Deerin* explicitly applied this principle in the context of general counsel for an LLC. *Wiener v. Braunstein*, INDEX NO. 650853/2019, 4-5 (N.Y. Sup. Ct. 2019).

Further, Cole Schotz previously represented Defendant Fogarty in related class action lawsuits concerning the *same* wage theft allegations now raised in Plaintiff's RICO complaint. (*Am.. Compl.* ¶¶ 132, 152, 153, 156(a), 178(a), 226, 269, 274, 275). Plaintiff alleges Defendant Fogarty improperly used Highbury funds, potentially including stolen employee wages, to pay his personal divorce attorneys.(Id. ¶¶ 136, 148(K). Thomas Fogarty withdrew a total of $1.55 million from Highbury Concrete, comprising $250,000 on September 27, 2022, $700,000 on October 22, 2023, and $600,000 on January 19, 2024. (Id. ¶¶ 136, 148(a), 149, 259 (2a). He asserted that these funds were used for 'legal fees and personal expenses,' as documented in his official Statement of Net Worth dated May 3, 2024. **(*See* Exhibit 1-Thomas Fogarty SNW)**. However, during this time, federal class action lawsuits were pending, and Fogarty knowingly failed to pay employees the wages owed to them, an act that constitutes wage theft—a federal offense. *Id*. The bad faith and delay tactics utilized by Defendant Fogarty and Mr. Gardner in the wage theft litigation, including deliberately delaying proceedings, withholding discovery, and retaliating against employees, compromises the integrity of the corporation and is averse to the interest of the other shareholders, including Ms. Jimenez. **(*See* Exhibit 2-Decision and Order)**. Plaintiff now challenges this very conduct which Mr. Gardner previously defended, creating a clear conflict with the shareholders and the corporation, his true client. In *Deerin*, the plaintiff alleged in an affidavit that the defendants' counsel participated in the formation of Ocean Rich, and the defendants' counsel admitted that he had represented Ocean Rich in "various past matters." (*Matter of Fleet v Pulsar Constr. Corp.,* 143 AD2d at 189 *quoting Deerin v. Ocean Rich Foods, LLC*, 158 AD3d 603). The Court found that "[c]ounsel's prior representation of Ocean Rich "was in fact

represent[ation of] its [three] shareholders," whose competing interests were at issue in this action"
(*Id*.).  The *Deerin Rule* was implicated by the court and counsel was disqualified. *Id*.

In defending Mr. Fogarty, Mr. Gardner, or any other attorney at Cole Schotz, may need to
employ legal defense strategies that compromise and go against the corporation's need to distance
itself from Mr. Fogarty in order to prevent it being implicated in the alleged misconduct.  The fact
that Mr. Gardner and Cole Schotz have taken up the charge of defending Mr. Fogarty as opposed
to the corporate entity, shows they are already compromised and are conflicted.  This conflict has
has resulted in multiple lawsuits against the corporation since Thomas Fogarty and Brian Gartner
have aligned their interests.  The following cases in which Highbury was named as a Defendant
demonstrates the resulting effects of this conflict:  Fabre et al v. Highbury Concrete Inc. et al -
1:17-cv-00984;  Flores v. Highbury Concrete, Inc., 1:20-cv-01036 ;  Contreras v. Highbury
Concrete Inc. et al;  Zamora et al v. Highbury Concrete, Inc. et al.

As Counsel to Highbury Concrete, Cole Schotz and Mr. Gardner's legal obligation is to act
in the best interest of the corporation as a whole and not the individual shareholders, including Mr.
Fogarty.  It is alleged that Mr. Fogarty directed "certain reorganization transactions and the creation
of additional Highbury-affiliated entities…" for self-serving reasons, in bad faith, for personal
profit, to appropriate corporate assets and opportunities to himself through these shell companies.
Cole Schotz and Mr. Gardner were directly involved in the "reorganization transactions" as
General Counsel to Highbury. (*see* Am. Compl., ¶¶ 75, 148).   "An officer or director of a
corporation stands in a fiduciary relationship to it and thus must discharge his duties diligently and
in good faith."  Business Corporation Law § 717. "Those duties include a duty of undivided loyalty
to the corporation."  *Foley v D'Agostino*, 21 AD2d 60, 66-67.   "An officer or director is not
permitted to derive a personal profit at the expense of the corporation." *Bertoni v Catucci*, 117

AD2d 892.  "Furthermore, his dealings with respect to corporate assets are subject to close scrutiny and must be characterized by absolute good faith; he may not appropriate corporate assets or opportunities to himself or to a new corporation formed for that purpose." *Alexander & Alexander v Fritzen*, 147 AD2d 241; *Schacter v Kulik*, 96 AD2d 1038, 1039, *appeal dismissed* 61 N.Y.2d 758. Once the officer is shown to have done so, his interests are deemed averse to the corporation's interest, thereby implicating legal representation and protection by counsel.

