UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SAI MALENA JIMENEZ-FOGARTY

                                                                                                 **Docket No.**
                                                                                                  **24-CV-08705-JLR-GWG**

                      Plaintiff,

-against-

THOMAS FOGARTY, LISA ZEIDERMAN,
ASHLEY KERSTING, NICOLE DIGIACOMO,
JUDGE SHERRI EISENPRESS, JUDGE
THOMAS ZUGIBE, LAURA MARINO

                    Defendant.
-------------------------------------------------------------------X

**AFFIRMATION IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY COLE SCHOTZ P.C. AS COUNSEL FOR DEFENDANT THOMAS FOGARTY**

I, Sai Malena Jimenez-Fogarty, being duly sworn, depose and state as follows:

1. I am the Plaintiff in the above-captioned action. I have personal knowledge of the facts stated herein, and if called upon to testify, I am able to and will testify competently thereto.

**I. Factual Background**

2. I met Defendant Thomas Fogarty on January 25, 2011, who I learned was undocumented and living in severe poverty. Shortly thereafter, I informed him that I had recently relocated to New York and sold my Pennsylvania home for a substantial profit. I also mentioned that my mother was a former Ambassador to the United Nations. On January 25, 2013, I married Defendant Fogarty.

3. In September 2021, after years of abuse, when I announced my intent to divorce, Defendant Fogarty retaliated by having me removed from our home, fabricating a 2017 incident to obtain a fraudulent protective order, and coercing false testimony from my special needs adult son (from a

different relationship). I was abruptly removed from my home and haven't been allowed back in over three (3) years. Defendant Fogarty then initiated divorce proceedings, seeking sole custody and all assets. On October 30, 2021, he unlawfully disposed of my belongings. From 2017 to 2023, Judge Eisenpress engaged in inappropriate social interactions with opposing counsel, Ms. Kersting, including international travel in 2019. Furthermore, from March 2021 to May 2022, she repeatedly failed to recuse herself as required by law despite multiple disqualifying campaign contributions from Miller Zeiderman.

**II. Highbury Concrete, Inc. And My Contributions**

4.      I used my premarital assets and credit, to establish Highbury Concrete on April 2, 2013, with no financial input whatsoever from Defendant Thomas Fogarty. He lacked both a green card and any financial means to contribute. The business was structured with Fogarty's and Gorman's each family owning fifty percent, as documented in our personal income tax filings. I served as Highbury's Benefits and Human Resources Manager. By 2017, Highbury had grown into the largest non-union construction company in the tri-state area, generating over $150 million in annual sales. **(See Exhibit 5– Past Bonds for Highbury Concrete).**

5.      My financial backing and business acumen were pivotal to Highbury's establishment and growth, and my contributions extended far beyond the initial investment. Among the four principals, I was the only one born in the United States, attended college, and spoke proper English. I successfully ran my own business prior to joining Highbury and spent over 20 years in corporate America, working at a Fortune 100 companies. My expertise and leadership were unmatched, contributing invaluable knowledge and insight that significantly strengthened the company's capabilities and drove its success. From Highbury's inception until 2018, I actively managed Benefits and Human Resources for over five hundred employees, the majority of whom

were Spanish and Portuguese-speaking. I was responsible for designing and overseeing employee benefit programs, notarizing documents, and providing critical translation and interpretation services for the field staff. I made key decisions regarding benefit plans, negotiated with vendors, and conducted safety training at construction sites in both English and Spanish. Due to Mr. Fogarty's limited education—he has only elementary school education—I also drafted his emails and business communications, as he lacked the necessary reading and writing skills for effective correspondence. My responsibilities further extended to managing the company's telecommunications and wireless contracts. My extensive involvement in many aspects of the business establishes a clear and undeniable community of interest in Highbury. In contrast, Defendant Fogarty's green card was granted only in March 2014, following a prior denial due to him lying to Homeland Security and Immigration Officers.

6. I was tasked with finding a new legal counsel for Highbury Concrete in January 2018. I sought referrals from industry professionals, specifically explaining that while Defendant Fogarty preferred a lawyer from Ireland, I understood the critical differences between Irish and U.S. legal systems and needed qualified representation here.

7. I received a text and email from Gino Orrino, of Orrino Capital (our insurance agent) on January 9, 2018. providing several referrals and following up with a phone call specifically recommending Mr. Gardner for the role at Highbury. **(See Exhibit 6- January 9, 2018, Email from Mr. Orrino Referring Lawyers).**

8. I spoke with Mr. Gardner and then recommended to Defendant Fogarty that we retain him, and he was subsequently hired. I believe Defendant Fogarty's later disparagement of Mr. Gardner, whom I initially introduced to Highbury, calling him "Bendy Bryan," and accusing him of "bending and breaking the rules" – an accusation of unethical conduct – reveals a deeply

3

strained relationship. This, combined with Mr. Gardner's actions, misrepresentations, and my prior attorney-client relationship with him, creates, at a minimum, a strong appearance of impropriety and raises serious ethical concerns that warrant his disqualification as Defendant Fogarty's attorney.

