UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAI MALENA JIMENEZ-FOGARTY, | **MEMORANDUM OF LAW IN REPLY AND SUPPORT OF ORDER TO SHOW CAUSE TO SANCTION PLAINTIFF'S COUNSEL** |
| Plaintiff(s), | |
| -against- | |
| THOMAS FOGARTY, et al., | Case No.: 24 Civ. 08705 (JLR) (GWG) |
| Defendant(s). | |

## PRELIMINARY STATEMENT

Defendant Emily Hirshowitz ("Ms. Hirshowitz") respectfully submits this Reply Memorandum in support of the Court's Order to Show Cause with respect to sanctions against Counsel for Plaintiff SAI MALENA JIMENEZ-FOGARTY ("Plaintiff"). As related in Ms. Hirshowitz's reply papers to her Motion to Dismiss for improper service, Plaintiff's opposition papers mischaracterized the law (see ECF Doc. No. 129). Specifically, those opposition papers included what appear to be 'hallucinated' cases.

## RELEVANT PROCEDURAL HISTORY

The relevant procedural history in this matter is set forth at length in the accompanying Affirmation in Reply and Support, filed herewith. Briefly, Plaintiff's counsel has engaged in a pattern of similar conduct which culminated in the filing of AI-generated, 'hallucinated' legal authorities in opposition papers and—when challenged—apparent omission of any details regarding how the filing of 'hallucinated' authorities occurred.

Upon retention on May 20, 2025, counsel attempted to contact Plaintiff's counsel, requesting three weeks to respond to Plaintiff's Second Amended Complaint. In response, on May 29, 2025, Plaintiff's Counsel initially suggested that no extension was necessary. Thereafter, Plaintiff's Counsel incorrectly represented to the Court that Ms. Hirshowitz had "failed . . . to

obtain legal representation by the court-ordered deadline," despite having received notification of Ms. Hirshowitz's representation prior to the deadline.  Because Plaintiff's Counsel refused to consent to a brief extension of time, counsel for Ms. Hirshowitz developed service-related arguments and moved to dismiss for improper service pursuant to Rule 12(b)(5).

This conduct intensified when Plaintiff opposed Ms. Hirshowitz's motion to dismiss for improper service. In addition to withholding key video footage until the day when Ms. Hirshowitz's reply papers were due, Plaintiff cited two fabricated cases in her opposition papers: "*Cornhill LLC v. Sowers*, 183 A.D.3d 649 (2d Dept. 2020)" and "*Bank of Am., N.A. v. Gruff*, 131 A.D.3d 1185 (2d Dept. 2015)."  Plaintiff claimed both cases upheld "nail and mail" service.  The undersigned conducted additional research regarding these cases—inapplicable to the motion to dismiss for improper service—which are annexed to this response as Exhibit "A."

Neither case exists.  Nor does either case that is reflected in the citations supplied by Plaintiff's Counsel concern entirely different parties and legal issues unrelated to service of process.  Instead, both cases appear to be AI-generated 'hallucinated' citations, as evidenced by the distinctive formatting patterns in Plaintiff's papers, including embedded bullet points and redundant "Precedents Supporting Proper Service" and "Table of Evidence" sections characteristic of unsupervised drafting by Artificial Intelligence ("AI").  Rather than pointing these deficiencies out directly in the Reply papers, counsel for Ms. Hirshowitz elected to engage the papers on their purported merits, distinguishing the 'hallucinated' case law as inapplicable.

The Court issued an Amended Order to Show Cause requiring detailed and specific explanations from Plaintiff's Counsel for these nonexistent citations (ECF Doc. No. 144).  Rather than complying, Plaintiff's Counsel issued a generalized, blanket response revealing further bad faith.  She did so one day late without seeking permission for further extension; failed to

acknowledge her use of AI despite evidence she had done so; and provided only generic explanations for her errors, failing to address how she came to cite fabricated cases that she had specifically represented as supportive of propositions related to service of process. While Counsel's sworn affidavit describes a five-step citation verification process that would likely have prevented fabrication if implemented, she offers no meaningful explanation as to how two nonexistent cases with specified legal holdings came to be filed in her opposition papers.

