UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SAI MALENA JIMENEZ-FOGARTY                     :

                                               :        REPORT & RECOMMENDATION
                        Plaintiff,
                                               :        24 Civ. 8705 (JLR) (GWG)

           -v.-                                :

                                               :

THOMAS FOGARTY et al.,
                                               :

                        Defendants.            :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

     Plaintiff Sai Malena Jimenez-Fogarty ("Jimenez-Fogarty") has brought this suit against

defendants Thomas Fogarty, Lisa Zeiderman, Ashley Kersting, Nicole Digiacomo, Sherri

Eisenpress, Thomas Zugibe, Laura Marino, Marc Abrams, Marc Mednick, Andreas Labis, Emily

Hirshowitz, and Miller Zeiderman LLP.  See Second Amended Complaint, filed April 2, 2025

(Docket # 82) ("SAC").  Defendants Judge Sherri Eisenpress and Judge Thomas Zugibe (the

"defendant judges"), and Emily Hirshowitz have moved to dismiss the complaint based on

insufficient service.[1]  In addition, plaintiff asks that her time to effectuate service on the

---

[1] Notice of Motion to Dismiss, filed June 12, 2025 (Docket # 115); State Judicial
Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Second Amended
Complaint for Insufficient Service of Process, filed June 12, 2025 (Docket# 116) ("Eisenpress &
Zugibe Mem."); Plaintiff's Memorandum of Law in Opposition to Judicial Defendants' Motion
to Dismiss the Second Amended Complaint for Insufficient Service of Process, filed June 20,
2025 (Docket # 123) ("Pl. Opp. to Eisenpress & Zugibe"); State Judicial Defendants' Reply
Memorandum of Law in Further Support of Their Motion to Dismiss the Second Amended
Complaint for Lack Of Proper Service, filed June 27, 2025 (Docket # 130) ("Eisenpress &
Zugibe Reply"); Notice of Motion to Dismiss for Insufficient Service of Process, filed June 12,
2025 (Docket # 117); Memorandum of Law in Support of Defendant Emily Hirshowitz's Motion
to Dismiss for Insufficient Service of Process, filed June 12, 2025 (Docket # 120) ("Hirshowitz

defendant judges be extended.  See Pl. Opp. to Eisenpress & Zugibe at 11.  For the following

reasons, defendants' motions to dismiss should be granted and plaintiff's request to extend the

time to effectuate service should be denied.

I.      BACKGROUND

        A.      Procedural History Leading Up to the Motions to Dismiss

        On November 15, 2024, Jimenez-Fogarty, appearing pro se at the time, filed the original

complaint in this case.  Emergency Verified Complaint, filed November 15, 2024 (Docket # 1).

The original complaint named, among others, defendants Eisenpress and Zugibe.  See id.

        On December 27, 2024, Jimenez-Fogarty filed a letter to which she attached purported

"proof of service for each defendant."  Letter, filed December 27, 2024 (Docket # 38)

("December 27, 2024, Letter"), at 2.  The attachments include seven form declarations of "Proof

of Service," each sworn to by "Manuel Gomez – Private Investigator" and dated November 18,

2024.  See Proofs of Service, filed December 27, 2024, annexed as Ex. 2 to December 27, 2024,

Letter (Docket # 38-2) ("December 27, 2024, Proofs of Service").  One declaration, pertaining to

"Judge Sherri Eisenpress," states that Gomez "served the summons on (*name of individual*)

Video Recorded Service to Chief Court Clerk, who is designated by law to accept service of

process on behalf of . . . Rockland County House 1 S Main St. New City N.Y. 10956 on . . . 11-

18-2024."  Id. at *7.  A declaration pertaining to "Judge Thomas Zugibe" uses identical language

---

Mem."); Plaintiff's Memorandum of Law in Opposition to Defendant Hirshowitz's Motion to
Dismiss the Second Amended Complaint for Insufficient Service of Process, filed June 20, 2025
(Docket # 122) ("Pl. Opp. to Hirshowitz"); Memorandum of Law in Reply and Further Support
of Defendant Emily Hirshowitz's Motion to Dismiss for Insufficient Service of Process, filed
June 27, 2025 (Docket # 129) ("Hirshowitz Reply"); Affirmation of Sai Malena Jimenez-Fogarty
in Support of Plaintiff's Opposition to State Judicial Defendants' Motion to Dismiss, filed June
21, 2025 (Docket # 124) and annexed as Ex. 5 to Pl. Opp. to Hirshowitz (Docket # 122-5)
("Jimenez-Fogarty Aff.").

to describe the service.  Id. at *8.  The declarations do not indicate that Gomez took any other

steps to effectuate service on Eisenpress and Zugibe.  Id. at *7-8.

On January 17, 2025, Jimenez-Fogarty filed a first amended complaint.  See Modified

Verified Complaint, filed January 17, 2025 (Docket # 44).  On January 31, 2025, counsel

appeared on behalf of Jimenez-Fogarty.  See Notice of Appearance, filed January 31, 2025

(Docket # 53); Order, filed February 3, 2024 (Docket # 55).

On the same day, Jimenez-Fogarty, no longer appearing pro se, filed a letter application

regarding a proposed second amended complaint.  See Letter, filed January 31, 2025 (Docket #

54).  In response, the Court noted "that it is not clear that the proofs of service in the record

(Docket 38-2) show proper service on Judge Sherri Eisenpress, Judge Thomas Zugibe, or Laura

Marino.  Plaintiff's counsel is directed to look into this issue at her earliest convenience."

Memorandum Endorsed, filed Feb. 3, 2025 (Docket # 56).  On February 5, 2025, plaintiff filed a

letter in which she asserted that "the Proof[s] of Service filed with this Court via ECF on

December 27, 2024," show that "the Summons and Complaint were served by Manuel Gomez on

November 18, 2024 at the usual place of business of Judge Sherri Eisenpress and Judge Thomas

Zugibe."  Letter, dated February 5, 2025 (Docket # 57), at 1.  Specifically, plaintiff stated that

> [t]he documents were properly left with the supervising clerk in the Office of the
> Chief Clerk, which is considered proper service, as she is a person of suitable age
> and discretion who is employed at the court, is in charge, was readily accessible at
> the time of service and is a legally designated agent to receive service on behalf of
> the Judges.

Id.  Additionally, plaintiff stated that "Mr. Gomez videotaped his actions to ensure there would

be no discrepancy regarding service, as the Clerk refused to give her name, but he was able to

provide me with a complete description of the Clerk who was served."  Id.  Plaintiff also stated

that "it would be difficult to believe that Judge Eisenpress and Judge Zugibe are unaware of the

matter currently pending." Id.  She concluded that "in light of the above, Plaintiff respectfully

believes proper service has been effected on the Judicial defendants." Id. at 2.  In the same letter,

Jimenez-Fogarty requested "a pre-motion conference, to seek leave to file a Motion for Default

Judgment against Judge Thomas Zugibe, Judge Sherri Eisenpress." Id.

