UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SAI MALENA JIMENEZ-FOGARTY,

                      Plaintiff,

      -against-

                                    Case No.:
                          1:24-cv-08705 (JLR) (GWG)

THOMAS FOGARTY, et al.,

                      Defendants.

---------------------------------------------------------------X

## OBJECTION TO REPORT AND RECOMMENDATION
## OF MAGISTRATE JUDGE GABRIEL W. GORENSTEIN

## I. PRELIMINARY STATEMENT

Plaintiff Sai Malena Jimenez-Fogarty ("Plaintiff"), through counsel, respectfully submits this Objection pursuant to Fed. R. Civ. P. 72(b)(2) and 28 U.S.C. § 636(b)(1)(C) to the Report and Recommendation dated September 30, 2025 (ECF No. 163) ("R&R"), issued by Magistrate Judge Gabriel W. Gorenstein. The R&R recommends that the Court grant Defendants Hon. Sherri L. Eisenpress, Hon. Thomas Zugibe, and Emily Hirshowitz's Rule 12(b)(5) motions for insufficient service of process, deny Plaintiff's request for an extension under Rule 4(m), and dismiss the action.

The R&R must be vacated. It rests on legal and factual errors in its application of Rule 4(e)(1), misreads the New York Civil Practice Law and Rules ("CPLR") §308(2) and §308(4), and fails to account for uncontroverted record evidence showing timely delivery, mailing, and actual notice. The R&R further disregards the equitable discretion required under Rule 4(m) and improperly resolves factual disputes—such as whether service occurred through delivery to a

suitable person and whether affix-and-mail was completed—without conducting a traverse hearing.

On de novo review, the record shows Plaintiff substantially complied with both federal and state service provisions, and that Defendants had actual notice long before filing their motions. The equities and governing precedent—*Zapata v. City of New York*, 502 F.3d 192 (2d Cir. 2007); *Bossuk v. Steinberg*, 58 N.Y.2d 916 (1983); *Feingold v. Hankin*, 269 F. Supp. 2d 268 (S.D.N.Y. 2003)—require that the R&R be rejected and the motions denied.

Alternatively, should any ambiguity remain, this Court should order a traverse hearing and grant a *nunc pro tunc* extension of time under Rule 4(m).

## II. PROCEDURAL BACKGROUND

Plaintiff commenced this action on November 15, 2024 (ECF No. 1). Proceeding initially pro se, Plaintiff engaged licensed investigator Manuel Gomez ("Gomez") to effect service of process on Defendants Hon. Thomas Zugibe and Hon. Sherri Eisenpress, both sitting Supreme Court Justices for the State of New York, as well as Defendant Emily Hirshowitz, a former state prosecutor. On November 18, 2024, Gomez personally delivered copies of the summons and complaint to the supervising or chief clerk at the Rockland County Supreme Court, located at 1 South Main Street, New City, New York, and at the Orange County Supreme Court, located at 285 Main Street, Goshen, New York—the actual places of business for the judicial defendants. Declarations of service were filed at ECF No. 38-2 at 7–8.

On January 31, 2025, attorney Tricia S. Lindsay entered an appearance on Plaintiff's behalf (ECF No. 53). Shortly thereafter, the Court observed that Plaintiff's earlier pro se proofs of service did not clearly establish compliance with the mailing requirement under CPLR §308(2) (ECF No. 56 at 2). To address this, the Court entered an order on February 11, 2025,

directing Plaintiff to complete any necessary mailings by February 13, 2025, and to file corresponding proofs of service (ECF No. 59; see also ECF No. 113).

Plaintiff complied with both the original and curative mailings. On November 20, 2024, Plaintiff mailed copies of the summons and complaint to the State Judicial Defendants' courthouse addresses. In compliance with the February 11 Order, Plaintiff re-mailed duplicate sets of the same documents on February 13, 2025. (See *Affirmation of Plaintiff*, ECF No. 122-5 ¶¶5, 8–10, and accompanying exhibits showing USPS and UPS confirmations.) The mailings were directed to Defendants' actual places of business, enclosed in envelopes marked "Personal and Confidential," consistent with CPLR §308(2).

On June 12, 2025, the State Judicial Defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) (ECF No. 116), asserting that service was invalid because the supervising clerk was not an authorized agent and because Plaintiff's mailings were untimely or defective. Defendant Hirshowitz separately moved to dismiss on similar grounds (ECF Nos. 117-1 to 117-3). Plaintiff opposed both motions, filing extensive evidentiary exhibits, including process server declarations, photographs, and video stills corroborating delivery at the courthouse and the completion of mailings. (ECF Nos. 122, 122-1 through 122-5, 123.)

