UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
SAI MALENA JIMENEZ-FOGARTY                    :

                                              :        OPINION AND ORDER

              Plaintiff,

                                              :        24 Civ. 8705 (JLR) (GWG)

       -v.-                                    :

                                              :

THOMAS FOGARTY et al.,

                                              :

              Defendants.                      :
--------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

       Tricia S. Lindsay, attorney for plaintiff Sai Malena Jimenez-Fogarty, responded to two

motions to dismiss by filing a pair of memoranda of law that cited to numerous nonexistent

cases.  In response, the Court ordered Lindsay to show cause why she should not be sanctioned

for her misleading filings.[1]  Upon consideration of Lindsay's response to these orders,[2] we find

that she should be sanctioned in the amount of $2,500.00 pursuant to Fed. R. Civ. P. 11.

       I.        BACKGROUND

       On June 20, 2025, plaintiff filed two memoranda of law to oppose motions to dismiss

brought by defendant Emily Hirshowitz and by defendants Judge Sherri Eisenpress and Judge

Thomas Zugibe.  See Memorandum of Law in Opposition, filed June 20, 2025 (Docket # 122)

---

[1] See Amended Order to Show Cause, dated July 17, 2025 (Docket # 144) ("1st OSC"); Order to Show Cause, dated Sept. 11, 2025 (Docket # 157) ("2d OSC").

[2] See Memorandum in Response to the Court's Order to Show Cause, filed Aug. 9, 2025 (Docket # 149) ("Resp."); Affidavit of Tricia S. Lindsay, filed Aug. 9, 2025 (Docket # 149-1) ("Lindsay Aff."); Memorandum in Response to the Court's Order to Show Cause, filed Sept. 18, 2025 (Docket # 159) ("Supp. Resp.").

("1st Opp."); Memorandum of Law in Opposition, filed June 20, 2025 (Docket # 123) ("2d Opp.").

The two briefs were signed by Lindsay, and each contained a number of fabricated citations. When we say "fabricated," we do not mean citations that arguably contain typographical errors — for example, Lindsay's citations to cases that exist and support the propositions for which they were cited but are not located in the volume or at the page of the reporter (or database identifier) given.[3] Similarly, we exclude any otherwise correct citations that give the wrong case name.[4] We also exclude those instances where the cited case covers the same topic as the proposition for which it is cited but where the case's holding is completely mischaracterized, although such a citation is itself grossly misleading and perhaps deserving of sanctions.[5]

Instead, we consider only citations to cases that cannot be located at all by name — or that were not located where Lindsay said they were and have nothing to do with the propositions

---

[3] For example, Lindsay cited to "Wells Fargo Bank, N.A. v. Enitan (155 A.D.3d 781, 2d Dept. 2017)" for the proposition that "a process server's affidavit establishes a presumption of proper service, which a defendant's conclusory denial cannot overcome." 1st Opp. at 7. This case exists and supports the above proposition, but it is located at 200 A.D.3d 736 and was decided in 2021.

[4] For example, Lindsay cited to "Well v. Pelham (2021 U.S. Dist. LEXIS 52247, S.D.N.Y. Mar. 19, 2021)" for the proposition that the plaintiff "bears the burden of establishing that service was proper, typically through affidavits or other evidence that create a prima facie case of compliance with legal requirements." 1st Opp. at 3. This case exists and supports the above proposition, but it is called Regan v. Pelham.

[5] For example, Lindsay cited to "Serraro v. Staropoli, 94 A.D.3d 1083 (2d Dept. 2012)" for the proposition that "two attempts at personal service constituted due diligence, justifying nail and mail service." 1st Opp. at 7. But this case held that four attempts at personal service did not constitute due diligence under N.Y. C.P.L.R. 308(4). See Serraro v. Staropoli, 94 A.D.3d 1083, 1085 (2d Dep't 2012).

for which they were cited — thus showing that the citations were completely made up.  The

following are descriptions of some of the fabricated citations:

- Lindsay cited to "Cornhill LLC v. Sowers, 183 A.D.3d 649 (2d Dept. 2020)" and represented that this case "[u]pheld nail and mail service based on multiple service attempts and mailing evidence."  1st Opp. at 7.  We cannot find any case by this name.  The reporter (183 A.D.3d 649) points to an entirely unrelated case, Matter of Goodine v. Evans, 183 A.D.3d 649 (2d Dep't 2020).