In *Braunstein*, the Court found that the petitioner's application for disqualification of the corporation's counsel, Attorney Brickman, who had served and was still serving as counsel, and also representing individual members in an arbitration proceeding where their individual interests were averse to each other, had to be granted to remove the appearance of impropriety.  The court was not persuaded by the Defendant's attempt to distinguish *Deerin* based on the assertion that Brickman was merely consulted with as part of the process of preparing and finalizing the operation agreement or that his representation of petitioner was in a limited capacity to resolve disputes with a former employer.  The Court concluded it was "a distinction without a difference." *Wiener v. Braunstein*, INDEX NO. 650853/2019, 5 (N.Y. Sup. Ct. 2019).  The Court further held that  Brickman was in a position to receive relevant confidences regarding the petitioner and noted that the Court did not require Petitioner to point to any specific confidences under *Deerin*.  *Id*.

Here, Cole Schotz and Mr. Gardner represented Defendant Fogarty in the past, and in doing so, represented the other three (3) shareholders when their interests were aligned.  However, as in *Deerin*, in the case at bar, the interests of all the shareholders and the corporation itself are adverse. *Id*.  Hence, concurrent representation is not appropriate, as Mr. Fogarty's actions are directly averse to the interests of the corporation and that of the other shareholders for that matter.  Therefore, instead of investigating and strategizing a defense on behalf of Mr. Fogarty *(Opp.* pg. 2*)*, Cole

Schotz and Mr. Gardner should be investigating and strategizing how to shield the corporation from the consequences of any wrongdoing by Mr. Fogarty because they cannot adequately protect the interests of both parties as the interests are completely adverse at this point.

A corporation's attorney is legally obligated to represent the corporation as a whole, meaning they cannot take actions that would benefit one shareholder at the expense of others, as this would create a conflict of interest and breach their fiduciary duty to the company. Essentially, the primary loyalty of the attorney lies with the entity itself, not individual shareholders. *Morris v. Morris*, 306 A.D.2d 449, 452 (2003); *Matter of Greenberg* [Madison Cabinet & Interiors], 206 A.D.2d 963, 965 (1994); *Gordon v. Ifeanyichukwu Chuba Orakwue Obiakor*, 117 A.D.3d 681, 683 (2014); *Wiener v. Braunstein*, INDEX NO. 650853/2019 (N.Y. Sup. Ct. 2019). Thus, Gardner's representation creates conflicting loyalties as his duty to Defendant Fogarty clashes with his duty to Highbury Concrete, in which Plaintiff has a financial stake. This divided loyalty impairs Gardner's ability to effectively advocate for either party, thereby risking prejudice to all involved. Further, Gardner has access to confidential information related to Highbury Concrete which could be used against Plaintiff. The appearance of such potential misuse is enough for disqualification. (*See Board of Educ. of the City of New York v. Hausner*, 623 F. Supp. 1500, 1505 (E.D.N.Y. 1985)).

### b. Concurrent Conflict of Interest – Wage Theft Litigation

Plaintiff's RICO complaint involves Defendant Fogarty's alleged wage theft from Highbury employees. Mr. Gardner and Cole Schotz represented Defendant Fogarty in related class action lawsuits involving these same wage theft allegations, as mentioned in Plaintiff's original motion. (Mot. to Disqual. p.2 § II ¶ 2). This creates a direct conflict, as Plaintiff now challenges the conduct Gardner previously defended as Defendant Fogarty potentially used stolen Highbury employee wages to pay his personal divorce attorneys, further entangling Highbury's finances in the marital

dispute and creating an additional conflict for Cole Schotz.  Plaintiff further alleges Defendant
Fogarty and Brian Gardner acted in bad faith in the wage theft litigation, deliberately delaying
proceedings, withholding discovery, and engaging in retaliatory actions against the employee
plaintiffs, including wrongful termination. (*See* **Exhibit 9 -Highbury a Concerning Record**).  All
these actions are averse to Highbury as the corporate client, and directly averse to Plaintiff's
interests as a shareholder, co-owner, and founder.  This concurrent representation further violates
Rule 1.7 as it is averse to the interests of the Corporate client and the other shareholders who, at
least one (1) of which, had no knowledge of Mr. Fogarty's actions.