**III. Prior Consultations and Representation and Conflict of Interests**

9. I consulted with Brian Gardner at Cole Schotz in April 2018 regarding legal matters substantially related to this litigation. I believe this consultation was not a casual conversation.

10. During this consultation, I disclosed specific details regarding Defendant Fogarty's financial misconduct, including:

a. **Reckless Spending and Poor Investments**: I discussed Defendant Fogarty's disastrous investment in a bar (including his name on the liquor license and fines for serving alcohol to minors), extravagant personal spending using company funds ($50,000 Boy's Weekend Trips to London, luxury cars, private jets, etc.), and excessive expenditures on lunches and gifts.

b. **Financial Instability and My Personal Funds**: I explained Defendant Fogarty's financial mismanagement, including forcing me to deposit $70,000 of my personal funds to cover Highbury payroll, which he then refused to repay. **(See Exhibit 7 – April 23, 20218, Email to Thomas Fogarty Seeking Repayment of Loan)**

c. **Legal Recourse and Marital Concerns**: I shared my need to explore legal options for recovering my $70,000 and protecting my financial interests within the context of my marriage.

d. **Other Concerns**: I expressed my concerns regarding Defendant Fogarty's hiring of unqualified individuals from Ireland which involved $10k fee for a work visa, excessive spending on "boozy" $500 work lunches, and my worries about his safety and potential liability for the company.

4

11. I was relieved that during the consultation, Mr. Gardner expressed empathy and acknowledged the seriousness of my concerns. He offered to connect me with a divorce attorney, mentioning that a classmate from Rutgers worked at Taurig and that he knew many lawyers in the field. We also briefly discussed personal matters, such as our children's college plans (including my son's potential transfer to a four-year college) and his home on Martha's Vineyard (he even recommended a few places for my upcoming birthday trip). I explicitly requested that Mr. Gardner not disclose these conversations to Defendant Fogarty for numerous reasons including the physical abuse I was facing, and he assured me he would not, citing attorney-client privilege.

12. I believe this consultation established an attorney-client relationship regarding matters substantially related to this litigation.

13. I was present during a meeting when Defendant Fogarty received news that Highbury Concrete was audited by the IRS, and Brian Gardner advised him on the legal consequences of a negative IRS audit, including potential fines and imprisonment. Following the audit, Defendant Fogarty refused to pay the accountant, Anthony Gianfrancesco, $56,924.99 fee for services rendered, citing his Italian American, rather than Irish, heritage as the reason. Mr. Gianfrancesco subsequently sued Highbury Concrete.

14. I set up the meeting with Brian Gardner to discuss the lawsuit as he was representing Defendant Fogarty and Highbury Concrete in this lawsuit. In my presence, Mr. Gardner explicitly told Defendant Fogarty that he should not discriminate against anyone in the business, as it is illegal. Mr. Gardner urged Defendant Fogarty to pay Mr. Gardner to avoid further litigation, stating, "Tommy, it is not legal. This accountant successfully completed the audit and saved you; you gotta pay the man or face more problems!" Despite Mr. Gardner's advice,

Defendant Fogarty delayed payment, necessitating the involvement of a second attorney from Cole Schotz. While Defendant Fogarty ultimately paid Mr. Anthony Gianfrancesco, he only paid half the amount owed. **(See Exhibit 8 – October 8, 2018, Civil Action Against Highbury Concrete for Failure to Pay for Services Rendered).**

15. I have personal knowledge that on April 28, 2020, Highbury Concrete received a $6.4 million PPP loan, which was subsequently forgiven. These funds were intended for employee salaries. However, in reviewing Defendant Fogarty's Statement of Net Worth I noted he opted to buy cars and jewelry for himself rather than paying employees.

**IV. 2021 Restructuring and Asset Concealment**

16. Throughout the operation of Highbury Concrete, Defendant Fogarty and I engaged in regular daily discussions regarding all aspects of our business, including projects, operational changes, and general management. I believe his deliberate concealment of these newly formed entities and the subsequent transfer of Highbury Concrete assets to them constitutes a significant departure from this established practice. For example, the $273 million One Flagler project in West Palm Beach, Florida, was secured by Highbury Concrete, yet upon completion, payment was directed to Highbury Concrete Florida, one of the newly created entities. I believe this restructuring was a calculated and surreptitious attempt to conceal assets from me in anticipation of our divorce. I believe the timing of this restructuring, immediately following his consultation with divorce counsel, coupled with the transfer of assets, leads me to believe this action was undertaken with the intent of defrauding me of hundreds of millions of dollars.

I affirm this **17th day of February 2025**, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a [1] court of law.

Respectfully submitted,

*Sai Malena Jimenez-Fogarty*

Sai Malena Jimenez-Fogarty