## ARGUMENT

### STANDARD OF REVIEW

"By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law." Benjamin v. Costco Wholesale Corp., No. 2:24-cv-7399 (LGD), 2025 U.S. Dist. LEXIS 78895, at *13 (E.D.N.Y. Apr. 24, 2025), citing Fed. R. Civ. P. 11(b)(2). "Rule 11 imposes a duty on attorneys to certify that they have conducted a *reasonable inquiry* and have determined that any papers filed with the court are well grounded in fact, [and] legally tenable." Id. at *13-14 (citation omitted) (emphasis in original), quoting Park v. Kim, 91 F.4th 610, 614 (2d Cir. 2024). "Accordingly, Rule 11 prohibits attorneys from "making frivolous legal arguments." Id., quoting Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 459 (S.D.N.Y. 2023). Thus, "[a]t the very least, the duties imposed by Rule 11 require that attorneys read, *and thereby confirm the existence and validity of*, the legal authorities on which they rely." Id. (emphasis in original), quoting Park, 91 F.4th at 615.

3

"When, as here, a court considers whether to impose sanctions *sua sponte*, it is 'akin to the court's inherent power of contempt,' and, 'like contempt, *sua sponte* sanctions in those circumstances should issue only upon a finding of subjective bad faith.'" Id., quoting Mata, 678 F.Supp. 3d at 462 (quoting Muhammad v. Walmart Stores East, L.P., 732 F.3d 104, 108 (2d Cir. 2013)). "The standard is essentially 'frivolous-plus:' conduct that falls between the mere frivolous and the 'lie about a historical fact.'" Benjamin, 2025 U.S. Dist. LEXIS 78895, at *14, quoting In re Gushlak, No. 11-MC-218, 2012 U.S. Dist. LEXIS 91690, 2012 WL 2564523, at *2 (E.D.N.Y. July 2, 2012). "A false statement of knowledge can constitute subjective bad faith where the speaker 'knew that he had no such knowledge,'" Id. at *15, quoting Mata, 678 F. Supp. 3d at 463 (citation omitted), and, when "imposing sanctions, courts may consider 'either direct or circumstantial evidence that counsel knew' the action taken was meritless," Id., quoting Gushlak, 2012 U.S. Dist. LEXIS 91690, 2012 WL 2564523, at *2.

An emerging constellation of cases involving attorneys' citations to AI-generated, fake, or 'hallucinated' authorities now charts the course for the Court's review. Monetary sanctions for use of such 'hallucinated' case law range from $1,500 for minor offenses to $31,100 for more egregious ones. See, e.g., Benjamin, 2025 U.S. Dist. LEXIS 78895, at *15 (collecting cases); Mata, 678 F. Supp. 3d at 466 ($5,000 penalty to be paid to the court where opposing counsel did not seek reimbursement for attorneys' fees or expenses, where counsel admitted to using ChatGPT to supplement legal research); Lacey v. State Farm Gen. Ins. Co., No. cv-24-5205 (FMO) (MAAx), 2025 U.S. Dist. LEXIS 90370 (C.D. Cal. May 5, 2025) (Order of Special Master) (imposing $31,100 penalty to be paid to the defense, striking plaintiff's supplemental briefs, and denying discovery relief sought by the plaintiff where "Plaintiff's use of AI affirmatively misled" the Special Master); United States v. Hayes, 763 F.Supp. 3d 1054, 1064 1073 (E.D. Cal. Jan. 17, 2025)

($1,500.00 for attorney who "knowingly made accurate and misleading statements in his written reply . . . to the government's opposition that expressly raised the fictitious case and quotation[,] and knowingly made accurate and misleading statements at the [subsequent] hearing," but thereafter made a "post-hoc acknowledgment of the fictitious case and quotation").

In contrast, to avoid monetary sanction for 'hallucinated' cases, an attorney should promptly contact the court and parties in the case in which the papers containing the "hallucinated" cases are filed, apologize for the error, explain truthfully the circumstances surrounding the error, provide assurances that they understand the implications of misreporting case law to the court, and take appropriate action, including voluntary discontinuance of frivolous or unsustainable claims. Hall v. Acad. Charter Sch., No. 24-cv-08630 (JMW), 2025 U.S. Dist. LEXIS 152628, at *14 (E.D.N.Y. Aug. 7, 2025).