> In the response to Jimenez-Fogarty's letter, the Court wrote that

> Counsel's letter justifying service of process (Docket # 57) fails to show proper
> service of process of Judge Sherri Eisenpress and Judge Thomas Zugibe.  To the
> extent that plaintiff relies on Fed. R. Civ. P. 4(e)(2)(C), she has not cited any
> authority for the proposition that the supervising clerk is "an agent authorized by
> appointment or by law to receive service of process" on behalf of these
> individuals.  To the extent plaintiff is relying on N.Y. C.P.L.R. § 308(2) as
> incorporated by Fed. R. Civ. P. 4(e)(1), she has provided no evidence that all
> elements of service described in that rule have been met — most obviously, the
> required mailing.  The deadline to effectuate service on these individuals under
> Fed. R. Civ. P. 4(m) expires February 13, 2025.  If plaintiff seeks additional time
> to effectuate service, she should make a prompt application showing good cause
> for the extension.

Order, filed February 11, 2025 (Docket # 59), at 1.  Notwithstanding the Court's invitation to do

so, plaintiff made no application to extend the deadline under Fed. R. Civ. P. 4(m) for service.

On April 2, 2025, Jimenez-Fogarty filed the second amended complaint.  See SAC.  The

second amended complaint added several defendants, including defendant Hirshowitz.  Id.  On

May 6, 2025, Jimenez-Fogarty filed six sworn declarations of service.  See Proofs of Service,

filed May 6, 2025 (Docket # 89) ("May 6, 2025, Proofs of Service").  In one declaration, dated

April 30, 2025, Gomez claims that he served "Emily Hirshowitz" by "mail[ing] the summons

and documents to Emily Hirshowitz on 4-29-2025 to her home address at [listing an address]."

Id. at *4.  Gomez adds that the "Documents [were] mailed because personal service attempted."

Id.  The declaration does not indicate that Gomez took any other steps to effectuate service.  Id.

On May 15, 2025, the defendant judges filed a pre-motion conference letter with respect to their proposed motion to dismiss.  Letter, filed May 15, 2025 (Docket # 99).  The letter mentions that "no proper affidavit of service has been filed on the docket" and that "there has been no proper service of process."  Id. at 1, 2.

On June 4, 2025, this Court ordered that "any defendant who wishes to pursue a motion to dismiss under Fed. R. Civ. P. 12(b)(5) must file it by June 12, 2025."  Order, filed June 4, 2025 (Docket # 113).  On June 12, 2025, the defendant judges and defendant Hirshowitz filed the instant motions to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5).  See Eisenpress & Zugibe Mem.; Hirshowitz Mem.

Along with Hirshowitz's motion, Hirshowitz submitted her own sworn declaration.  See Declaration of Emily Hirshowitz in Support of Motion to Dismiss for Insufficient Service of Process, filed June 12, 2025 (Docket # 118).  In it, Hirshowitz states that

> [o]n May 2, 2025, I discovered a three-page "Summons in a Civil Action," with my address hand-written on it, which was sent to me by mail.  Later that day, I received a box of jumbled paperwork associated with the lawsuit, dog-eared, torn, and held together with a rubber band.  The box was also sent by mail, and included various exhibits which appear related to the instant civil action.  True copies of photographs depicting the documents as I received them are annexed hereto as Exhibit "A."  The above-referenced papers were mailed to my home address.

Id. ¶ 5.  Further, Hirshowitz submits that "[a]t no time have I been personally handed a copy of the summons and complaint by any person," and "[o]ther than the mailing, at no time has anyone personally left a copy of the summons and complaint at my dwelling or usual place of abode, or with any person residing there."  Id. ¶¶ 6-7.

B.      June 20 and 21, 2025, Submissions

On June 20 and 21, 2025, plaintiff filed her opposition.  Pl. Opp. to Eisenpress & Zugibe;

Pl. Opp. to Hirshowitz.  Plaintiff's filing included her own affirmation.  See Jimenez-Fogarty

Aff.  Jimenez-Fogarty stated that

> on November 20, 2024, I personally mailed copies of the summons and complaint
> via regular United States Postal Service (USPS) mail to both Judge Thomas
> Zugibe and Judge Eisenpress at the Rockland County Supreme Court. . . . Each
> envelope was marked "personal and confidential" in accordance with N.Y.
> C.P.L.R. § 308(2).  As a pro se litigant at the time, I was unaware that mailing via
> certified mail was preferred to provide delivery verification, and thus I sent these
> documents via regular mail.

Id. ¶ 5.  Additionally, Jimenez-Fogarty stated:

> In response to the Court's order, and under the guidance of my counsel, on
> February 13, 2025, I personally mailed additional copies of the summons and
> complaint via UPS certified mail, to Judge Zugibe at the Rockland County
> Supreme Court . . . and to Judge Eisenpress at both the Rockland County Supreme
> Court . . . and the Orange County Supreme Court . . . . Each envelope was marked
> "personal and confidential" in accordance with N.Y. C.P.L.R. § 308(2).

Id. ¶ 8.

Jimenez-Fogarty also submitted new sworn statements from Gomez.  See Affidavits of

Manuel Gomez, signed June 20, 2025, annexed as Ex. A to Jimenez-Fogarty Aff. (Docket # 124-

1) and annexed as Ex. A to Pl. Opp. to Hirshowitz (Docket # 122-1) ("Gomez Aff.").  In relevant

part, Gomez stated that

> [o]n November 18, 2024, at approximately 10:30 a.m., I personally delivered the
> summons and complaint to a supervising clerk in the Office of the Chief Clerk at
> the Rockland County Supreme Court.  The clerk verbally confirmed her authority
> to accept service on behalf of both Judge Eisenpress and Judge Zugibe.  This
> interaction was captured on video. . . . I provided the supervising clerk with two
> copies of the summons and complaint, one for each judge, and she acknowledged
> receipt, affirming her role as an authorized recipient.  The delivery was conducted
> with professionalism, consistent with my training and experience as a licensed
> private investigator.

Id. at *3 (¶ 4).  Gomez also stated that

> On April 28, 2025, at approximately 5:00 p.m., I attempted to personally serve
> Ms. Hirshowitz at her residence.  I rang the doorbell and knocked on the door, but
> no one answered.  I received no indication that anyone was present at the time. . . .
> On April 29, 2025, at approximately 9:30 a.m., I made a second attempt to
> personally serve Ms. Hirshowitz at the same residence.  Upon my arrival, I rang
> the doorbell and knocked on the front door.  I observed a window was open, and I
> distinctly heard a dog barking within the residence, followed immediately by a
> clear "shush" sound from an individual, after which the dog ceased barking and
> was then moved to the rear of the property.  Despite the clear indication of an
> occupant, no individual answered the door or otherwise responded to my
> presence. . . . After these unsuccessful attempts, on April 29, 2025, I affixed the
> summons and complaint to the door of Ms. Hirshowitz's residence in accordance
> with N.Y. C.P.L.R. § 308(4).  The affixation was performed securely and
> conspicuously to ensure notice. . . . On the same day, April 29, 2025, I mailed the
> complaint, along with 55 exhibits totaling over 200 pages, to Ms. Hirshowitz's
> residence via USPS certified mail. . . . The service was recorded on video.