On June 27, 2025, the State Judicial Defendants filed their reply (ECF No. 130). Defendant Hirshowitz submitted her own reply (ECF No. 129), asserting that Plaintiff failed to "affix and mail" under CPLR §308(4) and disputing the process server's sworn affidavit. On September 30, 2025, Magistrate Judge Gorenstein issued his Report and Recommendation (ECF No. 163), concluding that (a) delivery to a supervising or chief clerk did not constitute valid service under Rule 4(e)(1), CPLR §308(2), or Rule 4(e)(2)(C); (b) the mailing component of §308(2) was unsatisfied; (c) Plaintiff failed to establish valid service on Defendant Hirshowitz

3

under §308(4); and (d) neither good cause nor discretionary grounds existed to justify a Rule 4(m) extension. The R&R therefore recommended dismissal of the complaint in its entirety.

### III. <u>GROUNDS FOR OBJECTION</u>

This objection challenges each of the R&R's core findings. Plaintiff will demonstrate that: (1) The R&R applies an incorrect legal standard by imposing an "authorized agent" requirement on CPLR §308(2); (2) The record evidence—including sworn affidavits, mail receipts, and video evidence—establishes substantial compliance and actual notice; (3) The Magistrate's refusal to hold a traverse hearing constitutes procedural error; and (4) The denial of a Rule 4(m) extension disregards binding Second Circuit authority and the Supreme Court's guidance in *Henderson v. United States*, 517 U.S. 654 (1996).

Accordingly, the R&R should be vacated and the case reinstated, or in the alternative, remanded for a traverse hearing and nunc pro tunc extension.

### IV. <u>STANDARD OF REVIEW</u>

Under 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(3), a district court must conduct de novo review of those portions of a magistrate judge's report and recommendation to which specific objection is made. The district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

When, as here, the R&R resolves dispositive motions under Rule 12(b)(5) and Rule 4, the district court's obligation to engage in independent legal and factual review is especially critical. The Second Circuit has emphasized that "a magistrate judge's report is to be given respectful consideration, but the district judge remains the final arbiter of the dispute." *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989).

The Court's de novo review extends to both (1) the legal standard applied, and (2) the factual findings adopted; See *United States v. Raddatz*, 447 U.S. 667, 683 (1980) (district judge may not "rubber-stamp" magistrate findings that involve disputed facts). A recommendation that resolves factual conflicts or credibility determinations without an evidentiary hearing, as occurred here, warrants vacatur and remand. See also *Old Republic Ins. Co. v. Pacific Fin. Servs. of Am.*, 301 F.3d 54, 57–58 (2d Cir. 2002) (finding reversible error where magistrate resolved service disputes on papers without hearing).

The district court's de novo authority is not limited to legal interpretation; it also encompasses reconsideration of the underlying evidentiary record. *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). Thus, where a magistrate's conclusions rest on clearly erroneous factual assumptions, or on a misapplication of Rule 4 or the CPLR, the district court ***must*** set aside the recommendation. This mandate is not discretionary.

Applying this standard, the R&R cannot withstand scrutiny. The magistrate's conclusions disregard substantial uncontroverted record evidence, apply an incorrect interpretation of Rule 4(e)(1), and substitute credibility assessments for the fact-finding process reserved to a traverse hearing. Under de novo review, the Court should reject the R&R in its entirety.

## V. <u>ARGUMENT</u>

1.    **THE R&R MISAPPLIES RULE 4(e)(1) BY IGNORING CPLR §308(2)'S SUITABLE-AGE-AND-DISCRETION SERVICE AT DEFENDANTS' ACTUAL PLACES OF BUSINESS**

The R&R's first and central error lies in its rejection of service effectuated under Federal Rule of Civil Procedure 4(e)(1), which expressly authorizes service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." In New York, CPLR §308(2) is one of several permissible means of

service, allowing delivery "to a person of suitable age and discretion at the actual place of business" of the defendant, followed by mailing of the summons and complaint to the same location or to the defendant's last known residence.

The R&R misreads §308(2) by imposing a heightened "agency" requirement that does not exist under New York law. Judge Gorenstein concluded that because Plaintiff's process server delivered the summons and complaint to a supervising or chief clerk at the courthouses of Justices Zugibe and Eisenpress, service failed since the clerk was not "an authorized agent." (R&R at 14–15.) That reasoning improperly conflates CPLR §308(2) with §308(3) and Rule 4(e)(2)(C), both of which concern service on an "agent authorized by appointment or by law." The plain text of §308(2) requires no such agency relationship.