- Lindsay cited to "T.E. v. Pine Bush Cent. Sch. Dist., No. 16-CV-8607, 2017 WL 5496274, at *3 (S.D.N.Y. Nov. 15, 2017)" to support an argument regarding "authority to accept service." 2d Opp. at 7.  The Westlaw citation is to a District of Iowa case that does not have that name or docket number and has nothing to do with authority to accept service of process.  The case assigned to docket number "16-CV-8607" in the Southern District of New York does not have that name, and there is no opinion filed in that case at all, let alone one that relates to authority to accept service of process.  While there is a case on Westlaw with that name (appearing at 58 F. Supp. 3d 332 (S.D.N.Y. 2014)), the decision has an entirely different docket number and does not relate to service of process.

- Lindsey cited to "Bank of Am., N.A. v. Gruff, 131 A.D.3d 1185 (2d Dept. 2015)" and represented that this case "[u]pheld nail and mail service with evidence of affixation and mailing."  1st Opp. at 7.  We cannot find any case by this name, and the reporter (131 A.D.3d 1185) points to an entirely unrelated case, Bachvarov v Lawrence Union Free Sch. Dist., 131 A.D.3d 1182 (2d Dep't 2015).

- Lindsay cited to "Boss v. N.Y. Life Ins. Co., 298 N.Y. 917, 918 (1949)" to argue that "[a]ctual notice, evidenced by the judges' ties to co-defendants . . . negates prejudice." 2d Opp. at 6.  We cannot find any case by this name, and the reporter (298 N.Y. 917) points to two unrelated cases, Condur Affiliates, Inc. v. Ronnie, Inc., 298 N.Y. 917 (1949) and Marks v. Provident Mut. Life Ins. Co. of Phila., 298 N.Y. 917 (1949).

- Lindsay cited to "Dixon v. Cty. of Albany, 39 N.Y.S.3d 580, 583 (N.Y. App. Div. 2016)" to make the same argument.  2d Opp. at 6.  While we were able to locate a similarly named case at a different citation, Matter of Dixon v. County of Albany, 145 N.Y.S.3d 639 (3d Dep't 2021), this case bears no relation to plaintiff's argument.  Meanwhile, the reporter Lindsay gave ("39 N.Y.S.3d 580") points to an entirely unrelated case, People v. Menner, 53 Misc. 3d 52 (App. Term 2016).

- Lindsay cited to "Nagib v. News Syndicate Co., 413 N.Y.S.2d 108, 109 (1st Dep't 1978)" to argue that "[a]ny claim that service on judges requires special procedures is baseless." 2d Opp. at 7.  We cannot find any case by this name, and the reporter (413 N.Y.S.2d 108) points to an entirely unrelated case, Matter of

3

<u>Depew Union Free School Dist. v Depew Teachers Org.</u>, 98 Misc. 2d 85 (Sup. Ct. 1979), <u>rev'd</u>, 77 A.D.2d 798 (4th Dep't 1980).

- Lindsay cited to "<u>Koulkina v. City of New York</u>, No. 06 Civ. 11357, 2009 WL 2103627, at *3 (S.D.N.Y. July 14, 2009)" for the proposition that "[c]ourts uphold service on clerks designated to receive process for judicial officers." 2d Opp. at 5. There is no case at the database identifier given. There are three cases by the name "<u>Koulkina v. City of New York</u>" in Westlaw, but none support the above proposition.

First alerted to some of these errors by the reply brief of Eisenpress and Zugibe, <u>see</u> Reply Memorandum of Law in Support, filed June 27, 2025 (Docket # 130) ("Eisenpress-Zugibe Reply"), at 5-6, the Court ordered Lindsay to show cause why she should not be sanctioned pursuant to Fed. R. Civ. P. 16(f), 28 U.S.C. § 1927, or the Court's inherent power "for submitting memoranda of law . . . that contain numerous non-existent or improper citations." 1st OSC at 2. To this end, the Order to Show Cause ("OSC") required Lindsay to provide "a complete and detailed description of the process of the drafting of the two memoranda of law" and "a detailed and complete description of the role of any individual or computer system that was involved in the drafting process." <u>Id.</u> The Court also directed her to draw up a list of "all cases that she now recognizes are inaccurate" and, for each case, to "specify the manner in which the citation was inaccurate," state "the reason she included an incorrect citation," and give a corrected citation, where possible. <u>Id.</u>

Lindsay responded to this OSC. <u>See</u> Resp.; Lindsay Aff.[6] Her explanation for how the fabricated citations ended up in her briefs is discussed in section III.A below. We note here only

---

[6] Lindsay filed two versions of her memorandum of law and affidavit in response to the Court's first OSC. <u>See</u> Memorandum in Response to the Court's Order to Show Cause, filed Aug. 9, 2025 (Docket # 148); Affidavit of Tricia S. Lindsay, filed Aug. 9, 2025 (Docket # 148-1); Resp.; Lindsay Aff. Because we discern no difference between the two versions, we refer only to the later-filed version.