## II.    Successive Representation Exists Due to Brian Gardner's Consultation with Plaintiff and His Representation of Thomas Fogarty and Highbury Concrete Thus Creating Multiple Conflicts of Interest.

"The attorney owes undivided allegiance only to the corporate entity which he or she
represents rather than any affiliated persons or entities." *Meehan v. Hopps* (1956) 144 Cal.App.2d
284, 290 [301 P.2d 101].

Mr. Gardner's representation of Defendant Fogarty in this RICO action violates Rule 1.9 of
the New York Rules of Professional Conduct, because Mr. Gardner possesses confidential
information from the 2018 consultation relevant to this litigation. The potential use of this
information is enough for disqualification. *See Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d
123, 132 (1996).

Plaintiff consulted with Mr. Gardner in 2018 regarding Highbury investments and potential
divorce proceedings. This prior consultation is substantially related to the current RICO litigation,
as both involve allegations of financial misconduct and asset concealment impacting Plaintiff's
marital estate. As a result of this consultation, Mr. Gardner possesses confidential information from
the 2018 consultation relevant to this litigation. This successive representation violates Rule 1.9.
(*See Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 132 (1996), where the New York Court

of Appeals defined a substantial relationship as when the interests of a current and former client are materially adverse.).

Here, Mr. Gardner had an attorney client relationship with Ms. Jimenez and as such, he obtained confidential information in his capacity as counsel. The information discussed will result in prejudice to Plaintiff in the instant matter. "Canon 4 states the axiom that "[a] lawyer should preserve the confidences and secrets of a client." Canon 9 provides that "[a] lawyer should avoid even the appearance of professional impropriety." ABA Code of Professional Responsibility (1975). The Code is recognized by both federal and state courts in this circuit as prescribing appropriate guidelines for the professional conduct of the bar. *Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1386 (2d Cir. 1976); *Hull v. Celanese Corp.,* 513 F.2d 568, 571 n. 12 (2d Cir. 1975). *NCK Organization Ltd. v. Bregman*, 542 F.2d 128, 130 n.2 (2d Cir. 1976)

Mr. Gardner's declaration attempts to minimize the significance of Plaintiff's prior consultation. His assertion of a "lack of recollection" regarding a consultation concerning Defendant Fogarty's "poor investments" and their potential impact on Plaintiff in the context of a potential divorce strains credulity beyond the breaking point. As noted supra., the *Braunstein* court was not persuaded by the Defendant's attempt to distinguish *Deerin* based on the assertion that counsel in that matter was merely consulted with as part of the process of preparing and finalizing the operation agreement or that his representation of petitioner was in a limited capacity to resolve disputes with a former employer. In fact, the *Court* concluded it was "a distinction without a difference." *(Braunstein, N.Y. Sup. Ct. 2019 at 5).* The Court further held that counsel was in a position to receive relevant confidences regarding the petitioner and noted that the *Court* did not require Petitioner to point to any specific confidences under *Deerin. Id.*

Contrary to Defendant Brian Gardner's assertion that he does not know who the plaintiff is, he is, in fact, very well aware of her identity and role. Mr. Gardner was hired by Highbury Concrete directly as a result of his connection to the plaintiff. **(Jimenez Decl. ¶ 6-8)**.   In early January 2018, the plaintiff was seeking legal referrals for Highbury Concrete and was referred to Mr. Gardner by Gino Orrino. **(Jimenez Decl. ¶ 6-7)**.  The defendant, Mr. Fogarty, had a preference for hiring someone from Ireland, but the plaintiff explained that the legal systems in Ireland and the United States differ significantly. **(Jimenez Decl. ¶ 6)**. Accordingly, Plaintiff sought legal referrals from industry professionals. **(Jimenez Decl. ¶ 6)**.  On January 10, 2018, Gino provided the plaintiff with several referrals, including Mr. Gardner. **(Jimenez Decl. ¶ 7)**.  Despite Mr. Gartner's feigned lack of knowledge of the plaintiff, he was well aware of her involvement with Highbury Concrete, having been brought into the company on her recommendation. **(Jimenez Decl. ¶ 8)**.  In fact, Mr. Fogarty, with only a rudimentary education, had minimal input regarding Highbury's operations, and after Mr. Gardner's hiring, he repeatedly expressed dissatisfaction with his performance. **(Jimenez Decl. ¶ 8)**.  He frequently referred to Mr. Gardner as "Bendy Bryan," accusing him of bending the rules, further underscoring the strained and adversarial dynamic between them. **(Jimenez Decl. ¶ 8)**.