## POINT I

**PLAINTIFF'S COUNSEL SHOULD BE SANCTIONED FOR HER COMPREHENSIVE BAD FAITH CONDUCT, CULMINATING IN THE SUBMISSION OF 'HALLUCINATED' CASE LAW**

The above-referenced pattern of behavior displayed by Plaintiff's Counsel suggests either repeated, deliberate misrepresentation of facts and law to the Court, or a reckless and complete disregard for accuracy. Regardless, Counsel has shown bad faith warranting sanctions.

"The failure to correct a prior statement in a pending motion is the later advocacy of that statement and is subject to sanctions." Mata, 678 F. Supp. 3d at 461, citing Galin v. Hamada, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017) ("[A] court may impose sanctions on a party for refusing to withdraw an allegation or claim even after it is shown to be inaccurate"); Bressler v. Liebman, 1997 U.S. Dist. LEXIS 11963, 1997 WL 466553, at *8 (S.D.N.Y. Aug. 14, 1997) (attorney potentially liable under Rule 11 when he "continued to press the claims . . . in conferences after information provided by opposing counsel and analysis by the court indicated the questionable

5

merit of those claims"). Thus, in Mata, sanctions were imposed when the attorneys showed subjective bad faith in going beyond the citing of fictitious cases by failing to be forthcoming, maintaining their prior submissions, and continuing to give an air of legitimacy to fake cases in subsequent submissions, despite undeniable knowledge that those cases lacked authenticity. See Mata, 678 F.Supp. 3d at 458-459, 462-466.

Here, the actions taken by Plaintiff's Counsel track those in Mata and proceed beyond them. Even in advance of the instant motion, counsel has made numerous prior incorrect representations in this case, regarding interactions with Ms. Hirshowitz's attorney, and the status of Ms. Hirshowitz's representation as of May 20, 2025, in addition to the case law cited in her responsive papers, and how she drafted them. These problems only compounded with Plaintiff's Counsel's citation to two purported Appellate Division, Second Department cases—with easily retrievable Appellate Division Reporter citations—both of which she represented concerned issues of service of process. Neither case does (compare ECF Doc. No. 122 at pages 6-7, ¶¶ 9, 15, with Exhibit "A").

When it discovered 'hallucinated' citations in her opposition papers, the Court gave Plaintiff's Counsel the opportunity to explain how she had generated them. That included the cases advanced in her opposition papers to Ms. Hirshowitz's motion. Unfortunately, Plaintiff's counsel did not seize this opportunity. Instead, she provided a belated, blanket response— potentially also AI-generated—which fails to meet the legal requirements to evade sanctions.

While the purpose of sanctions is to deter the prohibited activity rather than making a party whole, attorneys' fees can properly be imposed here, because Plaintiff appears to be maintaining the correctness of the cases to which she cited and has only reported that they are misnamed, a statement that is potentially misleading to the Court, and continues to press them as otherwise

applicable to this matter. Simply put, while errors can (and do) happen in drafting and filing legal documents, it is the failure to properly detail and correct those errors when apprised that gives rise to sanctionable conduct on these facts. Here, the costs associated with those sanctionable errors are mounting; a Statement, appropriately redacted, reflecting $4,305.50 at $395.00 per hour (Exhibit "B"), reflects the costs associated with responding to Plaintiff's opposition to the motion to dismiss for improper service. As noted, the Statement does not include the costs of drafting and filing this response.

## CONCLUSION

For the reasons set forth above, Plaintiff's Counsel should be sanctioned, and should—at a minimum—receive a fine and be required to pay a relevant portion of Ms. Hirshowitz's attorneys' fees and costs associated with the motion to dismiss.

_____
Jacob B. Sher, Esq.
Hinman, Howard & Kattell LLP
*Counsel for Defendant Emily Hirshowitz*
1025 Westchester Avenue, Suite 301
White Plains, New York 10604
(914) 694-4102
jsher@hhk.com

CC:   *All counsel of record via ECF*