Id.  at *1 (¶¶ 4-8).

Jimenez-Fogarty submitted a document containing what appear to be three shipment

receipts from "The UPS Store."  See Shipment Details, filed June 21, 2025, annexed as Ex. C to

Jimenez-Fogarty Aff. (Docket # 124-3) ("February 13, 2025, Shipment Receipt").  The receipts

indicate that on February 13, 2025, "Sai Jimenez" shipped a package to defendant Zugibe at the

"Rockland County House," and two packages to defendant Eisenpress at the "Rockland County

House" and the "Orange Supreme Court."  Id.

Jimenez-Fogarty also submitted what appear to be pictures of a USPS envelope and a box

with a USPS label affixed.  Pictures, filed June 20, 2025, annexed as Ex. D to Pl. Opp. to

Hirshowitz (Docket # 122-4) ("June 20, 2025, Pictures").  The envelope is dated April 30, 2025,

and is addressed to "Emily Hirshowitz."  Id. at *1.  The sender is listed as "Black OPS P.I."  Id.

The label on the box is dated April 29, 2025, and is addressed to "Emily Hirshowitz."  Id. at *2.

The sender is listed as "Black OPS P.I."  Id.

Jimenez-Fogarty also submitted what appears to be a picture of a United States Postal

Service ("USPS") receipt.  See Receipt, dated April 29, 2025, annexed as Ex. C to Pl. Opp. to

Hirshowitz (Docket # 122-3).  The receipt indicates the purchase of three package shipments —

to a location in "White Plains, NY 10601"; "Peekskill, NY 10566"; and "Goshen, NY 10924" —

on April 29, 2025.  Id.

In her memoranda of law filed in opposition, plaintiff referenced several videos, see, e.g.,

Pl. Opp. to Eisenpress & Zugibe at 2; Pl. Opp. to Hirshowitz at 2, which were ultimately

transmitted to the Court via its file sharing service.  See Letter, filed July 10, 2025 (Docket

# 138); Letter, filed July 10, 2025 (Docket # 140), at *1-3. ("July 10, 2025, Letter").  The videos

transmitted to the court are titled "Chief Clerk being served 11-18-2024.mp4," "Service on Jud.

Def.11-18-2024.MOV," and "VIDEO-service on E. Hirshowita [sic] 4-29-2025".

In a letter, Jimenez-Fogarty represents that the video titled

"Service_Judicial_Defendants_Full_11-18-2024.mp4" (in fact titled "Service on Jud. Def.11-18-

2024.MOV") is a

> full-length recording of the service of process on the Judicial Defendants . . . on
> November 18, 2024, at the Rockland County Supreme Court, as performed by
> Manuel Gomez.  In the video, Mr. Gomez identifies himself by his full name and
> title, and his face is visible as he serves the Chief Clerk of the Rockland County
> Supreme Court.

July 10, 2025, Letter at 1-2.  The video at issue shows a man navigating a courthouse trying to

find the correct place to "serve some papers . . . on Judge Sherri Eisenpress and Judge Thomas

Zugibe."  He can be seen walking to the Chief Clerk's office.  He walks to a counter behind a

clear separation screen.  A woman's voice is heard asking how she may help him.  The man tells

the woman that he has paperwork for Judge Sherri Eisenpress and Judge Thomas Zugibe,

clarifying that he is serving them with summonses.  The woman is heard saying, "I am not taking

that.  Hold on.  One second."  The man responds, "Okay, I thought that the Chief Clerk is supposed to take [?] that."  After a few moments of waiting, the woman is heard saying "Someone will be right with you."

In a letter, Jimenez-Fogarty represents that the video titled "Chief Clerk Being Served 11-18-2024.mp4"

> captures the service of process on the Judicial Defendants . . . on November 18, 2024, at the Rockland County Supreme Court, as performed by Manuel Gomez, a licensed private investigator.  In the video, Mr. Gomez identifies himself by his full name and title, and his face is visible as he serves the Chief Clerk of the Rockland County Supreme Court.

July 10, 2025, Letter at 1.  The video begins where "Service on Jud. Def. 11-18-2024.MOV" ends.  It appears to be filmed by a camera placed on a table or a counter and pointing straight upward.  The video shows an open clear separation screen and the underside of the same man's face.  The camera is briefly turned to point towards the clear screen, showing what appears to be a court clerk's office.  The man looks up and says, "Okay, hi, how are you ma'am" and begins gathering his papers as he says, "Here you go."  A female voice is heard asking why service was not delivered to the Attorney General's office.  She can be heard saying, "It has to be served on them for, on behalf of our judges."  The man replies that "it has to be served on the judge, ma'am.  This is the paperwork.  This is the Chief Clerk's Office.  This is the court paperwork."  The man then proceeds to describe the "paperwork."  The female voice is heard again reiterating that service needed to be done on the Attorney General's office.  The man disagrees and states that he has "just got told by Southern District."  The woman disagrees.  The man proceeds, "If you want, I can go to the courtroom and serve them directly.  But they're getting served today.  They're getting served today no matter what.  So they're getting served by you, they're getting served by me, or at their house."  While the woman's response is hard to make out at this point,

9

she appears to demur and say, "He is, he is pushing them through the window and uh." The man interrupts, "That's what pro . . . , that's what you do, when you serve." The woman responds, "No. No. It's okay." The man responds, "I know it's okay. That's what I am doing. I am doing my job. Your job is to collect the paperwork . . . and give it to the judge." The woman is heard continuing to express reluctance before the man interrupts her again by saying, "Well here ya go. This is for Judge Sherri Eisenpress. This is for Judge Thomas Zugibe. Now you've been served. Okay." The video does not show documents being handed through the glass opening, but the man appears to pass something through it. The man then picks up the camera, points it at a woman standing behind the counter, pans the camera to show the entire counter — on which no documents can be seen — while the man says "You're on film. This is what it is you've been served. Tell them that their careers are almost over. This is for their corruption. It's RICO charges." The man then appears to walk away from the counter.

      In a letter, Jimenez-Fogarty represents that the video titled "Service_Emily_Hirshowitz_04-29-2025.mp4" captures "the service of process on Emily Hirshowitz on April 29, 2025, at her residence, as performed by Manuel Gomez. In the video, Mr. Gomez identifies himself by his full name and title." July 10, 2025, Letter at 2. The video titled "VIDEO-service on E. Hirshowita [sic] 4-29-2025" shows a suburban home. A dog can be heard barking throughout the entirety of the video. A man is heard narrating. The full narration is as follows: "This is private investigator Gomez. April 29, 2025. Tried to serve Miss Emily Hirshowitz. The window is open, as you can see. The dog was barking, but then she took the dog away. She refuses to open the door. So this service is going to have to be done via mail. Time now is approximately 10 a.m."