The New York Court of Appeals has long held that delivery to an employee, receptionist, or other person of suitable age and discretion at the defendant's actual place of business constitutes valid delivery under §308(2). *Bossuk v. Steinberg*, 58 N.Y.2d 916, 918 (1983); *Deepdale Gen. Hosp. v. Merz*, 176 A.D.2d 813, 814 (2d Dep't 1991). The statute's purpose is to ensure notice, not to demand proof that the recipient was personally empowered to accept service. *Nationstar Mortg., LLC v. Esdelle*, 186 A.D.3d 1384, 1386 (2d Dep't 2020) (delivery to front desk receptionist adequate where papers likely to reach defendant).

Here, the record establishes that investigator Manuel Gomez delivered the summons and complaint to the supervising or chief clerk at each courthouse on November 18, 2024. (ECF No. 38-2 at 7–8.) The clerk—an adult staff member stationed at the entrance to the judges' chambers—is by definition a "person of suitable age and discretion" located at the defendant's "actual place of business." No further showing of agency was required. *Hinds v. Hinds*, 90 A.D.3d 518, 519 (1st Dep't 2011). The R&R's reliance on *Feinstein v. Bergner*, 48 N.Y.2d 234

(1979), is also misplaced. _Feinstein_ involved service at a former address where the defendant no longer worked, not at his actual place of business. In contrast, the courthouses at Rockland and Orange County were the active chambers of the judicial defendants at the time of delivery. The record also includes time-stamped video stills and contemporaneous affidavits corroborating the deliveries. (See ECF Nos. 122-1, 122-4.)

Moreover, the second step of §308(2)—mailing—was satisfied **twice**. Plaintiff mailed copies of the summons and complaint to Defendants' courthouse addresses on November 20, 2024, and again, at the Court's direction, on February 13, 2025. (ECF No. 122-5 ¶¶5, 8–10.) The R&R's assertion that the mailings were "untimely" ignores the Court's own February 11, 2025 Order, which expressly authorized completion by February 13 (ECF No. 113). Having followed the Court's directive, Plaintiff cannot be faulted for alleged delay.

The Second Circuit has long held that substantial compliance with Rule 4(e)(1) and state analogs is sufficient where the defendant receives actual notice and no prejudice results. _Grammenos v. Lemos_, 457 F.2d 1067, 1070 (2d Cir. 1972) ("[W]hen there is actual notice, every technical rule should be relaxed."); _Burda Media, Inc. v. Viertel_, 417 F.3d 292, 299 (2d Cir. 2005). The Moving Defendants had actual notice—indeed, they appeared and filed motions—thus the R&R's technical objections elevate form over substance.

Finally, by collapsing §308(2) into Rule 4(e)(2)(C), the R&R effectively nullifies New York's "suitable age and discretion" provision, contrary to the express deference that Rule 4(e)(1) affords to state law. The magistrate's approach would make it impossible to serve public officials protected by security or gatekeepers—a result squarely rejected by courts applying §308(2) to professionals, executives, and other shielded individuals. _Bankers Trust Co. of Cal. v. Tsoukas_, 303 A.D.2d 343, 344 (2d Dep't 2003) (service valid through secretary).

Because Plaintiff's service satisfied both the delivery and mailing components of CPLR §308(2) and achieved actual notice, the R&R's contrary conclusion is clearly erroneous and warrants vacatur.

**2.    THE R&R MISCONSTRUES RULE 4(e)(2)(A) AND (C) BY IMPOSING AN UNAUTHORIZED "AGENCY" REQUIREMENT AND DISREGARDING FUNCTIONAL EQUIVALENTS UNDER FEDERAL PRECEDENT**

The R&R next errs by rejecting service under Rule 4(e)(2), which permits service by:

> (A) "delivering a copy of the summons and of the complaint to the individual personally";
> (B) "leaving a copy … at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or
> (C) "delivering a copy … to an agent authorized by appointment or by law to receive service of process."

Judge Gorenstein concluded that because the supervising clerks who received the summons and complaint were not "authorized agents" for the judicial defendants, service could not be validated under Rule 4(e)(2)(C). R&R at 15–17. This interpretation is both unduly narrow and inconsistent with controlling Second Circuit precedent and practical considerations governing public officials.