that her response in most instances failed to satisfy the Court's requirement that she "specify the manner in which the [incorrect] citation was inaccurate." To give but a single example among many: for the "Cornhill LLC" case, Lindsay states, "Case number exists; incorrect case name." Resp. (appendix entitled "List #2: Inaccurate Case Citations"). This statement fails to recognize that the case located at the "Case number" (presumably referring to the case whose citation is "183 A.D.3d 649") has nothing to do with service of process. Lindsay repeats this same meaningless phrase — "Case number exists; incorrect case name" — to purportedly explain multiple fabricated citations. See id.

After Lindsay filed her response, Hirshowitz filed papers in support of sanctioning Lindsay under Fed. R. Civ. P. 11 and seeking attorneys' fees and costs from plaintiff. See Memorandum of Law in Reply and Support of Order to Show Cause, filed Aug. 14, 2025 (Docket # 153); Affirmation in Reply and in Support of Sanctions Against Plaintiff's Counsel, filed Aug. 14, 2025 (Docket # 152). Lindsay filed a reply. See Attorney Lindsay's Reply to Defendant Hirshowitz's Response to the Court's Order to Show Cause, filed Aug. 19, 2025 (Docket # 154) ("Reply to Hirshowitz").

The Court then issued a second OSC stating that it would also consider whether Lindsay should be sanctioned pursuant to Rule 11 and affording Lindsay another opportunity to respond. See 2d OSC. Lindsay filed a response. See Supp. Resp. Hirshowitz filed two documents reiterating her support for sanctioning Lindsay under Rule 11 and requesting attorneys' fees and costs. See Memorandum of Law in Reply and Support of Order Regarding Sanctioning of Plaintiff's Counsel Pursuant to Rule 11, filed Sept. 26, 2025 (Docket # 162); Letter from Jacob B. Sher, filed Jan. 15, 2026 (Docket # 191) ("Sher Letter").

II.     LEGAL STANDARDS

While the Court indicated that it was considering sanctions under Fed. R. Civ. P. 16(f), we believe that the conduct at issue here is potentially governed only by Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's inherent power, since the submission of the fabricated citations did not violate a court order.

Rule 11 provides in relevant part:

> By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b).  This rule "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, [and] legally tenable."  Park v. Kim, 91 F.4th 610, 614 (2d Cir. 2024) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990)) (alteration in original).  "At the very least," it "require[s] that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely," as there is "no other way to ensure that the arguments made based on those authorities are 'warranted by existing law,' . . . or otherwise 'legally tenable.'"  Id. at 615 (first quoting Fed. R. Civ. P. 11(b)(2); then quoting Cooter & Gell, 466 U.S. at 393).  When an attorney "rel[ies] on non-existent authority," she "reveals" that she "made no inquiry, much less the reasonable inquiry required by Rule 11."  Id.

A court is authorized to impose "an appropriate sanction on any attorney" if she violates Rule 11 "after notice and a reasonable opportunity to respond."  Fed. R. Civ. P. 11(c)(1).  Any

6

sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).  While "Rule 11 contemplates that ordinarily opposing counsel will initiate sanctions proceedings," it "gives the court the power to initiate sanctions proceedings sua sponte . . . without providing opportunity to withdraw the misstatement."  Muhammad v. Walmart Stores E., L.P., 732 F.3d 104, 108 (2d Cir. 2013) (citation and internal quotation marks omitted); see Fed. R. Civ. P. 11(c)(3).  However, the court should only impose a sanction sua sponte "upon a finding of subjective bad faith."  Id. (citation omitted); accord Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 462 (S.D.N.Y. 2023); Benjamin v. Costco Wholesale Corp., 779 F. Supp. 3d 341, 347 (E.D.N.Y. 2025).  "[C]ourts in this [C]ircuit have repeatedly found that presenting AI-generated hallucinations as valid caselaw constitutes subjective bad faith."  Braica v. Frankowski, 2025 WL 3644231, at *4 (D. Conn. Dec. 25, 2025) (collecting cases).