Subsequently, in April of 2018, Plaintiff met with Mr. Gardner once again.  The matters discussed during this consultation—Highbury Concrete investments, other Highbury business matters, and the potential of Plaintiff divorcing Defendant Fogarty—were of considerable legal importance, particularly given Plaintiff's lack of legal training. **(Jimenez Decl. ¶ 9-12)**.  Mr. Gardner even offered to refer Plaintiff to a divorce attorney, mentioning that his Rutgers University classmate worked for Greenberg Traurig.  **(Jimenez Decl. ¶ 11)**.  He also discussed personal matters, including his daughter's college plans and his vacation home on Martha's Vineyard.

15

**(Jimenez Decl. ¶ 11)**.  Plaintiff specifically requested that Mr. Gardner refrain from disclosing the substance of his divorce-related conversations with Defendant Fogarty, and Mr. Gardner explicitly assured her he would comply, citing attorney-client privilege as the basis for his non-disclosure.

**(Jimenez Decl. ¶ 11)**.  Therefore, such selective amnesia regarding a prior consultation about the very subject matter of this litigation—the management and division of marital assets—is simply not believable. This consultation establishes a clear attorney-client relationship, triggering the protection of Rule 1.9(a) of the ABA Model Rules of Professional Conduct, which prohibits representation adverse to a former client in a substantially related matter. *Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 132 (1996). Furthermore, Plaintiff would have had no means of obtaining any of this personal information about Mr. Gardner, had it not been for their consultation.

Additionally, Mr. Gardner's prior and ongoing representation of Highbury gives him access to privileged and confidential information that Plaintiff lacks, thereby creating a significant imbalance in this litigation. This unequal access to information further prejudices Plaintiff and undermines the fairness of the proceedings.  While Defendant Fogarty, via representation by Cole Schotz and Mr. Gardner, will have access to Plaintiff's confidential information shared with Mr. Gardner during said consultation, Plaintiff will not have the same access to confidential information from the corporate client or Defendant Fogarty.  The mere possibility of such is enough to warrant disqualification. "We conclude that the public's interest in the preservation of confidentiality in the attorney-client relationship requires that the order of disqualification of the United States District Court for the Southern District of New York, Constance Baker Motley, *Judge,* be affirmed." *NCK Organization Ltd. v. Bregman*, 542 F.2d 128, 130 (2d Cir. 1976).  *NCK Organization Ltd. v. Bregman*, 542 F.2d 128, 130 n.2 (2d Cir. 1976).  The right to counsel of choice is not absolute and may be overridden where necessary—for example, to protect

a compelling public interest—but it is a valued right, and any restrictions must be carefully scrutinized." *S & S Hotel Ventures Ltd. Partnership v. 777 S.H.*, 69 N.Y.2d 437, 443 (1987).

As is the case here, in *Citragnola,*, Cole Schotz P.C. was disqualified when the court held the firm had not filed any documents to demonstrate that any information acquired by counsel was unlikely to be significant or material in the current litigation.  *Citrangola v. Citrangola*, Index No. 613502/2022, 7 (N.Y. Sup. Ct. 2023);  (See also *Kassis v. Teacher's Ins. and Annuity Ass 'n.* 93 N.Y.2d 611, 617, 695 N.Y.S.2d 515, 717 N.E.2d 674 [1999]; *Moray v. UFS Industries, Inc.,* 156 A.D.3d 781. 782-783, 67 N.Y.S.3d 256 [2d Dept 2017]; *see Essex Equity Holdings USA, LLC v. Lehman Bros., Inc.,* 29 Misc.3d 371, 909 N.Y.S.2d 285 [Sup CtNew York County 2010]).  "Where a law firm has not demonstrated such proof and has not shown that the attorney in question does not possess knowledge likely to be significant or material in the litigation, taking steps to erect an ethical screen is immaterial *(ACP 140 West End Ave. Associates, LP v. Kelleher,* 1 Misc.3d 909[A], 781 N.Y.S.2d 622, WL 2319099 [Civil Ct City of New York 2003]). *Id.*