C.    June 27, 2025, Submissions

On June 27, 2025, the defendant judges and Hirshowitz filed their replies.  See Eisenpress & Zugibe Reply; Hirshowitz Reply.  The defendant judges also filed declarations from Eisenpress and Zugibe.  See Declaration of the Hon. Sherri. L. Eisenpress, dated June 26, 2025 (Docket # 133) ("Eisenpress Decl."); Declaration of the Hon. Thomas Zugibe, dated June 26, 2025 (Docket # 134) ("Zugibe Decl.").  In the respective declarations, each states that they had "never received a summons and complaint" in the present case by "mail" or by "personal delivery." Eisenpress Decl. ¶¶ 2-3; Zugibe Decl. ¶¶ 2-3.

The defendant judges submitted a declaration by Alicia Kaye.  See Declaration of Alicia Kaye, dated June 27, 2025 (Docket # 132).  Kaye states that she is the "Deputy Chief Clerk at the Supreme Court, State of New York, Rockland County" and "the individual depicted in the picture filed . . . at ECF No. 124-2."  Id. ¶ 1.  She recounts that on November 18, 2024,

> an individual (the "Process Server") came to the Office of the Chief Clerk and stated that he had papers to deliver to the Hon. Sherri Eisenpress and the Hon. Thomas Zugibe. . . .  Upon learning that these papers were a summons and complaint, I spoke to my supervisor, the Chief Clerk. . . .  I then informed the Process Server that I had been told that I, and the Office of the Chief Clerk, were not the proper recipients of service of the summons and complaint on behalf of the State Judicial Defendants. . . . The Process Server displayed anger, and shoved the summons and complaint towards me through a slot in the window between us.  I did not accept service of the papers or receive them willingly, but attempted to maintain professional decorum.

Id. ¶¶ 2-5.  Additionally, Kaye submits that

> Contrary to the Affidavit of Manuel Gomez, filed in the above-captioned matter at ECF No. 124-l, at Paragraphs 4 and 5.  I did not "verbally confirm[] [my] authority to accept service on behalf of both Judge Eisenpress and Judge Zugibe."  I did not "acknowledge[] receipt" of the papers.  I did not "affirm[] [my] role as an authorized recipient."  To the best of my understanding, I am not authorized to accept service, and I did not do so or claim such authorization.

Id. ¶ 7 (alterations in original).

Hirshowitz submitted her own affidavit.  <u>See</u> Affidavit of Emily Hirshowitz in Reply and Further Support of Motion to Dismiss for Insufficient Service of Process, filed June 27, 2025 (Docket # 128) ("Hirshowitz Aff.").  In the affidavit, Hirshowitz states that on April 28, 2025, at around 5:00 p.m., she was "in the process of picking" her "daughter up from day care."  <u>Id.</u> ¶ 6. On April 29, 2025, at around 9:45 a.m., she "checked in to 24 Hour Fitness."  <u>Id.</u> ¶ 7.  Because travel to her home is about "20 to 25 minutes" from the gym, "[i]t would not have been possible for me to have been at home on April 29, 2025 at about 10:15 a.m."  <u>Id.</u>  Hirshowitz states that when she "returned home on April 29, 2025, I did not see any legal papers related to this lawsuit affixed to my door, much less anywhere at or near my home."  <u>Id.</u> ¶ 8.

D.    <u>July 2025 Submissions</u>

On July 10, 2025, after briefing for the motion had been completed, plaintiff submitted a new affidavit by Gomez.  <u>See</u> Authentication Document for Video Evidence, dated July 10, 2025, annexed to July 10, 2025, Letter (Docket # 140 at *10-12) ("Gomez Video Aff.").  In Gomez's affidavit, he authenticates the video evidence and writes that the video captures that Kaye instructed him to "Push it through the window."  <u>Id.</u> at *11.

In response, in a letter dated July 17, 2025, the defendant judges annexed a new declaration by Kaye.  <u>See</u> Letter, dated July 17, 2025 (Docket # 143) ("July 17, 2025, Letter"); Supplemental Declaration by Alicia Kaye, dated July 17, 2025, annexed to July 17, 2025, Letter (Docket # 143-1) ("Kaye Decl.").  In the declaration, Kaye states that "[c]ontrary to Ms. Lindsay's statement and Mr. Gomez's declaration, I did not 'instruct' the Process Server to shove papers through the window slot by saying 'push it in through the window.'"  <u>Id.</u> ¶ 4.  Instead, "the video has audio of my describing his actions, saying 'he is pushing them through the window.'"  <u>Id.</u>

E. September 16, 2025 Hearing

Per an Order dated August 22, 2025 (Docket # 156), on September 16, 2025, the Court held an evidentiary hearing at which Manuel Gomez testified regarding his service of process on Hirshowitz. See Transcript, filed September 22, 2025 (Docket # 160) ("Tr. __"). The relevant testimony at the hearing is addressed in section III.B below.

II.    GOVERNING LAW

Rule 12(b)(5) provides that a party may move to dismiss a complaint based on insufficient service of process. See Fed. R. Civ. P. 12(b)(5). "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look to matters outside the complaint to determine whether it has jurisdiction." Cassano v. Altshuler, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." Khan v. Khan, 360 F. App'x 202, 203 (2d Cir. 2010). "Plaintiff must meet this burden by making a prima facie case of proper service 'through specific factual allegations and any supporting materials.'" Regan v. Vill. of Pelham, 2021 WL 1063320, at *4 (S.D.N.Y. Mar. 19, 2021) (citing Kwon v. Yun, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006)). "Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served." Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

Federal Rule of Civil Procedure 4(e) governs service for an individual within the United States and provides for two different ways in which an individual may be properly served.

Rule 4(e)(2) states that an individual may be properly served by "doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2).

Rule 4(e)(1) states that an individual may be properly served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). N.Y. C.P.L.R. § 308 provides in relevant part that service may be made by any of the following methods:

1. by delivering the summons within the state to the person to be served; or

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served <u>and</u> by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . , such delivery and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; proof of service shall identify such person of suitable age and discretion and state the date, time and place of service . . . ; or

3. by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318 . . . ;

4. where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served <u>and</u> by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . , such affixing and mailing to be effected within twenty days of each other . . . ; [or]

5. in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.

14

6.   . . .

N.Y. C.P.L.R. § 308 (emphasis added).

While it is not clear that any of the defendants are being sued "solely in an official capacity," a separate statute, N.Y. C.P.L.R. § 307(2) provides that "service on a state officer sued solely in an official capacity or state agency" may be made by

> (1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state in the manner provided by [Section 307(1)].