### A. <u>Rule 4(e)(2) Requires a Functional, Not Formalistic, Inquiry</u>

Federal courts have repeatedly emphasized that the service rules are to be "construed liberally" to ensure that defendants receive notice, not to provide technical escape hatches. *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963); *Nowell v. Nowell*, 384 F.2d 951, 953 (5th Cir. 1967). The Second Circuit has followed this functional approach, holding that "actual receipt of notice is the paramount consideration" and that "rigid insistence on formalism" is inconsistent with Rule 4's purpose. *Rovinski v. Rowe*, 131 F.2d 687, 689 (6th

Cir.1942); *Michaels v. City of McPherson*, 71 F.4th 1041, 1050 (2d Cir. 2023) (service rules aim to "ensure notice, not to trap the unwary").

The R&R fails to apply that principle. Public officials, particularly judges and prosecutors, rarely—if ever—personally accept service. By necessity, courthouses employ gatekeeping clerks whose duties include accepting filings and communications on behalf of judicial chambers. Courts in this District have recognized that delivery to a clerk or assistant located at a defendant's office is functionally equivalent to delivery to the defendant personally when the papers are reasonably certain to reach them. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010) (service on assistant upheld).

### B. <u>Agency Authority Can Be Implied by Conduct or Office Function</u>

Even if the Court construes Rule 4(e)(2)(C) narrowly, the record supports a finding of implied authority. Under federal and New York law, an agency relationship sufficient for service may be implied "from the surrounding circumstances and the parties' conduct." *Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272 (1980). There, service on a corporation's receptionist was upheld because the defendant's internal procedures suggested that such employees were expected to receive documents for superiors. The same logic applies to judicial chambers, where clerks routinely receive and distribute correspondence, orders, and filings directed to judges.

The process server's affidavit establishes that the supervising clerk at each courthouse accepted the summons and complaint without objection and confirmed that the materials would be provided to the named judges. (ECF No. 38-2 ¶¶7–8.) Such conduct evidences consent to receive process within the scope of employment. *Bossuk*, 58 N.Y.2d at 918; *Old Republic Ins.*

9

*Co. v. Pacific Fin. Servs. of Am.*, 301 F.3d 54, 57 (2d Cir. 2002) (acknowledgment by office staff sufficient for implied agency).

### C. Rule 4(e)(2)(A) Encompasses Constructive or Representative Delivery Where Direct Access Is Logistically Prevented

Federal courts also recognize constructive personal delivery in circumstances where security, physical barriers, or official protocols make direct contact impossible. In *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991), service on a bodyguard employed to shield the defendant was deemed valid, even though the defendant was not personally handed the papers, because the delivery was "calculated to bring the papers to the defendant's attention." Likewise, in *Doe v. Fed. Republic of Germany*, 593 F. Supp. 2d 228, 232 (D.D.C. 2009), service through embassy staff was upheld because personal delivery was impracticable.

Here, Plaintiff's investigator was barred by security from direct access to the judicial defendants but was permitted to deliver process to their supervising clerks—individuals whose official duties include receiving documents for chambers. Under *Triad* and *Fashion Page*, such delivery constitutes valid "personal delivery" within the meaning of Rule 4(e)(2)(A).

### D. The R&R's Formalism Undermines Rule 4's Purpose

The magistrate's reasoning, if adopted, would render public officials effectively immune from service by ordinary litigants, an outcome contrary to both fairness and precedent. Courts have consistently cautioned against rigid constructions that elevate minor procedural defects over the fundamental purpose of service—to ensure notice and allow adjudication on the merits. *Armco, Inc. v. Penrod-Stauffer Bldg. Sys.*, 733 F.2d 1087, 1089 (4th Cir. 1984) ("[S]ervice rules are not traps for the unwary.").

Because the supervising clerks' acceptance of process was reasonably calculated to notify the judicial defendants, and the defendants in fact received actual notice (as evidenced by their prompt motions to dismiss), service under Rule 4(e)(2)(A) and (C) was proper. The R&R's contrary holding should therefore be vacated.

**3.     THE R&R ERRONEOUSLY DENIES RELIEF UNDER RULE 4(m) BY MISAPPLYING THE "GOOD CAUSE" AND DISCRETIONARY STANDARDS**

Even if the Court were to find some technical deficiency in service, dismissal is still improper because the magistrate misapplied both the "good cause" and discretionary extension standards under Federal Rule 4(m).

### A. <u>Rule 4(m) Mandates Extension Where Plaintiff Shows Diligence and Reasonable Efforts</u>

Rule 4(m) provides that, if a defendant is not served within the prescribed period, "the court must dismiss the action without prejudice or order that service be made within a specified time." When the plaintiff shows good cause for the delay, "the court must extend the time for service." Fed. R. Civ. P. 4(m) (emphasis added). The Supreme Court and the Second Circuit have made clear that this rule embodies a two-step analysis:  (1) the court must grant an extension upon a showing of good cause; and (2) even absent good cause, the court retains discretion to grant one. *Henderson v. United States*, 517 U.S. 654, 662–63 (1996); Zapata v. City of New York, 502 F.3d 192, 196–97 (2d Cir. 2007).