Under 28 U.S.C. § 1927, a court is also empowered require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Further, the court possesses the inherent power to sanction an attorney "for conduct which abuses the judicial process."  Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991).  The imposition of sanctions under 28 U.S.C. § 1927 or the court's inherent power generally "requires a finding of bad faith."  Rossbach v. Montefiore Med. Ctr., 81 F.4th 124, 143 (2d Cir. 2023) (citations omitted).  Additionally, to impose sanctions under the court's inherent power, the court must find that "the challenged claim was without a colorable basis."  Enmon v. Prospect Cap. Corp., 675 F.3d 138, 143 (2d Cir. 2012) (citation and internal quotation marks omitted).  A finding of bad faith in this context requires "clear and convincing evidence" that an attorney's conduct was

"motivated by improper purposes such as harassment or delay." Lee v. Hong, 2025 WL

3637495, at *1 (2d Cir. Dec. 16, 2025) (quoting Liebowitz v. Bandshell Artist Mgmt., 6 F.4th

267, 286 n.22 (2d Cir. 2021); and Enmon, 675 F.3d at 143). However, a finding of bad faith is

not required if "the attorney 'negligently or recklessly failed to perform [her] responsibilities as

an officer of the court,'" although in this scenario, attorneys' fees may not be awarded.

Rossbach, 81 F.4th at 143 (quoting Wilder v. GL Bus Lines, 258 F.3d 126, 130 (2d Cir. 2001)).

The responsibilities of an officer of the court include "making accurate representations to a

court," because breach of "an attorney's core duty of accuracy in its representations both causes

tangible harm to the other parties and undermines the integrity of the judicial process." Safeco

Ins. Co. of Am. v. M.E.S., Inc., 2014 WL 12833779, at *4 (E.D.N.Y. Mar. 25, 2014) (quoting

Nunez v. Bistro N.Y. Dev. Inc., 2013 WL 5495550, at *4 (S.D.N.Y. Oct. 3, 2013)).

III.    DISCUSSION

Because, as described below, Lindsay's misconduct can be "adequately sanctioned" under

Fed. R. Civ. P. 11, we see no need to impose sanctions under the Court's inherent power.

Chambers, 501 U.S. at 50. As for 28 U.S.C. § 1927, for reasons also described below, we do not

find that an award of attorneys' fees is appropriate here. Accordingly, we confine our discussion

to sanctions under Rule 11(c)(3).

A.  Lindsay Violated Rule 11

In presenting the memoranda of law at issue to the Court, Lindsay failed to make the

reasonable inquiry required by Rule 11. As the Second Circuit has held, when an attorney

"rel[ies] on non-existent authority," she "reveals" that she "made no inquiry, much less the

reasonable inquiry required by Rule 11." Park, 91 F.4th at 615. That is precisely what happened

here. Lindsay does not dispute that the memoranda of law rely on false or fabricated citations,

8

see Resp. at 1, which are tantamount to non-existent authority.

Lindsay's response to being alerted to the fabricated citations did not follow the typical pattern in cases where courts have called upon attorneys to explain the presence of fabricated citations in their papers.  The Court's first OSC specifically ordered Lindsay to provide "a complete and detailed description of the process of the drafting of the two memoranda of law." 1st OSC at 2.  While most attorneys provide such an explanation, which often involves an admission of reliance on artificial intelligence ("AI") platforms, Lindsay's brief sworn statement in response offers only airy generalities and conclusory statements.  Her response contains no coherent explanation for how the two memoranda of law came to contain the fabricated citations. The most basic questions — most obviously: what was the source of the fabricated citations? — are never answered.

Thus, Lindsay states merely that she "follow[s] a structured and diligent process designed to ensure accuracy, thoroughness, and compliance with all applicable legal and ethical standards."  Aff. ¶ 2.  Bizarrely, she then discusses her "typical" process for drafting briefs without specifically attesting that this was the actual process she followed in drafting the memoranda of law at issue in this case.  Id.  The clear implication of her statement, however, is that her "typical" process was followed in this case; otherwise, there would be no reason to mention it.  Lindsay states that she "manually cross-check[s] case names, docket numbers, and reporter citations against the primary sources in legal databases" and verifies that "the authorities cited support the propositions for which they are referenced."  Id.  Lindsay's contention that these actions occurred in this case are obviously false, however, because a "manual[]" check of any of the fabricated citations would have instantly shown that each citation was fake or inaccurate.  Thus, while Lindsay's response acknowledges that eleven citations are inaccurate,

she provides no explanation of how these citations came to be included in the memoranda of law. See Resp. at 14.

At one point, Lindsay states that citations to "nonexistent cases" resulted from "typographical errors, misreading of secondary sources, or limitations in the search functionality of legal databases." Id. ¶ 5. In addition to being conclusory, this explanation makes no sense inasmuch as Lindsay never shows how "typographical errors, misreading of secondary sources, or limitations in the search functionality of legal databases" produced the "nonexistent cases" cited to in the memoranda of law. And, in any event, no explanation is made of how Lindsay's "manual[]" check did not reveal the nonexistent cases.