### III.    Highbury Concrete is a Marital Asset

"Marital property is defined in New York Domestic Relations Law Section 236(B)(1)(c) as "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held."" *Medley v. Medley*, 20556/2007, 4 (N.Y. Sup. Ct. 2011).  Highbury Concrete was formed on April 3, 2013, after the marriage of the parties which took place on January 25, 2013, when Mr. Fogarty was still an undocumented person in the United States. **(Jimenez Decl. ¶ 2, 4)**. On September 21, 2021, Ms. Jimenez informed Mr. Fogarty of her intent to file for divorce, and on September 22, 2021, defendant Fogarty forcefully removed Ms. Jimenez from the marital home using a fraudulently obtained Temporary Order of Protection with the assistance of his

Counsel, defendant Ashley Kersting and Lisa Zeiderman. **(Jimenez Decl. ¶ 3)**. Mr. Fogarty contemporaneously filed for divorce on September 28, 2021. **(Jimenez Decl. ¶ 3)**. As such, contrary to Defendant's delusional assertion, Highbury Concrete **is** a marital asset pursuant to the NYDRL. Thus, Plaintiff's financial interests are tied to its well-being due to her initial capital and credit contributions used to finance the venture, as well as her extensive work at the company until 2018 (managing Benefits and HR for approximately 500 employees). Hence Mr. Gardner cannot ethically represent Defendant Fogarty to the detriment of Highbury, as this directly harms Plaintiff's financial interests, and is in conflict with the ethical obligations owed to his client, Highbury Concrete.

Defendant's claim that Plaintiff's connection to Highbury is "legally and factually baseless" (Opp p. 7). is a deliberate falsehood. Highbury's very existence is a testament to Plaintiff's crucial contributions. Founded with Plaintiff's premarital assets and credit—resources Defendant Fogarty lacked due to his undocumented status at the time—Highbury is demonstrably a family business, with Thomas Fogarty and Sai Malena Jimenez-Fogarty, and Thomas and Laura Gorman each owning fifty percent, a fact reflected in their personal income tax filings. **(Jimenez Decl. ¶ 4)**. All four (4) individuals were required to sign critical documents, including bonds, solidifying this shared ownership. **(Jimenez Decl. ¶ 4)**. Plaintiff's role, however, extended far beyond mere financial backing. The fact is, Highbury would not exist were it not for Plaintiff. Unlike the other three (3) principals, Plaintiff was born in the USA, attended college, ran a business prior to Highbury, and possessed over twenty (20) years of experience working in corporate America for a Fortune 100 company. **(Jimenez Decl. ¶ 5)**. The Gormans, and Defendant Fogarty, had no experience in corporate America or running any business, and the Gorman's had poor credit for that matter. **(Jimenez Decl. ¶ 5)**. It was Plaintiff's excellent business acumen and credit history

that made Highbury Concrete a reality. She provided essential initial capital and credit and then dedicated years of extensive, documented work to the company. **(Jimenez Decl. ¶ 5)**. As the Benefits Administrator, Plaintiff managed Human Resources for over five hundred (500) employees. **(Jimenez Decl. ¶ 5)**. Her responsibilities included designing, implementing, and managing employee benefits programs, such as medical and retirement plans. **(Jimenez Decl. ¶ 5)**. She made crucial decisions regarding benefits plans and engaged in negotiations with various vendors. **(Jimenez Decl. ¶5)**. Moreover, she conducted safety training at construction sites, in both English and Spanish.

These undeniable contributions establish a clear and substantial community of interest in Highbury, rendering Cole Schotz's dual representation not only problematic but inherently and irreconcilably conflicted. **(*See* Exhibit 3-Benefits Training Plaintiff Conducted, Exhibit 4-Benefits Administration Email and Exhibit 5-Past Bonds for Highbury Concrete Requiring Signature of All 4 Principals).**

### IV.     Brian Gardner's Representation of Defendant Fogarty Violates The Advocate-Witness Rule as He is a Necessary Witness and Will be Called to Testify at Trial

The Advocate-Witness Rule primarily applies when the attorney is representing the client before a jury and simultaneously serves as a fact witness in the same proceeding. "Rule 3.7 provides that "lawyer[s] shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." RPC § 3.7(a)." *Superb Motors Inc. v. Deo*, 23-CV-6188 (JMW), 12 (E.D.N.Y. Dec. 1, 2023). In short, this rule "prohibits an attorney from representing a party in case where the attorney will or 'ought to' be called as a witness." *Rizzuto v. De Blasio*, No. 17-CV-7381 (ILG) (ST), 2019 WL 1433067 (E.D.N.Y. Mar. 29, 2019). The rule attempts to alleviate four risks:

1. the lawyer might appear to vouch for his own credibility;

2. the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer adversary and attempt to impeach his credibility;

3. some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and

4. when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused. *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009).