Id. § 307(2).  Section 307(1) provides that "[p]ersonal service upon the state shall be made by delivering the summons to an assistant attorney-general at an office of the attorney-general or to the attorney-general within the state."  Id. § 307(1).  Additionally, under Section 307(2)

> Service by certified mail shall not be complete until the summons is received in a principal office of the agency and until personal service upon the state in the manner provided by subdivision one of this section is completed. . . . Service by certified mail shall not be effective unless the front of the envelope bears the legend "URGENT LEGAL MAIL" in capital letters.

Id. § 307(2)(2).

## III.   DISCUSSION

The defendant judges and Hirshowitz have all moved to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5).  We address their motions separately and then address plaintiff's request to extend the time for service on the defendant judges.

### A.   Eisenpress and Zugibe

Plaintiff contends that service was effected in accordance with Rule 4(e)(1) by compliance with N.Y. C.P.L.R. § 308(2).  Pl. Opp. to Eisenpress & Zugibe at 5.  Plaintiff also

asserts that service was properly made under Rule 4(e)(2)(c).  Id. at 7.  We address the two

provisions of Rule 4(e) separately.

> 1.   Rule 4(e)(1)

Rule 4(e)(1) allows for service by following the applicable state law.  See Fed. R. Civ. P.

4(e)(1).  Both the heading and virtually the entirety of the text of this section in plaintiff's brief

rely exclusively on N.Y. C.P.L.R. § 308(2) to establish service under New York State law.  Pl.

Opp. to Eisenpress & Zugibe at 5-7.  Section 308(2) provides that personal service may be made

by

> by delivering the summons within the state to a person of suitable age and
> discretion at the actual place of business, dwelling place or usual place of abode
> of the person to be served and by either mailing the summons to the person to be
> served at his or her last known residence or by mailing the summons by first class
> mail to the person to be served at his or her actual place of business . . . , such
> delivery and mailing to be effected within twenty days of each other; proof of
> such service shall be filed with the clerk of the court designated in the summons
> within twenty days of either such delivery or mailing, whichever is effected later;
> service shall be complete ten days after such filing; proof of service shall identify
> such person of suitable age and discretion and state the date, time and place of
> service.

N.Y. C.P.L.R. § 308(2) (emphasis added).  Here, Jimenez-Fogarty has shown that the summonses

for the defendant judges were left with a person of "suitable age and discretion" as Kaye is

plainly an adult with an important position.  Additionally, the defendant judges have not

challenged that the courthouse where the summonses were delivered is the "actual place of

business" of the two judges.  However, plaintiff has not proven that there was a subsequent

mailing to these defendants (either to their home or place of business) "within twenty days" of

the delivery or that the proof of service was "filed with the clerk designated in the summons

within twenty days" of either the delivery or mailing.

The February 13, 2025, mailing, see Jimenez-Fogarty Aff. ¶ 8, is outside the statutory 20-day time period and thus we do not consider it further.  While the purported November 20, 2024, mailing is within the 20-day time period, no proof of such mailing was filed within 20 days of either the mailing or the delivery as required by statute.  N.Y. C.P.L.R. § 308(2).  Instead, the purported proof of mailing was filed only in response to the instant motions on June 20, 2025, more than six months after the purported mailing and delivery.  See Jimenez-Fogarty Aff. ¶ 5.  Thus, plaintiff failed to comply with the requirements of state law in effectuating service on the defendant judges and service cannot be found to have been proper.

Even if this infirmity did not exist, the defendant judges' motion would succeed also because plaintiff has not met her burden of showing by a preponderance of the evidence that a mailing in fact took place on November 20, 2025.  Most significantly, the affidavit of service from the purportedly professional process server, Gomez, makes no mention of any mailing.  See December 27, 2024, Proofs of Service, at *7-8.  It would be very strange for a professional process server to take all steps to effectuate service while preparing a contemporaneous affidavit of service not showing that all the steps took place.  Indeed, Gomez testified at the evidentiary hearing that he had filled out 80-90 service forms before he filled out the ones in this case.  Tr. 10.

While Jimenez-Fogarty's June 20, 2025, affirmation states that she mailed the summonses and copies of the complaint "via regular United States Postal Service (USPS) mail" to both Judge Zugibe and Judge Eisenpress at the Rockland County Supreme Court on November 20, 2024, Jimenez-Fogarty Aff. ¶ 5, that affirmation was not executed until plaintiff responded to the instant motion.  Thus, the Court does not credit the claim that the summonses and copies of the complaint were mailed on that date.  This is particularly so in light of the sworn

17

statements by both Zugibe and Eisenpress that they never received a copy of the summons and complaint by mail. Eisenpress Decl. ¶ 3; Zugibe Decl. ¶ 3. Separately, we note that plaintiff's affidavit fails to specify the address the documents were mailed to or whether delivery was completed by "first class" mail as required by statute.

Accordingly, Jimenez-Fogarty has not met her burden of proving that she has properly served the defendant judges under Section 308(2). See Khan, 360 F. App'x at 203 ("the plaintiff bears the burden of establishing that service was sufficient").

With respect to Section 307(2), plaintiff cites the statute only once, and that citation is merely in passing. See Pl. Opp. to Eisenpress & Zugibe at 5. Thus, it is questionable whether she has properly presented any arguments in her brief that would require the Court to examine this statute.

In any event, Section 307(2)(1) provides that personal service on a state official sued solely in an official capacity may be made by "delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service." N.Y. C.P.L.R. § 307(2)(1). Plaintiff provides video evidence and a declaration reflecting that the summons and copies of the complaint were delivered to the "Chief Court Clerk" at the Rockland County Courthouse. December 27, 2024, Proofs of Service at *7-8; Gomez Aff. at *3; July 10, 2025, Letter at 1. But plaintiff provides no statute, rule, or any other document reflecting that the defendant judges or the "chief executive officer" of the agency employing the judges has "designated" anyone at the Rockland County Courthouse to "receive service" on behalf of either of the defendants as required by Section 307(2)(1).

Plaintiff asserts that "[t]he clerk confirmed her authority to receive service, as recorded on video." Pl. Opp. to Eisenpress & Zugibe at 5. But the video shows no such thing. First,

18

while Gomez asserts that the clerk told him to "[p]ush" the set of papers "through the window," Gomez Video Aff. at *10, the video does not depict any such instruction. In fact, the clerk merely states in the video that Gomez "is pushing" the papers through the window. In other words, the clerk was describing what was occurring, not giving a command to Gomez. See also Kaye Decl. ¶ 4 (corroborating this description of the video). In any event, what the clerk may have said to Gomez is irrelevant to whether she was in fact designated by the head of the relevant agency or the defendant judges to receive service. Just as an agent cannot create her own authority, see Property Advisory Group, Inc. v. Bevona, 718 F. Supp. 209, 211 (S.D.N.Y. 1989) ("an agent himself cannot create apparent authority"), no statement by the clerk could supplant the requirement in Section 307(2)(1) that there be a designation from the chief executive officer or the defendant judges. Plaintiff has cited no evidence of any such designation.