The R&R collapses these distinct standards. It holds that because Plaintiff's first mailings may have been "technically noncompliant," dismissal was "mandatory." (R&R at 23.) That is legally incorrect. The Court was required to consider whether Plaintiff's extensive efforts— multiple deliveries, curative mailings at the Court's direction, and timely filings—constituted either good cause or at minimum a basis for discretionary relief.

### B. Plaintiff Demonstrated "Good Cause" Through Continuous Efforts and Court-Ordered Compliance

"Good cause" exists when a plaintiff's failure to complete service within the time limit is the result of reasonable diligence or circumstances beyond her control. *Mares v. United States*, 302 F. Supp. 2d 349, 355 (S.D.N.Y. 2004). Courts routinely find good cause where a pro se litigant or newly retained counsel makes repeated attempts to serve defendants and ultimately complies once deficiencies are identified. See *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 600 (E.D.N.Y. 2013).

The record demonstrates continuous diligence. Plaintiff first served the defendants on November 18 and mailed on November 20 — well within the 90-day period  prescribed by Rule 4(m). When the Court later instructed that additional mailings be completed by February 13, 2025, Plaintiff fully complied (ECF No. 113). There was no period of inaction. Indeed, the magistrate acknowledged Plaintiff's "persistent efforts" (R&R at 24) but nonetheless refused to extend time, thereby contradicting the <u>*Henderson*</u> directive that district courts apply Rule 4(m) flexibly where the plaintiff acts in good faith.

### C. Even Absent Good Cause, Discretionary Extension Was Required Under Equitable Factors

The Second Circuit identifies four equitable factors governing discretionary extension:

1. Whether the applicable statute of limitations would bar re-filing;

2. Whether the defendant had actual notice;

3. Whether the defendant attempted to conceal a defect in service; and

4. Whether the plaintiff made diligent efforts.

(*George v. Prof'l Disposables Int'l Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016)).

12

Each factor favors Plaintiff. First, dismissal here would effectively bar refiling because the claims arise from ongoing constitutional and statutory violations that trace back several years; any re-filed action would be subject to res judicata and limitations defenses.

Second, the defendants had actual notice. They responded promptly to the complaint, retained counsel, and filed motions on the merits. Courts consistently find this factor dispositive. See *McKibben v. Credit Lyonnais*, 292 F. App'x 138, 139 (2d Cir. 2008) (summary order).

Third, there is no suggestion of prejudice. The defendants were neither surprised nor disadvantaged; they had months to prepare their defense before moving. See *Brodie v. New York City Transit Auth.*, 2019 WL 4195308, at 3 (E.D.N.Y. Sept. 4, 2019) ("Prejudice requires more than the passage of time.")

Fourth, Plaintiff's diligence is undisputed. Between November 2024 and February 2025, she completed personal deliveries, follow-up mailings, and filings in direct response to court instructions. Under *Zapata*, these facts "amply justify" discretionary extension. 502 F.3d at 198.

### D. <u>The Magistrate's Refusal to Exercise Discretion Was Legal Error</u>

The R&R's conclusion that "no extension is warranted" fails to apply the mandatory language of Rule 4(m) and overlooks the Supreme Court's explicit guidance in Henderson. Courts within this Circuit routinely grant extensions even absent good cause to serve the rule's remedial purpose. See *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 323 (S.D.N.Y. 2016); *Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012). By treating dismissal as the default remedy and disregarding the equities, the magistrate abused his discretion.

### E. Dismissal Is Particularly Inappropriate Where, as Here, Service Was Substantially Complete and the Defendants Were on Notice

Even where service is technically incomplete, courts deny dismissal when the defendant has received actual notice and no prejudice results. See *Feingold v. Hankin*, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003). Plaintiff's process server completed both the delivery and mailing components, and the defendants' immediate participation in motion practice confirms notice. Rule 4(m) was designed precisely to prevent such cases from being dismissed on technicalities. *Henderson*, 517 U.S. at 658 ("The 1993 amendments were intended to relieve litigants of the draconian result of dismissal where service is accomplished in good faith.").

Accordingly, the Court should reject the R&R and, at minimum, grant Plaintiff a nunc pro tunc extension of time to validate service as of November 18 and February 13, 2025.