At another point, Lindsay emphasizes that she relied on "established legal research platforms." Id. ¶ 3. But that obviously did not occur here, as there is no evidence that any "established" legal research platform generates or contains fabricated citations, or that an "established" legal research platform somehow supplied the fabricated citations in the memoranda of law. Tellingly, in her initial response, Lindsay never even named what "legal research platforms" she used to draft the memoranda of law and thus never specified which one supplied her with the fabricated citations.

In light of the complete lack of evidence to support the claim that any "established" legal research platform could have supplied these citations, we reject this contention. As a result, there remain only two plausible explanations for the source of the fabricated citations in Lindsay's memoranda of law: a person who deliberately created them knowing they were fabricated or an AI system. Lindsay never claims that she had the assistance of any person in drafting the memoranda of law. To the contrary, her declaration states:

> I am solely responsible for the research, drafting, and review of the memoranda at

issue.  While I utilize legal research databases and citation management tools to assist in my work, I do not delegate these core responsibilities to others.  No <u>other individual or computer system played a substantive role in the drafting process</u> beyond the use of standard legal research and word processing software.

<u>Id.</u> ¶ 7 (emphasis added).  Denying she had any human help, Lindsay thus asks that Court to accept a proposition that is utterly devoid of evidence: that an "established" legal research platform created the fabricated citations.

In her response to Hirshowitz's filing, Lindsay for the first time states that she "routinely utilizes Lexis Nexis['s] . . . AI-driven features," and then states that the fabricated citations "may very well have been generated by the Lexis Nexis software during the research phase."  Reply to Hirshowitz at 8-9.  The response, however, is devoid of any specifics as to what Lexis Nexis's "AI-driven features" she used, how they <u>actually</u> supplied any of the false citations, or any examples where Lexis Nexis's "AI-driven features" have supplied fabricated citations.[7]

We thus find that Lindsay used an AI program that generated the fabricated citations in the memoranda of law and that Lindsay failed to check that these citations were genuine.

On the legal question of the applicability of Rule 11, Lindsay questions whether the memoranda of law "violated one of the four subsections of Rule 11(b)."  Supp. Resp. at 4.  She contends that her briefs "were objectively not 'presented for an improper purpose,' as they were in response to a motion" (actually, motions), <u>see id.</u> (quoting Fed. R. Civ. P. 11(b)(1)), and that "the 'claims, defenses, and other legal contentions' contained within the memoranda, when taken

---

[7] In her response to the Court's second OSC addressing the applicability of Rule 11, Lindsay continued her failure to describe how the fabricated citations ended up in her brief.  Instead, she stated that "the citation errors at issue were not the result of any intent to mislead the Court or opposing counsel" but rather "were isolated and inadvertent mistakes that occurred despite good faith efforts to ensure accuracy."  Supp. Resp. at 3.  She also states that she "reli[ed] on technology that is not immune to error" without specifying that technology.  <u>Id.</u> at 4.

as a whole, are supported by existing law, despite the incorrect citations," id. (quoting Fed. R. Civ. P. 11(b)(2)).

Case law has considered such arguments and rejected them.  Because Lindsay clearly "made no attempts to check" her citations (or at least no reasonable attempts), her use of "misleading hallucinations to advance [her client's] case" amounted to making "misleading representation[s]" to this Court "for an improper purpose" in violation of Rule 11(b)(1).  Braica, 2025 WL 3644231, at *6 (quoting Rankin v. City of Niagara Falls, 293 F.R.D. 375, 387 (W.D.N.Y. 2013)).  And Rule 11(b)(2) bars a filing unless the "legal contentions" made in the filing are "warranted by existing law."  Fed. R. Civ. P. 11(b)(2).  As the Second Circuit has noted, "[a] fake opinion is not 'existing law.'"  Park, 91 F.4th at 615 (quoting Mata, 678 F. Supp. 3d at 461).  Contrary to Lindsay's assertion, the standard under Rule 11 is not whether the contents of a filing are supported by existing law "when taken as a whole."  Supp. Resp. at 4.