*Superb Motors Inc. v. Deo*, 23-CV-6188 (JMW), 12 (E.D.N.Y. Dec. 1, 2023)

 Disqualification under Rule 3.7(a) is triggered only when the attorney actually serves as an advocate before the jury. *In re Corporate Resource Services, Inc.*, 595 B.R. 434 (2019). Additionally, the movant must demonstrate that the lawyer's testimony is necessary and substantially likely to be prejudicial to the client. *Id.* "A lawyer may also not act as an advocate where "another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (quoting N.Y. R. Prof'l Conduct S 3.7(b)(1)).

 It is without a doubt that Mr. Gardner will be called to testify at trial in this matter, as his testimony regarding the alleged asset concealment scheme and his involvement, and the involvement of Cole Schotz as a whole, is essential to Plaintiff's claims, is wholly prejudicial to Defendant Fogarty, and the very taint of impropriety is such that the integrity of the judicial system will suffer if Mr. Gardner does not testify. *Id.* "An attorney should be disqualified under the advocate-witness rule when necessary to avoid prejudice at trial." *Id.* Mr. Gardner's admission and confirmation of his participation, and that of Cole Schotz, in the 2020 restructuring of Highbury Concrete is material and necessary, as he has information that is pivotal to the

development of Plaintiff's claims which Plaintiff has been denied access to by Defendant Fogarty and his co-defendants, Ashley Kersting, Lisa Zeiderman, and Judge Thomas Zugibe. The weight of Mr. Gardner's testimony is significant and there is no other witness, outside of Cole Schotz, known at this time who can testify to the matter at hand as Mr. Gardner and Cole Schotz, has admittedly been counsel to Highbury Concrete for at least a decade, assisted in the restructuring, and placed Ms. Kim McEllen, paralegal from Cole Schotz, as CEO of one of the entities. Additionally, the timing of the 2021 restructuring, immediately following Defendant Fogarty's consultation with divorce counsel, Lisa Zeiderman, suggests asset concealment. *See Kubin v. Miller*, 801 F.Supp. 1101 (S.D.N.Y. 1992).

Mr. Gardner has also represented Highbury Concrete and Defendant Fogarty in cases concerning wage theft, which Plaintiff alleges Defendant Fogarty potentially used to pay his personal divorce attorneys at Miller Zeiderman LLP. This allegation directly connects Highbury's finances to Defendant Fogarty's personal legal expenses and further exacerbates the conflict of interest. Mr. Gardner, as General Counsel to Highbury possesses this and other information material to the matter, and his testimony is highly likely to be prejudicial to Defendant Fogarty as his ethical obligation is that of truthfulness and his primary interest should be that of his client, Highbury Concrete, and not Thomas Fogarty. Further, the suspicious timing of these transactions—immediately following Defendant Fogarty's secret consultation with his divorce attorneys at Miller Zeiderman LLP on November 3, 2020, and clearly in anticipation of divorce proceedings lends credence to the asset concealment. Defendant's silence with regard to the questionable timing of the "restructuring" in relation to the commencement of the divorce action and removal of Plaintiff from the marital home coupled with barring her from accessing Highbury Concrete and their inability to explain the number of entities formed, highlights the vulnerability

of their defense and reinforces the inescapable inference of an intentional and premeditated effort to seize Plaintiff's assets. This conduct mirrors the egregious situation in *Murray v. Miller*, 801 F.Supp. 1101 (S.D.N.Y. 1992), where disqualification was warranted due to the attorney's representation of a party in a divorce while simultaneously representing a corporation involved in the transfer of marital assets.