None of the cases cited by petitioner bolster her argument on this point. See Pl. Opp. to Eisenpress & Zugibe at 5. For example, DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54 (S.D.N.Y. 2010), merely discusses the role of clerks in issuing a summons. See id. at *65-66. Because plaintiff has not shown that the "chief executive officer" of the agency employing the defendant judges has designated the "Chief Court Clerk" at the Rockland County Courthouse to accept service on behalf of officials of that agency, service under Section 307(2)(1) has not been demonstrated.

Next, Section 307(2)(2) provides that service on a state official sued solely in an official capacity may also be made by "mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state in the manner provided by [Section 307(1)]." N.Y. C.P.L.R. § 307(2)(2). Section 307(2)(2) further requires that the summons be mailed by "certified mail, return receipt requested" and that

19

the envelope bear the legend "URGENT LEGAL MAIL" in capital letters.  Id.  Here there is no competent proof that any of these occurred.

Jimenez-Fogarty, who purportedly made the mailing, states that she used "regular" mail to mail the summons and complaint to the defendant judges on November 20, 2024.  Jimenez-Fogarty Aff. ¶ 5.  Thus, this mailing does not qualify.

Jimenez-Fogarty also attests that she mailed the summonses and the copies of the complaint on February 13, 2025.  Id. ¶ 8.  This mailing does not qualify for a number of reasons:  First, she does not state that the envelope bore the legend "URGENT LEGAL MAIL" in capital letters.  Instead, she says it was marked "personal and confidential."  Id.  Second, the Court rejects the claim that Jiminez-Fogarty mailed the summons and complaint via "certified mail, return receipt requested" as required by Section 307(2).  Jiminez-Fogarty states in her affirmation that she mailed the summons "via UPS certified mail."  Id.  But the term "certified mail" refers to a delivery system of the United States Postal Service and not to UPS (i.e., United Parcel Service).  See, e.g., Meleshkov v. Sulyma, 223 N.Y.S.3d 521, *2 (N.Y. Sup. Ct. 2024) ("mailing . . . via United Parcel Service" does not constitute a "mailing by . . . certified mail, return receipt requested").  Similarly, the receipts plaintiff provides are from UPS, not from the United States Postal Service.  See February 13, 2025, Shipment Receipts.[2]

Even if these infirmities in the mailings did not exist, service fails for an entirely separate reason.  Section 307(2)(2) unequivocally requires that to effectuate service, there also must be "personal service upon the state in the manner provided by [Section 307(1)]."  N.Y. C.P.L.R. § 307(2)(2).  Section 307(1) requires that such service "shall be made by delivering the summons

---

[2]  The record does contain a receipt reflecting a mailing by certified mail.  See June 20, 2025, Pictures, at *1.  But this receipt is for the mailing to Hirshowitz, not the defendant judges.

to an assistant attorney-general at an office of the attorney-general or to the attorney-general within the state." Id. § 307(1).  However, plaintiff makes no claim and provides no proof that "personal service" was made on "an assistant attorney-general at an office of the attorney-general or to the attorney-general within the state" as provided in Section 307(1).  Thus, even apart from the failure to prove the proper mailing, service was not properly made under Section 307(2)(2).  Ironically, the video shows the clerk specifically informing Gomez that service must be made on the Attorney General's office.

Accordingly, having failed to prove service under Section 307(2) or Section 308(2), Jimenez-Fogarty has not effected service on the defendant judges under Rule 4(e)(1).

2. Rule 4(e)(2)

Jimenez-Fogarty also relies on both Rule 4(e)(2)(A) and Rule 4(e)(2)(C) to establish service.  See Pl. Opp. to Eisenpress & Zugibe at 2, 7-8.  We address these in turn.

Rule 4(e)(2)(A) states that an individual may be properly served by "delivering a copy of the summons and of the complaint to the individual personally."  Fed. R. Civ. P. 4(e)(2)(A).  Jimenez-Fogarty argues

> on November 18, 2024, the summons and complaint were delivered in person to the State Judicial Defendants themselves at the Rockland County Supreme Court, satisfying the requirements for personal service under Fed. R. Civ. P. 4(e)(2)(A). This in-person delivery, executed by Manuel Gomez with his documented professionalism and reliability, further establishes that the State Judicial Defendants were directly served, rendering their claim of insufficient service wholly meritless (Exhibit A: Affidavit of Manuel Gomez).

Pl. Opp. to Eisenpress & Zugibe at 2.  However, neither Gomez's affidavit nor the declarations submitted on December 27, 2024, contain any assertion that the summons and complaint was "delivered in person to the State Judicial Defendants themselves."  See Gomez Aff.; December 27, 2024, Proofs of Service.  Instead, Gomez states that delivery was made to the clerk.  See

Gomez Aff. at *3 ("I personally delivered the summons and complaint to a supervising clerk");

December 27, 2024, Proofs of Service at *7-8 (Gomez "served the summons on (*name of*

*individual*) Video Recorded Service to Chief Court Clerk").  For their part, both defendant judges

have submitted declarations attesting that they have not received any personal delivery of a

summons or a complaint.  See Eisenpress Decl. ¶ 3; Zugibe Decl. ¶ 3.

 Thus, the statement in plaintiff's brief that the summons and complaint were "delivered

in person" to the judges "themselves" has been conjured out of thin air.  Accordingly, plaintiff

has not met her burden of proving that she properly served the defendant judges under Rule

4(e)(2)(A).

 Rule 4(e)(2)(C) states that an individual may be properly served by "delivering a copy of

[the summons and of the complaint] to an agent authorized by appointment or by law to receive

service of process."  Fed. R. Civ. P. 4(e)(2)(C).  As already discussed, the record does not show

that the summons and the complaint were delivered to an agent authorized "by appointment or

by law."  Thus, Jimenez-Fogarty has not met her burden of proving that she has properly served

the defendant judges under Rule 4(e)(2)(A).  See Khan, 360 F. App'x at 203 ("the plaintiff bears

the burden of establishing that service was sufficient"); Azzarmi v. Key Food Stores Co-

operative Inc., 2022 WL 884973, at *4 (S.D.N.Y. Mar. 25, 2022) (finding that the plaintiff failed

to serve a defendant because the evidence did not reflect that the mailroom clerk was the

defendant's agent for service of process)

 Accordingly, Jimenez-Fogarty has not met her burden of proving that she has properly

served the defendant judges.  Thus, the action should be dismissed without prejudice against the

defendant judges.