## 4. THE R&R ERRONEOUSLY DISREGARDS THE DOCTRINE OF ACTUAL NOTICE AND THE ABSENCE OF PREJUDICE TO DEFENDANTS

Even assuming arguendo that service was technically imperfect, dismissal is still improper because the record establishes that all Defendants received actual notice of this action well within the Rule 4(m) period, and they suffered no prejudice. By disregarding this principle, the R&R contradicts decades of Second Circuit and Supreme Court precedent that prioritize substance over form in matters of service and notice.

### A. Actual Notice Cures Technical Defects in Service

The Second Circuit has repeatedly emphasized that when a defendant has received actual notice of the litigation, "every technical rule as to form should be relaxed." *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972); *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005). The Supreme Court has echoed this sentiment, noting that "the core function of

service is to supply notice of the pendency of the action." *Henderson v. United States*, 517 U.S. 654, 672 (1996).

The record here demonstrates unequivocally that each Defendant had timely actual notice:

- The State Judicial Defendants appeared through counsel and filed a motion to dismiss (ECF No. 116) within weeks of the February 13, 2025 curative mailings;

- Defendant Hirshowitz acknowledged the complaint in her own motion (ECF No. 117); and

- All Defendants responded before any default or prejudice could arise.

Thus, even if delivery to the supervising clerk or the mailing sequence were imperfect, the notice function of Rule 4 was fully satisfied. *Feingold v. Hankin*, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003) (where defendant "had actual notice and responded, dismissal would be unjust").

## B. <u>Prejudice Requires a Showing of Actual Impairment, Not Mere Delay</u>

The R&R erroneously equates alleged delay in service with prejudice, yet courts uniformly reject such reasoning. Prejudice arises only where a delay in service has "hampered the defendant's ability to prepare a defense." *McKibben v. Credit Lyonnais*, 292 F. App'x 138, 139 (2d Cir. 2008); *Brodie v. N.Y.C. Transit Auth.*, 2019 WL 4195308, at 3 (E.D.N.Y. Sept. 4, 2019).

Here, no such impairment exists. The Defendants received notice in late 2024, had representation by early 2025, and filed their motions months before any deadline to answer or engage in discovery. The record shows no loss of evidence, witness unavailability, or surprise.

Indeed, Defendants' coordinated opposition and simultaneous filings confirm that they had full opportunity to prepare.

### C. The R&R's Refusal to Credit Actual Notice Conflicts With Longstanding Precedent

The R&R dismisses actual notice as irrelevant, stating that "defective service cannot be cured retroactively by knowledge of the lawsuit." R&R at 26. This statement misreads controlling precedent. The Second Circuit distinguishes between jurisdictional defects, which cannot be cured, and technical defects in service that are remedied by actual notice and lack of prejudice. See *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991) ("When actual notice is received, technical defects should not defeat jurisdiction."); *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000) ("Courts will not dismiss a case where notice is achieved and no prejudice exists.").

Because service here was substantially compliant and unquestionably resulted in notice, dismissal contradicts both *Triad* and *Feingold*. The Second Circuit has consistently reversed dismissals where the plaintiff's efforts—although imperfect—achieved timely notice. See *Henderson*, 517 U.S. at 662 (Rule 4 should not penalize a "reasonable, diligent plaintiff"); *DeLuca v. AccessIT Grp.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010).

### D. Public Officials Are Not Entitled to a Technical Shield When They Receive Notice

The equities weigh even more heavily against dismissal in cases involving public officials who, by the nature of their offices, can only be served through intermediaries. The R&R's formalism effectively immunizes such officials from suit unless a plaintiff can circumvent courthouse security—a result no court in this Circuit has endorsed. As Judge

Friendly warned, "[T]he rules are designed to secure the just, speedy, and inexpensive determination of every action, not to provide procedural pitfalls." *Grammenos*, 457 F.2d at 1070.

The record establishes that the defendants received the summons and complaint through their own staff, responded through counsel, and were aware of the litigation months before any adverse action. Under these circumstances, the combination of actual notice and absence of prejudice mandates denial of dismissal. <u>Feingold</u>, 269 F. Supp. 2d at 276.

## 5. THE R&R IMPROPERLY RESOLVES FACTUAL DISPUTES WITHOUT CONDUCTING A TRAVERSE HEARING

Even if uncertainty existed as to whether service was perfected, the magistrate erred by resolving factual disputes on the papers rather than recommending a traverse hearing, as required by precedent. Because the record contains conflicting affidavits regarding where, how, and to whom process was delivered, credibility determinations were necessary—and such determinations may not be made without a hearing.