More to the point, Lindsay's argument misapprehends what Rule 11 required.  Rule 11 required Lindsay to certify "to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that, inter alia, the memoranda of law were "not being presented for any improper purpose" and that "the claims, defenses, and other legal contentions" therein were "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b) (emphasis added), 11(b)(1), 11(b)(2).  By presenting the memoranda of law to the Court, Lindsay certified that she made "an inquiry reasonable under the circumstances."  Fed. R. Civ. P. 11(b).  But, as we have found, Lindsay in fact "made no inquiry" into the validity of the fabricated citations "much less the reasonable inquiry required by Rule 11."  Park, 91 F.4th at 615.  As the Second Circuit has noted, "[a]t the very least, the duties imposed by Rule 11 require

12

that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." Id.; see also Benjamin, 779 F. Supp. 3d at 348 ("Confirming a case is good law is a basic, routine matter and something to be expected from a practicing attorney") (quoting Mid Cent. Operating Eng'rs Health & Welfare Fund v. Hoosiervac LLC, 2025 WL 574234, at *2-3 (S.D. Ind. Feb. 21, 2025)).  Had Lindsay actually read the cases she cited to in the memoranda of law — or attempted to look them up in order to read them — she would have discovered many did not exist or did not in any way relate to or support the propositions she claimed they stood for.

Lindsay implicitly admits that she was required to check all citations inasmuch as she represents that it is her practice "[p]rior to filing" to "undertake[] a review of her draft memoranda, focusing on both substantive content and citation integrity." Resp. at 5.  "This review may include . . . [r]e-examining cited authorities to confirm their applicability." Id.  That obviously did not occur here, and her acknowledgement that such a review is required further supports the imposition of Rule 11 sanctions.

B.  Lindsay Acted in Bad Faith

As noted, any sua sponte sanction under Rule 11 requires a finding that Lindsay acted in bad faith.  Muhammad, 732 F.3d at 108.  Where an attorney submits fabricated citations, we can think of only two explanations for how they were generated: by a human or by an AI program. As already noted, Lindsay does not claim that any other person generated the fabricated citations. We thus have concluded that they were generated as a result of the use of some kind of AI program (though we do not credit that it was any such program supplied by Lexis Nexis, as Lindsay at one point hints).  "[C]ourts in this [C]ircuit have repeatedly found that presenting AI-generated hallucinations as valid caselaw constitutes subjective bad faith." Braica, 2025 WL

13

3644231, at *4.

Lindsay's bad faith is also reflected in the fact that she failed to provide the "complete and detailed description of the process of the drafting of the two memoranda of law" and "detailed and complete description of the role of any individual or computer system that was involved in the drafting process" required by the Court. 1st OSC at 2. Her obfuscation reflects a complete lack of acceptance of responsibility, notwithstanding her assertion that she "deeply regret[s] the errors that occurred" and her claim to have "taken all reasonable steps to address and correct them." Lindsay Aff. ¶ 9. Moreover, her other representations to the Court consistently minimize her actions. See Resp. at 9 ("Citation errors, while regrettable, are not uncommon in complex litigation."); Lindsay Aff. ¶ 6 ("These errors . . . reflect the inherent challenges of legal research and citation in complex litigation, particularly when working under time constraints and with voluminous records."); Supp. Resp. at 4 ("The citation errors acknowledged by Ms. Lindsay were the result of an innocent oversight in the review process, compounded by reliance on technology that is not immune to error."). Even if Lindsay had meaningfully apologized or accepted responsibility for her conduct, "regret and apologies are not necessarily enough to avoid the imposition of sanctions for the submission of non-existent legal authority." Benjamin, 779 F.Supp.3d at 350 (citing Dehghani v. Castro, 2025 WL 988009, at *5 (D.N.M. Apr. 2, 2025)); accord Kaur v. Desso, 2025 WL 1895859, at *3 (N.D.N.Y. July 9, 2025). Here of course we have no real acceptance of responsibility.

The Court is aware of two cases in this Circuit where courts have found that an attorney's presentation of fabricated citations did not amount to subjective bad faith. Both are readily distinguishable, however.

In United States v. Cohen, 724 F. Supp. 3d 251 (S.D.N.Y. 2024), the court determined

that an attorney who cited to fake cases did not act in bad faith because: (1) the citations were supplied by his client, also a lawyer (albeit, a disbarred one); (2) the attorney "understandably" believed the citations had been provided to his client by another lawyer (in fact, his client used AI to generate them); and (3) the attorney apologized and accepted responsibility. See id. at 258-59. In other words, the attorney, unlike Lindsay, had at least some reason to believe the citations had been vetted by a lawyer.

In Hall v. Acad. Charter Sch., 2025 WL 2256653 (E.D.N.Y. Aug. 7, 2025), the court held that an attorney who cited to fake cases did not act in bad faith because: (1) the citations were supplied by her clerk; (2) the attorney failed to check the clerk's work due to "the sudden, unexpected death of her spouse"; and (3) the attorney apologized, accepted responsibility, and stated "her intentions on seeking medical and mental treatment." See Hall, 2025 WL 2256653, at *5. Hall differs from this case because the attorney in Hall fully described the circumstances that led to the false citations being submitted. See id. She also relied on a "clerk" who presumably had been trained in the law. Here, by contrast, Lindsay has not been forthright in explaining what occurred here, there are no unusual personal circumstances, and there is no evidence that she obtained the citations from a reliable source.