Mr. Gardner's testimony is not cumulative as the only other potential pool of witnesses to draw from is that of Cole Schotz, which should therefore be disqualified by imputation. Mr. Gardner's knowledge and confidences are imputed to the entire firm under Rule 1.10 of the ABA Model Rules of Professional Conduct and its New York counterpart. In order to protect Plaintiff's confidential information and ensure the integrity of these proceedings, the entire firm of Cole Schotz P.C. must be disqualified along with Mr. Gardner. "Therefore, we now hold that a law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178–79 (2d Cir. 2009). Defendant's claims that Cole Schotz can continue representing Mr. Fogarty and should not be disqualified are unavailing, as Cole Schotz has not and cannot acquire written consent from Highbury Concrete or each of its shareholders, officers, and/or directors. Mr. Fogarty cannot consent on behalf of Highbury, and Ms. Jimenez will not. Also, they have not filed any documents to demonstrate that any information Mr. Gardner possesses is unlikely to be significant or material in this matter. New York Rules of Professional Conduct 1.10 "…provides for a firm to continue its representation of a client where an ethical screen is enforced between the attorney who possesses client confidences and other members of the law firm. The exception requires the written, informed consent of each affected client or former client. *Citrangola v. Citrangola,* No.

613502/2022, 2023 WL 2948638, at *3 (N.Y. Sup. Ct. Apr. 06, 2023) *quoting **Kassis v. Teacher's Ins. and Annuity Ass'n,** 93 NY2d 611, 617, 695 NYS2d 515, 717 NE2d 674 [1999]; **Morris v. UFS Industries, Inc.,** 156 AD3d 781, 782-783, 67 NYS3d 256 [2d Dept 2017]; see **Essex Equity Holdings USA, LLC v. Lehman Bros., Inc.,** 29 Misc3d 371, 909 NYS2d 285 [Sup Ct New York County 2010]). Id.* Where a law firm has not demonstrated such proof and has not shown that the attorney in question does not possess knowledge likely to be significant or material in the litigation, taking steps to erect an ethical screen is immaterial (*ACP 140 West End Ave. Associates, LP v. Kelleher,* 1 Misc3d 909[A], 781 NYS2d 622, WL 2319099 [Civil Ct City of New York 2003]). *Id.*

Mr. Gardner's prior consultation with Plaintiff combined with his alleged role in the "reorganization" and financial misconduct, as well as his representation of Defendant Fogarty in *Cardenas v. Highbury Concrete Inc.* and the alleged fraudulent representations made in that case, makes him a key witness. Plaintiff alleges Mr. Gardner is directly implicated in financial misconduct and/or fraud perpetrated by Defendant Fogarty and/or Highbury Concrete. Plaintiff's initial motion details the creation of multiple business entities by Defendant Fogarty, some with similar names to Highbury, funded with Highbury assets, and registered solely under Defendant Fogarty's name, and Kim McEllen from Cole Schotz's involvement in these entities to the point of being named as CEO. This quagmire was created by Thomas Fogarty with the assistance of Cole Schotz and Brian Gardner, Highbury's counsel of ten (10) years, therefore, because Highbury has been used as a cover for potentially specious activity, Mr. Gardner, as counsel, possesses information material to the underlying matter and thus must be called to testify at trial. With that, he cannot represent Mr. Fogarty in this action as the repugnant stench of impropriety is enough to taint the judiciary in the eyes of the public. This dual role as counsel and witness violates Rule 3.7. *See Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). *S & S Hotel*

*Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437, 445 (1987). Further, Gardner's prior and ongoing representation of Highbury gives him access to privileged information Plaintiff lacks, creating an imbalance in this RICO litigation. This unequal footing impedes Plaintiff's ability to effectively pursue her claims, and the dual representation creates a real and obvious conflict warranting disqualification.

### V.    Cumulative Effect and Appearance of Impropriety

The cumulative effect of these violations, including the concurrent and successive conflicts, the advocate-witness rule violation, Mr. Gardner's alleged direct implication in financial misconduct and fraud, and the false statements to the Court, demonstrates a clear pattern of unethical conduct that compels disqualification. Defendant's reliance on the *Cardenas* litigation settlement as a shield against allegations of misconduct is demonstrably misplaced. A settlement, while resolving the immediate dispute, does not retroactively erase or legitimize prior misrepresentations made to the court. Plaintiff's allegations specifically target Defendant Fogarty's alleged fraudulent representations to the court during the *Cardenas* litigation, as well as Mr. Gardner's knowledge and inaction regarding these misrepresentations. Defendant has conspicuously failed to provide any evidence whatsoever to refute these specific and serious allegations of fraud on the court. **(*See* Exhibit 2-Decision and Order).**

These violations, taken together, create an undeniable appearance of impropriety, undermining public trust in the legal profession and the integrity of these proceedings, the cumulative effect of which creates an indisputable and irreconcilable conflict of interest, warranting disqualification. "Courts have broad discretion to disqualify attorneys when necessary to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Incorporated Village of Valley Stream,* 409 F.3d 127 (2d Cir. 2005).