B.    <u>Hirshowitz</u>

Jimenez-Fogarty relies on N.Y. C.P.L.R. § 308(4) (as incorporated by Fed. R. Civ. P. 4(e)(1)) to establish service.  <u>See</u> Pl. Opp. to Hirshowitz at 4.  Paragraph 1 of Section 308 permits personal service on a natural person.  N.Y. C.P.L.R. § 308(1).  Paragraph 2 permits service by delivering the summons to a person of suitable age and discretion and mailing it.  <u>Id.</u> § 308(2).  Paragraph 4 of Section 308 provides that "where service under paragraphs one and two cannot be made with due diligence," service may be made

> by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served <u>and</u> by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . , such affixing and mailing to be effected within twenty days of each other.

<u>Id.</u> § 308(4) (emphasis added).  Accordingly, Section 308(4) requires both "'affixing the summons to the door' of a defendant's home or place of business <u>and</u> 'mailing the summons to such person at his or her last known residence.'"  <u>Luci v. Overton, Russell, Doerr & Donovan, LLP</u>, 789 F. App'x 895, 897 (2d Cir. 2019) (emphasis added).

Plaintiff asserts that Gomez attempted to personally serve Hirshowitz at her residence on April 28 and April 29, 2025.  Pl. Opp. to Hirshowitz at 4.  Her brief states that "[f]ollowing these attempts, Mr. Gomez affixed the summons to the door of Defendant's residence on April 29, 2025, and mailed the Second Amended Complaint and exhibits via USPS certified mail."  <u>Id.</u>  In support of these factual claims, Jimenez-Fogarty cites to the declaration of Gomez, the video recording, the certified mail receipt, and "Physical Evidence," explaining that "Plaintiff possesses a picture of the mailed box and its contents, verifying that the 112-page complaint and 55 exhibits were sent in order."  <u>Id.</u> at 4-5.

While Section 308(4) requires "affixing the summons to the door."  N.Y. C.P.L.R. § 308(4), plaintiff has not demonstrated compliance with this requirement.  Gomez's declaration of service — made the day after the purported service — states only that "the summons and documents" were "mailed."  May 6, 2025, Proofs of Service at *4.  Thus, in the affidavit most contemporaneous with the actions on the day of purported service, Gomez says nothing about affixing the summons to the door.  Id.  It was only after Hirshowitz moved to dismiss for insufficient service that Gomez, in an affidavit dated June 20, 2025 — i.e. two months after the purported service — claimed that he "affixed the summons and complaint to the door of Ms. Hirshowitz's residence . . . securely and conspicuously" on April 29, 2025.  See Gomez Aff. at *1 (¶ 6).

The Court finds the assertion that Gomez affixed the summons and complaint incredible for several reasons.

First, the claim was made for the first time two months after service and was made only in response to the instant motion being filed.  Gomez testified at the September 16, 2025, evidentiary hearing that he had filled out a form for an affidavit of service 80 or 90 times previously.  Tr. 10.  As an experienced process server and completer of service forms, he surely would have mentioned it in the affidavit signed the day after the purported service.  But that affidavit made no mention of Gomez affixing anything to Hirshowitz's door.  See May 6, 2025, Proofs of Service at *4.

Second, the video submitted by plaintiff belies any claim of affixing.  In the video, Gomez states that because he was unable to personally serve Hirshowitz, "service is going to have to be done via mail."  Gomez makes no mention of affixing the summons.

24

Third, Gomez testified at the evidentiary hearing on September 16, 2025, that his practice was to make a video recording to show that he had made proper service. Tr. 11. In light of this practice, the Court believes that Gomez would have taken a photograph or made a video recording showing that the summons had been affixed to the door. Yet, neither the video nor Gomez's contemporaneous declaration narrating the video makes any mention whatsoever of affixing the summons to the door. Nor did he submit any photograph showing such affixing.

Fourth, at the evidentiary hearing, the Court asked non-leading questions seeking to find out what Gomez did minute-by-minute with respect to service on Hirshowitz on April 29, 2025. Tr. 11-20. As Gomez described the various things he saw, heard and did that day, Gomez said nothing about affixing anything to the door. Instead, Gomez described his approach of Hirshowitz's house, his knocking on the door, his hearing a dog, his hearing an individual shushing the dog, and his then hearing the dog in a different part of the house. He testified that he then got in his car and drove off to a United States Post Office. From the car, he called his client to describe what had happened. He testified that he never returned to the house again. Gomez made no mention of affixing the summons to the door during this portion of this testimony. Indeed, the Court asked Gomez specifically what he did after he turned his video camera off. Gomez's response was that he got in his car and drove away. Tr. 19.

It was only after the Court had concluded questioning and plaintiff's counsel examined Gomez, that Gomez changed this narrative. The change came in response to a question from counsel: "And so on this particular day, on April 29th, did you do anything else other than knocking on the door and mailing the summons and complaint?" Gomez stated, "Yes, I left a copy of the paperwork there on the door." Tr. 23. Gomez gave no further explanation of what "paperwork" he was referring to and how — given that it was the same paperwork he mailed

later that day to Hirshowitz in two boxes — he was physically able to have "left" that paperwork "on" the door. He also did not volunteer an explanation of why he had omitted any mention of this alleged act of affixing both in his initial testimony and in his original affidavit of service. Nor did counsel seek to elicit such an explanation. Thus, the Court finds Gomez's testimony at the hearing that he affixed something to Hirshowitz's door to be incredible.

Fifth, in the affidavit filed in response to Hirshowitz's motion in which Gomez claimed for the first time that he had affixed something to Hirshowitz's door, Gomez swore that he affixed the "summons and complaint" to the door and that it was done "securely and conspicuously." Gomez Aff. at *1 (¶ 6) (emphasis added). But the Second Amended Complaint in this matter comprised 452 pages including exhibits. The Court is doubtful that Gomez would have omitted to describe during his initial hearing testimony how he possibly could have affixed such a large document to a front door had such affixing actually occurred.

Sixth, Hirshowitz has provided a statement under oath that that she saw no legal papers affixed to her door when she returned home on April 29, 2025. Hirshowitz Aff. ¶ 8.

Because the Court does not credit Gomez's claim that he affixed the summons to the door, Jimenez-Fogarty has failed to meet her burden of proving that she completed service of the summons and complaint as required under Section 308(4). See Khan, 360 F. App'x at 203 ("the plaintiff bears the burden of establishing that service was sufficient").

Even if the Court had not reached this conclusion, service would be defective for a separate and independent reason: section 308(4) requires that "proof of such service" — i.e., service that includes affixing — "be filed with the clerk of the court designated in the summons within twenty days of either such affixing or mailing." N.Y. C.P.L.R. § 308(4). Under the statute, service is only "complete" after such filing. Id. Here, the only proof of service filed with

26

the Court in the 20-day time period, <u>see</u> May 6, 2025, Proofs of Service at *4, made no mention

of any affixing of the summons. Thus, the required proof of "such service" (i.e., service that

includes affixing) was not timely filed and thus service was not properly "complete[d]" under the

statute.