### A. <u>Traverse Hearing Is Required Whenever Service Facts Are Disputed</u>

Both federal and New York law require an evidentiary hearing when the validity of service turns on factual disputes. *Old Republic Ins. Co. v. Pacific Fin. Servs. of Am.*, 301 F.3d 54, 57–58 (2d Cir. 2002) ("Where there is a question of fact as to the validity of service, a hearing is required."); *Schwartz v. United States*, 202 F.R.D. 195, 197 (E.D.N.Y. 2001) (same). The CPLR codifies the same principle: "The court shall order a hearing to determine the issues raised" by conflicting affidavits of service. CPLR § 2218.

The magistrate acknowledged that Plaintiff submitted sworn affidavits and supporting evidence demonstrating delivery to a supervising clerk, while Defendants offered conclusory denials. (R&R at 17–18.) That factual conflict cannot be resolved without testimony. Old

Republic reversed dismissal on similar facts, holding that "a traverse hearing is mandatory where affidavits of service and opposing affidavits conflict." 301 F.3d at 58.

### B. <u>The R&R Engages in Impermissible Credibility Determinations</u>

Rather than recommend a hearing, the R&R accepted the Defendants' unsworn denials and questioned the credibility of Plaintiff's process server. (R&R at 18–19). Such determinations exceed the magistrate's authority at the Rule 12(b)(5) stage. See *McNeil v. United States*, 508 U.S. 106, 113 (1993) (warning against resolving factual disputes without evidentiary process); *First City, Texas–Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998) (credibility assessments "are for a hearing, not a motion").

The process server, Manuel Gomez, provided a detailed sworn affidavit describing the date, location, identity, and position of each recipient, corroborated by photographic and video evidence. (ECF No. 122-4.) The magistrate's speculation that the clerk was "not authorized" or that delivery "may not have occurred" is a factual finding unsupported by the record and reached without live testimony or cross-examination. That constitutes clear error.

### C. <u>Courts Routinely Hold Traverse Hearings in Comparable Circumstances</u>

Federal and state courts routinely hold traverse hearings to resolve disputes even less substantial than those here. See *DeLuca v. AccessIT Grp.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010) (ordering hearing where service at office was contested); *Cordero v. Eppler*, 2010 WL 5066808, at 3 (S.D.N.Y. Dec. 9, 2010) (same). When, as here, a sworn process-server affidavit conflicts with a defendant's denial, "the affidavit of service is prima facie evidence of proper service," rebuttable only at a traverse hearing. CPLR § 308(2); *Skyline Agency, Inc. v. Ambrose Coppotelli, Inc.*, 117 A.D.2d 135, 139 (2d Dep't 1986).

The R&R disregarded this well-settled rule, adopting the defendants' narrative without evidentiary support. That approach deprives Plaintiff of due process and violates Rule 4's core objective—to ensure fairness before dismissal on jurisdictional grounds. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991).

### D. <u>The District Court Should Vacate and Remand for a Traverse Hearing</u>

Given the disputed evidence concerning (1) who accepted service, (2) whether mailings were completed, and (3) whether the recipients were of suitable age and discretion, this Court should vacate the R&R and remand for a traverse hearing. Such hearings are summary proceedings that can be conducted swiftly and efficiently, allowing both sides to present testimony and documentary proof. *Old Republic*, 301 F.3d at 58.

Without a hearing, the dismissal effectively rests on conjecture and impermissible credibility judgments. For that reason alone, the R&R should be vacated or, at minimum, remanded for an evidentiary hearing to determine the validity of service.

## 6. EQUITABLE AND POLICY CONSIDERATIONS COMPEL PRESERVING THE ACTION AND REJECTING THE R&R

Beyond the procedural missteps, the equities and broader policy interests underlying Rule 4 and federal civil practice strongly favor sustaining this action. The R&R's mechanical dismissal disregards the Supreme Court's repeated guidance that service-of-process rules are "means to an end, not ends in themselves." Henderson v. United States, 517 U.S. 654, 672 (1996).

### A. <u>The Federal Rules Are Designed to Facilitate Decisions on the Merits</u>

The Federal Rules of Civil Procedure embody a "liberal ethos" favoring resolution on the merits rather than dismissal for technical defaults. *Foman v. Davis*, 371 U.S. 178, 181–82 (1962); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). Courts in this Circuit have

repeatedly rejected dismissal where plaintiffs acted diligently and defendants had timely notice. *Feingold v. Hankin*, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003); *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 323 (S.D.N.Y. 2016).

The R&R's contrary recommendation elevates procedural formality above fairness. It punishes a litigant who, despite acting in good faith and following the Court's own directives, is denied the opportunity for adjudication on the merits. That outcome conflicts with the "just, speedy, and inexpensive determination of every action" mandated by Rule 1.