Lindsay's bad faith is further reflected in the fact that she filed papers with false citations on two occasions after the Court issued the OSCs.

First, two months after the first OSC, she filed a brief in the United States Court of Appeals for the Second Circuit that contained two fabricated citations. We know this because the Second Circuit in Ioio v. City of New York, 2026 WL 731089 (2d Cir. Mar. 16, 2026), issued a decision that contains the following concluding paragraph:

> There is evidence . . . that Appellants' counsel used false citations in their opening brief to this Court and purported to represent as a plaintiff in this action someone who expressly asked not to be involved. We therefore REFER Attorneys Jo Saint-George and Tricia S. Lindsay to the Court's Grievance Panel pursuant to Local Rule 46.2 for further investigation, and for consideration of a referral to the Committee on Admissions and Grievances. See 2d Cir. R. 46.2.

Id. at *4 (footnotes omitted). The referenced brief was filed on September 12, 2025. See id. at *3 n.6. The Court has obtained the brief from the public docket and examined the citations flagged by the Second Circuit. See id. at *4 n.7. We can find no evidence that the cited cases exist at the reporters given or stand for what Lindsay and her co-counsel claimed they do.

Second, in October 2025, Lindsay filed objections to a Report and Recommendation issued by the undersigned that addressed the motions to dismiss filed by defendants. See Objection, filed Oct, 14, 2025 (Docket # 164). In a brief filed in opposition to the objection, Hirshowitz's counsel pointed out that Lindsay's objection contained eight false, fake, or "hallucinated" citations. See Response to Plaintiff's Objections, filed Oct. 27, 2025 (Docket # 167). These suspect citations were described at length and in detail. See id. at 7-11. In response, Lindsay stated that she was withdrawing the "specific . . . citations contained within [the objection] that defense counsel has claimed violate Rule 11" while at the same time asserting that she was doing so "without admission of liability." Letter from Tricia S. Lindsay, dated Nov. 12, 2025 (Docket # 172). In other words, Lindsay again failed to own up to her errors or give any explanation of how they occurred. We have examined the eight citations in Lindsay's original objection identified by Hirshowitz's counsel and concur that they are in some cases completely fabricated.

Lindsay's repetition of the same mistake makes it impossible to credit her contention that the erroneous citations do not "reflect a pattern of disregard for professional obligations" and

16

"were isolated and inadvertent mistakes that occurred despite good faith efforts to ensure accuracy." Supp. Resp. at 3. Lindsay represented that she "has taken steps to further strengthen her review protocols to ensure accuracy going forward." Id. at 4. These unspecified efforts have turned out to be completely inadequate.

Lindsay insists that there is "no 'clear and convincing evidence' that [her] conduct as alleged in the order to show cause 'was undertaken with subjective bad-faith.'" Id. at 5. Accepting arguendo that "clear and convincing evidence" is the standard of proof where sua sponte sanctions are imposed under Rule 11(c)(3), see Rankin, 293 F.R.D. at 387, there is clear and convincing evidence of Lindsay's bad faith here, as evidenced in her own responses to the Court's OSCs for the reasons already stated.

C. Appropriate Sanction

When it comes to imposing sanctions, there are unfortunately hundreds of cases similar to this one in the United States that may serve as precedent. See Damien Charlotin, AI HALLUCINATION CASES, https://www.damiencharlotin.com/hallucinations/ (last accessed Apr. 28, 2026) (identifying 916 proceedings in U.S. courts to date involving citations to non-existent cases likely "hallucinated" by AI, including 342 where lawyers supplied the offending citations); accord Benjamin, 779 F. Supp. 3d at 343 (availability of AI tools has unleashed an "epidemic of . . . fake cases" in legal submissions). The sanctions imposed in these cases range from admonishment to entry of a default judgment, see Flycatcher Corp. Ltd. v. Affable Ave. LLC, 2026 WL 306683, at *1 (S.D.N.Y. Feb. 5, 2026).

Rule 11 itself indicates that a court must impose "appropriate" sanctions and that sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(1), 11(c)(4). A court must also

17

impose Rule 11 sanctions "with restraint," <u>Schlaifer Nance & Co. v. Est. of Warhol</u>, 194 F.3d 323, 334 (2d Cir. 1999)), in light of the fact that it may be acting "as accuser, fact finder and sentencing judge," <u>Mackler Prods., Inc. v. Cohen</u>, 146 F.3d 126, 128 (2d Cir. 1998).