## VI.    Cole Schotz Is Disqualified Through Imputation

Pursuant to New York Rule 1.10 conflicts of one lawyer are imputed to the entire firm. *Citragnola,* N.Y. Sup. Ct. Apr. 6, 2023.  "Disqualification is required when an attorney's conflicts are imputed to the firm, and the firm has not taken adequate steps to avoid the conflict." *Solomon v. WYSE Technology, Inc.*, 152 F.R.D. 491 (S.D.N.Y. 1993).  Here, Gardner's knowledge and conflicts are imputed to Cole Schotz, who has condoned and participated in the very same actions taken by Mr. Gardner, to the point of involving other staff members at Cole Schotz in the scheme to conceal Highbury's assets.  As in *Citragnola*, here, Cole Schotz has not met the requirements for avoiding imputed disqualification, and must therefore be disqualified as counsel in the instant matter.

## VII.    DEFENDANT'S CHARACTERIZATION OF PLAINTIFF'S MOTION

Defendant's claim that this motion is "frivolous" and part of a "retaliatory harassment campaign" is a blatant misrepresentation. This motion addresses fundamental conflicts of interest and ethical breaches that directly impact the integrity of *this* RICO action. It is not a tactic in a matrimonial dispute, nor is it an attempt to relitigate that case. The RICO claims are distinct and independent, involving different causes of action and potentially different parties. This motion focuses solely on the ethical obligations of attorneys practicing before this Court. Defendant's *Opposition* mischaracterizes Plaintiff's motion and downplays the serious ethical violations that necessitate disqualification. Defendant's arguments are based on misstatements of fact, misapplication of legal principles, and a general disregard for the compelling evidence presented by Plaintiff.

## CONCLUSION

The record before this Court paints a disturbing picture of calculated deception, ethical breaches, and blatant disregard for the rules of professional conduct. Defendant Fogarty, aided by Cole Schotz and Mr. Gardner, has engaged in a pattern of misconduct designed to prejudice Plaintiff and deprive her of her rightful share of the marital estate. Mr. Gardner's demonstrably false statements to this Court, his direct implication in the alleged financial misconduct, and the irreconcilable conflicts of interest detailed above, singularly, and cumulatively, compel disqualification.   Defendant Fogarty's attempts to minimize his and Mr. Gardner's actions are unavailing in the face of the overwhelming evidence presented by Plaintiff. Allowing Cole Schotz to continue representing Defendant Fogarty would not only condone this unethical behavior but also severely undermine public confidence in the integrity of the judicial process. This Court has a solemn obligation to safeguard the fairness and impartiality of these proceedings. Disqualification is not merely warranted; it is absolutely essential to protect Plaintiff's rights, preserve the integrity of the Court, and uphold the ethical standards of the legal profession.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Immediately disqualify Cole Schotz P.C. and Brian Gardner from representing Defendant Thomas Fogarty in this action.

2. Impute any knowledge and confidential information possessed by Brian Gardner to the entire firm of Cole Schotz P.C., thereby disqualifying the firm from representing Defendant Fogarty in this matter.

3. To ensure a fair and equitable outcome in this matter, and to prevent prejudice to the Plaintiff, Defendant Thomas Fogarty should be restrained from utilizing marital assets for the payment of his legal counsel, as Plaintiff is currently precluded from accessing such funds for her own legal representation.

4. Grant such other and further relief as the Court deems just and equitable.

Dated: February 19, 2025

Respectfully submitted,

LAW OFFICES OF
TRICIA S. LINDSAY, PC

*Tricia Lindsay*

By:   Tricia S. Lindsay
     *Attorney for the Plaintiff*
     531 E. Lincoln Ave., Ste.5B
     Mount Vernon, Nyb 10552
     Ph: (347) 386-4604; (914) 668-4908
         (347) 349-5433
     *Email:*  tricialindsaylaw@gmail.com
           attorney@tricialindsaylaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

DATED: New York, New York
        February 19, 2025

*Tricia Lindsay*
Tricia S. Lindsay, Esq.