In sum, because service was not properly made on Hirshowitz, the action should be

dismissed without prejudice as to her.

    C.  <u>Request to Extend the Time for Service as to the Defendant Judges</u>

Rule 4(m) provides

> If a defendant is not served within 90 days after the complaint is filed, the court
> — on motion or on its own after notice to the plaintiff — must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time. But if the plaintiff shows good cause for the failure, the court
> must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "Good cause . . . is evidenced only in exceptional circumstances, where the

insufficiency of service results from circumstances beyond the plaintiff's control. An attorney's

ignorance of the rules, inadvertence, neglect, or mistake do not constitute good cause." <u>Feingold</u>

<u>v. Hankin</u>, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003). "The plaintiff bears the burden of proof

in showing that it had good cause in not timely serving the defendant." <u>AIG Managed Mkt.</u>

<u>Neutral Fund v. Askin Cap. Mgmt., L.P.</u>, 197 F.R.D. 104, 108 (S.D.N.Y. 2000).

Under Rule 4(m), the deadline for service is 90 days after the date of filing of the

complaint. <u>See</u> Fed. R. Civ. P. 4(m); <u>Makell v. Cnty. of Nassau</u>, 599 F. Supp. 3d 101, 107

(E.D.N.Y. 2022) ("the filing of an amended complaint does not restart the clock; it is the date of

the filing of the original complaint, not the amended complaint, that remains controlling, at least

as to defendants named in the original complaint"). The original complaint in this case, which

named the defendant judges, was filed on November 15, 2024. <u>See</u> Complaint, filed Nov. 15,

2024 (Docket # 1).  Accordingly, Jimenez-Fogarty had until February 13, 2025, to serve them.

As described above, she has failed to do so and failed to seek an extension before the time period

expired.

Jimenez-Fogarty argues that "[i]f the Court finds a technical defect, good cause exists for

an extension under Fed. R. Civ. P. 4(m)."  Pl. Opp. to Eisenpress & Zugibe at 11.  Specifically,

Jimenez-Fogarty argues that

> Plaintiff's efforts—delivery by Gomez, video evidence, and multiple mailings
> (Exhibits A-C)—demonstrate diligence.  Romandette v. Weetabix Co., 807 F.2d
> 309, 311 (2d Cir. 1986).  Plaintiff's pro se status until January 31, 2025, and
> counsel's prompt action support good cause.  Boddie v. Connecticut, 401 U.S.
> 371, 380 (1971).  The Defendants' actual notice negates prejudice, while
> Plaintiff's severe harm — financial destitution, loss of custody, and racial bias —
> warrants an extension.  Mullane, 339 U.S. at 314; Zapata v. City of New York,
> 502 F.3d 192, 197 (2d Cir. 2007).

Id.

The Court disagrees.  As noted, "good cause" only occurs in "exceptional circumstances"

and "where the insufficiency of service results from circumstances beyond the plaintiff's

control."  Feingold, 269 F. Supp. 2d at 276.  Several factors counsel against a finding of good

cause.  First, and most importantly, effectuating proper service was completely within the control

of plaintiff.  The failure of service here resulted not from any party putting obstacles in the way

of plaintiff but in plaintiff's failure to follow clear rules set out in state law and the Federal Rules

of Civil Procedure for serving individuals.

Second, the Court does not understand what constitutes a "technical defect" that excuses

proper service and plaintiff cites no law to support this argument.  The fact remains that plaintiff

failed to follow either federal or state law in effectuating service.

28

Third, while it is true that Jimenez-Fogarty appeared pro se until January 31, 2025, nothing prevented the pro se plaintiff from following the rules governing service. There is no indication she sought advice from the Court's Pro Se Law Clinic on service and was mis-advised.

Fourth, since appearance of counsel on January 31, 2025, the Court specifically informed Jimenez-Fogarty's counsel on two separate occasions that the record did not show that the defendant judges had been properly served. See Memorandum Endorsed, filed Feb. 3, 2025 (Docket # 56); Order, filed February 11, 2025 (Docket # 59). Jimenez-Fogarty's counsel was both on notice of the need to properly serve the defendant judges and had ample opportunity to do so — or at the very least seek an extension of the deadline for service before the deadline expired. Counsel's failure to take timely action in the face of the Court's express warnings does not demonstrate diligence, promptness, or otherwise support a finding of good cause. Indeed, counsel's failure inexorably led to the defendants being forced to file the instant motion to dismiss for insufficient service and to the Court having to adjudicate that motion.

In her brief, plaintiff points to the fact that the defendant judges have had "actual notice" of the case, see Pl. Opp. to Eisenpress & Zugibe at 11. But case law is clear that "actual notice is not grounds, in itself, to establish good cause." Feingold, 269 F. Supp. 2d at 277.

Jimenez-Fogarty spends a substantial portion of her brief arguing that "[t]he State Judicial Defendants' failure to respond by December 9, 2024, and their delayed appearance until May 15, 2025, constitutes contempt and a tactic to evade accountability" and that such "contemptuous conduct warrants sanctions." Pl. Opp. to Eisenpress & Zugibe at 8. She also suggests that good cause should not be found because of the defendant judges' "contemptuous delay." Id. at 11. Jimenez-Fogarty's argument is rejected because it is premised on her incorrect assumption that defendants judges were properly served.

Additionally, plaintiff argues that she was not required to personally serve the second amended complaint on the defendant judges.  Pl. Opp. to Eisenpress & Zugibe at 11-13.  We agree with plaintiff that had service of the original complaint properly been made on the defendant judges, there would be no need to personally serve them with any later amended complaint inasmuch as service of any later complaint would be governed by Fed. R. Civ. P. 5(b), not Rule 4.  Rule 5(b) does not apply, however, given that service was never properly made of the original complaint.

We recognize that a district court has discretion to "extend the time to serve if, after balancing the relative prejudice to the parties and considering all relevant factors, it concludes that such an extension is justified."  Mares v. United States, 627 F. App'x 21, 24 (2d Cir. 2015). In light of the fact that plaintiff has stubbornly, and in the face of advice from the Court, refused to effectuate proper service, thereby requiring the defendant judges to file this motion, and refused to seek an extension of the deadline before it expired notwithstanding the Court's notification that service had not been properly effected, we do not see a reason to exercise that discretion here.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, the defendant judges' motion to dismiss (Docket # 115) and Hirshowitz's motion to dismiss (Docket # 117) should be granted and the action should be dismissed without prejudice as to those defendants.  The request to extend the time for service under Fed. R. Civ. P. 4(m) should be denied.

### <u>PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION</u>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  A party may respond to any objections within 14 days after being served.  Any objections and responses shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections or responses must be directed to Judge Rochon.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  September 30, 2025
        New York, New York


GABRIEL W. GORENSTEIN
United States Magistrate Judge