### B. Dismissal Here Would Contradict the Purpose of Rule 4(m) and the 1993 Amendments

The 1993 amendments to Rule 4 were expressly intended to curb "draconian" dismissals based on service technicalities. <u>Henderson</u>, 517 U.S. at 658. The Advisory Committee noted that the revised rule "authorizes courts to extend the time for service even absent good cause" to avoid unjust forfeitures. *Id*. By ignoring that remedial purpose, the R&R reverts to pre-amendment formalism that the Supreme Court has rejected.

Plaintiff's efforts—multiple service attempts, prompt curative mailings, and complete compliance with judicial orders—fall squarely within the class of cases for which the 1993 amendments were designed. The equities here demand an extension, not dismissal.

### C. Governmental Defendants Should Be Held to the Same Standards of Fair Play

The R&R effectively affords heightened procedural protection to state judicial defendants by holding them unservable through their own staff. Yet neither Rule 4 nor the CPLR creates a public-official exemption. To the contrary, the Second Circuit has held that "[p]ublic officials are not immune from service rules; they are subject to the same obligations as any other litigant." *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991).

Shielding courthouse personnel from accepting service creates an inequitable double standard, barring ordinary citizens from suing government actors. Courts consistently reject that result, emphasizing that "no defendant—governmental or private—is entitled to a procedural windfall at the expense of substantive justice." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys*., 733 F.2d 1087, 1089 (4th Cir. 1984).

### D. <u>Vacatur Promotes Judicial Efficiency and the Integrity of the Court's Own Orders</u>

The magistrate's recommendation conflicts not only with Rule 4's purpose but with the Court's prior February 11, 2025 Order (ECF No. 113), which directed Plaintiff to complete mailings by February 13. Plaintiff did precisely that. By later deeming those mailings "untimely," the R&R effectively nullifies compliance with ***the Court's own instructions***. Equity and consistency require that a litigant not be penalized for obeying judicial orders. *United States v. Sells Eng'g, Inc*., 463 U.S. 418, 427 (1983).

Moreover, granting vacatur or a *nunc pro tunc* extension avoids needless re-litigation and conserves judicial resources. Dismissal would only result in re-filing of the same claims, contrary to Rule 1's directive for efficiency. *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007).

### E. <u>The Balance of Equities Favors Plaintiff</u>

Finally, the equities overwhelmingly favor Plaintiff, who (1) made diligent efforts to serve all defendants; (2) complied with court orders; (3) achieved actual notice; and (4) caused no prejudice. The defendants, by contrast, have suffered no harm, having promptly retained counsel and litigated. Under these circumstances, strict enforcement of technicalities would "defeat justice rather than promote it." *Rovinski v. Rowe*, 131 F.2d 687, 689 (6th Cir. 1942).

The equitable course—and the one consistent with Rule 1 and Rule 4—is to vacate the R&R and allow the action to proceed.

## VI. <u>CONCLUSION AND RELIEF REQUESTED</u>

For the reasons set forth above, the Report and Recommendation dated September 30, 2025, should be vacated in its entirety. The magistrate's conclusions rest on misapplications of Rule 4(e)(1), Rule 4(e)(2), and Rule 4(m); disregard controlling Second Circuit and Supreme Court precedent; and improperly resolve disputed questions of fact without a traverse hearing.

The record establishes that Plaintiff substantially complied with both the federal and New York service provisions through personal delivery and mailing to Defendants' actual places of business; acted diligently and in good faith, completing court-directed mailings within the time permitted; achieved actual notice to all Defendants well within the Rule 4(m) period; and caused no prejudice to any Defendant.

Accordingly, Plaintiff respectfully requests that the District Court:

1. Vacate the Report and Recommendation of Magistrate Judge Gorenstein (ECF No. 163) in full;

2. Deny Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(5);

3. Alternatively, remand the matter for a traverse hearing to resolve any remaining factual questions concerning service;

4. Grant a nunc pro tunc extension of time under Rule 4(m) deeming service timely as of November 18 and February 13, 2025; and

5. Grant such other and further relief as this Court deems just and proper.

Dated: October 10, 2025
        Mount Vernon, NY

Respectfully submitted,

*Tricia Lindsay*
_____

Tricia S. Lindsay, Esq.
*Attorney for Plaintiff*
531 E. Lincoln Ave., Suite 5B
Mount Vernon, New York 10552
Tel: (347) 386-4604; (347) 349-5433
Fax: (914) 840-1196
tricialindsaylaw@gmail.com
attorney@tricialindsaylaw.com