Considering our finding of clear and convincing evidence of bad faith, we are constrained to conclude that a sanction must be imposed to deter Lindsay in the future and to deter other practitioners.  As to attorneys who "submitted fake cases," one case has noted that "courts have imposed financial sanctions on similarly situated attorneys ranging from approximately $1,500 to $5,000."  <u>Benjamin</u>, 779 F. Supp. 3d at 351.  A more recent survey of case law finds that sanctions of "$1,000 to $10,000 are routinely imposed" where attorneys have submitted fabricated citations.  <u>Lifetime Well LLC v. IBSpot.com Inc.</u>, 2026 WL 195644, at *5 (E.D. Pa. Jan. 26, 2026); <u>see</u> <u>also</u> <u>Mid Cent. Operating Eng'rs Health & Welfare Fund</u>, 2025 WL 1511211, at *1-2 (S.D. Ind. May 28, 2025) ($6,000 fine for citing fabricated cases in three briefs).[8]

In one recent case, <u>DOC App, Inc. v. Leafwell, Inc.</u>, 2025 WL 3288251 (M.D. Fla. Nov. 26, 2025), the court ordered an attorney who did not meaningfully take responsibility for citing to non-existent cases to pay attorneys' fees associated with the cost of responding to his papers featuring the erroneous citations, among other sanctions.  <u>Id.</u> at *5.  Here, we have considered whether it would be appropriate to order Lindsay to pay Hirshowitz's fees in relation to the relevant motion to dismiss, as Hirshowitz has requested.  <u>See</u> Sher Letter.  We are not inclined to

---

[8] Other sanctions imposed on attorneys include: "striking the filing containing the fictitious citations"; requiring "written notification to the client" and/or to "the judges incorrectly identified as having authored the fictitious cases cited"; dismissing the complaint or the appeal; and "initiat[ing] disciplinary procedures by referring attorneys to the relevant disciplinary body." <u>United States v. Hayes</u>, 763 F. Supp. 3d 1054, 1071-72 (E.D. Cal. 2025) (collecting cases), <u>reconsideration denied</u>, 2025 WL 1067323 (E.D. Cal. Apr. 9, 2025).

do so, however, because there is no indication that Hirshowitz's attorney expended any particular amount of hours to address the fabricated citations in the memoranda of law.  It was the attorney for Zugibe and Eisenpress, not the attorney for Hirshowitz, who alerted the Court to the existence of the fabricated citations.  See Eisenpress-Zugibe Reply at 5-6.  Hirshowitz's reply papers did not even note the existence of these cases.  See Memorandum of Law in Reply and Further Support of Motion to Dismiss for Insufficient Service of Process, filed June 27, 2025 (Docket # 129).  While Hirshowitz addressed Lindsay's errors in filings after the Court issued the OSCs, the OSCs did not require Hirshowitz to weigh in.  The Court appreciates Hirshowitz's efforts at elucidating the law on sanctions, but we do not believe that those efforts entitle her to fees for what amounted to a voluntary effort to educate the Court.  Because there is no information in the record as to whether Hirshowitz was required to make any significant effort to track down the fabricated citations in relation to the motion to dismiss, we do not find that an award of attorneys' fees is warranted.

Deterrence is paramount here, given Lindsay's obdurate refusal to explain how the citations came to be included in her briefs.  We believe that a fine of $2,500 will serve as an appropriate deterrent, along with a requirement that she supply to her client a copy of this Opinion and Order.  Additionally, it is important that other courts be aware of Linsday's repeated misconduct, which calls into question filings she has made.  Thus, the Court directs that Lindsay supply a copy of this Opinion and Order to the presiding judge in each pending case where she appears as attorney of record by means of a letter filed on the docket and served on opposing counsel.

19

CONCLUSION

Tricia S. Lindsay is sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure in the amount of $2,500.00.  On or before May 14, 2026, Lindsay shall pay this sum by check (payable to "Clerk, S.D.N.Y.") and delivered to the Cashier's Office.

Lindsay shall also by May 14, 2026, supply to her client a copy of this Opinion and Order.

Lindsay shall also by May 14, 2026, alert the judge in each pending case where she appears as attorney of record of the existence of this Opinion and Order by means of a letter filed on the docket and served on opposing counsel.

Finally, Lindsay shall file a sworn statement by May 14, 2026, describing what she did to comply with this Order.

If Lindsay files timely objections to this Opinion and Order under Fed. R. Civ. P. 72, the deadlines in the above paragraph will be automatically extended to 7 days following the disposition of those objections in the event this Opinion and Order is affirmed.

Dated:  April 29, 2026

New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge